# IN THE UNITED DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| TONYA PARKS, individually | § | |
| BENNIE GIBSON, individually | § | |
| FRANCES GIBSON, individually | § | |
| NYANZA COOK, individually | § | |
| ALEXANDER BEDNAR, individually | § | |
| Plaintiffs, | § | |
| v. | § | Case *No.* 4:22-cv-00991-SDJ |
| | § | |
| AIG, an insurance company based in New York | § | |
| CHICAGO TITLE, a California insurance Company | § | Jury Trial Requested |
| TIMOTHY HENDERSON, a removed | § | |
| Oklahoma Judge accused of crimes, | § | |
| DAVID PRATER, Oklahoma County District | § | Oral hearing requested |
| Attorney in his individual and official capacity | § | |
| MIKE HUNTER, Resigned Oklahoma State | § | |
| Attorney General, individually and officially | § | |
| MELISSA ABERNATHY, sheriff deputy | § | |
| BRETT SLIMP sheriff deputy | § | |
| OKLAHOMA COUNTY | § | |
| Defendants | § | |

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, FOR PRELIMINARY INJUNCTION AND FOR EXPEDITED BRIEFING SCHEDULE

Plaintiffs hereby move for an immediate temporary restraining order, a preliminary injunction hearing date, and request an oral hearing and expedited briefing schedule.

### CONCISE STATEMENT OF REASONS AND AUTHORITIES

Plaintiffs claim a policy, custom, and practice of ongoing harassment, retaliation and civil rights violations, after Plaintiffs exercised First Amendment rights to lodge complaints to Oklahoma entities supposedly created to address judicial and legal malfeasance, triggering relief under Defendant AIG policy for 2018-2019. Ex 16. The outgoing Oklahoma Attorney General ("AG") office, influenced by Defendant former AG Hunter, saw fit to zealously represent corrupt state employees (like former Judge Henderson) and thus possesses key evidence to be preserved.

1

It was learned the last three months that Oklahoma has a policy and custom of denying and not investigating judicial corruption claims and thus did not investigate the Gibson/Parks claims or Bednar's claims (tied to taking of his home and law license without due process).[1]

The Oklahoma County District Attorney ("DA") Prater represents county employees (like Defendants Slimp and Abernathy, who issued false probable cause affidavits against Plaintiffs Bennie Gibson and Alex Bednar). Ex. 1, 2. Defendant Prater blocked civil discovery into communications between his office, judges, and sheriff deputies who participated in false arrests and false charges against Plaintiffs.[2] State Representative Humphrey reports Prater's office backdated documents, had *ex parte* meetings with judges, and used civil courtrooms to conduct retaliatory plans of false arrests and litigation advantage for Plaintiffs' opponents. Ex. 1, 2. <u>The outgoing DA's electronic documents and communications are key to Plaintiffs' claims</u>. Ex 1, 2.

*Per* FRCP Rule 65 and *Ex parte Young*, 209 US 123, a Court may grant equitable relief at the start of a case. The *Ex parte Young* exception to sovereign immunity allows a suit for

---

[1] The Gibson/Parks Plaintiffs argue by not remedying their claim and refusing to compensate for the property subject to sham probate sale, or Mrs. Gibson's funeral expenses, required be paid first or "off the top" in a probate, and failing to investigate and resolve Mr. Gibson's false prosecution, Oklahoma, *via* its AG office, has denied their claim and effected a "taking" under the Fifth Amendment, through a policy to deny claims of judicial wrongs. *Accord Baker v. City of McKinney*, EDTX case 4:21-cv-00176-ALM, Doc. 93 (public entity's policy of denying same claims and manipulating the intended role of an insurance policy rises to the level of a "taking" *per* 42 USC 1983); similarly, Plaintiff Bednar claims the Oklahoma AG policy to not investigate and compensate his claims of civil rights violations and his home sold in a sham sale are takings of his home and law license without due process.
[2] Such communications are not privileged under the "Crime/Fraud" exception, especially if the Oklahoma AG and state bureau of investigation failed to investigate these claims. Exhibits 1-2 (Reports of Oklahoma State Representative into corruption at Oklahoma County Courthouse).  In Plaintiff Frances Gibson's mother's probate, Defendants Prater, Abernathy, and Henderson coordinated use of the civil probate court to pressure Frances Gibson testify to her husband's voice on the attorney's phone; Mrs. Gibson did not know she was breaching spousal privilege or that her testimony would result in a warrant of arrest in Oklahoma for her husband. Defendant Abernathy was present in the courtroom by design, to "finalize" a report Defendant Henderson directed Abernathy create for Prater to charge Mr. Gibson with misdemeanor harassment of Henderson's friend (the probate attorney against whom Mr. Gibson filed a bar complaint). In Plaintiff Bednar's divorce, Defendant DA Prater's office, without filing motions to intervene, was allowed to file motions to quash Mr. Bednar's subpoenas to Defendant Slimp, which would prove the divorce court used backdated questionable documents to deny Mr. Bednar visitation to his child. Ex. 1. The outgoing Oklahoma AG represented judge Henderson and Prater to the detriment of Plaintiffs, and thus possesses key communications of Defendants' collusion to violate Plaintiffs' civil rights. It is expected the AG will claim communications are "privileged" when in fact, they fall under the "Crime/Fraud" exception. Ex. 1.,2.

prospective, injunctive relief against state officials. *City of Austin*, 943 F.3d at 997–98. Whether a suit proceeds *per Ex parte Young* does "not require analysis of the merits of the claim." *Id*. at 998.  A court "need only conduct a straightforward inquiry into whether a complaint alleges ongoing violation of federal law and seeks relief properly characterized as prospective." *Id*. at 998 (*quoting Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011)).

Plaintiffs face "concrete and particularized" injuries, "actual or imminent, not conjectural or hypothetical," traceable to the challenged action, to be redressed by relief requested. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs have standing as they will suffer financial and not quantifiable harm–continued deprivation of rights.  In this case Mr. Bednar seeks to justify reinstatement of his law license and declaratory judgment Oklahoma's Bar Association may not violate ABA Rule 3.8 in disciplinary proceedings involving corruption. Such ruling could impact 2,000 Texas attorneys with Oklahoma bar licenses. Equitable relief in *Ex parte Young's* exception to sovereign immunity. *Nelson*, 535 F.3d at 324.

Plaintiffs seek a restraining order prohibiting Defendants, *inter alia*, from spoliating evidence during the transition of power. Exhibits 1 and 2 (Reports of Corruption).

## I.  FACTS SUPPORTING IMMEDIATE RESTRAINING ORDER / INJUNCTION

**The Gibson/Parks Family Learned in the Past Two years Defendant Chicago Title Insurance Company, a California Company, Breached its Fiduciary Duty and Appears to have Fronted Money for the Sham sale of their Oklahoma Relative's Property**

Defendants Chicago Title and its attorneys involved in the Gibson family probate case, were placed in a position of trust with Plaintiff Frances Gibson, heir, and were engaged on her behalf.  Plaintiff Tonya Parks had Power of Attorney over her mother and communicated with Chicago Title.  Ex.13. In 2020 she first learned Chicago Title had opened two escrow accounts for the probate home, and that the second escrow (ending in -1271) was created to fund the first

(ending in -1245) from which funds were disbursed to the estate. So, if the second escrow (ending in 1271) were not funded by a buyer, there could not be a disbursement to the estate.

The property was valued at over $56,000.00. A disbursement summary from Defendant Chicago Title escrow account -1245, shows a check for $9,894.88 for the house was drafted October 18, 2017. Ex. 4. That check was deposited and cleared at Chase bank on October 19, 2017. Ex. 3. In 2020, Plaintiffs first saw the disbursement summary from escrow -1271, showing funds (from a California bank) were not wired to fund account -1245 until October 23, 2017, five days after the check was issued out of escrow -1245 and four days after it cleared Chase Bank. Ex. 5. Chicago Title released purchase funds for the Gibson probate home (at 1/6 value) before it had money in its funding escrow account, and very much appears implicated in the sham sale.[3]

Representative Humphrey's Report (Ex 2) indicates Chicago Title's in-house attorney was aware of false pleadings the probate attorney (Roe Simmons) sent across state lines to Plaintiffs in Texas – falsely claiming an auction occurred at his law office with the highest bid at 10,000 dollars. Chicago Title should explain why it allowed presentation and publication of false court documents, and why Chicago Title appears to have fronted funds for the sham sale. Representative Humphrey is available to provide testimony to this Court and lives close to it.

Also in 2020, the Gibson Parks family first learned the probate property buyer never went to any auction at probate attorney Simmons' office. The buyer issued an affidavit implicating Chicago Title in a conspiracy to violate fiduciary duty and file false documents in the probate case. *See* Ex. 6; see Ex. 2. Chase Bank, who received and cashed the check, offered in good faith to aid in investigating the transaction with law enforcement and any court. Ex. 7.

---

[3] Plaintiff Parks is a real estate broker in McKinney, and has researched other closings in Oklahoma County, and believes a pattern of impropriety involving Chicago Title's activities in Oklahoma deserves investigation. The litigation and subpoena fulfillment office for Chicago Title (Oklahoma) is in Dallas, in this court's subpoena power.

4

Plaintiff Parks handed evidence to Defendant Oklahoma AG to investigate Chicago Title, but no investigation ensued. <u>Plaintiffs ask the Court to preserve communications between Chicago Title and Oklahoma AG, and between Chicago Title and any Oklahoma investigators.</u>

**Defendant AIG, a New York Company, Appears to Conduct Sham Claims Adjusting**

Plaintiffs Parks and Bednar met with the Oklahoma AG (Hunter) office in 2019, delivered evidence, including tape recordings, and that office promised to investigate Henderson.

An Agent Reser from the Oklahoma AG called Plaintiff Parks on September 17, 2019. A partial transcript shows Ms. Parks asks <u>if the AG secured footage from courthouse video cameras for the April 2019 incident of detainment under threat of force</u> Ex. 8. Reser states only federal agencies investigate state judges and condescendingly minimizes her dad's Oklahoma warrant.[4]

Mr. Bednar and the Parks/Gibson family filed notices of tort claim with Oklahoma's Risk Management office ("OMES"), which were denied, after an "investigation" by the outgoing AG.

Undersigned sent letters, Exhibits 9 and 10, and called the Oklahoma Attorney General, Governor and AIG, to meet an adjuster and discuss how AIG could investigate these claims. Undersigned has no courtesy response from Oklahoma AG or Governor, maybe due to oversight.

<u>New facts last four months support a Restraining Order to outgoing administrations</u>. In August 2022 Ms. Parks called the AIG broker for Oklahoma's policy (Ex. 11),[5] spoke to the state AG, and made open records requests to Oklahoma. *Ex*. 12 is a recording of Oklahoma AG Ms. Corley, who says AIG is not involved until the state pays in a lawsuit. Remarkably, Ms. Corley admits she denied the Gibson claim, that <u>*Oklahoma "could not investigate" it, as there is too much evidence, and only a lawsuit with "discovery," could provide a valid investigation*</u>.

---

[4] Mr. Gibson cannot freely travel to Oklahoma, as he is afraid of being arrested for the misdemeanor harassment charge Henderson directed Abernathy to issue, as retaliation against his protected speech to attorney Simmons.
[5] This is a recording of Lauri Zampino, in Tulsa Oklahoma, speaking with Plaintiff Tonya Parks in McKinney Texas made on August 22, 2022. AIG broker Zampino indicates the AIG policy is not triggered until a lawsuit is filed.

5

Ms. Corley emails (Ex. 14), that under the State's insurance, <u>AIG adjusters do not participate in a claim until a court issues a "scheduling order" in a lawsuit</u>. Corley also says the Gibson / Parks claim is <u>a "constitutional rights claim" covered by the AIG policy</u>. Ex 12.

On November 1, 2022 Ms. Parks received a list of all claims in a spreadsheet that s Plaintiff Bednar's claim. *See* Ex. 15 (Mr. Bednar's claim is labeled a "constitutional rights violation" dated June 8, 2019). This places Mr. Bednar's claim under the 2018-2019 AIG policy year. Ex. 16; Exs. 1 and 2; *see* Ex 17, DOJ letter of September 3, 2019 to Ms. Parks within that policy year. Ex 16. The Gibson/Parks family should claim benefits under the same policy. Ex 16.

Ms. Parks recorded a call with Oklahoma AG attorney Kindanne Jones on November 4, 2022, who confirmed her office does not investigate judges, it represents them.[6] Insurance (Ex. 16) controls *per* state law. *See* Ex.18, 29. Oklahoma, an "insured," "investigates" for AIG but does not adjust judicial corruption. Ex. 16. <u>Internal communications at Oklahoma AG's office about Plaintiffs, and to AIG, should confirm faulty adjusting</u> *See* Affidavit of Ms. Parks, Ex. 19.

**Exigent Circumstances Also Support Restraining Order and Injunction**

Each Plaintiff continues to suffer financially,[7] presents abuses of office involving Defendant Henderson (former administrative judge of Oklahoma County Courthouse).

On April 1, 2021, Governor Stitt ordered the OSBI to investigate Defendant Henderson and those he harmed. Ex. 1. Exhibits 1 and 2 imply the Oklahoma AG and Defendant Prater

---

[6] The consistent message, from recent recorded communications with Defendants and emails, is that Oklahoma never investigated Plaintiffs' claims, at any level. Representative Humphrey's November 2022 report corroborates. Ex. 2. Oklahoma appears to open up claims through its risk management office, but does not investigate a claim and does not communicate with an AIG adjuster, if a claim involves a state judge, even though all state judges are employees of the state of Oklahoma, each of whom should trigger the AIG policy (Exhibit 16).

[7] Plaintiffs have to pay prospectively for attorney fees for their or their family members' cases, and have had funds and/or property taken (5th Amendment taking) without due process. Also, Plaintiffs Gibson/Parks and Bednar have pending criminal prosecutions based on false and/or misleading and/or sham probable cause affidavits. Ex. 1-2

swayed the OSBI from investigating Plaintiffs' harm.  <u>Defendant Prater's communications about Plaintiffs to and from Defendants and to and from the OSBI would confirm culpability</u>.

Exhibit 20 is a case against Defendant Hunter with litigation hold letters issued in 2021, to the Oklahoma AG to safeguard communications with Defendant Henderson and others.  Thus, the AG should not have any qualms to preserve key information for this case as well.

Unsealed warrants for Henderson's prosecution indicate likely spoliation of evidence. *See E*xs 21, 22, 23, and 24 (<u>evidence secured – such as all Henderson's emails on the OSCN.net system, likely mentions Plaintiffs</u>). <u>These captured messages are germane to Plaintiffs' claims</u>[8].

### **Pattern Evidence Support Restraining Order and Request for Injunctive Relief**

Others who exercised First Amendment rights experienced Henderson's retaliation.  Ex 25 (Affidavit of Ms. Doyle, who claims Henderson and judges in his courthouse manipulated courts filings, backdated documents, and violated ethics).[9]

An Oklahoma attorney, who ran for judge, experienced Henderson's pattern of false criminal charges as retaliation, and moved far away from Oklahoma. Ex. 26. Exhibits 27-29 further imply a pattern, practice and custom.  These affidavits show Plaintiffs are not outliers.

## II. LEGAL STANDARD FOR TEMPORARY RESTRAINING ORDER OR INJUNCTION

A temporary restraining order is an "extraordinary remedy" and the court is within its full discretion in deciding whether to grant it. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982); *see also Powell v. Warden, FCI Beaumont Low*, 2022 WL 257445, at *1 (E.D. Tex. Jan. 5, 2022). The Fifth Circuit applies the same standard for temporary restraining orders and preliminary injunctions. *Texas v. United States*, 524 F. Supp. 3d 598, 651 (S.D. Tex. 2021). The

---

[8] The Oklahoma AG, attorney for state entities that secured Hendersons's emails on OSCN.net (judicial email network in Oklahoma) and Hotmail, could easily take steps to preserve the existing copies for this court.
[9] Under information and belief, Henderson asked sheriffs to file charges on her for her free speech protest of him.

elements are: (1) a substantial likelihood of success on the merits; (2) a substantial threat plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs damage the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). A movant "is not required to prove its case" at this stage. *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985).

### III. ARGUMENT

#### A. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

**Plaintiffs Can Establish Article III Standing.**

Plaintiffs can prove "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014).

**i. Plaintiffs Have Suffered an Injury in Fact.**

For an injury to be "particularized it must affect the plaintiff in a personal and individual way," and each Plaintiff meets this criterion. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Plaintiffs articulated how each is uniquely targeted, intimidated, denied due process and civil rights, experienced takings of property or money; and is still being harmed. Ex 1, 2.

**ii. The Injury Is Traceable to Defendants**

Plaintiffs claim harm from Henderson and County's courthouse practice to backdate documents, weaponize court personnel, encourage false affidavits and use of contempt, to arrest Plaintiffs (Ex 1, 2); Defendants' employees recently threatened contempt to Ms. Parks; injury complained of is not the result of an independent third party not before the Court. *Inclusive Communities Project*, *Inc*. *v*. *City of McKinney*, *Tex*., No. 4:08-CV-434, 2009 WL 2590121, at *5 (E.D. Tex. Aug. 18, 2009). A court need only ask if a plaintiff seeks prospective relief

8

requiring state officials to refrain from unlawful activity. *See* EDTX Case 4:20 CV-0973, Doc. 64, *citing Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 472 (5th Cir. 2020).

### iii. A Favorable Judicial Decision Will Redress the Injury.

Plaintiffs seek injunctive relief to redress ongoing injuries, establishing standing. Each Plaintiff has alleged monetary harm prospectively. Economic harm is a sufficiently concrete and particularized injury to establishing standing. *See El Paso County v. Trump*, 982 F.3d 332, 338 (5th Cir. 2020) ("Economic injury is a quintessential injury upon which to base standing.").

## B. PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT RELIEF.

Plaintiffs (*per* attached Ex 1, 2, 19, 30 *et al*) demonstrate and affirm they are "likely to suffer irreparable harm in absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey*, 647 F.3d at 600. An injunction is appropriate if anticipated injury is imminent and not speculative. *Winter*, 555 U.S. at 22. Plaintiff Gibson could be arrested any time.

## C. THE INJURY OUTWEIGHS ANY POTENTIAL HARM TO DEFENDANTS.

Protecting evidence and halting ongoing civil rights violations poses no harm to Defendants. A Court may balance competing claims of injury and "consider the effect on each party of granting or withholding requested relief" to justify an injunction. *Winter*, 555 U.S. at 9

## D. INJUNCTION IS IN THE PUBLIC INTEREST.

The public's interest is served to avoid violation of the US Constitution. *See Awad,* 670 F.3d at 1132 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) ("The Government does not have an interest in the enforcement of an unconstitutional law.")

## IV. RELIEF REQUESTED

Plaintiffs request the Court grant their emergency motion for a temporary restraining order:

(i)Directing all Defendants to safeguard and preserve all electronic and other communications and documents about Plaintiffs and their claims, including emails, texts, letters, notes, billing logs, or recordings, including courthouse footage Plaintiffs asked Defendant AG investigators to secure;

(ii) directing the Oklahoma Attorney General's office to publish this Order to its own divisions, and to any state entity and persons with whom Plaintiffs interacted, *per* the claims in this case

## CONCLUSION

For reasons above, this Court should grant Plaintiffs' motion for a temporary restraining order and preliminary injunctive relief, set an expedited briefing schedule, and set an oral hearing date for preliminary injunction *per* FRCP Rule 65, and any other relief the court sees fit.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE CV 3-D

Undersigned hereby confirms that this pleading conforms to the page and formatting requirements of the Eastern District of Texas Local Rule CV-3(d), and that the pleading, not including tables and certificates, meets the guidelines set out and excluding attachments is not more than ten pages.

Respectfully submitted,

s/ Ronnie Musgrove

_____

Musgrove and Smith, PLLC
599 Highland Colony Parkway
Ridgeland MS 39157
Phone: 601-668-3200 or 601-852-1696
Fax:    601-852-1714
musgrove@musgrovesmith.com
Lead Counsel for Plaintiffs