**Representative Justin JJ Humphrey**
House District 19

State Capitol Room 301
2300 N. Lincoln Boulevard
Oklahoma City, OK 73105
Office 405-557-7382
Justin.Humphrey@okhouse.gov



**Chair**
Criminal Justice and Corrections
**Committees**
Agriculture and Rural Development
A& B Public Safety
Redistricting
Redistricting Southeast Oklahoma
Subcommittee
State and Federal Redistricting

### HOUSE OF REPRESENTATIVES
### STATE OF OKLAHOMA

November 10, 2022

Honorable J. Kevin Stitt
28th Governor of Oklahoma
2300 N. Lincoln Blvd
Suite 212
Oklahoma City, OK 73105

## VOLUME II

# CORRUPTION AND HUMAN RIGHTS ABUSES AT OKLAHOMA COUNTY COURTHOUSE REQUIRING AN IMMEDIATE SPECIAL INVESTIGATION

From:
Representative J.J. Humphrey

**Representative Justin JJ Humphrey**
House District 19

State Capitol Room 301
2300 N. Lincoln Boulevard
Oklahoma City, OK 73105
Office 405-557-7382
Justin.Humphrey@okhouse.gov



**Chair**
Criminal Justice and Corrections
**Committees**
Agriculture and Rural Development
A& B Public Safety
Redistricting
Redistricting Southeast Oklahoma
Subcommittee
State and Federal Redistricting

HOUSE OF REPRESENTATIVES
STATE OF OKLAHOMA

November 10, 2022

Honorable Kevin Stitt
Governor of Oklahoma

VOLUME II
CORRUPTION AND HUMAN RIGHTS ABUSES AT OKLAHOMA COUNTY
COURTHOUSE REQUIRING AN IMMEDIATE SPECIAL INVESTIGATION

Honorable Governor Stitt,

I am furnishing a supplemental report to provide additional evidence of corruption in the
Oklahoma County Court System.  I have legitimate concerns the OSBI and someone left over from
Mike Hunter's office at the Attorney General, have knowingly allowed and participated in concealing
illegal acts of an attorney, a title company, and judges, to commit overt acts including intimidation of
witnesses, in furtherance of embezzlement of money pursuant to a sham real estate sale to take
advantage of an African American family from North Texas (the Parks/Gibson family).

The allegations and conclusive evidence were presented to the Attorney General, District
Attorney, Oklahoma Bureau of Investigation, and Council on Judicial Complaints with no substantial
finding or attempts to provide justice to this Texas family.  It truly appears all agencies have been
derelict in their duty or participated in protecting public officials or camouflaging the illegal acts. This
family has information indicating it is quite likely someone possibly in the Attorney General's office
influenced the outcome of Governor Stitt's investigation of Timothy Henderson's criminal conduct.

Extraordinarily, it took me less than two hours to organize real evidence of possible illegal
conduct by Henderson against this family. Henderson took actions to retaliate against this family with
judges and attorneys (Roe Simmons and Chicago Title's inhouse counsel).

I am providing a brief description and verify what I believe is obvious criminal conduct.

HISTORY OF DISHONESTY AND SEEMINGLY CRIMINAL CONDUCT, INCLUDING OVERT
ACTS BY JUDICIAL OFFICIALS TO RETALIATE AGAINST WHISTLEBLOWERS

Attorney Roe Simmons represented the Lenox Estate with Dannie Lenox as Personal
Representative in PB-2016-721. (Ex. 1).  On July 21, 2017, a real estate document reveals a sale and
purchase of the deceased' property for 10,000 dollars.  (Ex. 2a). Documents dated on or about July 27,
2017 verify an additional 6,000 dollars was added as a realtor fee. (Ex 2b). It is unclear how this 6,000
or 60% realtor fee could be charged and why the probate court was not notified to approve it.
Documents in (Ex. 2b) show Chicago Title confirmed and facilitated the real estate transaction.  (Ex.
3a) shows that on 8-17-2017 the same property sold for 35,000 and (Ex 3b) is a notarized deed issued
for the sale. (Ex 4) shows Chicago Title established dual escrow accounts for the same property.

Exhibit (5) reveals an announcement Simmons published in the Edmond Sun on August 19 and 26, 2017 for public auction at his office to occur on September 5, 2017 [Note property had already been sold and re-sold at time of Roe Simmons' publication].  (Ex. 6a) shows Simmons signed his name as an officer of the courts to a Motion stating that the property had been sold on September 5, 2017 at his office at an auction to the highest bidder for 10,000 dollars.  (Ex. 6b) is an order from the Probate Judge setting a date to approve the auction sale for 10,000 dollars Roe Simmons told the court happened in (Ex 6a).  (Ex 7) shows on October 18, 2017 the court approved the fraudulent sale by auction at Roe Simmons' office on September 5, 2017 even though Oklahoma County Assessor records were available to the Court, proving otherwise. (Ex. 8a) is an affidavit from purchaser Wazzan Properties LLC who reports no auction was conducted, he purchased the property for 16,000 dollars (not 10,000 dollars) and re-sold it for 35,000 dollars in August 2017 to Plains State.

The affidavit continues to verify attorney Roe Simmons, personal representative Dannie Lenox and attorneys for Chicago Title <u>knowingly participated in a fraudulent sale and misrepresentation to the Probate Court of Oklahoma County.</u>

(Ex. 8b) Reveals the property was sold by Plains State to Pacific Holdings for 115,000 dollars. Exhibit 8(c) shows that no such company exists as registered in Oklahoma, making me wonder whether Chicago Title helped perpetrate fraud through court proceedings.  On July 31, 2020, based on the dishonest conduct of the attorney and personal representative, and title company, the real estate action was set aside by the probate court, three years after it occurred. (Ex. 9a)

The evidence appears overwhelming that attorney Roe Simmons, Dannie Lenox the personal representative, and Chicago Title Company acted contemporaneously to defraud the Lenox Estate and the Court. Exhibit 15a is proof Chicago Title did not receive funds for the sale into its escrow account until October 23, 2017, but issued a check to Simmons on October 18, 2017 (Ex. 15b).  Chase bank records (Ex. 15c) show the October 18, 2017 check was deposited October 19, 2017.  Therefore, Chicago Title appears to have fronted the money for the sham sale when it did not have funds in its escrow account.  This may constitute felonious activity and interstate money transfers triggering federal jurisdiction. Chicago Title's Oklahoma Attorney Cheryl Saxon knew that Roe Simmons filed a fraudulent document on September 20, 2017 in PB-2016-721, (as her emails to Simmons indicate she was watching the OSCN filings per Exhibit 9b) and she did nothing – she did not contact the Bar Association nor did she warn Judge Kirby.  I thought attorneys had to turn in other attorneys who commit crimes and fraud.  It seems neither Simmons nor Saxon was disciplined for fraud on the court.

With an abundance of staggering evidence of fraud, perjury, intimidation of witnesses, and seeming embezzlement, the Gibson/Parks, heirs of the Lenox estate in PB-2016-721 provided proof of these crimes and wrongdoing to agencies responsible for investigating and filing charges for criminal conduct.  (Ex. 10a).  This Texas family has contacted the Bar Association and Attorney General in 2017, as well as the Council on Judicial Complaints (filing a complaint on Judge Richard Kirby for aiding and abetting Roe Simmons and refusing to take judicial notice of County Assessor documents proving Simmons' fraud on the Court).  (Ex. 10b)

## RETALIATION BY JUDICIAL OFFICIALS AFTER FAMILY EXPOSES CORRUPTION

After exposing Roe Simmons' criminal actions in the probate court, Tonya Parks and her mother Frances Gibson went to probate court in April of 2019.  Roe Simmons was able to sequester Frances Gibson and Tonya Parks on the second floor of the law library and had at his disposal sheriff deputies supporting Simmons. A tape recording with sheriff deputy Colt Orman (Ex. 11) corroborates that Judge Henderson and Judge Kirby orchestrated the use of the civil courtrooms as a venue for

sheriff deputies to retaliate against this family and demonstrate threat of force.   Simmons threatened Frances Gibson, and had command of sheriff deputies, even though he is not law enforcement.

An email chain now exists (Exhibit 10d) proving that Roe Simmons was not truly afraid of Bennie Gibson, but rather that he and his firm communicated with lawyers for OAMIC (who gave their promise to protect him at the bar for his retaliatory acts), communicated with Captain Abernathy, and received confirmation from Judge Henderson that a warrant would be issued for Bennie Gibson on April 25, 2019.  This email chain of April 25, 2019 (Ex 10d) in my mind proves without a doubt that Bennie Gibson's questionable charge of harassment for his statements made while at home in North Texas, was created and agreed upon by a group of people involving public officials.

A criminal charge was filed against Bennie Gibson in Oklahoma County on May 30, 2019, alleging harassment, with Attorney Roe Simmons as the victim, and a warrant for Bennie's arrest issued June 3, 2019.  The email chain (Ex 10d) shows Simmons, deputy Abernathy and others were orchestrated with Judge Henderson to issue a warrant April 25, 2017, well before Abernathy claims she first heard from Simmons (April 29, 2019) and well before she ever stepped into court on May 16, 2019, to allegedly "finalize" her investigation.  A tape recording of Deputy Abernathy made around June 6 2019 (Ex 12) contradicts both her probable cause affidavit she purportedly notarized on April 29, 2019 (Ex 12a) and Simmons' April 25, 2019 emails (Ex 10d), that the bar association is aware of.

## FAILURE TO SECURE EVIDENCE OF CRIMINAL ACTS AS FURTHER RETALIATION

I understand Tonya Parks and the family have tape recordings and other evidence requested in 2019 from the Attorney General (agent Reser) to safeguard the videos from the Second Floor of the Courthouse. It is unknown if Mike Hunter's office actually got the video footage proving Roe Simmons forced Ms. Parks and her mother to an enclosed area at the law library under show of force. Hopefully that evidence is not spoliated.

Shortly after Bennie Gibson learned what Simmons had done to his wife and daughter, (Simmons having possibly embezzled from the estate, having threatened Frances Gibson and Tonya Parks with law enforcement at his disposal, having threatened to retaliate against the family if they exposed his criminal acts at trial, and that he would take all of Frances' estate), Bennie had an understandably frictional communication with attorney Roe Simmons who seems to have committed felony crimes.  I would like to know why the Oklahoma County District Attorney's office is pressing a harassment charge, I would like to know which DA signed the information for Bennie Gibson's alleged crime, and I think there is a very real concern that DA may have participated in fruit of poisonous tree premeditated prosecution of Bennie Gibson to include former Judge Henderson.

## TEXAS FAMILY EXHAUSTING GOOD FAITH ATTEMPTS TO HAVE STATE OF OKLAHOMA TAKE ACTION TO CORRECT CORRUPT ACTS OF JUDICIAL EMPLOYEES

Around June 4, 2019, Ms. Parks' father Bennie Gibson learned he had a warrant for his arrest for a minor misdemeanor "harassment" charge.  In investigating the charge, the Texas family learned that Roe Simmons had an ex parte meeting with former Judge Henderson, and they have a tape recording from the courthouse sheriff that Henderson directed a deputy Abernathy to drum up misdemeanor charges.  Because Henderson had sexual affairs with multiple people at the courthouse, it is unknown whether he used his position of power for sexual gratification with Abernathy (a female). The family notified the Attorney General Mike Hunter a second time in August of 2019  (Ex. 10 C)

Documents show Chicago Title hired a private attorney whose billing clearly states the family contacted the Bar Association, Probate Judge (Richard Kirby), Council on Judicial Complaints, and the Attorney General back in late 2017, asking for justice. Ex. 10C. Exhibit 13 is a tape of an OSBI agent Yerton stating the Governor requested an investigation into other crimes by Henderson on April 1, 2021, but that this OSBI did not follow the Governor's directive and was instructed by the AG's office to transfer the investigation to the District Attorney.

## ATTORNEY GENERAL OFFICE INFLUENCING OSBI TO NOT FOLLOW GOVERNOR DIRECTIVE TO INVESTIGATE HENDERSON MISDEEDS

Exhibit 10a includes a letter from District Attorney Kunzweiler, declining to bring charges against Simmons and Henderson, based on an Affidavit Tonya Parks drafted in August of 2021 to recuse a recent judge. Note: the DA's decision appears to have no basis, is irrational, and bizarre.

Ex 14 a tape of OSBI agent (Brad Green). Agent Green admits DA Kunzweiler is untruthful in his letter declining charges (Ex. 10a). Green says the OSBI never conveyed to the DA that the Texas family complaint is about Henderson falsifying a report. The August 2019 letter from the family to Mike Hunter (Ex. 10c) and the recording attached to that letter show Henderson "directed" deputy Abernathy and possibly helped her design charges against Mr. Gibson, a major concern.

The family tells me that Roe Simmons never accounted for the Lenox Estate funds. The Gibson/Parks family has been referred to multiple agencies. This Texas family has presented allegations and evidence to the Oklahoma Bar Association, the Council on Judicial Complaints, Attorney General, OSBI, the Oklahoma County District Attorney, and the Governor's office. Presently, this family has been rejected and ignored by every agency.

After the Parks/Gibson family had been disenfranchised by the entire Criminal Justice System in Oklahoma, attorney Roe Simmons wrongfully solicited the assistance of disgraced Oklahoma County Presiding District Judge Timothy Henderson to cover up crimes. Ex. 11. Judge Henderson met with Oklahoma County Sheriff Deputy Abernathy to direct her in filing charges on Mr. Gibson, to aid Simmons in his intimidation of a witness. Ex. 12. Gibson was charged with making threats to Attorney Simmons after Simmons threatened and treated his wife and daughter in a hostile manner. Because the Attorney General's office represents judges and DA's and the OSBI, the recordings indicate the AG's office may be preventing a true and accurate investigation of victims of corruption.

## CONSTITUTIONAL AND HUMAN RIGHTS VIOLATIONS

Based on the treatment of Mr. Gibson's family, it appears his speech and communications to Attorney Roe Simmons is justified as common terms to describe criminal conduct, and quite possibly be protected under his First Amendment Rights. It is certain Judge Henderson was not to have involvement in the probate case, but he meddled. Judge Henderson's meeting with Deputy Abernathy and directing criminal charges is grossly inappropriate, an abuse of office, and is a complete disgrace.

In closing I wish to convey I have spent a short time reviewing the evidence provided in my report. Without question the evidence absolutely reveals criminal conduct by Attorney Simmons, the Chicago Title Company, the Personal Representative Dannie Lenox, and in the manner Henderson committed overt acts to help Simmons intimidate the family to commit fraud on the court, and commit crimes of embezzlement (taking money out of trust in violation of the law). I find it extremely perplexing the Oklahoma Bar Association, the Council on Judicial Complaints, the Attorney General

Mike Hunter, District Attorney, and OSBI all have failed to investigate and find what appears to be obvious criminal acts, which I established within approximately 30 minutes of reviewing this case.

It is unfathomable that disgraced judge Timothy Henderson would abuse the power of his office by interjecting himself into this Texas family's probate case and directing the Sheriff Deputy to file minor Misdemeanor Criminal Charges on victims of fraud and felony criminal acts. I hope you will meet with me to discuss actions we can take to restore the Gibson/Parks family and ensure other victims are protected from similar Court Corruption.

The scope of my investigation is extremely narrow and limited to what I have seen. However, based upon my 30 years of law enforcement experience and knowledge of investigations, I believe an investigation is more than warranted. I would suggest that evidence be preserved during the transition of power, as I understand that the Oklahoma County DA is being replaced, and that Judge Kirby is not re-elected. Please immediately consider an investigation into the Henderson courthouse during his time there, and investigate Judge Kirby, as it appears that numerous human rights violations have been perpetrated. It appears that Henderson set a culture at the courthouse devoid of morals, and willy nilly was able to have sheriff deputies violate their standard protocols and the law, to help his friends act in furtherance of retaliation against whistleblowers, and appears to have included probate judge Kirby in the scheme to retaliate.

Sincerely,

Cc/ Courtesy copy to General-elect Gentner Drummond

EXHIBIT 1

Filed Pleadings show attorney Roe Simmons and his law firm started representing the Ceola Lenox estate in 2016, and Roe Simmons was the attorney of record for the Personal Representative of the Estate (Dannie Lenox); one of the documents filed is a request to sell Ceola Lenox' house at public auction, stating the house is currently valued at the county assessor at 56,500 dollars

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR 04 2017

RICK W. WARREN
COURT CLERK
89

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF ESTATE OF )
CEOLA M. LENOX, Deceased )    Case No. PB-2016-721
Deceased )

## PETITION TO SELL REAL PROPERTY BY PUBLIC SALE

Dannie Lenox, of Oklahoma City, Oklahoma County, for his Petition to Sell Real Property by Public Sale alleges and states as follows.

1) The Estate of the decedent, Ceola M. Lenox, consists of a home located at 2520 NE 16th Street, Oklahoma City, OK 73117, a parcel of real estate consisting of undeveloped lots located near the intersection of Bryant Avenue and NE 10th Street in Oklahoma City, OK, 73117, and numerous personal items contained inside the home at 2520 NE 16th Street.

2) There are several heirs of the Estate, and the decedent died intestate.

3) The real property located at 2520 NE 16th ST, Oklahoma City, OK 73117 has been appraised at $56,500.

4) The parcel of undeveloped property, legally described as Lots 17, 18, 19, 20, 22, 23, 24, 25 and 26 and the East 8 feet of lot 21 in Block Thirteen (13) in the East Tenth Street Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof, has been appraised at $10,382 in aggregate.

5) It is in the best interest of the Estate to sell the home so the funds may be distributed to the following heirs according to law:

50

Frances Gibson
7200 Oldmill Run
Fort Worth, TX 73133-7038

Johnny Fryer
517 Athena Dr.
Columbia, SC 29223

Leon Lenox
3213 NE 12th Street
Oklahoma City, OK 73117

Dannie Lenox
3806 N. Shadybrook Dr.
Midwest City, OK 73110

WHEREFORE, Petitioner prays a date be appointed for hearing this Petition, and notice be given, as required by law, and upon the final hearing hereof, an Order authorizing the sale of Real Property described in this Petition as the Court deems appropriate and necessary at public sale.

Respectfully Submitted,

Roe T. Simmons, OBA No. 19573
SMITH SIMMONS, PLLC
252 NW 70TH
Oklahoma City, OK  73116
Telephone: (405) 843-1000
Facsimile:  (405) 843-1005
Email: roe@smithsimmons.com
*Attorney for Petitioner*

2

51

## CERTIFICATE OF SERVICE

This is to certify that on the _24th_ day of _April_ 2017, a true and correct copy of *the Petition to Sell Real Property by Public Sale* was deposited in the U.S. Mail, postage prepaid, and/or sent via facsimile, to:

Frances Gibson
7200 Oldmill Run
Fort Worth, TX 73133-7038

Johnny Fryer
517 Athena Dr.
Columbia, SC 29223

Leon Lenox
3213 NE 12th Street
Oklahoma City, OK 73117

Dannie Lenox
3806 N. Shadybrook Dr.
Midwest City, OK 73110

Roe T. Simmons

3

52



*1036689298*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

MAY - 4 2017

RICK WARREN
COURT CLERK
89_____

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF ESTATE OF       )
CEOLA M. LENOX, Deceased          )       Case No. PB-2016-721
Deceased                          )

### ORDER FOR HEARING PETITION TO
### SELL REAL PROPERTY

Petitioner has filed a Petition in this Court to sell Real Property of the Estate by Public Sale. The Court having heard the statements of counsel and being fully advised in the premises hereby Orders and Decrees as follows.

It is therefore ordered that the Petition be heard before this Court in the County Courthouse of Oklahoma County, State of Oklahoma, on _May 17_, 2017 at _9.00 a.m._ before the Honorable Richard Kirby.

It is further ordered that notice of said hearing be given by mail to each of the heirs whose addresses are known, and by publishing same in the Edmond Sun, a newspaper published in said county, all according to law.

Witness my hand and the seal of said Court this _24_ day of _April_, 2017.

_____
The Honorable Richard Kirby,
Judge of the District Court

53

*1036798519*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

MAY 1 8 2017

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

RICK WARREN
COURT CLERK

79_____

IN THE MATTER OF THE                          )
~~ADOPTION~~/ESTATE/~~GUARDIANSHIP~~ OF        )
                                               )
Ceou M. Lenox                                  )     Case No. PB -20 16 - 721
                                               )

COURT MINUTE

Date: MAY 18, 2017                    Judge: Richard W. Kirby

Hearing On:  COURT NOTE Regarding contact from Tonya Parks

~~Ruling By Court~~

On this day, this Court's staff was contacted repeatedly by Tonya Parks regarding the above case, insisting on discussing the case by phone. Staff has advised her that the case can't be discussed by phone and advised her to file any objections she has in writing, set the objection for hearing, and come to Court for the hearing.

Tonya Parks filed, "pro se", a "Request for Licensed Court Reporter" on May 10, 2017 for the hearing set on May 17, but failed to deliver a copy of said pleading to this Court or set it with the Court in violation of Rule 10 of the 7th Judicial Administrative District

Additionally, no parties appeared at the May 17 hearing other than Mr. Simmons on behalf of the original Petitioner. Tonya Parks DID NOT appear, and she was clearly notified of said hearing. Consequently a Court Reporter is not ordered

_____
Richard W. Kirby, Associate District Judge

117

EXHIBIT 2(a)
Chicago Title document from Mid July
2017 showing signed sales documents
from Roe Simmons' client Dannie Lenox,
representative of the estate, to Devel
Hubbard, for 10,000 dollars [no
indication appears on these documents
that the probate court either knew of, or
approved such wholesale real estate
transaction of probate property]

# Real Estate Purchase and Sale Agreement

NOTICE: This is a legal and binding Agreement for the purchase and sale of property. It is appropriate for most BUT NOT ALL such transactions. If this form does not appear to either Buyer or Seller to be appropriate for a particular transaction, you are urged to discuss the purchase or sale with an attorney BEFORE YOU SIGN. Most, but not all, provisions of this Agreement are subject to negotiation prior to execution.

1. THIS Agreement to buy and sell real property is made between:

SELLER: ~~Leon Lenox~~ *DH* *Estate of Cecla M Zenor*

(Names of Sellers)                          hereinafter referred to as "Seller"                          SS/Tax ID (Optional)

ADDRESS: *2520 NE 16th* *Oklahoma City* *OK* *73117*

(Address of Sellers)                          Town/City                          State                          ZIP

BUYER: Devell Hubbard

*Devell Hubbard*

(Names of Buyers)                          hereinafter referred to as "Buyer"                          SS/Tax ID (Optional)

ADDRESS: *6314 W meridran Oklahoma City ok 73112*

(Address of Buyers)                          Town/City                          State                          ZIP

Seller agrees to sell and Buyer agrees to buy for the purchase price and upon the terms and conditions stated herein the real property with all buildings and other improvements thereon and all appurtenances thereto, in the same condition as they were on the date of Buyer's signature, reasonable wear and tear excepted.

2. REAL PROPERTY TO BE PURCHASED:

  a) Street Address: _____ 2520 Ne 16th St _____

  b) City/Town: _____ Oklahoma city _____

Oklahoma___STATE_____ ZIP___73117_____

  c) Described as: _____

3. INCLUDED IN SALE PRICE: The Real Property shall include all items permanently attached to the property on the date Buyer signed this Agreement and: all screens, storm windows, TV antenna, awnings, security, fire and smoke alarms, garage door openers with controls, venetian blinds, curtain/drapery rods, wall to wall carpet, plumbing and heating fixtures (except portable heaters or rented water heaters), light fixtures, shrubbery and plants. Unless mentioned below, all personal property is excluded.

ADDITIONAL PERSONAL PROPERTY, if any, to be included:

There is no leased personal property except:

4. PURCHASE PRICE $ ~~20,000.00~~ *Wax 10,000 DH* payable as follows:

  a) By initial Deposit submitted herewith receipt of which is hereby acknowledged..............................$___1_____

  b) By additional Deposit due upon Sellers Acceptance.....................................$_____1_____

  c) By Proceeds of: Financing as specified in paragraph 6 below......................................$_____

  d) By _____,_____$_____

  e) Balance to be paid by certified check or bank check at Closing.............$___~~19,998.00~~ *Wax DH*

       TOTAL PRICE TO BE PAID (Must equal "Purchase Price").............$___~~20,000.00~~ *$10,000 DH*

5. DEPOSITS: The Deposit(s) specified above shall be made at the stated times. All Deposits shall be made by check, payable to the Listing Broker or the attorney/title company conducting the closing. All checks are subject to collection and failure of collection shall constitute a default. Except at time of closing, when the deposit shall be delivered to Seller or Seller's designee, the Listing Broker shall not pay the Deposit to anyone without the written consent of all parties to this Agreement. In the event any deposit funds payable pursuant to this Agreement are not paid by Buyer, Seller may give written notice of such failure to Buyer. If such notice is given and a period of 3 (three) days pass without Buyer paying the Deposit owed, Seller may declare Buyer in default and shall have the remedies set forth in Paragraph 14.

Initials_____DH _____                                                    Page ___ of ___

**6. FINANCING CONTINGENCY:**
a) Amount $_____ ~~20,000.00~~ *$10,000* _____;    b) Maximum Initial Interest Rate _____%
c) Term: ____ years;  d) Commitment Date:_____

e) Type: ____Conventional Fixed ____Variable ____FHA ____VA ____CHFA ____Other_____ x _____

Buyer's obligation is contingent upon Buyer obtaining financing as specified in this paragraph. Buyer agrees to apply for such financing immediately and diligently pursue a written mortgage commitment on or before the Commitment Date.

f). If Buyer is unable to obtain a written commitment and notifies Seller in writing by 5:00 PM on said Commitment Date, this Agreement shall be null and void and any Deposits shall be immediately returned to Buyer. Otherwise, the Financing Contingency shall be deemed satisfied and this Agreement shall continue in full force and effect.

**7. CONDITION OF PREMISES:** Buyer represents that Buyer has examined the property and is satisfied with the physical condition subject to the Inspection Contingency if applicable. Neither Seller nor any representative of the Seller or Buyer has made any representation or promise other than those expressly stated herein which Buyer has replied upon in making this Agreement.

**8. INSPECTION CONTINGENCY:**
a) Inspections shall be completed and results reported to Seller on or before :_____ 8/15/2017 _____
b) Seller agrees to permit Buyer's designees to inspect the real property during the period from Seller's acceptance until the date set forth in (a) above. If Buyer is not satisfied with the physical condition of the real property, and so notifies Seller in writing prior to the date specified in (a) above, then Buyer may at Buyer's option terminate this Agreement. Buyer may give Seller the option to correct the conditions that are unsatisfactory to the Buyer. Should Buyer elect to terminate this Agreement or Seller is unwilling to correct any unsatisfactory conditions the Buyer shall notify Seller on or before :_____ 8/15/2017_____ of Buyer's election to terminate this Agreement and if terminated this Agreement shall be null and void and any deposit monies paid hereunder shall be returned immediately to Buyer and neither Buyer nor Seller shall have any claims against each other under the terms of this Agreement. If Buyer fails to notify Seller as provided herein, this contingency shall be deemed satisfied and this Agreement shall continue in full force and effect.
c) If initialed below, Buyer does NOT choose to have any inspections performed and WAIVES any rights to object to any defects in the property that would have been disclosed by a full and complete inspections.

**9. STATEMENT RE: LEAD BASED PAINT:** The parties acknowledge that dwelling units constructed prior to 1978 are likely to contain lead-based paint which could create a health hazard. In the event that the real property which is the subject of this Agreement consists of or contains a residential unit built prior to 1978, the parties agree that each party has received, reviewed, signed and annexed hereto a completed Disclosure and acknowledgment Form re: Lead-Based Paint as required by federal HUD/EPA disclosure regulations.

**10. OCCUPANCY, POSSESSION: CLOSING DATE:** __8/25/2017_____
Unless otherwise stated herein, Buyer shall receive exclusive possession and occupancy with keys on Closing Date. The Real Property shall be maintained by Seller until time of Closing and shall be transferred in broom clean condition, free of debris. Buyer shall have the right to a walk-through inspection of the Property within 48 hours prior to the Closing Date. Closing shall be held at an office to be determined by Buyer's attorney in the county where the property is located or at such place as designated by Buyers mortgage lender.

**11. WARRANTY DEED:** Seller agrees to convey fee simple title of the Real Property to Buyer by a good and sufficient Warranty Deed subject only to any and all provisions of any ordinance, municipal regulation, public or private law, restrictions and easements as appear of record, if any, provided they do not affect marketability of title, current real estate taxes, water and sewer charges, and current water and sewer assessment balance, if any; except in those cases where a fiduciary's Deed or other form of court ordered deed may be required to pass title. Seller warrants that Seller has no notice of any outstanding violations from any town, city or State agency relating to the property.

**12. MARKETABLE TITLE:** Title to be conveyed by Seller shall be marketable as determined by the Standards of Title of the Connecticut Bar Association now in force. Seller further agrees to execute such documents as may be reasonably required by Buyer's title insurance company or by Buyer's mortgage lender. Should Seller be unable to convey Marketable Title as defined herein, Buyer may accept such Title as Seller can convey, or may reject the Unmarketable Title, receive back all Deposit money, and declare this Agreement null and void. Upon such rejection and repayment to Buyer of all sums paid on account hereof, together with the reasonable fees for the examination of title, this Agreement shall terminate and the Parties hereto shall be released from all further claims against each other.

**13. ADJUSTMENTS:** Real Estate Taxes will be adjusted as of the Closing Date. All other adjustments, including Association fees, fuel oil, water and sewer usage, interest on sewer or water assessments, utilities, rent, if any, and issues regarding funds at closing and unavailability of releases at closing and like matters shall be adjusted pro rata as of the Closing Date in accordance with the Residential Real Estate Closing Customs of Connecticut, as adopted by the Connecticut Bar Association, now in force. Rent security deposits, if any, shall be credited to Buyer by Seller on the Closing Date and shall include, any interest accrued to the tenant.

**14. BUYER'S DEFAULT:** If Buyer fails to comply with any Terms of this Agreement by the time set forth for compliance and Seller is not in default, Seller shall be entitled to all initial and additional deposit funds provided for in section 4, whether or not Buyer has paid the same, as liquidated damages and both parties shall be relieved of further liability under this Agreement. If legal action is brought to enforce any provision of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees.

**15. RISK OF LOSS, DAMAGE:** All risk of loss or damage to said property by fire, theft or other casualty until delivery of Deed shall be upon the Seller. In the event of loss or damage independently appraised at more than $5,000.00, Buyer shall have the option to receive any insurance payment on account of said damage and take Title, or rescind this Agreement and receive back all Deposit money paid. In such case all rights and obligations of the parties under this Agreement shall terminate.

Initials_____DH_____                                                          Page ___ of ____

16. COMMON INTEREST COMMUNITY: If the property is a unit in a condominium or other common interest community, Seller will deliver the resale documents in accordance with the local statutes and customs.

17. LISTING BROKER: _____ PH#: _____
_____Dual Agent - If the Listing Agent is acting as a Dual Agent, a CONSENT FOR DUAL AGENCY FORM SHALL BE ATTACHED to this Agreement.

COOPERATING BROKER                                         PH#_____ ___ Buyer Agent ___ Sub Agent

18. PROPERTY CONDITION REPORT: Seller and Buyer acknowledge that if a written residential property condition report is required by statute and Seller has not provided Buyer with the required report, Seller will credit Buyer with the statutory fee at closing.

19. EQUAL HOUSING RIGHTS: This Agreement is Subject to all local statutory laws prohibiting discrimination in commercial and residential real estate transactions.

20. ADDENDUM: The following attached Addenda and/or Riders are part of this Agreement:
____ Seller's Property Condition Disclosure;   ___ Agency Disclosure;   ____Title;  ____Lead hazards
____ Dual Agency Consent     ____Multi-family or Commercial Property Rider    ____Other _____

21. ADDITIONAL TERMS AND CONDITIONS: _____
_____

22. FAX TRANSMISSION: The parties acknowledge that this Agreement and any addenda or modification and/or any notices due hereunder may be transmitted between them by facsimile machine, e-FAX, or via email and the parties intend that a faxed document containing either the original and/or copies of the parties' signatures shall be binding and of full effect.

24. ASSIGNABILATY: (CHECK ONE) Buyer _x_ may assign and thereby be released from any further liability under this contract; _ May assign but not be released from liability under this contract; _ or_ May not assign this contract.

23. COMPLETE AGREEMENT: This Agreement contains the entire agreement between Buyer and Seller concerning this transaction and supersedes any and all previous written or oral agreements concerning the Property. Any extensions or modifications of this Agreement shall be in writing signed by the parties.

24. NOTICE: Any notice required or permitted under the Terms of this Agreement by Buyer or Seller shall be in writing addressed to the Party con cerned using the address stated in Paragraph 1 of this Agreement or to such party's attorney or to the party's Listing Broker or Cooperating Broker designated in paragraph 17.

25. BUYER AND SELLER acknowledge receipt of a copy of this Agreement upon their signing same.

26. TIME TO ACCEPT: Seller shall have until _____ 7/22/2017 _____to accept this Agreement.

27. SIGNATURES:


__Devell Hubbard_____7/19/2017_____        _____        _____
Buyer's Signature                  Date                    Seller's Signature                        Date

_Devell D. Hubbard_____     7/20/17       _William H. Perri_       7-30-2017
Buyer's Signature                  Date                    Seller's Signature                        Date


_____  _____        _____  _____
Buyer's Signature                  Date                    Seller's Signature                        Date


                                                                                      Page ___ of ____

# ALTA COMMITMENT FOR TITLE INSURANCE

Issued By:



**CHICAGO TITLE INSURANCE COMPANY**

Commitment Number:

**714051701245**

CHICAGO TITLE INSURANCE COMPANY, a Florida corporation ("Company"), for a valuable consideration, commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest in the land described or referred to in Schedule A, upon payment of the premiums and charges and compliance with the Requirements; all subject to the provisions of Schedules A and B and to the Conditions of this Commitment.

This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A by the Company.

All liability and obligation under this Commitment shall cease and terminate ninety (90) days after the Effective Date or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue the policy or policies is not the fault of the Company.

The Company will provide a sample of the policy form upon request.

This Commitment shall not be valid or binding until countersigned by a validating officer or authorized signatory.

IN WITNESS WHEREOF, CHICAGO TITLE INSURANCE COMPANY has caused its corporate name and seal to be affixed by its duly authorized officers on the date shown in Schedule A.

**Chicago Title Insurance Company**

By:

_____
President

Countersigned By:

_____
Authorized Officer or Agent

Attest:

_____
Secretary

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

ALTA Commitment (06/17/2006)

Printed: 08.07.17 @ 01 57 PM
OK----SPS-1-17-714051701245

**CHICAGO TITLE INSURANCE COMPANY**                    COMMITMENT NO. 714051701245

| ISSUING OFFICE: | FOR SETTLEMENT INQUIRIES, CONTACT: |
|---|---|
| Chicago Title Oklahoma Co.<br>3401 NW 63rd, Suite 300<br>Oklahoma City, OK 73116<br>Main Phone: (405)840-9191 | Escrow Officer: Kaitlin Howard<br>Chicago Title Oklahoma Co.<br>5617 N Classen Blvd., Suite 200<br>Oklahoma City, OK 73118<br>Phone: 405-607-8352   Fax: 405-848-2305<br>Main Phone: 405-848-2140<br>Email: KaitlinH@ctt.com |

Date Prepared: August 2, 2017
-BG / -BG / -KDH
Plat: 23 22
Tax ID: 020050140

## SCHEDULE A

ORDER NO. 714051701245

Property Ref.: 2520 NE 16th St, Oklahoma City, OK 73117

1. Effective Date: July 26, 2017 at 07:30 AM

2. Policy or Policies to be issued:

    a.  ALTA Owner's Policy 2006
        Proposed Insured:   Wazzan Properties LLC
        Policy Amount:     $10,000.00

    b.
        Proposed Insured:   All America Bank
        Policy Amount:     $0.00

3. The estate or interest in the land described or referred to in this Commitment is:

    Fee Simple

4. Title to the estate or interest in the land is at the Effective Date vested in:

    Dannie Lenox, Personal Representative of the Estate of Ceola M. Lenox, deceased by Letters of Administration filed August 4, 2016 in Case No. PB-2016-721 in the District Court of Oklahoma County

5. The land referred to in this Commitment is described as follows:

    **For Tax Map ID(s):   020050140**

    All of Lots Fifteen (15) and Sixteen (16), in Block One (1), of Hassman Heights, an Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof.

### END OF SCHEDULE A

Copyright American Land Title Association. All rights reserved.

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



ALTA Commitment (06/17/2006)

Printed. 08.07.17 @ 01:57 PM
OK----SPS-1-17-714051701245

CHICAGO TITLE INSURANCE COMPANY                          COMMITMENT NO. 714051701245

## SCHEDULE B - SECTION I
## REQUIREMENTS

1.  Payment of the full consideration to, or for the account of, the grantors or mortgagors.

2.  Payment of all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable.

3.  Satisfactory evidence should be had that improvements and/or repairs or alterations thereto are completed; that contractor, subcontractors, labor and materialmen are all paid.

4.  Instrument(s) creating the estate or interest to be insured must be approved, executed and filed for record, to wit:

    a.  Properly Executed deed.

    b.  Properly executed mortgage showing current marital status of mortgagor(s) and joined by spouse(s), if any.

    c.  Obtain assurance that the parties to transaction and their authority are properly identified and disclosed.

5.  Please be advised that our search did not disclose any open mortgages of record. If you should have knowledge of any outstanding obligation, please contact the Title Department immediately for further review prior to closing.

6.  Complete probate proceedings in the Estate of Ceola M. Lenox, and obtain and record deeds from the heirs or complete sales proceedings and obtain and file Personal Representative's Deed.

7.  With respect to Wazzan Properties, LLC furnish the following: (a) Articles of Organization, including any amendments thereto, with evidence of filing in the appropriate governmental office of the state in which the company was formed; (b) Operating Agreement; (c) copy of written instrument appointing a manager or managers; (d) copy of written instrument evidencing the consent to the proposed insured transaction; (e) evidence of Good Standing; (f) tax identification number.

    END OF ITEMS

    NOTE 1:  This Commitment will remain effective for a period of 180 days from July 26, 2017 at 07:30 AM.

    NOTE 2:  Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using Bancserv or other approved third-party service.  Exceptions to this practice must be approved by the Company in advance.

    NOTE 3:  If the application for title insurance was placed by reference to only a street address or tax identification number:
    Based on our records, we believe that the description in this commitment covers the parcel requested, however, if the legal description is incorrect a new commitment must be prepared.
    If the legal description is incorrect, in order to prevent delays, the seller/buyer/borrower must provide the Company and/or settlement agent with the correct legal description intended to be the subject of this transaction.

### END OF SCHEDULE B - SECTION I

Copyright American Land Title Association.  All rights reserved.

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

CHICAGO TITLE INSURANCE COMPANY                    COMMITMENT NO. 714051701245

## SCHEDULE B - SECTION II
## EXCEPTIONS

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

1.    Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the Effective Date but prior to the date the Proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2.    Rights or claims of parties in possession not shown by the public records.

3.    Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land.

4.    Easements, or claims of easements, not shown by the public records.

5.    Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

6.    Taxes or special assessments which are not shown as existing liens by the public records.

7.    Ad Valorem taxes for 2017, and subsequent years, amounts of which are not ascertainable, due or payable.

8.    All interest in and to all oil, gas, coal, metallic ores and other minerals in and under and that may be produced from insured premises, and all rights, interests and estates of whatsoever nature incident to or growing out of said outstanding minerals.

9.    All matters affecting subject property as shown on the Plat of Hassman Heights, recorded in Book 23, Page 22.

10.   Restrictive Covenants recorded in Book 23 of Plats, Page 22, Book 430, Page 216 and Book 474, Page 317, but omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons, which do not provide for reversion or forfeiture of title.

11.   Easement in favor of the City of Oklahoma City recorded in Book 2223, Page 378.

### END OF SCHEDULE B - SECTION II

Copyright American Land Title Association.  All rights reserved.

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



CHICAGO TITLE INSURANCE COMPANY                                    COMMITMENT NO. 714051701245

## CONDITIONS

1.  The term mortgage, when used herein, shall include deed of trust, trust deed, or other security instrument.

2.  If the proposed Insured has or acquired actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge.  If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions.

3.  Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment.  In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4.  This Commitment is a contract to issue one or more title insurance policies and is not an abstract of title or a report of the condition of title.  Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

5.  *The policy to be issued contains an arbitration clause.  All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.  You may review a copy of the arbitration rules at http://www.alta.org.*

## END OF CONDITIONS

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

# EXHIBIT 2(b)

Chicago Title intake document showing July 26, 2017 sale of property from Devel Hubbard to Wazzan Properties for 16,000 dollars, 6,000 of which is a realtor fee called an "Assignment" fee [no acknowledgment or approval by the probate court for either the low sale amount or the 60% realtor fee appears on these documents]

Escrow Officer:        Kaitlin Howard
                       KaitlinH@ctt.com                    *SEE ORDER NOTES*

Processor / Assistant:  Valerie Garcia
                        valerie.garcia@ctt.com

Source of Business:     Kevo Properties          Marketing Rep(s):   Christopher Morris

| Transaction Type | Order Type | Product Type | Policy Type |
|---|---|---|---|
| Purchase | Title & Escrow | Purchase/Resale | Owners Only |

| | | | |
|---|---|---|---|
| **Order Opened Date:** | July 27, 2017 | **Product Due:** | August 8, 2017 |
| **Order Opened By:** | Darci Smith | **Closing Date:** | August 15, 2017 |
| | | **Disbursement Date:** | August 15, 2017 |

**Sales Price:**      $ 10,000.00              **Loan Amount(s):**      $ 0.00

**Policy Code:**  OKCTCT-01 Std Owner

**Owners Policy(ies):**                        **Loan Policy(ies):**
ALTA Owner's Policy 2006
    Liability:    $ 10,000.00
    Premium:  $ 215.00

**Order Status:**      In process           **Underwriter:**  Chicago Title Insurance Company
**Title Status:**                            **Related Order(s):**
**Escrow Status:**     In process

---

**PROPERTY(IES):**

**2520 NE 16th St, Oklahoma City, OK 73117**

| Tax/Map ID(s):    020050140 | County:           Oklahoma |
|---|---|
| | Subdivision:     Hassman Heights Add |
| | Property Type:   Single Family |

Brief Legal:  Lot(s): 15-16  Block: 1  Subdivision: Hassman Heights Add  Tax/Map ID(s):  020050140

---

**BUYER:**   *Wazzan - buyer*

Name:  Devell Hubbard
AKA:
Home:                     Work:  (405)414-4178
Cell:                     Fax:
Email:

Current Address:      6314 N Meridian, Oklahoma City, OK 73112
Forwarding Address:   2520 NE 16th St, Oklahoma City, OK 73117

---

**SELLER:**

Estate of Ceola M Lenox                      Danny Lenox
                                                Email:
Phone:          Fax:                         *PR Deed*
Email:
*Danny Lenox ##-##-## 201-0576*

---

**LISTING AGENT:  (Source of Business)**

| Kevo Properties                          KEVO5225 | **Contact:  Tarek Wazzan** |
|---|---|
| 5225 N. Shartel, #101 | 5225 N. Shartel, #101 |
| Oklahoma City, OK 73118 | Oklahoma City, OK 73118 |
| Phone:  (405)494-7222    Fax: | Phone:              Fax: |
| Email: | Cell:   (405)414-5944 |
| Reference No.: | Email:  tarekinvestments@gmail.com |
| Marketing Rep(s): | |

Yorba Linda, CA 92887
Phone:   (800)724-3958      Fax:
Email:
Reference No.:

## SETTLEMENT AGENT:

Chicago Title Oklahoma Co.                    CTO-405
5617 N Classen Blvd., Suite 200
Oklahoma City, OK 73118
Phone:   405-848-2140        Fax:  405-848-2305
Reference No.:

**Contact:  Kaitlin Howard, Escrow Officer**
5617 N Classen Blvd., Suite 200
Oklahoma City, OK 73118
Phone:  405-607-8352        Fax:
Cell:
Email:  KaitlinH@ctt.com

## SURVEYOR:

Hale & Associates Survey                      HALO1601
1601 S.W. 89th, Suite C-200
Oklahoma City, OK 73159
Phone:   (405)681-0174        Fax:
Email:   survey@halesurvey.com
Reference No.:
Marketing Rep(s):
David Patrick

## TITLE COMPANY:

Chicago Title Oklahoma Co.                    CHIO3401
3401 NW 63rd, Suite 300
Oklahoma City, OK 73116
Phone:   405-840-9191        Fax:  405-843-0568
Email:   LenderExpress@ctt.com
Reference No.:

## UNDERWRITER:

Chicago Title Insurance Company               CT
P.O. Box 45023
Jacksonville, FL 32232-5023
Phone:   (800)654-7041        Fax:
Reference No.:

## ORDER NOTES

| 07/27/2017 | Darci Smith | Abstract out per GET, last ordered First American 6/24/17 |
| 07/27/2017 | Darci Smith | Assignment fee $6,000 |
| 07/27/2017 | Darci Smith | Assignee Wazzan Properties LLC |

Smith, Darci

| | |
|---|---|
| **From:** | Garcia, Valerie |
| **Sent:** | Thursday, July 27, 2017 2:36 PM |
| **To:** | Smith, Darci |
| **Subject:** | 714051701245 Hubbard/Zenox 2520 NE 16th St |
| **Attachments:** | 2520 Ne 16th Assignment.pdf |

New order from Tarek.

**Valerie Garcia**
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK  73118
405-848-2140  main
405-848-2305  fax
www.chicagotitleoklahoma.com

 CHICAGO TITLE
OKLAHOMA

**From:** Tarek [mailto:tarekinvestments@gmail.com]
**Sent:** Thursday, July 27, 2017 2:32 PM
**To:** Garcia, Valerie <valerie.garcia@ctt.com>
**Subject:** Here is my signed document ("2520 Ne 16th Assignment")

Hi Val,

I am buying this property from a wholesaler named Devell. I didn't put the assignment amount because I want to make sure the whole cost of purchase will be $16,000. He has it under contract for 10k and he is coming to sign today and give you the original contract. Thank you!

Thank you,
Tarek Wazzan
405-414-5944

_____

NOTICE: The information contained in this message is proprietary and/or confidential and may be privileged. If you are not the intended recipient of this communication, you are hereby notified to: (i) delete the message and all copies; (ii) do not disclose, distribute or use the message in any manner; and (iii) notify the sender immediately.

# Assignment of Contract Agreement

In consideration of the sum of _6,000_ (Assignment Fee),
_Devell Hubbard_ (Assignor) hereby assigns and otherwise transfers
to _Wazzan Properties LLC._ (Assignee) all rights, title, and interest held by
Assignor in and to the contract described as follows:

Contract dated _7_, 20_17_, between _26_ and
_____ and concerning the property located
at _2520 NE 16th st. Oklahoma City, Ok 73117_.

Assignor warrants and represents that said contract is in full force and effect and is fully
assignable. Assignor further warrants that it has the full right and authority to transfer
said contract and that contract rights herein transferred are free of lien, encumbrance or
adverse claim. Said contract has not been modified and remains on the terms contained
therein.

Assignee hereby assumes and agrees to perform all remaining obligations of Assignor
under the contract and agrees to indemnify and hold Assignor harmless from any claim or
demand resulting from non-performance by Assignee. Assignee shall be entitled to all
monies remaining to be paid under the contract, which rights are also assigned hereunder.

The assignment fee shall be paid at the time of closing to assignor in the form of cash,
official check or wire transfer, and recorded on the hud-1 settlement statement.

Closing shall take place no later than _August 15th_.

Assignee has given a non-refundable deposit of $ _500.00_ to be held in escrow at
_Chicago Title Oklahoma_.

It is hereby acknowledged by Assignee that this Assignment of Contract Agreement and
the original contract for Sale and Purchase is not assignable by Assignee without the
express written authorization of Assignor, authorization of which may be withheld for
any reason by assignor.

This Assignment shall become effective as of the date last executed and shall be binding
upon and inure to the benefit of the parties, their successors and assigns.

_____      _7/27/17_
**Assignor**                          **Date**

_____      _7/27/17_
**Assignee**                          **Date**

# EXHIBIT 3(a)
August 3, 2017 sales document from
Wazzan Properties to Plains State
Holdings, for 35,000 dollars, with closing
to occur in mid August 2017, no mention
is made of approval by the Probate Court

Exhibit E

## Standard Purchase and Sale Agreement

This agreement is made this ___2nd___ day of ___August___ , 20 _17_

between Seller(s) ___RR Homes LLC.___ ╳ ___Wazzan Properties___

and Buyer(s) ___plain state holdings___

and/or assigns.

Seller agrees to sell and buyer agrees to buy the following described real property together with all improvements and fixtures and the personal property described below:

Street Address ___2520 ne 16th st.___

City, State, Zip: ___Oklahoma City, Ok___

Legal description: _____

The purchase price to be paid as follows:

Earnest Money Deposit          $___1,000.00___

Cash to Seller at Closing       $___35,000.00___

Total Purchase Price            $___35,000.00___

1. **EARNEST MONEY** to be deposited with a licensed title company or attorney within 48 hours of acceptance and ratification of offer.

2. **PRORATIONS, IMPOUNDS & SECURITY DEPOSITS:** Loan interest, property taxes, insurance, and rents shall be prorated as of the date of closing. All security deposits shall be transferred to buyer at closing. All impound accounts for taxes and insurance are included in the purchase price and shall be transferred to buyer at closing. Any shortage in these accounts shall be charged to seller at closing.

3. **CLOSING DATE AND TRANSFER OF TITLE:** This transaction shall close on or before ___August 20th___ , 20 _17_ . Closing will be held at ___Chicago Title Oklahoma___ and Seller(s) agree to transfer marketable title free and clear of all encumbrances except those listed and pay any required state taxes or stamps required to record deed and mortgage

4. **DAMAGE TO PROPERTY:** Seller shall maintain property in its current condition and keep it insured against all loss until closing. In the event of destruction covered by insurance, buyer may elect to close and collect the insurance proceeds.

5. **DEFAULTS:** If buyer defaults under this contract, any and all monies deposited by buyer(s) shall be retained by seller as full liquidated damages. If seller defaults, buyer may pursue all remedies allowed by law and seller agrees to be responsible for all costs incurred by buyer as a result of sellers default.

6. **SUCCESSORS AND ASSIGNEES:** The terms and conditions of this contract shall bind all

Exhibit E


EXHIBIT

successors, heirs, administrators, trustees, executors and assignees of the respective parties.

**7. INSPECTION:**(a) Buyer shall have ____0____ days from Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire and utilities service shall be made available by the Seller during the Inspection Period; (b) Buyer shall be responsible for prompt payment for such inspections and repair of damage to and restoration of the Property resulting from such inspections; and (c) if Buyer determines, in Buyer's sole discretion, that the condition of the Property is not acceptable to Buyer, Buyer may cancel this Contract by delivering written notice of such election to Seller prior to the expiration of the Inspection Period. If Buyer timely cancels this Contract, the deposit(s) paid shall be immediately returned to Buyer; thereupon, Buyer and Seller shall be released of all further obligations under this Contract.

**8.** In the event of any title related issues, Buyer and Owner agree to extend this STANDARD OFFER TO PURCHASE REAL ESTATE as necessary to allow time for title correction to occur and a proper closing to be scheduled for all parties. Taxes are prorated at closing.

**9. Closing: Seller Will Pay:** Seller will pay _____0%_____Buyer will pay _____100%_____

**10.** There are no other agreements, promises or understandings between these parties except as specifically set forth herein. This legal and binding Agreement will be construed under _____Oklahoma_____ Law and if not understood, parties should seek competent legal advice. If any signature is faxed or digitally produced it shall have the same legal force and effect as an original ink signature.

**11. Survival of Agreement:** This Agreement shall survive the closing, execution and delivery of the Warranty Deed, as agreed herein by the undersigned. Buyer intends to buy, sell, rent or trade for a profit.

**12. ADDITIONAL TERMS AND CONDITIONS:**

As-Is condition

_____

_____

_____

_____

_____

The undersigned have read the above information, understand it and verify that it is correct.

Date: _____8/2/17_____      Date: _____

Seller: _____      Buyer: _____plain state_____

Seller: _____      Buyer: _____

successors, heirs, administrators, trustees, executors and assignees of the respective parties.

7. INSPECTION:(a) Buyer shall have ___0___ days from Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire and utilities service shall be made available by the Seller during the Inspection Period; (b) Buyer shall be responsible for prompt payment for such inspections and repair of damage to and restoration of the Property resulting from such inspections; and (c) if Buyer determines, in Buyer's sole discretion, that the condition of the Property is not acceptable to Buyer, Buyer may cancel this Contract by delivering written notice of such election to Seller prior to the expiration of the Inspection Period. If Buyer timely cancels this Contract, the deposit(s) paid shall be immediately returned to Buyer; thereupon, Buyer and Seller shall be released of all further obligations under this Contract.

8. In the event of any title related issues, Buyer and Owner agree to extend this STANDARD OFFER TO PURCHASE REAL ESTATE as necessary to allow time for title correction to occur and a proper closing to be scheduled for all parties. Taxes are prorated at closing.

9. Closing: Seller Will Pay: Seller will pay _____ 0% _____Buyer will pay _____ 100% _____

10. There are no other agreements, promises or understandings between these parties except as specifically set forth herein. This legal and binding Agreement will be construed under _____ Oklahoma _____ Law and if not understood, parties should seek competent legal advice. If any signature is faxed or digitally produced it shall have the same legal force and effect as an original ink signature.

11. Survival of Agreement: This Agreement shall survive the closing, execution and delivery of the Warranty Deed, as agreed herein by the undersigned. Buyer intends to buy, sell, rent or trade for a profit.

12. ADDITIONAL TERMS AND CONDITIONS:

As-Is condition

_____

_____

_____

_____

_____

The undersigned have read the above information, understand it and verify that it is correct.

Date: ____8/2/17_____          Date: _____

Seller: _____          Buyer: ___plain state_____

Seller: _____          Buyer: _____

### Standard Purchase and Sale Agreement

This agreement is made this ___2nd___ day of ___August___, 20 _17_

between Seller(s) ___RR Homes LLC.___

and Buyer(s) _____

and/or assigns.

Seller agrees to sell and buyer agrees to buy the following described real property together with all improvements and fixtures and the personal property described below:

Street Address ___2520 ne 16th st.___

City, State, Zip: ___Oklahoma City, Ok___

Legal description: _____

The purchase price to be paid as follows:

| | | |
|---|---|---|
| Earnest Money Deposit | $ | 7,000.00 |
| Cash to Seller at Closing | $ | 35,000.00 |
| Total Purchase Price | $ | 35,000.00 |

**1. EARNEST MONEY** to be deposited with a licensed title company or attorney within 48 hours of acceptance and ratification of offer.

**2. PRORATIONS, IMPOUNDS & SECURITY DEPOSITS:** Loan interest, property taxes, insurance, and rents shall be prorated as of the date of closing. All security deposits shall be transferred to buyer at closing. All impound accounts for taxes and insurance are included in the purchase price and shall be transferred to buyer at closing. Any shortage in these accounts shall be charged to seller at closing.

**3. CLOSING DATE AND TRANSFER OF TITLE:** This transaction shall close on or before ___August 20th___, 20 _17_. Closing will be held at ___Chicago Title Oklahoma___ and Seller(s) agree to transfer marketable title free and clear of all encumbrances except those listed and pay any required state taxes or stamps required to record deed and mortgage

**4. DAMAGE TO PROPERTY:** Seller shall maintain property in its current condition and keep it insured against all loss until closing. In the event of destruction covered by insurance, buyer may elect to close and collect the insurance proceeds.

**5. DEFAULTS:** If buyer defaults under this contract, any and all monies deposited by buyer(s) shall be retained by seller as full liquidated damages. If seller defaults, buyer may pursue all remedies allowed by law and seller agrees to be responsible for all costs incurred by buyer as a result of sellers default.

**6. SUCCESSORS AND ASSIGNEES:** The terms and conditions of this contract shall bind all

successors, heirs, administrators, trustees, executors and assignees of the respective parties.

**7. INSPECTION:**(a) Buyer shall have _____0_____ days from Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire and utilities service shall be made available by the Seller during the Inspection Period; (b) Buyer shall be responsible for prompt payment for such inspections and repair of damage to and restoration of the Property resulting from such inspections; and (c) if Buyer determines, in Buyer's sole discretion, that the condition of the Property is not acceptable to Buyer, Buyer may cancel this Contract by delivering written notice of such election to Seller prior to the expiration of the Inspection Period. If Buyer timely cancels this Contract, the deposit(s) paid shall be immediately returned to Buyer; thereupon, Buyer and Seller shall be released of all further obligations under this Contract.

**8.** In the event of any title related issues, Buyer and Owner agree to extend this STANDARD OFFER TO PURCHASE REAL ESTATE as necessary to allow time for title correction to occur and a proper closing to be scheduled for all parties. Taxes are prorated at closing.

**9. Closing: Seller Will Pay:** Seller will pay _____ 0% _____ Buyer will pay _____ 100% _____

**10.** There are no other agreements, promises or understandings between these parties except as specifically set forth herein. This legal and binding Agreement will be construed under _____ Oklahoma _____ Law and if not understood, parties should seek competent legal advice. If any signature is faxed or digitally produced it shall have the same legal force and effect as an original ink signature.

**11. Survival of Agreement:** This Agreement shall survive the closing, execution and delivery of the Warranty Deed, as agreed herein by the undersigned. Buyer intends to buy, sell, rent or trade for a profit.

**12. ADDITIONAL TERMS AND CONDITIONS:**

    As-Is condition

_____

_____

_____

_____

_____

The undersigned have read the above information, understand it and verify that it is correct.

Date: _____8/2/17_____          Date: _____

Seller: _____          Buyer: _____

Seller: _____          Buyer: _____

# EXHIBIT 3(b)
Chicago Title showing deed issued and notarized on August 17, 2017, from Wazzan Properties to Plains State

DEED 10/20/2017
Page:1575 PageCount:1
Filing Fee:$13.00
Doc. Tax:$51.00
State of Oklahoma
County of Oklahoma
Oklahoma County Clerk
David B. Hooten

(Limited Liability Company Form)
**WARRANTY DEED**
(Oklahoma Statutory Form)

KNOW ALL MEN BY THESE PRESENTS:

THAT **Wazzan Properties, LLC** party of the first part, in consideration of the sum of Ten And No/100 Dollars ($10.00) and other valuable considerations to it in hand paid, the receipt of which is hereby acknowledged does hereby grant, bargain, sell and convey unto **Plains States Holdings, LLC** party of the second part, the following described real property and premises situate in Oklahoma County, State of Oklahoma, to-wit:

For Tax Map ID(s):     020050140

All of Lots Fifteen (15) and Sixteen (16), in Block One (1), of Hassman Heights, an Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof.

Subject to easements, rights of way and restrictive covenants of record.  Less and except all oil, gas and other minerals previously reserved or conveyed of record.

Together with all the improvements thereon and the appurtenances thereunto belonging, and warrant the title to the same.

TO HAVE AND TO HOLD said described premises unto the said parties of the second part, its successors, heirs and assigns, forever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and encumbrances of whatsoever nature.

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

Signed and delivered August 26, 2017.

Wazzan Properties, LLC

BY: _____
Tarek Wazzan, Manager

BY: _____
Ahmad Wazzan, Manager

The State of OKLAHOMA

LLC ACKNOWLEDGMENT

County of OKLAHOMA

Before me, the undersigned, a Notary Public, in and for said County and State, on this ___14___ day of ____August____, 20_17_ personally appeared Tarek Wazzan, Manager & Ahmad Wazzan, Manager of Wazzan Properties, LLC to me known to be the identical person(s) who signed the name of the maker thereof to the within foregoing instrument as its Manager, and acknowledged to me that he/she executed the same as his/her free and voluntary act and deed, for the uses and purposes therein set forth.

Given under my hand and seal the day and year last above written.

Notary Public in and for the State of _____
Notary's Printed Name: _____
Notary's Commission Expires: _____

Mail Deed To:
Youval Zive, Manager
Plains States Holdings, LLC
2520 NE 16th St
Oklahoma City, OK  73117

Mail Tax Statement To:

714051701271
Return to:
CHICAGO TITLE OKLAHOMA
3401 NW 63RD ST., STE.300
OKLAHOMA CITY, OK 73116

Deed (Statutory Warranty)
OKD1047.doc / Updated:  02.03.17

Page 1

Printed: 08.17.17 @ 02:02 PM by KDH
OK-CT-FCAB-02371.460405-714051701271



CERTIFIED COPY

JUN 12 2020

DAVID B. HOOTEN
County Clerk, Oklahoma County
By: _____ Deputy



2017120011462290
DEED 08/21/2017
02:21:21 PM Book:13571
Page:1575  PageCount:1
Filing Fee:$13.00
Doc. Tax:$51.00
State of Oklahoma
County of Oklahoma
Oklahoma County Clerk
David B. Hooten

### (Limited Liability Company Form)
### WARRANTY DEED
### (Oklahoma Statutory Form)

KNOW ALL MEN BY THESE PRESENTS:

THAT **Wazzan Properties, LLC** party of the first part, in consideration of the sum of Ten And No/100 Dollars ($10.00) and other valuable considerations to it in hand paid, the receipt of which is hereby acknowledged does hereby grant, bargain, sell and convey unto **Plains States Holdings, LLC** party of the second part, the following described real property and premises situate in Oklahoma County, State of Oklahoma, to-wit:

**For Tax Map ID(s):      020050140**

All of Lots Fifteen (15) and Sixteen (16), in Block One (1), of Hassman Heights, an Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof.

Subject to easements, rights of way and restrictive covenants of record.  Less and except all oil, gas and other minerals previously reserved or conveyed of record.

Together with all the improvements thereon and the appurtenances thereunto belonging, and warrant the title to the same.

TO HAVE AND TO HOLD said described premises unto the said parties of the second part, its successors, heirs and assigns, forever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and encumbrances of whatsoever nature.

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

Signed and delivered August 20, 2017.

Wazzan Properties, LLC

BY: _____
Tarek Wazzan, Manager

BY: _____
Ahmad Wazzan, Manager

The State of OKLAHOMA

LLC ACKNOWLEDGMENT

County of OKLAHOMA

Before me, the undersigned, a Notary Public, in and for said County and State, on this ___ day of _____, 20___ personally appeared Tarek Wazzan, Manager & Ahmad Wazzan, Manager of Wazzan Properties, LLC to me known to be the identical person(s) who signed the name of the maker thereof to the within foregoing instrument as its Manager, and acknowledged to me that he/she executed the same as his/her free and voluntary act and deed, for the uses and purposes therein set forth.

Given under my hand and seal the day and year last above written.

Notary Public in and for the State of _____
Notary's Printed Name: _____
Notary's Commission Expires: _____

Mail Deed To:
Youval Zive, Manager
Plains States Holdings, LLC
2520 NE 16th St.
Oklahoma City, OK 73117

**Mail Tax Statement To:**

714051701271
Return to:
**CHICAGO TITLE OKLAHOMA**
3401 NW 63RD ST., STE.300
OKLAHOMA CITY, OK 73116

Deed (Statutory Warranty)
OKD1067.doc / Updated: 02.03.17

Page 1

Printed:  08.17.17 @ 02:02 PM by KDH
OK-CT-/ CAR 02371.460405-714051701271





# CHICAGO TITLE
### OKLAHOMA

**SUBSTITUTE FORM 1099-S**

Proceeds from Real Estate Transactions as required by the Internal Revenue Service

*You are required by law to provide Chicago Title Oklahoma Co. with your correct taxpayer identification number.  If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.*

Branch Address
Chicago Title Oklahoma Co.
5617 N Classen Blvd., Suite 200
Oklahoma City, OK 73118
County Oklahoma

This is important tax information and is being furnished to the Internal Revenue Service, as required by section 1521 of the Tax Reform Act of 1986.  If you are required to file a return, a negligence penalty or other sanction will be imposed if this income is taxable and the IRS determines that it has not been reported.

Escrow No.: 714051701271

Date of closing:

**PROPERTY ADDRESS OR LEGAL DESCRIPTION**
2520 NE 16th St, Oklahoma City OK 73117

Assessor's Parcel Number (APN) -

**PROCEEDS FOR THIS SALE WENT TO:  (MULTIPLE SELLERS - Use one form for each seller.  Treat husband and wife as one seller (filing joint tax returns) unless requested otherwise, then separate forms must be used.)**

1.  _Warran Properties LLC_
Sellers Name (First, MI, Last or Entity Name)

Federal Tax ID# for this seller
(List only the Tax ID# for the seller listed on Line 1, spouse Tax ID# not required.  Executor/Trustee should not list their name as the seller unless they are going to report the proceeds on their personal income tax return.  Disregarded entities should provide the name and Tax ID# of the responsible person/entity.)

2.  
Spouse or Personal Representative

**TOTAL CONSIDERATION**

$ _35000_   Total Consideration
_100_ %   % Percentage of ownership for this seller
$ _100_   GROSS Allocated Proceeds
*(Total consideration multiplied by percentage of ownership)*

☐ Exchange (If checked)

$_____   Tax Credit to Seller (Real property tax credits to seller contained in the 400 series of the HUD-1 or comparable closing statement form).

**MAILING ADDRESS AFTER CLOSE:**

_2410 W. Memorial Rd. Ste. C 308_
_OKC, OK 73134_

☐ Check here if the address is outside of the U.S.A.

☐ Check here if you are a foreign person per IRS regulations (nonresident alien, foreign partnership, foreign estate, or foreign trust).  Do not sign below.

Under penalties of perjury, I certify that I am a U.S. person or U.S. resident alien and the number shown on this statement is my correct taxpayer identification number.

_____   _8-17-17_
Transferor's Signature                          Date

_____   _____
Spouse                                               Date

Retain for 4 years

1099-S (Substitution) (1099) (10-03) (Rev. 09-12)
SSCORPO0265.doc

Page 1

Printed: 08.17.17 @ 02:03 PM by KOH
OK-CT-FCAB-02371.460405-714051701271

# EXHIBIT 4

Documents proving Chicago Title opened dual escrow accounts for the same property, and that the transaction was a "double escrow flip," where the later sale funds the first one.  Note that Chicago Title and its escrow agents are familiar/comfortable with the purchaser's creation of a double escrow scenario

# CHICAGO TITLE
## OKLAHOMA

OPEN ORDER SHEET
(ORDER SUMMARY) WITH NOTES

| | |
|---|---|
| **Title Officer/Examiner:** | |
| **Escrow Officer:** | Kaitlin Howard<br>KaitlinH@ctt.com |
| **Processor / Assistant:** | Valerie Garcia<br>valerie.garcia@ctt.com |
| **Source of Business:** | Kevo Properties |

**714051701271**

***SEE ORDER NOTES***

| | | **Marketing Rep(s):** | Christopher Morris |
|---|---|---|---|

| Transaction Type | Order Type | Product Type | Policy Type |
|---|---|---|---|
| Purchase | Title & Escrow | Purchase/Resale | Simultaneous |

| | | | |
|---|---|---|---|
| **Order Opened Date:** | August 3, 2017 | **Product Due:** | August 17, 2017 |
| **Order Opened By:** | Darci Smith | **Closing Date:** | August 20, 2017 |
| | | **Disbursement Date:** | August 20, 2017 |
| **Sales Price:** | $ 35,000.00 | **Loan Amount(s):** | $ 0.00 |

**Policy Code:** OKCTCT-01 Std Own / Std Loan

| Owners Policy(ies) | Loan Policy(ies) |
|---|---|
| ALTA Owner's Policy 2006 | ALTA Loan Policy 2006 |
|   Liability: $ 35,000.00 |   Liability: $ 0.00 |
|   Premium: $ 215.00 |   Premium: $ 0.00 |

| | | | |
|---|---|---|---|
| **Order Status:** | In process | **Underwriter:** | Chicago Title Insurance Company |
| **Title Status:** | | **Related Order(s):** | |
| **Escrow Status:** | In process | | |

## PROPERTY(IES):

**2520 NE 16th St, Oklahoma City, OK 73117**

| Tax/Map ID(s): 020050140 | County: Oklahoma<br>Subdivision: Hassman Heights Add<br>Property Type: Single Family |
|---|---|

Brief Legal: Lot(s): 15-16   Block: 1   Subdivision: Hassman Heights Add   Tax/Map ID(s): 020050140

## BUYER:

Plain State Holdings

Phone:        Fax:
Email:

## SELLER:

RR Homes LLC

Phone:        Fax:
Email:

## LISTING AGENT: (Source of Business)

| Kevo Properties       KEVO5225<br>5225 N. Shartel, #101<br>Oklahoma City, OK 73118<br>Phone: (405)494-7222    Fax:<br>Email:<br>Reference No.:<br>Marketing Rep(s):<br>Christopher Morris | **Contact:** Tarek Wazzan<br>5225 N. Shartel, #101<br>Oklahoma City, OK 73118<br>Phone:        Fax:<br>Cell: (405)414-5944<br>Email: tarekinvestments@gmail.com |
|---|---|

## OPEN ORDER SHEET
## (ORDER SUMMARY) WITH NOTES
(continued)

| OTHER: | |
|---|---|
| Bancserv                                          BANY22800<br>22800 Savi Ranch Parkway, Suite 208<br>Yorba Linda, CA 92887<br>Phone:   (800)721-5558         Fax:<br>Email:<br>Reference No.: | |

| SETTLEMENT AGENT: | |
|---|---|
| Chicago Title Oklahoma Co.                        CTO-405<br>5617 N Classen Blvd., Suite 200<br>Oklahoma City, OK 73118<br>Phone:   405-848-2140         Fax: 405-848-2305<br>Reference No.: | Contact:  Kaitlin Howard, Escrow Officer<br>5617 N Classen Blvd., Suite 200<br>Oklahoma City, OK 73118<br>Phone: 405-607-8352          Fax:<br>Cell:<br>Email:   KaitlinH@ctt.com |

| SURVEYOR: | |
|---|---|
| Hale & Associates Survey                          HALO1601<br>1601 S.W. 89th, Suite C-200<br>Oklahoma City, OK 73159<br>Phone:   (405)681-0174         Fax:<br>Email:   survey@halesurvey.com<br>Reference No.:<br>Marketing Rep(s):<br>David Patrick | |

| TITLE COMPANY: | |
|---|---|
| Chicago Title Oklahoma Co.                        CHIO3401<br>3401 NW 63rd, Suite 300<br>Oklahoma City, OK 73116<br>Phone:   405-840-9191         Fax: 405-843-0568<br>Email:   LenderExpress@ctt.com<br>Reference No.: | |

| UNDERWRITER: | |
|---|---|
| Chicago Title Insurance Company                   CT<br>P.O. Box 45023<br>Jacksonville, FL 32232-5023<br>Phone:   (800)654-7041         Fax:<br>Reference No.: | |

| ORDER NOTES | | |
|---|---|---|
| 08/03/2017 | Darci Smith | this is a double escrow flip with file # 714051701245 |

# CHICAGO TITLE
## OKLAHOMA

OPEN ORDER SHEET
(ORDER SUMMARY) WITH NOTES

| | |
|---|---|
| **Title Officer/Examiner:** | **714051701271** |
| **Escrow Officer:** | Kaitlin Howard<br>KaitlinH@ctt.com |
| | **\*SEE ORDER NOTES\*** |
| **Processor / Assistant:** | Valerie Garcia<br>valerie.garcia@ctt.com |
| **Source of Business:** | Kevo Properties |
| | **Marketing Rep(s):** Christopher Morris |

| Transaction Type | Order Type | Product Type | Policy Type |
|---|---|---|---|
| Purchase | Title & Escrow | Purchase/Resale | Simultaneous |

| | | | |
|---|---|---|---|
| **Order Opened Date:** | August 3, 2017 | **Product Due:** | August 17, 2017 |
| **Order Opened By:** | Darci Smith | **Closing Date:** | August 20, 2017 |
| | | **Disbursement Date:** | August 20, 2017 |
| **Sales Price:** | $ 35,000.00 | **Loan Amount(s):** | $ 0.00 |

**Policy Code:** OKCTCT-01 Std Own / Std Loan

| **Owners Policy(ies):** | **Loan Policy(ies):** |
|---|---|
| ALTA Owner's Policy 2006 | ALTA Loan Policy 2006 |
|    Liability:  $ 35,000.00 |    Liability:  $ 0.00 |
|    Premium:  $ 215.00 |    Premium:  $ 0.00 |
| **Order Status:**  In process | **Underwriter:** Chicago Title Insurance Company |
| **Title Status:** | **Related Order(s):** |
| **Escrow Status:**  In process | |

## PROPERTY(IES):

**2520 NE 16th St, Oklahoma City, OK 73117**

| | |
|---|---|
| Tax/Map ID(s):  020050140 | County:    Oklahoma<br>Subdivision:  Hassman Heights Add<br>Property Type:  Single Family |

Brief Legal: Lot(s): 15-16   Block: 1   Subdivision: Hassman Heights Add   Tax/Map ID(s): 020050140

## BUYER:

Plain State Holdings

Phone:    Fax:
Email:

## SELLER:

RR Homes LLC

Phone:    Fax:
Email:

## LISTING AGENT: (Source of Business)

| | |
|---|---|
| Kevo Properties       KEVO5225<br>5225 N. Shartel, #101<br>Oklahoma City, OK 73118<br>Phone:  (405)494-7222    Fax:<br>Email:<br>Reference No.:<br>Marketing Rep(s):<br>Christopher Morris | **Contact:  Tarek Wazzan**<br>5225 N. Shartel, #101<br>Oklahoma City, OK 73118<br>Phone:    Fax:<br>Cell:  (405)414-5944<br>Email:  tarekinvestments@gmail.com |

**OPEN ORDER SHEET**
**(ORDER SUMMARY) WITH NOTES**
(continued)

| OTHER: | |
|---|---|
| Bancserv | BANY22800 |
| 22800 Savi Ranch Parkway, Suite 208 | |
| Yorba Linda, CA 92887 | |
| Phone:   (800)721-5558         Fax: | |
| Email: | |
| Reference No.: | |

| SETTLEMENT AGENT: | |
|---|---|
| Chicago Title Oklahoma Co.            CTO-405 | **Contact:  Kaitlin Howard, Escrow Officer** |
| 5617 N Classen Blvd., Suite 200 | 5617 N Classen Blvd., Suite 200 |
| Oklahoma City, OK 73118 | Oklahoma City, OK 73118 |
| Phone:  405-848-2140      Fax: 405-848-2305 | Phone: 405-607-8352         Fax: |
| Reference No.: | Cell: |
| | Email:  KaitlinH@ctt.com |

| SURVEYOR: | |
|---|---|
| Hale & Associates Survey            HALO1601 | |
| 1601 S.W. 89th, Suite C-200 | |
| Oklahoma City, OK 73159 | |
| Phone:  (405)681-0174       Fax: | |
| Email:   survey@halesurvey.com | |
| Reference No.: | |
| Marketing Rep(s): | |
| David Patrick | |

| TITLE COMPANY: | |
|---|---|
| Chicago Title Oklahoma Co.            CHIO3401 | |
| 3401 NW 63rd, Suite 300 | |
| Oklahoma City, OK 73116 | |
| Phone:  405-840-9191      Fax: 405-843-0568 | |
| Email:   LenderExpress@ctt.com | |
| Reference No.: | |

| UNDERWRITER: | |
|---|---|
| Chicago Title Insurance Company            CT | |
| P.O. Box 45023 | |
| Jacksonville, FL 32232-5023 | |
| Phone:  (800)654-7041        Fax: | |
| Reference No.: | |

| ORDER NOTES | | |
|---|---|---|
| 08/03/2017 | Darci Smith | this is a double escrow flip with file # 714051701245 |



**CHICAGO TITLE**
OKLAHOMA

**OPEN ORDER SHEET**
**(ORDER SUMMARY) WITH NOTES**

| | |
|---|---|
| **Title Officer/Examiner:** | **714051701271** |
| **Escrow Officer:** Kaitlin Howard  KaitlinH@ctt.com | **\*SEE ORDER NOTES\*** |
| **Processor / Assistant:** Valerie Garcia  valerie.garcia@ctt.com | |
| **Source of Business:** Kevo Properties | **Marketing Rep(s):** Christopher Morris |

| Transaction Type | Order Type | Product Type | Policy Type |
|---|---|---|---|
| Purchase | Title & Escrow | Purchase/Resale | Simultaneous |

| | | | |
|---|---|---|---|
| **Order Opened Date:** | August 3, 2017 | **Product Due:** | August 17, 2017 |
| **Order Opened By:** | Darci Smith | **Closing Date:** | August 20, 2017 |
| | | **Disbursement Date:** | August 20, 2017 |
| **Sales Price:** | $ 35,000.00 | **Loan Amount(s):** | $ 0.00 |

**Policy Code:** OKCTCT-01 Std Own / Std Loan

| | |
|---|---|
| **Owners Policy(ies):** ALTA Owner's Policy 2006  Liability: $ 35,000.00  Premium: $ 215.00 | **Loan Policy(ies):** ALTA Loan Policy 2006  Liability: $ 0.00  Premium: $ 0.00 |
| **Order Status:** In process  **Title Status:**  **Escrow Status:** In process | **Underwriter:** Chicago Title Insurance Company  **Related Order(s):** |

**PROPERTY(IES):**

**2520 NE 16th St, Oklahoma City, OK 73117**

| | |
|---|---|
| Tax/Map ID(s): 020050140 | **County:** Oklahoma  **Subdivision:** Hassman Heights Add  **Property Type:** Single Family |

Brief Legal: Lot(s): 15-16 Block: 1 Subdivision: Hassman Heights Add Tax/Map ID(s): 020050140

**BUYER:**

Plain State Holdings

Phone:      Fax: *Raya 917-797-9944*
Email:           *Raya 36?? @yahoo*

**SELLER:**

RR Homes LLC

Phone:      Fax:
Email:

**LISTING AGENT: (Source of Business)**

| | | |
|---|---|---|
| Kevo Properties | KEVO5225 | **Contact:** Tarek Wazzan |
| 5225 N. Shartel, #101 | | 5225 N. Shartel, #101 |
| Oklahoma City, OK 73118 | | Oklahoma City, OK 73118 |
| Phone: (405)494-7222 | Fax: | Phone:      Fax: |
| Email: | | Cell: (405)414-5944 |
| Reference No.: | | Email: tarekinvestments@gmail.com |
| Marketing Rep(s): | | |
| Christopher Morris | | |

# OPEN ORDER SHEET
## (ORDER SUMMARY) WITH NOTES
(continued)

### OTHER:

| | |
|---|---|
| Bancserv                 BANY22800<br>22800 Savi Ranch Parkway, Suite 208<br>Yorba Linda, CA 92887<br>Phone:  (800)721-5558    Fax:<br>Email:<br>Reference No.: | |

### SETTLEMENT AGENT:

| | |
|---|---|
| Chicago Title Oklahoma Co.     CTO-405<br>5617 N Classen Blvd., Suite 200<br>Oklahoma City, OK 73118<br>Phone:  405-848-2140    Fax: 405-848-2305<br>Reference No.: | **Contact:  Kaitlin Howard, Escrow Officer**<br>5617 N Classen Blvd., Suite 200<br>Oklahoma City, OK 73118<br>Phone: 405-607-8352    Fax:<br>Cell:<br>Email:  KaitlinH@ctt.com |

### SURVEYOR:

| | |
|---|---|
| Hale & Associates Survey      HALO1601<br>1601 S.W. 89th, Suite C-200<br>Oklahoma City, OK 73159<br>Phone:  (405)681-0174    Fax:<br>Email:  survey@halesurvey.com<br>Reference No.:<br>Marketing Rep(s):<br>David Patrick | |

### TITLE COMPANY:

| | |
|---|---|
| Chicago Title Oklahoma Co.     CHIO3401<br>3401 NW 63rd, Suite 300<br>Oklahoma City, OK 73116<br>Phone:  405-840-9191    Fax: 405-843-0568<br>Email:  LenderExpress@ctt.com<br>Reference No.: | |

### UNDERWRITER:

| | |
|---|---|
| Chicago Title Insurance Company    CT<br>P.O. Box 45023<br>Jacksonville, FL 32232-5023<br>Phone: : (800)654-7041    Fax:<br>Reference No.: | |

### ORDER NOTES

| 08/03/2017 | Darci Smith | this is a double escrow flip with file # 714051701245 |
|---|---|---|

# EXHIBIT 5

Attorney Roe Simmons publishes in the
Edmond Sun on August 19 and 26, 2017, a
public notice that the same house is set to
be sold at auction at his office on
September 5, 2017 to the highest bidder
[even though the property had already
been sold twice before August 19, 2017]



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

SEP 2 0 2017

RICK WARREN
COURT CLERK

IN THE MATTER OF ESTATE OF )                        37
CEOLA M. LENOX, Deceased )
Deceased )                        Case No. PB-2016-721

## CERTIFICATE FOR PROOF OF PUBLICATION

I, Roe T. Simmons, attorney for Dannie Lenox, Personal Representative, certify
that notice of the sale of property has been given to all  one of the defendants in the
action, by publication service pursuant to Fed. R. Civ. P. 71.1(d)(3)(B) by publication of
the notice once a week for two consecutive weeks beginning on August 19, 2017, in The
Edmond Sun, a newspaper published in Oklahoma County, Oklahoma in which is located
the property of the decedent that is to be sold.

A printed copy of the published notice is attached with the name of the newspaper

in which it was published and the dates of its publication marked on it.

Dated: September 20, 2017

Respectfully submitted,

Roe T. Simmons, OBA No. 19573
**SMITH SIMMONS, PLLC**
252 NW 70TH
Oklahoma City, OK 73116
Phone: (405) 843-1000
Facsimile: (405) 843-1005
Email: roe@smithsimmons.com

## CERTIFICATE OF SERVICE

This is to certify that on the 20ᵗʰ day of September 2017, a true and correct copy of *Application for Order Approving Sale of Real Property* was deposited in the U.S. Mail, postage prepaid, and/or sent via facsimile, to:

Frances Gibson
7200 Oldmill Run
Fort Worth, TX 73133-7038

Johnny Fryer
517 Athena Dr.
Columbia, SC 29223

Leon Lenox
3213 NE 12ᵗʰ Street
Oklahoma City, OK 73117

Dannie Lenox
3806 N. Shadybrook Dr.
Midwest City, OK 73110

Roe T. Simmons

2

*(Notice as published)*

**(LPXLP)**
Published in The Edmond Sun,
Edmond, Oklahoma 73034,
August 19 and 26, 2017.
**NOTICE OF SALE
OF REAL PROPERTY
CASE NO. PB-2016-721**
IN THE DISTRICT COURT OF
OKLAHOMA COUNTY, STATE OF
OKLAHOMA
**IN THE MATTER OF THE ES-
TATE OF CEOLA M. LENOX, DE-
CEASED**

Notice is hereby given that pur-
suant to the Approval of the District
Court of the County of Oklahoma,
State of Oklahoma, on May 17,
2017, in the matter of the Estate of
Ceola M. Lenox, deceased, Dannie
Lenox, an heir to the Estate, will
sell at public auction to the highest
bidder, subject to confirmation of
said District Court, at 10:00 AM on
the 5thday of September, 2017, at
the offices of Smith Simmons,
PLLC, 252 NW 70th, Oklahoma
City, OK 73116, all of the Estate's
right title and interest in and to the
following real property situated in
the County of Oklahoma, State of
Oklahoma, legally described as fol-
lows:

Hassman Heights Addition,
Block 001, Lots 15 & 16 (street
address 2520 NE 16thStreet,
Oklahoma City, OK 73117).
Dated this 21st day of August,
2017.
Respectfully submitted,
Roe T. Simmons, OBA No. 19573
252 NW 70th
Oklahoma City, OK 73116
Phone: (405) 831-1000
Fax: (405) 843-1005
Email: roe@smithsimmons.com
Attorney for Dannie Lenox

# Proof of Publication

### Oklahoma County, State of Oklahoma

NOTICE OF SALE OF REAL
PROPERTY

Case No: CASE PB-2016-721

### Affidavit of Publication

State of Oklahoma, County of Oklahoma, ss:
I, the undersigned publisher, editor or Authorized Agent of the Legal
Notices, do solemnly swear that the attached advertisement was
published in said paper as follows:

1st Publication        August 19, 2017
2nd Publication       August 26, 2017

That said newspaper is in the city of Edmond, Oklahoma County,
Oklahoma, a Daily newspaper qualified to publish legal notices,
advertisements and publications as provided in Section 106 of Title
25, Oklahoma Statutes 1971, as amended, and complies with all
other requirements of the laws of Oklahoma with reference to legal
publications.

That said Notice, a true copy of which is attached hereto, was
published in the regular edition of said newspaper during the period
and time of publications and not in a supplement, on the above

_____
**Signature**

Subscribed and sworn before me on this 28th day of August 2017.

STEPHANIE MOLER
Notary Public
State of Oklahoma
Commission # 15001187 Expires

My commission expires February 6, 2019.      Notary Public
Commission # 15001187

**Cost of Publication $ 60.09**
**Ad # 00451056     Acct # 23163295**



**Publisher's Address:**
The Edmond Sun
P. O. Box 2470
Edmond, OK 73034-7363



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

SEP 2 0 2017

RICK WARREN
COURT CLERK

IN THE MATTER OF ESTATE OF ⟩
CEOLA M. LENOX, Deceased ⟩
Deceased ⟩

37_____

Case No. PB-2016-721

## CERTIFICATE FOR PROOF OF PUBLICATION

I, Roe T. Simmons, attorney for Dannie Lenox, Personal Representative, certify

that notice of the sale of property has been given to all  one of the defendants in the

action, by publication service pursuant to Fed. R. Civ. P. 71.1(d)(3)(B) by publication of

the notice once a week for two consecutive weeks beginning on August 19, 2017, in The

Edmond Sun, a newspaper published in Oklahoma County, Oklahoma in which is located

the property of the decedent that is to be sold.

A printed copy of the published notice is attached with the name of the newspaper

in which it was published and the dates of its publication marked on it.

Dated: September 20, 2017

Respectfully submitted,

Roe T. Simmons, OBA No. 19573
**SMITH SIMMONS, PLLC**
252 NW 70TH
Oklahoma City, OK 73116
Phone: (405) 843-1000
Facsimile: (405) 843-1005
Email: roe@smithsimmons.com

## CERTIFICATE OF SERVICE

This is to certify that on the 20th day of September 2017, a true and correct copy of *Application for Order Approving Sale of Real Property* was deposited in the U.S. Mail, postage prepaid, and/or sent via facsimile, to:

Frances Gibson
7200 Oldmill Run
Fort Worth, TX 73133-7038

Johnny Fryer
517 Athena Dr.
Columbia, SC 29223

Leon Lenox
3213 NE 12th Street
Oklahoma City, OK 73117

Dannie Lenox
3806 N. Shadybrook Dr.
Midwest City, OK 73110

Roe T. Simmons

2

*(Notice as published)*

**(LPXLP)**
Published in The Edmond Sun,
Edmond, Oklahoma 73034,
August 19 and 26, 2017.
NOTICE OF SALE
OF REAL PROPERTY
CASE NO. PB-2016-721
IN THE DISTRICT COURT OF
OKLAHOMA COUNTY, STATE OF
OKLAHOMA
IN THE MATTER OF THE ES-
TATE OF CEOLA M. LENOX, DE-
CEASED
  Notice is hereby given that pur-
suant to the Approval of the District
Court of the County of Oklahoma,
State of Oklahoma, on May 17,
2017, in the matter of the Estate of
Ceola M. Lenox, deceased, Dannie
Lenox, an heir to the Estate, will
sell at public auction to the highest
bidder, subject to confirmation of
said District Court, at 10:00 AM on
the 5thday of September, 2017, at
the offices of Smith Simmons,
PLLC, 252 NW 70th, Oklahoma
City, OK 73116, all of the Estate's
right title and interest in and to the
following real property situated in
the County of Oklahoma, State of
Oklahoma, legally described as fol-
lows:
  Hassman Heights Addition,
  Block 001, Lots 15 & 16 (street
  address 2520 NE 18thStreet,
  Oklahoma City, OK 73117).
Dated this 21st day of August,
2017.
Respectfully submitted,
Roe T. Simmons, OBA No. 19573
252 NW 70th
Oklahoma City, OK 73116
Phone: (405) 831-1000
Fax: (405) 843-1005
Email: roe@smithsimmons.com
Attorney for Dannie Lenox

# Proof of Publication

Oklahoma County, State of Oklahoma

NOTICE OF SALE OF REAL
PROPERTY

Case No:  CASE PB-2016-721

### Affidavit of Publication

State of Oklahoma, County of Oklahoma, ss:
I, the undersigned publisher, editor or Authorized Agent of the Legal
Notices, do solemnly swear that the attached advertisement was
published in said paper as follows:

1st Publication                                    August 19, 2017
2nd Publication                                   August 26, 2017

That said newspaper is in the city of Edmond, Oklahoma County,
Oklahoma, a Daily newspaper qualified to publish legal notices,
advertisements and publications as provided in Section 106 of Title
25, Oklahoma Statutes 1971, as amended, and complies with all
other requirements of the laws of Oklahoma with reference to legal
publications.

That said Notice, a true copy of which is attached hereto, was
published in the regular edition of said newspaper during the period
and time of publications and not in a supplement, on the above

_____
                                                                Signature

Subscribed and sworn before me on this 28th day of August 2017.

STEPHANIE MOLER
Notary Public
State of Oklahoma
Commission # 15001187  Expires

My commission expires February 6, 2019.            Notary Public
                                                          Commission # 15001187

Cost of Publication $  60.09
Ad # 00451056        Acct # 23163295

**Publisher's Address:**
The Edmond Sun
P. O. Box 2470
Edmond, OK 73034-7363



# EXHIBIT 6[a]

Roe Simmons signs his name as an officer of the courts to a Motion he files on September 20, 2017, stating the property had been sold on September 5, 2017 at an auction at his office, to the highest bidder, for 10,000 dollars



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

SEP 2 0 2017

RICK WARREN
COURT CLERK

37_____

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA**

IN THE MATTER OF ESTATE OF )
CEOLA M. LENOX, Deceased )      Case No. PB-2016-721
Deceased )

### APPLICATION FOR ORDER APPROVING SALE OF REAL PROPERTY

The duly appointed and acting Personal Representative of the Estate of Ceola

Lenox, Dannie Lenox, hereby requests this Court to enter an Order approving the sale of

certain real property. In support of this Application, Mr. Lenox states as follows.

1.      The Applicant is the Personal Representative of the Estate of Ceola Lenox

in the above styled and numbered cause.

2.      On May 17, 2017, the Court authorized and directed the Personal

Representative to sell at public sale, to the highest bidder, the real property

located at 2520 NE 10th, Oklahoma City, Oklahoma County, Oklahoma.

3.      The Special Administrator published notice of the sale on August 19, and

August 26, 2017 in the Edmond Sun.

4.      On September 5, 2017, a public sale was held at the office of the Personal

Representative's attorney, Smith Simmons, PLLC. The real property

located at 2520 NE 10th was sold to the highest bidder for $10,000.00.

Wherefore, Mr. Lenox requests this Court enter an Order approving the sale of the

real property located at 2520 NE 10th.

Respectfully submitted,

Roe T. Simmons, OBA No. 19573
**SMITH SIMMONS, PLLC**
252 NW 70TH
Oklahoma City, OK 73116
Phone: (405) 843-1000
Facsimile:  (405) 843-1005
Email: roe@smithsimmons.com

## CERTIFICATE OF SERVICE

This is to certify that on the ___ day of September 2017, a true and correct copy of *Application for Order Approving Sale of Real Property* was deposited in the U.S. Mail, postage prepaid, and/or sent via facsimile, to:

Frances Gibson
7200 Oldmill Run
Fort Worth, TX 73133-7038

Johnny Fryer
517 Athena Dr.
Columbia, SC 29223

Leon Lenox
3213 NE 12th Street
Oklahoma City, OK 73117

Dannie Lenox
3806 N. Shadybrook Dr.
Midwest City, OK 73110

Roe T. Simmons

2

EXHIBIT 6[b]
Order signed by Judge Richard Kirby by
stamp, setting an October 18, 2017 date
for the court to approve the sham auction
sale Simmons told the Court occurred on
September 5, 2017 at his office; this
document shows Simmons communicated
the false document (Ex 6a) to the court
for it to approve  a transaction he knew
had never occurred



*1038252879*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

SEP 21 2017

RICK WARREN
COURT CLERK

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF ESTATE OF          )
CEOLA M. LENOX, Deceased            )        Case No. PB-2016-721
Deceased                            )

41

## ORDER FOR HEARING RETURN OF SALE

Dannie Lenox, Personal Representative of the Estate of Ceola Lenox, deceased, having this day made a Return to this Court of his proceedings under the Order of Sale of real property made by this Court on May 17, 2017 and filed said return in the District Court, and a hearing upon the said Return being requested.

It is Ordered that on the ___18th___ day of ___October___, at ___9:00___ a.m. in the Court room assigned to the Honorable Richard Kirby, at the Oklahoma County Courthouse in Oklahoma City, Oklahoma be and the same is hereby fixed for the hearing upon said Return, and that notice be published as required by the statute and that notice briefly indicate the real property sold, the name of the purchaser, the sum for which it was sold, and refer to the Return for further particulars.

Dated the ___21st___ day of September 2017.

RICHARD W. KIRBY
_____
RICHARD KIRBY
JUDGE OF THE DISTRICT COURT

RICK WARREN, Court Clerk

By _____ Deputy

**APPROVED:**

Roe T. Simmons, OBA No. 19573
SMITH SIMMONS, PLLC
252 NW 70th
Oklahoma City, OK 73116
Phone: (405) 843-1000
Facsimile:  (405) 843-1005
Email:  roe@smithsimmons.com
*SPECIAL ADMINISTRATOR*

EXHIBIT 7

The Probate Court approves the sham transaction by Order on October 18, 2017, without there being any knowledge of who the buyer is, without having received any affidavit of return of the sale from the Personal Representative, and without providing any explanation or justification why it is approving the sale of a house valued at almost 60,000 dollars for a sum of 10,000 dollars (1/6 of assessed value)

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

OCT 18 2017

RICK WARREN
COURT CLERK

75_____

IN THE MATTER OF ESTATE OF )
CEOLA M. LENOX, Deceased )    Case No. PB-2016-721
Deceased )

## ORDER APPROVING SALE OF REAL PROPERTY

Now on this ___18th___ day of October 2017, the Application for Approval of Sale of Real Property came on for hearing.  The Applicant, Dannie Lenox, by and through his attorney of record, Roe T. Simmons of the law firm of Smith Simmons, P.L.L.C., appears in person.  This Court having reviewed the pleadings, and being fully advised in the premises, here by Orders and Decrees as follows.

1.  Special Administrator's sale of the real property located at 2520 NE 16th Street, Oklahoma City, Oklahoma County, Oklahoma is hereby approved.

2.  Special Administrator is authorized to distribute the proceeds from the sale of the property located at 2520 NW 16th Street to the heirs of the estate according to the Court's Final Order for Distribution.

IT IS SO ORDERED

_____
RICHARD W. KIRBY
JUDGE OF THE DISTRICT COURT

Approved:

Roe I. Simmons, OBA No. 19573
SMITH SIMMONS, PLLC
252 NW 70TH
Oklahoma City, OK  73116
Telephone: (405) 843-1000
Facsimile:  (405) 843-1005
Email: roe@smithsimmons.com
*Attorney for Special Administrator*

Book:13581 Page:980 PageCount:3

| | | Filing |
| --- | --- | --- |
| Fee:$17.00 | Doc. Tax:$.00 | State of |
| Oklahoma | County of Oklahoma | |
| Oklahoma County Clerk | David B. Hooten | |

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

OCT 1 8 2017

RICK WARREN
COURT CLERK

## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

IN THE MATTER OF ESTATE OF ) 75.____
CEOLA M. LENOX, Deceased )
Deceased ) **Case No. PB-2016-721**

## ORDER APPROVING SALE OF REAL PROPERTY

Now on this ___18th___ day of October 2017, the Application for Approval of Sale of

Real Property came on for hearing. The Applicant, Dannie Lenox, by and through his

attorney of record, Roe T. Simmons of the law firm of Smith Simmons, P.L.L.C., appears in

person. This Court having reviewed the pleadings, and being fully advised in the premises,

here by Orders and Decrees as follows.

1. Special Administrator's sale of the real property located at 2520 NE 16th Street,

Oklahoma City, Oklahoma County, Oklahoma is hereby approved.

2. Special Administrator is authorized to distribute the proceeds from the sale of the

property located at 2520 NW 16th Street to the heirs of the estate according to the Court's

Final Order for Distribution.

**IT IS SO ORDERED**

Return to:
CHICAGO TITLE OKLAHOMA
3401 NW 63RD ST., STE. 300
OKLAHOMA CITY, OK 73116
7140517012 45

RICHARD W. KIRBY
JUDGE OF THE DISTRICT COURT

CERTIFIED COPY
AS FILED OF RECORD
IN DISTRICT COURT

OCT 27 2017

RICK WARREN COURT CLERK
Oklahoma County

Approved:

Roe T. Simmons, OBA No. 19573
SMITH SIMMONS, PLLC
252 NW 70TH
Oklahoma City, OK  73116
Telephone: (405) 843-1000
Facsimile:  (405) 843-1005
Email: roe@smithsimmons.com
*Attorney for Special Administrator*

2

EXHIBIT 8(a)

Affidavit from Wazzan Properties LLC, stating that no auction took place; that Wazzan had purchased and sold the property well before September 5, 2017, and that the Personal Representative Dannie Lenox and his attorney Roe Simmons were perfectly aware of these facts, as was Chicago Title; this Affidavit calls into question the sham process presented to the Court and the creation and publication of false documents for an October 18, 2017 sham approval of a sham auction result


*1046866438*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

JUN 1 8 2020

RICK WARREN
COURT CLERK
73

IN DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF THE ESTATE )
OF CEOLA LENOX, Deceased. ) Case No. PB 2016-721
) Judge James Siderias

## NOTICE OF SWORN STATEMENT BY PURCHASER OF PROPERTY

COMES NOW HEIR FRANCES GIBSON, *per* Counsel, and notices this

Court of the attached Affidavit of Tarek Wazzan with attachments.

Respectfully Submitted,

_s/ M. Mark Myles_
M. Mark Myles, OBA # 22243
M. Mark Myles, PC
4312 North Classen Blvd.
Oklahoma City, OK 73118
Telephone: (405) 466-5290
Fax 405-557-0777
mm_myles@outlook.com
*ATTORNEY For Frances Gibson*

## CERTIFICATE OF MAILING

On this 18th day of June, 2020, a true and correct copy of the foregoing pleadings
was properly served upon:

Roe Simmons
1900 NW Expressway
Suite 1050
Oklahoma City OK 73118The

s/ Mark Myles
Mark Myles

  

STATE OF OKLAHOMA

COUNTY OF OKLAHOMA                )

### AFFIDAVIT

I Tarek Wazzan, being duly sworn hereby depose and state the following, that I have personal knowledge of the following matters involving a property purchased and sold by my LLC:

1) At some point in the summer of 2017 I received a communication from a wholesaler named Devell Hubbard, who asked me if I was interested in purchasing the property located at 2520 NE 16th Street in Oklahoma City.

2) Mr. Hubbard indicated that he had purchased the property for ten thousand dollars around July 20, 2017, from Danny Lenox. Attachment "1."

3) My LLC offered 6,000 dollars to Mr. Hubbard, for the rights to own that purchase agreement.   My company purchased that existing contract from Dannie Lenox to Devell Hubbard, by executing an "Assignment" that Mr. Hubbard signed. Attachment "2."

4) It was my understanding that at that point, my LLC could do with the property as it wished, given the fact that attachments 1 and 2 were signed, and Mr. Lenox had signed away control and ownership of the property.

5) On July 27, 2017, I notified Chicago Title that I was purchasing the property at 2520 NE 16, for 16,000 dollars, with 6, 000 dollars to be the Assignment fee payable to Devell Hubbard per Exhibit 2, and that Mr. Hubbard would be coming in that day, on July 27, 2017 to get the escrow file open. See Attachment 3 (email to Chicago Title).

6) Mr. Hubbard went to Chicago Title and opened up an escrow account as the initial Buyer from Dannie Lenox, account number 714051701245. Attachment 4 (showing Devell Hubbard as Buyer and Dannie Lenox as Seller).

7) It appears Chicago Title, on July 27, 2017 made a survey order request for that escrow, showing Devell Hubbard as the Buyer, and wanted it done by August 3, 2017. Attachment 5.

8) On or around August 2, 2017 I then notified Chicago Title that my company would be reselling the property, as I executed a contract on August 2, 2017 with an out of state buyer, providing Chicago Title all the information. Attachment 6. The amount of that re-sale was about 34,000 dollars.

9) The following day on August 3, 2017, the Mortgage Inspection was finalized by Hale & Associates, showing that Devell Hubbard was the Buyer. Attachment 7.

10) On August 3, 2017, Chicago Title opened a separate escrow for the re-sale transaction, account number 714051701245, showing my LLC selling to Plains State Holdings. Attachment 8.

11) My LLC authorized Chicago Title to execute any documents on our behalf and we trusted that they would act appropriately. Attachment 9.

12) Chicago Title notarized a deed for my LLC's resale of the property on or about August 17, 2017, with the buyer being Plains State, and Chicago Title issued a form when my LLC received the proceeds from the sales transaction to Plains State around August 17, 2017, identifying my LLC as able to execute the sales document,  Attachment 10.

13) My understanding is that title passed to Plains State at that time, through the deed my company acquired on August 17, 2017.

14) I was never notified of any auction on September 5, 2017 at Roe Simmons' office, regarding the property, nor did Wazzan Properties LLC participate in any such auction regarding the house at 2520 NE 16th Street, given the fact we had already re-sold the property.

15) I trusted that Chicago Title performed all due diligence regarding this transaction, as they have attorneys in house to review real estate title purchases. In fact, my LLC (our managers) had given Chicago Title the ability to sign documents on our behalf to finalize the re-sale transaction appropriately. Attachment 9.

16) Neither Dannie Lenox nor his attorney ever asked me to provide to any court the fact that Plains State had offered on August 2, 2017 the amount of 34,000 dollars for that property.

17) The email chain that I have seen (Attachment 11) indicates that Mr. Lenox knew about the double escrow situation with the higher pre-existing offer from Great Plains, as his attorney appears to have been communicating directly with Chicago Title.

18) Both Mr. Lenox and his attorney appear to have had full knowledge of the fact my company had found a buyer willing to pay a price higher than 16,000 dollars, and that such sales contract occurred in August of 2017, especially if they were working with Chicago Title.

19) I am personally aware that the representative of Ceola Lenox's estate (Mr. Lenox) knew about my company and about the re-sale amount being 34,000 dollars, because I am in possession of two documents Mr. Lenox signed and notarized, acknowledging his full knowledge and approval of my LLC's prior sale amount of 34,000 dollars.

20) First, I have a Seller's lien affidavit (Attachment 12) that Mr. Lenox signed and acknowledges in paragraph 4 that he was aware Wazzan Properties LLC had a previous contract of sale for the property. This bears a notary stamp from Chicago Title.

21) Secondly, I have a copy of a "Double Escrow Disclosure Acquisition Escrow" form from Chicago Title, that Mr. Dannie Lenox signed (Attachment 13), indicating his knowledge of the concurrent escrow account with the previous sale to Great Plains, and the fact a pre-existing higher offer had been accepted by my company in August of 2017. This document states:

> "...Buyer [Wazzan Properties LLC] herein is selling the subject property at an increased purchase price.... Seller [Dannie Lenox] acknowledges that proceeds from the Resale Escrow transactions are the source of all or part of the purchase price herein.... With full knowledge of the foregoing..."

22) Mr. Lenox was the Seller, and therefore knew that previously accepted offer of a higher purchase price (from Great Plains) was funding the wholesale transaction of the 10,000 purchase price and 6,000 assignment fee, so that he had to be fully aware that the offer from Great Plains to my company was higher than 16,000 dollars, and before September 5, 2017.

23) I do not know why Mr. Lenox executed a deed on October 18, 2017 (Attachment 14), since he had previously signed on July 20, 2017 a contract of sale to Devell Hubbard, which my company purchased for 6,000 dollars ("Assignment fee") on July 26, 2017, and as he knew that my previous resale of the property on August 2, 2017, was funding both the contract (Attachment 1) and the 6,000 fee. Attachment 13.

This I swear to the best of my recollection

Wazzan Properties LLC
By Tarek Wazzan, manager

NOTARY ATTESTATION

On this date appeared Tarek Wazzan, who presented proper identification and confirmed that the statements above are true and accurate to the best of his knowledge and recollection.

Date: 6|18|20   Notary _Brittany McCoy_

My commission expires 4-14-2023

Stamp:

BRITTANY MCCOY
Notary Public
State of Oklahoma
Commission #03006911  Exp: 04/14/23

EXHIBIT 8(b)
Proof found on Plains State website that it sold the property to Pacific Holdings for 115,000 dollars within days of listing it, none of which was presented or approved by the Probate Court

Exhibit Q

Attention!! we are looking for cash $$$ buyers and private lenders only. $$$$

👍 1                                                                    1 Share

👍 Like          💬 Comment          ➡ Share

Better way real estates
August 7, 2017 at 9:40 AM · 🌐

this is one of the few houses that was successfully bought and sold within 4 business days. if you have a house for sale please give us a call , text or email @ (405) 294-2087 email bwrbuyhouses@gmail.com

👍 2                                                                    1 Share

👍 Like          💬 Comment          ➡ Share

Better way real estates updated their profile picture.
August 7, 2017 at 9:15 AM · 🌐

https://m.facebook.com/BWRLLC/?ref=content_filter

5/18/19, 5:40 AM
Page 8 of 12

Exhibit Q

Call Us: 800-403-3407 (tel:8004033407)



(/)

Search results oklahoma



| | | |
|---|---|---|
| 840 NW 104th Street, Oklahoma City, OK 73114 (/840-nw-104th-street-oklahoma-city-ok-73114) | 9821 Casa Linda, Oklahoma City, OK 73139 (/9821-casa-linda-oklahoma-city-ok-73139) | 6608 Lyrewood Ct, Oklahoma City, OK 73132 (/6608-lyrewood-ct-oklahoma-city-ok-73132) |



(/840-nw-104th-street-oklahoma-city-ok-73114)



(/9821-casa-linda-oklahoma-city-ok-73139)



(/6608-lyrewood-ct-oklahoma-city-ok-73132)

Property price: $110,000 + Closing costs
Status: SOLD

Property price: $155,000 + Closing costs
Status: SOLD

Property price: $140,000 + Closing cost
Sold to USA buyer

| | | |
|---|---|---|
| 1025 SW 51st St, Oklahoma City, OK 73109 (/1025-sw-51st-st-oklahoma-city-ok-73109) | 2520 NE 16th St, Oklahoma City, OK 73117 (/2520-ne-16th-st-oklahoma-city-ok-73117) | 944 SE 14th St, Oklahoma City, OK 73129 (/944-se-14th-st-oklahoma-city-ok-73129) |



(/1025-sw-51st-st-
oklahoma-city-ok-73109)

Property price: $110,000 +
Closing costs

Status:   SOLD



(/2520-ne-16th-st-
oklahoma-city-ok-73117)

Property price: $115,000 +
Closing costs

Status:   SOLD



(/944-se-14th-st-
oklahoma-city-ok-73129)

Property price: $150,000 +
Closing costs

Status:   SOLD

## SEARCH PROPERTIES

Keyword [?]

oklahoma

Tags

- Select Tags -

Status

- Select Status -

Search



Real Estate Investments
(800) 403-3407 (tel:18004033407)

PACIFIC HOLDINGS | LOS ANGELES

8484 Wilshire Blvd #870

EXHIBIT 8(c)
Search of "Plains State" at the Oklahoma
Secretary of State website shows no
entity called Plains State Holdings LLC is
registered to do business in Oklahoma

Business Services      Notary      Charitable Organizations      Open Meetings      Agricultural Liens      Executive Legislative

Home : Business Services : Corp Search

### Search Corporation Entities

The Business Entities Search Page provides you with a preliminary search for a business with a particular name.

To view detailed information for a business, click on the hyperlinked filing number.

**Business Entities Search All**

Enter Name and Click on the 'Search' Button

| Entity Name | plains state |
|---|---|

Advanced Search>>

Search

Total Results: 8

| Filing Number | Name | Entity Type | Registered Agent | Agent Type & Status |
|---|---|---|---|---|
| 1900131960 | PLAINS STATES CONTRACTORS, INCORPORATED | Domestic For Profit Business Corporation | JUDITH T DROEGE TULSA   OK | Legal Inactive |
| 3300444324 | PLAINS STATES PAY PHONES, A LIMITED PARTNERSHIP | Domestic Limited Partnership | NONMEN J GLENN TULSA   OK | Legal Expired |
| 3300415245 | AT&T PLAINS STATES INC | Foreign For Profit Business Corporation | THE PRENTICE-HALL CORPORATION SYSTEM, OKLAHOMA, INC. OKLA CITY   OK | Legal Former |
| 3512937245 | GREAT PLAINS ESTATES LLC | Domestic Limited Liability Company | KELLY PALMER CHANDLER   OK | Legal Expired |
| 1912730247 | PLAINSTATE FORGE INC | Domestic For Profit Business Corporation | CODY JENNINGS OKLAHOMA CITY   OK | Legal Inactive |
| 3112945963 | SOUTH PLAINS ESTATES HOMEOWNERS ASSOCIATION | Domestic Not For Profit Corporation | MY AGENT, LLC EDMOND   OK | Legal In use |
| 3521132043 | PLAIN STATE LOGISTICS, LLC | Domestic Limited Liability Company | REESE MCGUIRE OWASSO   OK | Legal In use |
| 3512704669 | FLOODPLAIN ESTATES LLC | Domestic Limited Liability Company | MICHAEL DUNN OKLAHOMA CITY   OK | Legal Inactive |

Copyright © 2021 Oklahoma Secretary of State

EXHIBIT 9(a)

July 31, 2020 Order from new probate judge setting aside the sham fraudulent sale and setting aside the final probate orders due to the misrepresentations filed by Roe Simmons and violations of procedure; at the bottom of page 6 of this Order, the letters of administration appointing Dannie Lenox are revoked (this begs the question: how does attorney Simmons have the ability to still be litigating in the case after this Order); on page 7 a Special Administrator named Sara Bondurant is appointed, and the family tells me Bondurant was unwilling to turn over any of the probate documents she investigated and refused to corroborate the fraud on the court



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

JUL 31 2020

RICK WARREN
COURT CLERK

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF THE ESTATE OF          )
CEOLA M. LENOX,                         )          CASE NO. PB-2016-721
deceased.                               )                            79

---

### ORDER, RE:

**FRANCES A. GIBSON'S PETITIONER (SIC) MOTION TO SET ASIDE ORDER ALLOWING FINAL ACCOUNT, DETERMINING HEIRS, & DECREE OF DISTRIBUTION AND ORDER DENYING FRANCES GIBSON'S OBJECTION AND MOTION TO REMOVE PERSONAL REPRESENTATIVE,**

**SUPPLEMENTAL REQUEST TO SET ASIDE FINAL ACCOUNTING, SALE OF PROPERTY, AND REPRESENTATIVE AND FOR DISCOVERY MASTER, AND**

**RESPONSE TO FRANCES GIBSON'S SUPPLEMENTAL REQUEST TO SET ASIDE FINAL ACCOUNTYING, SALE OF PROPERTY, AND REPRESENTATIVE AND FOR DISCOVERY MASTER**

---

**NOW** on this 18th day of June, 2020, "Frances A. Gibson's Petitioner (sic) Motion to Set Aside Order Allowing Final Account, Determining Heirs and Decree of Distribution and Order Denying Frances Gibson's Objection and Motion to Remove Personal Representative," "Supplemental Request to Set Aside Final Accounting, Sale of Property, and Representative, and for Discovery Master," and "Response to Frances Gibson's Supplemental Request to Set Aside Final Accounting, Sale of Property, and Representative, and for Discovery Master" came on for hearing. M. Mark Myles, attorney for Frances A. Gibson appeared by video conference. Roe T. Simmons, attorney for Dannie Lenox, Personal Representative, appeared by video conference with Dannie Lenox[1].

---

[1] A partial hearing which had to be continued to June 18, 2020, was first held on May 19, 2020, with the same aforementioned persons present by video conference.

1

The Court, having considered the sworn testimony of the witnesses presented by Mr. Myles, to wit: Dannie Lenox and Tarek Wazzan, the argument of counsel, the exhibits properly admitted, and the pleadings filed herein, **FINDS AND ORDERS** as follows:

1. On April 24, 2017, an unverified Petition to Sell Real Property was filed on behalf of Dannie Lenox, the Personal Representative. Said Petition sought the Court's authorization to sell at public sale real property described therein, to wit: a home appraised at $56,500.00 located at 2520 N.E. 16th Street, which is the subject of this Order, and undeveloped property appraised at $10,382.00 described as Lots 17-20, Lots 22-26, and the East Eight (8) Feet of Lot 21 in Block Thirteen (13) in the East Tenth Street Addition to Oklahoma City, Oklahoma County, Oklahoma.

2. Okla. Stat. tit. 58 § 412 requires that the Petition to Sell Real Property be verified, and in this case, said Petition was not verified.

3. On May 4, 2017, the Court entered an Order for Hearing on Petition to Sell Real Property.

4. Pursuant to Okla. Stat. tit. § 414, notice of the hearing was done by mailing and by Publication.

5. Pursuant to Okla. Stat. tit. § 413, the hearing on the Petition to Sell Real Property was held on May 17, 2017.

6. On May 17, 2017, the Petition to Sell Real Property was approved without objection, and an Order Approving Petition to Sell (at public auction) was filed on September 15, 2017.

7. On July 20, 2017, the Estate of Ceola M. Lenox, by and through the Personal Representative, Dannie Lenox, entered into a Real Estate Purchase and Sale Agreement with Devall Hubbard for the sale of the property located at 2520 N.E. 16th Street to Mr. Hubbard for $10,000.00.

8. On July 27, 2017, Devall Hubbard assigned the Real Estate Purchase and Sale Agreement for 2520 N.E. 16th Street to Wazzan Properties, LLC for a $6,000.00 assignment fee.

9. Also on July 27, 2017, Tarek Wazzan, on behalf of Wazzan Properties, LLC, emailed Chicago Title indicating the entire purchase price for the house at 2520 N.E. 16th Street would be $16,000.00.

10. On August 2, 2017, Tarek Wazzan, on behalf of Wazzan Properties, LLC, sold the house at 2520 N.E. 16th Street to Plain State Holdings for $36,000.00 pursuant to a Standard Purchase and Sale Agreement.

11. On August 17, 2017, a Warranty Deed was signed conveying the property at 2520 N.E. 16th Street from Wazzan Properties, LLC to Plains States Holdings, LLC.

12. On September 15, 2017, the Order Approving Petition to Sell (at public auction), which was entered on May 17, 2017, was filed.

13. Okla. Stat. tit. 58 § 419 requires that the Order of Sale describe the lands to be sold, and the terms of the sale, the latter of which was not set forth in the Order Approving Petition to Sell entered on May 17, 2017, and filed on September 15, 2017.

14. Okla. Stat. tit. 58 § 421 requires publication of notice of the time and place of the sale for two (2) consecutive weeks and by mailing a copy of the notice to all heirs. It also

3

requires that the day of sale not be earlier than ten (10) days from the date of the first publication, all of which was complied with pursuant to the Certificate for Proof of Publication filed by the Personal Representative's counsel on September 20, 2017.

15. On September 20, 2017, an Application for Order Approving Sale of Real Property was filed by counsel for the Personal Representative. Said Application did not comply with Okla. Stat. tit. 58 § 426, which requires that the Personal Representative file a sworn return of sale to be set for hearing. Further, Okla. Stat. tit. 58 § 495 requires the Personal Representative to file a verified account of sale within thirty (30) days, which was not done.

16. Notice of the hearing on the Application for Order Approving Sale was published and mailed to the heirs pursuant to Okla. Stat. tit. 58 § 426, but the Notice did not describe the amount for which the property was sold, the name of the purchaser, and did not refer to the Return of Sale (in this case, the Application for Order Approving Sale of Real Property) for further particulars as further required by Section 426.

17. On October 18, 2017 an Order Approving Sale of Real Property located at 4520 N.E. 16th Street was entered without objection.

18. On October 20, 2017, the Personal Representative's Deed was filed with the Oklahoma County Clerk indicating that on October 18, 2017, a $10,000.00 Indenture was made between Dannie Lenox, as Personal Representative of the Estate of Ceola M. Lenox and Wazzan Properties, LLC.

19. Also on October 20, 2017, a Warranty Deed was filed with the Oklahoma County Clerk indicating that on August 17, 2017, Wazzan Properties conveyed property to Plains States Holdings, LLC.

20. On March 11, 2019, Ms. Gibson filed Frances A. Gibson Petitioner (sic) Motion for Court Order to Compel Final Accounting of the Estate of Ceola M. Lenox.

21. On March 18, 2019, the Personal Representative filed his Final Account and Petition for Order Allowing Final Account, Determination of Heirs, Distribution and Discharge, and on April 8, 2019, Ms. Gibson filed Frances A. Gibson Petitioner Motion for Order for the Removal of Dannie G. Lenox as Administrator for the Estate of Ceola M. Lenox and for Sanctionable Violation of Title 58 Oklahoma Probate Procedural Rules of the Court.

22. On May 16, 2019, a hearing on the Petition for Order Allowing Final Account, Determination of Heirs, Distribution, and Discharge, as well as Ms. Gibson's written motion for the removal of the Personal Representative and her oral objection to the Final Account was held.

23. The Court sustained the Personal Representative's Petition for Order Allowing Final Account, Determination of Heirs, Distribution, and Discharge, and an Order was filed on September 12, 2019.

24. On September 27, 2019, Ms. Gibson filed Frances A. Gibson's Petitioner (sic) Motion to Set Aside Order Allowing Final Account, Determining Heirs and Decree of Distribution and Order Denying Frances Gibson's Objection and Motion to Remove Personal Representative.

5

25. On November 12, 2019, M. Mark Myles entered his appearance on behalf of Ms. Gibson, and filed his Supplemental Request to Set Aside Final Accounting, Sale of Real Property, and Representative, and for Discovery Master, and the Personal Representative responded with leave of Court on May 12, 2020.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the Order Allowing Final Account, Determining Heirs, and Final Decree of Distribution and Order Denying Frances Gibson's Objection and Motion to Remove Personal Representative is hereby vacated pursuant to Okla. Stat. tit. 12 § 1031(3), to wit: for mistake, neglect, or omission of the clerk or *irregularity in obtaining a judgment or order. (emphasis added) See, e.g., Murie v. Harting*, 2014 OK CIV APP 49, ¶8.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Order Approving Sale of Real Property (located at 2420 N.E. 16th Street) entered on October 18, 2017, as well as the Personal Representative's Deed and Warranty Deed associated with said property filed with the Oklahoma County Clerk on October 20, 2017, are hereby vacated pursuant to Okla. Stat. tit. 12 § 1031(3), to wit: for mistake, neglect, or omission of the clerk or *irregularity in obtaining a judgment or order. (emphasis added) See, e.g., Murie v. Harting*, 2014 OK CIV APP 49, ¶8.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Order for Issuance of Letters of Administration, Appointment of Personal Representative, Determination of Heirs, and Termination of Joint Tenancy and the Letters of Administration entered and issued on behalf of Dannie Lenox are hereby revoked pursuant to Okla. Stat. tit. 58 § 231.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Sara Murphy Bondurant shall be appointed as Special Administrator of the Estate of Ceola M. Lenox pursuant to Okla. Stat. tit. 58 § 211 upon her presentation of the necessary Order Appointing and Letters of Administration.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Sara Murphy Bondurant shall be paid, through the estate, her usual hourly rate for services she performs in conjunction with her duties as Special Administrator, and that she shall cause to be filed an Order Appointing her as Special Administrator and Letters of Special Administration without further notice.

**IT IS SO ORDERED!**

JAMES M. SIDERIAS
JUDGE OF THE DISTRICT COURT

## CERTIFICATE OF SERVICE

On this ___31___ day of July, 2020, a true and correct copy of the above and foregoing was mailed by U.S. mail, postage prepaid, to the following:

M. Mark Myles
4312 N. Classen Blvd.
Oklahoma City, OK 73118

Roe T. Simmons
1900 N.W. Expressway, # 1050
Oklahoma City, OK 73118

Sara Murphy Bondurant
4801 Gaillardia Pkwy, # 150
Oklahoma City, OK 73142

Latricia Steadman
Oklahoma County Deputy Court Clerk

7

EXHIBIT 9(b)

Email chain involving Chicago Title
attorney Cheryl Saxon shows she was
fully aware of OSCN pleadings, that a
statutory Return needed to be filed before
a closing; and that attorney who
defrauded the Gibson/Parks estate
(Simmons) obviously filed false
documents and was asking for a sham
sale on October 18, 2017; Chicago Title
notarized a deed of sale for 35,000 in
August of 2017 and therefore knew that
Simmons filed a false/fraudulent
document on September 20, 2017
claiming to have had an auction at his
office on September 5, 2017 with a
highest bidder paying 10,000 dollars;
note that Judge Siderias' Order (Ex. 9a)
finds that no statutory return was ever
properly filed – indicating that Chicago
Title attorney Saxon allowed for a sham
sale to occur on October 18, 2017

Garcia, Valerie

| | |
|---|---|
| **From:** | Saxon, Cheryl |
| **Sent:** | Friday, September 22, 2017 3:15 PM |
| **To:** | Garcia, Valerie |
| **Subject:** | RE: 714051701245 |

Yes that is correct

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

**From:** Garcia, Valerie
**Sent:** Friday, September 22, 2017 2:37 PM
**To:** Saxon, Cheryl <CherylS@Ctt.com>
**Subject:** RE: 714051701245

Ok thanks!

I need to get the PR deed from that attorney, correct?

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com


Wire Fraud Alert
ⓑ

CHICAGO TITLE
OKLAHOMA

**From:** Saxon, Cheryl
**Sent:** Friday, September 22, 2017 2:29 PM
**To:** Garcia, Valerie <valerie.garcia@ctt.com>
**Subject:** RE: 714051701245

That is when I'd prefer to close. After the court has approved the sale.

Cheryl Saxon
Attorney

1

Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Friday, September 22, 2017 2:12 PM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

I will let them know. That would be the earliest right?

Valerie Garcia

5617 N. Classen Blvd, Ste. 200

Oklahoma City, OK 73118

405-848-2140  main

405-848-2305  fax

www.chicagotitleoklahoma.com



Wire Fraud Alert

CHICAGO TITLE
OKLAHOMA

From: Saxon, Cheryl
Sent: Friday, September 22, 2017 2:04 PM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701245

The afternoon of October 18 would be the best day.  Is that a problem?

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Friday, September 22, 2017 1:56 PM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

They want to close asap.

Valerie Garcia

5617 N. Classen Blvd, Ste. 200

Oklahoma City, OK 73118

2

405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com



Why Fraud Alert

**CHICAGO TITLE**
OKLAHOMA

From: Saxon, Cheryl
Sent: Friday, September 22, 2017 1:53 PM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701245

The publishers affidavit of the notice of sale was filed in the case. The actual notice of sale has not been filed. The notice of sale should be filed in the case also.

The application for order approving sale of real property does not say who the purchaser is. I'm assuming it was Wazzan. The hearing on the application is set for October 18.

When are you supposed to close?

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Friday, September 22, 2017 12:57 PM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

Hi Cheryl,

Please see attached.

Thanks!

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com

3





---

**From:** Saxon, Cheryl
**Sent:** Wednesday, September 20, 2017 10:51 AM
**To:** Garcia, Valerie <valerie.garcia@ctt.com>
**Subject:** RE: 714051701245

In his email he says he is going to provide proof. I'll need to see everything that was filed.

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

---

**From:** Garcia, Valerie
**Sent:** Wednesday, September 20, 2017 10:50 AM
**To:** Saxon, Cheryl <CherylS@Ctt.com>
**Subject:** RE: 714051701245

## Do you want me to request the documents from him?

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140  main
405-848-2305  fax
www.chicagotitleoklahoma.com



---

**From:** Saxon, Cheryl
**Sent:** Wednesday, September 20, 2017 10:47 AM
**To:** Garcia, Valerie <valerie.garcia@ctt.com>
**Subject:** RE: 714051701245

I need to see what they have done. The documents have not been filed in the case or are not showing up on the docket. Very strange.

4

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Wednesday, September 20, 2017 10:23 AM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

From Roe:

The hearing on the Order was in July. We published Notice of the Sale two times, and I will provide proof of that to your attorney.  All that is left at this point is the "Return".

Let me know how you want to proceed?

Still a no go?


Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK  73118
405-848-2140  main
405-848-2305  fax
www.chicagotitleoklahoma.com



CHICAGO TITLE
OKLAHOMA

From: Saxon, Cheryl
Sent: Wednesday, September 20, 2017 10:14 AM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701245

The order allowing the sale to be made at public sale was filed on September 15.  The order states that a notice of sale is to be filed and published 2 times.  As of today no notice of sale setting the time and place for the sale appear on the docket.  The notice of sale has to be published 2 times prior to the date set for the sale.

Once the date for the sale has passed, a return of sale should be filed.  The hearing for the confirmation of sale has to be published 1 time ten days prior to the date of the hearing.

If we were just waiting on the confirmation and the other steps were completed, I might contemplate letting you close. But the notice of sale has not been filed. The return of sale has not been filed. The steps to complete this are going to take at least 30 days.

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Tuesday, September 19, 2017 10:46 AM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

Here is the attorneys response:

We have to follow the long form. We have one heir that has been somewhat troublesome in resolving this estate, so I think it best to follow the long form.

We already have a properly notice, and published order authorizing the sale. We just need to seek approval of the sale at this point. I do not anticipate any issues with that, but want to make sure your attorney is satisfied so the issue does not come back at a future date.

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140  main
405-848-2305  fax
www.chicagotitleoklahoma.com

 CHICAGO TITLE
OKLAHOMA

From: Saxon, Cheryl
Sent: Friday, September 15, 2017 12:10 PM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701245

If the sales proceedings were further along, maybe. At this point we need to run it by Ken once we find out how he is proceeding.

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

6

From: Garcia, Valerie
Sent: Friday, September 15, 2017 11:55 AM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

I forwarded your questions on to the attorney and will let you know. The Wazzans are immediately selling to another buyer, this is a double escrow flip. Could we even do a dry closing in this case?

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com

 CHICAGO TITLE
OKLAHOMA

From: Saxon, Cheryl
Sent: Friday, September 15, 2017 11:38 AM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701245

The prior attorney started sales proceedings in the case, but never got an order to sell and did not follow through with the remaining steps for the sale of the property. Mr. Simmons just took over the case. How is planning on proceeding with the sales proceedings? Is he doing a Section 239 sale or is he planning on proceeding with the long form of sales proceedings? I'm not willing to do a dry closing at this stage without some indication of what process is being used. Is Wazzan willing to wait? They are not usually in a big hurry.

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Friday, September 15, 2017 10:59 AM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: 714051701245

Hi Cheryl,

Please see below from the attorney and advise if we are able to "dry close".

7

Thanks!

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com



**From:** Roe Simmons [mailto:roe@smithsimmons.com]
**Sent:** Friday, September 15, 2017 10:52 AM
**To:** Garcia, Valerie <valerie.garcia@ctt.com>
**Subject:** Lennox

Valerie,

We are waiting on the Order Approving sale, which I believe is all your Title Attorney requires. Due to the fact the individuals involved in this transaction do not have a realtor, I suggest we do a dry closing and you hold the funds in escrow to be released to the Estate when the Order is presented to you.

I have done this in the past with other title companies, because buyers tend to become restless with the process involved in Probates.

Please let me know if this is acceptable.

Roe

Roe T. Simmons | Attorney & Counselor
252 N.W. 70th Street
Oklahoma City, Oklahoma 73116
P: (405) 843-1000 | F: (405) 843-1005

3131 McKinney Ave., Suite 600
Dallas, Texas 75204
P: (214) 272-0964 | F: (214) 272-0965

NOTICE: This electronic mail transmission and any attachments contain information that is confidential and/or legally privileged. The information belongs to the sender and is intended only for the use of the person or entity to whom it is addressed. If you are not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this

8

electronic mail transmission and/or its attachments is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone at 405-843-1000 to arrange for the return of the message and any attachments. Thank you.

NOTICE: The information contained in this message is proprietary and/or confidential and may be privileged. If you are not the intended recipient of this communication, you are hereby notified to: (i) delete the message and all copies; (ii) do not disclose, distribute or use the message in any manner; and (iii) notify the sender immediately.

Certified copy of OSCN docket sheet
showing documents Sheryl Saxon was
able to see and scrutinize

## IN THE DISTRICT COURT IN AND FOR OKLAHOMA COUNTY, OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF CEOLA M LENOX, DECEASED | No. PB-2016-721 (Probate: PROBATE)<br><br>Filed: 06/23/2016<br>Closed: 08/02/2016<br><br>Judge: Kirby, Richard |

## Parties

Lenox, Ceola M , Deceased
Lenox, Dannie Gene , Petitioner

## Attorneys

**Attorney**
ELWELL, JARED J(Bar # 31986)
ELWELL AND SPAIN PLLC
2500 BOARDWALK STREET , SUITE 207
NORMAN, OK 73069

**Represented Parties**
Lenox, Dannie Gene

## Events

| Event | Party | Docket | Reporter |
|---|---|---|---|
| **Tuesday, August 2, 2016 at 9:00 AM** | | Richard Kirby | |
| LTRS ADMIN(HEA) | | | |
| **Wednesday, May 17, 2017 at 9:00 AM** | | Richard Kirby | |
| PET SELL REAL PROP(HEA) | | | |
| **Wednesday, October 18, 2017 at 9:00 AM** | | Richard Kirby | |
| APL! ORD APPROVING SALE OF REAL PROP(HEA) | | | |
| **Tuesday, February 27, 2018 at 9:00 AM** | | Richard Kirby | |
| RETURN OF SALE (STRIKE)(HEA) | | | |

## Issues

For cases filed before 1/1/2000, ancillary issues may not appear except in the docket.

| Issue # 1. | Issue: PROBATE (PROBATE) |
|---|---|
| | Filed by: |
| | Filed Date: 06/23/2016 |
| **Party Name:** | **Disposition Information:** |
| | Disposed: LETTERS FILED, 08/02/2016. Judge. |

## Docket

| Date | Code | Count | Party | Serial # | Entry Date | User Name | | |
|---|---|---|---|---|---|---|---|---|
| 06-23-2016 | TEXT | 1 | | 87313288 | Jun 23 2016 1:13:44:320PM | OSCN\JoeHawkins | - | $ 0.00 |
| | PROBATE INITIAL FILING. | | | | | | | |
| 06-23-2016 | PROBATE | - | | 87313290 | Jun 23 2016 1:13:44:350PM | OSCN\JoeHawkins | Realized | $ 0.00 |

PROBATE

| 06-23-2016 | DMFE | - | 87313291 | Jun 23 2016 1:13:44:360PM | SYSTEM\Autodocket | Realized | $ 2.00 |
|---|---|---|---|---|---|---|---|
| | DISPUTE MEDIATION FEE($ 2.00) | | | | | | |

| 06-23-2016 | PFE1 | - | 87313292 | Jun 23 2016 1:13:44:360PM | SYSTEM\Autodocket | Realized | $ 135.00 |
|---|---|---|---|---|---|---|---|
| | PETITION($ 135.00) | | | | | | |

| 06-23-2016 | PFE7 | - | 87313293 | Jun 23 2016 1:13:44:360PM | SYSTEM\Autodocket | Realized | $ 6.00 |
|---|---|---|---|---|---|---|---|
| | LAW LIBRARY FEE($ 6.00) | | | | | | |

| 06-23-2016 | OCISR | - | 87313294 | Jun 23 2016 1:13:44:360PM | SYSTEM\Autodocket | Realized | $ 25.00 |
|---|---|---|---|---|---|---|---|
| | OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND($ 25.00) | | | | | | |

| 06-23-2016 | OCJC | - | 87313295 | Jun 23 2016 1:13:44:360PM | SYSTEM\Autodocket | Realized | $ 1.55 |
|---|---|---|---|---|---|---|---|
| | OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND($ 1.55) | | | | | | |

| 06-23-2016 | OCASA | - | 87313296 | Jun 23 2016 1:13:44:360PM | SYSTEM\Autodocket | Realized | $ 5.00 |
|---|---|---|---|---|---|---|---|
| | OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES($ 5.00) | | | | | | |

| 06-23-2016 | SSFCHSCPC | - | 87313297 | Jun 23 2016 1:13:44:360PM | SYSTEM\Autodocket | Realized | $ 10.00 |
|---|---|---|---|---|---|---|---|
| | SHERIFF'S SERVICE FEE FOR COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER($ 10.00) | | | | | | |

| 06-23-2016 | CCADMINCSF | - | 87313298 | Jun 23 2016 1:13:44:360PM | SYSTEM\Autodocket | Realized | $ 1.00 |
|---|---|---|---|---|---|---|---|
| | COURT CLERK ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER($ 1.00) | | | | | | |

| 06-23-2016 | CCADMIN0155 | - | 87313299 | Jun 23 2016 1:13:44:360PM | SYSTEM\Autodocket | Realized | $ 0.16 |
|---|---|---|---|---|---|---|---|
| | COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION($ 0.16) | | | | | | |

| 06-23-2016 | SJFIS | - | 87313300 | Jun 23 2016 1:13:44:360PM | SYSTEM\Autodocket | Realized | $ 0.45 |
|---|---|---|---|---|---|---|---|
| | STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES($ 0.45) | | | | | | |

| 06-23-2016 | CCADMIN04 | - | 87313301 | Jun 23 2016 1:13:44:360PM | SYSTEM\Autodocket | Realized | $ 0.50 |
|---|---|---|---|---|---|---|---|
| | COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS($ 0.50) | | | | | | |

| 06-23-2016 | LTF | - | 87313302 | Jun 23 2016 1:13:44:470PM | OSCN\JoelHawkins | Realized | $ 10.00 |
|---|---|---|---|---|---|---|---|
| | LENGTHY TRIAL FUND($ 10.00) | | | | | | |

| 06-23-2016 | AFM | - | 87357020 | Jun 28 2016 2:43:50:713PM | OSCN\TeresaBecker | - | $ 0.00 |
|---|---|---|---|---|---|---|---|
| | AFFIDAVIT OF MAILING | | | | | | |
| | 📄 *Document Available (#1033809041)* | | | | | | |

| | | | 87357066 | Jun 28 2016 | OSCN\TeresaBecker | | |
|---|---|---|---|---|---|---|---|

| 06-23-2016 | OH | - | | 2:44:37:543PM | | - | $ 0.00 |

ORDER FOR HEARING PETITION FOR APPOINTMENT OF ADMINISTRATOR
📄 *Document Available (#1033809045)*

| 06-23-2016 | NOH | - | 87357058 | Jun 28 2016 2:45:04:633PM | OSCN\TeresaBecker | - | $ 0.00 |

NOTICE OF HEARING PETITION FOR LETTER OF ADMINISTRATION
📄 *Document Available (#1033809049)*

| 06-23-2016 | P | - | 87358914 | Jun 28 2016 4:30:10:123PM | OSCN\BerryCutler | - | $ 0.00 |

PETITION FOR LETTERS OF ADMINISTRATION
📄 *Document Available (#1033808996)*

| 06-23-2016 | TEXT | - | 87313289 | Jun 23 2016 1:13:44:330PM | OSCN\JoeHawkins | - | $ 0.00 |

OCIS HAS AUTOMATICALLY ASSIGNED JUDGE KIRBY, RICHARD TO THIS CASE.

| 06-23-2016 | ACCOUNT | - | 87313309 | Jun 23 2016 1:14:04:740PM | OSCN\JoeHawkins | - | $ 0.00 |

RECEIPT # 2016-3900994 ON 06/23/2016.
PAYOR:SMITH SIMMONS PLLC TOTAL AMOUNT PAID: $196.66.
LINE ITEMS:
PB-2016-721: $135.00 ON AC01 CLERK FEES.
PB-2016-721: $6.00 ON AC23 LAW LIBRARY FEE.
PB-2016-721: $1.66 ON AC31 COURT CLERK REVOLVING FUND.
PB-2016-721: $5.00 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES.
PB-2016-721: $1.55 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND.
PB-2016-721: $2.00 ON AC64 DISPUTE MEDIATION FEES.
PB-2016-721: $0.45 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS.
PB-2016-721: $25.00 ON AC79 OCIS REVOLVING FUND.
PB-2016-721: $10.00 ON AC81 LENGTHY TRIAL FUND.
PB-2016-721: $10.00 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY.

| 06-28-2016 | PP | - | 87355441 | Jun 28 2016 1:44:24:003PM | OSCN\BerryCutler | - | $ 0.00 |

PROOF OF PUBLICATION/JOURNAL RECORD INV #11102224 $37.23 PD DIRECT
📄 *Document Available (#1033610152)*

| 08-02-2016 | CTFREE | - | 87754432 | Aug 2 2016 9:11:41:550AM | OSCN\KayeMullendore | - | $ 0.00 |

JUDGE KIRBY; LETTERS ADMINISTRATION - ATTY JARRED ELWELL APPEARS WITH PETITIONER, DANNIE LENOX, LETTERS AND ORDER APPROVED. BOND WAIVED. NOTICES APPROPRIATE

| 08-02-2016 | DISPLTF | 1 | 87754440 | Aug 2 2016 9:11:05:790AM | OSCN\KayeMullendore | - | $ 0.00 |

LETTERS

| 08-04-2016 | LTA | - | 87860714 | Aug 11 2016 8:00:07:240AM | OSCN\DorisCovington | - | $ 0.00 |

LETTERS OF ADMINISTRATION
📄 *Document Available (#1034088259)*

| 08-04-2016 | O | - | 87860802 | Aug 11 2016 8:03:15:770AM | OSCN\DorisCovington | - | $ 0.00 |

ORDER FOR ISSUANCE OF LETTERS OF ADMINISTRATION. APPOINTMENT OF PERSONAL

REPRESENTATIVE, DETERMINATION OF HEIRS AND TERMINATION OF JOINT TENANCY
Document Available (#1034088255)

| 08-15-2016 NOTC | - | 88010945 | Aug 22 2016 11:21:37:337AM | OSCN\SabrinaSandbach | - | $ 0.00 |

NOTICE TO CREDITORS
Document Available (#1034346982)

| 08-30-2016 PP | - | 88116694 | Aug 30 2016 1:07:23:490PM | OSCN\TinaNguyen | - | $ 0.00 |

PROOF OF PUBLICATION / THE JOURNAL RECORD / INV#11147329 / $50.20 PAID
Document Available (#1015042055)

| 04-24-2017 P | - | 90972447 | Apr 26 2017 9:50:26:660AM | OSCN\YolandaShorter | - | $ 0.00 |

PETITION TO SELL REAL PROPERTY BY PUBLIC SALE
Document Available (#1036709409)

| 04-24-2017 PTS | - | 91070887 | May 4 2017 9:20:51:793AM | OSCN\JoeHawkins | Realized | $ 43.00 |

PETITION TO SELL REAL ESTATE($ 43.00)

| 04-24-2017 OCISR | - | 91070888 | May 4 2017 9:20:51:880AM | OSCN\JoeHawkins(Auto) | Realized | $ 25.00 |

OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND($ 25.00)

| 04-24-2017 OCJC | - | 91070889 | May 4 2017 9:20:51:927AM | OSCN\JoeHawkins(Auto) | Realized | $ 1.55 |

OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND($ 1.55)

| 04-24-2017 OCASA | - | 91070890 | May 4 2017 9:20:51:973AM | OSCN\JoeHawkins(Auto) | Realized | $ 5.00 |

OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES($ 5.00)

| 04-24-2017 CCADMIN0155 | - | 91070891 | May 4 2017 9:20:52:017AM | OSCN\JoeHawkins(Auto) | Realized | $ 0.16 |

COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION($ 0.16)

| 04-24-2017 SJFIS | - | 91070892 | May 4 2017 9:20:52:060AM | OSCN\JoeHawkins(Auto) | Realized | $ 0.45 |

STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES($ 0.45)

| 04-24-2017 DCADMIN155 | - | 91070893 | May 4 2017 9:20:52:107AM | OSCN\JoeHawkins(Auto) | Realized | $ 0.23 |

DISTRICT COURT ADMINISTRATIVE FEE ON $1.55 COLLECTIONS($ 0.23)

| 04-24-2017 DCADMIN05 | - | 91070894 | May 4 2017 9:20:52:147AM | OSCN\JoeHawkins(Auto) | Realized | $ 0.75 |

DISTRICT COURT ADMINISTRATIVE FEE ON $5 COLLECTIONS($ 0.75)

| 04-24-2017 CCADMIN04 | - | 91070895 | May 4 2017 9:20:52:190AM | OSCN\JoeHawkins(Auto) | Realized | $ 0.50 |

COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS($ 0.50)

| 04-25-2017 MO | - | 90995837 | Apr 27 2017 2:32:11:593PM | OSCN\YolandaShorter | - | $ 0.00 |

BENNIE R. GIBSON INTERESTED PERSON FILE HIS MOTION FOR SANCTION FOR VIOLATION OF PROBATE PROCEDURAL RULES OF THE COURT

📄 *Document Available (#1036710615)*

| 05-04-2017 OH | - | 91103401 | May 5 2017 4:04:56:897PM | OSCN\YolandaShorter | - | $ 0.00 |

ORDER FOR HEARING PETITION TO SELL REAL PROPERTY
📄 *Document Available (#1036689298)*

| 05-04-2017 ACCOUNT | - | 91070899 | May 4 2017 9:21:06:877AM | OSCN\JoeHawkins | - | $ 0.00 |

RECEIPT # 2017-4119803 ON 05/04/2017.
PAYOR: SMITH SIMMONS TOTAL AMOUNT PAID: $ 76.64.
LINE ITEMS:
PB-2016-721: $43.00 ON AC01 CLERK FEES.
PB-2016-721: $0.66 ON AC31 COURT CLERK REVOLVING FUND.
PB-2016-721: $5.00 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES.
PB-2016-721: $1.55 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND.
PB-2016-721: $0.45 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS.
PB-2016-721: $0.98 ON AC67 DISTRICT COURT REVOLVING FUND.
PB-2016-721: $25.00 ON AC79 OCIS REVOLVING FUND.

| 05-10-2017 CRF | - | 91143288 | May 10 2017 9:56:08.283AM | OSCN\JoeHawkins | Realized | $ 20.00 |

COURT REPORTER FEE-TRIAL ON MERITS($ 20.00)

| 05-10-2017 REQ | - | 91207312 | May 11 2017 3:52:50:277PM | OSCN\YolandaShorter | - | $ 0.00 |

REQUEST FOR LICENSED COURT REPORTER AT HEARING FOR PETITION TO SELL REAL PROPERTY ON MAY 17, 2017 AT 9:00 A.M.
📄 *Document Available (#1036693702)*

| 05-10-2017 ACCOUNT | - | 91143332 | May 10 2017 9:56:29:160AM | OSCN\JoeHawkins | - | $ 0.00 |

RECEIPT # 2017-4123843 ON 05/10/2017. COURT REPORTER FEE
PAYOR: TONYA PARKS TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $20.00 ON AC01 CLERK FEES.

| 05-12-2017 AFM | - | 91276779 | May 16 2017 4:41:58:830PM | OSCN\YolandaShorter | - | $ 0.00 |

AFFIDAVIT OF MAILING
📄 *Document Available (#1036939282)*

| 05-15-2017 PP | - | 91275843 | May 16 2017 4:03:23:947PM | OSCN\JibbieRoberts | - | $ 0.00 |

PROOF OF PUBLICATION/EDMOND SUN/#23163295/$35.30
📄 *Document Available (#1036784747)*

| 05-17-2017 CTFREE | - | 91278727 | May 17 2017 9:07:47:573AM | OSCN\KayeMullendore | - | $ 0.00 |

JUDGE KIRBY; PETITION TO SELL REAL PROPERTY - ATTY ROE SIMMONS APPEARS.
PETITION TO SELL REAL PROPERTY APPROVED WITHOUT OBJECTION.

| 05-18-2017 CTFREE | - | 91300960 | May 18 2017 11:27:21:223AM | OSCN\KayeMullendore | - | $ 0.00 |

JUDGE KIRBY'S COURT MINUTE
📄 *Document Available (#1036798519)*

08-08-2017 MO - 92300880 Aug 14 2017 OSCN\TinaNguyen - $ 0.00
4:19:48:840PM

MOTION TO WITHDRAW AND SUBSTITUTE COUNSEL OF RECORD
Document Available (#1037763834)

08-09-2017 O - 92305430 Aug 15 2017 OSCN\TinaNguyen - $ 0.00
10:09:43:070AM

ORDER GRANTING MOTION TO WITHDRAW AND SUBSTITUTE COUNSEL OF RECORD
Document Available (#1037765573)

09-15-2017 O - 92755681 Sep 19 2017 OSCN\RollaCartwright - $ 0.00
1:49:16:437PM

ORDER APPROVING PETITION TO SELL
Document Available (#1038063788)

09-20-2017 APLI - 92804239 Sep 22 2017 OSCN\TinaNguyen - $ 0.00
11:03:46:070AM

APPLICATION FOR ORDER APPROVING SALE OF REAL PROPERTY
Document Available (#1037308956)

09-20-2017 CT - 92804265 Sep 22 2017 OSCN\TinaNguyen - $ 0.00
11:04:28:190AM

CERTIFICATE FOR PROOF OF PUBLICATION
Document Available (#1038251745)

09-21-2017 OH - 92822850 Sep 25 2017 OSCN\ElizabethWarne - $ 0.00
11:17:41:880AM

ORDER FOR HEARING RETURN OF SALE
Document Available (#1038252879)

09-26-2017 NOH - 92897694 Sep 29 2017 OSCN\PhyllisReed - $ 0.00
3:47:41:707PM

NOTICE OF HEARING
Document Available (#1038255694)

09-26-2017 AFM - 92897797 Sep 29 2017 OSCN\PhyllisReed - $ 0.00
3:52:42:527PM

AFFIDAVIT OF MAILING
Document Available (#1038255698)

10-06-2017 PP - 92971868 Oct 6 2017 OSCN\BillYoung - $ 0.00
1:55:57:277PM

PROOF OF PUBLICATION EDMOND SUN INV #00452875 $60.83 PD DIRECT
Document Available (#1038351427)

10-17-2017 PP - 93084866 Oct 17 2017 OSCN\BillYoung - $ 0.00
4:48:23:773PM

PROOF OF PUBLICATION JOURNAL RECORD INV # 00452875 $ 60.83 PD DIRECT
Document Available (#1038351944)

10-18-2017 CTFREE - 93085982 Oct 18 2017 OSCN\KarenColbert - $ 0.00
9 12:10.397AM

JUDGE KIRBY : SALE REAL PROPERTY CONFIRMED WITHOUT OBJECTION

10-18-2017 O - 93196675 Oct 26 2017 OSCN\LoriMills - $ 0 00
10:06:15:400AM

ORDER APPROVING SALE OF REAL PROPERTY
📄 *Document Available (#1038483565)*

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  | - | 93385366 | Oct 30 2017<br>4:47:09:673PM | OSCN\TeresaBecker | - | $ 0.00 |

10-20-2017 O    ORDER GRANTING MOTION TO WITHDRAW AND SUBSTITUTE COUNSEL OF RECORD
📄 *Document Available (#1038484338)*

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  | - | 93978912 | Dec 19 2017<br>11:12:13:417AM | OSCN\JanicePilts | - | $ 0.00 |

12-19-2017 PP    PROOF OF PUBLICATION/THE EDMOND SUN/ACCT# 23163295 / $67.32 PAID

📄 *Document Available (#1038697867)*

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  | - | 94174316 | Jan 10 2018<br>8:29:09:920AM | OSCN\shawnamckay | - | $ 0.00 |

01-08-2018 APLI    APPLICATION FOR ORDER APPROVING SALE OF REAL PROPERTY
📄 *Document Available (#1039205476)*

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  | - | 94516754 | Feb 1 2018<br>10:00:33:243AM | OSCN\SandyPeoples | - | $ 0.00 |

01-29-2018 OH    ORDER FOR HEARING RETURN OF SALE
📄 *Document Available (#1039434455)*

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  | - | 94861262 | Mar 5 2018<br>2:25:08:767PM | OSCN\LoriMills | - | $ 0.00 |

03-05-2018 CNOTE    KIRBY- MOVING PARTY STRIKES RETURN OF SALE DUE TO ISSUES WITH NOTICE , WILL RESET HEARING AT A LATER DATE

## Balances

| Party | Costs Due | Costs Paid | Balance Due | Cash Bonds | Bond Forf. | Overpayments | Holding |
|---|---|---|---|---|---|---|---|
| Lenox, Ceola M | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Lenox, Dannie Gene | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Generic Party | $ 293.30 | $ 293.30 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Totals | $ 293.30 | $ 293.30 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

Report Generated by The Oklahoma Court Information System at April 3, 2018 8:31 AM

End of Transmission.

EXHIBIT 10[a]

Actions of Parks / Gibson family to file documents and register complaints in 2017 and 2018, placing the Attorney General (Mike Hunter), the OSBI, and other Oklahoma entities on direct notice of corruption and fraud in Oklahoma County Probate case PB 2016-721; please note this letter indicates interim AG Dawn Cash may have taken steps to thwart Governor Stitt's April 1, 2021 directive to OSBI to investigate these and other victims of disgraced judge Henderson, and that DA Stephen Kunzweiler adopted a completely false narrative about Henderson, in light of the facts I have seen

# JUSTICE TOO
**Tonya Parks**
**214-980-8816**
**justicetooforall@gmail.com**
McKinney TX 75072

January 7, 2021

Tim Downing, Esq
First Assistant Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Governor Kevin Stitt
C/O Trevor Pemberton, counsel
2300 North Lincoln Blvd, #212
Oklahoma City OK 73105

Senator James Lankford
1015 N. Broadway Avenue.
Suite 310
Oklahoma City, OK 73102

Federal Bureau of Investigation (OK)
3301 W. Memorial Road
Oklahoma City, OK 73134

US Department of Justice
950 Pennsylvania Ave NW
Washington DC 20530

FBI (TX)
One, Justice Way
Dallas, TX 75220

Representative Ron Wright
5840 West Ronald Reagan Mem. Hwy
Suite 115
Arlington TX 76107

Oklahoma State Bureau of Investigation
6600 N Harvey Pl
Oklahoma City, OK 73116

RE:     False narrative by DA appointed by Mr. Downing's office to investigate
        Henderson's other crimes, and conclusive proof that employees answering
        to Tim Downing at the AG have influenced the OSBI and "Neutral"
        District Attorneys not to investigate obvious crimes

Dear Mr. Downing, Governor Stitt, and others,

My family and I first approached the Attorney General in the fall of 2019 (Attachment 1) with
conclusive proof and tape recordings proving Henderson involved in corruption. Dawn Cash
received several recordings indicating that Henderson regularly met with law enforcement and
discussed how the DA would file charges. Dawn Cash engaged agent Reser, who spent more
than a year not following up with any of the leads we gave him, Ms. Cash, and Mike Hunter.

18 months after we alerted the Governor the AG to Henderson's malfeasance, Henderson was
finally removed and Governor Stitt asked the OSBI to investigate other crimes and malfeasance,
on April 1, 2021. Between April 1 and October 1, 2021, no one bothered to investigate and get
Henderson's direct communications with sheriff deputy Abernathy (in the tape recording), his ex
parte communications with Roe Simmons and other attorneys, or Henderson's inappropriate
conversations with the DA's office to create charges by using Judge Kirby's civil courtroom to
follow through with his unlawful and unethical plan to "direct" charges against my dad – who
had simply exposed multiple felonies that attorney Roe Simmons committed.

justicetooforall@gmail.com

# JUSTICE TOO
Tonya Parks
214-980-8816
justicetooforall@gmail.com
McKinney TX 75072

We provided the Attorney General's office and OSBI with Attachment 2, a list of obvious provable crimes that Henderson and Roe Simmons committed, and have massive supporting evidence.

DA Kunzweiler wrote Attachment 3, a false statement about the evidence and concerns we presented to Mr. Downing's office.  In all fairness, Mr. Downing inherited the actions of Mike Hunter and Dawn Cash, both of whom we know to have refused to follow Gov Stitt's April 1 directive to the OSBI.

Mr. Downing, we are victims, and have the most amazing evidence of unlawful and unethical actions by Timothy Henderson to intimidate my family and retaliate against us after we exposed criminal embezzlement and purjery committed by Henderson's friend, attorney Roe Simmons. My father put together an affidavit that gives you a roadmap for easy, simple, logical prosecution. Attachment 4.

Would you have the courage to set up a meeting with us, an African American Family from Texas, and take one step to right the wrongs that appear to be emanating from your agency?

Tonya Parks

justicetooforall@gmail.com

# ATTACHMENT 1

# ORIGINAL LETTER TO MIKE HUNTER AND KEVIN STITT – VERSION GIVEN TO HUNTER'S OFFICE INCLUDED TAPE RECORDINGS, CONCLUSIVE PROOF OF FRAUD, PERJURY, ABUSE OF OFFICE, AND COORDINATED CONSPIRACY TO COMMIT CRIMES

# JUSTICE TOO

## Tonya Parks
1401 Bristlewood Dr.
McKinney TX 75072

August 23, 2019

General Mike Hunter
Oklahoma Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Senator James Lankford
1015 N. Broadway Avenue.
Suite 310
Oklahoma City, OK 73102

Senator Jerry Moran
100 North Broadway
Suite 210
Wichita, KS 67202

NAACP
State President Anthony Douglas
PO Box 11024
Oklahoma City OK 73136

Representative Kay Granger
100 North Broadway
Suite 210
Wichita, KS 67202

Representative Ron Wright
5840 West Ronald Reagan Mem. Hwy
Suite 115
Arlington TX 76107

Governor Kevin Stitt
C/O Mark Burgett, counsel
2300 North Lincoln Blvd, #212
Oklahoma City OK 73105

Federal Bureau of Investigation (OK)
3301 W. Memorial Road
Oklahoma City, OK 73134

Representative Kay Granger
1701 River Run
Fort Worth, TX 76107

US Department of Justice
950 Pennsylvania Ave NW
Washington DC 20530

FBI (TX)
One, Justice Way
Dallas, TX 75220

Oklahoma State Bureau of Investigation
6600 N Harvey Pl
Oklahoma City, OK 73116

RE:   Request for Law Enforcement Investigation into Judicial Corruption in
Oklahoma County OK by judges Timothy Henderson and Richard Kirby,
and for two judges to be Considered for Immediate Suspension

Dear General Hunter and all others on this list,

Please consider this letter as a formal complaint to you or your organization, and a request for
you to take action in the public's interest and stop what appears to be a pattern of abuse of
judicial office.  I am a realtor in Texas and my mother and father have been subjected to conduct
that is extremely disturbing.  My grandmother passed away several years ago and a probate case
was filed in Oklahoma County.  The attorney for the estate (Roe Simmons) lied to the court and

told the court that my grandmother's house had been sold for ten thousand dollars, when in truth, it was sold for 16,000 dollars, pre-sold for 35,000 (see County Assessor page), and re-sold for 115,000, without prior approval from the court, and without my mother (an heir) receiving proper notice.

The fictitious sale allegedly occurred at the attorney's office (Roe Simmons), on September 5, 2017 a very suspicious situation. I learned that the house was sold for 16,000 from the title company. The attorney Roe Simmons was communicating with the Title Company and was aware of what was going on with the property, as the sale had closed for 35,000 dollars before the alleged bidding sale on September 5, 2017 at the attorney's office.

The documents on the Oklahoma County assessor website (attached) show that the attorney Roe Simmons' filing of September 20, 2017 was a fraud on the court, as he misrepresented multiple things: 1) that the house sold for 10,000 on September 5, 2017 to the highest bidder (not true as it was sold long before for 16,000 and Tyrek Wazzan was aware of this from emails and communications from the Title company; 2) the house was sold in August 2017 for 35,000.

I now know that attorney Simmons was allowing embezzlement to occur because he was likely in a financial situation (attached small claims case against him).

After we showed the court what has happened, the court punished us, and protected Roe Simmons. Judge Kirby refused to allow me to make records in court, and allowed the embezzlement to occur, in light of being made aware of the massive discrepancy at the county assessor, showing that the representative of the estate and the attorney (Roe Simmons) lied and embezzled money and committed mortgage fraud.

Judge Timothy Henderson (criminal judge not on the case whom we never met) had a private meeting with Roe Simmons (ex parte) about the probate case, and orchestrated a crime to be filed against my father, who was vocal about the matter. See tape recording from Sheriff. Judge Henderson "directed" deputy Abernathy of the Oklahoma County sheriff working at the courthouse, to write up charges against my father, who is 74 years old and living in Texas, for a minor misdemeanor of using the internet to threaten Roe Simmons. See recording. Not only does the recording prove that Judge Henderson masterminded the creation of the crime, but it shows that Deputy Abernathy meets with judges about criminal matters quite often and has ex parte meetings. I am disturbed that a criminal judge "directed" a Sheriff to draft a charge then present it to the DA, when that judge is supposed to be a final decisionmaker about a crime.

Roe Simmons had attempted the same thing with the OKC police, but they declined to issue charges against my father, and I believe they told Roe to take it out in civil court.

Also, Judge Henderson and Judge Kirby orchestrated Deputy Abernathy to be in Court when my mother testified in the probate case, and for a question to be asked of my mother about a tape recording on Roe Simmons' phone from my father, who was not in court. Deputy Abernathy said she needed someone to identify my father's voice to be able to charge him with the crime Judge Henderson "directed" her to draft. So Judge Henderson and Judge Kirby worked with the

sheriff to use Judge Kirby's courtroom, and have my mother testify against my father unknowingly (this was before the charge was filed) and violate the spousal privilege.

I have wondered why Judge Henderson got involved and motivated the deputy sheriff to write up charges against my father to protect Roe Simmons and the embezzlement he did.  Now I know that Roe Simmons held a fundraiser for Judge Henderson.

I told Judge Henderson and Judge Kirby about Simmons and the estate's misrepresentation about the sale of the house, and the embezzlement, and instead of having law enforcement investigate the glaring obvious facts, the two judges used the sheriff, their offices, and their courtrooms, to "direct" a misdemeanor to be issued against my father, to make him go away.  They have done nothing to Roe Simmons that I know of, except offer him their private offices and to have the sheriff (who meets with them all the time according to the recording) facilitate a criminal charge against my dad.

Please consider investigating and suspending these judges for the wrongs they are performing through their offices.

Tonya Parks

# ATTACHMENT 2

## FOLLOW UP LETTER DETAILING SOME OF THE MANY CRIMES HENDERSON AND ROE SIMMONS COMMITTED IN RETALIATING AGAINST US, STEALING FUNDS, LYING TO THE COURT, AND INTIMIDATING US SO WE WOULD NOT COME TO THE FINAL PROBATE TRIAL AND EXPOSE ROE SIMMONS' THEFT

(why couldn't the OSBI at least investigate and gather the communications between Henderson and the female sheriff deputy whose coworker was caught on tape describing how she and Henderson and other judges in Oklahoma County discuss criminal charges with DA's before they are filed).

# JUSTICE TOO

**Tonya Parks**
1401 Bristlewood Dr.
McKinney TX 75072

April 19, 2021

Governor Kevin Stitt
C/O Jason Reese, counsel
2300 North Lincoln Blvd, #212
Oklahoma City OK 73105

US Department of Justice
950 Pennsylvania Ave NW
Washington DC 20530

Senator James Lankford
1015 N. Broadway Avenue.
Suite 310
Oklahoma City, OK 73102

Federal Bureau of Investigation (OK)
3301 W. Memorial Road
Oklahoma City, OK 73134

Representative Kay Granger
1701 River Run
Fort Worth, TX 76107

FBI (TX)
One, Justice Way
Dallas, TX 75220

RE:   Asking to meet at your earliest convenience RE Governor Stitt's request for investigation into malfeasance by Timothy Henderson, and to expand investigation to include overt acts in furtherance of conspiracy to intimidate witnesses in PB-2016-721 and fabricate misdemeanor charge in *ex parte* meeting and for FBI to expand upon investigation under DOJ case previously started

Dear Governor Stitt,

I understand evidence supporting this letter was presented to your previous General Counsel Mark Burgett and the AG, and that the AG is conflicted to investigate Judge Henderson.  We have a courtesy copy of tape recordings and documents. Please schedule us in your earliest available slot to discuss Judge Henderson's malfeasance.  Included in this letter as victims are Bennie Gibson, Frances Gibson, and Tonya Parks, heirs to a probate estate in Oklahoma County and Texas residents. We are victims of Henderson's participation with attorney Roe Simmons in a scheme to us, witnesses in PB-2016-721 prior to the final probate trial in May 2019.

As you know, intimidating a witness is a felony punishable by one to ten years, per 21 OS 455. The law states the crime of intimidating a witness is:

> the intent to prevent any witness from appearing in court, giving testimony, or causing the witness to alter his or her testimony by any of the following:
> - threatening or causing mental harm through force or fear;
> - threatening physical harm through force or fear or causes or procures physical harm to be done to any person; or
> - harassing any person or causing a person to be harassed.
>
> (Okla. Stat. tit. 21 Okla. Stat. Ann.§ 455)

Here is a brief history below, and we are asking you for an audience to go over the documents outlined for the Probate Court, whose recent findings confirm the concerns in this letter. We exposed to the probate court the fact that Roe Simmons and his client the Personal Representative Dannie Lenox had embezzled funds, violated the law and made undisclosed profit from the sale of the deceased's house. Attorney Roe Simmons committed perjury in pleadings filed in September of 2017 and in October of 2017, unlawfully used a court stamp belonging to Judge Kirby and filed multiple documents not originally signed by Judge Kirby. The Orders of 2017 and final probate decree in 2019 were recently overturned, after we presented facts proving Simmons was not honest with the Court.

The evidence suggests Mr. Simmons caused false and perjured documents to be sent by US Mail across state lines to us in Texas, fraudulently portraying to the court and us that an "auction" for the house in probate occurred on September 5, 2017 and that it sold for 10,000 dollars to the highest bidder. In truth, there was no such auction. The property was pre-sold for 35,000 and then sold for 115,000, a fact Simmons withheld in depleting the estate. Judge Henderson committed overt acts in furtherance of that false narrative, and took action to effectuate Simmons' intimidation.

Simmons asked the OKC police to file civil harassment charges against Bennie Gibson, in retaliation for Mr. Gibson and Tonya Parks vocally having exposed Simmons' unethical acts. Under information and belief, the OKC police told Mr. Simmons the matter belonged in civil court, and refused to file his requested misdemeanor harassment charge against Bennie Gibson.

In order to finalize his unlawful scheme, having not been successful with the OKC police, and with the specific intent to intimidate and quiet us before the May 2019 trial, Roe Simmons privately met with Timothy Henderson, a criminal judge not involved in the probate case. In that *ex parte* meeting (itself unlawful under Oklahoma statutes at Title 5 as well as Local Rule 5), Simmons and Henderson discussed utilizing the courthouse sheriff station (primarily for courthouse security) to draft a harassment charge and present it to the DA.

Simmons had done a fundraiser for Henderson at his law firm, and represented Henderson's son in divorce at the time. Simmons successfully recruited Henderson to intimidate and harass us, making Henderson a confederate of Simmons'. Simmons did not invite us to the *ex parte* meeting he had with Judge Henderson, where he discussed us and the Probate case.

Tape recorded conversations given to Governor Stitt's former general counsel Mark Burgett show Simmons falsely told Judge Henderson in that *ex parte* meeting that Bennie Gibson had threatened Judge Kirby – a lie.

Under information and belief and the evidence for the FBI to review, after the meeting with Simmons, Henderson directed Sheriff Deputy Abernathy to start a criminal harassment charge against our family in Texas. It appears Henderson orchestrated and/or allowed (as Chief Administrative Judge) the sheriff deputy to use Judge Kirby's civil courtroom to finalize its "investigation" he directed them to initiate. Local Rules in Oklahoma County do not allow civil courtrooms to be used for clandestine criminal investigations.

In April and May of 2019, Tonya Parks and Frances Gibson traveled to the Oklahoma County Courthouse, prior to trial, and were met in the courtroom by a slew of deputies, organized and "directed" by Henderson to intimidate us on behalf of Roe Simmons. The plan carried out in Judge Kirby's court was for Frances Gibson to go before Judge Kirby in the probate case, and, under oath at the bench, be interrogated as to whether a phone message on Simmons' phone was indeed her husband's voice.

Unbeknownst to Mrs. Gibson, she was being interrogated by the judge and Mr. Simmons, with Deputy Abernathy in the court, for the specific intent to entrap Ms. Gibson into finalizing a harassment charge against her husband. Mr. Gibson had spoken his mind to Roe Simmons the day of the prior hearing, after Simmons had harassed his wife and daughter and forced them into a corner of the law library with a deputy allowing Simmons to hold them there under threat of force. Under information and belief, multiple meetings occurred with Judge Henderson's input, coaching Abernathy in finalizing her report for Judge Henderson, which she gave to an ADA.

What upsets us, the victims, is that the scheme to force Frances Gibson to testify in Judge Kirby's civil court under oath in the presence of Deputy Abernathy is a violation of her spousal privilege not to testify against her husband in a criminal matter. Frances did not know the civil probate courtroom was being used as an interrogation for a criminal misdemeanor harassment charge that was directed to be investigated by Judge Henderson.

In furthering the scheme of intimidation, after the prior hearing, Roe Simmons had been granted the ability to have courthouse deputies at his disposal. Simmons directed the deputies to help him take Frances Gibson and Tonya Parks to the law library to an area where, under the threat of the deputy, Roe Simmons harassed Frances Gibson not to testify at trial about his actions, or else he would take all of her inheritance. By allowing a civilian attorney to "borrow" the sheriff deputies for the purpose of sequestering Frances Gibson and Tonya Parks and harass them and intimidate them, and by directing the use of a civilian courtroom to effectuate Simmons and Dannie Lenox's unlawful depletion of the estate, Judge Henderson appears to be a co-conspirator with Simmons, and including intimidation of the two witnesses by threat and harassment.

If the Chief Administrative Judge of Oklahoma County grants an unethical attorney who had done a fundraiser for him, to be able to direct courthouse sheriffs to force a man's wife into a side room, and with threat of law enforcement, intimidate and threaten that wife that he would

take her whole inheritance if she exposed his wrongdoing at trial, any husband would give that attorney harsh words. Mr. Gibson appears justified for any harsh words he gave to Roe Simmons. Attorneys stealing from clients should be prepared for frictional conversations, and not claim misdemeanor "harassment." We believe Bennie Gibson had every right under the First Amendment to berate Roe Simmons after Simmons harassed and intimidated his wife, after they exposed the felonious acts of Roe Simmons. A conspiracy to commit a criminal act is punishable by 2 to 10 years. 21 OS 421. Practicing fraud on a witness is also a misdemeanor (21 OS 452), but intimidating a witness in the way Simmons did is a violation of 21 OS 455.

Our understanding is that Simmons' false documents were made known to Judge Henderson and others at the Oklahoma County Courthouse over the last several years. The Courthouse was under Judge Henderson's administrative control after we sent the Governor's former general counsel proof of the wrongdoing and were directed to meet with the AG. It appears the AG communicated information to Judge Henderson, but the AG investigators did not follow through. To date, Judge Henderson never took steps to correct the court clerk's publication of forged/fraudulent filings. We are referring specifically to Simmons' September and October 2017 filings in PB-2016-721, as well as others in that case.

Other felonies may be implicated to Judge Henderson and Roe Simmons' actions. For example, 21 OS §451 states a judge allowing false, forged or fraudulent evidence on OSCN.net is a felony; accord *State v. Delapp*, 2018 CJTD 1 (para. 36). As Judge Henderson acted in furtherance of Roe Simmons' acts on the Gibson family (witnesses), and his fraud on the court, it appears multiple crimes have been committed.

We have solid information that Judge Henderson expected Mr. Gibson to show up in Court in April and May of 2019, and that the goal was Mr. Gibson would be arrested on the spot in the probate courtroom. We believe that the slew of deputies in the courtroom and their demand to know where Bennie Gibson was, indicates that Henderson and Simmons actually planned to arrest Bennie Gibson, based on the *ex parte*, retaliatory scheme of Roe Simmons. It seems Judge Kirby was recruited to participate as he himself asked Mrs. Gibson, where her husband was, in order to have him arrested in the courtroom. Luckily, Mr. Gibson was in Texas.

Bennie Gibson, is a veteran of the Vietnam War, is 75 years old, and has never been charged with a crime. Currently, there is an active warrant out of Oklahoma County, as the DA's office has filed a harassment misdemeanor charge against him. He is afraid to go to Oklahoma and visit his relatives' graves for fear of being arrested.

Frances Gibson paid out of her pocket $5,975 dollars toward the funeral of her own mother. By law, that money is to be paid back to the person responsible before any attorney fees. Roe Simmons sent her a check for approximately 500 dollars, and embezzled money from the estate, taking money out without a final order of disbursement. Simmons took at least 16,000 that belonged to Frances Gibson, of the final amount, before a final order was issued. Chase bank has offered to comply with any investigation.

Judge Henderson probably has a long list of moral compromises, and his situation of corruption did not occur overnight. Nevertheless, an officer of the courts should never participate with a

judge in calculated criminal conduct, in furtherance of crimes against property of an estate, and direct courthouse deputies to intimidate/retaliate against trial witnesses.

Please let me us when your schedule allows. You may learn Henderson directed an ADA to participate with OK County deputy Abernathy in having the misdemeanor charges filed.  We have recordings proving that Simmons' felonies were made known to the sheriff's office, and to Henderson, by Tonya Parks, and yet no criminal report was made with respect to felonies committed by Simmons in thieving the estate and perjury to the court.

Thank you for providing me your first available time slot.

We believe the evidence will overwhelmingly demonstrate that Bennie Gibson's criminal charge and current misdemeanor warrant for "harassing" Roe Simmons (after Simmons held his family at bay with a courthouse deputy) is a case borne from the fruit of a poisonous (malfeasance) tree (*ex parte* meeting with Henderson). Also, the false sale of the property involved a scheme with funds going across state lines, and false documents being sent across state lines to Texas.  The previous letter dated August 23, 2019 resulted in the Department of Justice opening an investigation into Judge Henderson.  That case number at the Department of Justice is ID number 4324097.

The recordings being provided to you from agent Reser of the AG's office, shows that he and the AG's office recommend the FBI investigate Henderson's actions and our victimization.

As such, Governor Stitt, please request the help of the FBI.

With utmost respect for you,

Tonya Parks

# ATTACHMENT 3

## LETTER FROM DA STEPHEN KUNZWEILER

(Completely inaccurate and false narrative portrayed to Tim Downing
that our family is complaining that Henderson drafted a false warrant
– nothing could be further from the truth, as the other attachments
going back to 2019 clearly show – we provided a tape recording to
Dawn Cash from the courthouse sheriff saying Henderson "directed"
them to get charges started.  Mr. Downing should know that Mr.
Kunzweiler has either been told a falsity he somehow believes, has
simply not looked at any of the evidence and recordings, or is
purposefully issuing a false narrative to avoid doing his job.   Mr.
Downing, please set up a meeting with us immediately as we have
tape recordings proving that Dawn Cash and someone else, likely in
your organization, has been derailing Governor Stitt's request to
investigate Timothy Henderson and is protecting that monster)



**Stephen A. Kunzweiler**
*District Attorney*
*District Attorney's Office – District 14*
*500 S. Denver, Suite 900*
*Tulsa, OK 74103-3838*
*(918) 596-4864*
*(918) 596-4830 FAX*
*stevekunzweiler@tulsacounty.org*

Tim Downing                                          December 28, 2021
First Assistant Attorney General
Office of Attorney General – State of Oklahoma


Re:    Investigation and Potential Prosecution of
       <u>Timothy Henderson, Former Oklahoma County District Judge</u>
       Conflict Appointment of Tulsa County District Attorney's Office
       Dated October 4, 2021

       In the matter of Ceola M. Lenox
       Oklahoma County PB-2016-721


First Assistant Attorney General Downing:

This letter is a follow-up to your Office's conflict appointment of District Attorney's Office – District 14 (Tulsa County) regarding the above referenced matter(s). As you are aware, District Attorney Jason Hicks of District Attorney's Office – District 6 was initially conflict appointed to handle matters related to former Oklahoma County District Judge Timothy Henderson. The focus of District Attorney Hicks's appointment appears to be directly related to matters alleging sexual crimes while Judge Henderson was serving as a District Court Judge. My office was subsequently conflict appointed when an allegation was made against Judge Henderson arising out of the *Ceola M. Lenox* probate case in Oklahoma County case PB-2016-721.

My office in conjunction with the assistance of the Oklahoma State Bureau of Investigation conducted a thorough review of the allegations made in the *Lenox* probate case. Based upon our investigation we could discern no violation of Oklahoma criminal law attributable to former Judge Henderson. The allegations as framed in an affidavit by Ms. Tonya Parks were that Judge Henderson filed a false and one-sided criminal report with a law enforcement agency which subsequently resulted in misdemeanor charges being brought against Bennie Gibson, the father of Tonya Parks. In fact, former Judge Henderson's only connection to that specific matter was his suggestion to an attorney named Roe Simmons that Simmons ought to make a report to the Oklahoma County Sheriff's Office regarding potential criminal conduct exhibited by Gibson in the probate matter. Former Judge Henderson's specific actions do not approximate, nor do they rise to the level of a crime in this instance or under the investigated facts.

Ms. Parks is advised that if there is a forum for her complaint, it may lie with other administrative remedies best handled by the Oklahoma Bar Association or the Oklahoma Council for Judicial Complaints (Title 20, Chapter 22, App. Sec. Rule 376: 1-1-1 et seq.). Further, Ms. Parks is advised that whether her father, Bennie Gibson committed a criminal offense as alleged in Oklahoma County CM-2019-1825, it can only be resolved through that case.  Her father should retain the services of an attorney to challenge / defend against those allegations in an Oklahoma County court of law.  It was not, nor should it be the responsibility of the Tulsa County District Attorney's Office to review the appropriateness of those charges.

Thank you for your referral of this matter.


Sincerely,

Stephen A. Kunzweiler
District Attorney


Cc:    Tonya Parks
       Via E-mail: justicetooforall@gmail.com

# ATTACHMENT 4

# AFFIDAVIT OF BENNIE GIBSON, DETAILING NUMEROUS CIVIL RIGHTS VIOLATIONS, CRIMES, UNETHICAL ACTS, PROVIDING OSBI AND AG DIRECTION FOR INVESTIGATION

STATE OF TEXAS                         )
                                       ) ss.
COUNTY OF ___COLLIN_____ )

## AFFIDAVIT

I Bennie Gibson, being duly sworn hereby depose and state the following, that I am over the age of 21 and I have never been convicted of a felony nor a crime involving moral turpitude and that I have personal knowledge of the following:

1) I am the husband of Frances A. Gibson (*Beneficiary* of the estate of the estate of the deceased Ceola M. Lenox) and son in law of the deceased Ceola Lenox in Probate Case # PB-2016-721 in Oklahoma County District Court, Oklahoma. The matter of the estate is still pending under color of law before District Judge Richard Kirby and appears to have been transferred to a Judge Kendra Coleman.

2) Dannie Lenox, my wife's brother was appointed as administrator/personal representative of the estate. Jared Elwell, an associate at Roe Simmons' law firm, filed the probate case. After I filed a bar complaint against both Elwell and Simmons, Roe Simmons continued to represent Dannie Lenox.

3) The death of my mother in law has been very stressful upon my family.

4) My wife paid up front for the funeral of her mother $5,975.00.

5) My wife received her portion of a MetLife annuity in the amount of $2,129.08, and Dannie Lenox, the personal representative, told my wife that his attorney in the probate (Jared Elwell) wanted her to sign the check and send it to him. I have learned that the check was not deposited into the probate (estate) account, but rather, into an account that Dannie Lenox and Leon Lenox set up in their personal names.

6) We attached those checks to filings on April 8, 2019, in the case, showing money not going into the estate, but into personal accounts. We have not received an accounting from this personal account.

7) My wife, Frances Gibson has never been reimbursed for funeral expenses, even though many other payments were made during the probate case. I was under the impression that payments for burial and funerals are reimbursed first in a probate case, and am curious as to why that has not happened.

8) In the early part of 2017, six months after the probate had been filed, attorney Roe Simmons drafted an LLC to put my wife's deceased mother's house into, so it could be sold outside of probate. We did not feel that was an ethical thing to do, and declined his directive to do so. We have a copy of his letter and the drafted LLC he put together, and the letter is dated after the start of the probate case which his firm filed. That was not the end of his unethical conduct.

9) I exposed that unethical/fraudulent conduct by Roe Simmons, emailed him, and I contacted Dannie Lenox, the executor (who subsequently threatened my wife to sign the LLC papers). We have been retaliated against since that time.

10) Around April 2017 as an interested party, I filed a request to remove Dannie Lenox and to sanction Roe Simmons, alerting Judge Kirby to Simmons' improper acts to circumvent probate. Approximately the time that Roe Simmons received our motion for sanctions, he

rushed to the Court House and filed a Petition to sell the property of the deceased in April of 2017. Up until that point, Roe Simmons and Dannie Lenox had been attempting to go around probate with the purposeful creation of the LLC in January of 2017.

11) At no point that I am aware of, did Simmons ever have the property appraised for the court to approve the sale.

12) I filed with the Oklahoma Bar Association separate complaints against both Jared Elwell and Roe Simmons. The complaints were numbered (IC-17-581) and (IC-579).

13) I spoke with the Oklahoma Bar Association (Debbie Maddox), and I exposed the unlawful conduct by Dannie Lenox. She and I discussed that I would express my free speech on paper if the bar did not properly discipline or act against Simmons and Elwell.

14) Per the rules of professional conduct, I discussed with the bar that Jared Elwell should be removed from the probate case, after Elwell was alerted by my family that Dannie Lenox had been acting contrary to the law.

15) In late November or December of 2017, we communicated with Wazzan who told us he had bought the house from a person named Deval Hubbard and had sold the house for 35,000. We researched Deval Hubbard and spoke to him, and he told us that he had purchased the house for $6,000 from Dannie Lenox and sold it to Wazzan.

16) Deval Hubbard told us that he had been paid 6,000 dollars for selling the property to Wazzan for 16,000 dollars, and that Hubbard and Dannie Lenox split the 6,000 dollars between each other. We were also not told of the first, second, and third sales of the property, and the court was not made aware of this 6,000-dollar commission, or the fact it had been approved to be split between the Personal Representative and Administrator (Dannie Lenox) and Mr. Hubbard.

17) Deval also told us that he had offered 20,000 dollars for the portion of the real estate that was land only. We learned from Roe Simmons that allegedly, the land portion sold for 9,000 dollars.

18) We were not notified or allowed to object and perform an appraisal of the land only portion of the real estate. No documents were sent to us regarding offers and the process that allegedly occurred regarding the purchase and sale of the land only part of the property. American Title did the closing on the land, and we again learned about it after the fact.

19) I contacted Dannie Lenox about the alleged sale of the land only portion for 9,000 dollars, and he did not know anything about it. That indicated to me that corruption and falsities were occurring. I am concerned that such sale had again occurred without full participation by my wife (heir) and without full approval of the court and without proper valuation.

20) Dannie Lenox sent my wife copy of a deposit slip at Chase bank for over 8,000 dollars, but we were not given a copy of the check for that deposit.

21) In March of 2018 we filed a federal lawsuit in Texas after we were prevented from receiving information about the probate, and also having learned concerning issues involving fraud on the court and dishonesty by Dannie Lenox and the attorney Roe Simmons.

22) An attorney (named Bruce Packard) allegedly represented Roe Simmons in our Texas lawsuit, and I assumed that Roe Simmons' malpractice insurance paid for that attorney. I am aware that my daughter Tonya recorded a conversation with that attorney, and that he indicated he was not aware that his name had been used to file pleadings in that federal suit. Roe Simmons later presented to Judge Kirby and to us, that he had to spend 40,000 dollars to

pay for that attorney who was not aware of his name being attached to Roe Simmons' pleading.

23) Although the federal judge in Texas dismissed our suit due to jurisdiction, she allowed us to conduct some discovery, and we were able to get documents from the Title Company that prove misrepresentations by Dannie Lenox and Roe Simmons to the Oklahoma court.

24) After the lawsuit was filed and just before it was dismissed for jurisdiction, we received information that both the representative of the estate (Dannie Lenox) and the attorney Roe Simmons had my wife's deceased mother's house pre-sold by July 27, 2017 for 16,000 dollars, pocketing 6,000 dollars as an "assignment fee," according to documents of sale. Neither Dannie Lenox nor Roe Simmons ever notified us of such illusory sale.

25) We also learned that the title company used the same escrow account to allow a person named Wazzan to perform a "double escrow flip" and that he was paying 6,000 dollars as a commission for his purchase of the property. Neither Dannie Lenox nor Roe Simmons notified us or the court within thirty days that they were aware that this company named Plains State had offered 35,000 dollars and the property was signed over to them with a sales date in August of 2017. This was the highest bidder before the September 5, 2017.

26) Roe Simmons and Dannie Lenox filed untrue documents on September 5, 2017, that the house was sold at a "public sale" at attorney Roe Simmons' office on September 5, 2017, when they both knew that Dannie Lenox had signed sales documents in July of 2017.

27) We realized though the federal lawsuit that Roe Simmons and Dannie Lenox had used the US Mail to send us false documents to our address in Texas on September 21, 2017, notifying us for the first time that a sale had allegedly occurred on September 5, 2019. We only learned in 2018 through the discovery in the federal suit, that the sales had occurred long before September 5, 2017.

28) We learned that Roe Simmons had accumulated personal debt that he had not paid, from lawsuits filed in Oklahoma County, and due to liens that were placed on his personal home.

29) We have copies of those debts (liens) and are concerned that Simmons took advantage of the estate to cover personal debt.

30) During the time we were learning all of the concerning information, in early 2018, in the first part of 2018, I called Roe Simmons' homeowners' association about the lien they had placed on his property. I identified in our federal lawsuit filed in March of 2018, the name of the person with whom I spoke at Simmons' homeowners' association. She told me that the title company handling Simmons' refinancing of his house would be sending a payment to cover that debt. That information made me extremely concerned, as Roe Simmons had filed several questionable documents indicating that in January of 2018, a sale of the land had allegedly occurred at his office, and that the land was sold for 9,000 dollars.

31) On January 29, 2018, Roe Simmons published a document in the court system, that I later acquired through the computer system, and that he sent to us through the mail. This document is called "Order for Hearing Return of Sale" and bears a very interesting and bizarre stamp signature of Judge Kirby, that appears to have been fabricated or xerox copied.

32) I contacted Judge Kirby's office and indicated that the stamp on the January 29, 2018 document filed by Simmons looked forged and discussed with Katrina the concerns about what we had learned. I was told that we needed to be at the hearing set for March 5, 2018 to object to the sale of the land.

33) I then spoke with the chief deputy clerk of Oklahoma County Court Clerk (Mr. Sullivan) about the Judge Kirby stamp on the January 29, 2018 "ORDER FOR HEARING RETURN OF SALE" and my concerns of Roe Simmons having borrowed a stamp from Judge Kirby or forged his stamp signature. Mr. Sullivan said he was aware of another attorney who had forged judges' signatures and had done a lot of forging. Mr. Sullivan said "I hate to be in your shoes." Mr. Sullivan did not indicate that he would take any action to correct the situation, but he said he would "check and see." I gave him my phone number and he indicated he would call me back. He never contacted me back.

34) I suspect that Mr. Sullivan and Judge Kirby spoke, because on March 5, 2018, without a hearing, Judge Kirby placed a statement on OSCN.net that allegedly, the "MOVING PARTY STRIKES RETURN OF SALE DUE TO ISSUES WITH NOTICE; WILL RESET HEARING AT A LATER DATE."

35) After March 5, 2018 Roe Simmons re-filed similar documents, attempting to bless the sale that had apparently already occurred. Mr. Simmons filed and re-filed numerous documents in the probate case, after we repeatedly alerted him and the court of improprieties.

36) We placed Judge Kirby on notice of the misrepresentations by omission, and the inappropriate personal profit by Dannie Lenox who was the Administrator and Personal Representative, and that the public county assessor documents show the house was sold for about 35,000 dollars on August 17, 2017.

37) Judge Kirby did nothing after being made aware of the estate being taken advantage of. Instead, he allowed deputies in his courtroom to obey Simmons, intimidate my wife and daughter, and he did not allow my family to testify about the improper actions after my wife had made it clear to the court that fraud was occurring.

38) I filed a complaint with the Council on Judicial Complaints regarding Judge Kirby not removing Dannie Lenox, and allowing Roe Simmons to deplete the estate unlawfully.

39) Roe Simmons attempted to have the Oklahoma City Police department file charges against me, after I divulged to them his unlawful actions. It is my opinion that the police refused to investigate either my concerns about felonious action by Simmons and Dannie Lenox, or Simmons' allegations against me, because they believed it was a civil matter before Judge Kirby. I am curious as to whether Judge Kirby recommended to Simmons that he attempt to file charges against me.

40) On March 11, 2019, my wife filed a motion to compel a final accounting, and Roe Simmons and Dannie Lenox rushed to the court and filed a final accounting within seven days, on March 18, 2019.

41) After we received the "final accounting" I realized that Dannie Lenox did not open up an estate account until September 14, 2016.

42) The "costs paid by the estate" section falsely says that the estate paid $11,271.50 for funeral expenses. That is blatantly false as my wife signed her life insurance beneficiary proceeds to pay for most of the funeral expenses. The remainder was paid out of Ceola's account with her deceased husband. The bank drew a check for several thousand dollars, and we believe that Leon Jr. signed his father's name on that check. The funeral was around June 2, 2016.

43) Ceola's husband, Leon, predeceased her. I spoke with managers at Chase Bank, who told us that after Ceola died, money was going in and out of her account, before Dannie Lenox was appointed representative. I am concerned that the estate was taken advantage of in that

regard. We have attempted to subpoena those Chase bank records to see if either Dannie Lenox or Leon Lenox Jr participated in inappropriately liquidating the estate without accounting for it. I believe that Leon Jr forged his father's name.

44) I am concerned that money went into personal accounts and not the estate account.

45) We have never received an accounting of the furniture, and antiques in my wife's mother's house. We were told that Dannie's girlfriend Delouie sold antiques and furniture through Facebook without any accounting.

46) My mother in law (Ceola) had told my wife for years that she had made my wife the executor of the estate on her death. My mother in law (deceased) Ceola, was found dead under suspicious circumstances, after Dannie and Leon had taken her to a doctor other than her personal doctor. She was found in her kitchen, and her house was open.

47) Dannie's girlfriend (Delouie), who is a felon, had life insurance policies of Ceola's at the funeral. When we asked how she had gotten the life insurance policies, Dannie Lenox told us that he broke into the deceased' safe, and took documents from it without giving us an accounting what was in there. We discussed an autopsy, and Dannie's girlfriend told us there did not need to be one, even though she is not part of the direct family.

48) Dannie cashed policies that were found in the safe and he did not put money toward the funeral himself. We are not sure how many policies the deceased had.

49) Dannie Lenox sold an antique car that Ceola Lenox owned, and did not account for it to this date.

50) I am aware that on August 31, 2016 Dannie Lenox deposited a check made out to the Estate of Ceola Lenox into his personal account in the amount of $7466.75, from Oklahoma Federal. We have never received an accounting of what was in Oklahoma Federal accounts or the other accounts, and have never seen copies of checks written and expenses.

51) On May 16, 2019, a hearing was set to finalize the estate. Roe Simmons argued to Judge Kirby that because he had to represent himself in our lawsuit in Texas that he should be entitled to almost all of my wife's inheritance. Judge Kirby apparently verbally approved Simmons' request on May 16, 2019. Judge Kirby issued a minute Order on May 17, 2019 that gives Roe Simmons the right to assess against my wife's portion of the estate, 16,000 dollars in attorney fees.

52) I would like to investigate whether Simmons in fact expended any funds in Texas, and why the attorney Bruce Packard said that he was not aware his name had been used in pleadings in the Texas federal case against Simmons, and whether Simmons' malpractice carrier paid for his defense. Roe Simmons told Judge Kirby that he had to spend over 25, 000 dollars to defend the lawsuit we filed in Texas. I would like to know if his malpractice carrier covered the legal fees and if Mr. Packard in fact charged Simmons and actually received any money.

53) Mr. Packard, in a recorded conversation, said that he was not aware of being involved in our lawsuit, even though his name is on pleadings. The recording indicates strongly that Mr. Packard may not have actually drafted and filed Roe Simmons' responses in Texas in our lawsuit.

54) My daughter Tonya was physically removed from the courtroom on May 16, 2019, by courtroom deputies under Judge Kirby's direction, even though she had filed a Power of Attorney to help my wife in that hearing.

55) After the Oklahoma City Police chose not to investigate the issues that have arisen out of the probate before Judge Kirby, I have become aware that Judge Kirby allowed Roe Simmons to use his courtroom, to facilitate a criminal investigation into me, for allegedly threatening Mr. Simmons through email and phone calls.

56) I live in Texas and am 74 years old. Judge Kirby met with courtroom deputies and even asked questions of my wife (without telling her) that were designed to incriminate me, violate the spousal privilege, with the goal to have misdemeanor charges drafted against me.

57) I have also become aware that a Judge Timothy Henderson "directed" the courthouse sheriff deputies' investigation regarding me, after he and Roe Simmons met privately in his office, without me or my wife, or my daughter being invited to discuss the issues that were before Judge Kirby. Judge Henderson discussed ex parte with Roe Simmons matters presented to Judge Kirby, and apparently Judge Henderson meets regularly with a particular deputy named Abernathy, whom Judge Kirby allowed to use his courtroom, in the probate case at a hearing in 2019, to finalize her investigation into me, regarding a phone call I had made to Simmons.

58) Without a final Order allowing distribution being issued in the probate case, my wife received a check for around five hundred dollars in May of 2019, as her portion of the estate, after 16,000 dollars was deducted, from Roe Simmons. I would like to know how Roe Simmons and Dannie Lenox were able to spend funds from the estate before a final order was presented to Chase bank.

59) My wife presented a litany of problems with the final accounting and objected to all activities, asking that Dannie Lenox be removed as Personal Representative and Administrator, including spending estate funds and distributing them before a final order of distribution.

60) Then, on September 12, 2019, Judge Kirby issued an Order, which we have objected to. I understand that September 12, 2019 was judge Kirby's last day to oversee this case.

61) Was issued a subpoena to get the records from Chase bank in the last several months in the probate case. Roe Simmons is attempting to quash that subpoena because I believe it will confirm theft from the estate as well as self dealing.

62) We have tape recording of the Oklahoma County Sheriff supervisor describing the ex parte activity mentioned in the preceding paragraphs, and the fact Judge Henderson initiated the criminal investigation against me, that appears to be clear retaliation by Roe Simmons. In a part of a recorded conversation, the Sheriff indicates that the reason that Deputy Abernathy was "directed" by Judge Henderson to draft charges against me, was that a threat was made about a judge. I certainly did not threaten Judge Kirby by filing a complaint at the Council on Judicial Complaints, and by being a whistleblower as to unlawful and unethical actions by Roe Simmons and Dannie Lenox, which I made him and his office aware of.

63) I understand that my daughter has told the Oklahoma County Sheriff supervisor over deputy Abernathy, deputy Abernathy herself, and Judge Henderson's office, about the unlawful actions of Simmons and Dannie Lenox, but that Henderson turned a blind eye, and said he could not speak with us. Neither Henderson, Deputy Abernathy, or her supervisor, have seen fit to open an investigation into criminal activity by Simmons and Dannie Lenox, after my daughter Tonya, in recorded calls, alerted them to criminal conduct.

64) I expected someone in the legal system in Oklahoma to do the right thing. The Council on Judicial Complaints did nothing. The Bar association did nothing to Roe Simmons.

65) I believe that Judge Kirby, Roe Simmons, and Judge Henderson, worked together to retaliate against me for being a whistleblower about corruption in my wife's mother's probate case.

66) I have learned that Roe Simmons held a fundraiser for Judge Henderson and that he represents Judge Henderson's son in a divorce matter.

67) I have become aware that Judge Henderson has had meetings at the Oklahoma Bar Association this past Spring, (where the Council on Judicial Complaints is also located) and I wonder whether Mr. Combs or persons at the Council on Judicial Complaints discussed my conversations with Mr. Combs about the wrongful actions by Simmons and Judge Kirby.

68) I believe an investigation should occur, into why the Bar Association, Council on Judicial Complaints, and Oklahoma County Sheriff, have done absolutely nothing to hold anyone accountable for what has happened in my mother in law's probate case, and whether there were communications behind the scenes with Judges Kirby and Henderson, in order to protect Roe Simmons.

69) I went to Vietnam and fought for this country. I am African American, and am deeply concerned that the Oklahoma County Courthouse is being manipulated and subjected to control and direction influenced by unethical persons as I have detailed above. I am concerned about possible racism, and other person being taken advantage of as well.

70) I have also learned that Judge Henderson has a previous history of ex parte activity, and that he is a former law enforcement officer, and that he may have worked for the same lawfirm as the current District Attorney. I do not believe he and judge Kirby have acted appropriately at all, and should be investigated in the public interest.

This I swear

_Bennie Gibson_

Bennie Gibson

## NOTARY ATTESTATION

On this date appeared _Bennie Gibson_, who presented proper identification and confirmed that the statements above are true and accurate to the best of her knowledge.

Date: 11/18/2019 Notary _Crissy M Simmons_ My commission expires 10/05/2021

Stamp:

CRISSY M SIMMONS
Notary ID.#131303766
My Commission Expires
October 5, 2021

EXHIBIT 10[b]
Proof the Parks/Gibson family sought relief from all relevant Oklahoma State entities tasked with investigating and regulating judicial and legal action that harms the general public

**MARK D. MITCHELL, P.C.**
Attorney and Counselor at Law
512 N. W. 12th Street
Oklahoma City, OK 73103-2407

Invoice submitted to:

Chicago Title
Attn: Janice Doerge
3401 NW 63rd Street, Suite 300
Oklahoma City, OK 73116

January 04, 2018

*In Reference To: 2520 N. E. 16th*

**Invoice #**    7801

## Professional Services

| | Hours |
|---|---|
| 11/29/2017 Telephone conference with Ken re: unspecified matter he will want some guidance on for future; he is to FedEx me material. | 0.20 |
| 12/5/2017 Review file, review probate docket on OSCN, telephone conference with K. McBride; letter to Ms. Parks (granddaughter) re: no claim against Chicago. | 2.20 |
| 12/11/2017 Receipt of troubling email from Bennie Gibson - review and email to client reinforcing my advice not to talk to him or his daughter Parks; review multiple filings on Gibson's website - it appears he has filed a Bar complaint against probate attorney - judicial complaint against probate judge and has written the Oklahoma Attorney General; voice mail from Gibson although he recognizes and doesn't expect me to call him back. | 0.80 |

| | | Amount |
|---|---|---|
| For professional services rendered | 3.20 | $960.00 |

| | | Amount |
|---|---|---|
| For professional services rendered | 3.20 | $960.00 |

Chicago Title

Page    2

| | Amount |
| --- | --- |
| Balance due | $960.00 |

EXHIBIT 10[c]

August 2019 Request from Tonya Parks
through Justice Too, a non-profit Ms.
Parks registered with the State of Texas,
for the highest levels of law enforcement
in Oklahoma to investigate unethical and
criminal acts of Judge Timothy
Henderson, Judge Richard Kirby, Attorney
Roe Simmons, Chicago Title and others
involved in defrauding the estate of Ceola
Lenox in probate case PB-2016-721

# JUSTICE TOO
## Tonya Parks
1401 Bristlewood Dr.
McKinney TX 75072

August 23, 2019

General Mike Hunter
Oklahoma Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Senator James Lankford
1015 N. Broadway Avenue.
Suite 310
Oklahoma City, OK 73102

Senator Jerry Moran
100 North Broadway
Suite 210
Wichita, KS 67202

NAACP
State President Anthony Douglas
PO Box 11024
Oklahoma City OK 73136

Representative Kay Granger
100 North Broadway
Suite 210
Wichita, KS 67202

Representative Ron Wright
5840 West Ronald Reagan Mem. Hwy
Suite 115
Arlington TX 76107

Governor Kevin Stitt
C/O Mark Burgett, counsel
2300 North Lincoln Blvd, #212
Oklahoma City OK 73105

Federal Bureau of Investigation (OK)
3301 W. Memorial Road
Oklahoma City, OK 73134

Representative Kay Granger
1701 River Run
Fort Worth, TX 76107

US Department of Justice
950 Pennsylvania Ave NW
Washington DC 20530

FBI (TX)
One, Justice Way
Dallas, TX 75220

Oklahoma State Bureau of Investigation
6600 N Harvey Pl
Oklahoma City, OK 73116

RE:     Request for Law Enforcement Investigation into Judicial Corruption in
        Oklahoma County OK by judges Timothy Henderson and Richard Kirby,
        and for two judges to be Considered for Immediate Suspension

Dear General Hunter and all others on this list,

Please consider this letter as a formal complaint to you or your organization, and a request for
you to take action in the public's interest and stop what appears to be a pattern of abuse of
judicial office.  I am a realtor in Texas and my mother and father have been subjected to conduct
that is extremely disturbing.  My grandmother passed away several years ago and a probate case
was filed in Oklahoma County.  The attorney for the estate (Roe Simmons) lied to the court and

told the court that my grandmother's house had been sold for ten thousand dollars, when in truth, it was sold for 16,000 dollars, pre-sold for 35,000 (see County Assessor page), and re-sold for 115,000, without prior approval from the court, and without my mother (an heir) receiving proper notice.

The fictitious sale allegedly occurred at the attorney's office (Roe Simmons), on September 5, 2017 a very suspicious situation. I learned that the house was sold for 16,000 from the title company. The attorney Roe Simmons was communicating with the Title Company and was aware of what was going on with the property, as the sale had closed for 35,000 dollars before the alleged bidding sale on September 5, 2017 at the attorney's office.

The documents on the Oklahoma County assessor website (attached) show that the attorney Roe Simmons' filing of September 20, 2017 was a fraud on the court, as he misrepresented multiple things: 1) that the house sold for 10,000 on September 5, 2017 to the highest bidder (not true as it was sold long before for 16,000 and Tyrek Wazzan was aware of this from emails and communications from the Title company; 2) the house was sold in August 2017 for 35,000.

I now know that attorney Simmons was allowing embezzlement to occur because he was likely in a financial situation (attached small claims case against him).

After we showed the court what has happened, the court punished us, and protected Roe Simmons. Judge Kirby refused to allow me to make records in court, and allowed the embezzlement to occur, in light of being made aware of the massive discrepancy at the county assessor, showing that the representative of the estate and the attorney (Roe Simmons) lied and embezzled money and committed mortgage fraud.

Judge Timothy Henderson (criminal judge not on the case whom we never met) had a private meeting with Roe Simmons (ex parte) about the probate case, and orchestrated a crime to be filed against my father, who was vocal about the matter. See tape recording from Sheriff. Judge Henderson "directed" deputy Abernathy of the Oklahoma County sheriff working at the courthouse, to write up charges against my father, who is 74 years old and living in Texas, for a minor misdemeanor of using the internet to threaten Roe Simmons. See recording. Not only does the recording prove that Judge Henderson masterminded the creation of the crime, but it shows that Deputy Abernathy meets with judges about criminal matters quite often and has ex parte meetings. I am disturbed that a criminal judge "directed" a Sheriff to draft a charge then present it to the DA, when that judge is supposed to be a final decisionmaker about a crime.

Roe Simmons had attempted the same thing with the OKC police, but they declined to issue charges against my father, and I believe they told Roe to take it out in civil court.

Also, Judge Henderson and Judge Kirby orchestrated Deputy Abernathy to be in Court when my mother testified in the probate case, and for a question to be asked of my mother about a tape recording on Roe Simmons' phone from my father, who was not in court. Deputy Abernathy said she needed someone to identify my father's voice to be able to charge him with the crime Judge Henderson "directed" her to draft. So Judge Henderson and Judge Kirby worked with the

sheriff to use Judge Kirby's courtroom, and have my mother testify against my father unknowingly (this was before the charge was filed) and violate the spousal privilege.

I have wondered why Judge Henderson got involved and motivated the deputy sheriff to write up charges against my father to protect Roe Simmons and the embezzlement he did. Now I know that Roe Simmons held a fundraiser for Judge Henderson.

I told Judge Henderson and Judge Kirby about Simmons and the estate's misrepresentation about the sale of the house, and the embezzlement, and instead of having law enforcement investigate the glaring obvious facts, the two judges used the sheriff, their offices, and their courtrooms, to "direct" a misdemeanor to be issued against my father, to make him go away. They have done nothing to Roe Simmons that I know of, except offer him their private offices and to have the sheriff (who meets with them all the time according to the recording) facilitate a criminal charge against my dad.

Please consider investigating and suspending these judges for the wrongs they are performing through their offices.

Tonya Parks

# EXHIBIT 10[d]

Email chain dated August 25, 2017, showing attorney Roe Simmons appears to be calculating through meetings with Deputy Abernathy, with disgraced Judge Henderson, and with his former law partners, a retaliatory act of having a warrant be issued against Bennie Gibson; note that Simmons seems to be joking by calling Bennie Gibson's email "latest and greatest!"  It appears Simmons was clearly not afraid for his life as his colleagues were willing to "role play" the incident.  I find it odd that Simmons knew well before allegedly meeting with Abernathy that disgraced judge Henderson would direct the creation of a warrant against Mr. Gibson; in my opinion this is a clear violation of due process – and proves the use of judicial officials to retaliate against this Texas family after they exposed criminal acts of Simmons

2/25/22, 9:59 AM





il - Estate of Ceola M. Lenox Pb-2016-721

Roe Simmons <roe@simmonsandassociates.net>

---

## Estate of Ceola M. Lenox Pb-2016-721
10 messages

**BENNIE GIBSON** <agginc@prodigy.net>                                    Thu, Apr 25, 2019 at 8:06 AM
To: "roe@smithsimmons.com" <roe@smithsimmons.com>

April 25, 2016  

Mr. Simmons ==you are playing with matches with gasoline in the same hand.== My wife have been so
stress with the corruption that surrounds her mothers' death and the fraud that have been
perpetrated upon her by you Dannie G. Lenox , Judge Richard Kirby, Delouie Pollard, and this
court she has come down with "shingles" an acute painful inflammation of the nerve ganglia. As my
wife stated in her motion in opposition to Dannie G. Lenox final account and petition for order. It
have been very hard for her to process the *"horrific hate"* and abuse of a due process that have
been intentional perpetrated upon her mother even after death. Frances A. Gibson also stated that
she is aware of the circumstances that surrounds her mothers' death and to this day she believe
her mother death was motivated to defraud her estate. Mr. Simmons Frances A. Gibson is a *victim*
not a witness, All the evidence you are requesting you already have in your possession and the
remaining evidence is in the subpoena served upon JP Morgan Chase Bank that they are now in
contempt for failing to comply and and you and your klan have "obstructed". All of this evidence
and more is being forward to Oklahoma Attorney General Mike Hunter subject to a "victim
complaint" and his office is aware of it.

Mr. Simmons I understand that you are in desperate need for finance and you need Dannie G.
Lenox to take funds from the estate of Ceola M. Lenox and France A. Gibson share of the estate to
pay your bills this also include the court "this is a probate scam upon the black decease and you as
I stated, *"you are working your way up to a death sentence"*. Case Number SC-2019-5424
Indebtedness $5,000.00 Filed March 22, 2019 Pitzer's Lawn Management Inc, Plaintiff Roe
Simmons Defendant. ==Mr. Simmons you are embezzling funds from the estate of deceased persons==
==and using that court to commit this heinous crime and the this includes the practice of this court.==

Mr. Simmons your deposition subpoena duces tecum is in violation of the law and you can be
sanction by the office of Oklahoma Attorney General and incarcerated for the number of crimes
you have committed upon the estate of Ceola M. Lenox. Mr. Simmons you are a "disgrace" and
you are being watched.

Bennie R. Gibson

cc Craig Combs

---

Roe Simmons <roe@smithsimmons.com>                                    Thu, Apr 25, 2019 at 8:44 AM
To: BENNIE GIBSON <agginc@prodigy.net>

Mr. Gibson,

You are not a lawyer, and not a party to this action. I have repeatedly asked you to refrain from contacting me. You
continue to ignore my respectful requests and have now threatened me with what can only be concluded as bodily harm.

Please do not contact me or anyone else in my office again!

Your anticipated cooperation is greatly appreciated.

2/25/22, 9:59 AM                    simmonsandassociates.net Mail - Estate of Ceola M. Lenox Pb-2016-721

Sincerely,

Roe T. Simmons
SMITH SIMMONS, PLLC
252 NW 70th
Oklahoma City, OK 73116
Telephone (405) 843-1000
Facsimile (405) 843-1005

[Quoted text hidden]

---

**Roe Simmons** <roe@smithsimmons.com>                              Thu, Apr 25, 2019 at 8:45 AM
To: Jim Kaufman <jim@smithsimmons.com>, Chris Smith <chris@smithsimmons.com>, Alicia Ivory
<alicia@smithsimmons.com>

Bennie's latest and greatest!

Roe T. Simmons
SMITH SIMMONS, PLLC
252 NW 70th
Oklahoma City, OK 73116
Telephone (405) 843-1000
Facsimile (405) 843-1005


Begin forwarded message:

[Quoted text hidden]

---

**Chris Smith** <chris@smithsimmons.com>                          Thu, Apr 25, 2019 at 8:52 AM
To: Roe Simmons <roe@smithsimmons.com>
Cc: Jim Kaufman <jim@smithsimmons.com>, Alicia Ivory <alicia@smithsimmons.com>

This needs to be turned over to someone. His bold statement to working your way up to a death sentence should be
viewed as a death threat.

   **Chris Smith**
                       Attorney & Counselor, Smith Simmons, PLLC
                       (405) 843-1000 | (405) 843-1005 |
                       www.smithsimmons.com |
                       252 N.W. 70th St., Oklahoma City, OK 73116

                       

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the
named recipient(s) only. If you have received this email by mistake, please notify the sender
immediately and do not disclose the contents to anyone or make copies thereof.
[Quoted text hidden]

---

**Chris Smith** <chris@smithsimmons.com>                          Thu, Apr 25, 2019 at 8:55 AM
To: Roe Simmons <roe@smithsimmons.com>
Cc: Jim Kaufman <jim@smithsimmons.com>, Alicia Ivory <alicia@smithsimmons.com>

Also, I spoke to Justin Meek about this last night.  He's doing OAMIC work.  He suggested we go ahead and submit this
to OAMIC and see what they do.  He said they have been really good about covering claims they could have easily
denied.

  |  Chris Smith

2/25/22, 9:59 AM                              simmonsandassociates.net Mail - Estate of Ceola M. Lenox Pb-2016-721

   Attorney & Counselor, Smith Simmons, PLLC
(405) 843-1000 | (405) 843-1005 |
www.smithsimmons.com |
252 N.W. 70th St., Oklahoma City, OK 73116



IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the
named recipient(s) only. If you have received this email by mistake, please notify the sender
immediately and do not disclose the contents to anyone or make copies thereof.

On Apr 25, 2019, at 8:45 AM, Roe Simmons <roe@smithsimmons.com> wrote:

[Quoted text hidden]

---

**Roe Simmons** <roe@smithsimmons.com>                          Thu, Apr 25, 2019 at 8:59 AM
To: Chris Smith <chris@smithsimmons.com>

I'm okay with that

Yeah I'm taking this one and the last one to the courthouse captain when I get home.

Roe T. Simmons
SMITH SIMMONS, PLLC
252 NW 70th
Oklahoma City, OK 73116
Telephone (405) 843-1000
Facsimile (405) 843-1005



[Quoted text hidden]

---

**Roe Simmons** <roe@smithsimmons.com>                          Thu, Apr 25, 2019 at 9:43 AM
To: somelabe@oklahomacounty.org

Roe T. Simmons
SMITH SIMMONS, PLLC
252 NW 70th
Oklahoma City, OK 73116
Telephone (405) 843-1000
Facsimile (405) 843-1005

Begin forwarded message:

[Quoted text hidden]

---

**Jim Kaufman** <jim@smithsimmons.com>                          Thu, Apr 25, 2019 at 4:18 PM
To: Chris Smith <chris@smithsimmons.com>
Cc: Roe Simmons <roe@smithsimmons.com>, Alicia Ivory <alicia@smithsimmons.com>

Roe,

I'm in agreement with Chris on this statement about "working your way up to a death sentence" especially coupled with
"You are being watched" is also something which is a thinly veiled threat.

I don't know what possible action the OK AG's office would take, but Mr. Gibson has expanded his circle of agencies to
thrash out to. Craig Combs is an OBA employee. I'm sure the OBA receives all sorts of complaints but someone living in
another state and acting pro se on behalf of someone else is probably beyond the power of the OBA to reach.

2/25/22, 9:59 AM                                    simmonsandassociates.net Mail - Estate of Ceola M. Lenox Pb-2016-721

Anyway, let's confer when you get back about the depo you intend to take. Maybe you, Chris, and I can roundtable and
role play some areas of questioning.

Jim

[Quoted text hidden]

--



**JIM KAUFMAN**
Of Counsel Attorney, Smith Simmons, PLLC
(405) 843-1000 | (405) 843-1005 |
www.smithsimmons.com |
252 N.W. 70th St., Oklahoma City, OK 73116

[Quoted text hidden]

---

Roe Simmons <roe@smithsimmons.com>                                    Thu, Apr 25, 2019 at 4:48 PM
To: Jim Kaufman <jim@smithsimmons.com>

I spoke to the courthouse captain this morning. She was going to escalate it and talk to Judge Henderson. Most likely will
result in charges being filed against Bennie with a warrant for his arrest being issued.

Roe T. Simmons
SMITH SIMMONS, PLLC
252 NW 70th
Oklahoma  City, OK 73116
Telephone (405) 843-1000
Facsimile (405) 843-1005

[Quoted text hidden]

---

Alicia Ivory <alicia@simmonsandassociates.net>                                    Fri, Feb 25, 2022 at 9:56 AM
To: Roe Simmons <roe@simmonsandassociates.net>

[Quoted text hidden]

--

**ALICIA IVORY**
Director of Business & Client Relations,
Senior Legal Assistant Simmons and Associates, PLLC

(405) 415-6770 I ( (405) 415-6709 I www.simmonsandassociates.netl
1900 NW Expressway, Ste 1050 Oklahoma City, OK 73118

[Quoted text hidden]

# EXHIBIT 11

Recording of sheriff deputy Colt Orman, corroborating the fact Judge Kirby planned and orchestrated the use of his civil courtroom to entrap Bennie Gibson, have Frances Gibson violate her spousal privilege, and attempt to arrest Bennie Gibson with the Courthouse sheriffs; note that if allowed to investigate this matter, I would want to determine the amount of communications between Judge Kirby and disgraced Judge Henderson as to the use of that civil courtroom for criminal investigation directed by Henderson

# EXHIBIT 12

Recording of sheriff captain Melissa Abernathy, corroborating the fact Judge Kirby planned and orchestrated the use of his civil courtroom to entrap Bennie Gibson; Call proves judicial officials were allowed to use Kirby's Civil Court to seemingly violate Frances Gibson's Spousal Privilege, to Complete a Criminal charge promised as early as April 25, 2017 by disgraced judge Henderson; this certainly appears to show Henderson and other public officials attempted to arrest Bennie Gibson with Courthouse sheriffs for his having exposed crimes/corruption

# EXHIBIT 12(A)

Probable cause affidavit allegedly notarized by Oklahoma County Courthouse Sheriff Captain Melissa Abernathy on April 29, 2019; note this Affidavit seems to fly in the face of the April 25, 2019 email chain by Simmons (in which he jokes about Bennie Gibson, discusses role playing the matter with his business partners, and tells his partners that Abernathy and disgraced judge Henderson have already promised him a warrant will issue against Bennie Gibson); note this alleged April 29, 2017 affidavit appears to contradict the recording (Ex. 12) in which Abernathy states she had to be in Judge Kirby's courtroom on May 16, 2017 to "finalize" her investigation before turning it over; I am concerned disgraced Judge Henderson encouraged backdating of such documents



Case#:   CM19101780

1825

IN THE DISTRICT COURT, IN AND FOR OKLAHOMA COUNTY, STATE OF OKLAHOMA

State of Oklahoma                                    PLAINTIFF,    )
                                                                  )
                        VS.                                       )
                                                                  )
**BENNIE RAY GIBSON**                                             )
                                                                  )
                                             DEFENDANT.           )

**CM - 2019 - 1825**

FILED IN DISTRICT COU
INFORMATION OKLAHOMA COUNTY

MAY 30 2019

RICK WARREN
COURT CLERK

15

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OKLAHOMA, COMES NOW
**DAVID W. PRATER**                  THE DULY ELECTED, QUALIFIED AND ACTING DISTRICT ATTORNEY IN
AND FOR OKLAHOMA COUNTY, DISTRICT NO. 7, STATE OF OKLAHOMA, AND ON HIS OFFICIAL OATH INFORMS THE
DISTRICT COURT THAT

COUNT          1 :  ON OR ABOUT THE 11TH DAY OF APRIL, 2019, A.D., THE CRIME OF MAKING OBSCENE,
                    THREATENING, OR HARASSING TELEPHONIC OR OTHER ELECTRONIC
                    COMMUNICATION WAS UNLAWFULLY COMMITTED IN OKLAHOMA COUNTY,
                    OKLAHOMA, BY BENNIE RAY GIBSON, WHO, BY MEANS OF A TELECOMMUNICATION
                    OR OTHER ELECTRONIC COMMUNICATION DEVICE, WILLFULLY AND KNOWINGLY DID
                    HARRASS AND THREATEN ROE SIMMONS BY MAKING PHONE CALLS AND SENDING
                    HARASSING AND THREATENING E-MAILS TO THE VICTIM, CONTRARY TO THE
                    PROVISIONS OF SECTION 1172 OF TITLE 21 OF THE OKLAHOMA STATUTES, AND
                    AGAINST THE PEACE AND DIGNITY OF THE STATE OF OKLAHOMA

                                             **DAVID W. PRATER**
                                             DISTRICT ATTORNEY, DISTRICT NO. 7
                                             OKLAHOMA COUNTY, OKLAHOMA

                              BY _____
                                             ASSISTANT DISTRICT ATTORNEY

Report Date and Time: 05/28/2019 08:52

**INFORMATION**

Case#:     **CM19101780**

---

I HAVE EXAMINED THE FACTS IN THIS CASE AND RECOMMEND THAT A WARRANT DO ISSUE, (22 O.S.: 231).

**DAVID W. PRATER**
DISTRICT ATTORNEY, DISTRICT NO. 7
OKLAHOMA COUNTY, OKLAHOMA

BY        _____
                     ASSISTANT DISTRICT ATTORNEY

---

NAME OF WITNESSES

M ABERNATHY
EDMOND POLICE DEPT
100 EAST 1ST STREET
EDMOND OK, 73034

ROE SIMMONS
320 N NORTH BROADWAY
EDMOND, OK  73034

IN THE DISTRICT COURT OF OKLAHOMA
STATE OF OKLAHOMA                                    )
                                                    )        AFFIDAVIT OF
                                                    )        PROBABLE CAUSE
VS.                                                 )

STATE OF OKLAHOMA              )
COUNTY OF OKLAHOMA             )        SS.

Name: Gibson, Bennie Ray
Race/sex/dob: B/M/1/4/1945
Address: 7200 Oldmill Run Ft. Worth TX 73133

Offense: Harassing communications
Statue: 21-1171.2
Date: 04/11/19

I, Captain M. Abernathy, a Certified Peace Officer in the State of Oklahoma since 1998 and employed with the Oklahoma County
Sheriff's Office due attest to the following:

On April 29, 2019 approximately 1100 hours I met with Roe Simmons (attorney) at my office on the 11th floor of the Oklahoma
County Court house, located at 321 Park Ave, OKC OK in Oklahoma County.

Simmons had made a report back in February 12, 2018  case# 20180387 in reference to Gibson, Bennie threating him over a civil
case that he was representing a family member. This case started back in 2016.

Simmons has repeatedly told Gibson not to contact him or his office since the first incident was reported.

The emails and phone calls have continued since 2018 and they are exalting. Gibson has threatened several Judges including Judge
Kirby. He has also notified the Oklahoma Bar Association and Attorney General's Office and made slanderous and false accusations
against Simmons. None which were deemed true and no actions were not taken against Simmons.

Simmons is concerned for his safety and wellbeing due to the emails stating "you are working his way up to a death sentence" sent
on April 25, 2019.

He also states "you are a disgrace and being watched" sent from an email on April 11, 2019.

There is an audio message left on his phone where Gibson identifies himself and says the message is for Simmons, He states again
he is working his way up to a death sentence.

Simmons law firm is in Oklahoma County, which were he receives his emails and his phone call from Gibson.

Simmons will keep the audio for evidence.

See attached emails, statements and report# 20180387

                                                                      Captain M. Abernathy
                                                                                          AFFIANT

Subscribed and sworn to before me this 29TH day of APRIL                          2019.
My Commission Expires: 04/01/23
                                                                       HARRY FALTER
                                                                       NOTARY
                                                                       # 07003058
                                                                       EXP. 04/01/23
                                                                       STATE OF OKLAHOMA
                          COMM # 07003058                              NOTARY PUBLIC

This Court, having conducted a probable cause determination for the subject's arrest without a warrant finds:

[X]      That probable cause for the subject's arrest does exist and did at the time of the arrest.

[ ]      Probable cause did not exist for the subject's arrest and subject is ordered released immediately.

Done this 29 day of APRIL                              , 2019 at 345 o'clock P m.

                                                                      JUDGE OF THE DISTRICT COURT

EXHIBIT 13

Recording of OSBI agent Yerton indicating
that the OSBI had not followed through
with Governor Stitt's directive to
investigate victims of disgraced judge
Henderson, and that the District Attorney
was finalizing the investigation

# EXHIBIT 14

Recording of OSBI Brad Green admitting that DA Kunzweiler's letter to the AG about the Parks/Gibson family is inaccurate, and that he did not provide the false narrative that Kunzweiler published; it would appear that someone in the AG's office not only limited and prevented the OSBI from fulfilling Governor Stitt's directive to investigate victims of disgraced Judge Henderson such as Mr. Bednar and this family; again, this recording shows a sham investigation was performed into the criminal acts of judges such as Henderson who used their office to cover up crimes committed by Roe Simmons and others

# EXHIBIT 15a

Chicago Title disbursement summary showing that the receipts for funds posted in the escrow account were received by wire transfer on October 23, 2017, four and five days AFTER checks were cut to numerous entities, including a check handed to Simmons (attorney who lied to the court)



# Chicago Title Oklahoma Co.
5617 N Classen Blvd., Suite 200, Oklahoma City, OK 73118
Phone: 405-848-2140 | FAX: 405-848-2305

## Disbursements Summary

| | |
|---|---|
| **Settlement Date:** October 18, 2017 | **Escrow No.:** CTO-405-714051701271 |
| **Disbursement Date:** October 18, 2017 | **Escrow Officer:** Kaitlin Howard |
| **Settlement Agent:** Chicago Title Oklahoma Co. 405-848-2140 | **Place of Settlement:** 5617 N Classen Blvd., Suite 200 Oklahoma City, OK 73118 |
| **Buyer:** Plains States Holdings, LLC 6300 Wilshire Blvd #970 Los Angeles, CA 90048 | **Seller:** Wazzan Properties, LLC 2410 W Memorial Rd #308 Oklahoma City, OK 73134 |
| **Lender:** | **Property:** 2520 NE 16th St Oklahoma City, OK 73117 |

**Policies to be Issued:** ALTA Owner's Policy 2006 (Coverage $34,000.00)

## RECEIPTS

### POSTED

| Trans. Type | Medium | Reference Number | Trans. Date | Deposit Number | Code | Payor | Memo/ Trans. From | Amount |
|---|---|---|---|---|---|---|---|---|
| Wire(c) | Wire | 999005229 | 10/23/17 | | BA | Plains States Holdings, | Cash from Buyer | 35,578.88 |
| | | Cash To Close From Buyer | | | | | 35,578.88 | |

| | | |
|---|---|---|
| | **Total POSTED Receipts (1):** | 35,578.88 |
| | **Total Pending, Held and Posted Receipts (1):** | 35,578.88 |

## DISBURSEMENTS

### POSTED

| Trans. Type | Medium | Reference Number | Trans. Date | Code | Payee | Memo/ Trans. To | Amount |
|---|---|---|---|---|---|---|---|
| Check(c) | Check | 905010157 | 10/19/17 | AB | Chicago Title of OK Co. FBO Wazzan | Funds for 714051701245 | 16,079.88 |
| | | Funds for 714051701245 | | | | 16,079.88 | |
| L Transfer | | 405002178 | 10/19/17 | A | Chicago Title Oklahoma Co. | REV201710CLOSED | 1,460.00 |
| | | Owner's Policy (Coverage $34,000.00) | | | | 215.00 | |
| | | Title - Abstract | | | | 550.00 | |
| | | Title - Closing Fee | | | | 250.00 | |
| | | Title - Final Certification Issuance for Title Insurance (Final Report) | | | | 120.00 | |
| | | Title - Settlement Services | | | | 150.00 | |
| | | Title - Title Exam Fee | | | | 175.00 | |
| L Transfer | | 405002257 | 10/26/17 | A2 | Chicago Title Oklahoma Co. | REV201710CLOSED | 69.00 |
| | | Documentary Stamps | | | | 51.00 | |
| | | Recording Fees | | | | 13.00 | |
| | | Title - E-Recording Fee | | | | 5.00 | |
| Check(c) | Check | 905010156 | 10/19/17 | SU | Hale & Associates Survey | Mortgage Inspection Certificate | 140.00 |
| | | Mortgage Inspection Certificate | | | | 140.00 | |
| Check(c) | Check | 905010155 | 10/19/17 | S | Wazzan Properties, LLC | Closing Proceeds | 17,830.00 |
| | | Cash To Seller | | | | 17,830.00 | |

| | | |
|---|---|---|
| | **Total POSTED Disbursements (5):** | 35,578.88 |
| | **Total Pending, Held and Posted Disbursements (5):** | 35,578.88 |

## Order Summary

| | |
|---|---|
| **Total Posted Receipts minus Total Posted Disbursements:** | 0.00 |
| **Total Receipts (Pending, Held and Posted):** | 35,578.88 |
| **Total Disbursements (Pending, Held and Posted):** | 35,578.88 |
| **Balance:** | 0.00 |

# EXHIBIT 15(b)

Check to the estate of Ceola Lenox
(received by Simmons) was issued on
October 18, 2017; if allowed to
investigate, I would want to know why an
escrow company is handing out checks
before it receives money into an escrow
account; if this is indeed was a
widespread practice, it appears that
Chicago Title may habitually be fronting
money inappropriately.

**** REAL ESTATE CLOSING ****

**905010130**

Buyer/Borrower: Wazzan Properties LLC
Seller: Estate of Ceola M Lenox
Lender:
Property: 2520 NE 16th St/Oklahoma City
Settlement Date: October 18, 2017
Disbursement Date: October 18, 2017
Check Amount: $9,894.88
Pay To: Estate of Ceola M Lenox
For: Closing Proceeds
Cash To Seller $9,894.88

Closer/Responsible Party: Kaitlin Howard
Printed By: Kaitlin Howard
Order Number: 714051701245-KDH



**Chicago Title Oklahoma Co.**
Oklahoma Chicago Title Oklahoma City Trust
5617 N Classen Blvd., Suite 200
Oklahoma City, OK 73118   Order No. 714051701245-KDH
405-848-2140

Bank of Oklahoma, N.A.
Oklahoma City, OK  73102

**905010130**

October 18, 2017

PAY  --Nine Thousand Eight Hundred Ninety-Four and 88/100 --------------------------------------------------------------------------- Dollars

**AMOUNT**
$ ******9,894.88

TO
THE
ORDER
OF

Estate of Ceola M Lenox
3806 N Shadybrook Dr
Midwest City, OK  73110

CUSTODIAL ESCROW ACCOUNT
VOID AFTER 90 DAYS, TWO SIGNATURES REQUIRED

MEMO   Closing Proceeds

**NON-NEGOTIABLE/FILE COPY**

**** REAL ESTATE CLOSING ****

**905010158**

Buyer/Borrower: Wazzan Properties LLC
Seller: Estate of Ceola M Lenox
Lender:
Property: 2520 NE 16th St/Oklahoma City
Settlement Date: October 18, 2017
Disbursement Date: October 19, 2017
Check Amount: $6,000.00
Pay To: Devell Hubbard
For: Assignment Fee
Assignment Fee (H.01) $6,000.00

Closer/Responsible Party: Kaitlin Howard
Printed By: Kaitlin Howard
Order Number: 714051701245-KDH

**Chicago Title Oklahoma Co.**
**Oklahoma Chicago Title Oklahoma City Trust**
5617 N Classen Blvd., Suite 200
Oklahoma City, OK 73118    Order No. 714051701245-KDH
405-848-2140

Bank of Oklahoma, N.A.
Oklahoma City, OK 73102

**905010158**

October 19, 2017

PAY  --Six Thousand and 00/100 ------------------------------------------------------------------------------------- Dollars

AMOUNT
**$ *****6,000.00**

TO
THE
ORDER
OF

Devell Hubbard
6314 N Meridian
Oklahoma City, OK  73112

CUSTODIAL ESCROW ACCOUNT
VOID AFTER 90 DAYS, TWO SIGNATURES REQUIRED

MEMO    Assignment Fee

**NON-NEGOTIABLE/FILE COPY**

**** REAL ESTATE CLOSING ****

905010157

Buyer/Borrower: Plains States Holdings, LLC
Seller: Wazzan Properties, LLC
Lender:
Property: 2520 NE 16th St/Oklahoma City
Settlement Date: October 18, 2017                                  Closer/Responsible Party: Kaitlin Howard
Disbursement Date: October 19, 2017                                          Printed By: Kaitlin Howard
Check Amount: $16,079.88                                        Order Number: 714051701271-KDH
Pay To: Chicago Title of OK Co. FBO Wazzan Properties LLC
For: Funds for 714051701245
Funds for 714051701245 (H.04) $16,079.88



**Chicago Title Oklahoma Co.**
**Oklahoma Chicago Title Oklahoma City Trust**
5617 N Classen Blvd., Suite 200
Oklahoma City, OK 73118     Order No. 714051701271-KDH
405-848-2140

Bank of Oklahoma, N.A.
Oklahoma City, OK 73102

**905010157**

October 19, 2017

PAY   --Sixteen Thousand Seventy-Nine and 88/100 ------------------------------------------------------------------------------------------ Dollars

AMOUNT
$ *****16,079.88

TO
THE        Chicago Title of OK Co. FBO Wazzan Properties LLC
ORDER   3401 NW 63rd
OF        Suite 300
Oklahoma City, OK  73116

CUSTODIAL ESCROW ACCOUNT
VOID AFTER 90 DAYS, TWO SIGNATURES REQUIRED

MEMO    Funds for 714051701245

**NON-NEGOTIABLE/FILE COPY**

**** REAL ESTATE CLOSING ****

**905010155**

Buyer/Borrower: Plains States Holdings, LLC
Seller: Wazzan Properties, LLC
Lender:
Property: 2520 NE 16th St/Oklahoma City
Settlement Date: October 18, 2017
Disbursement Date: October 19, 2017
Check Amount: $17,830.00
Pay To: Wazzan Properties, LLC
For: Closing Proceeds
Cash To Seller $17,830.00

Closer/Responsible Party: Kaitlin Howard
Printed By: Kaitlin Howard
Order Number: 714051701271-KDH



**Chicago Title Oklahoma Co.**
Oklahoma Chicago Title Oklahoma City Trust
5617 N Classen Blvd., Suite 200
Oklahoma City, OK 73118   Order No. 714051701271-KDH
405-848-2140

Bank of Oklahoma, N.A.
Oklahoma City, OK 73102

**905010155**
October 19, 2017

PAY   --Seventeen Thousand Eight Hundred Thirty and 00/100 ------------------------------------------------------- Dollars

**AMOUNT**
$ *****17,830.00

TO
THE
ORDER
OF

Wazzan Properties, LLC
2410 W Memorial Rd #308
Oklahoma City, OK 73134

CUSTODIAL ESCROW ACCOUNT
VOID AFTER 90 DAYS, TWO SIGNATURES REQUIRED

MEMO   Closing Proceeds

**NON-NEGOTIABLE/FILE COPY**

**** REAL ESTATE CLOSING ****

905010156

Buyer/Borrower: Plains States Holdings, LLC
Seller: Wazzan Properties, LLC
Lender:
Property: 2520 NE 16th St/Oklahoma City
Settlement Date: October 18, 2017
Disbursement Date: October 19, 2017
Check Amount: $140.00
Pay To: Hale & Associates Survey
For: Mortgage Inspection Certificate
Mortgage Inspection Certificate (H.07) $140.00

Closer/Responsible Party: Kaitlin Howard
Printed By: Kaitlin Howard
Order Number: 714051701271-KDH

**Chicago Title Oklahoma Co.**
Oklahoma Chicago Title Oklahoma City Trust
5617 N Classen Blvd., Suite 200
Oklahoma City, OK 73118    Order No. 714051701271-KDH
405-848-2140

Bank of Oklahoma, N.A.
Oklahoma City, OK  73102

905010156

October 19, 2017

PAY  —One Hundred Forty and 00/100 ------------------------------------------------------------------------------------------------------------------ Dollars

AMOUNT
$ *****140.00

TO
THE
ORDER
OF

Hale & Associates Survey
1601 S.W. 89th, Suite C-200
Oklahoma City, OK  73159

CUSTODIAL ESCROW ACCOUNT
VOID AFTER 90 DAYS, TWO SIGNATURES REQUIRED

MEMO   Mortgage Inspection Certificate

**NON-NEGOTIABLE/FILE COPY**

# EXHIBIT 15(c)

Proof that the Chicago Title check
Simmons was demanding since
September 2017 was in fact deposited on
October 19, 2017 and cleared, days before
the escrow account at Chicago Title had
funds in it to disburse



**EXHIBIT**

H

# CHASE ◐

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

September 27, 2017 through October 25, 2017
Account Number:   000000462408605

00001078 1 AV 00.373

00001078 DRE 662 141 29917 NNNNNNNNNNN T  1 000000000 17 0000 T383412 P18238

EST OF CEOLA M LENOX
DANNIE G LENOX PERS REP
3806 N SHADYBROOK DR
MIDWEST CITY OK 73110-3427



### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | **1-800-935-9935** |
| Deaf and Hard of Hearing: | **1-800-242-7383** |
| Para Espanol: | **1-877-312-4273** |
| International Calls: | **1-713-262-1679** |

**We want to remind you about the overdraft service options that are available for your personal checking account(s)**

We've included information on the last page of this statement to remind you about our overdraft services and associated fees. You can find more information about these services and fees online at chase.com/overdraft-services. Additionally, you can find ways to avoid overdraft fees at chase.com/AccountTips.

If you have questions, please call us anytime at the number on your statement.

## CHECKING SUMMARY   Chase Premier Plus Checking

| | AMOUNT |
|---|---|
| Beginning Balance | $33,576.78 |
| Deposits and Additions | 9,895.16 |
| Ending Balance | $43,471.94 |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.28 |
| Interest Paid Year-to-Date | $2.42 |

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $33,576.78 |
| 10/19 | Deposit     1692579083 | 9,894.88 | 43,471.66 |
| 10/25 | Interest Payment | 0.28 | 43,471.94 |
| | Ending Balance | | $43,471.94 |

 **CHASE**

September 27, 2017 through October 25, 2017

Account Number:    000000462408605

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A.  Member FDIC

   JPMorgan Chase Bank, N.A. Member FDIC