## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

TONYA PARKS, *et al*

      Plaintiff,

v.

AIG*, et al,*

      Defendants.

Case No: 5:23-cv-00041-R

## STATE DEFENDANTS HUNTER, HENDERSON, AND PRATER'S MOTION TO DISMISS AND BRIEF IN SUPPORT

State Defendants former Oklahoma Attorney General Mike Hunter, former Oklahoma County District Judge Tim Henderson, and former Oklahoma County District Attorney David Prater[1] (collectively "State Defendants"), by and through Stefanie E. Lawson, Assistant Attorney General, moves this Court to dismiss Plaintiffs' Second Amended Complaint [Doc. 69] pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Plaintiffs fail to state any cognizable claim against these State Defendants in either their official or individual capacities. In support of said Motion to Dismiss, State Defendants submit the following Brief:

## BRIEF IN SUPPORT

### *Introduction and Statement of the Case*

Plaintiffs are suing multiple former Oklahoma government officials as well as private entities and actors. Specifically, Plaintiffs have named Mike Hunter, former Oklahoma Attorney General, Tim Henderson, former Oklahoma County District Judge, and David

---

[1]David Prater left office on January 9, 2023 upon the swearing in of new Oklahoma County District Attorney Vickie Behenna, more than a year before Plaintiffs filed this Second Amended Complaint. [Doc. 69].

Prater, former Oklahoma County District Attorney, alleging various constitutional violations as well as "breach of fiduciary duty", apparently stemming from legal actions in state court and disciplinary proceedings by the Oklahoma State Bar in which Plaintiffs were all parties in some capacity. A sampling of what Plaintiffs allege against these Defendants includes broad unsupported conclusory allegations of corruption and retaliation, but ultimately boils down to disgruntled litigants seeking redress beyond what is generally available through appeals or participation in the state court proceedings. More specifically, Plaintiffs allege Defendant Henderson initiated retaliation, that Defendant Hunter failed to investigate corruption allegations, and that Defendant Prater worked in concert with Henderson to violate Plaintiffs rights. Plaintiffs allege that all Defendants "participated in coordinated acts to divert investigations of their wrongful acts" and "weaponized the Courthouse to retaliate" against Plaintiffs.[2] Plaintiffs allege those actions violated their constitutional rights as well as made them victims of various torts.

This action appears to be an attempt to rehash or revisit claims that have been, could have been, and/or should have been brought in previous iterations of proceedings concerning these Plaintiffs' state court proceedings. For example, Plaintiff B. Gibson has previously filed an unsuccessful suit in the Northern District of Texas (*Gibson v. Smith Simmons*, CIV-18-594-S-BH) against attorneys that were involved in the probate matter in Oklahoma. That probate matter appears to form the basis of the claims against these State Defendants. As for Mr. Bednar, this action appears to be one more station in his unrelenting odyssey of harassment

---

[2] To the extent the Second Amended Complaint provides dates, all dates are after Henderson and Hunter left office and nearly all are after Prater left office.

against the judiciary in Oklahoma generally and these State Defendants in particular. A non-exhaustive list of previous unsuccessful suits include *Bednar v. Henderson*, CIV-19-224-D (Dismissed March 14, 2019) and CIV-19-279-D (dismissed on August 23, 2019) in the Western District of Oklahoma, *Bednar v. McGuire*, CJ-2020-5931 3 in Oklahoma County District Court (dismissed with prejudice); and *Bednar v. Henderson*, MA-2019-192 and *Bednar v. Hesse*, 119389 in the Oklahoma Supreme Court. Bednar's misdemeanor case, CM-2019-1723 (Oklahoma County) has been adjudicated, save for costs, fines and fees payments.  As in previous unsuccessful suits, Plaintiffs seek damages, injunctive and declaratory relief.

## Standard of Review

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n. 4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id.* In reviewing a facial attack, a district court must accept the allegations in the complaint as true. *Id.* In a factual attack, the moving party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id.* When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id.* Instead, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.*

---

3Undersigned has attached the Amended Petition and Journal Entry dismissing CJ-2020-5931, as well as the docket for CM-2019-1723 as an example of previous litigation for the Court's convenience.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include enough factual content, accepted as true, to "state a claim to relief that is plausible on its face". *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). *Iqbal* also requires that Plaintiffs plead that a government official defendant violated the Constitution through his own individual action. *Id.* at 676, 129 S. Ct. at 1948.

## ARGUMENT AND AUTHORITY

## PROPOSITION I: THESE STATE DEFENDANTS ARE IMMUNE FROM SUIT FOR THESE CLAIMS

### *Eleventh Amendment Immunity*

The Eleventh Amendment ordinarily grants a State and its agencies sovereign immunity from all suits brought in federal court by private citizens. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). State officials sued in their official capacities also benefit from the State's immunity from suit because these suits are actually suits against the State for which the official is an agent. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978). Because Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction, the court must resolve that issue as a threshold matter. *U.S. ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1176 (10th Cir. 2007). Three exceptions to Eleventh Amendment immunity exist: (1) a state may consent to suit in federal court; (2) Congress may abrogate a state's sovereign immunity legislatively, and (3) under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may seek prospective equitable relief against a state official for

ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citations omitted).

Plaintiffs assert claims against these State Defendants in their official capacities under 42 U.S.C. § 1983 for actions connected to their positions as officials for the State of Oklahoma.[4] 42 U.S.C. § 1983 allows a civil action to be brought against "every person" who, acting under color of law, deprives someone of a right guaranteed by the United States Constitution and laws. "Neither the State, nor a governmental entity that is the arm of the State for Eleventh Amendment purposes, nor a State official who acts in his official capacity is a person within the meaning of § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). A defendant acting in his respective official capacity is not a proper defendant in this action and it is well settled that a suit against a state official in their official capacity is, in fact, a suit against the state itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, an individual defendant is immune from suit for money damages in his official capacity as a state official under § 1983.

Congress has not abrogated the state's Eleventh Amendment Immunity through the enactment of 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Further, the State of Oklahoma has not consented to suit in Federal Court. OKLA. STAT. tit. 51 § 162(E). Accordingly, the Eleventh Amendment bars Plaintiffs' claims against these State Defendants in their official capacities for money damages. *See Pennhurst State School and Hospital v. Halderman*,

---

[4] Plaintiffs filed this Second Amended Complaint after all of these State Defendants had left office and failed to name any current office holder for these official capacity claims.

465 U.S. 89, 120 (1984). Plaintiffs' claims under § 1983 for damages therefore fail as a matter of law as to these State Defendants.

Finally, while there is an exception for prospective equitable relief, "the exception is narrow." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). "It applies only to prospective relief [and] does not permit judgments against state officers declaring that they violated federal law in the past." *Id.* "[O]nly ongoing violations are covered." *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1189 (10th Cir. 1998), overruled on other grounds by *Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). The exception is "focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past....". *Id.* (citation and quotation marks omitted). Thus, in light of the fact that none of these State Defendants are currently in office, Plaintiffs failed to substitute upon Amendment for current official, and because Plaintiffs are unable to show any evidence of "ongoing" violations of federal law, State Defendants are entitled to dismissal of Plaintiffs' Federal claims. As a result, these State Defendants respectfully requests that this Court dismiss the official capacity claims against them.

## Judicial Immunity

In the current case, Plaintiffs claim former judge Defendant Henderson violated their rights while acting as Presiding and/or Chief Judge in Oklahoma County District Court during the course of various proceedings in Oklahoma County in which Plaintiffs were interested parties. All of the allegations against Defendant Henderson occurred in his capacity as a judge of the State of Oklahoma while presiding over matters in which he had complete jurisdiction.

Aside from vague allegations of conspiracy and corruption, the only allegation regarding a specific action is that Defendant Henderson "back dated" a warrant. There are no other supporting facts, but it should be noted that signing a warrant or other court order is inherently a judicial act taken in a judicial capacity. The United States Supreme Court has held that "judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980), *See also*, *Wiggins v. New Mexico State Sup. Ct. Clerk*, 664 F.2d 812, 814-15 (10th Cir. 1981*); Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)). For judicial immunity to apply, acts are simply required to be "judicial acts." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). In order to qualify, the act must be a function that a judge normally performs, and the party must have dealt with the judge in his official capacity. *Id.* at 362.

Absolute judicial immunity is immunity from suit altogether. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) (*citing Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)). Judicial immunity is overcome in only two circumstances: first, for actions not taken in the judge's judicial capacity; and second, judicial actions taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S. Ct. 286 (1991). As a result, judicial immunity cannot be defeated by allegations of bad faith or malice, the existence of which typically is not resolved without commencing discovery and eventual trial. *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). *See also*, *Harlow v. Fitzgerald*, 457 U.S. 800, 815-819 (1982) (allegations of malice are insufficient to overcome qualified immunity). Although significant, the loss of the right to seek private redress for

unconstitutional conduct is countered in this instance by the nature of the judicial process. *Mireles, supra.* Given the protections built into the judicial process, the risk of an unconstitutional act by a judicial officer "is clearly outweighed by the importance of preserving the independent judgment of such people." *Butz v. Economou*, 438 U.S. 478, 514, 98 S. Ct. 2894 (1978).

Defendant Henderson was a duly elected judge of the State of Oklahoma and was acting pursuant to his inherent authority as a judicial officer pursuant to Article 7, Section 1 of the Oklahoma Constitution. There have been only vague allegation that jurisdiction was lacking or that the rulings were made outside the scope of judicial authority, aside from conclusory allegations of some nebulous conspiracy. In fact, the only specific action – that Defendant Henderson signed a warrant – is a judicial act. Plaintiffs' claims obviously arise from Defendant Henderson's judicial acts. Even if any of Defendant Henderson's actions were in error, none were taken in the absence of all jurisdiction. The Supreme Court explained in *Stump* that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge," and "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him." *Stump*, *supra*, at 356. Therefore, Defendant Henderson is entitled to absolute judicial immunity and Plaintiffs' claims should be dismissed.

### Prosecutorial Immunity

Defendant Prater is entitled to absolute prosecutorial immunity for all Plaintiffs' allegations against him. None of the allegations against Defendant Prater are specific. Plaintiffs instead rely on innuendo, insinuation and vague references to an investigation. To the extent

it can be inferred that Plaintiffs are seeking redress for criminal prosecutions, either felony or misdemeanor, those actions entitle Defendant Prater to immunity. All other allegations which might implicate Defendant Prater are collective, conclusory, and without factual support. A prosecutor, however, is absolutely immune from damages under § 1983 for actions taken in initiating and pursuing a criminal prosecution as well as in presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984 (1976). The *Imbler* court relied on the observations of Judge Learned Hand that the lack of civil redress for improper actions of a prosecutor is the price for vigorous advocacy:

> As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officer than to subject those who try to do their duty to the constant dread of retaliation.

*Id.* at 428 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2nd Cir. 1949), cert denied, 339 U.S. 949, 70 S. Ct. 803 (1950)). The rule, therefore, considers and rejects the possibility that even improper actions should open a prosecutor up to liability precisely to avoid situations such as the present one.

In *Shmueli v. City of New York*, 424 F.3d 231, 236 (2nd Cir. 2005), the court held that the affirmative defense of absolute immunity may be resolved as a matter of law on a motion to dismiss a § 1983 action, where the nature or function of the defendant official, and consequent availability of the defense, is clear from the face of the complaint. The court held that the prosecutor's alleged improper state of mind in undertaking a prosecution does not negate the prosecutor's entitlement to absolute immunity in a § 1983 action, as long as the prosecutor was not clearly beyond the prosecution's jurisdiction. *Id.* at 237-38.

Plaintiffs use plenty of buzzwords such as "unlawful," "unconstitutional" and "retaliation". A prosecutor is even absolutely immune from suits for monetary damages under § 1983 even if they act maliciously, unreasonably, or on the basis of false testimony or evidence. *Smith v. Miller*, 355 F.3d 1028, 1032-33 (7th Cir. 2003). Despite Plaintiffs' conclusory allegations to the contrary, there is absolutely no evidence that Defendant Prater acted in any manner which would serve to deny him immunity. Defendant Prater was acting in his constitutionally protected capacity as a prosecutor for the State of Oklahoma and is entitled to absolute immunity from this suit.

## Qualified Immunity

Qualified immunity "shields officials from civil liability . . . only when their 'conduct 'does not violate clearly established statutory or constitutional rights.'" *Chapman v. Santini*, 805 F. App'x 548, 522-23 (10th Cir. 2020) (citing *White v. Pauly*, 137 S. C.t 548, 551 (2017). Qualified immunity is more than a "mere defense to liability," it is "immunity from suit." *Id.* at 522-23 (internal citations omitted). Once defendants assert a qualified immunity defense, the burden shifts to the plaintiff to demonstrate that (1) the defendants violated a constitutional right and that (2) at the time of the violation the right was so clearly established that "every reasonable officer would have understood that what he [was] doing" violated the law. *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012). Plaintiffs have a high burden to rebut both arguments. *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (citing *Riggins v. Goodman*, 572 F.3d 1101, 1007 (10th Cir. 2009).

To defeat qualified immunity, plaintiffs must first show that "the defendant violated a constitutional right." *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (quoting *Koch v.*

*City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011)). Second, that "the constitutional right was clearly established" at the time of the alleged violation. *Id.* (quoting *Koch*, 660 F.3d at 1238). A constitutional right is clearly established when its contours are "'sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074 (2011) (alteration in original) (quoting *Anderson*, 483 U.S. 635, 640, 107 S. Ct. 3034). To be sufficiently clear, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Schwartz v. Booker*, 702 F.3d 573, 587 (10th Cir. 2012) (quotation marks omitted).

Plaintiffs allege multiple constitutional violations but fail to plead facts sufficient to state a claim for any such violations as to the State Defendants. Plaintiffs base their Complaint on allegations that Defendant Hunter failed to investigate "corruption", Defendant Prater brought "false" charges, and Defendant Henderson "back dated" a warrant while acting as Presiding Judge in Oklahoma County. Because Plaintiffs failed to plead facts sufficient to state any claim for constitutional violations based on these allegations, State Defendants are entitled to qualified immunity.

## Oklahoma Governmental Tort Claims Act

Any lawsuit or claim that is brought against the State or its agents must be brought in compliance with all of the provisions of the Governmental Tort Claims Act, OKLA. STAT. tit. 51 § 151, *et seq.* Section 152.1 of the Act provides expressly that "the state, . . . , and all of their employees acting within the scope of their employment, . . . , shall be immune from liability for torts." At Paragraph B, the Act waives sovereign immunity for the State and its employees

only as specifically enumerated in the Act. *Id.* The liability of the State is exclusive, absolute and in place of all other. OKLA. STAT. tit. 51 § 153(B) (stating that "the liability of the state or its political subdivision under [the Act] *shall be exclusive and in place of all other liability* of the state, a political subdivision or employee at common law or otherwise." (emphasis added)).

For purposes of a claim against a state official, "tort" means a legal wrong, independent of contract, involving violation of a duty imposed by general law, statute, the Constitution of the State of Oklahoma, or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment. 51 OS 152(17). Plaintiffs have not alleged enough facts to state a cognizable claim for relief against these State Defendants. OKLA. STAT. tit. 51 § 155 of Oklahoma Statutes, Exemptions from Liability, states:

> The state or a political subdivision shall not be liable if a loss or claim results from:
>
> 2. Judicial, quasi-judicial, or prosecutorial functions, other than claims for wrongful criminal felony conviction resulting in imprisonment provided for in Section 154 of this title…
>
> 5. Performance of or the failure to exercise or perform any act or service, which is in the discretion of the state or political subdivision or its employees;

Plaintiffs allege that they were injured through judicial, prosecutorial, and investigatory functions and decisions. The above exceptions clearly exempt State Defendants from liability in this case. Plaintiffs object to outcomes in both civil and criminal cases, as well as investigatory decisions and are attempting to assign liability for these outcomes to State Defendants that participated in those decisions. Plaintiffs' Second Amended Complaint, however, is insufficient to state a claim against these State Defendants.

**PROPOSITION II: PLAINTIFFS HAVE FAILED TO STATE A VALID CLAIM**

Personal participation is an essential element for § 1983 claims against a public official. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). A public official cannot be individually liable unless an affirmative link can be shown between the official's conduct and the alleged constitutional violation. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). "Plaintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation." *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996) (internal citation omitted).

Plaintiffs have not met their burden under *Jenkins* or *Mitchell* with respect to these state official defendants. There are no specific allegations connecting these State Defendants to any specific injury to any particular Plaintiff. At best, the allegations are conclusory and without factual support. There are no actual allegations that any of these State Defendants interacted with any Plaintiff in any capacity outside their official duties. There is no support for the contention that Plaintiffs were constitutionally entitled to any investigation of or by any of these Defendants. These minimal allegations do not rise to a cognizable claim under § 1983. This is neither enough to establish a constitutional violation nor an affirmative link between State Defendants' actions and any such violation. Therefore, Plaintiffs have failed to allege any facts, which might present an affirmative link between these State Defendants' actions and the constitutional violations alleged. Plaintiffs' Complaint should be dismissed.

Plaintiffs have failed to state a claim for declaratory relief that should be entertained by the Court. The Tenth Circuit has said that a declaratory judgment is not meant to proclaim liability for a past act, but to define the legal rights and obligations of the parties in anticipation

of some future conduct. *See Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir.2004) (McConnell, J., *concurring*) ("[A] declaratory judgment action involving past conduct that will not recur is not justiciable."); *Francis E. Heydt Co. v. United States*, 948 F.2d 672, 676–77 (10th Cir.1991). Under the Declaratory Judgment Act, the federal court has discretion to intervene. 28 U.S.C. § 2201(a) (a court "*may* declare the rights and other legal relations of any interested party," (emphasis added)). The court's discretion is "unique and substantial" when deciding whether to declare a litigant's rights. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, (1995). The relief Plaintiffs seek is retrospective in nature as it seeks a declaration about past liability. Plaintiffs are not entitled to a declaratory judgment against these State Defendants.

## PROPOSITION III: THIS COURT CANNOT ENJOIN ANY OKLAHOMA STATE CRIMINAL PROCEEDINGS

Plaintiffs apparently request an order to enjoin various state court proceedings. This request is improper. The Supreme Court has observed "it has long been established that a federal court has the authority to decline to exercise its jurisdiction when it 'is asked to employ its historic powers as a court of equity.' " *Quackenbush v. Allstate Insurance Co.* 517 U.S. 706, 717, 116 S. Ct. 1712, 135 L.Ed.2d 1 (1996) (*quoting Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 120, 102 S. Ct. 177 (1981) (Brennan, J., concurring in judgment)). The U.S. Supreme Court addressed the principle of abstention founded on *federalism and comity* in the case *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, (1971). *Younger* provides that a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Comm'ns, Inc. v. Jacobs*, 571 U.S. 69, 72, 134 S. Ct. 584 (2013). The Supreme

Court established three factors as relevant to decision as to whether abstention is required under *Younger. Seneca–Cayuga Tribe of Okla. v. Okla. ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir.1989) (*citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515 (1982)). These factors are:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir.2003) (quotation omitted). "Once these three conditions are met, *Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Id.*

The *Younger* factors are present in this case as to the claims for relief against the State Defendant. Plaintiffs are not specific as to which acts in the state proceedings they are seeking to enjoin, or what stage those proceedings might be in, but as they are seeking an injunction, it can be assumed  the proceedings are ongoing. The second factor is met because the state forum provides adequate opportunity for state court litigants to seek appellate review. Finally, as to the third factor, the state has a substantial interest in ensuring its laws are enforced. Therefore, this Court should deny Plaintiffs request to enjoin any Oklahoma state proceedings.

## CONCLUSION

In light of the foregoing, this Court should grant dismissal in favor of these Defendants and all such other relief for which this Defendant are entitled.

Respectfully submitted,

/s/ Stefanie E. Lawson
**STEFANIE E. LAWSON, OBA#22422**
Assistant Attorney General
Oklahoma Attorney General's Office
313 NE 21st St.
Oklahoma City, OK 73105
Telephone:   405.521.3921
Facsimile:   405.521.4518
Email: Stefanie.lawson@oag.ok.gov
*Attorney for State Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day February 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the ECF System to all counsel of record who are ECF participants.

/s/ Stefanie Lawson
Stefanie Lawson