IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TONYA PARKS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. CIV-23-41-R |
| | ) |
| AIG, an insurance company, et al., | ) |
| | ) |
| Defendants. | ) |

### ORDER

Before the Court is Plaintiffs' Motion for Evidentiary Hearing on Defense Counsel Status [Doc. 72]. Defendants responded [Doc. 77], and the matter is at issue. The Court DENIES Plaintiffs' Motion.

Plaintiffs' request concerns Rodney J. Heggy, an Assistant District Attorney for Oklahoma County and counsel to Defendants associated with the County. Plaintiffs accuse Mr. Heggy of violating Rule 4.2 of the Oklahoma Rules of Professional Conduct by communicating with Plaintiffs Parks and Gibson about a probate matter in Oklahoma County. Doc. 72 at 3. Mr. Heggy had entered an appearance in this case in January of 2023 [Doc. 43], and the allegedly violative *ex parte* conversation occurred on October 20, 2023. *Id.* On that date, Plaintiff Parks spoke over the phone with Mr. Heggy about the probate case.[1] *Id.* Mr. Heggy, through his position as counsel for the Oklahoma County Treasurer,

---

[1] Plaintiffs provided the Court a recording of this phone call [Doc. 69-10].

was aware of Plaintiffs' probate case and proceeded to advise Plaintiffs how to complete the necessary steps for them to obtain the nearly $40,000 of the Estate's funds. *Id.* at 4.

Later, on November 20, 2023, Plaintiffs Parks and Gibson were at the Oklahoma County Courthouse for proceedings in the probate of the Estate. *Id.* Mr. Heggy met with Plaintiffs in person following the proceeding appointing Parks as personal representative of the Estate, filed the necessary paperwork on their behalf, and had Plaintiff Parks complete a Release document [Doc. 72-3] settling any further claims associated with the Estate. Doc. 74 at 1-2. The Release is a straightforward document that professes to extinguish all the Estate's claims "relating in any way from or to the Tax Resale of the property listed herein" for the receipt of $40,529.33 of consideration. Doc. 72-3 at 1.

Plaintiffs claim Heggy's *ex parte* actions, specifically the provision of legal advice and the execution of the Release, are improper and grounds for disqualifying him from the case. Defendants respond that disqualification is unwarranted because Mr. Heggy had no actual knowledge Plaintiffs were represented by counsel and the subject matter of the *ex parte* conversations has no impact on the case at hand.

In the Tenth Circuit, motions to disqualify attorneys are adjudged by a national standard, but courts should attempt to avoid any inconsistencies with state law. *See Accounting Principals, Inc. v. Manpower, Inc.*, 599 F. Supp. 2d 1287, 1291 (N.D. Okla. 2008). Rule 4.2 of the Oklahoma Rules of Professional Conduct states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

OKLA. STAT. tit. 5, Ch. 1, App. 3-A, Rule 4.2. Because Rule 4.2 in Oklahoma is identical to its American Bar Association counterpart, the Court looks primarily to Oklahoma's interpretations for guidance. *See* Model Rules of Prof'l Conduct r. 4.2 (AM. BAR ASS'N 1983).

A federal court may order disqualification of an attorney as a remedy for the violation of Rule 4.2. *Weeks v. Indep. Sch. Dist. No. I-89 of Oklahoma Cnty., OK., Bd. of Educ.*, 230 F.3d 1201, 1211 (10th Cir. 2000). However, disqualification is an "extreme sanction." *Id.* The touchstone for a court is whether an attorney's conduct "in some way taints the trial or the legal system." *Fed. Deposit Ins. Corp. v. Isham*, 782 F. Supp. 524, 528 (D. Colo. 1992). Otherwise, a court has "broad discretion" to appropriately penalize or sanction a party "to remedy the problems caused by an attorney's improper *ex parte* communications with a party represented by counsel." *Weeks* at 1211 (quoting *Faison v. Thornton*, 863 F. Supp. 1204, 1215 (D. Nev. 1993)). Courts balance four competing factors when examining potential violations of Rule 4.2: (1) the client's interest in representation by counsel of choice; (2) the opposing party's ability to try its case without prejudice due to the *ex parte* communications; (3) the public's faith in the administration of justice; and (4) the hardship potential disqualification would impose on the court and all litigants. *Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, CIV.A. 07-2253, 2009 WL 902424 at *9 (D. Kan. Mar. 31, 2009). In Oklahoma, the party moving to disqualify an attorney has the burden of establishing a likelihood of harm by a preponderance of evidence. *Arkansas Valley State Bank v. Phillips*, 171 P.3d 899, 911 (Okla. 2007).

3

While neither party disputes that the alleged communication took place, it is questionable whether Assistant District Attorney Heggy's conduct violated Rule 4.2. Regardless, the Court finds that the offending conduct—if any—did not taint the legal system and can be remedied without attorney disqualification or an evidentiary hearing.

First, there is compelling evidence that Mr. Heggy did not know Plaintiffs Parks and Gibson were represented at the time of their communication. "Rule 4.2 has three requirements: (1) a communication, (2) with a person known to be represented by an attorney, (3) on the matter of the representation." *State ex rel. Oklahoma Bar Ass'n v. Harper*, 995 P.2d 1143, 1147 (Okla. 2000). The rule requires the attorney have actual knowledge of the representation. *Id.* Plaintiffs point to two pieces of evidence to establish Heggy's knowledge. They provide a litigation hold letter addressed to District Attorney Prater and Mr. Heggy from December 2022 [Doc. 72-1], and they note Mr. Heggy entered his appearance in this case ten months prior to the alleged *ex parte* communications [Doc. 43]. This evidence tends to show Mr. Heggy *could* have known Plaintiffs were represented by counsel in their federal court case, but other evidence indicates Mr. Heggy was *actually* unaware Plaintiffs were represented when they spoke. Specifically, Plaintiff Parks indicated to Mr. Heggy in the first six minutes of their October 20, 2023, phone call that she was unrepresented.[2] Doc. 69-10 at 05:36. It is apparent from the recorded conversation that Mr. Heggy knows Plaintiffs are unrepresented in the probate matter.[3]

---

[2] Parks: "Yeah, no, we've attempted to try and find an attorney to do it . . . and nobody will touch it[.]" Doc. 69-10 at 05:36.
[3] Heggy: "There's 30,000 lawyers in Oklahoma. I'm sure one of them will step up and finish this for you."

Second, it is dubious that Mr. Heggy's communication violated Rule 4.2 even if he did know Plaintiffs were represented by counsel in their federal case. Rule 4.2 states "a lawyer shall not communicate *about the subject of the representation* with a person the lawyer knows to be represented *by another lawyer in the matter*[.]" OKLA. STAT. tit. 5, Ch. 1, App. 3-A, Rule 4.2 (emphasis added). Plaintiffs' counsel in this case, Mr. Musgrove, does not suggest he represented Parks and Gibson in the probate matter. Rather, Plaintiff Parks appeared *pro se* and was appointed personal representative in her grandmother's probate matter in Oklahoma County after her October 20, 2023, conversation with Mr. Heggy. Thus, it seems Mr. Heggy and Plaintiffs' communications were focused on a different subject (the probate of the Estate) than this case, the matter in which Mr. Musgrove represented Plaintiffs. The plain text of Rule 4.2 does not seem to prohibit such communications.

Indeed, the subject about which Heggy and Parks communicated was far afield from the claims of Constitutional violations found in this case. The probate case bears, at most, a tangential relation to the case at hand as the impetus for some of Plaintiffs' claims. However, the disparate subject matter of the two cases means there is not a "substantial risk" that Mr. Heggy obtained information from the *ex parte* communications that could aid Defendants (or prejudice Plaintiffs) in this case. *See Accounting Principals*, 599 F. Supp. 2d at 1295-96 (analyzing Rule 1.9 of Oklahoma's Rules of Professional Conduct as

---

Parks: "I mean, we've tried multiple ones. I mean, I've literally met with . . ."
Heggy: "Well, alright. You can try to do it pro se . . . as long as you end up with a bona fide court order appointing somebody as personal representative." Doc. 69-10 at 06:30 – 06:48.

to whether two matters were "substantially related" enough to warrant disqualification of an attorney in the subsequent case); *see also Leslie v. Fielden*, 10-CV-320, 2011 WL 1655969 at *4-5 (N.D. Okla. May 2, 2011). Given that the nature and breadth of the claims in Plaintiffs' Complaint is a far cry from the appointment of an Estate's personal representative, the Court believes there is virtually no risk of prejudice to Plaintiffs in allowing Mr. Heggy to proceed as Defendants' counsel.

Finally, the Court is satisfied that any potential prejudice to Plaintiffs is mitigated because the fruit of the allegedly poisonous *ex parte* communications—the Release/Settlement agreement—is not applicable to this case. By its very terms, the Release limits its applicability to any claims "relating in any way from or to the Tax Resale of [Parks' grandmother's property]." Doc. 72-3 at 1. Moreover, Defendants expressly state "the release does not and cannot bar the individually alleged constitutional claims raised in this lawsuit." Doc. 77 at 10. The Court agrees. Accordingly, concerns that the Release threatens to taint this case are unwarranted.

Attorney disqualification is a drastic measure and inappropriate in this case. In sum, disqualifying Defendants' chosen counsel is unjustified because Mr. Heggy's further involvement does not appear likely to prejudice Plaintiffs or taint the legal system. Because disqualification is unwarranted and further remedy unnecessary, an evidentiary hearing is not needed. Therefore, Plaintiffs' Motion for an Evidentiary Hearing on Defense Counsel's Status is DENIED.

**IT IS SO ORDERED** this 4th day of April 2024.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE