**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TONYA PARKS, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. CIV-23-41-R** |
| **AIG, an insurance company, et al.,** | ) | |
| **Defendants.** | ) | |

**ORDER**

The following Motions [Docs. 75, 76, 83, 93] are fully briefed and pending before the Court. Defendants seek to dismiss Plaintiffs' Second Amended Complaint [Doc. 69] in its entirety. Plaintiffs separately responded to each motion [Docs. 84, 85, 91, 109], and the Court addresses all pending Motions in this Order.[1] As discussed in further detail below, the Court GRANTS Defendants' Motions and DISMISSES the entirety of Plaintiffs' claims on a variety of grounds.[2]

## I. BACKGROUND

This collection of Plaintiffs is brought together by their shared allegations of corruption and misconduct in the Oklahoma County Courthouse. The Defendant at the center of Plaintiffs' allegations is a former Oklahoma County judge, Tim Henderson. Each

---

[1] Additionally, the Court considers Plaintiffs' Motion to Amend/Correct [Doc. 90] and the associated Responses and Reply [Docs. 104, 107, 108] regarding the improperly named Defendant Chicago Title Company with this Order.

[2] Plaintiffs moved for a hearing on Defendants' various Motions to Dismiss. Because this Order resolves those Motions, Plaintiffs' Motion for Hearing on Pending Motions [Doc. 111] is DENIED.

Plaintiff claims he or she suffered harm stemming from acts that Henderson carried out himself, Henderson directed others to do, or retaliation by other Defendants for reporting Henderson's misconduct. Plaintiffs' allegations implicate a slew of people and entities beyond Henderson: David Prater, the former Oklahoma County District Attorney; Mike Hunter, the former Attorney General of the State of Oklahoma; Melissa Abernathy and Brett Slimp, Oklahoma County Sherriff's Deputies; Oklahoma County; Chicago Title Company; and AIG, an insurance provider for the State.

Given the disparate parties in this case, it comes as no surprise that disentangling each Plaintiff's distinct claims against each Defendant poses a challenge. This difficulty is exacerbated by the Complaint's liberal use of footnotes, disorganization, argumentative nature, and lack of focus.[3] Despite this, the Court proceeds to rule on Defendants' motions in an effort to move the case forward.[4]

Plaintiff Tonya Parks is the daughter of fellow Plaintiffs, Frances and Bennie Gibson. The Parks/Gibson family, residents of Texas, encountered Defendants because Ms. Gibson's mother's estate was the subject of a probate action in Oklahoma County that began in 2016.[5] Ms. Parks held power of attorney in the probate case and interacted with

[3] The Court previously dismissed, *sua sponte*, Plaintiffs' First Amended Complaint for noncompliance with FED. R. CIV. P. 8 and directed Plaintiffs to clearly and cogently state their claims in a short and plain statement against each Defendant. The Amended Complaint before the Court makes minimal progress on that front. It continues to be unclear, in part, due to Plaintiffs devoting a substantial amount of space to allegations of misconduct by Defendants' counsel, even though the attorney is not a Defendant in the case. The Complaint was not the proper avenue to raise these allegations. Subsequently, Plaintiffs filed a proper Motion [Doc. 72] to disqualify Defendants' counsel. The Court denied the Motion [Doc. 87].

[4] The synopses of Plaintiffs' claims that follow are the claims as the Court can construe them with a liberal construction normally only afforded to *pro se* litigants.

[5] *In re Estate of Lenox*, No. PB-2016-721. The case is sealed per court order.

the Oklahoma County court system as a result. Throughout the probate action, Parks alleges various Defendants acted improperly by: influencing the judges overseeing the case; falsely imprisoning her; placing her on a "watchlist" at the Courthouse; undertaking a sham sale of the Estate's house; undertaking a sham investigation into misconduct of which Parks complained; and retaliating against her for complaining of misconduct. She brings causes of action under 42 U.S. § 1983 for violations of her First, Fourth, and Fifth Amendment rights, and she alleges a civil conspiracy by Defendants. She also alleges false imprisonment, breach of fiduciary duty, and asks for declaratory relief against Defendant AIG.

Bennie and Frances Gibson, the parents of Plaintiff Parks, allege their own causes of action stemming from the purported misconduct surrounding the Lenox probate. Ms. Gibson, as heir to her mother's Estate, alleges much of the same misconduct and retaliation as Ms. Parks does. She brings several causes of action, including: violations of her Fourth, Fifth, and Fourteenth Amendment rights; a conspiracy to violate said rights; a Fifth Amendment taking of property to which she was the heir; breaches of fiduciary duty; and a declaratory judgment that the AIG insurance policy was triggered by the misconduct.

Mr. Gibson alleges he complained of the misconduct in the Lenox probate to several authorities, and as a result, Defendants retaliated against him. This retaliation took the form of an allegedly false arrest that Mr. Gibson was subjected to at the Oklahoma County Courthouse. Mr. Gibson brings several causes of action, including: First, Fourth, Fifth and Fourteenth Amendment violations; a conspiracy to violate the same; a declaratory judgment that the AIG policy is triggered by his claim; and a declaratory judgment that his

private speech to the probate attorney was protected speech. He also seeks a variety of injunctions against Defendants.

Plaintiff Nyanza Cook complains of Defendant Henderson's misconduct in an unrelated criminal case in which her son, who is not a plaintiff, was arrested. Cook alleges her son's initial arrest warrant was unsigned and invalid before Henderson improperly signed and backdated it. She further alleges Henderson raised her son's bond without a proper hearing. Additionally, she seems to accuse the Oklahoma County District Attorney's Office of communicating falsities to Child Protective Services in Texas and affecting her grandparent rights. Plaintiff Cook brings a First Amendment retaliation claim and a breach of fiduciary duty claim. She further seeks declaratory judgments regarding her son's bond proceedings and Defendant AIG's insurance policy. Finally, she seeks additional injunctive relief.

Plaintiff Alex Bednar accuses Defendants of a conspiracy to discredit and harm him by eliminating his ability to practice law and meddling in his bankruptcy and divorce cases. Judge Henderson and District Attorney Prater are at the center of Bednar's claims. Plaintiff Bednar brings causes of action for violations of his Fourth, Fifth, and Fourteenth Amendment rights, a conspiracy to violate the same, false imprisonment, and breach of fiduciary duty. He also seeks a declaratory judgment that Defendant AIG's 2018-19 policy is triggered by the events of this case.

Defendants can be grouped into four categories. Defendants Henderson, Hunter, and Prater ("State Defendants") are all former State officials represented by the Oklahoma Attorney General's office. Defendants Slimp, Abernathy, and Oklahoma County ("County

Defendants") are represented by the Oklahoma County District Attorney's office. Defendant AIG and Defendant Chicago Title Company are represented separately by their respective counsel. Between them all, Defendants dispute the entirety of Plaintiffs' allegations and move to dismiss on a variety of grounds, including sovereign immunity, judicial immunity, prosecutorial immunity, qualified immunity, the *Rooker-Feldman* doctrine, res judicata, Oklahoma's statute of limitations, lack of subject matter jurisdiction, failure to state a claim, and noncompliance with FED. R. CIV. P. 8.

## II. LEGAL STANDARD

In considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court must determine whether Plaintiff has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555. (citations omitted). In making its dismissal determination, the Court must accept all the well-pleaded allegations of the complaint as true and construe the allegations in the light most favorable to the claimant. *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

Determining whether a claim is plausible varies based on context and requires the Court to draw on judicial experience and common sense. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). To satisfy the plausibility standard of federal pleading, Plaintiffs must offer this Court reason to believe they have a reasonable likelihood of

mustering factual support for their claims. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Underpinning Rule 12(b)(6) is Rule 8's requirement that a pleading provide a "comprehensible, 'short and plain' statement of the claim(s) sufficient to give the opposing party reasonable and fair notice of the basis of the complaint." *Abdelsamed v. Colorado*, 6 F. App'x 771 (10th Cir. 2001) (quoting FED. R. CIV. P. 8(a)(2)). Additionally, "it [is] not the district court's job to stitch together cognizable claims for relief" from a litigant's deficient pleading. *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). "[F]ailure to satisfy Rule 8 can supply a basis for dismissal[.]" *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1161 (10th Cir. 2007). Moreover, this Court has "inherent authority to manage [its] dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).

## III. DISCUSSION

At the outset, the Court observes that Plaintiffs' Complaint is a form of "shotgun pleading." Plaintiffs allege a plethora of facts, attach several exhibits to the pleading, and state numerous claims by unrelated Plaintiffs against various Defendants. These claims are not effectively organized, and because of the morass of information Plaintiffs have provided, the facts underpinning each claim are not specified. Pleading in this way "places an inordinate burden" on the parties responding to Plaintiffs' allegations and the Court in analyzing their claims. *Jacobs v. Credit Suisse First Bos.*, 11-CV-00042, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011). "Essentially, the shotgun pleader foists off one

of the pleading lawyer's critical tasks—sifting a mountain of facts down to a handful of those that are relevant to a given claim—onto the reader." *Id.*

Plaintiffs state that the alleged "widespread wrongdoing in this multi-plaintiff, multi-defendant action justifies the length" of their Complaint. Doc. 85 at 9. But the "widespread wrongdoing" alleged by the various Plaintiffs against several Defendants does not justify the Complaint's lack of clarity. Quite the opposite. The nature of this case *demands* that counsel meticulously clarify the claims of each Plaintiff so that the Court and Defendants may reasonably comprehend the nature of and alleged factual basis for each and every claim. It is neither the Court nor the Defendants' job to distill Plaintiffs' tangled allegations into a workable pleading; it is the Plaintiffs'.

A. STATE AND COUNTY DEFENDANTS' MOTIONS

Because Plaintiffs have failed, yet again, to provide a short and plain statement of their claims as required by FED. R. CIV. P. 8, the claims asserted against State & County Defendants are DISMISSED without prejudice.[6] Although the parameters of Plaintiffs' various claims are often unclear, Defendants have raised defenses that seem to bar at least some aspects of Plaintiffs' claims. So, while dismissal of the instant Complaint is pursuant to Rule 8, Plaintiffs should bear in mind that dismissal of their claims on the following grounds is plausible in a subsequent Complaint. Dismissing the Complaint in this manner, while discussing the defenses Defendants have already raised, will aid the Court and all litigants in achieving a more expeditious resolution to this dispute.

[6] Defendants AIG and Chicago Title's arguments will be addressed *infra* at section III B.

i. *Rooker-Feldman* Doctrine

This doctrine prohibits federal district courts from reviewing state court judgments. *Lance v. Dennis*, 546 U.S. 459, 460 (2006). "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Id*. (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)). The Tenth Circuit has emphasized that the "essential point" of the doctrine is that it bars claims that complain of injuries arising from state court judgments. *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012). "In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Id.*

The precise facts, claims, and remedies Plaintiffs put forward are often unclear. However, it is apparent that much of Plaintiffs Parks, Gibson, and Bednar's allegations revolve around previous state court judgments rendered against them. To the extent Plaintiffs challenge the state court judgments against them, the Court would lack jurisdiction to entertain their claims.

ii. Judicial Immunity

Our legal system cloaks judges in a broad and absolute immunity for their judicial acts; accordingly, Plaintiffs must clear a high bar to hold Defendant Henderson liable for his alleged wrongdoing. Each Plaintiff appears to allege one or multiple claims against Defendant Henderson arising out of his conduct in cases they had before him. For example, they accuse Judge Henderson of backdating documents, improperly increasing a bail amount, taking property without just compensation, and generally depriving them of due

process. Each of these acts seems to implicate Henerson's judicial immunity, even if they were undertaken wrongfully.

"A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (internal quotation omitted). Moreover, "the commission of grave procedural errors" is still within the ambit of judicial immunity. *Id.* at 359. In effect, Plaintiffs must show Judge Henderson acted in a nonjudicial capacity or undertook judicial acts without any conceivable jurisdiction to do so. From what the Court can discern from the Complaint, however, much of the alleged wrongdoing by Defendant Henderson fails to meet this exacting standard.

Additionally, Plaintiffs should note that "judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aide of the judge is involved." *Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981). Consequently, Plaintiffs' allegations against nonjudicial defendants, such as Abernathy and Slimp, may even be barred by judicial immunity.

iii. <u>Prosecutorial Immunity</u>

Defendant Prater enjoys similar immunity under the law that Defendant Henderson does, as "[t]he common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges . . . acting within the scope of their duties." *Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976). "A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in

conducting them in court." *Id.* at 424. Here, Plaintiffs allege Prater limited investigations into Henderson, wrongfully brought prosecutions against Bennie Gibson and Alex Bednar, and generally retaliated against Plaintiffs' exercise of their rights. Again, it is uncertain to what extent prosecutorial immunity would shield Defendant Prater from Plaintiffs' claims because their claims are not clear. However, at least some of the conduct Plaintiffs describe appears to be protected by prosecutorial immunity.

iv. Sovereign Immunity

The sovereign immunity afforded states by the Eleventh Amendment is implicated by Plaintiffs' claims against the State Defendants in their official capacities.[7] Because Plaintiffs allege violations of their Constitutional rights by State officials, their claims are necessarily based in 42 U.S.C. § 1983. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the state itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). A State is not a proper defendant in a § 1983 action. *Id.* Thus, this Court cannot provide recourse for Plaintiffs against State Defendants in their official capacities. Eleventh Amendment immunity is jurisdictional in nature, so dismissal on its basis is to be without prejudice. *Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017). Consequently, all claims against Defendants Henderson, Prater, and Hunter, in their official capacities, are DISMISSED WITHOUT PREJUDICE on this basis.

[7] It is unclear whether Plaintiffs intended to bring suit against Defendant Henderson in his official capacity, but they do expressly lodge claims against Defendants Prater and Hunter in their official capacities. The Court presumes Plaintiffs attempt to do so against Defendant Henderson, too.

v. Qualified Immunity

Plaintiffs' claims against all County and State Defendants raise the specter of qualified immunity. Apart from the previously discussed absolute immunity, "[m]ost public officials are entitled to only qualified immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Under its shield, "government officials are not subject to damages liability for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1993)). Prosecutors, while receiving absolute immunity for prosecutorial functions, can also be entitled to qualified immunity for non-prosecutorial functions. *Id.* at 273.

The Court need not rehash the well-trodden jurisprudence of qualified immunity for litigants at this time. It suffices to remind Plaintiffs of its potential application to claims against State Defendants, Abernathy, and Slimp. If Plaintiffs move forward with their claims, they must allege sufficient facts to plausibly demonstrate that the official has exceeded his or her qualified immunity. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019). If they fail to do so, qualified immunity will shield Defendants from suit.

B. DISCUSSION OF AIG AND CHICAGO TITLE'S MOTIONS

As with the County and State Defendants, Plaintiffs' claims against Defendants AIG and Chicago Title are often inscrutable. However, there are certain claims which the Court finds legally deficient. In the interest of expeditiously resolving this case for litigants, the Court DISMISSES claims against AIG with prejudice. Claims against Chicago Title are DISMISSED without prejudice.

i. AIG

Plaintiffs seek a declaratory judgment against AIG that the insurance policy it allegedly issued to the State of Oklahoma is implicated by the alleged events of this case. AIG points to the traditional direct-action prohibition in Oklahoma to defend itself.[8]

Plaintiffs' claims against AIG directly cannot persist because the familiar limitation on direct actions against insurers in Oklahoma is applicable in this case. Plaintiffs acknowledge the traditional limits within Oklahoma on suing insurers directly:

> It is true that, ordinarily, an injured party does not have a direct right of action against a liability insurer. This, in turn, means that indemnity claims are ordinarily not ripe until the tortfeasor's liability is determined. It also means that, ordinarily, the insurer owes no duty of good faith to plaintiffs that are harmed by their insureds' conduct.

Doc. 109: Plaintiffs' Response at 4; *see, e.g., McWhirter v. Fire Ins. Exch., Inc.*, 878 P.2d 1056, 1059 (Okla. 1994); *Watson v. Farmers Ins. Co.*, 23 F. Supp. 3d 1342, 1347 (N.D. Okla. 2014). The Supreme Court of Oklahoma has consistently reaffirmed these limits. "We have never before recognized the right of a plaintiff to bring a *direct* action against the insurer of an alleged tortfeasor absent statutory edict. We do not recognize this right now." *Daigle v. Hamilton*, 782 P.2d 1379, 1383 (Okla. 1989) (emphasis in original).

To overcome the direct-action prohibition, Plaintiffs must demonstrate a contractual or statutory relationship with AIG. *Townsend v. State Farm Mut. Auto. Ins. Co.*, 860 P.2d

[8] The Court does not find AIG to currently be in default. It is unnecessary to parse the tortured procedural history of the case to determine if or when AIG should have been deemed in default. Even if the Court were to find the Clerk of Court should have entered a default against AIG in 2023, the Court would set it aside for good cause. *See Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009). Specifically, the Court finds AIG did not willfully default, AIG's defenses have merit, and Plaintiffs have demonstrated no prejudice.

236, 237 (Okla. 1993). In this situation, however, Plaintiffs are "third-party claimants who are mere strangers to the contract of insurance." *Id.* Despite this, Plaintiffs attempt to evade the prohibition by analogizing their situation—as alleged victims of civil rights abuses by government actors—to Oklahoma's uninsured motorist (UM) scheme. Such an analogy is unavailing.

In the UM context, unlike here, contractual privity exists. There, the insured motorist has contracted with his or her insurer for certain benefits in the event of incurring damages in excess of another driver's liability policy. *Id.* at 238; *see, e.g., Brown v. Patel*, 157 P.3d 117 (Okla. 2007). Plaintiffs, on the other hand, wish to sue the State of Oklahoma's insurer because of Oklahoma officials' alleged liability. No privity exists. Plaintiffs also cannot be considered third-party beneficiaries to the contract between AIG and Oklahoma because the contract was not "made expressly for [their] benefit, which means . . . in direct or unmistakable terms[.]" *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1230 (10th Cir. 2012). Thus, Plaintiffs' attempt to demonstrate a contractual relationship with AIG fails.

Plaintiffs then point to the Oklahoma Government Tort Claims Act as forming a statutory relationship between them and AIG. In Plaintiffs' telling, the Act creates a statutory relationship between Plaintiffs and AIG because:

> if a policy or contract of liability insurance covering the state . . . is applicable, the terms of the policy govern the rights and obligations of the state or political subdivision and the insurer with respect to the investigation, settlement, payment and defense of claims or suits against the state or political subdivision or its employees covered by the policy.

OKLA STAT., tit. 51, § 158(C). Plaintiffs read the statutory text as imposing an obligation on AIG to investigate a claimant's allegations against the State. Plaintiffs, as strangers to the insurance contract between AIG and the State, however, cannot enforce the "terms of the policy" that "govern the rights and obligations of the state . . . and the insurer." *Id.* Thus, the statutory text only defines the relationship between AIG and the State, not Plaintiffs.

Plaintiffs then point to two cases to support the notion that they have a statutory relationship with AIG. In the first, Plaintiffs cite a quote referring to an insurance policy held by a political subdivision as "a fund independent of the agency's assets upon which the injured plaintiff may draw." *Herweg, By and Through Stanard v. Board of Educ. of Lawton Public Schools*, 673 P.2d 154, 156 (Okla. 1983). Evidently, Plaintiffs read this as eliminating the direct-action prohibition and allowing them to pursue "the fund" directly. Doc. 109 at 5. However, all that the Supreme Court of Oklahoma conveyed with that statement is that "a political subdivision . . . waives its [sovereign] immunity to the extent of [the insurance] coverage." *Id.* Second, Plaintiffs cite to portions of *Colony* for support. However, the Tenth Circuit ultimately rejected the plaintiff's claim of a statutory relationship in that case, finding the insurance policy was a third-party liability policy—just as the State's policy with AIG is here. *Colony*, 698 F.3d at 1232.

In a last-ditch effort at finding a method to sue the insurer directly, Plaintiffs note that Plaintiff Bednar qualifies as an insured person under the AIG policy, thereby placing all Plaintiffs in a contractual relationship with AIG. It is unnecessary to determine whether Bednar actually qualifies as an insured party under the policy. Because Bednar is acting as

a Plaintiff in this case, AIG's duty to him is defined by his status as a claimant, not as an insured. *Id.* at 1230. He cannot bring suit against AIG directly as a result.

There is no plausible set of facts Plaintiffs could present which would give them the right to pursue an action against AIG (or the properly identified insurer) directly. Consequently, amendment with respect to AIG is futile and dismissal with prejudice is appropriate. *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014). All claims against AIG are DISMISSED pursuant to Rule 12(b)(6) with prejudice.

ii. <u>Chicago Title Company</u>

Defendant Chicago Title Company seeks to dismiss the breach of fiduciary duty and civil conspiracy claims lodged against it by Plaintiffs Parks and Gibson on the grounds that it is not the proper entity to be sued. Chicago Title Company is a California corporation that has not conducted any activity directed towards Plaintiffs in the state of Oklahoma. Doc. 83 at 13; Doc. 83-3. Rather, Defendant suggests the properly named target of Plaintiff's claims is Chicago Title Oklahoma Co. Doc. 83-2. Plaintiffs accede to this representation [Doc. 91] and wish to amend their Complaint to name the proper Defendant [Doc. 90].[9] Given the cursory nature of the allegations against Chicago Title, however, it is questionable whether Plaintiffs could have properly stated claims for breach of fiduciary duty or civil conspiracy against the properly named defendant.[10]

[9] The Court has considered this Motion to Amend and the associated briefing by parties [Docs. 90, 104, 107, 108] in issuing this Order.

[10] Plaintiffs are reminded of their requirement to plead claims that are facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Rule 11 sanctions are available to a court if it finds the litigant has burdened the court with baseless filings. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990).

The Court GRANTS Chicago Title Company's Motion to Dismiss and DISMISSES without prejudice all claims against the entity Chicago Title Company pursuant to FED. R. CIV. P. 12(b)(2). Plaintiffs' Motion for Leave to Amend is DENIED. Plaintiffs may file a new motion to amend their Complaint, including naming the proper entity of Chicago Title Oklahoma Co.

## IV. CONCLUSION

Plaintiffs' Second Amended Complaint is dismissed in its entirety. Claims against AIG are DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6). All other claims against all other Defendants are DISMISSED WITHOUT PREJUDICE pursuant to Rule 8(a)(2) and the Court's inherent power to manage its docket to expeditiously resolve cases. Plaintiffs' Second Amended Complaint is not close to complying with Rule 8(a)(2). Once more, the Court underscores the Rule's mandate that a pleading "*must contain* . . . a short and plain statement of the claim[.]" FED. R. CIV. P. 8(a)(2) (emphasis added).

Plaintiffs may file a Motion to Amend their Complaint that complies with LCvR 15.1 and Rule 8(a)(2) **within twenty-one days** of the date of this Order. The Court will not be inclined to dismiss claims without prejudice next time unless it is evident that Plaintiffs have heeded this Court's repeated admonishments. Plaintiffs will not be entitled to freely seek bite after bite at the proverbial apple. Defendants' Motions [Docs. 75, 76, 83, 93] are GRANTED.

**IT IS SO ORDERED** this 20th day of June 2024.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE