**IN THE UNITED DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

**TONYA PARKS,** individually;
**BENNIE GIBSON,** individually;
**FRANCES GIBSON,** individually;
**NYANZA COOK,** individually;
**ALEXANDER BEDNAR,** individually
**Plaintiffs,**

vs.

**CHICAGO TITLE OKLAHOMA CO**, a Oklahoma Insurance Title Company;
**TIMOTHY HENDERSON**, a removed Oklahoma Judge accused of crimes;
**DAVID PRATER**, Oklahoma County District Attorney in his individual and Official capacity;
**MIKE HUNTER**, Resigned Oklahoma State Attorney
**MELISSA ABERNATHY**, a Sheriff Deputy;
**OKLAHOMA COUNTY**;
**ROE SIMMONS**, An Oklahoma Attorney;
**JANE DOE**;
**JOHN DOE**
**Defendants**

Case *No. 5:23-cv-00041- R*

**PLAINTIFFS' TONYA PARKS, BENNIE GIBSON, FRANCES GIBSON AND NYANZA COOK THIRD AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

**PLAINTIFFS' TONYA PARKS, BENNIE GIBSON, FRANCES GIBSON AND NYANZA COOK THIRD AMENDED COMPLAINT**

**COME NOW**, the Plaintiffs, Tonya Parks, Bennie Gibson, Frances Gibson, and Nyanza Cook only and for their Complaint against the above-named Defendants, state and allege as follows: This Amended Complaint complies with [Doc. 112].

## INTRODUCTION

1. Plaintiffs have diligently sought to address and rectify the egregious conduct of the Defendants through multiple avenues, including formal requests for investigations by various governmental agencies such as the Attorney General, State Bar, Judicial Conduct Commission, local Police Departments, the Oklahoma State Bureau of Investigation (OSBI), and the Federal Bureau of Investigation (FBI).

2. Despite these efforts, Plaintiffs have consistently been redirected to pursue civil litigation, with the implicated agencies refraining from initiating criminal proceedings against Defendants, thereby effectively shielding the Defendants from criminal accountability.

3. The refusal of these agencies to pursue criminal charges against the Defendants serves to implicitly undermine Plaintiffs' allegations and reinforces the Defendants' wrongful use of judicial and sovereign immunity as shields against liability.

4. Defendants, by and through their legal counsel, have exploited their apparent immunity to seek dismissal of the cases brought against them, fully aware that their conduct constitutes a dereliction of the duties owed to Plaintiffs.

5. Such actions by Defendants have perpetuated Plaintiffs' suffering and mental anguish, as they continuously strive to halt the ongoing violations of their constitutional rights, including the deprivation of life's enjoyments and liberties.

6. As a direct and proximate result of Defendants' actions and the systemic inaction by responsible agencies, Plaintiffs have suffered significant losses, including the unlawful taking of property and substantial financial damages.

7. This action seeks redress for egregious violations of the constitutional rights of Tonya Parks (collectively "Ms. Parks" or "Parks"), Bennie Gibson (collectively "Mr. Gibson" or "Gibsons"), Frances Gibson (collectively "Mrs. Gibson" or "Gibsons"), Nyanza Cook (collectively "Ms. Cook" or "Cook") (When referencing Plaintiffs Parks, Gibsons and Cook collectively, "Plaintiffs") perpetrated by Chicago Title Oklahoma Co., Judge Timothy Henderson, Mike Hunter, Melissa Abernathy, Oklahoma County, Roe Simmons, Jane and John Doe and other implicated parties (collectively, "Defendants"). The Plaintiffs have suffered extensive harm due to Defendants' actions and omissions involving judicial corruption, abuse of power, and unlawful retaliation, all executed under color of state law.

8. Plaintiffs Tonya Parks, Bennie Gibson, Frances Gibson, and Nyanza Cook bring this action seeking redress for grave violations of their constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, perpetrated by the defendants under color of state law pursuant to 42 U.S.C. § 1983.

9. Plaintiff Mr. Gibson and Mrs. Gibson bring violations under the Elder Justice Act of 2010 and the Older Americans Act reauthorized in 2020. This action also addresses serious breaches of judicial and governmental duty, including corruption, abuse of power, and unlawful retaliation as detailed herein.

10. Plaintiffs Tonya Parks, Bennie Gibson, and Frances Gibson amend their complaint to include Defendant Roe Simmons and Chicago Title Oklahoma, who played a central role in the conspiracy and acts of corruption that deprived the Plaintiffs Mr. Gibson, Ms. Gibson and Ms. Parks of their constitutional rights. This amendment incorporates additional factual allegations and causes of action reflecting Defendant Simmons' and Chicago Title Oklahoma's involvement in the wrongful actions described herein.

11. Plaintiff Tonya Parks, Bennie Gibson, Frances Gibson and Nyanza Cook amended their complaint to also include Defendant Jane and John Doe. In the context provided, Jane Doe and John Doe are referred to as additional defendants, potentially encompassing a range of individuals such as court officers, judges, attorneys, state and county agencies, investigative bodies, and unnamed state employees. These individuals are implicated in actions or inactions that allegedly contributed to violations of the plaintiffs' rights.

12. Plaintiffs will show Jane and John Does' duties were breached by these co-conspirators and state agencies/employees include fiduciary duty and duty of care, legal and ethical obligations, and the duty to investigate and address wrongdoing. The violations of the plaintiffs' rights as alleged include fraud and misrepresentation, breach of fiduciary duty, and failure to investigate and prosecute wrongdoing, leading to financial harm and deprivation of justice for the plaintiffs.

13. For a more detailed history exhibiting Plaintiffs complaints please also follow and reference [All Plaintiffs - **Exhibit 1** and for Plaintiffs Ms. Parks, Ms. Gibson and Mr. Gibson reference - Exhibit **6**]

## **PARTIES**

14. **Plaintiffs:** Tonya Parks, Bennie Gibson, Frances Gibson, and Nyanza Cook, are individuals residing in the State of Texas.

15. Plaintiff Tonya Parks is a resident of Texas, an adult citizen directly impacted by the Defendants' corrupt and retaliatory actions.

16. Plaintiff Bennie Gibson is a resident of Texas, an adult citizen, targeted by Defendants for his efforts to expose judicial corruption and directly impacted by the Defendants corrupt and retaliatory actions.

17. Plaintiff Frances Gibson is a resident of Texas, an adult citizen, and daughter of deceased Ceola Lenox, whose inheritance was illicitly compromised by Defendants, and she

was targeted by Defendants for his efforts to expose judicial corruption and directly impacted by the Defendants corrupt and retaliatory actions.

18. Plaintiff Nyanza Cook is a resident of Texas, an adult citizen directly impacted by the Defendants' corrupt and retaliatory actions.

19. **Defendants:** Chicago Title Oklahoma a title insurance company. Timothy Henderson is a former judge in Oklahoma County. David Prater is the former District Attorney of Oklahoma County, serving in both his individual and official capacities. Mike Hunter is the former State Attorney General of Oklahoma. Melissa Abernathy is a sheriff deputy in Oklahoma County. Oklahoma County is a governmental entity in the State of Oklahoma, Roe Simmons an attorney in Oklahoma, and Jane and John Doe potential co-conspirators and/or witnesses.

## JURISDICTION AND VENUE

20. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343 to protect and redress the deprivation of rights guaranteed by the First, Fourth, Fifth, and/or Fourteenth Amendments of the United States Constitution, as enforced by 42 U.S.C. § 1983. This statute ensures the protection of individuals' civil rights and provides remedies for the deprivation of those rights under the color of law.

21. The Court also possesses original jurisdiction under 28 U.S.C. § 1331 to adjudicate controversies arising under the Constitution and laws of the United States, specifically the First, Fourth, Fifth, and/or Fourteenth Amendments, as enforced by 42 U.S.C. § 1983.

22.    The actions complained of occurred in Oklahoma County, Oklahoma, making jurisdiction and venue appropriate under 28 U.S.C. § 116(c) and 1391(b).

23.    When state and federal law claims "derive from a common nucleus of operative fact," the court should exercise supplemental jurisdiction over state claims. 28 U.S.C. § 1367(a). Section 1367(a) gives the court "broad grant of supplemental jurisdiction over other claims within the same case or controversy." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). State claims of breach of fiduciary duty against corporate defendants (by contract) and against public servant defendants (by law) are viable. OUJI 3d Ch. 26.

## FACTUAL ALLEGATIONS

24.    Plaintiffs have been victims of acts resembling hate crimes, as individuals have conspired to harm them for exercising their right to free speech and their legal right to file complaints with the appropriate authorities and judicial districts. These complaints were made in an effort to report the crimes and violations they have been enduring, with the goal of stopping public officials and court officers from permitting others to continue depriving them of their rights and unlawfully taking their property and inheritance.

25.    **Chicago Title Oklahoma Co.** conspired with judicial officials to manipulate the probate process, including submitting false documents and unlawfully sealing records to hide their fraudulent activities. In addition, they collaborated with other defendants to defraud the estate of Ceola Lenox, engaging in actions such as knowingly assisting in the filing of false

documents and sealing the probate records to conceal their misconduct and evading law enforcement scrutiny.

26.    **Judge Timothy Henderson** abused his judicial office to retaliate against Plaintiffs for their objections to his corrupt practices, engaging in activities that grossly exceeded his judicial capacity. While also engaged in unethical conduct and abuse of his judicial power, orchestrating a campaign of retaliation against the plaintiffs for their attempts to expose corruption within the Oklahoma County Courthouse. This included directing wrongful investigations, arrests, and the manipulation of judicial processes.

27.    **Mike Hunter** neglected his responsibilities as Attorney General by failing to investigate and address the corruption reported by the plaintiffs, effectively condoning the ongoing violations during his time in office. As the Attorney General at the time, he ignored credible allegations of corruption and abuse brought forward by the plaintiffs, thereby allowing the continued violations of their constitutional rights.

28.    **Sheriff Melissa Abernathy** acted under Henderson's directives to unlawfully target and prosecute Bennie Gibson, using her law enforcement authority to block the plaintiffs' efforts to seek justice. She carried out illegal actions at Henderson's direction, including the wrongful filing of charges and enforcement of unlawful court orders against Bennie Gibson. The audio recording explaining the directive from Abernathy's supervisor can be found in [Doc 126, Exhibit 2] [and a copy of 126, Exhibit 10].

29. She also violated spousal privilege while gathering evidence for a probable cause affidavit to issue a warrant. This was done by exploiting a civil courtroom, where she conspired and colluded with Judge Richard Kirby, other officers of the court in Oklahoma County, and Defendant Roe Simmons. [Doc 143, Exhibit 1] [and a copy of 143, Exhibit 9].

30. **Oklahoma County** facilitated these abuses by failing to enforce proper checks on judicial and prosecutorial misconduct within its jurisdiction. Also, its officials perpetuated a culture of corruption and retaliation, failing to uphold the legal and ethical standards required of public entities.

31. **Roe Simmons' Role in Judicial Corruption**: Defendant Simmons collaborated with Defendants Henderson and Abernathy to manipulate judicial proceedings against Plaintiffs, particularly targeting Bennie Gibson with wrongful criminal charges to silence his complaints against judicial corruption. Simmons was instrumental in sealing probate case records to conceal his unlawful actions and manipulate the sale of probate property. [Exhibit 1, 6 and 7]

32. **Fraudulent Sale and Probate Manipulation**: Simmons, working with the personal representative and other Defendants, orchestrated the sale of probate property under false pretenses, misrepresenting the actual sale date to facilitate transactions that deprived Frances Gibson of her rightful inheritance. This misconduct was later exposed, resulting in a court order vacating Simmons' and the personal representative's roles due to their fraudulent actions.

33. The plaintiffs were subjected to continuous harassment, illegal arrests, property seizures, and emotional and financial harm due to the defendants' actions.

## ADDITIONAL FACTUAL ALLEGATION APPLICABLE TO ALL CLAIMS

## STATEMENT OF THE CASE

34. Plaintiffs bring this lawsuit following years of enduring Defendants coordinated and malicious actions intended to suppress their constitutional freedoms and deprive them of property without due process. These actions include judicial corruption, fraudulent concealment in probate transactions, and retaliatory abuse of the legal system, all facilitated by Defendants' positions of power within the Oklahoma legal and governmental frameworks.

35. Plaintiffs Tonya Parks, Frances Gibson, and Bennie Gibson have suffered significant emotional distress following the death of Ceola Lenox, leading to a probate case marked by allegations of fraud, embezzlement, and misconduct in managing the estate, as detailed in affidavits and documents [Doc. 125, 125-4, 125-5, and Doc. 126].

36. Plaintiff Tonya Parks has actively defended her grandmother's estate to secure her mother's inheritance and protect her father's interests. Throughout this ordeal, she has faced harassment, intimidation, and attempted malicious prosecution by court officers and others involved in the probate case and related matters, resulting in violations of her family's constitutional rights. The case is compounded by the sealing of court records, withholding of transcripts, and retaliatory legal actions [Doc. 125, 125-4, 125-5, and Doc. 126].

37. The probate case of Ceola M. Lenox [OSCN.NET - Oklahoma County PB-2016-721], as detailed in [Doc. 125, 125-4, and Doc. 126], outlines allegations of corruption, fraud, and retaliation led by former Judge Timothy Henderson, Oklahoma County, Chicago Title Oklahoma, Melissa Abernathy, and others accused of collusion and breaching fiduciary duties.

38. Defendant Roe Simmons is added to this action based on his direct involvement in and facilitation of judicial misconduct, abuse of power, and deprivation of due process rights as alleged. Simmons used his influence in the court, particularly with Judge Timothy Henderson and Sheriff Melissa Abernathy, along with other court officers, to manipulate probate proceedings, including the unlawful sealing of cases and fraudulent sale of probate property.

39. Defendant Simmons requested the case be sealed at a hearing on May 11, 2021, for the request for Special Administrator Sara Boundurant's Resignation. The sealing of the case has caused harm and delays in the Parks and Gibson family to achieve justice which has obstructed justice and people being held accountable for the actions they committed against the estate and the Plaintiffs Parks and Gibsons.

40. Ongoing - Judge Resien of Oklahoma County is having *ex perte* communication with lawyers Plaintiffs were interviewing to represent in Probate case and this federal case.

41. Ongoing – Due to the court failing to select a special administrator for the probate the Tax treasure sold of probate property while the case was sealed the previous year, they stated the property would not be sold because the case is sealed, and they could not see the documents.

42. Ongoing – On March 15, 2024, recent sealing of documents in the probate case that were previously unsealed going back to 2021 to 2024. This was confirmed by the Deputy General Counsel for the Administrative Office of the Courts for the Supreme Court of Oklahoma on August 12, 2024. [Exhibit 3]

43. Ongoing - The documents that were previously unsealed in the probate case that were recently sealed on March 15, 2024, were all documents that detailed a history and the actions

that took place to defraud the estate and listed the parties and officers of the court involved. The date of the sealing is also the same date that Defendant Chicago Title filed their Motion to Dismiss in this current Federal Case in Western District of Oklahoma. These documents implicate the actions committed by Chicago Title and its employees which are reasons for the filing of the federal lawsuit.

44.    The 14 documents recently sealed are titled and originally filed date are as follows:

a.    Filed December 17, 2021 - According to the Oklahoma Open Records Act - Heir Frances A. Gibson's Motion to Unseal the Case Due to the Improper Sealing of the Case Requested by Attorney Roe Simmons to Protect the Reputation of Officers of the Court and to Conceal Evidence in a Court of Law That Shows Wrongdoings Committed by Officers of the Court Including Himself and to Obstruct Justice by Denying Frances Gibson/Parties in the Case and the Public the Ability to Access Normal Public Documents and Transcripts. *Sealed on March 15, 2024.* [Exhibit 7]

b.    Filed December 17, 2021 - Notice of Hearing According to the Oklahoma Records Act. *Sealed on March 15, 2024.*

c.    Filed February 1, 2022 - Judge Kirby - Francis Gibson Appear Pro Se Roe Simmons Appear on Behalf of Dannie Lenox Court Ruling Under Advisement Will Send Out Written Order to the Parties. *Sealed on March 15, 2024.*

d.    Filed April 5, 2022 - Special Master's Report. Sealed on March 15, 2024. *Sealed on March 15, 2024.*

e.    Filed April 5, 2022 - Amended Certificate Of Mailing Special Master's Report. *Sealed on March 15, 2024.*

f.    Filed April 6, 2022 - First Amendment To Special Master's Report. *Sealed on March 15, 2024.*

g.    Filed April 13, 2022 - Affidavit Of Tonya Parks The Daughter Of "Heir/Interest Party" Frances A. Gibson And Has Power Of Attorney To Speak On The Behalf Of Frances A. Gibson Due To Her Health Caused By This Probate Case And Has Been To Most Of The Events Handled In This Estate And Now Wants To ***Alert*** The Court By Her Affidavit To Show That The Special Master's Report Dated April 5, 2022, Does Not Reflect A True History Of The Estate Which We Believe Is Attended To Mislead The Court In Protection Of Officers Of The Court And May Also Be Used As An Attempt To Extort And Exploit An Elderly Person Who Is An Hier To The Estate. *Sealed on March 15, 2024.* [Exhibit 6]

h.    Filed April 13, 2022 - Appendix - Exhibit 1-19 In Support of Affidavit of Tonya Parks. *Sealed on March 15, 2024.*

i.    Filed April 13, 2022 - Appendix - Exhibit 20-21 In Support of Affidavit of Tonya Parks. *Sealed on March 15, 2024.*

j.    Filed April 19, 2022 - Request. *Sealed on March 15, 2024.* (This was a request to Recuse Judge Kirby due to having *ex perte* communication with Roe Simmons and other information regarding judicial conflicts of interest with Special Master Rolin Nash)

k.    Filed January 4, 2023 - Judge Kirby - See Court Minute. *Sealed on March 15, 2024.*

l. Filed February 17, 2023 - Return to Senderno Such Number Unable to Forward. *Sealed on March 15, 2024.*

m. Filed November 16, 2023 - Affidavit of Mailing. *Sealed on March 15, 2024.*

n. Filed November 17, 2023 - Affidavit of Mailing. *Sealed on March 15, 2024.*

45. [Exhibit 4] OSCN Case # PB-2016-721 showing document available for public view.

46. [Exhibit 5] OSCN Case # PB-2016-721 showing document *sealed* from public view.

47. Recent event - Knowing the history of the entire case Attorney Rod Heggy the Attorney for Defendant Oklahoma County and Defendant Melissa Abernathy admitted in a recorded conversation that Plaintiff Bennie Gibson was a man of his own heart saying, "he sounds like a man after my own heart". [Exhibit 10 reference Doc 126 Exhibit 3]

48. On October 20, 2023, on the same recording [Exhibit 10 reference Doc 126 Exhibit 3] Attorney Rod Heggy asked basic questions about what we knew regarding the warrant for Plaintiff Bennie Gibson. At the time of the conversation, he never told Plaintiff Tonya Parks that he was the attorney for defendant Oklahoma County and Melissa Abernathy in this federal lawsuit. This could be determined that he was attempting to get privileged information of what plaintiffs knew that could give his clients an advantage over plaintiffs Tonya Parks, Bennie Gibson and Frances Gibson.

49. According to an audio recording of a conversation between Plaintiff Parks and Defendant Counsel Rod Heggy [Doc 125-3], during a discussion with DA Heggy, who represents Defendant Abernathy, the Sheriff of Oklahoma County, the author of the probable cause affidavit, Ms. Parks portrays her father, Mr. Gibson, as a man of God with strong

discernment and guidance, noting that he inspired her to reach out to him. She acknowledges her father as a man of faith, a Vietnam veteran, the hero of their family, and her irreplaceable best friend. In response, Heggy remarked, "He sounds like a man after my own heart," referring to his own sentiments.

50. The Parks and Gibson family were part of the criminal investigation into Defendant Henderson. After the finalization of the investigation into Defendant Henderson handled by the OSBI the agent handling the investigation Brad Green gave his findings to District Attorney Stephen Kunzwelier of Tulsa County who then wrote a report changing the narrative so that no actions would be taken against Defendant Henderson. Brad Green said to Plaintiff Parks that he thought the DA was going to do something to help her family knowing the facts of the investigation and the history of the things that happened to the Parks and Gibson family.

51. Parks asked Green to get Kunzweiler to correct the narrative, but he told her that she would have to call Kunzwelier, but he would not return her calls, so Parks contacted the Attorney General's office and spoke with Joy Thorp who then made inappropriate comments regarding race stating "race card" and attempting to create a narrative that was untrue.

52. During a recent conversation with OSBI Brad Green agent on August 9, 2024, Mr. Green asked Ms. Parks if Kunzwelier revised the report.

53. Roe Simmons set up Plaintiff Bennie Gibson after the federal lawsuit filed against him in Texas in 2017 was dismissed for jurisdiction in 2019. This lawsuit was filed because Plaintiff Gibson could not get anyone in Oklahoma to investigate the probate when he filed criminal complaint, bar complaints, wrote letters to the County Clerk, Defendant Mike Hunter, OSBI

and other entities who all did nothing to protect Roe Simmons and the Personal Representative from taking the probate property and other inheritance from Plaintiff Frances Gibson.

54. In the federal lawsuit in Texas Roe Simmons states in a document saying "someone needs to stop Bennie Gibson" knowing the actions he took to get a warrant against plaintiff Bennie Gibson once the federal lawsuit was dismissed for jurisdiction, he used his influence within the state of Oklahoma to orchestrate a warrant to interfere with the Parks and Gibson Family from filing a lawsuit against him to distract from the process so that he would not be criminally charged for the actions he took to defraud the estate.

55. Plaintiffs Parks and Gibson, Gibson were on Roe Simmons and the personal representative Dannie Lenox actions to defraud the probate so Defendant Roe Simmons wanted to stop plaintiffs from filing complaints against him and his office so he started working with Defendant Henderson and Defendant Abernathy to draft a probable cause to get a warrant against Mr. Gibson to stop him.

56. Roe Simmons knew or had to have known the fraudulent documents that he had filed in the probate case and mailed across stateliness so he did not want that to come out and he would be criminally charged or reprimanded.

57. In response to the Oklahoma Bar Association dated March 1, 2022, Defendant Roe Simmons admitted to having unauthorized private communications (ex parte communications) with Probate Judge Richard Kirby. This admission was made to Gina Hendryx, the General Counsel for the Oklahoma Bar Association. Previously, on December 21, 2021, Plaintiff Parks and Plaintiff Mrs. Gibson had filed a request to unseal the probate case records. Despite this,

Judge Kirby did not issue any order to grant or deny their request. After the hearing regarding this matter, Judge Kirby indicated he would consider the matter further and make a ruling later. However, no official ruling was recorded in the case. In his communication with the bar, Simmons revealed that he had been informed by Judge Kirby that the request to unseal the records would be denied, stating, "We did have a hearing recently before Judge Kirby on Ms. Gibson's request to unseal the court file. I have not seen the Order yet but have been told by Judge Kirby he is denying the request to unseal the records. I will send you a copy when I receive it."

Simmons engaged in private discussions with Judge Kirby without the presence of Plaintiffs Frances Gibson and Tonya Parks, who had initiated the motion to unseal documents under the Oklahoma Open Records Request Act. This constitutes ex-parte communication.

**Tonya Parks**

57. Plaintiffs Tonya Parks, Frances Gibson, and Bennie Gibson have endured significant distress following the death of Ceola Lenox, initiating a probate case plagued by fraud, embezzlement, and misconduct in the handling of the estate. The affidavits and documents detail these actions against them [Doc. 125, 125-4, 125-5 and Doc. 126].

58. Plaintiff Tonya Parks has been deeply engaged in defending her grandmother's estate, attempting to safeguard her mother's inheritance rights, and protecting her father's interests. Throughout this process, she has encountered harassment, intimidation, and attempted malicious prosecution, orchestrated by court officers and other parties (Jane and John Doe(s) involved in the probate case and other matters that deprived her family of constitutional rights and protection. Despite her efforts to seek justice and protect her family's rights, Ms. Parks has

faced substantial resistance, including the sealing of court records, the withholding of transcripts, and retaliatory legal actions designed to silence her and the Gibson family [Doc. 125, 125-4, 125-5 and Doc. 126].

59. The probate case of Ceola M. Lenox [OSCN.NET - Oklahoma County PB-2016-721], as detailed in [Doc. 125, 125-4 and Doc. 126], highlights key legal actions and behind-the-scenes activities. Allegations include corruption, fraud, and retaliation conspired by former Judge Timothy Henderson, Oklahoma County, Chicago Title Oklahoma, Melissa Abernathy, and others, all accused of collusion and breaching fiduciary duties.

**Bennie Gibson**

59. The liability allegations in this case are based on interference of one human rights. Negligence and willful negligent activity under substantive law.

60. Defendant Roe Simmons and his firm SmithSimmons PLLC was at all relevant times the law firm over the estate of Ceola M. Lenox.

61. At all relevant times Roe Simmons and his firm had inclusive and complete control over the estate of Ceola M. Lenox, including but not limited to the "fiduciary duty" to protect the estate in the best interest of the beneficiary. As the highest duty known under the law, nothing short of complete care and good faith.

62. After Plaintiffs Mr. and Mrs. Gibson tried multiple attempts to get help from state and county agencies designed to protect the public in issues like what Plaintiff Gibsons were

experiencing in the The Probate of the Estate of Ceola Lenox, Plaintiff Bennie Gibson filed a Federal Lawsuit in the United States District Court Northern District of Texas Dallas Division on March 14, 2018.

63. Case No: 3:18-cv-00594-S-BH Bennie R. Gibson Spouse of Frances A. Gibson (Beneficiary of the Estate of Ceola Lenox) v. Smith Simmons PLLC, Roe Theron Simmons, Christopher Smith.

64. Judge Karen Gren Scholer, presiding and Judge Irma Carriollo Ramirez referral.

65. In Gibson's lawsuit he has six counts of Causes of Action against Defendants.

66. Count (1) Professional Negligence; (2) Aiding abetting a breach of a fiduciary, (3) Criminal, fraudulent and prohibited transaction; (4) Criminal Collusion/Conspiracy; (5) Fraudulent Deed Transfer; (6) Conspiracy, Forgery by altering/corrupting/falsifying a legal document. [Exhibit 8]

67. The case was dismissed without prejudice on January 9, 2019, for lack of subject-matter jurisdiction stating the claims were in the State of Oklahoma, Oklahoma County. The case was not dismissed on the merits and only dismissed due to the judge not having jurisdiction.

68. The last filing in the case was on February 19, 2019.

69. Plaintiffs Gibsons filed the case in Texas because they felt threatened by officials in Oklahoma County and the State of Oklahoma because no actions were being taken against Defendant Roe Simmons and his firm along with other officers of the court that were allowing

Defendant Roe Simmons, Defendant Chicago Title, Defendant Oklahoma County, the personal representative Dannie Lenox and other officers of the court for defrauding the Estate of Ceola and Heir Plaintiff Frances Gibson out of her inheritance.

70. After the case was dismissed and it was time for Plaintiffs Gibsons to file their lawsuit in Oklahoma County Federal Court. Plaintiffs Parks/Gibson were met with multiple challenges, retaliation, harassment, and intimidation to *discourage* them from filing their complaint in Oklahoma Western District.

71. Bennie Gibson is no threat and was never any threat to Roe Simmons. Mr. Gibson only used his First Amendment Right by filing complaints with the proper authorities in the State of Oklahoma and Oklahoma County.

72. Mr. Gibson felt that due to his complaints to the Oklahoma Bar Association, Oklahoma County Clerk, Mike Hunter, OSBI, The Commission on Judicial Conduct and other agencies that attorney Roe Simmons was "being watched" because of his disgraceful actions to defraud the Estate of Celoa Lenox and his wife Heir Frances Gibson.

73. Due to all of the fraudulent actions committed by attorney Roe Simmons and the personal Representative Dannie Lenox the Parks and Gibson family believed that Ceola Lenox death was suspicious and that she may have been targeted due to her age and her living alone to defraud her estate after death by taking her property, valuables and her money.

74.     The Gibsons filed reports with the Oklahoma Police Department and/or made inquiries to have an investigation into the death of Ceola Lenox, but they were told that due to her age they considered her death as natural causes, so no investigation was done.

75.     Just days before Ceola Lenox was found dead in her home Frances Gibson in Texas was very worried about her mother who was not answering or returning her calls, so she asked her brothers Dannie Lenox and Leon Lenox Jr. to go and check on her.

76.     When they arrived, they found Ms. Lenox's body on the floor in the kitchen.

77.     The night Ceola Lenox was found, Dannie Lenox contacted Ms. Gibson but was not able to get her so he called Ms. Parks so that she could get in touch with her mother to let her know.

78.     On the call Dannie had with Ms. Parks telling her about her grandmother's death and to let her mother know about the passing of Ceola Lenox, Ms. Parks asked her uncle what happened and how she died.  Dannie Lenox then stated how Ms. Lenox was found and then immediately told Ms. Parks that they were not going to do an autopsy.

79.     Due to the actions that have taken place to defraud the Estate of Ceola Lenox the Parks and Gibson family have felt that Ceola Lenox death was motivated and very suspicious and because of that if someone would be convicted for targeting and then murdering an elderly person then they could potentially get the convicted by a judge with a punishment of life in prison and/or a death sentence.

80.     Following her death if her death would have been investigated and found that she was murdered the someone could very well be sentenced to death by a court of law and that was always on the back of Gibson families mind because that would be a horrific crime to target an elderly person to steal their estate and defraud the heirs like what was happening to Plaintiff Frances Gibson with no oversight.

81.     After the dismissal without prejudice for subject-matter jurisdiction in Texas Federal Court, the Gibson family was met with continued challenges, one of which was the warrant being orchestrated by Defendant Timothy Henderson, Defendant Melissa Abernathy and Defendant Roe Simmons.

82.     This warrant was driven by a probable cause affidavit written by Defendant Melissa Abernathy on April 29, 2019, which was directed by Defendant Timothy Henderson. Roe Simmons had campaign fundraisers for Judge Henderson during his reelection and Simmons also was legal counsel for Henderson's son Cameron Henderson in his divorce in 2018.

83.     Due to the financial fundraising campaigns and representing Henderson's son, this would show a reasonable person that Roe Simmons had a close personal relationship and financial ties with Judge Henderson and his family.

84.     Judge Henderson did not have jurisdiction of Gibson to direct the Sheriff's department to draft a probable cause to get a warrant on behalf of Roe Simmons against Gibson without Gibson being made aware or contacted to get his side of what Roe Simmons was doing to his family.

85. The warrant was filed on May 30, 20219, after Roe Simmons, Judge Richard Kirby, Judge Timothy Henderson and Sheriff Melissa Abernathy set up a civil courtroom during a May 16, 2019, hearing in the probate case so that Defendant Abernathy could get testimony from Ms. Gibson against her husband when she did not know her husband was being investigated. This was a violation of plaintiff's Mr. and Mrs. Gibson's constitutional rights as it pertains to spousal privilege.

86. Defendant Abernathy can be heard on an audio recorded call with Plaintiff Parks telling her that she walked in the courtroom and obtained additional evidence to be turned over to the DA office which was the office of Defendant David Prater.

87. The emails and claims the Gibson family were sending and filing would show a reasonable person without conflicts that Roes Simmons and other officers of the court were committing crimes against the Estate of Ceola Lenox and heir Frances Gibson to financially defraud them of money and property.

88. Due to not having any oversight or looking into Gibson's claims. Simmons and other officers of the court were successful in harming the Parks and Gibson family and taking property and inheritance owed to Mrs. Gibson, an heir to the estate. Bennie Gibson was never a threat to Simmons, but Simmons and others were and have continued to be a threat to the Gibson and Parks family.

89. Bennie Gibson was only trying to protect his family and his mother-in-law. Bennie Gibson and Frances Gibson have a love story that many people cannot claim and that Bennie

and Frances have been best friends and partners since kindergarten. They are now 79 and almost 80 years old and have known and loved each other since they were 5 years old.

90. Mr. Gibson's claims against Roe Simmons, the personal representative Dannie Lenox and other officers of the court have been proven. All of the orders, if not most of the orders in the probate case, were vacated on July 31, 2020, due to fraudulent acts committed by Roe Simmons, Dannie Lenox (and other heirs) and other court officers.

91. Due to the actions of Defendants of their continued harassment and intimidation tactics Defendants have continually stood in the way of the Parks/Gibson family to get justice. Plaintiffs Parks/Gibson have tirelessly tried to get state and county agencies to investigate and criminally investigate their claims against defendants, but they have been turned away to fight this civilly leaving them subject to continued harassment and abuse of power. Bennie Gibson and his family were set up for harm and abuse and all they were doing was trying to get what should have been a simple probate case to do as according to the law.

## FRANCES GIBSON

92. Plaintiff Frances Gibson, a daughter, wife, and mother who has been thrust into an unyielding battle for justice, dignity, and the rightful inheritance left by her mother, Ceola M. Lenox. This is not merely a legal dispute; it is a poignant narrative of a family's struggle against systemic corruption, deceit, and the erosion of their civil liberties.\

93. Frances Gibson's journey through this legal labyrinth began with the untimely passing of her mother, Ceola M. Lenox, which set the stage for a series of events that would profoundly

impact on her life and that of her family. Amidst her grief, Mrs. Gibson found herself embroiled in a contentious probate case, further complicated by fraudulent activities perpetrated by her own siblings and exacerbated by the actions of those in positions of legal authority who were supposed to protect her rights.

94.     The heart of Mrs. Gibson's' ordeal lies in the egregious misconduct of former Judge Timothy Henderson and all the defendants, who, through an ex parte communication with Roe Simmons, the attorney representing the estate, directed the drafting of a report by Defendant Melissa Abernathy in Defendant Oklahoma County that led to unwarranted charges against her husband, Bennie Gibson. This act of judicial overreach was not only unethical but also a clear violation of the family's rights and spousal privileges, demonstrating a blatant misuse of power intended to intimidate and retaliate against those daring to expose the corruption within the Oklahoma legal system.

95.     Throughout this harrowing journey, Mrs. Gibson has been a pillar of strength for her family, particularly her daughter, Tonya Gibson, and her husband, Bennie. Despite her declining health, exacerbated by the immense stress and emotional toll of the ongoing legal battles, Mrs. Gibson has remained steadfast in her pursuit of justice. Her resilience, however, has been severely tested by witnessing the unjust targeting of her husband by corrupt officials involved in a fraudulent RICO scheme, leading to a warrant for his arrest that has cast a shadow of fear over the entire family and loss of enjoyment they once shared as a family.

96.     The implications of these actions extend far beyond the immediate legal challenges faced by the Parks & Gibson family. They represent a fundamental breach of trust in the

institutions meant to uphold justice and protect the rights of individuals. The warrant issued against Mr. Gibson, based on unfounded allegations, has not only deprived the family of their freedom to travel and pay respect to their ancestors in Oklahoma but has also served as a constant reminder of the injustices they have endured.

**Conspiracy Against Rights (18 U.S.C. § 241)**

97. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

98. This statute makes it unlawful for two or more persons to conspire to injure, threaten or intimidate a person in any state, territory, or district in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or the laws of the United States.

99. Defendants, including Roe Simmons, Melissa Abernathy, and other unnamed co-conspirators, knowingly and willfully conspired to interfere with Plaintiffs' federally protected rights, including the right to due process and equal protection under the law, as guaranteed by the Constitution and federal statutes.

100. This conspiracy involved actions aimed at depriving Plaintiffs of their legal rights through fraudulent activities within the probate process, manipulation of judicial proceedings, and retaliatory legal actions, including the unlawful sealing of case records and the fabrication of criminal charges against Plaintiff Bennie Gibson.

101. Defendants' actions included threats, harassment, and other means intended to intimidate Plaintiffs, directly impacting their ability to assert their rights and seek redress for grievances in violation of 18 U.S.C. § 241.

102. As a direct and proximate result of Defendants' conspiracy, Plaintiffs have suffered significant damages including emotional distress, financial loss, and deprivation of their constitutional rights.

103. Plaintiffs seek an injunction against Defendants to prevent further violations, declaratory relief affirming the violation of their rights, and compensatory and punitive damages for the harm suffered due to Defendants' actions.

**Plaintiff, Nyanza Cook**

104. The harm to Ms. Cook is ongoing due to a combination of emotional distress, legal and financial strain, and serious concerns for her son's safety and well-being. These factors are compounded by retaliatory actions of defendants, which have not only intensified the family's hardship but also raise significant legal and constitutional issues.

105. Ms. Cook's continued efforts to advocate for her son by filing grievances reporting abuse, harm, and safety concerns on his behalf have led to retaliation against him. This situation raises several legal issues and potential violations of law.

106. On March 20, 2023, Ms. Cook was contacted by a fellow inmate at the prison who expressed concerns about her son's mistreatment. The inmate urged Ms. Cook to contact the prison immediately, as her son had been assaulted and was being mistreated by prison guards.

This call resulted in Ms. Cook filing a formal complaint with Christe Quick, the Acting Warden of Oklahoma State Penitentiary, and sent copies to Representative JJ Humphrey and the Office of the Inspector General.

107.    This complaint was prompted by her son's brutal assault by gang members, which resulted in severe injuries, including staples in his head and a broken wrist. Following the assault, he was placed in solitary confinement, purportedly for his own protection. This placement denied him access to programs, privileges, education, and work opportunities.

108.    Before the assault, her son had been classified as a "medium" security risk. However, he was later transferred to a maximum-security level, which not only disregarded the appropriate classification based on the final disposition of his case but also placed him in a cell lacking the necessary elements for safe and suitable housing. His sentence did not remand him to a maximum-security level or life imprisonment but instead stipulated placement at either a "minimum" or "medium" security level. Included with this formal complaint was an open records request for documentation and information, to which Ms. Cook has yet to receive a response.

109.    On April 8, 2023, Ms. Cook submitted an additional formal complaint in response to retaliatory actions taken against her son following her initial grievance. Shortly after the penitentiary received Ms. Cook's grievances, her son was approached by an Assistant District Attorney from Pittsburg County's DA Office and an officer from the Office of Inspector General. During this encounter, they referenced Ms. Cook's complaints and labeled him a

troublemaker because of her advocacy. Feeling threatened, her son informed Ms. Cook that if she continued to file complaints, he would likely face further retaliatory actions.

110.    On June 8, 2023, the Pittsburg County District Attorney's Office filed multiple charges against Ms. Cook's son for possession of a cell phone or electronic device in a penal institution, allegedly related to incidents from nearly two years earlier. The case(s) was eventually dismissed by the Honorable Mike Hogan. However, before the trial, the District Attorney's Office withheld exculpatory evidence, further complicating the proceedings.

111.    On December 17, 2024, Ms. Cook submitted a formal complaint to Warden Randy Harding, of Dick Conner Correctional Center requesting an investigation into the abuse and mistreatment of her son by a correctional officer.

112.    On December 21, 2024, Ms. Cook was contacted once again by a third party with concerns about her son being assaulted and mistreated. Ms. Cook once again promptly contacted the prison, as they consistently fail to notify her when her son is/was admitted to or taken to medical care, leaving her solely reliant on third-party individuals who express concern for her son's well-being.

113.    During Ms. Cook's initial call, Officer Taylor denied that her son had been taken to medical or involved in any altercation. She claimed that Ms. Cook's son had voluntarily approached a correctional officer to request a transfer to a secure location due to safety concerns.

114. Ms. Cook was denied the opportunity to speak with her son to confirm his safety and well-being. However, on December 23, 2024, she spoke with Lindsey, who confirmed that her son had been treated by medical staff on December 21, 2024, with notes documenting an assault by other inmates. This directly contradicted the information provided by correctional officers, underscoring Ms. Cook's determination to uncover the truth and seek justice.

115. In addition to the above ongoing, the events described within [Exhibit 1] have taken an immense toll on Ms. Cook's personal health, both emotionally and physically, as the strain of fighting for her family weighs heavily on her well-being.

**PURSUANT TO GOVERNMENT TORT CLAIMS ACT (collectively "GTCA")**

116. On February 25, 2022, Plaintiffs Ms. Parks, Mr. Gibson and Mrs. Gibson filed with the Office of the Oklahoma Attorney General a claim under the GTCA which was denied on May 27, 2022, denial letter dated May 31, 2022. [Exhibit 2]

117. As stated in the letter, Pursuant to 51 O.S. § 157 (A) a claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within 90 days, unless the state or political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period. Plaintiff Parks and Plaintiffs Gibsons was denied by Operation of the Law as of May 27, 2022, due to the expiration of ninety days from February 25, 2022. The date on which the 90 days began.

118.    As stated in the letter, Pursuant to 51 O.S. § 157 (B) no action for any cause arising under the Governmental Tort Claim Act (GTCA) shall be maintained unless valid notice has been given and the action commenced within one hundred eighty (180) after the denial of the claim. 180 days will expire on November 22, 2022. Plaintiffs Ms. Parks, Mr. Gibson and Mrs. Gibson all complied with the rules of GTCA by filing this complaint on November 22, 2022.

119.    **Failure of the Attorney General Investigate:** Plaintiff Tonya Parks recorded conversations with Kindanne ("Kindy") Jones and Julie Corley [Doc. 125, 125-1 and Doc. 126] from the Attorney General's office, who supervises Defendant's counsel, Stephanie Lawson. Despite the seriousness of Parks' allegations of public corruption, both Jones and Corley dismissed her concerns, advising her to file a lawsuit instead of pursuing an administrative investigation. This response reflects the Attorney General's office shifting the burden of justice onto Parks.

120.    The Attorney General's office had a duty to investigate allegations of corruption and misconduct raised by the Parks and Gibson families. Despite the severity of the claims, including judicial corruption and constitutional violations, no substantive investigation was conducted, as confirmed by recorded conversations and a policy of not investigating judges unless litigation was filed.

121.    [Exhibit 9 - Doc 143 Exhibit 2] A recorded conversation with Attorney Kindanne ("Kindy") Jones on November 4, 2022, in which she advised Plaintiff Parks to file a lawsuit concerning the claims outlined in this complaint.

122. [Exhibit 10 - Doc 126 Exhibit 1] A recorded conversation with Attorney General representative Julie Corley on October 28, 2022, in which she informed Plaintiff Parks that she needed to file a lawsuit regarding the claims outlined in this complaint. Corley emphasized that this was the only way the Attorney General's office could address the plaintiffs' allegations, which include, but are not limited to, public corruption.

123. Three exceptions to Eleventh Amendment immunity exist: (1) a state may consent to a suit in federal court; (2) Congress may abrogate a state's sovereign immunity legislatively; and (3) under Ex parte Young, 209 U.S. 123 (1908), a plaintiff may seek prospective equitable relief against a state official for ongoing violation of federal law.

124. Plaintiffs Ms. Parks, Mr. Gibson and Mrs. Gibson can claim 2 out of the 3.

125. Due to them complying with the GTCA and having a denied their claim, defendants have waived their right to be sued, and Plaintiffs filed this case timely according to the letter and the laws of the state.

126. Plaintiff Parks and Plaintiffs Gibson's allegations of constitutional rights violation and other violations are and have been ongoing causing them to lose property and be deprived of due process, enjoyments of life and liberties.

127. These ongoing issues and deprivation have caused continued mental and physical anguish and financial losses.

## STANDARD OF REVIEW

128.    The claims presented invoke constitutional protections where the standard of review for a motion to dismiss requires the Court to accept all factual allegations as true and construe the complaint in the light most favorable to Plaintiffs. The claims for relief must plausibly suggest entitlement to relief, a standard met by the detailed allegations of misconduct and constitutional violations described herein.

## SUBSTANTIVE CLAIMS UNDER FEDERAL LAW

### Count I: Violation of First Amendment Rights

(Against All Defendants)

129.    Defendants engaged in a pattern of retaliation against Plaintiffs for their protected speech, violating their First Amendment rights. Defendants retaliated against Plaintiffs for exercising their rights to free speech by reporting judicial corruption, which is protected under the First Amendment.

### Count II: Violation of Fourth Amendment Rights

(Against All Defendants)

130.    Defendants conducted and facilitated unlawful searches and seizures against Plaintiffs, breaching their Fourth Amendment protections. Defendants unlawfully detained Plaintiffs

conducted unreasonable searches and seizures, and orchestrated false arrests without probable cause.

**Count III: Violation of Fifth and Fourteenth Amendment Rights**

(Against All Defendants)

131. Defendants deprived Plaintiffs of property without due process and equal protection under the law, contravening the Fifth and Fourteenth Amendments. Defendants engaged in actions that constituted a deprivation of due process and rights to a fair trial and legal proceedings. Defendants conspired to deny Plaintiffs equal protection under the law and due process, including discriminatory treatment and manipulation of legal processes.

**Count IV: Breach of Fiduciary Duty**

(Specifically, Against Chicago Title and Associated Defendants)

132. Defendants, through their control over probate processes, breached fiduciary duties owed to Frances Gibson, significantly harming her financial interests. Defendants, including Chicago Title Oklahoma, breached their fiduciary duties through financial misconduct and mismanagement of estate assets.

**Count V: Conspiracy to Violate Civil Rights**

(Specifically, All Defendants)

133. Defendant Simmons conspired with other Defendants to deprive Plaintiffs of their constitutional rights through acts of judicial corruption, including sealing court records and manipulating legal proceedings to benefit financially at the expense of Plaintiffs.

134. Defendants, acting in concert, engaged in a conspiracy to deny Plaintiffs their rights secured by the Constitution and laws of the United States.

135. Defendants knowingly and willfully agreed to commit acts of intimidation and threats against Plaintiffs with the specific intent to prevent Plaintiffs from freely exercising and enjoying rights and privileges secured to them by the Constitution and laws of the United States, including but not limited to the right to property and to be free from deprivation of property without due process of law.

136. As a direct and proximate result of Defendants' conspiratorial actions, Plaintiffs have suffered significant harm, including emotional distress, financial loss, and the deprivation of their constitutional rights.

137. Defendants' actions were intentional, willful, and malicious and were done for the purpose of depriving Plaintiffs of equal protection and privileges under the laws.

138. Plaintiffs seek relief in the form of compensatory and punitive damages, declaratory relief, and injunctive relief to prevent further violations of their rights, as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**Count VI: Abuse of Process and Malicious Prosecution**

(Associated Defendants)

139. Defendants Simmons, Henderson, Abernathy and Prater abused legal processes and was complicit in malicious prosecution, particularly in orchestrating wrongful criminal charges against Bennie Gibson, with the intent to intimidate and retaliate against Plaintiffs for their efforts to expose and rectify the corruption within the Oklahoma legal system

**Count VII: Elder Abuse**

(Specific to Bennie and Frances Gibson Against All Applicable Defendants)

**(Violations of Federal Law Under the Elder Justice Act of 2010 and The Older Americans Act Reauthorized In 2020)**

140. Defendants' actions constitute elder abuse under the Elder Justice Act by financially and emotionally exploiting elderly Plaintiffs.

141. **Individual Liability and Relevant Constitutional Violations Concerning Plaintiff, Bennie Gibson**: The defendants' actions against Bennie Gibson, as detailed in the provided references, show violations under the Elder Justice Act (EJA) of 2010 and the Older Americans Act (OAA), reauthorized in 2020, in the following ways:

A. **Retaliation for Exercising Free Speech:** Mr. Gibson exercised his right to free speech by reporting judicial corruption and malfeasance associated with his wife's probate case at the Defendant Oklahoma County Courthouse. Instead of investigating these allegations, the

defendants conspired to retaliate against him, crafting a questionable criminal "harassment" charge to punish and intimidate him. This retaliation, particularly in light of Mr. Gibson's status as an elderly individual, exemplifies a form of abuse or exploitation that the Elder Justice Act (EJA) and the Older Americans Act (OAA) seek to prevent.

B.    **False and Manipulated Charges:** The orchestrated, one-sided charges against Mr. Gibson and the issuance of false probable cause affidavits severely affected his liberty and financial well-being. The defendants' actions resulted in misdemeanor charges filed without a proper investigation or legitimate basis. This misuse of the legal system to target an elderly individual for exposing corruption exemplifies the types of abuse the Elder Justice Act (EJA) and the Older Americans Act (OAA) aim to prevent, as it directly undermines the victim's financial security and health through significant legal and emotional stress.

C.    **Interstate Retaliation and Harassment:** The defendants' attempts to send false documents and communications from Oklahoma to Texas in order to entrap Mr. Gibson for a wrongful arrest exemplify a form of financial and emotional exploitation. These actions were designed not only to intimidate him but also to impose financial burdens, including potential legal fees, and to inflict the emotional distress that comes with facing criminal charges. The interstate nature of these actions highlights the seriousness of the retaliation and its detrimental effects on Mr. Gibson's well-being, echoing the concerns raised by the Elder Justice Act (EJA) and the Older Americans Act (OAA).

D.    **Violation of Civil Rights and Due Process:** The defendants' conspiracy to violate Mr. Gibson's constitutional and human rights—including First Amendment retaliation, Fourth

Amendment violations through false probable cause affidavits, and Fifth Amendment due process violations in sham investigations—significantly affects his welfare as an elderly individual. The stress, potential financial losses, and encroachments on his liberties resulting from these violations align with the very issues the Elder Justice Act (EJA) and the Older Americans Act (OAA) seek to address for older Americans.

142.    Defendants' actions against Bennie Gibson—including retaliation for exercising his free speech, false criminal charges, interstate harassment, and civil rights violations—are in direct violation of the protections afforded to elderly individuals under federal law, particularly the Elder Justice Act of 2010 and the Older Americans Act reauthorized in 2020. These acts are designed to safeguard the financial and health welfare of older adults and to prevent financial exploitation and abuse, all of which are evident in the actions taken against Mr. Gibson.

143.    **Individual Liability and Relevant Constitutional Violations Concerning Plaintiff, Frances Gibson**: The defendants' actions against Frances Gibson, as detailed in the provided references, show violations under the Elder Justice Act (EJA) of 2010 and the Older Americans Act (OAA), reauthorized in 2020, in the following ways:

A.    **Financial Exploitation and Property Taking**: Frances Gibson asserts that the defendants conspired to retaliate against her by orchestrating the fraudulent sale of her deceased mother's house at a significantly undervalued price, all without court approval. This action resulted in her losing her rightful inheritance without fair compensation, constituting financial exploitation and abuse that the Elder Justice Act (EJA) and the Older Americans Act (OAA) seek to prevent. The involvement of Chicago Title in filing false documents and providing

financial backing for this sham sale further implicates the defendants in undermining the financial well-being of an elderly individual.

B. **Retaliation and Harassment**: The defendants' pattern of retaliation and harassment involves initiating sham investigations, abusing their positions within the courthouse, and collaborating with the District Attorney to fabricate charges against her husband for activities protected by the First Amendment. These actions not only violate Frances Gibson's civil rights but also exemplify the type of abuse that the Elder Justice Act (EJA) and the Older Americans Act (OAA) aim to prevent, especially given the considerable stress and emotional distress experienced by her as an elderly individual.

C. **Intimidation and Restriction of Liberty**: The defendants' actions that led to Frances Gibson being held at bay in the courthouse law library under threat of force, and intimidated not to expose the conspiracy to take probate property, further exemplify the violation of her rights under the EJA and OAA. This restriction of her liberty, as a result of policies directing sheriff deputies, and the broader conspiracy to violate her civil rights, directly contribute to the financial exploitation and abuse the EJA and OAA are designed to prevent.

144.These actions illustrate the multifaceted nature of the violations against Frances Gibson under the Elder Justice Act of 2010 and the Older Americans Act reauthorized in 2020, highlighting both direct and indirect impacts on her financial and health welfare, and the broader implications of a civil conspiracy to undermine those protections.

## CLOSING STATEMENT

145.The Plaintiffs respectfully come before this Court seeking justice after exhausting every reasonable avenue available to voice their concerns about the violations they have suffered. Each Plaintiff has made repeated, good-faith efforts to address their concerns and the grievances presented in this case, filing numerous complaints with the appropriate agencies and appealing to various government offices, including the Governor, the Attorney General, the Oklahoma Courthouse, the District Attorney's Office, Sheriff Departments, Police Departments, OSBI, FBI, the Department of Civil Rights, and members of all three branches of the United States Government—legislative, executive, and judicial [Doc.11-2].

146.Representative J.J. Humphrey, *Corruption and Human Rights Abuse at Oklahoma County Courthouse Requiring an Immediate Special Investigation*, Volume II, Report for Estate of Ceola Lenox, November 12, 2022, available at https://justice2forall.com/digital-book/volume-ii-report-for-estate-of-ceola-lenox/

147. Additionally, Plaintiffs have reached out to agencies responsible for overseeing judicial and legal conduct, including the Oklahoma Bar Association (OBA) and The Oklahoma Council on Judicial Complaints. Yet, despite these extensive efforts, they were met with denials, sham investigations, a lack of response, or were deceived into believing due process would be afforded. Each attempt to seek redress was either ignored or improperly handled, denying them of their constitutional rights.

148.Further complicating their pursuit of justice, Plaintiffs recently discovered that their previous legal counsel failed to file key recordings and other critical evidence that would have supported claims and demonstrated the facts of the case. This failure on the part of their former

attorney is yet another blow to their quest for truth, forcing them to continue this uphill battle against a system that has consistently denied them fairness and transparency. At every turn, Plaintiffs have been left to fight for truth and justice on their own.

149.Plaintiffs now turn to this Court as the last recourse, requesting a fair and thorough resolution of their claims. They ask that justice be served for the violations of their rights, which have caused not only emotional and financial harm but have shaken their faith in the very institutions meant to protect them. May this Court grant the relief sought and ensure that the rights of Plaintiffs are upheld, setting a precedent for fairness and accountability in the face of systemic injustices.

## DEMAND FOR RELIEF

150.Based on the above, the Plaintiffs request the following relief:

**151.Seeking Injunctive Relief**: Plaintiffs request a court order to prevent further retaliatory actions by the involved parties, aiming to halt ongoing violations of Plaintiffs and their family's constitutional rights.

**152.Pursuing Declaratory Relief**: Plaintiffs seek a declaratory judgment from the court to have the actions of the involved parties declared unconstitutional.

**153.Injunctive Relief Sought:** Plaintiffs seek injunctive relief *pendent lite* to avoid spoliation of evidence during the case, from false prosecution, and harassment. Plaintiffs can prove they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def Council,* 555 U.S. 7, 20 (2008).

**154.Pleading for Compensatory and Punitive Damages**: Plaintiffs seek *compensatory damages* for emotional distress, mental anguish, reputational harm, and the suffering incurred due to violations of their constitutional rights, including the First Amendment's protection of free speech, the Fourth Amendment's safeguard against unreasonable searches and seizures, the Fifth Amendment's due process protections and prohibition against self-incrimination, and the Fourteenth Amendment's guarantees of equal protection under the law and due process.

155.Additionally, Plaintiffs request *punitive damages* to address the malice, willfulness, or reckless indifference displayed by the defendants. These punitive and exemplary damages are essential to deter the state of Oklahoma from continuing to harm citizens who expose corruption.

**156.Malicious Prosecution and Abuse of Power Claims**: Plaintiffs seek relief for claims specifically addressing malicious prosecution and abuse of power, including the directed filing of a misdemeanor against Bennie Gibson and the misuse of judicial power for retaliatory purposes.

**157.Bivens Action**: Although typically applied to federal officers, a Bivens action allows for lawsuits against individuals for constitutional violations. Given the unique circumstances and the involvement of state actors, Plaintiffs seek a Bivens-like approach against state officials for direct constitutional infringements.

**158.Request for Special Master**: Plaintiffs request the appointment of a Special Master to investigate communications between defendants and their counsel, as well as between

defendants and other parties, under the crime-fraud exception to privilege. This request is part of their effort to uncover and prove the wrongful acts committed by the defendants.

**159.Additional Request for Relief**: Plaintiffs respectfully urge the court to dismiss the warrant and charges against Mr. Gibson, arguing that they are founded on false information and are part of a retaliatory scheme aimed at him for exercising his constitutional rights. As a Vietnam veteran and an elderly individual, Mr. Gibson poses no threat to anyone. His concerns about judicial corruption, along with the distress experienced by his elderly wife and deceased mother, are protected by the First Amendment.[1]

**160.Filing for Damages for Constitutional Violations**: Plaintiffs seek to address civil rights violations under 42 U.S.C. § 1983, which protects rights guaranteed by the Constitution or federal law from infringement by individuals acting under state authority. This action aims to confront the coordinated retaliation, wrongful investigations, arrests, prosecutions without due process, and other civil rights violations that Plaintiffs and their family have endured.

161. **Supplemental Jurisdiction for State Law Claims**: Plaintiffs are invoking supplemental jurisdiction to include state law claims related to fraud, embezzlement, and other misconduct since these claims derive from a common nucleus of operative fact.

**162.Award of Attorney Fees and Cost:** Plaintiffs request the Court award reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**163.Actual Damages Collectively Claim:** Actual damages collectively within the State of Oklahoma's AIG policy (35,000,000 dollars aggregate with a $7,500,000 dollar sublimit) and excess loss policy ($15,000,000.00) for each Plaintiff.

**164.Any Other Relief:** Plaintiffs request any additional relief that the Court finds just and appropriate based on the facts that may emerge during discovery and in accordance with applicable law.

**JURY DEMAND**

165.Plaintiffs demand a trial by jury on all triable aspects of this case.

**DATED:** January 3, 2025

**Respectfully submitted,**

**Tonya Parks**
**1401 Bristlewood Dr**
**Mckinney, Tx 75072**
**214-980-8816**
justicetooforall@gmail.com
***Plaintiff***
***Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson***

**Bennie Gibson**
**7200 Old Mill Run**
**Fort Worth, Tx 76133**
**214-980-8816**
justicetooforall@gmail.com
***Plaintiff***
***Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson***

PLAINTIFFS' TONYA PARKS, BENNIE GIBSON, FRANCES GIBSON AND NYANZA COOK'S THIRD AMENDED COMPLAINT - 44
PAGE 44 OF 48

Frances Gibson
7200 Old Mill Run
Fort Worth, Tx 76133
214-980-8816
justicetooforall@gmail.com
*Plaintiff*

*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

Nyanza Cook
6503 Marble Falls Dr
Killeen, Tx 76542
714-794-4190
nyanzacook@gmail.com
*Plaintiff*

PLAINTIFFS' TONYA PARKS, BENNIE GIBSON, FRANCES GIBSON AND NYANZA COOK'S THIRD AMENDED COMPLAINT - 45

PAGE 45 OF 48

## CERTIFICATE OF SERVICE

I hereby certify that on this day of January 3, 2025, a true and correct copy of the foregoing Third Amended Complaint will be served on all counsel of record certified mail. This was mailed to the following:

| | |
|---|---|
| **Stefanie E. Lawson**<br>Attorney General's Ofc-NE<br>21 STREET-OKC<br>313 NE 21st St<br>Oklahoma City, OK 73105<br>**Telephone:** 405-521-4274<br>Fax: 405-521-4518<br>Email: stefanie.lawson@oag.ok.gov | **Carri A. Remillard**<br>District Attorney's Ofc-OKC<br>320 Robert S Kerr Ave<br>Suite 505<br>Oklahoma City, OK 73102<br>**Telephone:** 405-713-1600<br>Fax: 405-713-1749<br>Email: carri.remillard@oklahomacounty.org |
| **Rodney J. Heggy**<br>OK County DA - Civil Division<br>Leadership Square<br>211 N. Robinson Suite 700 N<br>Oklahoma City, OK 73102<br>**Telephone:** 405-713-1600<br>Fax: 405-713-1567<br>Email: rod.heggy@oklahomacounty.org | **Lexie P. Norwood, OBA #31414**<br>Assistant Attorney General<br>Oklahoma Attorney General's Office<br>313 NE 21st St.<br>Oklahoma City, OK 73105<br>**Telephone:** 405-521-3921<br>Fax: 405-521-4518<br>Email: lexie.norwood@oag.ok.gov |
| **Alex Bednar**<br>2802 Cold Brook<br>Edmond, OK 73003<br>**Telephone:** 405-420-9030<br>Email: bednarconsult@gmail.com<br>Pro se for Alex Bednar | |

**Respectfully submitted,**

**Tonya Parks**
**1401 Bristlewood Dr**
**Mckinney, Tx 75072**
**214-980-8816**
justicetooforall@gmail.com
***Plaintiff***
***Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson***

**Bennie Gibson**
**7200 Old Mill Run**
**Fort Worth, Tx 76133**
**214-980-8816**
justicetooforall@gmail.com
***Plaintiff***
***Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson***

**Frances Gibson**
**7200 Old Mill Run**
**Fort Worth, Tx 76133**
**214-980-8816**
justicetooforall@gmail.com
***Plaintiff***
***Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson***

**Nyanza Cook**
**6503 Marble Falls Dr**
**Killeen, Tx 76542**
**714-794-4190**
nyanzacook@gmail.com
***Plaintiff***

PLAINTIFFS' TONYA PARKS, BENNIE GIBSON, FRANCES GIBSON AND NYANZA COOK'S THIRD AMENDED COMPLAINT - 47

PAGE 47 OF 48

# Exhibit 1

IN THE UNITED DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

FILED
DEC 09 2024
JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY ______, DEPUTY

**TONYA PARKS**, individually;
**BENNIE GIBSON**, individually;
**FRANCES GIBSON**, individually;
**NYANZA COOK**, individually;
**ALEXANDER BEDNAR**, individually
**Plaintiffs,**

V.

Case *No. 5:23-cv-00041- R*

**CHICAGO TITLE OKLAHOMA CO**, a Oklahoma Insurance Title Company;
**TIMOTHY HENDERSON**, a removed Oklahoma Judge accused of crimes;
**DAVID PRATER**, Oklahoma County District Attorney in his individual and Official capacity;
**MIKE HUNTER**, Resigned Oklahoma State Attorney General, individually and officially;
**MELISSA ABERNATHY**, a Sheriff Deputy;
**OKLAHOMA COUNTY**;
**ROE SIMMONS**, a attorney;
**JANE DOE**;
**JOHN DOE**
**Defendants.**

Jury Trial Demanded

**PLAINTIFFS' TONYA PARKS, BENNIE GIBSON, FRANCES GIBSON AND NYANZA COOK'S THIRD AMENDED COMPLAINT**

**COME NOW**, the Plaintiffs, Tonya Parks, Bennie Gibson, Frances Gibson, and Nyanza Cook only and for their Complaint against the above-named Defendants, state and allege as follows: This Amended Complaint complies with [Doc. 112].

**PARTIES**

1. **Plaintiffs:** Tonya Parks, Bennie Gibson, Frances Gibson, and Nyanza Cook, are individuals residing in the State of Texas.

2. **Defendants:** Chicago Title Oklahoma a title insurance company. Timothy Henderson is a former judge in Oklahoma County. David Prater is the former District Attorney of Oklahoma County, serving in both his individual and official capacities. Mike Hunter is the former State Attorney General of Oklahoma. Melissa Abernathy a sheriff deputy in Oklahoma County. Oklahoma County is a governmental entity in the State of Oklahoma, Roe Simmons an attorney in Oklahoma, and Jane and John Doe potential co-conspirers and/or witnesses.

**PARTIES INDIVIDIUALLY EXPLAINED IN DETAIL**

3. **Plaintiff Tonya Parks** ("Ms. Parks" or "Parks"): is an individual and a citizen of the State of Texas.

4. **Plaintiff Bennie Gibson** ("Mr. Gibson"): is an individual and a citizen of the State of Texas.

5. **Plaintiff Frances Gibson** ("Mrs. Gibson"): is an individual and a citizen of the State of Texas.

6. **Plaintiff Nyanza Cook** ("Ms. Cook" or "Cook"): is an individual and a citizen of the State of Texas.

7. **Defendant Chicago Title Oklahoma Co.** ("Chicago Title"): Is an Oklahoma escrow Company. Chicago Title is being sued because Chicago Title, along with Henderson, Hunter, Prater, Abernathy, and others conspired to defraud the estate of Plaintiff Frances Gibson (mother) in Oklahoma County case PB-2016-721, committing several acts to further the scheme. These actions included filing false documents, providing funds for a sham property sale, retaliating against the Gibson-Parks family by sealing the case to block public and law enforcement scrutiny of the defendants' corrupt actions, and initiating or threatening false civil and criminal confinement

through the courts. Chicago Title's actions involve colluding and conspiring with others to help certain parties profit financially, while depriving Francis Gibson of her rightful inheritance.

8.     Further complicating the matter, Chicago Title is accused of aiding and abetting criminal conduct by officers of the court, contributing to a situation where Bennie Gibson, another family member, faced retaliation for attempting to expose and rectify the fraud. This retaliation manifested in the creation of a false warrant against Bennie Gibson, violating his constitutional rights and caused harm to the Gibson/Parks family. The lawsuit against Chicago Title and its conspirators highlights a complex web of deceit and manipulation, with significant implications for the integrity of the probate process and the rights of heirs to estate properties.

9.     The duties owed by a title company to a probate case involve ensuring compliance with legal and ethical standards, maintaining transparency and integrity in the sale process, and protecting the interests of the estate and its heirs.[1] These duties are critical in preventing fraud, ensuring fair treatment of heirs, and upholding the integrity of the probate process.

10.     **Defendant Judge Timothy Henderson** ("Henderson"): Timothy Henderson, a former Oklahoma County District Judge, resigned due to conduct involving moral turpitude that made him unfit to practice. This sexual relationship between the judge and the prosecutor lasted from April 2016 until the summer of 2018 and concluded before the trial in 2021, was determined by

---

[1]  Hope Lodes v. State of Oklahoma ex rel. Oklahoma Real Estate, 837 P.2d 925 (Okla. Civ. App. 1992). The Oklahoma Real Estate Commission suspended real estate broker Hope Lodes' license for two months. The suspension was due to Lodes' failure to disclose a higher offer before purchasing property directly from her client at the asking price, a violation of Title 59 O.S.[Supp. 1990] 858-312, paragraph 8, which sanctions conduct constituting "untrustworthy, improper, fraudulent, or dishonest dealings." Lodes appealed, challenging the constitutionality of the statute on the grounds of vagueness and the subjective application by the Commission. The District Court affirmed the Commission's decision, and the appellate court referenced *Lee v. State ex rel. Oklahoma Real Estate Commission*, 516 P.2d 1342 (Okla. 1973), to underscore the fiduciary duty of disclosure and good faith required of real estate brokers, affirming that breach of these duties constitutes the type of untrustworthy and improper dealings the act aims to protect the public against.

the appeals court to have violated Hashagen's due process rights.[2] He is at the center of this lawsuit due to allegations of unethical and illegal conduct, retaliation, and civil rights violations within the Oklahoma County Courthouse. The plaintiffs claim that Henderson and other public officials implemented a coordinated retaliation policy against them for reporting alleged corruption and abuse of power.

**11.** This retaliation took various forms, including wrongful investigations, arrests, and prosecutions without probable cause, leading to unreasonable searches and seizures, and the reclamation of property without due process, marking a pattern of civil rights violations since 2017. The lawsuit also highlights Henderson's alleged direction of state and county employees to engage in acts of retaliation, such as falsifying court documents and colluding to fabricate false probable cause affidavits and warrants, aimed at causing harm to the plaintiffs for their role in exposing corruption at the courthouse. Henderson's removal from the bench in March 2021 and the subsequent criminal investigation underscored the severity of the allegations against him, painting a disturbing picture of abuse of judicial power and significant personal and financial losses for the plaintiffs, including the loss of real property, financial losses, constitutional freedoms, human right violations, and, for one plaintiff, excessive bond money.

**12.** The plaintiffs' claims against Judge Henderson are predicated on the assertion that his involvement in their cases was not rooted in any legitimate judicial capacity or authority over their legal matters. Instead, his actions are characterized as retaliatory, driven by personal vendettas,

---

[2] *Hashagen v. State*, No. F-2021-203 (Okla. Crim. App. July 11, 2023), available at **https://oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=F-2021-203&cmid=129804.** In *Hashagen v. State*, No. F-2021-203 (Okla. Crim. App. July 11, 2023), the Oklahoma Court of Criminal Appeals overturned Robert Leon Hashagen III's conviction for first-degree murder due to a due process violation. The court found that former District Judge Timothy Henderson failed to disclose a sexual relationship with one of the prosecutors, which lasted from April 2016 until the summer of 2018, prior to the trial in 2021. The relationship compromised the integrity of the judicial process and violated Hashagen's constitutional rights.

and facilitated through improper use of his position to influence other public officials and processes against the plaintiffs. This situation raises serious concerns about the misuse of judicial power and the violation of the plaintiffs' rights, highlighting the need for judicial accountability and the protection of individuals' rights against unlawful governmental actions.

13. **Defendant Mike Hunter** ("Hunter): Mike Hunter, previously serving as Oklahoma's Attorney General, held a position of significant responsibility, tasked with enforcing laws and protecting the public interest. In this role, Hunter was expected to diligently investigate and address allegations of various illegal activities, including fraud and embezzlement, particularly when such allegations implicated the misuse of government offices and political influence. The plaintiffs engaged with Hunter's office, providing evidence to support their allegations involving fraud among other criminal activities related to public corruption.

14. The lawsuit against Hunter stems from the plaintiffs' belief that there was a failure on his part, or by his office, to adequately investigate and address complaints. This perceived failure includes not thoroughly investigating allegations of real estate and mortgage fraud, embezzlement, elderly abuse, and other serious crimes. The plaintiffs argue that this lack of action by Hunter's office allowed wrongful actions to go unpunished and continue, thereby failing to protect the interests of the plaintiffs and violated their rights to due process and to seek redress for grievances. These breaches of duties are inherent to the role of an Attorney General, which includes the impartial enforcement of laws and the protection of citizens' rights.[3]

[3] **Oklahoma Statutes Title 74, Section 18b**: *74 O.S. § 18b (2023)*., **Oklahoma Statutes Title 21, Section 340**: *21 O.S. § 340 (2023)*., **United States Code Title 18, Section 1951**: *18 U.S.C. § 1951 (2023)*.
**United States Code Title 18, Section 1341**: *18 U.S.C. § 1341 (2023)*.
It is the duty of the Attorney General in Oklahoma to investigate public corruption, as outlined in state law. Furthermore, federal laws also address issues of public corruption and misconduct by public officials.

15. **Defendant Melissa Abernathy**, ("Sheriff Abernathy") or ("Abernathy"): Is a citizen of Oklahoma named as a defendant in this case. She breached her duty of care while acting under the color of state law and within the scope of her employment. Abernathy engaged in unconstitutional acts, including wrongful investigations and unlawful warrants, directed by former District Judge Timothy Henderson and District Attorney David Prater.

16. Abernathy executed orders outside Henderson's official capacity, leading to retaliatory actions against whistleblowers reporting judicial and public corruption.[4] Specifically, her involvement resulted in the wrongful activation of charges against Bennie Gibson, a plaintiff, based on improperly handled reports presented to the District Attorney. These actions are part of a coordinated policy of retaliation against individuals who reported judicial and public corruption, violating constitutional protections, spousal privileges, and due process. This lawsuit seeks to address the misuse of power and violations of the plaintiffs' constitutional rights by Abernathy and her co-defendants. [Doc. 125, 125-1, 125-2, 125-3, 125-4, 125-5, and Doc. 126],[5] [Exhibit 1 - Recording with Plaintiff Parks and Defendant Abernathy].[6]

---

[4] Federal and state whistleblower protections are comprehensively addressed within the legal framework of this document, reflecting the plaintiffs' rights under the First Amendment for retaliation by persons acting under color of state law, the Fourth Amendment's freedom from unreasonable searches and seizures, the Fifth Amendment's freedom to due process of law and prohibition of government taking property without compensation, and the Fourteenth Amendment's freedom from violation of rights that flow to the states. These protections are grounded in the principles established in *Davis v. Passman*, 442 U.S. 228, 242-43 (1979), and are further supported by the jurisdictional statutes under 28 U.S.C. § 1331, as well as the supplemental jurisdiction provisions for state claims that derive from a common nucleus of operative fact, as per 28 U.S.C. § 1367(a). Additionally, as whistleblowers, the plaintiffs have identified to authorities in Oklahoma numerous forged and false documents filed on OSCN, including Orders signed by Defendant Henderson, thus complaining about conduct that appears criminal, as highlighted in Carter County Case CF-2023-00321 (State v. Jason May).

[5] The previously filed Motion for Pretrial Conference by Plaintiffs Parks, Gibson, Gibson, and Cook [Doc 125] includes the following attachments: Exhibit 1 [Doc 125-1] is an audio recording from October 28, 2022, featuring a conversation between Julie Corley and Tonya Parks; Exhibit 2 [Doc 125-2] is an audio recording of a conversation between Defendant Abernathy's supervisor and Plaintiff Parks; and Exhibit 3 [Doc 125-3] is an audio recording of a discussion between Defendant's counsel Rod Heggy and Plaintiff Parks.

[6] Exhibit 1 is an audio recording dated June 6, 2019, which captures Defendant Melissa Abernathy acknowledging her presence in a civil courtroom where she was gathering information during testimony. This testimony involved

17. **Defendant Brett Slimp** - This defendant was brought by Alex Bednar and does not pertain to Plaintiffs Ms. Parks, Ms. Cooks, Ms. Gibson or Mr. Gibson.

18. **Defendant Oklahoma County**, ("Oklahoma County"): Oklahoma County, as a defendant in this case, encompasses key offices, including the County Clerk's Office, Sheriff's Office, and District Attorney's Office. The county has a duty to conduct its operations with transparency, fairness, and adherence to the law, which includes properly handling documents, ensuring impartial law enforcement, and prosecuting crimes without bias or retaliation.

19. Oklahoma County, including the County Clerk's Office, Sheriff's Office, and District Attorney's Office, is accused of breaching its duty to operate transparently and fairly. Plaintiffs allege a pattern of retaliation, harassment, and civil rights violations by county employees, including wrongful investigations and targeted prosecutions aimed at intimidating whistleblowers. The County Clerk's Office and Sheriff's Office are also accused of following unlawful orders from District Judge Henderson and District Attorney Prater, such as backdating documents and violating due process.

20. Furthermore, plaintiffs assert that their constitutional rights were violated due to policies within the District Attorney's office and Henderson's management of the courthouse. Allegations include politically motivated arrests, false criminal charges, and failures to properly investigate claims, resulting in significant harm to the plaintiffs. This lawsuit seeks to hold Oklahoma County

---

Frances Gibson, who was unaware that she was providing information while her husband, Bennie Gibson, was the subject of a covert investigation led by Abernathy. Frances Gibson was not informed that her statements, made in response to questions from attorney Roe Simmons, were being collected as part of an investigation that would later result in criminal charges against her husband. Abernathy's actions egregiously violated federal spousal privilege protections, reflecting a significant abuse of her authority and a breach of ethical standards by exploiting sensitive information obtained under misleading circumstances for investigative purposes. This recording highlights Abernathy's direct involvement in actions that compromised constitutional legal protections and threatened the rights of the Gibson family.

accountable for its failure to uphold legal and ethical standards, leading to retaliation, deprivation of rights, and loss of property or money.

21.    **Defendants Roe Simmons, Jane Doe and John Doe** ("Jane Doe") ("John Doe"): In the context provided, Jane Doe and John Doe are referred to as additional defendants, potentially encompassing a range of individuals such as court officers, judges, attorneys, state and county agencies, investigative bodies, and unnamed state employees. These individuals are implicated in actions or inactions that allegedly contributed to violations of the plaintiffs' rights. The duties breached by these co-conspirators and state agencies/employees include fiduciary duty and duty of care, legal and ethical obligations, and the duty to investigate and address wrongdoing. The violations of the plaintiffs' rights as alleged include fraud and misrepresentation, breach of fiduciary duty, and failure to investigate and prosecute wrongdoing, leading to financial harm and deprivation of justice for the plaintiffs.

22.    The inclusion of **Defendants Roe Simmons, Jane Doe and John Doe** in the complaint signifies an attempt to hold accountable those whose actions, whether through engagement in fraudulent activities, breach of fiduciary duties, or failure to uphold legal and ethical obligations, directly contributed to the violation of the plaintiffs' rights. This approach underscores the plaintiffs' effort to address and remedy the grievances stemming from a conspiracy against them, highlighting the broader implications of such actions on the integrity of legal and governmental institutions. The defendants' actions support a systemic issue within the involved agencies and personnel, necessitating their inclusion in the lawsuit to fully address the scope of the misconduct and its impact on the plaintiffs.

## JURISDICTION AND VENUE

23. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343 to protect and redress the deprivation of rights guaranteed by the First, Fourth, Fifth, and/or Fourteenth Amendments of the United States Constitution, as enforced by 42 U.S.C. § 1983. This statute ensures the protection of individuals' civil rights and provides remedies for the deprivation of those rights under color of law.

24. The Court also possesses original jurisdiction under 28 U.S.C. § 1331 to adjudicate controversies arising under the Constitution and laws of the United States, specifically the First, Fourth, Fifth, and/or Fourteenth Amendments, as enforced by 42 U.S.C. § 1983.

25. The actions complained of occurred in Oklahoma County, Oklahoma, making jurisdiction and venue appropriate under 28 U.S.C. § 116(c) and 1391(b).

26. When state and federal law claims "derive from a common nucleus of operative fact," the court should exercise supplemental jurisdiction over state claims. 28 U.S.C. § 1367(a). Section 1367(a) gives the court "broad grant of supplemental jurisdiction over other claims within the same case or controversy." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). State claims of breach of fiduciary duty against corporate defendants (by contract) and against public servant defendants (by law) are viable. OUJI 3d Ch. 26.

## LEGAL FRAMEWORK AND PRECEDENTS

27. **Stump v. Sparkman, 435 U.S. 349 (1978):** This case affirms the doctrine of judicial immunity but also delineates its limits, indicating that actions taken outside of judicial capacity or involving violations of constitutional rights may not be protected by immunity.

28. **Davis v. Passman, 442 U.S. 228 (1979) and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971):** These cases establish that federal officials

can be sued for damages in their individual capacities for constitutional violations, providing a pathway for overcoming immunity by focusing on violations of federal rights [Doc. 125, 125-4 and Doc. 126].

29.    **United States v. Ciavarella 2013, 3d Cir., 716 F.3d 705:** This case is a pivotal criminal proceeding against Mark Ciavarella, a former state judge in Luzerne County, Pennsylvania. Ciavarella was convicted by a jury in the Middle District of Pennsylvania of racketeering, honest services mail fraud, money laundering conspiracy, filing false tax returns, and several other related crimes. These charges stemmed from Ciavarella's involvement in the "Kids for Cash" scandal, where he and another judge, Michael Conahan, received over $2.8 million from the construction and operation of juvenile detention centers in exchange for imposing harsh sentences on juveniles. Ciavarella's conviction and the subsequent sentence of 336 months' imprisonment highlight the severe legal consequences of judicial corruption, especially when it compromises the rights and welfare of juveniles.

30.    **Clark v. Conahan 2010, M.D. Pa., 737 F. Supp. 2d 239:** This civil action was brought by plaintiffs Raul Clark, Bruce Clark, and Iraida Clark against Ciavarella, Conahan, and others involved in the scandal. The complaint detailed how Ciavarella and Conahan, in exchange for kickbacks, violated juveniles' constitutional rights by denying them impartial tribunals, the right to counsel, and pressuring them into guilty pleas without advising them of their rights. The case sheds light on the broader impact of the scandal on the lives of affected juveniles and their families, highlighting the systemic denial of constitutional rights in pursuit of financial gain.

31.    In the context of the "Kids for Cash" scandal, several key cases provide insight into the legal proceedings and outcomes related to this egregious abuse of judicial power. The cases of

*United States v. Ciavarella* and *Clark v. Conahan* are particularly relevant, as they directly address the criminal and civil legal actions taken against the judges involved in the scandal.

32. The Pennsylvania Supreme Court's response to the scandal, as described in the reference, further underscores the judiciary's commitment to rectifying the injustices perpetrated by Ciavarella and Conahan. Utilizing its King's Bench power, the court took unprecedented steps to provide remedies for the victims, including vacating judgments and ordering new trials in cases where the involvement of the corrupt judges tainted the proceedings.

33. These cases collectively illustrate the legal system's mechanisms for addressing and remedying the profound injustices suffered by the juveniles and their families affected by the "Kids for Cash" scandal. They serve as a stark reminder of the potential for abuse within the judicial system and the importance of maintaining ethical standards and accountability among judges.

34. *Judicial immunity is not absolute!* It does not extend to nonjudicial actions, i.e., actions not taken in the judge's judicial capacity, or to actions taken in the complete absence of all jurisdiction. This distinction is crucial in understanding the limits of judicial immunity and the scenarios in which it may be possible to hold a Judge accountable for their actions.

35. **Figueroa v. Blackburn 1999, D.N.J., 39 F. Supp. 2d 479**, the court reiterated that while judicial immunity is broad, it does not shield judges from liability for criminal acts committed outside their judicial function or for actions taken without any jurisdictional basis.

36. **Palowsky v. Campbell 2019, La., 285 So. 3d 466** highlighted that requiring a plaintiff to plead "malice or corruption" to overcome judicial immunity is outdated, emphasizing that the function of—not the motivation for—a judge's behavior is the touchstone for immunity. This case also noted that judicial immunity does not protect judges from civil liability for criminal acts committed outside the judicial function.

37. In *Palowsky v. Campbell*, the plaintiff, Stanley R. Palowsky III, alleged a complex scheme involving judicial and clerical staff aimed at defrauding him and his business. The allegations included intentional destruction of court documents, abuse of process, and a conspiracy to commit fraud, among other wrongful acts. The case highlights instances where judicial actions, or the lack thereof, were purportedly influenced by corrupt motives and personal relationships, rather than the impartial administration of justice.

38. The case details how Judge Jones, who was not presiding over the initial case in question, allegedly engaged in unethical ex parte communications to influence the outcome of a case to the benefit of certain defendants, demonstrating a clear abuse of judicial position for personal or financial gain. This action was argued to be outside the scope of judicial immunity because it was not an act within his judicial capacity but rather an administrative action with alleged corrupt motives.

39. Furthermore, the case discusses how the entire bench of the Fourth Judicial District Court (JDC) was requested to recuse themselves due to their apparent history of protecting a court employee, Allyson Campbell, despite numerous complaints and investigations into her conduct. This included allegations of document destruction and payroll fraud, suggesting a systemic issue within the court related to protecting internal interests over the fair administration of justice.

40. The court's decision to reverse a judgment that found Ms. Campbell absolutely immune for the intentional destruction of court documents underscores the principle that judicial immunity does not extend to actions outside of judicial functions or those taken in bad faith. <u>This decision aligns with the broader legal doctrine that while judicial immunity provides broad protection to judges from personal liability for their judicial actions, it does not shield them from accountability for actions that are nonjudicial in nature or taken in the complete absence of all jurisdiction.</u>

41. ***Palowsky v. Campbell* 2019, La., 285 So. 3d 466** serves as a significant case in understanding the limitations of judicial immunity, especially in scenarios involving corruption, collusion, and conspiracy for personal gain. It illustrates that the legal system has mechanisms to address and potentially rectify instances where judicial authority is misused, reinforcing the importance of judicial accountability and integrity.

42. **Bivens Actions**: While not directly overcoming judicial immunity, Bivens actions allow for lawsuits against federal officers for constitutional violations. Although typically applied to federal officers, the principle that individuals have a right to recover damages for constitutional violations by government officials could be analogously applied in arguing against the immunity of state judges in federal court, especially in cases involving clear constitutional rights violations.

43. While judicial immunity provides judges with broad protection against personal liability for their judicial actions, it is not insurmountable. Actions that are nonjudicial in nature or taken in the absence of all jurisdiction do not enjoy the shield of judicial immunity. These exceptions to the doctrine of judicial immunity are critical in ensuring that judges cannot exploit their position to engage in conduct that is clearly outside the bounds of their judicial duties.

44. Furthermore, the actions of the state, government, and other defendants outlined in this complaint represent a blatant abuse of power, a violation of due process, and a direct infringement of constitutional rights. While qualified immunity is intended to shield officials from liability for discretionary actions taken in good faith while performing their official duties, it does not extend to those who violate clearly established constitutional rights or act in bad faith.

45. **Sovereign immunity** is a legal doctrine that protects governments and their officials from being sued without their consent. It stems from the idea that the state or sovereign cannot commit a legal wrong and is immune from civil suits or criminal prosecution.

There are two main types of sovereign immunity:

*A.* **Absolute Sovereign Immunity**: This provides complete protection from lawsuits, generally for high-level government officials, such as heads of state and judges, when acting in their official capacity. In this form, the government or official cannot be sued under any circumstances unless the government explicitly waives immunity.

> "In the Plaintiffs' case, government officials explicitly waived their right to immunity by instructing the Plaintiffs to file a lawsuit in order for their claims to be investigated. The Plaintiffs were informed that the only way to initiate dialogue on the matter was through a federal lawsuit."

*B.* **Qualified Immunity**: This applies to lower-level officials, such as law enforcement officers, and protects them from liability only if their actions did not violate "clearly established" law. It is intended to protect officials from frivolous lawsuits while allowing for accountability when there is evidence of misconduct.

> "Plaintiffs assert that lower-level officials violated "clearly established" law and engaged in misconduct, including but not limited to violations of constitutional rights."

**46.** At both the state and federal levels, sovereign immunity can be waived under certain circumstances, such as when the government allows itself to be sued (e.g., the Federal Tort Claims Act in the U.S.) or when constitutional rights are violated. Courts also look for exceptions when government officials exceed or abuse their authority.

**THE LEGAL FRAMEWORK CONCERNING FIRST AMENDMENT PROTECTIONS AGAINST RETALIATORY ACTIONS BY GOVERNMENT OFFICIALS IN RESPONSE TO FREE SPEECH—PARTICULARLY IN A POLITICAL CONTEXT—OFFERS A CRUCIAL BASIS**

**FOR BENNIE GIBSON'S DEFENSE**

**47.** **Counterman v. Colorado 2023, U.S., 143 S. Ct. 2106:** The Supreme Court's decision in ***Counterman v. Colorado*** **(2023)** significantly aids Mr. Gibson's defense by emphasizing the

importance of a defendant's subjective understanding of their statements' threatening nature under the First Amendment. This landmark ruling clarified that for a statement to be considered a true threat, and thus outside the bounds of First Amendment protection, it is not sufficient to demonstrate that the statement was objectively threatening. Instead, there must be evidence that the defendant had a subjective understanding of the threatening nature of his statements, with recklessness being sufficient to meet this requirement. The Court held that the State must show the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence.

**48.** For Mr. Gibson, his statements to Roe Simmons were not meant as threats but rather as expressions of concern regarding crimes involving his mother-in-law's estate. The *Counterman* decision supports the argument that unless Mr. Gibson was recklessly indifferent to the impact of his words—meaning he understood there was a substantial risk his statements could be viewed as threatening and disregarded that risk—his speech should not be considered a true threat. This supports Mr. Gibson's claim that his statements were intended to inform Simmons of his misconduct, not to threaten harm.

**49.** Furthermore, the **Counterman** ruling highlights the requirement for the prosecution to prove a specific mental state of recklessness in true threat cases, which poses a significant challenge because Mr. Gibson's statements were not intended to be threatening. This case sets a modern and relevant legal precedent that reinforces First Amendment protections, especially when the speech is aimed at addressing public concerns rather than making violent threats.

**50.** In summary, *Counterman v. Colorado* (2023) offers a robust defense for Bennie by highlighting the critical role of the speaker's subjective intent and the standard of recklessness in determining whether speech constitutes a true threat. This precedent is crucial to Mr. Gibson's

case, as his statements, made without intent to threaten and in an effort to expose public corruption, fall under the protection of the First Amendment.

51. Mr. Gibson relies on these cases to assert that his statements were part of a protected First Amendment activity aimed at exposing alleged misconduct rather than constituting true threats against Simmons. These cases establish a legal precedent that safeguards individuals from retaliatory actions when their speech is driven by public interest concerns, even if it includes strong criticisms or allegations of criminal behavior. The focus on the speaker's intent and the context of the speech is essential in differentiating protected speech from actionable threats or harassment.

**FEDERAL AND STATE WHISTLEBLOWER PROTECTIONS**

52. For claims related to federal constitutional rights and the invocation of federal jurisdiction, including the Equal Protection component or Due Process Clause of the Fifth Amendment, and claims under the First Amendment for retaliation by persons acting under color of state law:

> "Plaintiffs claim their federal constitutional rights are invaded, so a cause of action 'may be implied directly' under the Equal Protection component or Due Process Clause of the Fifth Amendment, as established in *Davis v. Passman*, 442 U.S. 228, 242-43 (1979). Plaintiffs offer a well-pleaded complaint alleging a cognizable infringement on the First Amendment's freedom of speech for retaliation by persons acting under color of state law to weaponize the courts and law enforcement to violate Plaintiffs' civil rights."

53. Regarding the United States District Courts' original jurisdiction over civil actions arising under the Constitution, and the court's power to grant equitable and legal relief for constitutional violations:

> "United States District Courts have original jurisdiction over civil actions arising under the Constitution, as per 28 U.S.C. § 1331. This Court has the power to grant equitable and legal relief for constitutional violations under the same general statutory grant of authority in Section 1331, as demonstrated in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)".

54. For the exercise of supplemental jurisdiction over state claims when state and federal law claims derive from a common nucleus of operative fact:

"When state and federal law claims 'derive from a common nucleus of operative fact,' the court should exercise supplemental jurisdiction over state claims. 28 U.S.C. § 1367(a) gives the court 'broad grant of supplemental jurisdiction over other claims within the same case or controversy,' as clarified in *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005)".

55. Concerning the Oklahoma Governmental Tort Claims Act (OGTCA) and the exceptions to immunity if the state purchases insurance:

"No Plaintiff claims relief under the Oklahoma Governmental Tort Claims Act (OGTCA) for reasons including the exception that if a state entity chooses to take out an insurance policy, the insurance policy controls, as per 51 OS 158(C) and the fact that Oklahoma purchased an insurance policy with AIG, which covers civil rights, retaliation, harassment and constitutional rights violation, so that policy, not the OGTCA, controls".

56. On the equitable claim under *Ex Parte Young* for discovery and prospective injunctive relief of continued civil rights violations:

"Plaintiffs have a ripe equitable claim under *Ex Parte Young* for discovery and prospective injunctive relief of continued civil rights violations. This is supported by the understanding that federal courts can grant prospective injunctive relief 'against state officers who are violating, or planning to violate, federal law,' as established in *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326, 135 S.Ct. 1378, 191 L.Ed.2d 471 (2015)"

## FACTUAL BACKGROUND

- **Individual Plaintiff**

**Tonya Parks**

57. Plaintiffs Tonya Parks, Frances Gibson, and Bennie Gibson have endured significant distress following the death of Ceola Lenox, initiating a probate case plagued by fraud, embezzlement, and misconduct in the handling of the estate. The affidavit and documents detail these actions against them [Doc. 125, 125-4, 125-5 and Doc. 126].

58. Plaintiff Tonya Parks has been deeply engaged in defending her grandmother's estate, attempting to safeguard her mother's inheritance rights, and protecting her father's interests. Throughout this process, she has encountered harassment, intimidation, and attempted malicious

prosecution, orchestrated by court officers and other parties (Jane and John Doe(s) involved in the probate case and other matters that deprived her family of constitutional rights and protection. Despite her efforts to seek justice and protect her family's rights, Ms. Parks has faced substantial resistance, including the sealing of court records, the withholding of transcripts, and retaliatory legal actions designed to silence her and the Gibson family [Doc. 125, 125-4, 125-5 and Doc. 126].

59.    The probate case of Ceola M. Lenox [OSCN.NET - Oklahoma County PB-2016-721], as detailed in [Doc. 125, 125-4 and Doc. 126], highlights key legal actions and behind-the-scenes activities. Allegations include corruption, fraud, and retaliation conspired by former Judge Timothy Henderson, Oklahoma County, Chicago Title Oklahoma, Melissa Abernathy, and others, all accused of collusion and breaching fiduciary duties.

60.    **Key Events and Legal Violations by Each Defendant:**

    A.  **Judicial and Legal Misconduct**: Ms. Parks raised serious claims of judicial and legal misconduct, including fraud, embezzlement, and perjury, related to the handling of her grandmother's estate. These actions indicate a pattern of systemic abuse of power and corruption that has directly affected her and her family's rights and inheritance.

    B.  **Fraudulent Property Transactions:** The estate's property was involved in a series of unauthorized and fraudulent transactions. Despite a supposed public sale, the property was sold in a private transaction to multiple buyers, culminating in a sale significantly below its value. This sequence of transactions was not disclosed to the heirs, particularly Frances Gibson, and involved collusion between Simmons, Defendant Jan and John Does, Defendant Chicago Title Oklahoma, other officers of the court and various real estate entities.

Case 5:23-cv-00041-R Document 155 Filed 12/10/24 Page 19 of 72

C. **Fraud, Embezzlement, and Perjury Resulting from the Conspiratorial Actions of Chicago Title:** Roe Simmons ("potential John Doe and/or witness") conspired with Defendants Chicago Title Oklahoma. Engaged in fraudulent activities, including the unauthorized sale of property and threatening financial harm to elderly Frances Gibson. These actions constitute fraud, embezzlement, financial exploitation of the elderly, and perjury, adversely impacting the Parks and Gibson families [Doc. 125, 125-4, 125-5 and Doc 126].

D. **Failure To Protect the Estate:** Judge Richard Kirby ("potential John Doe") failed to protect the estate by allowing attorney Roe Simmons and personal representative Danny Lenox to continue representing the estate despite being made aware of potential fraud. This failure to act was a breach of judicial duty and contributed to the fraud upon the estate, loss of property and emotional stress and continued constitutional violations. This was subsequently followed by unethical appointments aimed at covering up the court's misconduct [Doc. 125, 125-4, 125-5 and Doc. 126].

E. **Ex Parte' Communications**: Judge Henderson engaged in ex parte' communications with attorney Roe Simmons, which is prohibited under Oklahoma Statute Title 5A 2.9 unless certain conditions are met. These communications led to actions against individuals involved in exposing corruption, which is a violation of procedural rules and substantive rights.

F. **Directive to Law Enforcement:** Former Judge Henderson "directed" law enforcement to draft and file a report against Tonya Parks' father, Bennie Gibson, following an ex parte communication with attorney Roe Simmons, Defendant Melissa Abernathy, and other officers of the court. This action led to misdemeanor charges against Mr. Gibson,

underpinning claims of abuse of judicial office and powers. Mrs. Parks was deeply concerned that Judge Henderson lacked jurisdiction over her father. Upon learning of the charges against him, Tonya Parks sought to speak with Judge Timothy Henderson to express her concerns. [Exhibit 3 Tonya Parks Call to Henderson's office][7]

G. Despite her efforts, Ms. Parks was denied the opportunity to communicate directly with the judge- a privilege seemingly granted to Simmons and Abernathy. This unequal treatment raises significant concerns about the judiciary's fairness and impartiality, highlighting a disregard for the principles of equal access and due process. The refusal to engage with Ms. Parks, along with the ex parte communications with other parties involved, constitutes a violation of her rights and undermines the legal principles of fairness and equality before the law. This situation led to direct charges against Mr. Gibson, driven by retaliatory actions against him and his family for exposing judicial misconduct and public corruption.

H. Such behavior illustrates a troubling pattern of abuse of power within the Oklahoma County Courthouse, where retaliatory actions against whistleblowers occur without accountability. These serious violations make it imperative for the court to acknowledge the impact on Ms. Parks and her family, who have been denied fair treatment and due process under the law.

I. **Abuse of Official Powers**: Judge Henderson instructed law enforcement to draft and file a report against Plaintiff, Bennie Gibson, which was subsequently used to initiate charges. This directive resulted from an ex parte communication with attorney Roe Simmons, who

[7] **Exhibit 3** - A call made by Tonya Parks to Henderson's office on June 10, 2019, to discuss his "directive" to the Oklahoma County Sheriff's Department.

was representing the estate of Ceola Lenox in a probate matter over which Judge Henderson had no jurisdiction. Henderson's use of judicial influence to direct law enforcement in this way constituted an abuse of power and exceeded the scope of his judicial duties. Additionally, Henderson had personal ties to Simmons, benefiting both financially and politically from their relationship.

J. **Retaliation and Constitutional Violations:** Tonya Parks contends that her efforts to expose corruption resulted in retaliation from state and county employees, including false criminal charges against her father, Bennie Gibson, and a deprivation of constitutional rights. These actions are part of a larger pattern of wrongful arrests, prosecutions, property seizures, inheritance theft, and judicial misconduct within the Oklahoma County Courthouse. Judge Henderson, in collaboration with others, engaged in retaliatory actions against Bennie Gibson for exposing corruption. This included permitting the falsification of court documents, conspiring to fabricate charges, and violating due process. Such actions fall outside the scope of judicial duties and constitute criminal behavior. Additionally, Defendant Hunter and his office failed to conduct a proper investigation and interfered with the OSBI investigations mandated by Governor Stitt.

K. **Conspiracy and Collusion**: Conspiracy and collusion between all Defendants, other officials, and law enforcement to cover up crimes and retaliate against whistleblowers. This includes the manipulation of evidence and misrepresentation of key facts in a criminal investigation. Engaging in such a conspiracy to obstruct justice is beyond the scope of judicial duties and constitutes criminal conduct.[8]

---

[8] "Okla. Stat. tit. 21, § 21-421 (2023)."

L. **Personal Gain and Conflict of Interest**: Defendants, including but not limited to Henderson and Jan and John Does, exploited their positions for personal gain and satisfaction, which influenced judicial and other decisions throughout the process, resulting in violations of constitutional rights related to property, enjoyment of life, and intimidation of Plaintiffs for the benefit of others. This conduct includes maintaining relationships with attorneys who appeared before them in court. Utilizing judicial office for personal gain is beyond the scope of judicial duties and may constitute criminal conduct.

M. **Selection of Special Master and Conflicts of Interest**: Judge Kirkpatrick ("potential Jane Doe and/or witness") appointed attorney Rollin Nash ("potential John Doe") and his team as the Special Master in the estate of Tonya Parks' grandmother. This selection faced criticism for being unlawful and presenting a conflict of interest, particularly as it appeared to be retaliatory and aimed at protecting other court officials, including herself, attorney Roe Simmons, and Judge Richard Kirby, from wrongdoing. It is well documented that Attorney Rollin Nash served as the Campaign Treasurer for Judge Kirby during his campaign and at the time of his appointment by Judge Kirkpatrick. Attorney Nash's role involved investigating the previously vacated orders signed by Judge Kirby.

N. This situation represents a deliberate and direct conflict intended to cover up crimes committed against the estate and the Parks/Gibson family. The Oklahoma Supreme Court has already disqualified Judge Kirby from a case involving Rollin Nash, citing their campaign relationship in the Writ of Mandamus.[9] [Doc. 125, 125-4, 125-5 and Doc. 126].

[9] Patricia Bowers Edwards, Guardian of Robert Drew Bowers, Petitioner, vs. Richard W. Kirby, Associate District Judge, Respondent. Order, Sept. 21, 2021. Oklahoma Supreme Court, Case No. MA-119732. Available at: https://oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=MA-119732&cmid=130763.

O. **Failure to Timely Appoint a Special Administrator**: Judge Kirkpatrick failed to promptly appoint a new Special Administrator for the probate case following a vacated order and the resignation of attorney Sara Bondurant, who also had conflicts with other court officers, made false statements, and was later found to have committed fraud upon the court. This delay, along with the circumstances of Bondurant's resignation, raises serious concerns about the judge's handling of the case and potential conflicts of interest.

P. **Sealing of the Probate Case**: At the request of attorney Roe Simmons, Judge Kirkpatrick sealed the probate case—a highly contentious decision. This action limits access to crucial case information, shielding the proceedings and those involved from public scrutiny. It also appears to have been done to obstruct oversight by the public, state agencies, and criminal investigations related to the estate. It has also hindered the Parks/Gibson family from securing legal counsel.

Q. **Withholding of Hearing Transcript**: Judge Kirkpatrick's actions resulted in the withholding of hearing transcripts from Tonya Parks and her mother, delaying their access until a court minute was issued, and she was no longer the Judge of the court. This obstruction prevented the family from fully understanding and responding to the proceedings. Transcripts were only released after an order granting access was issued by Roe Simmons and Rollin Nash's office.

R. **Misrepresentation of Facts:** District Attorney Stephen A. Kunzweiler ("potential John Doe and/or witness") misrepresented facts in a letter, creating a false narrative about the OSBI investigation and the affidavit by Tonya Parks. This act of misrepresentation and potentially covering up crimes committed against the Parks and Gibson families is a violation of their civil rights [Doc. 125, 125-5 and Doc. 126].

S. **Interfered with a criminal investigation initiated by Governor Stitt and obstructed justice.** Interim Attorney General Dawn Cash, acting under the authority of the Attorney General's Office previously led by Defendant Mike Hunter. Dawn Cash's actions significantly interfered with the investigation into the Ceola Lenox Estate probate process and negatively impacted it in several ways. Initially, District Attorney Jason Hicks was overseeing the OSBI investigation into allegations against Judge Henderson that affected the Parks/Gibson family.

T. However, Dawn Cash intervened, directing Hicks to narrow the investigation's scope solely to allegations of sexual misconduct. This directive excluded broader allegations relevant to the Parks/Gibson family, despite Tonya Parks providing evidence of her issues with Judge Henderson to Ms. Cash, who then failed to investigate these claims. This action not only represented a direct conflict but also undermined Governor Stitt's directive for a comprehensive investigation into the allegations [Doc. 125, 125-5 and Doc 126].

U. Furthermore, upon the investigation's completion under DA Stephen Kunzweiler, a letter was sent to the Attorney General misrepresenting the facts of the OSBI investigation and Tonya Parks' affidavit. This misrepresentation potentially covered up crimes committed against the Parks and Gibson families, violating their civil rights. Despite OSBI investigator Brad Green's awareness of the inaccuracies in Kunzweiler's letter, no corrective action was taken, exacerbating the family's plight.

V. These actions by Dawn Cash and the subsequent handling of the investigation have had a profound impact on the Parks and Gibson family, obstructing their pursuit of justice and redress, directly affecting Frances Gibson's inheritance and the family's financial assets, and contributing to a narrative that potentially shields misconduct.

W. **Discovery of Miscommunication and Misrepresentation**: After an OSBI investigation into former Judge Henderson, Tonya Parks became aware of a letter from District Attorney Stephen A. Kunzweiler to Assistant Attorney General Tim Downing, which contained misrepresentations of the facts she had provided during the OSBI investigation. This discovery was made through a conversation with Brad Green the OSBI investigator, highlighting communication failures and the spreading of misinformation about her allegations against judicial misconduct [Doc. 125, 125-5 and Doc. 126].

X. **Fraud Upon the Court:** Sara Bondurant ("potential Jane Doe and/or witness") appointed as the Special Administrator in the Ceola Lenox Estate probate case. Sara Bondurant committed fraud upon the court through her court filings and the acquisition of properties. These concerns include conflicts of interest, failure to perform her duties appropriately, fraudulent actions in court filings and property acquisitions, and a broader pattern of behavior that suggests an attempt to manipulate the estate's proceedings.

Y. These actions, coupled with her resignation and the circumstances surrounding it, including false statements made during her resignation, point to a pattern of behavior that undermines the integrity of the court and the estate proceedings. The concerns about Bondurant's actions and the unethical conflicts/connections with other court officers involved in the estate suggest a concerted effort to manipulate the estate's proceedings for fraudulent purposes [Doc. 125, 125-4, 125-5 and Doc. 126].

Z. **Obscuring the Truth of Matters:** Rollin Nash ("potential John Doe and/or witness"): appointed as the Special Master by Judge Nikki Kirkpatrick. He did not accurately report events or include relevant information and crimes against the estate in his special master report, obscuring the truth of the matters related to the estate and the actions of Roe

Simmons and Defendant Chicago Title and other officers of the court [Doc. 125, 125-4, 125-5 and Doc. 126].

AA. **Legal Actions and Civil Rights Claims:** Tonya Park seeks declaratory judgment and injunctive relief for US Constitution and civil rights violations. The complaint articulates violations of the First, Fourth, Fifth, and Fourteenth Amendments, seeking compensatory and punitive damages for the infringement of free speech and protection from **unreasonable searches and seizures**. She also is seeking damages for emotional distress, mental anguish and other harms.

BB. **Recent Document Sealing after Request for Investigation:** Plaintiff Tonya Parks, newly appointed Administrator of the Estate of Ceola Lenox (Case No. PB-2016-721), raises serious concerns regarding the recent sealing of 12 critical documents that were previously accessible to the public since December 17, 2021. These documents contain allegations of corruption and criminal activities related to the estate. The sealing, initiated by Defendant Oklahoma County and possibly other defendants, obstructs public and court access to vital records amidst ongoing investigations, thereby hindering the Plaintiffs' ability to secure legal counsel.

CC. On April 17, 2024, Parks sought clarification from the defendants' counsel regarding the sealing but received no response. She then contacted the Oklahoma County Clerk's office for information, which was denied. An open records request also failed to yield the requested details, prompting Parks to reach out to the Supreme Court Network for assistance. Ultimately, she discovered that the documents were sealed on March 15, 2024, coinciding with the Plaintiffs' request for a formal investigation. This sealing appears retaliatory, aimed at concealing evidence and obstructing justice, undermining the rights

of both the deceased, Ceola Lenox, and the Plaintiffs. The sealed documents are essential for navigating the probate case and substantiating the federal lawsuit, and their concealment directly interferes with the Plaintiffs' quest for justice and legal representation.

61.    **Legal Framework and Precedents:** The claims touch upon several key areas of law, including constitutional law, probate law, and civil rights law. Tonya Park's claims of judicial misconduct and retaliation invoke federal statutes such as 42 USC 1983, which provides a remedy for the violation of constitutional rights by persons acting under state authority and under the color of law. The case also raises questions about the limits of judicial immunity, particularly in situations where actions taken by a judge are outside the scope of judicial duties or involve criminal conduct.

62.    **Impact on Tonya Parks and Specific Harm Caused:** Before this honorable court, Plaintiff Tonya Parks presents her unyielding quest for justice—a journey born from profound grievances that have deeply scarred her and her family. For years, Ms. Parks has valiantly fought to safeguard her grandmother's estate from the exploitative grasp of the State of Oklahoma, defending her mother, an heir to the estate, and her father from systemic abuse and corruption.

63.    Her mother, Frances Gibson, was stripped of her rightful inheritance by the very officers and court officials duty-bound to protect her interests, manipulated by attorneys, a title company, and a deceitful estate representative. Her father, Bennie Gibson, exercised his right to free speech, vocally opposing the corrupt practices that aimed to defraud his deceased mother-in-law's estate—acts which his wife was due to inherit from. Despite fulfilling his civic duty to report these unlawful activities to state agencies, Mr. Gibson faced relentless retaliation that drastically altered his life, stripping him of his human and civil rights.

64.    The defendants manipulated the judicial system to silence and intimidate him, attempting to crush his spirit and his family's resolve. Witnessing the declining health and spirit of her parents, Tonya's resolve has only strengthened. Despite the fear and helplessness, she witnessed her parents suffer—missing out on cherished life events and succumbing to tears over their losses—fueling her determination to stand against the corruption pervading our systems.

65.    Parks believes fervently in the possibility of redemption within these systems, marred though they may be by bias, hate, and greed. She clings to the hope that justice will prevail, allowing her mother to reclaim what was stolen and clearing her father of the baseless charges against him, crafted out of spite by those abusing their power.

66.    Moreover, Parks has faced personal health challenges, both emotional and physical, as the burden of this prolonged battle weighs heavily upon her. Her plight is exacerbated by the unjust targeting of her family, forced to confront a judiciary riddled with documented bias, a stark indicator of the systemic injustice at play.

67.    Parks' battle extends beyond personal grievances; it is a fight against the pervasive corruption within the Oklahoma courthouse and affiliated state organizations. Her life is overshadowed by the sorrow of seeing her once vibrant parents now broken and distressed, a constant reminder of the corruption she challenges.

68.    With unwavering determination, Tonya Parks stands before you, not just seeking redress for her family's vast injuries but also fighting for systemic change. This lawsuit against Defendants including Abernathy, Prater, Henderson, Mike Hunter, Chicago Title Oklahoma, Oklahoma County and John and Jane Does, seeks compensatory damages for emotional and mental suffering, alongside declaratory and injunctive relief against practices that violate constitutional, civil, and

human rights—highlighting a courageous stand against the judicial corruption that seeks to silence the truth.

**DIRECT IMPACT:**

69. **Emotional and Physical Impact on Family**: The handling of her grandmother's estate, along with the associated judicial and legal misconduct, has caused significant emotional and physical distress to Ms. Parks and her parents. Ms. Parks' mother, Frances Gibson, developed a severe case of shingles, a condition often triggered by stress. In another incident Ms. Gibson was hospitalized in a life-threatening situation due to stress and the medication she was taking, highlighting the deep personal and health-related effects these events have had on the family.

70. As a devoted daughter, Ms. Parks has relentlessly fought to protect her parents, a battle that has taken a serious emotional and physical toll on her. She has witnessed her parents' emotional and physical decline as they continue to suffer from the mistreatment by public officials, leaving them in a perpetual state of grief. Many of the unidentified Jane and John Does remain in office, continuing to wield the power to cause further harm and posing an ongoing threat to Parks and Gibson family.

71. **Racial Statement and Retaliation**: Tonya Parks' legal challenges within the Oklahoma County Courthouse highlight a distressing intersection of racial and judicial injustices. Her encounters with racial bias, particularly the derogatory remarks made by Joy Thorp at the Attorney General's office, underscore the systemic discrimination that can infiltrate legal and governmental institutions. These incidents, detailed in the lawsuit and her letter to Assistant Attorney General Tim Downing, reveal the broader issue of racial prejudice within the justice system. Ms. Parks' struggle is further compounded by retaliation, the deprivation of her Constitutional rights, loss of

property and money, and manipulated criminal charges of her father after they exposed corrupt activities. This complex web of challenges not only illustrates the systemic barriers faced by individuals like Ms. Parks but also emphasizes the need for comprehensive reform to address these deep-rooted issues of bias and corruption.

**72.** The repercussions of these experiences on Ms. Parks are profound and multifaceted. As a Black woman, the racial statements she encountered were not just personal attacks but also likely exacerbated her feelings of isolation and vulnerability within an already hostile system. This added layer of discrimination intensifies the emotional and mental toll of her legal battles, contributing to a pervasive sense of disenfranchisement.

**73.** Moreover, the retaliation and manipulated charges against her father, following their efforts to expose corruption, spotlight the significant risks whistleblowers face, especially those from marginalized communities. This situation serves as a stark reminder of the racial and systemic biases that persist within the legal framework, calling for urgent action to ensure accountability and safeguard the rights and dignity of all individuals, particularly those from historically marginalized groups. [Exhibit 4 - Part 1 and Exhibit 5 - Part 2 of Recordings between Ms. Parks and Joy Thorp when she made a racial statement "Race Card"] [10]

**74.** **Intimidation and Harassment**: Ms. Parks has served as power of attorney in Oklahoma County probate case PB-2016-721 for several years. In April 2019, while accompanying her

[10] **Exhibit 4 and Exhibit 5** - A recording dated January 19, 2022, captures former Attorney General Joy Thorp making a racially insensitive remark about the "race card" while Tonya Parks was reporting a letter from DA Kunzweiler that misrepresented the facts of the OSBI investigation into former Judge Henderson. Although she indicated she would investigate Kunzweiler's actions, she failed to follow through by assigning the matter to an investigator. Additionally, Parks later discovered a troubling post on Thorp's Facebook, where she was joking inappropriately with friends about an opening for a homicide position in the Attorney General's office.

elderly mother, Frances Gibson, both were unlawfully detained and held against their will by sheriff's deputies, who were sent to intimidate them at the courthouse [Doc. 11-2].

75. **Financial Harm and Threats**: Roe Simmons threatened Parks' family with financial harm, stating he could take $40,000 due to legal actions filed by Parks' father. This threat was made during a private meeting with Parks' mother, highlighting the personal and financial strain on the family.

76. While making these threats, Simmons used court law enforcement to block Ms. Parks from entering the room, preventing her from being with her mother. He pressured Parks' mother to convince her husband to stop filing complaints. These complaints, filed by Mr. Gibson ultimately exposed court officers' misconduct, leading to a vacated order in the probate case that nullified most of the estate orders.

77. **Mental Anguish and Intentional Infliction of Emotional Distress:** The cumulative effect of these events on Tonya Parks and her family includes emotional distress, mental anguish, health issues, financial harm, loss of property and a profound sense of injustice. The misconduct and the personal toll they have taken highlight the significant challenges and adversities faced by Parks in seeking justice and accountability.

78. **Failure of the Attorney General Investigate:** Plaintiff Tonya Parks had recorded conversations with Kindanne ("Kindy") Jones [Exhibit 2][11] and Julie Corley [Doc. 125, 125-1 and Doc. 126][12] from the Attorney General's office, who supervises Defendant's counsel, Stephanie

[11] A recorded conversation with Attorney Kindanne ("Kindy") Jones on November 4, 2022, in which she advised Plaintiff Parks to file a lawsuit concerning the claims outlined in this complaint.

[12] A recorded conversation with Attorney General representative Julie Corley on October 28, 2022, in which she informed Plaintiff Parks that she needed to file a lawsuit regarding the claims outlined in this complaint. Corley emphasized that this was the only way the Attorney General's office could address the plaintiffs' allegations, which include, but are not limited to, public corruption.

Lawson. Despite the seriousness of Parks' allegations of public corruption, both Jones and Corley dismissed her concerns, advising her to file a lawsuit instead of pursuing an administrative investigation. This response reflects the Attorney General's office shifting the burden of justice onto Parks.

**79.** The Attorney General's office had a duty to investigate allegations of corruption and misconduct raised by the Parks and Gibson families. Despite the severity of the claims, including judicial corruption and constitutional violations, no substantive investigation was conducted, as confirmed by recorded conversations and a policy of not investigating judges unless litigation was filed.

**80.** **Violation of Professional Conduct and Misrepresentation**: Rod Heggy, acting as counsel for Defendants Abernathy and Oklahoma, communicated directly with Plaintiffs Tonya Parks and Frances Gibson without revealing his role as the Defendants' attorney. This failure to disclose, along with his attempt to have Parks sign a settlement agreement without informing her of his representation in the ongoing federal case, violates the Rules of Professional Conduct, specifically 5 OS Rule 4.2 and Rule 8.4. These rules prohibit attorneys from discussing matters with a represented party without the consent of their lawyer or legal authorization.

**81.** **Unlawful Advantage Gained Through Deception**: By failing to disclose his representation of the Defendants and advising Tonya Parks on legal actions, including signing documents that could affect the outcome of the federal case, Heggy gained information and concessions that could unfairly benefit the Defendants. This deceptive practice undermines the integrity of the legal process and compromises the Plaintiffs' ability to pursue their claims without manipulation or undue influence.

82. **Impact on Plaintiffs' Rights**: Rod Heggy's actions, disguised as offering legal advice and assistance, directly infringed upon the rights of Tonya Parks and Frances Gibson. This conduct not only violates the ethical standards required of legal professionals but also threatens the Plaintiffs' pursuit of justice. [Doc. 125, 125-3 Audio Recording of Plaintiff Parks and Defendant Counsel Rod Heggy and Doc. 126].[13]

## Conclusion

83. This narrative encapsulates the troubling saga surrounding the probate case of Ceola M. Lenox, revealing a web of legal and ethical violations within the Oklahoma County Courthouse that have profoundly impacted Tonya Parks and her family. The evidence presented underscores systemic corruption and misconduct in a judicial system that has failed to uphold transparency and accountability, leaving the Parks and Gibson families to grapple with significant financial burdens and emotional distress since 2016.

84. The actions of various individuals—including fraud, embezzlement, and abuse of power—have directly infringed upon the rights of the Parks and Gibson families, exposing a disturbing misuse of judicial immunity. The sealing of the probate case, influenced by an attorney with deep connections to the court, has only further obstructed the family's pursuit of justice and distorted their narrative. As they navigate ongoing legal battles, the psychological toll has manifested in serious health issues for Tonya and her elderly parents, Bennie and Frances Gibson. Their struggle highlights not just personal grievances, but a critical call for accountability within a system that too often weaponizes its power against those who dare to challenge misconduct.

[13] Audio recording of a telephone conversation between Oklahoma County, Sheriff Abernathy's counsel District Attorney Rod Heggy, and Plaintiff Tonya Parks, dated October 20, 2023.

- **Individual Plaintiff**

**BENNIE GIBSON**

**85.** Plaintiff Bennie Gibson has endured a series of distressing events following the passing of his mother-in-law, Ceola Lenox, which triggered a probate case plagued by fraud, embezzlement, and misconduct by various parties involved in managing the estate. The affidavit and supporting documents provide a detailed account of these events and the actions taken against him [Doc. 125, 125-4, 125-5 and Doc. 126].

**86.** **Key Events and Legal Violations by Each Defendant:** Mr. Gibson shares the same sequence of events as outlined under his daughter, Tonya Parks.

**87.** **A Fight for Justice:**

A. **The Generational Theft of Black Wealth in Oklahoma City:** In a city long overshadowed by the painful legacy of systemic racism and generational theft, the story of Bennie Gibson and his family serves as a powerful testament to the relentless struggle for Black families to hold on to their hard-earned wealth. It's a story of betrayal, greed, and courage, highlighting one man's unwavering fight to protect his family's legacy.

B. **Introduction: The Echoes of History:** The Gibson family's fight is not an isolated case. It mirrors the historic injustices faced by countless Black families—systematic efforts to strip them of property, wealth, and dignity. In the heart of Oklahoma City, Bennie Gibson and his family became the latest victims in this ongoing battle, their estate entangled in a web of deceit, fraud, and corruption.

C. **A Family Under Siege:** Following the passing of Ceola Lenox, Bennie Gibson's mother-in-law, the estate should have gone to her children, a rightful inheritance that was the product of decades of hard work. However, the probate process turned into a nightmare when corrupt public officials, lawyers, real estate brokers, title companies and judges

conspired to strip the family of their wealth. The illegal sale of the family home, loss of personal property and fraudulent court proceedings left the Gibson family devastated, deprived of the legacy Ceola Lenos and her husband, Leon, had built.

D. **A Father and Daughter's Relentless Fight:** Bennie Gibson, standing firm beside his daughter, Tonya Parks, refused to let this injustice go unanswered. Prior to Ms. Parks need to get involved, Mr. Gibson saw the unlawful acts that were spiraling in the probate so he and his wife filed documents in the court that were ignored and he filed judicial complaint, state bar complaints, wrote letters to the OSBI and Defendant Mike Hunter and other state agencies who did nothing which caused the retaliation and harassment against Mr. Gibson and his family.

E. This left him in a feeling of helplessness as no one was doing anything to address the issues or stop the unlawful conduct. Together with his daughter Ms. Parks embarked on a determined fight to expose the corruption that sought to erase their family's history and take their generational wealth. Bennie, a devoted husband, father, and son-in-law, gathered critical evidence of fraud and embezzlement, unearthing a conspiracy that involved lawyers, title companies, and even court officials.

F. **The Personal Toll:** For Bennie Gibson, this battle has been deeply personal. His tireless efforts to protect his wife's inheritance rights and his daughter's fight for justice have come at great emotional and physical cost. The continued harassment, intimidation, reputation embarrassment and attempts to silence him only fueled his determination to ensure that his family's legacy would not be stolen.

G. **A Legacy at Stake:** This fight is not just about property; it's about preserving the dignity and hard-earned wealth of a Black family. Leon, a war hero, and Ceola, a devoted veteran

wife and mother, who both worked their entire lives to provide a home for their family and generational wealth. Also, a veteran, Bennie Gibson, honoring their legacy, stands as a protector, fighting for what is rightfully theirs and ensuring their story is not erased.

H. **A Call for Justice:** The Gibson family's fight is emblematic of a larger, deeply entrenched issue—the systematic theft of Black wealth. Through Bennie Gibson's resilience, this story has come to light, exposing the continued targeting of Black families. His courage is a beacon, calling for justice, accountability, and a future where Black families can retain the wealth and freedom, they've worked so hard to achieve.

I. Bennie Gibson's unwavering dedication to his family's fight for justice is an inspiration, and his story serves as a powerful reminder of the importance of protecting generational wealth against systemic forces of oppression.

**88. Impact on Bennie Gibson and Specific Harm Caused:**

A. **Additional Background and Allegations of Fact:** As derived from the provided references, outlines a distressing narrative of legal battles, personal suffering, and systemic challenges faced by Bennie Gibson and his family. This sequence not only highlights the legal entanglements but also the profound personal impact these events have had on Mr. Gibson's life and his relentless efforts to protect his family and their rights.

B. **Initiation of Legal Troubles:** Mr. Gibson's legal troubles began when former Judge Timothy Henderson instructed Defendant Melissa Abernathy from the Oklahoma County Sheriff's Office to draft a report that led to misdemeanor charges against him. This directive stemmed from an ex parte communication between Henderson and Roe Simmons, the attorney representing the estate in question. This misuse of judicial power, retaliating

against Mr. Gibson for exposing corruption through complaints filed with state and federal agencies, initiated his ongoing legal and personal struggles.

C. **Fraudulent Activities and Threats:** Defendants fraudulent activities, including unauthorized property sales and threats of financial harm to Mr. Gibson's wife, Frances, further exacerbated the family's situation. These actions not only threatened their financial stability but also placed immense emotional and physical stress on Frances, leading to her diagnosis with a severe case of shingles, a condition often triggered by stress. Mr. Gibson concealed his own insecurities, stress, fears, and declining health while worrying about his wife's well-being, all so he could focus on nursing her back to health.

D. This situation has stripped Mr. and Mrs. Gibson of the freedoms they once enjoyed, including their annual trips to Oklahoma due to fears of ongoing retaliation. Mr. Gibson no longer visits Oklahoma, his hometown, where he used to go with his wife to pay respects at his parents' graves. Before enlisting in the military, Oklahoma was their shared home. Mr. Gibson took an oath to protect the Constitution and the rights of others, so standing up for his wife and mother-in-law was a commitment he held dear. Instead, he faced harm for defending them.

E. **Malicious Prosecution and Retaliation:** The orchestrated efforts by Judge Henderson, in collusion with Defendant Abernathy, attorney Simmons, and other defendants to file charges without due process against Mr. Gibson under false pretenses constitutes malicious prosecution, harassment and retaliation for the purpose of others personal gain. This was part of a broader pattern of retaliation against Mr. Gibson and his family for their attempts to expose and challenge corruption within the Oklahoma legal system.

F. **Impact on Family Well-being and Security:** The constant threat of arrest and legal retaliation has severely impacted Mr. Gibson's ability to lead a normal life. He is unable to visit his parents' graves in Oklahoma due to the warrant issued against him, living with the constant fear of arrest. This situation has not only affected his freedom of movement but has also placed a significant physical and emotional burden on him and his family.

G. **Denial of Access to Justice and Due Process:** The sealing of the probate case and the withholding of crucial documents have denied Mr. Gibson's family fair access to justice and due process. These actions, aimed at covering up the fraudulent activities and protecting the involved defendants from scrutiny, have further victimized the family, denying them the opportunity to fully defend their rights and interests.

H. **Personal and Emotional Toll:** Beyond the legal battles, the personal and emotional toll on Bennie Gibson and his family has been profound. Acting as a caregiver for his wife, witnessing the threats against his family, loss of property rights and enduring the stress of ongoing legal challenges have deeply affected Mr. Gibson's well-being. The relentless fight to protect his family, their rights, and their inheritance has come at a significant personal cost. Given the bias and lack of due process, there is a risk that Mr. Gibson could be unjustly convicted based on false charges. Such an outcome would not only be a grave injustice but would also have lasting implications for his freedom and legal record.

**Conclusion**

**89.** Bennie Gibson's court appearance to contest the warrant presents significant risks of financial, emotional, and reputational harm, along with potential violations of his constitutional rights. These concerns highlight the urgent need to address the alleged bias and lack of due process in the judicial proceedings he faces.

90. Bennie's speech, intended to protect his family and expose alleged crimes against his loved ones, must be viewed through the lens of First Amendment protections. His statements aimed to inform Simmons of his purported misconduct, not to threaten harm. The events surrounding Bennie reveal a distressing narrative of legal entanglements and systemic corruption, underscoring the emotional toll his fight for justice has taken on him and his family.

- **Individual Plaintiff**

**FRANCES GIBSON**

91. Plaintiff Frances Gibson, a daughter, wife, and mother who has been thrust into an unyielding battle for justice, dignity, and the rightful inheritance left by her mother, Ceola M. Lenox. This is not merely a legal dispute; it is a poignant narrative of a family's struggle against systemic corruption, deceit, and the erosion of their civil liberties.

92. Frances Gibson's journey through this legal labyrinth began with the untimely passing of her mother, Ceola M. Lenox, which set the stage for a series of events that would profoundly impact her life and that of her family. Amidst her grief, Mrs. Gibson found herself embroiled in a contentious probate case, further complicated by fraudulent activities perpetrated by her own siblings and exacerbated by the actions of those in positions of legal authority who were supposed to protect her rights.

93. The heart of Mrs. Gibson's' ordeal lies in the egregious misconduct of former Judge Timothy Henderson and all the defendants, who, through an ex parte communication with Roe Simmons, the attorney representing the estate, directed the drafting of a report by Defendant Melissa Abernathy in Defendant Oklahoma County that led to unwarranted charges against her husband, Bennie Gibson. This act of judicial overreach was not only unethical but also a clear violation of the family's rights and spousal privileges, demonstrating a blatant misuse of power

intended to intimidate and retaliate against those daring to expose the corruption within the Oklahoma legal system.

**94.** Throughout this harrowing journey, Mrs. Gibson has been a pillar of strength for her family, particularly her daughter, Tonya Gibson, and her husband, Bennie. Despite her declining health, exacerbated by the immense stress and emotional toll of the ongoing legal battles, Mrs. Gibson has remained steadfast in her pursuit of justice. Her resilience, however, has been severely tested by witnessing the unjust targeting of her husband by corrupt officials involved in a fraudulent RICO scheme, leading to a warrant for his arrest that has cast a shadow of fear over the entire family and loss of enjoyment they once shared as a family.

**95.** The implications of these actions extend far beyond the immediate legal challenges faced by the Parks & Gibson family. They represent a fundamental breach of trust in the institutions meant to uphold justice and protect the rights of individuals. The warrant issued against Mr. Gibson, based on unfounded allegations, has not only deprived the family of their freedom to travel and pay respects to their ancestors in Oklahoma but has also served as a constant reminder of the injustices they have endured.

**96.** **Key Events and Legal Violations by Each Defendant:** Frances Gibson's case follows the same sequence of events as described in relation to her daughter, Tonya Parks.

**97.** **Impact on Frances Gibson and Specific Harm Caused:**

A. The organized scheme(s) have significantly impacted the legal proceedings and the lives of Frances Gibson and her family in several profound ways:

B. **Malicious Prosecution and Abuse of Power**: The scheme led to the malicious prosecution of Bennie Gibson, Frances's husband, through the misuse of judicial power for retaliatory purposes for personal gain and personal gain for other officers of the court. Former Judge

Timothy Henderson, influenced by Roe Simmons and other defendants, directed law enforcement Defendant Sheriff Abernathy to draft a report against Bennie Gibson, leading to charges being activated against him without due process. This action stemmed from an ex parte communication and was conducted improperly, unethically, and unjustly, violating the civil rights and spousal privileges of Frances Gibson and her husband without any prior notice.

C. **Fraud and Mailing False Documents Across State Lines**: The actions of court officers and Roe Simmons's fraudulent activities, including unauthorized property sales and threats of financial harm to Frances Gibson, significantly affected her family's financial stability and emotional well-being. Simmons, along with Defendant Chicago Title Oklahoma, submitted false information in court documents, knowingly aided in mailing inaccurate documents regarding the sale of estate property across state lines, and delayed the filing of deeds in the county records, ultimately preventing Mrs. Gibson from receiving her rightful inheritance.

D. **Retaliation and Intimidation**: The scheme orchestrated against the Gibson family involved coordinated retaliation for exposing judicial corruption, characterized by wrongful investigations, arrests, and prosecutions by the Defendants without probable cause or due process. This policy of retaliation implemented by Defendant Oklahoma County, other defendants, and officials resulted in the deprivation of the family's constitutional rights, significant financial losses, and false criminal charges.

E. **Impact on Health and Well-being**: The stress and injustices endured by Frances Gibson in fighting for her rightful inheritance, coupled with witnessing the unjust targeting of her husband by corrupt officials, have led to a decline in her health and financial losses. The

emotional and physical toll of these events has been significant, affecting her ability to grieve for her mother and cope with the ongoing legal battles.

F. **Denial of Access to Justice and Due Process**: The fraudulent scheme has also led to the denial of fair access to justice and due process for Mrs. Gibson and her family. Actions such as sealing the probate case, withholding crucial documents, and using courthouse law enforcement to intimidate and harass the family have denied them the opportunity to fully defend their rights and interests.

**Conclusion**

**98.** The fraudulent scheme has had a devastating impact on the legal proceedings and the lives of Frances Gibson and her family, encompassing financial harm, emotional and physical distress, malicious prosecution, and a pervasive sense of injustice and fear.

**99.** It is emblematic of a broader struggle against systemic corruption and the abuse of power. It is a call to action for accountability, transparency, and the restoration of faith in our legal system. As we present this case, we seek not only the rightful inheritance that belongs to Mrs. Gibson and her family but also the vindication of their rights and the reaffirmation of the principle that justice must prevail over corruption and tyranny.

- **Individual Plaintiff**

**NYANZA COOK**

**100.** Plaintiff Nyanza Cook stands before this court in a relentless pursuit of justice, driven by the profound injustices that have deeply impacted her and her family. For years, she has waged a tireless battle to protect her son and grandchildren from the abusive powers of the State of Oklahoma. Her son has been incarcerated for over six years, and her grandchildren were at one time taken by the state and placed into foster care. In a particularly heartbreaking event,

her granddaughter, taken at approximately three days old, became gravely ill and fought for her life in the NICU.

**101.** These events have taken an immense toll on Ms. Cook's personal health, both emotionally and physically, as the strain of fighting for her family weighed heavily on her well-being. Adding to her suffering, she witnessed her son fall victim to systemic corruption. He was unfairly targeted as a "poster boy," thrust into a relentless legal struggle against a judge with a documented history of racial bias. Her son was initially sentenced to multiple life sentences for non-violent drug offenses—an outcome so grossly disproportionate that it underscores the racial and systemic injustices at play. The multiple life sentences were overturned by Judge Ray C. Elliot ("potential John Doe and/or witness") as a result of the numerous complaints Ms. Cook filed with the Oklahoma Council on Judicial Complaints against Judge Elliot, along with letters written to government agencies and political representatives, including the Governor, Attorney General's Office, members of the House of Representatives, and several Senators.

**102.** Ms. Cook's struggle is not just for her family and the injustices she has personally witnessed and endured; but it is also against the larger machinery of corruption that continues to plague the Oklahoma courthouse and state-funded organizations. Her daily life is overshadowed by fear and grief, as the incarceration of her son stands as a stark reminder of the corruption she dares to confront. Despite these overwhelming challenges, Ms. Cook's quest for justice remains steadfast, as she refuses to be silenced in the face of ongoing systemic abuse.

**103. Key Events and Legal Violations by Defendants:**

A. The chronology of events involving Ms. Cook and her family, as detailed in the provided documents, outlines a complex and distressing series of legal and personal challenges. This

summary aims to provide a clear and structured overview of the key events, their impact on Ms. Cook and her family, and the specific harm caused by each event.

B. **Initial Concerns and Legal Challenges**: In May 2017, Ms. Cook's son was arrested in Oklahoma. Ms. Cook posted bail for her son, questioning the validity of the arrest warrant, which was not initially signed by a judge. This event marks the beginning of a series of legal challenges and injustices faced by Ms. Cook and her family.

C. **Concerns Over Warrant Validity, Judicial Conduct, and Legal Proceedings Against her son**: Ms. Cook uncovered that Defendant Henderson had backdated the warrant for her son's arrest, casting doubt on the integrity of the judicial process. In response, she exercised her First Amendment rights by filing complaints about the defendants' misconduct and voicing her concerns to government agencies and political representatives. Ms. Cook attributes her concerns to systemic bias and procedural improprieties within the Oklahoma legal system.

D. **Increased Bail and Denial of Legal Counsel**: The Oklahoma County Courthouse's "untold doctrine" or "hidden principle" of denying defendants court-appointed attorneys if they bail out of jail led to the artificial increase of her son's bail without cost hearings, risking Texas real estate. Furthermore, her son was denied legal counsel after bonding out of jail, complicating the legal defense and affecting Ms. Cook's grandparent rights.

E. **Child Protective Services (CPS) Involvement**: The involvement of Child Protective Services (CPS), under the oversight of the Oklahoma Department of Human Services, began with Ms. Cook's family when her grandchildren were removed from their parents and placed into foster care. This action, directed by the District Attorney's Office led by

Defendant David Prater, and adjudicated by Judge Cassandra Williams ("potential Jane Doe and/or witness"), occurred under highly contentious circumstances.

F. **Retaliation and Communication with Texas Agencies**: Ms. Cook was informed that the Oklahoma County DA's office communicated with Texas agencies like CPS/DHS, negatively impacting her family in Texas. This cross-state communication aimed to harm Ms. Cook.

G. **Health Concerns and Custody Issues Involving Grandchildren**: Ms. Cook voiced serious concerns for her grandchildren's well-being when they were taken by the State of Oklahoma through the Department of Human Services and placed into foster care. Ms. Cook was particularly troubled by her granddaughter's health issues and the harmful impact that foster care placement had on her overall well-being.

**104. Impact on Nyanza Cook and Specific Harm Caused:**

A. **Emotional Distress and Mental Anguish**: The cumulative effect of these events—her son's legal predicaments, his ongoing incarceration, the DHS' intervention, and the initial removal of her grandchildren, coupled with the targeted discrimination, intimidation, and retaliation—has inflicted severe emotional distress and mental anguish on Ms. Cook. This ongoing saga underscores not only the personal toll on Ms. Cook but also the broader implications of legal and procedural fairness, the exercise of free speech, and the protection of familial rights within the judicial system.

B. **Health and Safety Concerns for Grandchildren**: The removal of her grandchildren from their parents and the subsequent health issues faced by her granddaughter while she was previously placed in foster care raised serious concerns for their well-being and safety.

C. **Violation of Civil and Grandparent Rights:** Ms. Cook contends that the actions of the defendants violated her civil rights and specifically her rights as a grandparent, impacting her ability to support and care for her grandchildren.

D. **Financial Burden: Posting Bail for Her Son:** Ms. Cook, a Texas resident, posted bail for her son in Oklahoma, which was a direct financial outlay. The need to post bail arose from her son's arrest, which she questioned due to the warrant not being initially signed by a judge. This situation was further complicated when she became aware of Defendant Henderson's backdating of her son's warrant, raising concerns about the legality of the arrest and the bail amount set. She remains deeply troubled by the fact that Judge Henderson lacked jurisdiction over her son's case and had a history of granting favors to third parties.

E. **Artificial Increase of Her Son's Bail**: Defendants untold hidden policy, custom, pattern, and instituted doctrine within the Oklahoma County Courts resulted in the artificial increase of her son's bail without cost hearings. This not only posed a risk of encumbering Texas real estate but also added to her financial burden. The increased bail amount without a proper hearing or consideration of her or her son's ability to pay exacerbated the financial strain on her.

F. This action was taken without providing a proper hearing to assess the appropriateness of the bail amount or the financial impact on Ms. Cook or her family members, particularly concerning the risk of encumbering Texas real estate. This lack of a formal hearing or process to contest the bail amount directly impacts her due process rights, as it denied her or her son the opportunity to be heard and to challenge the basis of the bail increase.

G. **Denial of Legal Counsel:** The conditions imposed after the bail increase resulted in her son being denied legal counsel because he bonded out of jail. This denial of legal counsel is tied to the due process violation, as it prevented a fair opportunity to contest the bail increase and the circumstances surrounding her son's arrest and detention. The denial of legal counsel based on the condition of posting bail further exacerbates the due process concerns by limiting access to legal representation and advice, which is fundamental to navigating the legal system and protecting one's rights.

H. The actions of the Defendants, including Jane and John Doe, along with the unspoken doctrine and concealed principles of Oklahoma County, not only violated Ms. Cook's due process rights by increasing her son's bail without a proper hearing but also exacerbated this violation by denying him legal counsel due to his bail status. This combination of actions deprived Ms. Cook and her son of the procedural protections guaranteed by the due process clause, specifically the right to a fair hearing and access to legal representation to contest governmental actions affecting their rights and property.

I. **Cost of Hiring Private Attorneys:** Due to the denial of legal counsel after her son bonded out of jail, Ms. Cook was forced to seek paid legal counsel for her son. This denial was based on the understood "doctrine," that those who bond out of jail are not entitled to a court-appointed counsel, necessitating the hiring of private attorneys. The financial burden of hiring legal representation for her son, especially in light of the increased bail and the complexities of the legal challenges faced, significantly contributed to the financial strain.

J. **Retaliation Due to Advocacy:** Ms. Cook has been actively advocating on behalf of her son, which has led to retaliatory actions by defendants, including Jane and John Doe's.

This retaliation is not only a source of emotional distress but also places her son in a precarious position while incarcerated, exacerbating fears for his well-being.

K. **Concerns Over Son's Well-being:** The core of Ms. Cook's ongoing distress is her concern for her son's well-being while he remains incarcerated. The fear that he is under the care of the defendants, including Jane and John Does who have recently and previously retaliated against him, due to her advocacy adds a layer of anxiety and helplessness to her situation.

**Conclusion**

**105.** The harm to Ms. Cook is ongoing due to a combination of emotional distress, legal and financial strain, and serious concerns for her son's safety and well-being. These factors are compounded by retaliatory actions of defendants, which have not only intensified the family's hardship but also raise significant legal and constitutional issues.

**106.** This complex web of legal and personal challenges faced by Ms. Cook and her family; highlight the multifaceted harm they continue to endure throughout this ordeal. It highlights the misconduct and retaliatory actions by judicial and law enforcement officials, the impact on Ms. Cook's family, and her efforts to seek justice and constitutional protections through the federal court system.

**SUBSTANTIVE CLAIMS**

(Violations of the United States Constitution; 42 U.S.C. § 1983)

**107. Individual Liability and Relevant Constitutional Violations Concerning Plaintiff, Tonya Parks:** Tonya Parks' legal claims against the defendants are grounded in allegations of several constitutional violations and infringements upon multiple amendments, as detailed in the provided documents. These violations are detailed across the provided references and highlight a

complex legal battle involving systemic misconduct and infringement of constitutional rights. The constitutional violations and amendments cited in relation to Tonya Parks include:

A. **First Amendment Violations**: Ms. Parks alleges violations of her First Amendment right to free speech by retaliating against her and her family for exposing corruption. This includes the broader context of retaliation, harassment, discrimination, and civil rights violations that Ms. Parks and her family faced.

B. **Retaliation for Reporting Judicial Corruption**: Ms. Parks and other plaintiffs reported unethical and unlawful conduct by Judge Timothy Henderson and others ("Jane & John Doe") at the Oklahoma County Courthouse. Following these reports, Ms. Parks and the other plaintiffs were targeted and harmed through retaliation, which involved wrongful investigations, criminal charges, and prosecutions without probable cause and without due process. This pattern of retaliation was part of a coordinated effort against those who reported judicial corruption, directly impacting Ms. Parks' First Amendment rights to free speech.

C. **Fourth Amendment Violations**: Ms. Parks proclaims violations of the Fourth Amendment, which protects against unreasonable searches and seizures. This includes claims of false imprisonment and breach of fiduciary duty when an attorney for the estate was allowed by Henderson to commandeer courthouse sheriff deputies to unconstitutionally detain Ms. Parks and her mother, and intimidate them. Additionally, Ms. Parks claims a restriction of her liberty when held at the courthouse as a result of Henderson's policy of directing sheriff deputies.

D. **Fifth Amendment Violations**: Violations of due process under the Fifth Amendment. The Defendants targeted Ms. Parks' for surveillance and harassment at the Oklahoma County

Courthouse, engaging in ex parte communications with court and judicial personnel to manipulate Ms. Parks' litigation strategy regarding her mother's estate. Additionally, a separate claim against Defendant Hunter and other defendants pertains to a fraudulent investigation into Henderson and the erroneous handling of claims submitted under the Oklahoma Notice of Tort Claim Act, which Ms. Parks only discovered in late 2022

E. **Fourteenth Amendment Violations**: Ms. Parks alleges a conspiracy to violate her civil rights under the Fourteenth Amendment, which guarantees due process and equal protection under the law. This includes the broader pattern of retaliation, harassment, discrimination, and civil rights violations by state and county employees and defendants Jane and John Does.

F. **Breach of Fiduciary Duty**: Ms. Parks claims a breach of fiduciary duty by Chicago Title Oklahoma for fronting money to a well-known client (advancing another for personal gain) and participating in the sham sale of her grandmother's house, which ties into the broader allegations of civil rights violations and constitutional infringements.

G. **Conspiracy to Violate Civil Rights**: Ms. Parks alleges a conspiracy among the all defendants to violate her civil rights under the aforementioned amendments, highlighting a coordinated effort to retaliate against her and her family for their advocacy and exposure of corruption.

H. **Interference with Family:** The Parks and Gibson family have endured significant interference in their family relationships and rights, compounded by the stress and mental anguish resulting from actions that have systematically violated their human rights. The involvement of various defendants in these actions has not only led to a tangible loss of

property and inheritance but has also inflicted profound emotional distress upon the Parks and Gibson Family.

**108.** These offenses paint a picture of systemic harassment, discrimination, and violation of constitutional rights, with specific emphasis on the misuse of legal and law enforcement mechanisms to intimidate, retaliate against, and unjustly detain Tonya Parks and her family members.

**109. Individual Liability and Relevant Constitutional Violations Concerning Plaintiff, Bennie Gibson:** Bennie Gibson's legal claims against the defendants are based on allegations of several constitutional violations, which are detailed across the provided references. These violations span multiple amendments, reflecting a broad spectrum of misconduct by the defendants. The specific constitutional violations and amendments infringed upon in relation to Bennie Gibson include:

A. **First Amendment Violations:** Mr. Gibson exercised his right to free speech by filing complaints about judicial corruption and malfeasance while in Texas, related to his wife's probate case in Oklahoma. The defendants did not investigate Mr. Gibson's allegations but instead retaliated against him, infringing upon his First Amendment

B. **Fourth Amendment Violations:** The Fourth Amendment, protects against unreasonable searches and seizures. This includes claims related to the orchestration of Mr. Gibson's attempted arrest and the issuance of false probable cause affidavits. The orchestrated efforts to arrest him, as part of the wider conspiracy and collusion to intimidate and retaliate against his family for exposing corruption, have not only threatened his liberty but have also inflicted significant stress and damage to his reputation, contributing to his emotional distress.

C. **Fifth Amendment Violations:** The actions of the defendants violated Mr. Gibson's Fifth Amendment rights, which guarantees the right to due process of law and protects against the taking of life, liberty, or property without due process. This includes sham investigations into wrongdoing, false charges, and the crafting of a questionable criminal "harassment" charge to intimidate Mr. Gibson.

D. **Fourteenth Amendment Violations:** Mr. Gibson alleges a conspiracy among the defendants to violate his civil rights under the Fourteenth Amendment, which guarantees due process and equal protection under the law. This includes broader patterns of retaliation, harassment, discrimination, and civil rights violations.

E. **Claim of Conspiracy to Violate Constitutional Rights:** Mr. Gibson asserts a conspiracy to violate his constitutional rights, emphasizing a coordinated effort by the defendants to retaliate against him for exposing corruption. The actions of Simmons, Abernathy, and Henderson—including luring Bennie Gibson to Oklahoma under the pretense of subpoenas to depose Frances Gibson while simultaneously preparing a warrant for his arrest—illustrate a calculated misuse of legal processes designed to intimidate the Gibson family. This scheme aimed to deprive Frances Gibson of her inheritance through an undervalued, sham sale of her mother's house, executed without court approval or fair compensation, thus violating her Fifth Amendment rights. The attempts to arrest Bennie upon his arrival, based on false documents and charges, exacerbated the family's distress and contributed to their mental anguish.

F. This manipulation of the legal system to target the Gibson family, particularly through the misuse of subpoenas and warrants, sought not only to dispossess them of their rightful property but also to silence their whistleblowing efforts against judicial and legal

misconduct. The participation of key figures in the judiciary and law enforcement reveals a troubling pattern of retaliation against those who speak out, violating their Fourth and Fourteenth Amendment rights through unlawful searches, seizures, and deprivation of due process. The cumulative impact of these actions underscores a severe infringement on the Gibson family's rights and well-being, highlighting the urgent need for accountability and redress in response to these profound abuses of power.

G. **Declaratory and Injunctive Relief:** Mr. Gibson seeks declaratory judgments and permanent injunctions against the defendants for their unconstitutional actions. This includes requests to prohibit the maintenance and prosecution of charges against him, prohibit unconstitutional ex parte communications, and prevent coordinated retaliation against those who expose corrupt judicial practices.

**110.** These contentions underscore a complex legal battle involving multiple constitutional dimensions and claims of systemic misconduct by the defendants. Mr. Gibson's legal claims are rooted in the assertion that his constitutional rights were violated in retaliation for his advocacy and attempts to expose judicial corruption.

**111. Individual Liability and Relevant Constitutional Violations Concerning Plaintiff, Frances Gibson:** Frances Gibson's legal claims against the defendants are rooted in allegations of constitutional violations that span across multiple amendments. These violations are detailed in the provided documents and highlight a complex legal battle involving systemic misconduct and infringement of constitutional rights. The specific constitutional violations and amendments infringed upon in relation to Frances Gibson include:

A. **Fourth Amendment Violations**: Her Fourth Amendment rights were violated due to restrictions on her liberty while she was held at the courthouse, a situation stemming from

policies directing sheriff deputies. This incident is part of a larger pattern of retaliation and harassment that she claims was orchestrated by the defendants. The Fourth Amendment safeguards individuals against unreasonable searches and seizures, and compelling Frances Gibson to testify in a way that seems intended to gather evidence for a criminal investigation against her husband—especially without proper procedural safeguards—could be seen as an unreasonable seizure of information. This concern is heightened if her testimony was compelled without adequate notice, without the chance to consult with legal counsel, or under circumstances that did not uphold her rights and the legal protections afforded during criminal investigations.

B. **Fifth Amendment Violations**: Francis Gibson's claims include allegations of Fifth Amendment violations, particularly focusing on due process rights and the taking of property without just compensation. This includes the handling of her mother's estate and the sham sale of her mother's house, which she contends was facilitated by the defendants' actions and policies, leading to a taking of her inheritance without just compensation under 42 USC 1983.

C. **Fourteenth Amendment Violations**: Frances Gibson proclaims a violation of her due process rights under the Fourteenth Amendment due to the defendants' actions and policies that led to the sham sale of her deceased mother's house, significantly below its value, without court approval and loss of other inheritances. This act deprived her of property and inheritance without just compensation, constituting a taking under the Fifth Amendment and implicating her Fourteenth Amendment rights due to the procedural and substantive due process violations involved.

D. **Violation of Equal Protection Rights**: The coordinated actions and policies of retaliation and harassment by the defendants, as alleged by Mrs. Gibson, can also be seen as violating her Fourteenth Amendment rights under the Equal Protection Clause. This includes orchestrated false potential arrests, wrongful investigations, and prosecutions without probable cause and due process, aimed at retaliating against Mrs. Gibson and her family for advocacy and exposure of judicial corruption. These actions demonstrate a discriminatory application of law and abuse of legal processes against her, violating her right to equal protection under the law.

E. **Civil Conspiracy to Violate Civil Rights**: Mrs. Gibson argues a civil conspiracy among the defendants to violate her civil rights under the Fourteenth Amendment, alongside the Fourth and Fifth Amendments. This includes actions of coordinated retaliation, harassment, discrimination, and civil rights violations that were part of a broader policy and custom within the Oklahoma County District Attorney's office and under the management of the courthouse. Such a conspiracy, aimed at depriving her of her constitutional rights, directly implicates the Fourteenth Amendment's protections against state actions that violate individual rights.

F. **Implications for Spousal Privilege:** Fourth or Fourteenth Amendments, spousal privilege is a legal principle that protects private communications between spouses from being disclosed in court. The intrusion into this privilege, especially in a manner that seems designed to circumvent the protections normally afforded to such communications, further underscores the due process concerns. The use of civil proceedings to gather evidence for a criminal investigation in this way could be seen as an attempt to bypass the safeguards that the legal system provides to ensure fairness and respect for individual rights.

G. **Conspiracy to Violate Civil Rights**: Frances Gibson argues a civil conspiracy among the defendants to violate her civil rights under the Fourth, Fifth, and Fourteenth Amendments. This includes coordinated actions to retaliate against her, manipulate legal proceedings, and intimidate her and her family, which she contends should "shock the conscience" of any court.

H. **Breach of Fiduciary Duty**: Her claims also encompass a breach of fiduciary duty against various defendants, including allegations against Chicago Title for participating in and fronting money for the sham sale of her deceased mother's house. This ties into the broader allegations of civil rights violations and constitutional infringements.

**112.** These allegations underscore a multifaceted legal challenge involving serious constitutional violations, systemic harassment, and the manipulation of legal processes to retaliate against Francis Gibson and her family.

**113. Individual Liability and Relevant Constitutional Violations Concerning Plaintiff, Nyanza Cook:** Ms. Cook's legal claims against the defendants are based on constitutional violations that span multiple amendments. These violations are detailed across the provided references and highlight a complex legal battle involving systemic misconduct and infringement of constitutional rights. The specific constitutional violations and amendments infringed upon in relation to Ms. Cook include:

A. **First Amendment Violations:** Ms. Cook claims violations of her First Amendment rights through retaliation for her free speech activities. She exercised her right to free speech by filing complaints about judicial corruption and malfeasance, which she believes led to retaliatory actions by defendants, Jane and John Doe's, and public officials, infringing upon her First Amendment rights.

B. **Retaliation for Reporting Judicial Corruption**: Ms. Cook and other plaintiffs reported unethical and unlawful conduct by Judge Timothy Henderson and others ("Jane & John Doe") at the Oklahoma County Courthouse. Following these reports, Ms. Cook and the other plaintiffs were targeted and harmed through retaliation, which involved wrongful investigations, arrests, and prosecutions without probable cause and without due process. This pattern of retaliation was part of a coordinated effort against those who reported judicial corruption, directly impacting Ms. Cook's First Amendment rights to free speech.

C. **Policy of Coordinated Retaliation**: The defendants, including Judge Henderson and public servants believed to have been recruited by him, adopted a policy of coordinated retaliation against persons who reported judicial corruption. This policy led to Ms. Cook and others experiencing harassment, discrimination, and civil rights violations, including deprivation of Constitutional rights and loss of property or money. The actions taken against Ms. Cook for exposing corruption with protected First Amendment free speech constitutes a violation of her First Amendment rights.

D. **Specific Declarations by Ms. Cook**: Ms. Cook specifically proclaims that her son's initial arrest warrant was unsigned and invalid before being improperly signed and backdated by Henderson. She also believes the Oklahoma County District Attorney's Office communicated falsities to Child Protective Services in Texas, and affected her grandparent rights in Oklahoma. These actions were part of the broader retaliation Ms. Cook faced for her advocacy and complaints about judicial corruption, underpinning her First Amendment retaliation claim.

E. **Fourth Amendment Violations**: Ms. Cook's claims include Fourth Amendment violations, which protect against unreasonable searches and seizures. This includes the

backdating of her son's warrant by Defendant Henderson and the subsequent impact on her family, constituting unreasonable searches and seizures under the Fourth Amendment.

F. **Backdating of Arrest Warrant**: Ms. Cook asserts that her son's initial arrest warrant was unsigned and invalid before Defendant Henderson improperly signed and backdated it. This act of backdating the warrant to legitimize her son's arrest after the fact constitutes an unreasonable search and seizure, directly violating the Fourth Amendment. This specific incident highlights the misuse of judicial authority to facilitate an arrest without a valid warrant, undermining the constitutional protections against unreasonable searches and seizures. The backdating of Ms. Cook's son's warrant directly affected her in several significant ways:

G. **Financial Impact**: Ms. Cook provided and posted the money for her son's bond, which directly involved her in the financial aspects of the case. The backdating of the warrant and the subsequent actions taken based on that warrant led to her financial loss, as funds were sent across state lines to post bail. After exposing corruption, her family was forced to forfeit thousands of dollars of bail under suspicious circumstances. This financial loss directly ties Ms. Cook to the consequences of the backdated warrant, challenging the notion that she was not impacted.

H. **Denial of Grandparent Rights**: The actions taken by the defendants, including the backdating of the warrant and the policies established at the courthouse, had a broader impact on Ms. Cook's family rights. Specifically, her grandparent rights were adversely affected, as indicated by the denial of these rights following her exposure of corruption. This denial of rights further underscores the direct impact on Ms. Cook, extending beyond financial implications to her familial relationships.

I. **Involvement in Legal and Court Proceedings**: Ms. Cook's active participation in the court proceedings, including her efforts to expose the corruption and the backdating of the warrant, demonstrates her direct involvement and impact. Her actions and the subsequent retaliation she faced place her at the center of the dispute, directly challenging any claims that she was not impacted.

J. **Untold Doctrine Impact**: The concealed principles adhered to by all defendants, particularly the denial of a public defender to an accused person who bails out of jail, have broader implications for Ms. Cook and others in similar situations. These practices not only affected her son but also had a direct impact on Ms. Cook, especially considering her financial contribution to posting bail and her engagement with the legal system in response to these policies.

K. **Coordinated Retaliation and Policy of Unreasonable Searches**: The broader allegations against the defendants include a policy of coordinated retaliation against persons who report judicial corruption. This policy involved conducting wrongful investigations, arrests, and prosecutions without probable cause and without due process. Such actions, including the initiation of sham investigations and false arrests, represent a systemic violation of the Fourth Amendment's protections against unreasonable searches and seizures. The defendants' actions, as part of this policy, directly impacted Ms. Cook and her family, illustrating a pattern of constitutional violations.

L. **Fifth Amendment Violations**: Ms. Cook's claims also involve the Fifth Amendment, particularly focusing on due process violations. This includes issues related to the artificial increase of her son's bail without proper hearings and the impact on Texas property rights, as well as the communication with Texas agencies like CPS to negatively impact her

family, which she argues constitutes a taking of property without due process or compensation.

M. **Violation of Constitutional Rights**: The actions taken by Defendants and the policies of Oklahoma County violated the Fifth Amendment, which protects against the deprivation of liberty or property without due process of law. Ms. Cook asserts that the artificial increase of her son's bail without a proper hearing constitutes a deprivation of property (the bail amount and potentially encumbering real estate) without due process.

N. Additionally, the **5th Amendment** also protects the right to life by prohibiting the federal government from depriving any person of life, liberty, or property without due process.

O. **Impact on Grandparent Rights**: The Oklahoma judicial system compromised Ms. Cook's grandparent rights by limiting her son's legal defense and destroying the bond with his child, which in turn affected her relationship with her grandchildren. This impact on her grandparent rights was done without due process, violating her Fifth Amendment rights.

P. **Cross-State Impact on Grandparent Rights**: After exposing corruption, Ms. Cook's family was forced to forfeit bail money, and her grandparent rights were denied. The Department of Human Services (DHS) obstructed efforts to place her grandchildren in her care, despite her being a capable and willing relative. This denial of her rights as a grandparent and the interference with her familial relationships, without due process, further violated her Fifth Amendment protections.

Q. **Constitutionally Protected Liberty Interest**: Ms. Cook held a constitutionally protected liberty interest in her grandchildren, along with a substantive due process right to temporary custody. The state's action in breaking up the family unit, despite the presence

of a capable relative willing to assume custody, constitutes an unconstitutional intrusion into the family unit and a violation of her Fifth Amendment rights.

R. **Fourteenth Amendment Violations**: Ms. Cook asserts violations of the Fourteenth Amendment, which ensures due process and equal protection under the law. The defendants' actions, including the denial of her rights as a grandparent and the systemic policies at the courthouse impacting her family, constitute a breach of her Fourteenth Amendment rights.

S. **Violation of Due Process Rights**: The defendants' actions, including the artificial increase of her son's bail without cost hearings and the denial of legal counsel because he bonded out of jail, directly impacted Ms. Cook's due process rights. These actions deprived her and her son of the right to a fair hearing and legal representation, fundamental aspects of due process under the 14th Amendment.

T. **Interference with Family Relations and Grandparent Rights**: Ms. Cook claims that the defendants' policies and actions, such as communicating with Texas agencies like CPS to negatively impact her family, and also infringed upon her grandparent rights in Oklahoma. This interference constitutes a violation of her substantive due process rights under the 14th Amendment, as it affected her constitutionally protected liberty interest in maintaining a relationship with her grandchildren.

U. **State Action Breaking Up Family Unit**: The defendants' actions, led to the obstruction of Ms. Cook's ability to assume custody of her grandchildren, represent a state intrusion into the family unit. This intrusion, particularly when a capable relative is willing to assume custody, violates the substantive due process protections of the 14th Amendment by

unjustifiably interfering with family integrity and the rights associated with family relationships.

V. **Unconstitutional Policies and Practices**: The broader policies and practices established by the defendants, such as denying a public defender to an accused person who bails out of jail and determining child placement outcomes in juvenile court, were systemic actions that expanded into areas affecting Ms. Cook directly. These policies not only impacted her financially but also denied her due process and equal protection under the law, as guaranteed by the 14th Amendment.

**SUBSTANTIVE CLAIMS UNDER FEDERAL LAW**
**(Violations of Federal Law Under the Elder Justice Act of 2010 and The Older Americans Act Reauthorized In 2020)**

**114. Individual Liability and Relevant Constitutional Violations Concerning Plaintiff, Bennie Gibson**: The defendants' actions against Bennie Gibson, as detailed in the provided references, show violations under the Elder Justice Act (EJA) of 2010 and the Older Americans Act (OAA), reauthorized in 2020, in the following ways:

A. **Retaliation for Exercising Free Speech:** Mr. Gibson exercised his right to free speech by reporting judicial corruption and malfeasance associated with his wife's probate case at the Defendant Oklahoma County Courthouse. Instead of investigating these allegations, the defendants conspired to retaliate against him, crafting a questionable criminal "harassment" charge to punish and intimidate him. This retaliation, particularly in light of Mr. Gibson's status as an elderly individual, exemplifies a form of abuse or exploitation that the Elder Justice Act (EJA) and the Older Americans Act (OAA) seek to prevent.

B. **False and Manipulated Charges:** The orchestrated, one-sided charges against Mr. Gibson and the issuance of false probable cause affidavits severely affected his liberty and financial

well-being. The defendants' actions resulted in misdemeanor charges filed without a proper investigation or legitimate basis. This misuse of the legal system to target an elderly individual for exposing corruption exemplifies the types of abuse the Elder Justice Act (EJA) and the Older Americans Act (OAA) aim to prevent, as it directly undermines the victim's financial security and health through significant legal and emotional stress.

C. **Interstate Retaliation and Harassment:** The defendants' attempts to send false documents and communications from Oklahoma to Texas in order to entrap Mr. Gibson for a wrongful arrest exemplify a form of financial and emotional exploitation. These actions were designed not only to intimidate him but also to impose financial burdens, including potential legal fees, and to inflict the emotional distress that comes with facing criminal charges. The interstate nature of these actions highlights the seriousness of the retaliation and its detrimental effects on Mr. Gibson's well-being, echoing the concerns raised by the Elder Justice Act (EJA) and the Older Americans Act (OAA).

D. **Violation of Civil Rights and Due Process:** The defendants' conspiracy to violate Mr. Gibson's constitutional and human rights—including First Amendment retaliation, Fourth Amendment violations through false probable cause affidavits, and Fifth Amendment due process violations in sham investigations—significantly affects his welfare as an elderly individual. The stress, potential financial losses, and encroachments on his liberties resulting from these violations align with the very issues the Elder Justice Act (EJA) and the Older Americans Act (OAA) seek to address for older Americans.

**115.** In conclusion, the defendants' actions against Bennie Gibson—including retaliation for exercising his free speech, false criminal charges, interstate harassment, and civil rights violations—are in direct violation of the protections afforded to elderly individuals under federal

law, particularly the Elder Justice Act of 2010 and the Older Americans Act reauthorized in 2020. These acts are designed to safeguard the financial and health welfare of older adults and to prevent financial exploitation and abuse, all of which are evident in the actions taken against Mr. Gibson.

116.    **Individual Liability and Relevant Constitutional Violations Concerning Plaintiff, Frances Gibson**: The defendants' actions against Frances Gibson, as detailed in the provided references, show violations under the Elder Justice Act (EJA) of 2010 and the Older Americans Act (OAA), reauthorized in 2020, in the following ways:

A.    **Financial Exploitation and Property Taking**: Frances Gibson asserts that the defendants conspired to retaliate against her by orchestrating the fraudulent sale of her deceased mother's house at a significantly undervalued price, all without court approval. This action resulted in her losing her rightful inheritance without fair compensation, constituting financial exploitation and abuse that the Elder Justice Act (EJA) and the Older Americans Act (OAA) seek to prevent. The involvement of Chicago Title in filing false documents and providing financial backing for this sham sale further implicates the defendants in undermining the financial well-being of an elderly individual.

B.    **Retaliation and Harassment**: The defendants' pattern of retaliation and harassment involves initiating sham investigations, abusing their positions within the courthouse, and collaborating with the District Attorney to fabricate charges against her husband for activities protected by the First Amendment. These actions not only violate Frances Gibson's civil rights but also exemplify the type of abuse that the Elder Justice Act (EJA) and the Older Americans Act (OAA) aim to prevent, especially given the considerable stress and emotional distress experienced by her as an elderly individual.

C. **Intimidation and Restriction of Liberty**: The defendants' actions that led to Frances Gibson being held at bay in the courthouse law library under threat of force, and intimidated not to expose the conspiracy to take probate property, further exemplify the violation of her rights under the EJA and OAA. This restriction of her liberty, as a result of policies directing sheriff deputies, and the broader conspiracy to violate her civil rights, directly contribute to the financial exploitation and abuse the EJA and OAA are designed to prevent.

**117.** These actions illustrate the multifaceted nature of the violations against Frances Gibson under the Elder Justice Act of 2010 and the Older Americans Act reauthorized in 2020, highlighting both direct and indirect impacts on her financial and health welfare, and the broader implications of a civil conspiracy to undermine those protections.

## REQUEST FOR JURY TRIAL

**118.** Plaintiffs hereby demand a jury trial in accordance with FRCP Rule 38.

## CLOSING STATEMENT

**119.** The Plaintiffs respectfully come before this Court seeking justice after exhausting every reasonable avenue available to voice their concerns about the violations they have suffered. Each Plaintiff has made repeated, good-faith efforts to address their concerns and the grievances presented in this case, filing numerous complaints with the appropriate agencies and appealing to various government offices, including the Governor, the Attorney General, the Oklahoma Courthouse, the District Attorney's Office, Sheriff Departments, Police Departments, OSBI, FBI,

the Department of Civil Rights, and members of all three branches of the United States Government—legislative, executive, and judicial [Doc.11-2].[14]

**120.** Additionally, Plaintiffs have reached out to agencies responsible for overseeing judicial and legal conduct, including the Oklahoma Bar Association (OBA) and The Oklahoma Council on Judicial Complaints. Yet, despite these extensive efforts, they were met with denials, sham investigations, a lack of response, or were deceived into believing due process would be afforded. Each attempt to seek redress was either ignored or improperly handled, denying them of their constitutional rights.

**121.** Further complicating their pursuit of justice, Plaintiffs recently discovered that their previous legal counsel failed to file key recordings and other critical evidence that would have supported claims and demonstrated the facts of the case. This failure on the part of their former attorney is yet another blow to their quest for truth, forcing them to continue this uphill battle against a system that has consistently denied them fairness and transparency. At every turn, Plaintiffs have been left to fight for truth and justice on their own.

**122.** Plaintiffs now turn to this Court as the last recourse, requesting a fair and thorough resolution of their claims. They ask that justice be served for the violations of their rights, which have caused not only emotional and financial harm but have shaken their faith in the very institutions meant to protect them. May this Court grant the relief sought and ensure that the rights of Plaintiffs are upheld, setting a precedent for fairness and accountability in the face of systemic injustices.

[14] Representative J.J. Humphrey, *Corruption and Human Rights Abuse at Oklahoma County Courthouse Requiring an Immediate Special Investigation*, Volume II, Report for Estate of Ceola Lenox, Justice2All, November 12, 2022, available at https://justice2forall.com/digital-book/volume-ii-report-for-estate-of-ceola-lenox/

## PRAYER FOR RELIEF

123. Based on the above, the Plaintiffs request the following relief:

A. **Seeking Injunctive Relief**: Plaintiffs request a court order to prevent further retaliatory actions by the involved parties, aiming to halt ongoing violations of Plaintiffs and their family's constitutional rights.

B. **Pursuing Declaratory Relief**: Plaintiffs seek a declaratory judgment from the court to have the actions of the involved parties declared unconstitutional.

C. **Injunctive Relief Sought:** Plaintiffs seek injunctive relief *pendent lite* to avoid spoliation of evidence during the case, from false prosecution, and harassment. Plaintiffs can prove they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def Council*, 555 U.S. 7, 20 (2008).

D. **Pleading for Compensatory and Punitive Damages**: Plaintiffs seek *compensatory damages* for emotional distress, mental anguish, reputational harm, and the suffering incurred due to violations of their constitutional rights, including the First Amendment's protection of free speech, the Fourth Amendment's safeguard against unreasonable searches and seizures, the Fifth Amendment's due process protections and prohibition against self-incrimination, and the Fourteenth Amendment's guarantees of equal protection under the law and due process.

E. Additionally, Plaintiffs request *punitive damages* to address the malice, willfulness, or reckless indifference displayed by the defendants. These punitive and exemplary damages are essential to deter the state of Oklahoma from continuing to harm citizens who expose corruption.

F. **Malicious Prosecution and Abuse of Power Claims**: Plaintiffs seek relief for claims specifically addressing malicious prosecution and abuse of power, including the directed filing of a misdemeanor against Bennie Gibson and the misuse of judicial power for retaliatory purposes.

G. **Bivens Action**: Although typically applied to federal officers, a Bivens action allows for lawsuits against individuals for constitutional violations. Given the unique circumstances and the involvement of state actors, Plaintiffs seek a Bivens-like approach against state officials for direct constitutional infringements.

H. **Request for Special Master**: Plaintiffs request the appointment of a Special Master to investigate communications between defendants and their counsel, as well as between defendants and other parties, under the crime-fraud exception to privilege. This request is part of their effort to uncover and prove the wrongful acts committed by the defendants.

I. **Additional Request for Relief**: Plaintiffs respectfully urge the court to dismiss the warrant and charges against Mr. Gibson, arguing that they are founded on false information and are part of a retaliatory scheme aimed at him for exercising his constitutional rights. As a Vietnam veteran and an elderly individual, Mr. Gibson poses no threat to anyone. His concerns about judicial corruption, along with the distress experienced by his elderly wife and deceased mother, are protected by the First Amendment.[15]

J. **Filing for Damages for Constitutional Violations**: Plaintiffs seek to address civil rights violations under 42 U.S.C. § 1983, which protects rights guaranteed by the Constitution or

[15] According to an audio recording of a conversation between Plaintiff Parks and Defendant Counsel Rod Heggy [Doc 125-3], during a discussion with DA Heggy, who represents Defendant Abernathy, the Sheriff of Oklahoma County, the author of the probable cause affidavit, Ms. Park portrays her father, Mr. Gibson, as a man of God with strong discernment and guidance, noting that he inspired her to reach out to him. She acknowledges her father as a man of faith, a Vietnam veteran, the hero of their family, and her irreplaceable best friend. In response, Heggy remarked, "He sounds like a man after my own heart," referring to his own sentiments.

federal law from infringement by individuals acting under state authority. This action aims to confront the coordinated retaliation, wrongful investigations, arrests, prosecutions without due process, and other civil rights violations that Plaintiffs and their family have endured.

K. **Supplemental Jurisdiction for State Law Claims**: Plaintiffs are invoking supplemental jurisdiction to include state law claims related to fraud, embezzlement, and other misconduct since these claims derive from a common nucleus of operative fact.

L. **Award of Attorney Fees and Cost:** Plaintiffs request the Court award reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

M. **Actual Damages Collectively Claim:** Actual damages collectively within the State of Oklahoma's AIG policy (35,000,000 dollars aggregate with a $7,500,000 dollar sublimit) and excess loss policy ($15,000,000.00) for each Plaintiff.

N. **Any Other Relief**: Plaintiffs request any additional relief that the Court finds just and appropriate based on the facts that may emerge during discovery and in accordance with applicable law.

**Dated: December 6, 2024**

Respectfully submitted,

Tonya Parks
1401 Bristlewood Dr
Mckinney, Tx 75072
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

Bennie Gibson
7200 Old Mill Run
Fort Worth, Tx 76133
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

Frances Gibson
7200 Old Mill Run
Fort Worth, Tx 76133
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

Nyanza Cook
6503 Marble Falls Dr
Killeen, Tx 76542
714-794-4190
nyanzacook@gmail.com
*Plaintiff*

Case 5:23-cv-00041-R Document 155 Filed 12/10/24 Page 71 of 72

## CERTIFICATE OF SERVICE

I hereby certify that on this day of December 6, 2024, a true and correct copy of the foregoing Third Amended Complaint will be served on all counsel of record certified mail.

This was mailed to the following:

| | |
|---|---|
| **Stefanie E. Lawson**<br>Attorney General's Ofc-NE<br>21 STREET-OKC<br>313 NE 21st St<br>Oklahoma City, OK 73105<br>405-521-4274<br>Fax: 405-521-4518<br>Email: stefanie.lawson@oag.ok.gov | **Carri A. Remillard**<br>District Attorney's Ofc-OKC<br>320 Robert S Kerr Ave<br>Suite 505<br>Oklahoma City, OK 73102<br>405-713-1600<br>Fax: 405-713-1749<br>Email: carri.remillard@oklahomacounty.org |
| **Rodney J. Heggy**<br>OK County DA - Civil Division<br>Leadership Square<br>211 N. Robinson<br>Suite 700 N<br>Oklahoma City, OK 73102<br>405-713-1600<br>Fax: 405-713-1567<br>Email: rod.heggy@oklahomacounty.org | **Alex Bednar**<br>2802 Cold Brook<br>Edmond, OK 73003<br>405-420-9030<br>Email: bednarconsult@gmail.com<br><br>Pro se for Alex Bednar |
| | |

Respectfully submitted,

Tonya Parks
1401 Bristlewood Dr
Mckinney, Tx 75072
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

Bennie Gibson
7200 Old Mill Run
Fort Worth, Tx 76133
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

Frances Gibson
7200 Old Mill Run
Fort Worth, Tx 76133
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

Nyanza Cook
6503 Marble Falls Dr
Killeen, Tx 76542
714-794-4190
nyanzacook@gmail.com
*Plaintiff*



Case 5:23-cv-00041-R Document 155-1 Filed 12/10/24 Page 1 of 1
PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED
PRESS FIRMLY TO SEAL
FROM:
Tonya Parks
1401 Bristlewood Dr
Mckinney TX 75072
RECEIVED
DEC 09 2024
Clerk, U.S. District Court
WEST.DIST.OF OKLA.
TO:
United States Western District
200 NW 4th Street
Oklahoma City OK 73102
UNITED STATES POSTAL SERVICE
Retail
US POSTAGE PAID
$10.45
Origin: 75071
12/06/24
4854910070-08
PRIORITY MAIL®
0 Lb 12.80 Oz
RDC 03
EXPECTED DELIVERY DAY: 12/09/24
C009
SHIP TO:
200 NW 4TH ST
OKLAHOMA CITY OK 73102-3026
USPS TRACKING® #
9505 5101 0587 4341 2193 01
schedule free Package Pickup, scan the QR code.
USPS.COM/PICKUP
how2recycle.info
PAPER POUCH
EP14F October 2023
OD: 12 1/2 x 9 1/2
PS00001000014
This package is made from post-consumer waste. Please recycle - again.
This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.

# Exhibit 2



Janet Morrow
Administrator
Capital Assets Management

OKLAHOMA
Office of Management
& Enterprise Services

Steven Harpe
Director

May 31, 2022

Tonya Parks
1401 Bristlewood Drive
McKinney, TX 75072-2728

RE: Tort Claim of: Tonya Parks
Risk Management No: 2220030311

Dear Ms. Parks:

The Office of the Oklahoma Attorney General has completed the process of evaluating the above-referenced tort claim. After careful consideration of the facts, your claim is hereby denied.

As stated in 51 O.S. § 157 (A), a claim is deemed denied if the state or political subdivision fails to approve the claim in its entirely within 90 days, unless the state or political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period. Your claim was deemed denied by Operation of Law as of May 27, 2022, due to the expiration of ninety days from February 25, 2022, the date on which the 90 days began.

Pursuant to 51 O.S. § 157 (B) no actions for any cause arising under the Governmental Tort Claims Act (GTCA) shall be maintained unless valid notice has been given and the action commenced within one hundred eighty (180) days after the denial of the claim. The 180 days will expire on November 22, 2022. Please be advised that this letter does not extend the statutory time limits prescribed by the GTCA.

You have the right, under Oklahoma law, to differ with the decision to deny this tort claim. The right to seek compensation by suit in District Court may be restricted by the limitations period prescribed by law.

Sincerely,

*Adriano Coronel*

Claims Manager
State of Oklahoma Risk Management Department

Certified Mail: **7020 2450 0001 7473 4075**

RISK MANAGEMENT · P.O. BOX 53364 · OKLAHOMA CITY, OK 73152 · OFFICE: 405-521-4999 · FAX 405-522-4442
STATE OF OKLAHOMA · OFFICE OF MANAGEMENT & ENTERPRISE SERVICES · OMES.OK.GOV



STATE OF OKLAHOMA
Office of Management and Enterprise Services
Risk Management
P.O. Box 53364
Oklahoma City, OK 73152-3364

Tonya Parks
1401 Bristlewood Drive
McKinney, TX 75072-2728



Steven Harpe
Director

OKLAHOMA
Office of Management
& Enterprise Services

Janet Morrow
Administrator
Capital Assets Management

May 31, 2022

Bennie Ray Gibson
7200 Old Mill Run
Fort Worth, TX 76133-7038

RE: Tort Claim of: Bennie Ray Gibson
Risk Management No: 2220030312

Dear Mr. Gibson:

The Office of the Oklahoma Attorney General has completed the process of evaluating the above-referenced tort claim. After careful consideration of the facts, your claim is hereby denied.

As stated in 51 O.S. § 157 (A), a claim is deemed denied if the state or political subdivision fails to approve the claim in its entirely within 90 days, unless the state or political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period. Your claim was deemed denied by Operation of Law as of May 27, 2022, due to the expiration of ninety days from February 25, 2022, the date on which the 90 days began.

Pursuant to 51 O.S. § 157 (B) no actions for any cause arising under the Governmental Tort Claims Act (GTCA) shall be maintained unless valid notice has been given and the action commenced within one hundred eighty (180) days after the denial of the claim. The 180 days will expire on November 22, 2022. Please be advised that this letter does not extend the statutory time limits prescribed by the GTCA.

You have the right, under Oklahoma law, to differ with the decision to deny this tort claim. The right to seek compensation by suit in District Court may be restricted by the limitations period prescribed by law.

Sincerely,

*Adriano Coronel*

Claims Manager
State of Oklahoma Risk Management Department

Certified Mail: **7020 2450 0001 7473 4068**



Janet Morrow
Administrator
Capital Assets Management

Steven Harpe
Director

May 31, 2022

Frances Ann Gibson
7200 Old Mill Run
Fort Worth, TX 76133-7038

RE: Tort Claim of: Francis Ann Gibson
Risk Management No: 2220030313

Dear Ms. Gibson:

The Office of the Oklahoma Attorney General has completed the process of evaluating the above-referenced tort claim. After careful consideration of the facts, your claim is hereby denied.

As stated in 51 O.S. § 157 (A), a claim is deemed denied if the state or political subdivision fails to approve the claim in its entirely within 90 days, unless the state or political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period. Your claim was deemed denied by Operation of Law as of May 27, 2022, due to the expiration of ninety days from February 25, 2022, the date on which the 90 days began.

Pursuant to 51 O.S. § 157 (B) no actions for any cause arising under the Governmental Tort Claims Act (GTCA) shall be maintained unless valid notice has been given and the action commenced within one hundred eighty (180) days after the denial of the claim. The 180 days will expire on November 22, 2022. Please be advised that this letter does not extend the statutory time limits prescribed by the GTCA.

You have the right, under Oklahoma law, to differ with the decision to deny this tort claim. The right to seek compensation by suit in District Court may be restricted by the limitations period prescribed by law.

Sincerely,

*Adriano Coronel*

Claims Manager
State of Oklahoma Risk Management Department

Certified Mail: **7020 2450 0001 7473 4068**



STATE OF OKLAHOMA
Office of Management and Enterprise Services
Risk Management
P.O. Box 53364
Oklahoma City, OK 73152 3364

Bennie Ray Gibson
7200 Old Mill Run
Fort Worth, TX 76133-7038

# Exhibit 3

 **Justice Too - Tonya Parks <justicetooforall@gmail.com>**

## RE: [EXTERNAL]: Re: open records request

**Szymak, Christin** <Christin.Szymak@oscn.net> Mon, Aug 12, 2024 at 3:28 PM
To: Tonya Parks <justicetooforall@gmail.com>

Dear Ms. Parks,

Pursuant to your Open Records Request made of the Administrative Office of the Courts on August 9, 2024, concerning the timing of the sealing of certain documents in Oklahoma County Case PB-2016-721, please be advised that all records listed in your request were sealed from public view on March 15, 2024, by the Office of the Oklahoma County Court Clerk.

Sincerely,

CHRISTIN SZYMAK | *Deputy General Counsel*

Administrative Office of the Courts | Supreme Court of Oklahoma
2100 N. Lincoln Blvd., Ste. 3 | Oklahoma City, OK 73105
Office: 405.556.9892 | Email: Christin.Szymak@oscn.net

**Confidentiality Notice:** This e-mail communication and any attachments is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential, or otherwise protected from disclosure. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that you have received this communication in error and that any review, release, disclosure, dissemination, distribution, or copying of it or its contents is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of this communication and any attachments.

**From:** Tonya Parks <justicetooforall@gmail.com>
**Sent:** Friday, August 9, 2024 1:56 PM
**To:** Szymak, Christin <Christin.Szymak@oscn.net>
**Subject:** Fwd: [EXTERNAL]: Re: open records request

You don't often get email from justicetooforall@gmail.com. Learn why this is important

Hello. Thank you for meeting with me today.

[Quoted text hidden]

 Justice Too - Tonya Parks <justicetooforall@gmail.com>

**RE: [EXTERNAL]: Re: open records request**

**Szymak, Christin** <Christin.Szymak@oscn.net> Fri, Aug 9, 2024 at 1:57 PM
To: Tonya Parks <justicetooforall@gmail.com>
Cc: "Lane, Sarah" <Sarah.Lane@oscn.net>

Thank you, Ms. Parks,

I will review this with Sarah Lane and get back to you.

Have a good day.

Sincerely,

CHRISTIN SZYMAK | *Deputy General Counsel*

Administrative Office of the Courts | Supreme Court of Oklahoma
2100 N. Lincoln Blvd., Ste. 3 | Oklahoma City, OK 73105
Office: 405.556.9892 | Email: Christin.Szymak@oscn.net

**Confidentiality Notice:** This e-mail communication and any attachments is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential, or otherwise protected from disclosure. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that you have received this communication in error and that any review, release, disclosure, dissemination, distribution, or copying of it or its contents is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of this communication and any attachments.

**From:** Tonya Parks <justicetooforall@gmail.com>
**Sent:** Friday, August 9, 2024 1:56 PM
**To:** Szymak, Christin <Christin.Szymak@oscn.net>
**Subject:** Fwd: [EXTERNAL]: Re: open records request

Hello. Thank you for meeting with me today.

You don't often get email from justicetooforall@gmail.com. Learn why this is important

Case Number PB-2016-721.

## Background and Request Details

On May 2, 2024, I submitted an open records request to the Oklahoma County Clerk's Office seeking information related to the sealing of 14 court documents previously unsealed. These documents, filed on December 17, 2021, December 21, 2021, February 1, 2022, April 5, 2022, April 19, 2022, January 4, 2023, February 17, 2023, November 16, 2023, and November 17, 2023, were recently sealed from public view.

Specifically, I requested:

- The name of the person in the County Clerk's Office or any office who sealed these documents.
- The date when each document was sealed.

Sent from my iPhone

00163

**From:** Court Clerk's Office of Oklahoma County - Online Records Request <webmaster@oklahomacounty.org>
**Sent:** Thursday, May 2, 2024 1:54 PM
**To:** webmaster@oklahomacounty.org
**Subject:** [EXTERNAL]: The form submitted by Tonya Parks arrived.

RECEIVED
MAY 0 2 2024

Hello administrator,

There is a new form needs to be viewed.
The form is submitted by Tonya Parks, here are the detail info:

| Name | Content |
|---|---|
| Html0 | |
| Case Number (if available) | PB-2016-721 |
| Year (or approximate year) Case was filed (4-digit ex. 2016) | 2016 |
| Parties Named | Estate of Ceola Lenox |
| AKA or Alias if used | |
| Title of Document(s) | Case Number PB-2016-721 - OSCN Information regarding name of Clerk who entered Sealed documents that were previously unsealed. Date of document filing are: 12-17-2021, 12-21-2021, 02-01-2022, 04-05-2022, 2 documents on 04-06-2022, , 3 documents on 4-13-2022, 4-19-2022, 1-4-2023, 02-17-2023, 11-16-2023, 11-17-2023. I need to know who recently went into the system and sealed these documents as they were original unsealed for public view and they are now sealed. I also need to know the date someone went into the system and sealed these documents. On May 1, 2024, I contacted the Supreme Court Network and she said that this information can |

be provided. The Court Clerk would have to send an email to the supreme court network at helpdesk@oscn.net and request this information so that they can be provided this requested information. What is needed in this open records request at this time is the name of the person in the county clerk's office or any office who recently sealed these documents and the date they recently sealed them. Thank you in advance for all your help. I can be reached at 214-980-8816. I would like to see if I can get this request expedited so that I can review. Best Regards, Tonya Parks

Approximate filing date (3-digit month, dash, and 4-digit year ex. Jun-2016)

See dates of documents referenced in Title of Documents - Date of documents that were unsealed and now sealed are December 17, 2021 to 11-17-2023. Its a total of 14 documents that were unsealed and now sealed.

Special Instructions/Requests

I am not looking for the documents themselves. I am looking for the back office reports that will show who sealed the documents and what date the documents were sealed. This information comes from the Supreme Court Network. They control the system so they will be able to generate the report. I spoke with them yesterday. Is this something you can help me with as this information is kept with the Supreme Court Network - helpdest@osnc.net.

Html2

Date of Marriage (or approximate date ex. Jun-2016)

Applicant and/or Groom's Name (First and Last name are mandatory)

Applicant/Bride's Maiden Name or Last Name used on Application (First & Last name are mandatory)

Html3

| | |
|---|---|
| Name | Tonya Parks |
| Email Address (email address is required) | justicetooforall@gmail.com |
| Phone Number | 214-980-8816 |
| Street Address | 1401 Bristlewood |
| City | Mckinney |
| State | TX |
| Zip Code | 75072 |
| Number of copies (required) | 1 |
| Do documents need to be certified (additional fees apply)? | No |
| Would you like copies emailed to you (if requesting certified copies, they cannot be emailed)? | Yes |
| Email Address (*required if requesting emailed copies; not part of the form submission) | justicetooforall@gmail.com |
| Html5 | |

From Page Url: https://www.oklahomacounty.org/Elected-Offices/Court-Clerk/Request-Records

User Name:Tonya Parks
User Email:justicetooforall@gmail.com
User IP:99.25.239.40
Submission Date:5/2/2024 1:54:02 PM

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you have contacted the sender and know the content is safe and was requested by you.

CAUTION: This email originated outside of the Oklahoma State Courts Network. Please do not open attachments or click links unless you recognize the sender and know the content is safe.

# Exhibit 4



The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the offi record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this informat is governed by this act, as well as other applicable state and federal laws.

**IN THE DISTRICT COURT IN AND FOR OKLAHOMA COUNTY, OKLAHOMA**

ESTATE OF LENOX
CASE SEALED AS PER COURT ORDER OF 5/11/2021

**No. PB-2016-721**
**(Probate: PROBATE)**

Filed: 06/23/2016
Closed: 08/12/2020

Judge: Riesen, Tom

## PARTIES

None

## ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| COHENOUR, CYNTHIA (Bar #12245)<br>NASH, COHENOUR, & GIESSMANN, P.C.<br>4101 PERIMETER CENTER DR<br>SUITE 200<br>OKLAHOMA CITY, OK 73112 | |
| Dixon, Bryan C Jr (Bar #32768)<br>1725 SIGNAL RIDGE<br>STE 140<br>EDMOND, OK 73013 | |
| ELWELL, JARED J (Bar #31986)<br>ELWELL AND SPAIN PLLC<br>2500 BOARDWALK STREET , SUITE 207<br>NORMAN, OK 73069 | |
| Myles, M Mark (Bar #22243)<br>4312 N CLASSEN BLVD<br>OKLAHOMA CITY, OK 73118 | |
| NASH, ROLLIN (Bar #6584)<br>4101 PERIMETER CTR DR<br>SUITE 200<br>OKLAHOMA CITY, OK 73112 | |

## EVENTS

| Event | Party | Docket |
|---|---|---|
| Tuesday, August 2, 2016 at 9:00 AM<br>LTRS ADMIN | | Richard Kirby |
| Wednesday, May 17, 2017 at 9:00 AM<br>PET SELL REAL PROP | | Richard Kirby |
| Wednesday, October 18, 2017 at 9:00 AM<br>APLI ORD APPROVING SALE OF REAL PROP | | Richard Kirby |

| Event | Party | Docket | Repor |
|---|---|---|---|
| Tuesday, February 27, 2018 at 9:00 AM<br>RETURN OF SALE (STRIKE) | | Richard Kirby | |
| Thursday, May 17, 2018 at 11:00 AM<br>APLI ORD APPROVING SALE | | Richard Kirby | |
| Tuesday, August 14, 2018 at 9:00 AM<br>APLI FOR AMENDED ORDER APPROVING SALE OF REAL PROPERTY | | Richard Kirby | |
| Tuesday, April 9, 2019 at 9:00 AM<br>MOTION TO COMPEL | | Richard Kirby | |
| Wednesday, May 1, 2019 at 9:00 AM<br>FA CONT TO 5-16-19 | | Richard Kirby | |
| Thursday, May 16, 2019 at 1:30 PM<br>PROBATE HEARING/F.A.GIBSON PETMOT IN OPPOSITION TO D.G.LENNOX FA | | Richard Kirby | |
| Tuesday, November 12, 2019 at 1:30 PM<br>OBJ TO SUBPOENA FOR PRODUCTION OF DOCUMENTS, MOTION T QUASH & MOTIN FOR P.O. | | Richard Kirby | |
| Wednesday, December 11, 2019 at 1:30 PM<br>MOION TO CONT HEARING | | Richard Kirby | |
| Tuesday, January 21, 2020 at 1:30 PM<br>TEMP LTRS | | Richard Kirby | |
| Tuesday, February 11, 2020 at 1:30 PM<br>SUPPLEMENTAL REQUEST SET ASIDE FA | | Richard Kirby | |
| Tuesday, May 19, 2020 at 3:00 PM<br>ONE HOUR HEARING (RE SET FROM 5-15-20) (STRICKEN) | | James M. Siderias | |
| Thursday, June 18, 2020 at 3:30 PM<br>ONE HEAR VIDEO CONFERENCE | | James M. Siderias | |
| Tuesday, May 11, 2021 at 9:00 AM<br>APPLICATION TO ALLOW ADM | | K. Nikki Kirkpatrick | |
| Thursday, September 16, 2021 at 10:00 AM<br>BENNIE R. GIBSON PETITIONER AND SPOUSE OF THE HEIR AND DAUGHTER OF THE DECEASED FRANCES A. GIBSON MOTION TO RECUSE JUDGE NIKKI KIRKPATRICK ON GROUNDS OF GRIEVOUS MISCONDUCT AND INTERFERENCE IN THE PROBATE OF THE DECEASED PERSON CEOLA M. LENOX | | K. Nikki Kirkpatrick | |
| Friday, December 3, 2021 at 9:00 AM<br>OBJECTION TO SPECIAL MASTER | | C. Brent Dishman | |
| Tuesday, February 1, 2022 at 3:00 PM<br>MOT TO UNSEAL FILE | | Richard Kirby | |
| Monday, November 20, 2023 at 1:30 PM<br>PETITION FOR LETTERS OF ADMIN | | Tom Riesen | |

## ISSUES

For cases filed before 1/1/2000, ancillary issues may not appear except in the docket.

**Issue # 1.** Issue: PROBATE (PROBATE)
Filed By:
Filed Date: 06/23/2016

| Party Name | Disposition Information |
|---|---|
| **Deceased:** Lenox, Ceola M | **Disposed: LETTERS FILED, 08/12/2016. Judge** |
| **Deceased:** Lenox, Ceola M | **Disposed: OTHER, 08/12/2020. Judge** |

## DOCKET

| Date | Code | Description | |
|---|---|---|---|
| **06-23-2016** | **[ TEXT ]** | PROBATE INITIAL FILING. | **#1** |
| **06-23-2016** | **[ PROBATE ]** | PROBATE | |

06-23-2016 [ DMFE ] $
DISPUTE MEDIATION FEE

06-23-2016 [ PFE1 ] $ 13
PETITION

06-23-2016 [ PFE7 ] $
LAW LIBRARY FEE

06-23-2016 [ OCISR ] $ 2
OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND

06-23-2016 [ OCJC ] $
OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND

06-23-2016 [ OCASA ] $
OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES

06-23-2016 [ SSFCHSCPC ] $ 1
SHERIFF'S SERVICE FEE FOR COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER

06-23-2016 [ CCADMINCSF ] $
COURT CLERK ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER

06-23-2016 [ CCADMIN0155 ] $
COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION

06-23-2016 [ SJFIS ] $
STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES

06-23-2016 [ CCADMIN04 ] $
COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS

06-23-2016 [ LTF ] $ 1
LENGTHY TRIAL FUND

06-23-2016 [ AFM ]
AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

06-23-2016 [ OH ]
ORDER FOR HEARING PETITION FOR APPOINTMENT OF ADMINISTRATOR
Document Available (SEALED DOCUMENT)

06-23-2016 [ NOH ]
NOTICE OF HEARING PETITION FOR LETTER OF ADMINISTRATION
Document Available (SEALED DOCUMENT)

06-23-2016 [ P ]
PETITION FOR LETTERS OF ADMINISTRATION
Document Available (SEALED DOCUMENT)

06-23-2016 [ TEXT ]
OCIS HAS AUTOMATICALLY ASSIGNED JUDGE KIRBY, RICHARD TO THIS CASE.

06-23-2016 [ ACCOUNT ]
RECEIPT # 2016-3900994 ON 06/23/2016.
PAYOR:SMITH SIMMONS PLLC TOTAL AMOUNT PAID: $196.66.
LINE ITEMS:
PB-2016-721: $135.00 ON AC01 CLERK FEES.
PB-2016-721: $6.00 ON AC23 LAW LIBRARY FEE.
PB-2016-721: $1.66 ON AC31 COURT CLERK REVOLVING FUND.
PB-2016-721: $5.00 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES.
PB-2016-721: $1.55 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND.
PB-2016-721: $2.00 ON AC64 DISPUTE MEDIATION FEES.
PB-2016-721: $0.45 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS.
PB-2016-721: $25.00 ON AC79 OCIS REVOLVING FUND.
PB-2016-721: $10.00 ON AC81 LENGTHY TRIAL FUND.
PB-2016-721: $10.00 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY.

**06-28-2016 [ PP ]**

PROOF OF PUBLICATION/JOURNAL RECORD INV #11102224 $37.23 PD DIRECT
Document Available (SEALED DOCUMENT)

**08-02-2016 [ CTFREE ]**

JUDGE KIRBY; LETTERS ADMINISTRATION - ATTY JARRED ELWELL APPEARS WITH PETITIONER, DANNIE LENOX, LETTERS AND ORDER APPROVED. BOND WAIVED. NOTICES APPROPRIATE

**08-02-2016 [ DISPLTF ]** #1

LETTERS

**08-04-2016 [ LTA ]**

LETTERS OF ADMINISTRATION
Document Available (SEALED DOCUMENT)

**08-04-2016 [ O ]**

ORDER FOR ISSUANCE OF LETTERS OF ADMINISTRATION, APPOINTMENT OF PERSONAL REPRESENTATIVE, DETERMINATION OF HEIRS AND TERMINATION OF JOINT TENANCY
Document Available (SEALED DOCUMENT)

**08-15-2016 [ NOTC ]**

NOTICE TO CREDITORS
Document Available (SEALED DOCUMENT)

**08-30-2016 [ PP ]**

PROOF OF PUBLICATION / THE JOURNAL RECORD / INV#11147329 / $50.20 PAID
Document Available (SEALED DOCUMENT)

**04-24-2017 [ P ]**

PETITION TO SELL REAL PROPERTY BY PUBLIC SALE
Document Available (SEALED DOCUMENT)

**04-24-2017 [ PTS ]** $ 4

PETITION TO SELL REAL ESTATE

**04-24-2017 [ OCISR ]** $ 2

OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND

**04-24-2017 [ OCJC ]** $

OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND

**04-24-2017 [ OCASA ]** $

OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES

**04-24-2017 [ CCADMIN0155 ]** $

COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION

**04-24-2017 [ SJFIS ]**

STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES

**04-24-2017 [ DCADMIN155 ]**

DISTRICT COURT ADMINISTRATIVE FEE ON $1.55 COLLECTIONS

**04-24-2017 [ DCADMIN05 ]**

DISTRICT COURT ADMINISTRATIVE FEE ON $5 COLLECTIONS

**04-24-2017 [ CCADMIN04 ]**

COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS

**04-25-2017 [ MO ]**

BENNIE R. GIBSON INTERESTED PERSON FILE HIS MOTION FOR SANCTION FOR VIOLATION OF PROBATE PROCEDURAL RULES OF COURT
Document Available (SEALED DOCUMENT)

**05-04-2017 [ OH ]**

ORDER FOR HEARING PETITION TO SELL REAL PROPERTY
Document Available (SEALED DOCUMENT)

**05-04-2017  [ ACCOUNT ]**

RECEIPT # 2017-4119803 ON 05/04/2017.
PAYOR: SMITH SIMMONS TOTAL AMOUNT PAID: $ 76.64.
LINE ITEMS:
PB-2016-721: $43.00 ON AC01 CLERK FEES.
PB-2016-721: $0.66 ON AC31 COURT CLERK REVOLVING FUND.
PB-2016-721: $5.00 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES.
PB-2016-721: $1.55 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND.
PB-2016-721: $0.45 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS.
PB-2016-721: $0.98 ON AC67 DISTRICT COURT REVOLVING FUND.
PB-2016-721: $25.00 ON AC79 OCIS REVOLVING FUND.

**05-10-2017  [ CRF ]**                                                                    $ 20

COURT REPORTER FEE-TRIAL ON MERITS

**05-10-2017  [ REQ ]**

REQUEST FOR LICENSED COURT REPORTER AT HEARING FOR PETITION TO SELL REAL PROPERTY ON MAY 17, 2017 AT 9:00 A.M.
Document Available (SEALED DOCUMENT)

**05-10-2017  [ ACCOUNT ]**

RECEIPT # 2017-4123843 ON 05/10/2017. COURT REPORTER FEE
PAYOR: TONYA PARKS TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $20.00 ON AC01 CLERK FEES.

**05-12-2017  [ AFM ]**

AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

**05-15-2017  [ PP ]**

PROOF OF PUBLICATION/EDMOND SUN/#23163295/$35.30
Document Available (SEALED DOCUMENT)

**05-17-2017  [ CTFREE ]**

JUDGE KIRBY; PETITION TO SELL REAL PROPERTY - ATTY ROE SIMMONS APPEARS. PETITION TO SELL REAL PROPERTY APPROVED
WITHOUT OBJECTION.

**05-18-2017  [ CTFREE ]**

JUDGE KIRBY'S COURT MINUTE
Document Available (SEALED DOCUMENT)

**08-08-2017  [ MO ]**

MOTION TO WITHDRAW AND SUBSTITUTE COUNSEL OF RECORD
Document Available (SEALED DOCUMENT)

**08-09-2017  [ O ]**

ORDER GRANTING MOTION TO WITHDRAW AND SUBSTITUTE COUNSEL OF RECORD
Document Available (SEALED DOCUMENT)

**09-15-2017  [ O ]**

ORDER APPROVING PETITION TO SELL
Document Available (SEALED DOCUMENT)

**09-20-2017  [ APLI ]**

APPLICATION FOR ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

**09-20-2017  [ CT ]**

CERTIFICATE FOR PROOF OF PUBLICATION
Document Available (SEALED DOCUMENT)

**09-21-2017  [ OH ]**

ORDER FOR HEARING RETURN OF SALE
Document Available (SEALED DOCUMENT)

**09-26-2017  [ NOH ]**

NOTICE OF HEARING
Document Available (SEALED DOCUMENT)

09-26-2017 [ AFM ]
AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

10-06-2017 [ PP ]
PROOF OF PUBLICATION EDMOND SUN INV #00452875 $60.83 PD DIRECT
Document Available (SEALED DOCUMENT)

10-17-2017 [ PP ]
PROOF OF PUBLICATION JOURNAL RECORD INV # 00452875 $ 60.83 PD DIRECT
Document Available (SEALED DOCUMENT)

10-18-2017 [ CTFREE ]
JUDGE KIRBY : SALE REAL PROPERTY CONFIRMED WITHOUT OBJECTION

10-18-2017 [ O ]
ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

10-20-2017 [ O ]
ORDER GRANTING MOTION TO WITHDRAW AND SUBSTITUTE COUNSEL OF RECORD
Document Available (SEALED DOCUMENT)

12-19-2017 [ PP ]
PROOF OF PUBLICATION/THE EDMOND SUN/ACCT# 23163295 / $67.32 PAID
Document Available (SEALED DOCUMENT)

01-08-2018 [ APLI ]
APPLICATION FOR ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

01-29-2018 [ OH ]
ORDER FOR HEARING RETURN OF SALE
Document Available (SEALED DOCUMENT)

03-05-2018 [ CNOTE ]
KIRBY- MOVING PARTY STRIKES RETURN OF SALE DUE TO ISSUES WITH NOTICE ; WILL RESET HEARING AT A LATER DATE

04-06-2018 [ PP ]
PROOF OF PUBLICATION AD # 00460972 $68.28 PAID DIRECT BY ATTORNEY
Document Available (SEALED DOCUMENT)

04-24-2018 [ OH ]
ORDER FOR HEARING RETURN OF SALE
Document Available (SEALED DOCUMENT)

04-24-2018 [ APLI ]
APPLICATION FOR ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

05-10-2018 [ PP ]
PROOF OF PUBLICATION / THE EDMOND SUN #00463169 $72.62 PAID DIRECT
Document Available (SEALED DOCUMENT)

05-17-2018 [ CTFREE ]
JUDGE KIRBY; APLI FOR ORDER APPROVING SALE - ATTY ROE SIMMONS APPEARS. NO ONE APPEARS TO OBJECT. ORDER APPROVI SALE GRANTED.

05-17-2018 [ O ]
ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

05-17-2018 [ CTFREE ]
JUDGE KIRBY COURT MINUTE
Document Available (SEALED DOCUMENT)

05-17-2018 [ AFM ]
AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

06-28-2018 [ APLI ]

APPLICATION FOR AMENDED ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

07-05-2018 [ OH ]

ORDER FOR HEARING AMENDED RETURN OF SALE
Document Available (SEALED DOCUMENT)

07-05-2018 [ NOH ]

NOTICE OF HEARING
Document Available (SEALED DOCUMENT)

07-12-2018 [ AFM ]

AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

07-27-2018 [ PP ]

PROOF OF PUBLICATION / THE EDMOND SUN #00467664 $69.92 PAID DIRECT
Document Available (SEALED DOCUMENT)

08-14-2018 [ CTFREE ]

JUDGE KIRBY; APLI APPROVING SALE OF REAL PROPERY ; ATTY ROE SIMMONS. ALL NOTICES GOOD. APPLICATION APPROVED WITHOUT OBJ

08-14-2018 [ O ]

AMENDED ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

03-05-2019 [ P ]

FRANCIS A. GIBSON PETITION TO COMPEL FINAL ACCOUNTING OF THE ESTATE OF CEOLA M. LENOX
Document Available (SEALED DOCUMENT)

03-11-2019 [ MOC ]

APPENDIX TO SUPPORT FRANCES A GIBSON MOTION TO COMPEL
Document Available (SEALED DOCUMENT)

03-11-2019 [ MO ]

FRANCES A GIBSON PETITIONER MOTION FOR COURT ORDER TO COMPEL FINAL ACCOUNTING OF THE ESTATE OF CEOLA M LENOX
Document Available (SEALED DOCUMENT)

03-11-2019 [ NOH ]

NOTICE OF HEARING OF PETITIONER FRANCES A GIBSON MOTION TO COMPEL DANNIE G LENOX [ ADMINISTRATION] FOR FINAL ACCOUNTING OF THE ESTATE OF CEOLA M. LENOX
Document Available (SEALED DOCUMENT)

03-18-2019 [ FAC ]

FINAL ACCOUNT AND PETITION FOR ORDER ALLOWING FINAL ACCOUNT, DETERMINATION OF HEIRS, DISTRIBUTION AND DISCHARGE
Document Available (SEALED DOCUMENT)

03-18-2019 [ OH ]

ORDER FOR HEARING FINAL ACCOUNT, PETITION FOR DETERMINATION OF HEIRS, DISTRIBUTION AND DISCHARGE
Document Available (SEALED DOCUMENT)

04-02-2019 [ AFM ]

AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

04-08-2019 [ PP ]

PROOF OF PUBLICATION--EDMOND SUN--AD #00479389 ACCT # 23163295--PAID DIRECT
Document Available (SEALED DOCUMENT)

04-08-2019 [ MO ]

FRANCES A GIBSON PETITIONER, MOTION IN OPPOSITION TO DANNIE G. LENOX FINAL ACCOUNT AND PETITION FOR ORDER ALLOV FINAL DETERMINATION OF HEIRS, DISTRIBUTION AND DISCHARGE IN ITS' ENTIRETY
Document Available (SEALED DOCUMENT)

04-08-2019 [ MO ]

FRANCES A. GIBSON PETITIONER MOTION FOR ORDER FOR THE REMOVAL OF DANNIE G. LENOX AS ADMINISTRATOR FOR THE ES OF CEOLA M. LENOX AND FOR SANCTIONALBE VIOLATIONS OF TITLE 58 OKLAHOMA PROBATE PROCEDEDURAL RULES OF THE CC
Document Available (SEALED DOCUMENT)

**04-08-2019 [ NOH ]**

NOTICE OF HEARING OF PETITIONER FRANCES A GIBSON MOTION IN OPPOSITION TO DANNIE G LENOX FINAL ACCOUNT AND PETITION FOR ORDER ALLOWING FINAL DETERMINATION OF HEIRS, DISTRIBUTION AND DISCHARGE IN ITS' ENTIRETY
Document Available (SEALED DOCUMENT)

---

**04-08-2019 [ NOH ]**

NOTICE OF HEARING OF PETITIONER FRANCES A GIBSON MOTION FOR ORDER FOR THE REMOVAL OF DANNIE G LENOX AS ADMINISTRATOR FOR THE ESTATE OF CEOLA M LENOX AND FOR SANCTIONABLE VIOLATIONS OF TITLE 58 OKLAHOMA PROBATE PROCEDURAL RULES OF THE COURT
Document Available (SEALED DOCUMENT)

---

**04-09-2019 [ CTFREE ]**

JUDGE KIRBY; MOTION TO COMPEL - ATTY ROE SIMMONS APPEARS. PRO SE FRANCIS GIBSON APPEARS. TONYA PARKS, GRANDDAUGHTER OF DECEASED APPEARS. TODAY'S HEARING IS STRICKING AS MOOT. BY AGREEMENT OF ALL PARTIES NEXT HEARIN SET FOR 5-16-19 @ 1:30PM

---

**04-09-2019 [ CTFREE ]**

JUDGE KIRBY'S COURT MINUTE
Document Available (SEALED DOCUMENT)

---

**04-23-2019 [ NO ]**

NOTICE OF DEPOSITION SUBPOENA DUCES TECUM
Document Available (SEALED DOCUMENT)

---

**04-26-2019 [ NO ]**

NOTICE OF AMENDED DEPOSITION SUBPOENA DUCES TECUM
Document Available (SEALED DOCUMENT)

---

**05-02-2019 [ OBJ ]**

PETITIONER FRANCES A. GIBSON OBJECTION TO DEPOSITION SUBPOENA DUCES TECUM
Document Available (SEALED DOCUMENT)

---

**05-09-2019 [ AFM ]**

AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

---

**05-16-2019 [ CRF ]** $ 2

COURT REPORTER FEE-TRIAL ON MERITS

---

**05-16-2019 [ CTFREE ]**

JUDGE KIRBY; F.A. GIBSON'S PETITION/MOTION IN OPPOSITION T D.G. LENOX'S FA - ATTY FOR PETITIONER/P.R. ROE SIMMONS APPEAR PRO SE FRANCES GIBSON APPEARS.
FINAL ACCOUNT - OBJECTION TO/AND MOTION TO REMOVE
TESITMONY WAS TAKEN ON THE RECORD. COURT REPORTER, KIM LEWIN.
COURT HEARD FROM WITNESSES JIM KAUFMAN, TONYA PARKS AND FRANCES GIBSON.
THE OBJECTION TO THE FINAL ACCOUNT IN OVER RULED.
THE MOTION TO RESOLVE IS OVER RULED.
THE ATTY FEES REQUESTED ARE ACCESSED AGAINST THE INHERITANCE OF FRANCES GIBSON IN THE AMOUNT OF $16,000.00

---

**05-16-2019 [ ADJUST ]**

ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

---

**05-16-2019 [ ACCOUNT ]**

ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS:
PB-2016-721: AC01 CLERK FEES -$0.50

---

**05-16-2019 [ ACCOUNT ]**

RECEIPT # 2019-4602934 ON 05/16/2019.
PAYOR: GIBSON/FRANCES A TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $19.50 ON AC01 CLERK FEES.
PB-2016-721: $0.50 ON AC09 CARD ALLOCATIONS.

---

**05-17-2019 [ CTFREE ]**

JUDGE KIRBY'S COURT MINUTE/WITH EXHIBIT...........COURT REPORTER KIM LEWIN
Document Available (SEALED DOCUMENT)

---

**06-12-2019 [ NO ]**

APPENDIX TO SUPPORT FRANCES A GIBSON NOTIFICATION OF NON-COMPLIANCE WITH TITLE 58 OKLAHOMA PROBATE PROCEE
Document Available (SEALED DOCUMENT)

---

06-12-2019 [ LT ]
FRANCIS A GIBSON LETTER NOTIFYING THE COURT OF NON-COMPLIANCE WITH TITLE 58 OKLAHOMA PROBATE PROCEDURE AND LOCAL RULES OF THE COURT
Document Available (SEALED DOCUMENT)

09-12-2019 [ O ]
ORDER ALLOWING FINAL ACCOUNT, DETERMINING HEIRS AND FINAL DECREE OF DISTRIBUTION AND ORDER DENYING FRANCIS GIBSON'S OBJECTION AND MOTION TO REMOVE PERSONAL REPRESENTATIVE
Document Available (SEALED DOCUMENT)

09-26-2019 [ SDTIP ]
SUBPOENA DUCES TECUM ISSUED - PRIVATE PROCESS SERVER X 1

09-26-2019 [ NO ]
NOTICE OF SUBPOENA TO PRODUCE DOCUMENTS
Document Available (SEALED DOCUMENT)

09-27-2019 [ MO ]
FRANCES A. GIBSON'S PETITIONER MOTION TO SET ASIDE ORDER ALLOWING FINAL ACCOUNT, DETERMINING HEIRS AND DECREE OF DISTRIBUTION AND ORDER DENYING FRANCIS GIBSON'S OBJECTION AND MOTION TO REMOVE PERSONAL REPRESENTATIVE
Document Available (SEALED DOCUMENT)

10-03-2019 [ AFM ]
AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

10-08-2019 [ O ]
AFFIDAVIT OF TONYA PARKS WHO IS THE DAUGHTER OF "HEIR"/"INTEREST PARTY" FRANCES A. GIBSON AND HAS POWER OF ATTORNEY TO SPEAK ON THE BEHALF OF FRANCES A. GIBSON DUE TO HER HEALTH CAUSED BY THIS PROBATE CASE WANTS TO ***ALERT*** THE COURT BY HER AFFIDAVIT TO SHOW THAT THE PERSONAL REPRESENTATIVE DANNIE LENOX AND HIS ATTORNEY ROE SIMMONS WITH SMITH SUMMONS, PLLC HAS COMMITTED CRIMES OF EMBEZZLEMENT, FRAUD, PERJURY, MISMANGING OF PROBATE FUNDS AND ALL PROPERTY UPON THE DECEASED CEOLA LENOX AND HER ESTATE AFFIDAVIT DATED OCTOBER 7, 2019

*****I PRAY TO THE COURT TO PLEASE POSTPONE/ABATE THIS PROBATE, SET ASIDE THE FRADULENT ORDER WRITTEN FILED ON SEPTEMBER 12, 2019 AND APPOINT A SPECIAL ADMINISTRATOR, SPECIAL MASTER, OR A PROFESSIONAL/LICENSED LAW ENFORCEMENT INVESTIGATOR TO INVESTIGATE THIS PROBATE AND THE ACTIONS OF PERSONAL REPRESENTATIVE DANNIE LENOX, ATTORNEY ROE SIMMONS, AND JUDGE RICHARD KIRBY**********
Document Available (SEALED DOCUMENT)

10-08-2019 [ NO ]
APPENDIX TO SUPPORT THE AFFIDAVIT OF TONYA PARKS DAUGHTER OF HEIR FRANCES GIBSON DATED OCTOBER 7, 2019
Document Available (SEALED DOCUMENT)

10-21-2019 [ NOH ]
NOTICE OF HEARING
Document Available (SEALED DOCUMENT)

10-21-2019 [ OBJ ]
OBJECTION TO SUBPOENA FOR PRODUCTION OF DOCUMENTS, MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER
Document Available (SEALED DOCUMENT)

10-21-2019 [ OBJ ]
RESPONDENT JPMORGAN CHASE BANK, N.A.'S OBJECTIONS AND MOTION TO QUASH OR MODIFY FRANCES A. GIBSON'S SUBPOENA
Document Available (SEALED DOCUMENT)

11-07-2019 [ MO ]
FRANCIS A. GIBSON PETITIONER MOTION IN OPPOSITION TO DANNIE LENOX OBJECTION TO SUBPOENA FOR PRODUCTION OF DOCUMENTS, MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER FILED OCTOBER 21, 2019
Document Available (SEALED DOCUMENT)

11-12-2019 [ EAA ]
ENTRY OF APPEARANCE AND MOTION TO CONTINUE
Document Available (SEALED DOCUMENT)

11-12-2019 [ REQ ]
SUPPLEMENTAL REQUEST TO SET ASIDE FINAL ACCOUNTING, SALE OF PROPERTY, AND REPRESENTATIVE, AND FOR DISCOVERY MASTER
Document Available (SEALED DOCUMENT)

12-11-2019 [ CTFREE ]

JUDGE COLEMAN- CASE CONT AND RESET BY AGREEMENT TO 1-21-20 @ 1:30

02-10-2020 [ POS ]

PROOF OF SERVICE
Document Available (SEALED DOCUMENT)

02-10-2020 [ AFD ]

AFFIDAVIT OF PERSONAL SERVICE
Document Available (SEALED DOCUMENT)

02-10-2020 [ NOH ]

NOTICE OF HEARING
Document Available (SEALED DOCUMENT)

02-11-2020 [ CRF ] $ 20

COURT REPORTER FEE-TRIAL ON MERITS

02-11-2020 [ CTFREE ]

JUDGE COLLINS; SUPLEMENTAL REQUEST SET ASIDE FINAL ACCOUNT ATTY MARK MYLES APPEARS. ATTY ROE SIMMONS HAD A FAMILY EMERGENCY.

02-11-2020 [ NO ]

NOTICE OF CHANGE OF FIRM NAME
Document Available (SEALED DOCUMENT)

02-11-2020 [ ADJUST ] $ 0

ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

02-11-2020 [ ACCOUNT ]

ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS:
PB-2016-721: AC01 CLERK FEES -$0.50

02-11-2020 [ ACCOUNT ]

RECEIPT # 2020-4763649 ON 02/11/2020.
PAYOR: PARKS/TONYA RENEE TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $19.50 ON AC01 CLERK FEES.
PB-2016-721: $0.50 ON AC09 CARD ALLOCATIONS.

03-31-2020 [ TEXT ]

ADMINISTRATIVELY REASSIGNED BY AOC MIS PER HELP DESK CONTACT 91618

04-16-2020 [ CNOTE ]

THE ONE HOUR HEARING SET FOR 5-15-20 HAS BEEN RE SET TO MAY 19-20 @ 3PM DUE TO THE COVID-19. PARTIES CONTACTED.

05-11-2020 [ MO ]

MOTION FOR LEAVE TO FILE RESPONSE OUT OF TIME
Document Available (SEALED DOCUMENT)

05-12-2020 [ RSPD ]

RESPONSE TO FRANCES GIBSON'S SUPPLEMENTAL REQUEST TO SE ASIDE FINAL ACCOUNTING, SALE OF PROPETY, AND REPRSENTATIVE, AND FOR DISCOVERY MASTER
Document Available (SEALED DOCUMENT)

05-18-2020 [ POS ]

PROOF OF SERVICE/ SUBPOENA IN A CIVIL CASE SERVED - DANNIE LENOX - ON 5-15-20
Document Available (SEALED DOCUMENT)

06-08-2020 [ NO ]

NOTICE OF ATTORNEY SUBPOENA DUCES TECUM
Document Available (SEALED DOCUMENT)

06-12-2020 [ NO ]

NOTICE OF ATTORNEY SUBPOENA DUCES TECUM
Document Available (SEALED DOCUMENT)

06-12-2020 [ NO ]

NOTICE OF ATTORNEY SUBPOENA DUCES TECUM
Document Available (SEALED DOCUMENT)

06-15-2020 [ OBJ ]

ADMINISTRATOR'S OBJECTION AND MOTION IN LIMINE
Document Available (SEALED DOCUMENT)

06-16-2020 [ CER ]

CERTIFIED COPY OF WARRANTY DEED
Document Available (SEALED DOCUMENT)

06-16-2020 [ CER ]

CERTIFIED COPY OF PERSONAL REPRESENTATIVE'S DEED
Document Available (SEALED DOCUMENT)

06-17-2020 [ MOQ ]

MOTION TO QUASH SUBPOENA OF KAITLIN HOWARD
Document Available (SEALED DOCUMENT)

06-17-2020 [ POS ]

PROOF OF SERVICE / ATTORNEY SUBPOENA FOR TRIAL TESTIMONY SERVED - TEREK WAZZAN - ON 6-16-20
Document Available (SEALED DOCUMENT)

06-18-2020 [ CRF ] $ 20

COURT REPORTER FEE-TRIAL ON MERITS

06-18-2020 [ NO ]

NOTICE OF SWORN STATEMENT BY PURCHASER OF PROPERTY
Document Available (SEALED DOCUMENT)

06-18-2020 [ ACCOUNT ]

RECEIPT # 2020-4826361 ON 06/18/2020.
PAYOR: MYLES LAW FIRM TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $20.00 ON AC01 CLERK FEES.

06-29-2020 [ NO ]

AID TO THE COURT REGARDING VOID PLEADINGS (NULLITIES) FILED BY PERSONAL REPRESENTATIVE AND COUNSEL
Document Available (SEALED DOCUMENT)

06-29-2020 [ NO ]

AID TO THE COURT REGARDING VOID PLEADINGS ( NULLITIES) FILED BY PERSONAL REPRESENTATIVE AND COUNSEL
Document Available (SEALED DOCUMENT)

07-31-2020 [ O ]

ORDER RE: FRANCES A GIBSON;S PETITIONER (SIC) MOTION TO SET ASIDE ORDER ALLOWING FINAL ACCOUNT, DETERMINING HEIRS & DISTRIBUTION AND ORDER DENYING FRANCES GIBSON'S OBJECTION AND MOTION TO REMOVE PERSONAL REPRESENTATIVE..

SUPPLEMENTAL REQUEST TO SET ASIDE FINAL ACCOUNTING, SALE OF PROPERTY , AND REPRESENTATIVE AND FOR DISCOVERY MASTER AND

RESPONSE TO FRANCES GIBSON'S SUPPLEMENTAL REQUEST TO SET ASIDE FINAL ACCOUNTING , SALE OF PROPERTY, AND REPRESENTATIVE AND FOR DISCOVERY MASTER.
Document Available (SEALED DOCUMENT)

08-04-2020 [ NOF ]

NOTICE OF FILING
Document Available (SEALED DOCUMENT)

08-04-2020 [ T ]

ORIGINAL TRANSCRIPT OF PROCEEDINGS HAD ON THE 16TH DAY OF MAY, 2019 BEFORE THE HONORABLE RICHARD W. KIRBY / COU REPORTER KIM LEWIN

08-12-2020 [ DISPLTF ] Lenox, Ceola M #1

ERROR

08-12-2020 [ DISPOTHER ] Lenox, Ceola M #1

LETTERS OF SPECIAL ADMINISTRATOR ISSUED TO SARA MURPHY BONDURANT/ JUDGE SIDERIAS
Document Available (SEALED DOCUMENT)

04-01-2021 [ APLI ]

APPLICATION TO ALLOW SPECIAL ADMINISTRATOR'S RESIGNATION
Document Available (SEALED DOCUMENT)

**04-13-2021 [ OH ]**

ORDER OF HEARING APPLICATION TO ALLOW SPECIAL ADMINISTRATOR'S RESIGNATION
Document Available (SEALED DOCUMENT)

---

**04-13-2021 [ NOH ]**

NOTICE OF HEARING APPLICATION TO ALLOW SPECIAL ADMINISTRATOR'S RESIGNATION
Document Available (SEALED DOCUMENT)

---

**04-15-2021 [ AFM ]**

AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

---

**04-20-2021 [ TEXT ]**

ADMINISTRATIVELY REASSIGNED BY AOC MIS PER HELP DESK CONTACT HD109178

---

**05-10-2021 [ RESP ]**

BENNIE R. GIBSON SPOUSE OF THE HEIR AND DAUGHTER THE DECEASED FRANCES A. GIBSON AFFIDAVIT IN REPSONSE TO SARA MURPHY BONDURANT APPLICATION TO ALLOW SPECIAL ADMINSITRATOR'S RESIGNATION
Document Available (SEALED DOCUMENT)

---

**05-11-2021 [ CRF ]** $ 20

COURT REPORTER FEE-TRIAL ON MERITS

---

**05-11-2021 [ O ]**

COURT MINUTE ORDER
Document Available (SEALED DOCUMENT)

---

**05-11-2021 [ CTFREE ]**

JUDGE KIRKPATRICK; THE COURT FINDS GOOD CAUSE TO SEAL THE RECORD IN PB- 2016-721

---

**05-11-2021 [ CTFREE ]**

JUDGE KIRKPATRICK - ATTY SARA MURPHY BONDURANT AS SPECIAL ADMIN ATTY MARK MYLES ON BEHALF OF FRANCES GIBSON, HEIRS SPECIAL ADMIN SEEKS TO RESIGN DUE TO HARASSMENT AND DIFFICULTIES COMMUNICATING, INCLUDING THREATS AND ACCUSATIONS ATTY SIMMONS ON BEHALF OF DANNY LENNOX, HEIR (1 OF 4) TANYA PARKS PRESENT ON BEHALF OF MOTHER, FRANCES GIBSON ONE OF 4 HEIRS COURT ORDERS THAT THE RECORDS BE SEALED DUE TO THE FREQUENT ALLEGATIONS MADE BY NON PARTIES IN COURT FILE THE COURT ALLOWS RESIGNATION OF SPECIAL ADMIN THE COURT APPROVES THE AMOUNT OF FEES PRESENTED IN MOTION. COURT ORDERS ATTORNEY FEES IN THE AMOUNT OF 2945.70 BE PAID BY ESTATE.

COURT REPORTER - DEBRA HELLIKER
Document Available (SEALED DOCUMENT)

---

**05-11-2021 [ O ]**

ORDER ALLOWING SPECIAL ADMINISTRATOR'S RESIGNATION
Document Available (SEALED DOCUMENT)

---

**05-11-2021 [ ACCOUNT ]**

RECEIPT # 2021-4996993 ON 05/11/2021.
PAYOR: TONYA PARKS TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $20.00 ON AC01 CLERK FEES.

---

**08-25-2021 [ NO ]**

AFFIDAVIT OF TONYA PARKS WHO IS THE DAUGHTER OF " HEIR" FRANCES A. GIBSON AND HAS POWER OF ATTORNEY TO SPEAK ON T BEHALF OF GRANCES A. GIBSON SUMMITS THIS AFFIDAVIT IN SUPPORT TO BENNIE R. GIBSON PETITIIONER AND SPOUSE OF THE HE AND DAUGHTER OF THE DECEASED MOTION TO RECUSE JUDGE NIKKI KIRKPATRICK ON GROUND OF GRIEVOUS MISCONDUCT AND IINTEREERENCE IN THE PROBATE OF THE DEASED PERSON CEOLA M. LENOX
Document Available (SEALED DOCUMENT)

---

**08-25-2021 [ MO ]**

BENNIE R. GIBSON PETITIONER AND SPOUSE OF THE HEIR AND DAUGHTER OF THE DECEASED FRANCES A. GIBSON MOTION TO RECUSE JUDGE NIKKI KIRKPATRICK ON GROUNDS OF GRIEVOUS MISCONDUCT AND INTERFERENCE IN THE PROBATE OF THE DECEASED PERSON CEOLA M. LENOX
Document Available (SEALED DOCUMENT)

---

**09-16-2021 [ CRF ]**

COURT REPORTER FEE-TRIAL ON MERITS

---

**09-16-2021 [ ADJUST ]**

ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

---

**09-16-2021 [ ACCOUNT ]**

ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS:
PB-2016-721: AC01 CLERK FEES -$0.50

---

**09-16-2021 [ ACCOUNT ]**

RECEIPT # 2021-5065729 ON 09/16/2021. COURT REPORTER FEE
PAYOR: PARKS/TONYA TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $19.50 ON AC01 CLERK FEES.
PB-2016-721: $0.50 ON AC09 CARD ALLOCATIONS.

---

**09-20-2021 [ CTFREE ]**

COURT MINUTE
Document Available (SEALED DOCUMENT)

---

**10-01-2021 [ NOF ]**

NOTICE OF FILING
Document Available (SEALED DOCUMENT)

---

**10-01-2021 [ T&2 ]**

ORIGINAL TRANSCRIPT & 2 COPIES OF PROCEEDINGS HAD ON THE 16TH DAY OF SEPTEMBER 2021 BEFORE THE HONORABLE NIKKI KIRKPATRICK / COURT REPORTER SUSAN BOUDIN

---

**10-31-2021 [ TEXT ]**

ADMINISTRATIVELY REASSIGNED BY AOC MIS PER HELP DESK CONTACT 119596

---

**11-03-2021 [ O ]**

ORDER DIRECTING COURT CLERK TO GIVE FULL ACCESS TO COURT DOCKET AND COURT FILE TO THE SPECIAL MASTER AND HIS ATTORNEYS - ROLLIN NASH JR. , BRYAN C DIXON JR., CYNTHIA COHENOUR
Document Available (SEALED DOCUMENT)

---

**11-03-2021 [ EAA ]**

ENTRY OF APPEARANCE OF CYNTHIA COHENOUR AS ATTORNEY FOR THE SPECIAL MASTER
Document Available (SEALED DOCUMENT)

---

**11-03-2021 [ APLI ]**

APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF ATTORNEYS FOR ROLLING NASH JR. SPECIAL MASTER
Document Available (SEALED DOCUMENT)

---

**11-03-2021 [ O ]**

ORDER APPOINTING ROLLIN NASH JR. AS SPECIAL MASTER
Document Available (SEALED DOCUMENT)

---

**11-03-2021 [ O ]**

ORDER AUTHORIZING EMPLYMENT OF ATTORNEYS FOR ROLLIN NASH JR. SPECIAL MASTER
Document Available (SEALED DOCUMENT)

---

**11-03-2021 [ EAA ]**

ENTRY OF APPEARANCE OF ROLLIN NASH JR AS ATTORNEY FOR THE SPECIAL MASTER
Document Available (SEALED DOCUMENT)

---

**11-09-2021 [ EAA ]**

ENTRY OF APPEARANCE OF BRYAN C. DIXON JR. AS ATTORNEY FOR THE SPECIAL MASTER
Document Available (SEALED DOCUMENT)

---

**11-24-2021 [ OBJ ]**

TONYA PARKS POWER OF ATTORNEY OF FRANCES A GIBSON DAUGHTER AND HIER OF THE DECEASE CEOLA M. LENOX OBJECTION ORDER AUTHORIZING EMPLOYMENT OF ATTORNEY ROLLIN NASH JR. SPECIAL MASTER
Document Available (SEALED DOCUMENT)

---

**11-29-2021 [ NO ]**

HEIR FRANCES GIBSON GIVES NOTICE TO THIS COURT OF ATTORNEY MARK MYLES TERMINATION
Document Available (SEALED DOCUMENT)

---

**11-29-2021 [ NOH ]**

NOTICE OF HEARING TONYA PARKS POWER OF ATTORNEY OF FRANCES A GIBSON DAUGHTER AND HEIR OF THE DECEASE CEOLA LENOX OBJECTION TO ORDER AUTHORIZING EMPLOYMENT OF ATTORNEY ROLLIN NASH JR. SPECIAL MASTER
Document Available (SEALED DOCUMENT)

---

11-29-2021 , [ NO ]

HEIR FRANCIS GIBSON GIVES NOTICE TO THIS COURT OF ATTORNEY MARK MYLES TERMINATION

Document Available (SEALED DOCUMENT)

12-02-2021 [ MO ]

MOTION FOR LEAVE TO WITHDRAW REPRESENTATION

Document Available (SEALED DOCUMENT)

12-03-2021 [ CRF ] $ 20

COURT REPORTER FEE-TRIAL ON MERITS

12-03-2021 [ CTFREE ]

COURT MINUTE

Document Available (SEALED DOCUMENT)

12-03-2021 [ ADJUST ] $ (

ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

12-03-2021 [ ACCOUNT ]

ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS:

PB-2016-721: AC01 CLERK FEES -$0.50

12-03-2021 [ ACCOUNT ]

RECEIPT # 2021-5106764 ON 12/03/2021.

PAYOR: PARKS/TONYA TOTAL AMOUNT PAID: $ 20.00.

LINE ITEMS:

PB-2016-721: $19.50 ON AC01 CLERK FEES.

PB-2016-721: $0.50 ON AC09 CARD ALLOCATIONS.

12-06-2021 [ NOF ]

NOTICE OF FILING TRANSCRIPTS

Document Available (SEALED DOCUMENT)

12-06-2021 [ T ]

ORIGINAL TRANSCRIPT OF PROCEEDINGS ON THIS 11TH DAY OF MAY, 2021, BEFORE THE HON. NIKKI KIRKPATRICK / COURT REPORTER DEBRA HELLIKER / (FILED UNDER SEAL)

12-09-2021 [ O ]

SUPPLEMENTAL ORDER

Document Available (SEALED DOCUMENT)

12-17-2021 [ MO ]

ACCORDING TO THE OKLAHOMA OPEN RECORDS ACT- HEIR FRANCES A. GIBSON'S MOTION TO UNSEAL THE CASE DUE TO THE IMPROPER SEALING OF THE CASE REQUESTED BY ATTORNEY ROE SIMMONS TO PROTECT THE REPUTATION OF OFFICERS OF THE COURT AND TO CONCEAL EVIDENCE IN A COURT OF LAW THAT SHOWS WRONG DOINGS COMMITTED BY OFFICERS OF THE COURT INCLUDING HIMSELF AND TO OBSTRUCT JUSTICE BY DENYING FRANCES GIBSON/PARTIES IN THE CASE AND THE PUBLIC THE ABILITY ACCESS NORMAL PUBLIC DOCUMENTS AND TRANSCRIPTS

Document Available (#1051312865) TIFF PDF

12-21-2021 [ NOH ]

NOTICE OF HEARINGACCORDING TO THE OKLAHOMA OPEN RECORDS ACT- HEIR FRANCES A. GIBSON'S MOTION TO UNSEAL THE CA DUE TO THE IMPROPER SEALING OF THE CASE REQUESTED BY ATTORNEY ROE SIMMONS TO PROTECT THE REPUTATION OF OFFIC OF THE COURT AND TO CONCEAL EVIDENCE IN A COURT OF LAW THAT SHOWS WRONG DOINGS COMMITTED BY OFFICERS OF THE COURT INCLUDING HIMSELF AND TO OBSTRUCT JUSTICE BY DENYING FRANCES GIBSON/PARTIES IN THE CASE AND THE PUBLIC TH ABILITY TO ACCESS NORMAL PUBLIC DOCUMENTS AND TRANSCRIPTS

Document Available (#1051313354) TIFF PDF

02-01-2022 [ CRF ]

COURT REPORTER FEE-TRIAL ON MERITS

02-01-2022 [ CTFREE ]

JUDGE KIRBY - FRANCIS GIBSON APPEAR PRO SE ROE SIMMONS APPEAR ON BEHALF OF DANNIE LENOX COURT RULING UNDER ADVISEMENT WILL SEND OUT WRITTEN ORDER TO THE PARTIES

Document Available (#1051238089) TIFF PDF

02-01-2022 [ ACCOUNT ]

RECEIPT # 2022-5136660 ON 02/01/2022.

PAYOR: TONYA PARKS TOTAL AMOUNT PAID: $ 20.00.

LINE ITEMS:

PB-2016-721: $20.00 ON AC01 CLERK FEES.

04-05-2022 [ RPT ]
SPECIAL MASTER'S REPORT
Document Available (#1051803293) TIFF PDF

04-06-2022 [ AM ]
AMENDED CERTIFICATE OF MAILING SPECIAL MASTER'S REPORT
Document Available (#1052150341) TIFF PDF

04-06-2022 [ AM ]
FIRST AMENDMENT TO SPECIAL MASTER'S REPORT
Document Available (#1052150349) TIFF PDF

04-13-2022 [ NO ]
AFFIDAVIT OF TONYA PARKS THE DAUGHTER OF "HEIR/INTERST/PARTY" FRANCES A GIBSON AND HAS POWER OF ATTORNEY TO SPEAK ON THE BEHALF OF FANCES A GIBSON DUE TO HER HEALTH CAUSED BY THE PROBATE CASE AND HAS BEEN TO MOST OF THE EVENTS HANDLED IN THIS ESTATE AND NOW WANTS TO ALERT THE COURT BY HER AFFIDAVIT TO SHOW THAT THE SPECIAL MASTERS REPORT DATED APRIL 5, 2022 DOES NOT REFLECT A TRUE HISTORY OF THE ESTATE WHICH WE BELIEVE IS ATTENED TO MISLEAD THE COURT IN PROTECTION OF OFFICERS OF THE COURT AND MAY ALSO BE USED AS AN ATTEMPT TO EXTORT AND EXPLOIT AND ELDERLY PERSON WHO IS AN HEIR TO THE ESTATE
Document Available (#1052041458) TIFF PDF

04-13-2022 [ EXHI ]
APPENDIX-EXHIBITS 1-19- IN SUPPORT TO AFFIDAVIT OF TONYA PARKS THE DAUGHTER OF "HEIR/INTERST/PARTY" FRANCES A GIBSON AND HAS POWER OF ATTORNEY TO SPEAK ON THE BEHALF OF FANCES A GIBSON DUE TO HER HEALTH CAUSED BY THE PROBATE CASE AND HAS BEEN TO MOST OF THE EVENTS HANDLED IN THIS ESTATE AND NOW WANTS TO ALERT THE COURT BY HER AFFIDAVIT TO SHOW THAT THE SPECIAL MASTERS REPORT DATED APRIL 5, 2022 DOES NOT REFLECT A TRUE HISTORY OF THE ESTATE WHICH WE BELIEVE IS ATTENED TO MISLEAD THE COURT IN PROTECTION OF OFFICERS OF THE COURT AND MAY ALSO BE USED AS AN ATTEMPT TO EXTORT AND EXPLOIT AND ELDERLY PERSON WHO IS AN HEIR TO THE ESTATE
Document Available (#1052041546) TIFF PDF

04-13-2022 [ EXHI ]
APPENDIX-EXHIBITS 20-21- IN SUPPORT TO AFFIDAVIT OF TONYA PARKS THE DAUGHTER OF "HEIR/INTERST/PARTY" FRANCES A GIBSON AND HAS POWER OF ATTORNEY TO SPEAK ON THE BEHALF OF FANCES A GIBSON DUE TO HER HEALTH CAUSED BY THE PROBATE CASE AND HAS BEEN TO MOST OF THE EVENTS HANDLED IN THIS ESTATE AND NOW WANTS TO ALERT THE COURT BY HER AFFIDAVIT TO SHOW THAT THE SPECIAL MASTERS REPORT DATED APRIL 5, 2022 DOES NOT REFLECT A TRUE HISTORY OF THE ESTATE WHICH WE BELIEVE IS ATTENED TO MISLEAD THE COURT IN PROTECTION OF OFFICERS OF THE COURT AND MAY ALSO BE USED AS AN ATTEMPT TO EXTORT AND EXPLOIT AND ELDERLY PERSON WHO IS AN HEIR TO THE ESTATE
Document Available (#1052041534) TIFF PDF

04-19-2022 [ REQ ]
REQUEST
Document Available (#1052246634) TIFF PDF

01-04-2023 [ CTFREE ]
JUDGE KIRBY - SEE COURT MINUTE
Document Available (#1053875919) TIFF PDF

01-10-2023 [ TEXT ]
HD138691 - JUDGE REASSIGNMENT

02-17-2023 [ RET ]
RETURN TO SENDERNO SUCH NUMBER UNABLE TO FORWARD
Document Available (#1053876151) TIFF PDF

10-23-2023 [ P ]
PETITION FOR LETTERS OF ADMINISTRATION
Document Available (SEALED DOCUMENT)

10-25-2023 [ OH ]
ORDER FOR HEARING PETITION FOR APPOINTMENT OF SPECIAL ADMINISTRATOR
Document Available (SEALED DOCUMENT)

10-25-2023 [ NOH ]
NOTICE OF HEARING PETITION FOR APPOINTMENT OF SPECIAL ADMINISTRATOR
Document Available (SEALED DOCUMENT)

11-16-2023 [ AFM ]
AFFIDAVIT OF MAILING
Document Available (#1057068923) TIFF PDF

**11-17-2023 [ AFM ]**

AFFIDAVIT OF MAILING
Document Available (#1057091151) TIFF PDF

**11-20-2023 [ CRF ]** $ 20.00

COURT REPORTER FEE-TRIAL ON MERITS

**11-20-2023 [ CTFREE ]**

JUDGE RIESEN: PETITIONER APPEARS PRO SE. LETTERS ISSUED. COURT REPORTER DEANN ENGLISH.

**11-20-2023 [ O ]**

ORDER APPOINTING ADMINISTRATOR
Document Available (SEALED DOCUMENT)

**11-20-2023 [ ACCOUNT ]**

RECEIPT # 2023-5520959 ON 11/20/2023. COURT REPORTER FEE
PAYOR: FRANCES GIPSON TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $20.00 ON AC01 CLERK FEES.

**11-21-2023 [ LTA ]**

LETTERS OF ADMINISTRATION ISSUED TO TONYA PARKS
Document Available (SEALED DOCUMENT)

# Exhibit 5



OKLAHOMA
State Courts Network

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

**IN THE DISTRICT COURT IN AND FOR OKLAHOMA COUNTY, OKLAHOMA**

**No. PB-2016-721**
**(Probate: PROBATE)**

ESTATE OF LENOX
CASE SEALED AS PER COURT ORDER OF 5/11/2021

Filed: 06/23/2016
Closed: 08/12/2020

Judge: Riesen, Tom

## PARTIES

None

## ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| COHENOUR, CYNTHIA (Bar #12245)<br>NASH, COHENOUR, & GIESSMANN, P.C.<br>4101 PERIMETER CENTER DR<br>SUITE 200<br>OKLAHOMA CITY, OK 73112 | |
| Dixon, Bryan C Jr (Bar #32768)<br>1725 SIGNAL RIDGE<br>STE 140<br>EDMOND, OK 73013 | |
| ELWELL, JARED J (Bar #31986)<br>ELWELL AND SPAIN PLLC<br>2500 BOARDWALK STREET , SUITE 207<br>NORMAN, OK 73069 | |
| Myles, M Mark (Bar #22243)<br>4312 N CLASSEN BLVD<br>OKLAHOMA CITY, OK 73118 | |

**Represented Parties**

**Attorney**
NASH, ROLLIN (Bar #6584)
4101 PERIMETER CTR DR
SUITE 200
OKLAHOMA CITY, OK 73112

# EVENTS

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Tuesday, August 2, 2016 at 9:00 AM<br>LTRS ADMIN | | Richard Kirby | |
| Wednesday, May 17, 2017 at 9:00 AM<br>PET SELL REAL PROP | | Richard Kirby | |
| Wednesday, October 18, 2017 at 9:00 AM<br>APLI ORD APPROVING SALE OF REAL PROP | | Richard Kirby | |
| Tuesday, February 27, 2018 at 9:00 AM<br>RETURN OF SALE (STRIKE) | | Richard Kirby | |
| Thursday, May 17, 2018 at 11:00 AM<br>APLI ORD APPROVING SALE | | Richard Kirby | |
| Tuesday, August 14, 2018 at 9:00 AM<br>APLI FOR AMENDED ORDER APPROVING SALE OF REAL PROPERTY | | Richard Kirby | |
| Tuesday, April 9, 2019 at 9:00 AM<br>MOTION TO COMPEL | | Richard Kirby | |
| Wednesday, May 1, 2019 at 9:00 AM<br>FA CONT TO 5-16-19 | | Richard Kirby | |
| Thursday, May 16, 2019 at 1:30 PM<br>PROBATE HEARING/F.A.GIBSON PETMOT IN OPPOSITION TO D.G.LENNOX FA | | Richard Kirby | |
| Tuesday, November 12, 2019 at 1:30 PM<br>OBJ TO SUBPOENA FOR PRODUCTION OF DOCUMENTS, MOTION T QUASH & MOTIN FOR P.O. | | Richard Kirby | |
| Wednesday, December 11, 2019 at 1:30 PM<br>MOION TO CONT HEARING | | Richard Kirby | |
| Tuesday, January 21, 2020 at 1:30 PM<br>TEMP LTRS | | Richard Kirby | |
| Tuesday, February 11, 2020 at 1:30 PM<br>SUPPLEMENTAL REQUEST SET ASIDE FA | | James M. Siderias | |
| Tuesday, May 19, 2020 at 3:00 PM<br>ONE HOUR HEARING (RE SET FROM 5-15-20) (STRICKEN) | | James M. Siderias | |
| Thursday, June 18, 2020 at 3:30 PM<br>ONE HEAR VIDEO CONFERENCE | | K. Nikki Kirkpatrick | |
| Tuesday, May 11, 2021 at 9:00 AM<br>APPLICATION TO ALLOW ADM | | | |

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Thursday, September 16, 2021 at 10:00 AM<br>BENNIE R. GIBSON PETITIONER AND SPOUSE OF THE HEIR AND DAUGHTER OF THE DECEASED FRANCES A. GIBSON MOTION TO RECUSE JUDGE NIKKI KIRKPATRICK ON GROUNDS OF GRIEVOUS MISCONDUCT AND INTERFERENCE IN THE PROBATE OF THE DECEASED PERSON CEOLA M. LENOX | | K. Nikki Kirkpatrick | |
| Friday, December 3, 2021 at 9:00 AM<br>OBJECTION TO SPECIAL MASTER | | C. Brent Dishman | |
| Tuesday, February 1, 2022 at 3:00 PM<br>MOT TO UNSEAL FILE | | Richard Kirby | |
| Monday, November 20, 2023 at 1:30 PM<br>PETITION FOR LETTERS OF ADMIN | | Tom Riesen | |

## ISSUES

For cases filed before 1/1/2000, ancillary issues may not appear except in the docket.

**Issue # 1.** Issue: PROBATE (PROBATE)
Filed By:
Filed Date: 06/23/2016

| Party Name | Disposition Information |
|---|---|
| **Deceased:**<br>Lenox, Ceola M | **Disposed: LETTERS FILED, 08/12/2016. Judge** |
| **Deceased:**<br>Lenox, Ceola M | **Disposed: OTHER, 08/12/2020. Judge** |

## DOCKET

| Date | Code | Description | |
|---|---|---|---|
| | | | #1 |
| **06-23-2016** | **[ TEXT ]** | PROBATE INITIAL FILING. | |
| **06-23-2016** | **[ PROBATE ]** | PROBATE | |
| **06-23-2016** | **[ DMFE ]** | DISPUTE MEDIATION FEE | $ |
| **06-23-2016** | **[ PFE1 ]** | PETITION | |
| **06-23-2016** | **[ PFE7 ]** | LAW LIBRARY FEE | |
| **06-23-2016** | **[ OCISR ]** | OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | |
| **06-23-2016** | **[ OCJC ]** | OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND | |

$ 5.00

**06-23-2016** [ **OCASA** ]
OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES — $ 10.00

**06-23-2016** [ **SSFCHSCPC** ]
SHERIFF'S SERVICE FEE FOR COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER — $ 1.00

**06-23-2016** [ **CCADMINCSF** ]
COURT CLERK ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER — $ 0.16

**06-23-2016** [ **CCADMIN0155** ]
COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION — $ 0.45

**06-23-2016** [ **SJFIS** ]
STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES — $ 0.50

**06-23-2016** [ **CCADMIN04** ]
COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS — $ 10.00

**06-23-2016** [ **LTF** ]
LENGTHY TRIAL FUND

**06-23-2016** [ **AFM** ]
AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

**06-23-2016** [ **OH** ]
ORDER FOR HEARING PETITION FOR APPOINTMENT OF ADMINISTRATOR
Document Available (SEALED DOCUMENT)

**06-23-2016** [ **NOH** ]
NOTICE OF HEARING PETITION FOR LETTER OF ADMINISTRATION
Document Available (SEALED DOCUMENT)

**06-23-2016** [ **P** ]
PETITION FOR LETTERS OF ADMINISTRATION
Document Available (SEALED DOCUMENT)

**06-23-2016** [ **TEXT** ]
OCIS HAS AUTOMATICALLY ASSIGNED JUDGE KIRBY, RICHARD TO THIS CASE.

**06-23-2016** [ **ACCOUNT** ]
RECEIPT # 2016-3900994 ON 06/23/2016.
PAYOR:SMITH SIMMONS PLLC TOTAL AMOUNT PAID: $196.66.
LINE ITEMS:
PB-2016-721: $135.00 ON AC01 CLERK FEES.
PB-2016-721: $6.00 ON AC23 LAW LIBRARY FEE.
PB-2016-721: $1.66 ON AC31 COURT CLERK REVOLVING FUND.
PB-2016-721: $5.00 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES.
PB-2016-721: $1.55 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND.
PB-2016-721: $2.00 ON AC64 DISPUTE MEDIATION FEES.
PB-2016-721: $0.45 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS.
PB-2016-721: $25.00 ON AC79 OCIS REVOLVING FUND.
PB-2016-721: $10.00 ON AC81 LENGTHY TRIAL FUND.
PB-2016-721: $10.00 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY.

06-28-2016 [ PP ]
PROOF OF PUBLICATION/JOURNAL RECORD INV #11102224 $37.23 PD DIRECT
Document Available (SEALED DOCUMENT)

08-02-2016 [ CTFREE ]
JUDGE KIRBY; LETTERS ADMINISTRATION - ATTY JARRED ELWELL APPEARS WITH PETITIONER, DANNIE LENOX, LETTERS AND ORDER APPROVED. BOND WAIVED. NOTICES APPROPRIATE
#1

08-02-2016 [ DISPLTF ]
LETTERS

08-04-2016 [ LTA ]
LETTERS OF ADMINISTRATION
Document Available (SEALED DOCUMENT)

08-04-2016 [ O ]
ORDER FOR ISSUANCE OF LETTERS OF ADMINISTRATION, APPOINTMENT OF PERSONAL REPRESENTATIVE, DETERMINATION OF HEIRS AND TERMINATION OF JOINT TENANCY
Document Available (SEALED DOCUMENT)

08-15-2016 [ NOTC ]
NOTICE TO CREDITORS
Document Available (SEALED DOCUMENT)

08-30-2016 [ PP ]
PROOF OF PUBLICATION / THE JOURNAL RECORD / INV#11147329 / $50.20 PAID
Document Available (SEALED DOCUMENT)

04-24-2017 [ P ]
PETITION TO SELL REAL PROPERTY BY PUBLIC SALE
Document Available (SEALED DOCUMENT)
$ 43

04-24-2017 [ PTS ]
PETITION TO SELL REAL ESTATE
$ 25

04-24-2017 [ OCISR ]
OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND
$

04-24-2017 [ OCJC ]
OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND
$

04-24-2017 [ OCASA ]
OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES

04-24-2017 [ CCADMIN0155 ]
COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION

04-24-2017 [ SJFIS ]
STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES

04-24-2017 [ DCADMIN155 ]
DISTRICT COURT ADMINISTRATIVE FEE ON $1.55 COLLECTIONS

04-24-2017 [ DCADMIN05 ]
DISTRICT COURT ADMINISTRATIVE FEE ON $5 COLLECTIONS

04-24-2017 [ CCADMIN04 ]
COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS

**04-25-2017 [ MO ]**

BENNIE R. GIBSON INTERESTED PERSON FILE HIS MOTION FOR SANCTION FOR VIOLATION OF PROBATE PROCEDURAL RULES OF THE COURT

Document Available (SEALED DOCUMENT)

**05-04-2017 [ OH ]**

ORDER FOR HEARING PETITION TO SELL REAL PROPERTY

Document Available (SEALED DOCUMENT)

**05-04-2017 [ ACCOUNT ]**

RECEIPT # 2017-4119803 ON 05/04/2017.
PAYOR: SMITH SIMMONS TOTAL AMOUNT PAID: $ 76.64.
LINE ITEMS:
PB-2016-721: $43.00 ON AC01 CLERK FEES.
PB-2016-721: $0.66 ON AC31 COURT CLERK REVOLVING FUND.
PB-2016-721: $5.00 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES.
PB-2016-721: $1.55 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND.
PB-2016-721: $0.45 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS.
PB-2016-721: $0.98 ON AC67 DISTRICT COURT REVOLVING FUND.
PB-2016-721: $25.00 ON AC79 OCIS REVOLVING FUND.

**05-10-2017 [ CRF ]** $ 20.00

COURT REPORTER FEE-TRIAL ON MERITS

**05-10-2017 [ REQ ]**

REQUEST FOR LICENSED COURT REPORTER AT HEARING FOR PETITION TO SELL REAL PROPERTY ON MAY 17, 2017 AT 9:00 A.M.

Document Available (SEALED DOCUMENT)

**05-10-2017 [ ACCOUNT ]**

RECEIPT # 2017-4123843 ON 05/10/2017. COURT REPORTER FEE
PAYOR: TONYA PARKS TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $20.00 ON AC01 CLERK FEES.

**05-12-2017 [ AFM ]**

AFFIDAVIT OF MAILING

Document Available (SEALED DOCUMENT)

**05-15-2017 [ PP ]**

PROOF OF PUBLICATION/EDMOND SUN/#23163295/$35.30

Document Available (SEALED DOCUMENT)

**05-17-2017 [ CTFREE ]**

JUDGE KIRBY; PETITION TO SELL REAL PROPERTY - ATTY ROE SIMMONS APPEARS. PETITION TO SELL REAL PROPERTY APPROVED WITHOUT OBJECTION.

**05-18-2017 [ CTFREE ]**

JUDGE KIRBY'S COURT MINUTE

Document Available (SEALED DOCUMENT)

**08-08-2017 [ MO ]**

MOTION TO WITHDRAW AND SUBSTITUTE COUNSEL OF RECORD

Document Available (SEALED DOCUMENT)

**08-09-2017  [ O ]**
ORDER GRANTING MOTION TO WITHDRAW AND SUBSTITUTE COUNSEL OF RECORD
Document Available (SEALED DOCUMENT)

**09-15-2017  [ O ]**
ORDER APPROVING PETITION TO SELL
Document Available (SEALED DOCUMENT)

**09-20-2017  [ APLI ]**
APPLICATION FOR ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

**09-20-2017  [ CT ]**
CERTIFICATE FOR PROOF OF PUBLICATION
Document Available (SEALED DOCUMENT)

**09-21-2017  [ OH ]**
ORDER FOR HEARING RETURN OF SALE
Document Available (SEALED DOCUMENT)

**09-26-2017  [ NOH ]**
NOTICE OF HEARING
Document Available (SEALED DOCUMENT)

**09-26-2017  [ AFM ]**
AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

**10-06-2017  [ PP ]**
PROOF OF PUBLICATION EDMOND SUN INV #00452875 $60.83 PD DIRECT
Document Available (SEALED DOCUMENT)

**10-17-2017  [ PP ]**
PROOF OF PUBLICATION JOURNAL RECORD INV # 00452875 $ 60.83 PD DIRECT
Document Available (SEALED DOCUMENT)

**10-18-2017  [ CTFREE ]**
JUDGE KIRBY : SALE REAL PROPERTY CONFIRMED WITHOUT OBJECTION

**10-18-2017  [ O ]**
ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

**10-20-2017  [ O ]**
ORDER GRANTING MOTION TO WITHDRAW AND SUBSTITUTE COUNSEL OF RECORD
Document Available (SEALED DOCUMENT)

**12-19-2017  [ PP ]**
PROOF OF PUBLICATION/THE EDMOND SUN/ACCT# 23163295 / $67.32 PAID
Document Available (SEALED DOCUMENT)

**01-08-2018  [ APLI ]**
APPLICATION FOR ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

**01-29-2018 [ OH ]**
ORDER FOR HEARING RETURN OF SALE
Document Available (SEALED DOCUMENT)

**03-05-2018 [ CNOTE ]**
KIRBY- MOVING PARTY STRIKES RETURN OF SALE DUE TO ISSUES WITH NOTICE ; WILL RESET HEARING AT A LATER DATE

**04-06-2018 [ PP ]**
PROOF OF PUBLICATION AD # 00460972 $68.28 PAID DIRECT BY ATTORNEY
Document Available (SEALED DOCUMENT)

**04-24-2018 [ OH ]**
ORDER FOR HEARING RETURN OF SALE
Document Available (SEALED DOCUMENT)

**04-24-2018 [ APLI ]**
APPLICATION FOR ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

**05-10-2018 [ PP ]**
PROOF OF PUBLICATION / THE EDMOND SUN #00463169 $72.62 PAID DIRECT
Document Available (SEALED DOCUMENT)

**05-17-2018 [ CTFREE ]**
JUDGE KIRBY; APLI FOR ORDER APPROVING SALE - ATTY ROE SIMMONS APPEARS. NO ONE APPEARS TO OBJECT. ORDER APPROVING SALE GRANTED.

**05-17-2018 [ O ]**
ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

**05-17-2018 [ CTFREE ]**
JUDGE KIRBY COURT MINUTE
Document Available (SEALED DOCUMENT)

**05-17-2018 [ AFM ]**
AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

**06-28-2018 [ APLI ]**
APPLICATION FOR AMENDED ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

**07-05-2018 [ OH ]**
ORDER FOR HEARING AMENDED RETURN OF SALE
Document Available (SEALED DOCUMENT)

**07-05-2018 [ NOH ]**
NOTICE OF HEARING
Document Available (SEALED DOCUMENT)

**07-12-2018 [ AFM ]**
AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

**07-27-2018  [ PP ]**

PROOF OF PUBLICATION / THE EDMOND SUN #00467664 $69.92 PAID DIRECT
Document Available (SEALED DOCUMENT)

**08-14-2018  [ CTFREE ]**

JUDGE KIRBY; APLI APPROVING SALE OF REAL PROPERY ; ATTY ROE SIMMONS. ALL NOTICES GOOD.
APPLICATION APPROVED WITHOUT OBJ

**08-14-2018  [ O ]**

AMENDED ORDER APPROVING SALE OF REAL PROPERTY
Document Available (SEALED DOCUMENT)

**03-05-2019  [ P ]**

FRANCIS A. GIBSON PETITION TO COMPEL FINAL ACCOUNTING OF THE ESTATE OF CEOLA M. LENOX
Document Available (SEALED DOCUMENT)

**03-11-2019  [ MOC ]**

APPENDIX TO SUPPORT FRANCES A GIBSON MOTION TO COMPEL
Document Available (SEALED DOCUMENT)

**03-11-2019  [ MO ]**

FRANCES A GIBSON PETITIONER MOTION FOR COURT ORDER TO COMPEL FINAL ACCOUNTING OF THE
ESTATE OF CEOLA M LENOX
Document Available (SEALED DOCUMENT)

**03-11-2019  [ NOH ]**

NOTICE OF HEARING OF PETITIONER FRANCES A GIBSON MOTION TO COMPEL DANNIE G LENOX [
ADMINISTRATION] FOR FINAL ACCOUNTING OF THE ESTATE OF CEOLA M. LENOX
Document Available (SEALED DOCUMENT)

**03-18-2019  [ FAC ]**

FINAL ACCOUNT AND PETITION FOR ORDER ALLOWING FINAL ACCOUNT, DETERMINATION OF HEIRS,
DISTRIBUTION AND DISCHARGE
Document Available (SEALED DOCUMENT)

**03-18-2019  [ OH ]**

ORDER FOR HEARING FINAL ACCOUNT, PETITION FOR DETERMINATION OF HEIRS, DISTRIBUTION AND
DISCHARGE
Document Available (SEALED DOCUMENT)

**04-02-2019  [ AFM ]**

AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

**04-08-2019  [ PP ]**

PROOF OF PUBLICATION--EDMOND SUN--AD #00479389 ACCT # 23163295--PAID DIRECT
Document Available (SEALED DOCUMENT)

**04-08-2019  [ MO ]**

FRANCES A GIBSON PETITIONER, MOTION IN OPPOSITION TO DANNIE G. LENOX FINAL ACCOUNT AND
PETITION FOR ORDER ALLOWING FINAL DETERMINATION OF HEIRS, DISTRIBUTION AND DISCHARGE IN
ITS' ENTIRETY
Document Available (SEALED DOCUMENT)

**04-08-2019** [ MO ]
FRANCES A. GIBSON PETITIONER MOTION FOR ORDER FOR THE REMOVAL OF DANNIE G. LENOX AS ADMINISTRATOR FOR THE ESTATE OF CEOLA M. LENOX AND FOR SANCTIONALBE VIOLATIONS OF TITLE 58 OKLAHOMA PROBATE PROCEDEDURAL RULES OF THE COURT
Document Available (SEALED DOCUMENT)

**04-08-2019** [ NOH ]
NOTICE OF HEARING OF PETITIONER FRANCES A GIBSON MOTION IN OPPOSITION TO DANNIE G LENOX FINAL ACCOUNT AND PETITION FOR ORDER ALLOWING FINAL DETERMINATION OF HEIRS, DISTRIBUTION AND DISCHARGE IN ITS' ENTIRETY
Document Available (SEALED DOCUMENT)

**04-08-2019** [ NOH ]
NOTICE OF HEARING OF PETITIONER FRANCES A GIBSON MOTION FOR ORDER FOR THE REMOVAL OF DANNIE G LENOX AS ADMINISTRATOR FOR THE ESTATE OF CEOLA M LENOX AND FOR SANCTIONABLE VIOLATIONS OF TITLE 58 OKLAHOMA PROBATE PROCEDURAL RULES OF THE COURT
Document Available (SEALED DOCUMENT)

**04-09-2019** [ CTFREE ]
JUDGE KIRBY; MOTION TO COMPEL - ATTY ROE SIMMONS APPEARS. PRO SE FRANCIS GIBSON APPEARS. TONYA PARKS, GRANDDAUGHTER OF DECEASED APPEARS. TODAY'S HEARING IS STRICKING AS MOOT. BY AGREEMENT OF ALL PARTIES NEXT HEARING SET FOR 5-16-19 @ 1:30PM

**04-09-2019** [ CTFREE ]
JUDGE KIRBY'S COURT MINUTE
Document Available (SEALED DOCUMENT)

**04-23-2019** [ NO ]
NOTICE OF DEPOSITION SUBPOENA DUCES TECUM
Document Available (SEALED DOCUMENT)

**04-26-2019** [ NO ]
NOTICE OF AMENDED DEPOSITION SUBPOENA DUCES TECUM
Document Available (SEALED DOCUMENT)

**05-02-2019** [ OBJ ]
PETITIONER FRANCES A. GIBSON OBJECTION TO DEPOSITION SUBPOENA DUCES TECUM
Document Available (SEALED DOCUMENT)

**05-09-2019** [ AFM ]
AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

**05-16-2019** [ CRF ] $ 20
COURT REPORTER FEE-TRIAL ON MERITS

**05-16-2019 [ CTFREE ]**
JUDGE KIRBY; F.A. GIBSON'S PETITION/MOTION IN OPPOSITION T D.G. LENOX'S FA - ATTY FOR PETITIONER/P.R. ROE SIMMONS APPEARS. PRO SE FRANCES GIBSON APPEARS.
FINAL ACCOUNT - OBJECTION TO/AND MOTION TO REMOVE
TESITMONY WAS TAKEN ON THE RECORD. COURT REPORTER, KIM LEWIN.
COURT HEARD FROM WITNESSES JIM KAUFMAN, TONYA PARKS AND FRANCES GIBSON.
THE OBJECTION TO THE FINAL ACCOUNT IN OVER RULED.
THE MOTION TO RESOLVE IS OVER RULED.
THE ATTY FEES REQUESTED ARE ACCESSED AGAINST THE INHERITANCE OF FRANCES GIBSON IN THE AMOUNT OF $16,000.00

**05-16-2019 [ ADJUST ]** $ 0.50
ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

**05-16-2019 [ ACCOUNT ]**
ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS:
PB-2016-721: AC01 CLERK FEES -$0.50

**05-16-2019 [ ACCOUNT ]**
RECEIPT # 2019-4602934 ON 05/16/2019.
PAYOR: GIBSON/FRANCES A TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $19.50 ON AC01 CLERK FEES.
PB-2016-721: $0.50 ON AC09 CARD ALLOCATIONS.

**05-17-2019 [ CTFREE ]**
JUDGE KIRBY'S COURT MINUTE/WITH EXHIBIT...........COURT REPORTER KIM LEWIN
Document Available (SEALED DOCUMENT)

**06-12-2019 [ NO ]**
APPENDIX TO SUPPORT FRANCES A GIBSON NOTIFICATION OF NON-COMPLIANCE WITH TITLE 58 OKLAHOMA PROBATE PROCEDURE
Document Available (SEALED DOCUMENT)

**06-12-2019 [ LT ]**
FRANCIS A GIBSON LETTER NOTIFYING THE COURT OF NON-COMPLIANCE WITH TITLE 58 OKLAHOMA PROBATE PROCEDURE AND LOCAL RULES OF THE COURT
Document Available (SEALED DOCUMENT)

**09-12-2019 [ O ]**
ORDER ALLOWING FINAL ACCOUNT, DETERMINING HEIRS AND FINAL DECREE OF DISTRIBUTION AND ORDER DENYING FRANCIS GIBSON'S OBJECTION AND MOTION TO REMOVE PERSONAL REPRESENTATIV
Document Available (SEALED DOCUMENT)

**09-26-2019 [ SDTIP ]**
SUBPOENA DUCES TECUM ISSUED - PRIVATE PROCESS SERVER X 1

**09-26-2019 [ NO ]**
NOTICE OF SUBPOENA TO PRODUCE DOCUMENTS
Document Available (SEALED DOCUMENT)

**09-27-2019 [ MO ]**

FRANCES A. GIBSON'S PETITIONER MOTION TO SET ASIDE ORDER ALLOWING FINAL ACCOUNT, DETERMINING HEIRS AND DECREE OF DISTRIBUTION AND ORDER DENYING FRANCIS GIBSON'S OBJECTION AND MOTION TO REMOVE PERSONAL REPRESENTATIVE

Document Available (SEALED DOCUMENT)

---

**10-03-2019 [ AFM ]**

AFFIDAVIT OF MAILING

Document Available (SEALED DOCUMENT)

---

**10-08-2019 [ O ]**

AFFIDAVIT OF TONYA PARKS WHO IS THE DAUGHTER OF "HEIR"/"INTEREST PARTY" FRANCES A. GIBSON AND HAS POWER OF ATTORNEY TO SPEAK ON THE BEHALF OF FRANCES A. GIBSON DUE TO HER HEALTH CAUSED BY THIS PROBATE CASE WANTS TO ***ALERT*** THE COURT BY HER AFFIDAVIT TO SHOW THAT THE PERSONAL REPRESENTATIVE DANNIE LENOX AND HIS ATTORNEY ROE SIMMONS WITH SMITH SUMMONS, PLLC HAS COMMITTED CRIMES OF EMBEZZLEMENT, FRAUD, PERJURY, MISMANGING OF PROBATE FUNDS AND ALL PROPERTY UPON THE DECEASED CEOLA LENOX AND HER ESTATE AFFIDAVIT DATED OCTOBER 7, 2019

*****I PRAY TO THE COURT TO PLEASE POSTPONE/ABATE THIS PROBATE, SET ASIDE THE FRADULENT ORDER WRITTEN FILED ON SEPTEMBER 12, 2019 AND APPOINT A SPECIAL ADMINISTRATOR, SPECIAL MASTER, OR A PROFESSIONAL/LICENSED LAW ENFORCEMENT INVESTIGATOR TO INVESTIGATE THIS PROBATE AND THE ACTIONS OF PERSONAL REPRESENTATIVE DANNIE LENOX, ATTORNEY ROE SIMMONS, AND JUDGE RICHARD KIRBY**********

Document Available (SEALED DOCUMENT)

---

**10-08-2019 [ NO ]**

APPENDIX TO SUPPORT THE AFFIDAVIT OF TONYA PARKS DAUGHTER OF HEIR FRANCES GIBSON DATED OCTOBER 7, 2019

Document Available (SEALED DOCUMENT)

---

**10-21-2019 [ NOH ]**

NOTICE OF HEARING

Document Available (SEALED DOCUMENT)

---

**10-21-2019 [ OBJ ]**

OBJECTION TO SUBPOENA FOR PRODUCTION OF DOCUMENTS, MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER

Document Available (SEALED DOCUMENT)

---

**10-21-2019 [ OBJ ]**

RESPONDENT JPMORGAN CHASE BANK, N.A.'S OBJECTIONS AND MOTION TO QUASH OR MODIFY FRANCES A. GIBSON'S SUBPOENA

Document Available (SEALED DOCUMENT)

---

**11-07-2019 [ MO ]**

FRANCIS A. GIBSON PETITIONER MOTION IN OPPOSITION TO DANNIE LENOX OBJECTION TO SUBPOENA FOR PRODUCTION OF DOCUMENTS, MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER FILED OCTOBER 21, 2019

Document Available (SEALED DOCUMENT)

---

**11-12-2019 [ EAA ]**

ENTRY OF APPEARANCE AND MOTION TO CONTINUE

Document Available (SEALED DOCUMENT)

---

**11-12-2019** [ **REQ** ]
SUPPLEMENTAL REQUEST TO SET ASIDE FINAL ACCOUNTING, SALE OF PROPERTY, AND REPRESENTATIVE, AND FOR DISCOVERY MASTER
Document Available (SEALED DOCUMENT)

**12-11-2019** [ **CTFREE** ]
JUDGE COLEMAN- CASE CONT AND RESET BY AGREEMENT TO 1-21-20 @ 1:30

**02-10-2020** [ **POS** ]
PROOF OF SERVICE
Document Available (SEALED DOCUMENT)

**02-10-2020** [ **AFD** ]
AFFIDAVIT OF PERSONAL SERVICE
Document Available (SEALED DOCUMENT)

**02-10-2020** [ **NOH** ]
NOTICE OF HEARING
Document Available (SEALED DOCUMENT)

**02-11-2020** [ **CRF** ] $ 20.00
COURT REPORTER FEE-TRIAL ON MERITS

**02-11-2020** [ **CTFREE** ]
JUDGE COLLINS; SUPLEMENTAL REQUEST SET ASIDE FINAL ACCOUNT ATTY MARK MYLES APPEARS. ATTY ROE SIMMONS HAD A FAMILY EMERGENCY.

**02-11-2020** [ **NO** ]
NOTICE OF CHANGE OF FIRM NAME
Document Available (SEALED DOCUMENT)

**02-11-2020** [ **ADJUST** ] $ 0.50
ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

**02-11-2020** [ **ACCOUNT** ]
ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS:
PB-2016-721: AC01 CLERK FEES -$0.50

**02-11-2020** [ **ACCOUNT** ]
RECEIPT # 2020-4763649 ON 02/11/2020.
PAYOR: PARKS/TONYA RENEE TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $19.50 ON AC01 CLERK FEES.
PB-2016-721: $0.50 ON AC09 CARD ALLOCATIONS.

**03-31-2020** [ **TEXT** ]
ADMINISTRATIVELY REASSIGNED BY AOC MIS PER HELP DESK CONTACT 91618

**04-16-2020** [ **CNOTE** ]
THE ONE HOUR HEARING SET FOR 5-15-20 HAS BEEN RE SET TO MAY 19-20 @ 3PM DUE TO THE COVID-19. PARTIES CONTACTED.

**05-11-2020** [ **MO** ]
MOTION FOR LEAVE TO FILE RESPONSE OUT OF TIME
Document Available (SEALED DOCUMENT)

**05-12-2020** **[ RSPD ]**
RESPONSE TO FRANCES GIBSON'S SUPPLEMENTAL REQUEST TO SE ASIDE FINAL ACCOUNTING, SALE OF PROPETY, AND REPRSENTATIVE, AND FOR DISCOVERY MASTER
Document Available (SEALED DOCUMENT)

**05-18-2020** **[ POS ]**
PROOF OF SERVICE/ SUBPOENA IN A CIVIL CASE SERVED - DANNIE LENOX - ON 5-15-20
Document Available (SEALED DOCUMENT)

**06-08-2020** **[ NO ]**
NOTICE OF ATTORNEY SUBPOENA DUCES TECUM
Document Available (SEALED DOCUMENT)

**06-12-2020** **[ NO ]**
NOTICE OF ATTORNEY SUBPOENA DUCES TECUM
Document Available (SEALED DOCUMENT)

**06-12-2020** **[ NO ]**
NOTICE OF ATTORNEY SUBPOENA DUCES TECUM
Document Available (SEALED DOCUMENT)

**06-15-2020** **[ OBJ ]**
ADMINISTRATOR'S OBJECTION AND MOTION IN LIMINE
Document Available (SEALED DOCUMENT)

**06-16-2020** **[ CER ]**
CERTIFIED COPY OF WARRANTY DEED
Document Available (SEALED DOCUMENT)

**06-16-2020** **[ CER ]**
CERTIFIED COPY OF PERSONAL REPRESENTATIVE'S DEED
Document Available (SEALED DOCUMENT)

**06-17-2020** **[ MOQ ]**
MOTION TO QUASH SUBPOENA OF KAITLIN HOWARD
Document Available (SEALED DOCUMENT)

**06-17-2020** **[ POS ]**
PROOF OF SERVICE / ATTORNEY SUBPOENA FOR TRIAL TESTIMONY SERVED - TEREK WAZZAN - ON 6-16-20
Document Available (SEALED DOCUMENT) $ 20

**06-18-2020** **[ CRF ]**
COURT REPORTER FEE-TRIAL ON MERITS

**06-18-2020** **[ NO ]**
NOTICE OF SWORN STATEMENT BY PURCHASER OF PROPERTY
Document Available (SEALED DOCUMENT)

**06-18-2020** **[ ACCOUNT ]**
RECEIPT # 2020-4826361 ON 06/18/2020.
PAYOR: MYLES LAW FIRM TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $20.00 ON AC01 CLERK FEES.

**06-29-2020** [ NO ]

AID TO THE COURT REGARDING VOID PLEADINGS (NULLITIES) FILED BY PERSONAL REPRESENTATIVE AND COUNSEL

Document Available (SEALED DOCUMENT)

**06-29-2020** [ NO ]

AID TO THE COURT REGARDING VOID PLEADINGS ( NULLITIES) FILED BY PERSONAL REPRESENTATIVE AND COUNSEL

Document Available (SEALED DOCUMENT)

**07-31-2020** [ O ]

ORDER RE: FRANCES A GIBSON;S PETITIONER (SIC) MOTION TO SET ASIDE ORDER ALLOWING FINAL ACCOUNT, DETERMINING HEIRS & DISTRIBUTION AND ORDER DENYING FRANCES GIBSON'S OBJECTION AND MOTION TO REMOVE PERSONAL REPRESENTATIVE..

SUPPLEMENTAL REQUEST TO SET ASIDE FINAL ACCOUNTING. SALE OF PROPERTY , AND REPRESENTATIVE AND FOR DISCOVERY MASTER AND

RESPONSE TO FRANCES GIBSON'S SUPPLEMENTAL REQUEST TO SET ASIDE FINAL ACCOUNTING , SALE OF PROPERTY, AND REPRESENTATIVE AND FOR DISCOVERY MASTER.

Document Available (SEALED DOCUMENT)

**08-04-2020** [ NOF ]

NOTICE OF FILING

Document Available (SEALED DOCUMENT)

**08-04-2020** [ T ]

ORIGINAL TRANSCRIPT OF PROCEEDINGS HAD ON THE 16TH DAY OF MAY, 2019 BEFORE THE HONORABLE RICHARD W. KIRBY / COURT REPORTER KIM LEWIN

Lenox, Ceola M #1

**08-12-2020** [ DISPLTF ]

ERROR

Lenox, Ceola M #1

**08-12-2020** [ DISPOTHER ]

LETTERS OF SPECIAL ADMINISTRATOR ISSUED TO SARA MURPHY BONDURANT/ JUDGE SIDERIAS

Document Available (SEALED DOCUMENT)

**04-01-2021** [ APLI ]

APPLICATION TO ALLOW SPECIAL ADMINISTRATOR'S RESIGNATION

Document Available (SEALED DOCUMENT)

**04-13-2021** [ OH ]

ORDER OF HEARING APPLICATION TO ALLOW SPECIAL ADMINISTRATOR'S RESIGNATION

Document Available (SEALED DOCUMENT)

**04-13-2021** [ NOH ]

NOTICE OF HEARING APPLICATION TO ALLOW SPECIAL ADMINISTRATOR'S RESIGNATION

Document Available (SEALED DOCUMENT)

**04-15-2021** [ AFM ]

AFFIDAVIT OF MAILING

Document Available (SEALED DOCUMENT)

**04-20-2021** [ TEXT ]

ADMINISTRATIVELY REASSIGNED BY AOC MIS PER HELP DESK CONTACT HD109178

**05-10-2021 [ RESP ]**

BENNIE R. GIBSON SPOUSE OF THE HEIR AND DAUGHTER THE DECEASED FRANCES A. GIBSON AFFIDAVIT IN REPSONSE TO SARA MURPHY BONDURANT APPLICATION TO ALLOW SPECIAL ADMINSITRATOR'S RESIGNATION

Document Available (SEALED DOCUMENT)                                                      $ 20.00

**05-11-2021 [ CRF ]**

COURT REPORTER FEE-TRIAL ON MERITS

**05-11-2021 [ O ]**

COURT MINUTE ORDER

Document Available (SEALED DOCUMENT)

**05-11-2021 [ CTFREE ]**

JUDGE KIRKPATRICK; THE COURT FINDS GOOD CAUSE TO SEAL THE RECORD IN PB- 2016-721

**05-11-2021 [ CTFREE ]**

JUDGE KIRKPATRICK - ATTY SARA MURPHY BONDURANT AS SPECIAL ADMIN ATTY MARK MYLES ON BEHALF OF FRANCES GIBSON, HEIRS SPECIAL ADMIN SEEKS TO RESIGN DUE TO HARASSMENT AND DIFFICULTIES COMMUNICATING, INCLUDING THREATS AND ACCUSATIONS. ATTY SIMMONS ON BEHALF OF DANNY LENNOX, HEIR (1 OF 4) TANYA PARKS PRESENT ON BEHALF OF MOTHER, FRANCES GIBSON ONE OF 4 HEIRS COURT ORDERS THAT THE RECORDS BE SEALED DUE TO THE FREQUENT ALLEGATIONS MADE BY NON PARTIES IN COURT FILE THE COURT ALLOWS RESIGNATION OF SPECIAL ADMIN THE COURT APPROVES THE AMOUNT OF FEES PRESENTED IN MOTION. COURT ORDERS ATTORNEY FEES IN THE AMOUNT OF 2945.70 BE PAID BY ESTATE.

COURT REPORTER - DEBRA HELLIKER

Document Available (SEALED DOCUMENT)

**05-11-2021 [ O ]**

ORDER ALLOWING SPECIAL ADMINISTRATOR'S RESIGNATION

Document Available (SEALED DOCUMENT)

**05-11-2021 [ ACCOUNT ]**

RECEIPT # 2021-4996993 ON 05/11/2021.

PAYOR: TONYA PARKS TOTAL AMOUNT PAID: $ 20.00.

LINE ITEMS:

PB-2016-721: $20.00 ON AC01 CLERK FEES.

**08-25-2021 [ NO ]**

AFFIDAVIT OF TONYA PARKS WHO IS THE DAUGHTER OF " HEIR" FRANCES A. GIBSON AND HAS POWER OF ATTORNEY TO SPEAK ON THE BEHALF OF GRANCES A. GIBSON SUMMITS THIS AFFIDAVIT IN SUPPORT TO BENNIE R. GIBSON PETITIIONER AND SPOUSE OF THE HEIR AND DAUGHTER OF THE DECEASED MOTION TO RECUSE JUDGE NIKKI KIRKPATRICK ON GROUND OF GRIEVOUS MISCONDUCT AND IINTEREERENCE IN THE PROBATE OF THE DEASED PERSON CEOLA M. LENOX

Document Available (SEALED DOCUMENT)

**08-25-2021 [ MO ]**

BENNIE R. GIBSON PETITIONER AND SPOUSE OF THE HEIR AND DAUGHTER OF THE DECEASED FRANCES A. GIBSON MOTION TO RECUSE JUDGE NIKKI KIRKPATRICK ON GROUNDS OF GRIEVOUS MISCONDUCT AND INTERFERENCE IN THE PROBATE OF THE DECEASED PERSON CEOLA M. LENOX

Document Available (SEALED DOCUMENT)

$ 20.00

**09-16-2021  [ CRF ]**

    COURT REPORTER FEE-TRIAL ON MERITS

$ 0.50

**09-16-2021  [ ADJUST ]**

    ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

**09-16-2021  [ ACCOUNT ]**

    ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING
    AMOUNTS:
    PB-2016-721: AC01 CLERK FEES -$0.50

**09-16-2021  [ ACCOUNT ]**

    RECEIPT # 2021-5065729 ON 09/16/2021. COURT REPORTER FEE
    PAYOR: PARKS/TONYA TOTAL AMOUNT PAID: $ 20.00.
    LINE ITEMS:
    PB-2016-721: $19.50 ON AC01 CLERK FEES.
    PB-2016-721: $0.50 ON AC09 CARD ALLOCATIONS.

**09-20-2021  [ CTFREE ]**

    COURT MINUTE
    Document Available (SEALED DOCUMENT)

**10-01-2021  [ NOF ]**

    NOTICE OF FILING
    Document Available (SEALED DOCUMENT)

**10-01-2021  [ T&2 ]**

    ORIGINAL TRANSCRIPT & 2 COPIES OF PROCEEDINGS HAD ON THE 16TH DAY OF SEPTEMBER 2021
    BEFORE THE HONORABLE NIKKI KIRKPATRICK / COURT REPORTER SUSAN BOUDIN

**10-31-2021  [ TEXT ]**

    ADMINISTRATIVELY REASSIGNED BY AOC MIS PER HELP DESK CONTACT 119596

**11-03-2021  [ O ]**

    ORDER DIRECTING COURT CLERK TO GIVE FULL ACCESS TO COURT DOCKET AND COURT FILE TO THE
    SPECIAL MASTER AND HIS ATTORNEYS - ROLLIN NASH JR. , BRYAN C DIXON JR., CYNTHIA COHENOUR
    Document Available (SEALED DOCUMENT)

**11-03-2021  [ EAA ]**

    ENTRY OF APPEARANCE OF CYNTHIA COHENOUR AS ATTORNEY FOR THE SPECIAL MASTER
    Document Available (SEALED DOCUMENT)

**11-03-2021  [ APLI ]**

    APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF ATTORNEYS FOR ROLLING NASH JR. SPECIAL
    MASTER
    Document Available (SEALED DOCUMENT)

**11-03-2021  [ O ]**

    ORDER APPOINTING ROLLIN NASH JR. AS SPECIAL MASTER
    Document Available (SEALED DOCUMENT)

**11-03-2021  [ O ]**

    ORDER AUTHORIZING EMPLYMENT OF ATTORNEYS FOR ROLLIN NASH JR. SPECIAL MASTER
    Document Available (SEALED DOCUMENT)

**11-03-2021 [ EAA ]**
ENTRY OF APPEARANCE OF ROLLIN NASH JR AS ATTORNEY FOR THE SPECIAL MASTER
Document Available (SEALED DOCUMENT)

**11-09-2021 [ EAA ]**
ENTRY OF APPEARANCE OF BRYAN C. DIXON JR. AS ATTORNEY FOR THE SPECIAL MASTER
Document Available (SEALED DOCUMENT)

**11-24-2021 [ OBJ ]**
TONYA PARKS POWER OF ATTORNEY OF FRANCES A GIBSON DAUGHTER AND HIER OF THE DECEASE CEOLA M. LENOX OBJECTION TO ORDER AUTHORIZING EMPLOYMENT OF ATTORNEY ROLLIN NASH JR. SPECIAL MASTER
Document Available (SEALED DOCUMENT)

**11-29-2021 [ NO ]**
HEIR FRANCES GIBSON GIVES NOTICE TO THIS COURT OF ATTORNEY MARK MYLES TERMINATION
Document Available (SEALED DOCUMENT)

**11-29-2021 [ NOH ]**
NOTICE OF HEARING TONYA PARKS POWER OF ATTORNEY OF FRANCES A GIBSON DAUGHTER AND HEIR OF THE DECEASE CEOLA M. LENOX OBJECTION TO ORDER AUTHORIZING EMPLOYMENT OF ATTORNEY ROLLIN NASH JR. SPECIAL MASTER
Document Available (SEALED DOCUMENT)

**11-29-2021 [ NO ]**
HEIR FRANCIS GIBSON GIVES NOTICE TO THIS COURT OF ATTORNEY MARK MYLES TERMINATION
Document Available (SEALED DOCUMENT)

**12-02-2021 [ MO ]**
MOTION FOR LEAVE TO WITHDRAW REPRESENTATION
Document Available (SEALED DOCUMENT)

**12-03-2021 [ CRF ]** $ 20.00
COURT REPORTER FEE-TRIAL ON MERITS

**12-03-2021 [ CTFREE ]**
COURT MINUTE
Document Available (SEALED DOCUMENT)

**12-03-2021 [ ADJUST ]** $ 0.50
ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

**12-03-2021 [ ACCOUNT ]**
ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS:
PB-2016-721: AC01 CLERK FEES -$0.50

**12-03-2021 [ ACCOUNT ]**
RECEIPT # 2021-5106764 ON 12/03/2021.
PAYOR: PARKS/TONYA TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $19.50 ON AC01 CLERK FEES.
PB-2016-721: $0.50 ON AC09 CARD ALLOCATIONS.

**12-06-2021  [ NOF ]**

NOTICE OF FILING TRANSCRIPTS
Document Available (SEALED DOCUMENT)

**12-06-2021  [ T ]**

ORIGINAL TRANSCRIPT OF PROCEEDINGS ON THIS 11TH DAY OF MAY, 2021, BEFORE THE HON. NIKKI
KIRKPATRICK / COURT REPORTER DEBRA HELLIKER / (FILED UNDER SEAL)

**12-09-2021  [ O ]**

SUPPLEMENTAL ORDER
Document Available (SEALED DOCUMENT)

**12-17-2021  [ MO ]**

ACCORDING TO THE OKLAHOMA OPEN RECORDS ACT- HEIR FRANCES A. GIBSON'S MOTION TO UNSEAL
THE CASE DUE TO THE IMPROPER SEALING OF THE CASE REQUESTED BY ATTORNEY ROE SIMMONS TO
PROTECT THE REPUTATION OF OFFICERS OF THE COURT AND TO CONCEAL EVIDENCE IN A COURT OF
LAW THAT SHOWS WRONG DOINGS COMMITTED BY OFFICERS OF THE COURT INCLUDING HIMSELF AND
TO OBSTRUCT JUSTICE BY DENYING FRANCES GIBSON/PARTIES IN THE CASE AND THE PUBLIC THE
ABILITY TO ACCESS NORMAL PUBLIC DOCUMENTS AND TRANSCRIPTS
Document Available (SEALED DOCUMENT)

**12-21-2021  [ NOH ]**

NOTICE OF HEARINGACCORDING TO THE OKLAHOMA OPEN RECORDS ACT- HEIR FRANCES A. GIBSON'S
MOTION TO UNSEAL THE CASE DUE TO THE IMPROPER SEALING OF THE CASE REQUESTED BY ATTORNEY
ROE SIMMONS TO PROTECT THE REPUTATION OF OFFICERS OF THE COURT AND TO CONCEAL EVIDENCE
IN A COURT OF LAW THAT SHOWS WRONG DOINGS COMMITTED BY OFFICERS OF THE COURT INCLUDING
HIMSELF AND TO OBSTRUCT JUSTICE BY DENYING FRANCES GIBSON/PARTIES IN THE CASE AND THE
PUBLIC THE ABILITY TO ACCESS NORMAL PUBLIC DOCUMENTS AND TRANSCRIPTS
Document Available (SEALED DOCUMENT)                                                    $ 20.00

**02-01-2022  [ CRF ]**

COURT REPORTER FEE-TRIAL ON MERITS

**02-01-2022  [ CTFREE ]**

JUDGE KIRBY - FRANCIS GIBSON APPEAR PRO SE ROE SIMMONS APPEAR ON BEHALF OF DANNIE LENOX
COURT RULING UNDER ADVISEMENT WILL SEND OUT WRITTEN ORDER TO THE PARTIES
Document Available (SEALED DOCUMENT)

**02-01-2022  [ ACCOUNT ]**

RECEIPT # 2022-5136660 ON 02/01/2022.
PAYOR: TONYA PARKS TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $20.00 ON AC01 CLERK FEES.

**04-05-2022  [ RPT ]**

SPECIAL MASTER'S REPORT
Document Available (SEALED DOCUMENT)

**04-06-2022  [ AM ]**

AMENDED CERTIFICATE OF MAILING SPECIAL MASTER'S REPORT
Document Available (SEALED DOCUMENT)

**04-06-2022  [ AM ]**

FIRST AMENDMENT TO SPECIAL MASTER'S REPORT
Document Available (SEALED DOCUMENT)

**04-13-2022  [ NO ]**

AFFIDAVIT OF TONYA PARKS THE DAUGHTER OF "HEIR/INTERST/PARTY" FRANCES A GIBSON AND HAS POWER OF ATTORNEY TO SPEAK ON THE BEHALF OF FANCES A GIBSON DUE TO HER HEALTH CAUSED BY THE PROBATE CASE AND HAS BEEN TO MOST OF THE EVENTS HANDLED IN THIS ESTATE AND NOW WANTS TO ALERT THE COURT BY HER AFFIDAVIT TO SHOW THAT THE SPECIAL MASTERS REPORT DATED APRIL 5, 2022 DOES NOT REFLECT A TRUE HISTORY OF THE ESTATE WHICH WE BELIEVE IS ATTENED TO MISLEAD THE COURT IN PROTECTION OF OFFICERS OF THE COURT AND MAY ALSO BE USED AS AN ATTEMPT TO EXTORT AND EXPLOIT AND ELDERLY PERSON WHO IS AN HEIR TO THE ESTATE
Document Available (SEALED DOCUMENT)

**04-13-2022  [ EXHI ]**

APPENDIX-EXHIBITS 1-19- IN SUPPORT TO AFFIDAVIT OF TONYA PARKS THE DAUGHTER OF "HEIR/INTERST/PARTY" FRANCES A GIBSON AND HAS POWER OF ATTORNEY TO SPEAK ON THE BEHALF OF FANCES A GIBSON DUE TO HER HEALTH CAUSED BY THE PROBATE CASE AND HAS BEEN TO MOST OF THE EVENTS HANDLED IN THIS ESTATE AND NOW WANTS TO ALERT THE COURT BY HER AFFIDAVIT TO SHOW THAT THE SPECIAL MASTERS REPORT DATED APRIL 5, 2022 DOES NOT REFLECT A TRUE HISTORY OF THE ESTATE WHICH WE BELIEVE IS ATTENED TO MISLEAD THE COURT IN PROTECTION OF OFFICERS OF THE COURT AND MAY ALSO BE USED AS AN ATTEMPT TO EXTORT AND EXPLOIT AND ELDERLY PERSON WHO IS AN HEIR TO THE ESTATE
Document Available (SEALED DOCUMENT)

**04-13-2022  [ EXHI ]**

APPENDIX-EXHIBITS 20-21- IN SUPPORT TO AFFIDAVIT OF TONYA PARKS THE DAUGHTER OF "HEIR/INTERST/PARTY" FRANCES A GIBSON AND HAS POWER OF ATTORNEY TO SPEAK ON THE BEHALF OF FANCES A GIBSON DUE TO HER HEALTH CAUSED BY THE PROBATE CASE AND HAS BEEN TO MOST OF THE EVENTS HANDLED IN THIS ESTATE AND NOW WANTS TO ALERT THE COURT BY HER AFFIDAVIT TO SHOW THAT THE SPECIAL MASTERS REPORT DATED APRIL 5, 2022 DOES NOT REFLECT A TRUE HISTORY OF THE ESTATE WHICH WE BELIEVE IS ATTENED TO MISLEAD THE COURT IN PROTECTION OF OFFICERS OF THE COURT AND MAY ALSO BE USED AS AN ATTEMPT TO EXTORT AND EXPLOIT AND ELDERLY PERSON WHO IS AN HEIR TO THE ESTATE
Document Available (SEALED DOCUMENT)

**04-19-2022  [ REQ ]**

REQUEST
Document Available (SEALED DOCUMENT)

**01-04-2023  [ CTFREE ]**

JUDGE KIRBY - SEE COURT MINUTE
Document Available (SEALED DOCUMENT)

**01-10-2023  [ TEXT ]**

HD138691 - JUDGE REASSIGNMENT

**02-17-2023  [ RET ]**

RETURN TO SENDERNO SUCH NUMBER UNABLE TO FORWARD
Document Available (SEALED DOCUMENT)

**10-23-2023  [ P ]**

PETITION FOR LETTERS OF ADMINISTRATION
Document Available (SEALED DOCUMENT)

**10-25-2023  [ OH ]**

ORDER FOR HEARING PETITION FOR APPOINTMENT OF SPECIAL ADMINISTRATOR
Document Available (SEALED DOCUMENT)

**10-25-2023 [ NOH ]**

NOTICE OF HEARING PETITION FOR APPOINTMENT OF SPECIAL ADMINISTRATOR
Document Available (SEALED DOCUMENT)

---

**11-16-2023 [ AFM ]**

AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

---

**11-17-2023 [ AFM ]**

AFFIDAVIT OF MAILING
Document Available (SEALED DOCUMENT)

---

**11-20-2023 [ CRF ]** $ 20.00

COURT REPORTER FEE-TRIAL ON MERITS

---

**11-20-2023 [ CTFREE ]**

JUDGE RIESEN: PETITIONER APPEARS PRO SE. LETTERS ISSUED. COURT REPORTER DEANN ENGLISH.

---

**11-20-2023 [ O ]**

ORDER APPOINTING ADMINISTRATOR
Document Available (SEALED DOCUMENT)

---

**11-20-2023 [ ACCOUNT ]**

RECEIPT # 2023-5520959 ON 11/20/2023. COURT REPORTER FEE
PAYOR: FRANCES GIPSON TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
PB-2016-721: $20.00 ON AC01 CLERK FEES.

---

**11-21-2023 [ LTA ]**

LETTERS OF ADMINISTRATION ISSUED TO TONYA PARKS
Document Available (SEALED DOCUMENT)

# Exhibit 6

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR 13 2022

RICK WARREN
COURT CLERK
108 ______

*1052041458*

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF THE ESTATE )
OF CEOLA M. LENOX, Deceased ) PB-2016-721

**AFFIDAVIT of TONYA PARKS the DAUGHTER of "HEIR/INTEREST PARTY" FRANCES A. GIBSON and has POWER of ATTORNEY to Speak on the behalf of FRANCES A. GIBSON due to her health caused by this Probate Case and has been to most of the events handled in this estate and now WANTS TO ***ALERT*** THE COURT BY HER AFFIDAVIT TO SHOW THAT THE SPECIAL MASTER'S REPORT dated APRIL 5, 2022, does not reflect a TRUE HISTORY OF THE ESTATE which we believe is ATTENED TO MISLEAD THE COURT IN PROTECTION OF OFFICERS OF THE COURT and MAY ALSO BE USED AS AN ATTEMPT TO EXTORT and EXPLOIT AN ELDERLY PERSON who is an HIER to the ESTATE**

STATE OF TEXAS
COUNTY OF COLLIN

1. Tonya Parks, being duly sworn hereby depose and state the following:
2. I am the daughter of Frances A. Gibson who is an *Heir* and *Beneficiary* of the Matter of the Estate of the deceased Ceola M. Lenox, and I am the granddaughter of the deceased Ceola Lenox in Probate Case No. PB-2016-721 in Oklahoma County District Court, Oklahoma.
3. The Matter of the Estate is still pending under color of law before District Judge Richard Kirby who has been recently reassigned to this case by former Judge Ray Elliott who had previous knowledge of this estate and the issues surrounding it regarding the sealing of the case done by Judge Nikki Kirkpatrick at the request of attorney Roe Simmons, the Vacated orders signed by Judge Richard Kirby, attorney Roe Simmons actions in the estate and my mother's objection regarding the appointment of attorney Rollin Nash. Judge Elliot also told me by phone that if the issues regarding the estate are true then I must report it and speak up about it. Judge Elliott also made a comment to me when I told him that myself and my other were both struggling in the estate due to the continued misconduct and I told him about the appointment of Rollin Nash and he stated, "you are still struggling" my mother Frances Gibson was present and so was Judge Andrews who with Judge Elliott because they were meeting privately in Ms. Renee Troxell's office and they came out of Ms. Troxell's office while I was waiting to get information on obtaining the transcript to the

4. I am over the age of 21, and I have never been convicted of a felony nor a crime involving moral turpitude.

5. I am also the owner and creator of JUSTICE TOO which is an organization created for oversight of the Judicial System.

6. The information stated in this affidavit is the best of my knowledge and I will try to support it with any evidence that I have on hand that can be filed. I also have audio recordings and letters from individual that can support my conversation and statements listed in this affidavit.

7. My uncle who is my mother's brother Dannie Lenox was the Personal Representative of the Estate before Judge Sadaris' VACATED ORDER of the estate dated July 31, 2020.

8. Dannie Lenox personally hired attorney Jared Elwell, who quickly resigned from his position as an attorney, after which Dannie Lenox selected Roe Simmons of the Smith Simmons Law Firm to handle the Estate of Ceola Lenox's legal matters. On August 8, 2017, Jared Elwell filed a Motion to Withdraw and Substitute Counsel of Record in the estate replacing the attorney of record to attorney Roe Simmons, and on August 9, 2017, Mr. Elwell's motion was granted by the Honorable Judge Kirby. According to my knowledge, because the court docket did not reflect the removal of Jared Elwell and the replacement of Roe Simmons did not appear on the docket so Jared Elwell refiled the Order Granting his Motion to Withdraw and Substitute Counsel of Record on October 20, 2017, due to what we understood to be negative developments in the estate and he did not want to be a part of it because his parents invested a lot of money for him to obtain his license. This is what he told my father Bennie Gibson.

9. My mother Frances Gibson, my father Bennie R. Gibson and I have been closely monitoring all of the events that have incurred during the entire probate procedures in the Matter of the of Estate of Ceola M. Lenox. I have personal knowledge and expertise experience to support all the statements contained in this affidavit.

10. I have spoken to several other title companies in Oklahoma to get knowledge of proper/ethical probate procedures and I have also spoken with several attorneys and other agencies and tax offices within Oklahoma who have also provided me with knowledge of probate codes and legal standards and procedures when it pertains to the probate laws and real estate in probate proceedings.

11. I am not an attorney and I am not attempting to act as an attorney for my mother, but only a person who has full knowledge of this estate because of my position as power of attorney for my mother who is an Heir and I have been the one that everyone goes to when they need to rely matters to my mother regarding this estate because of how this estate has affected her emotionally, physically and she cannot hear very well so I have to repeat things to her so that she can respond.

12. The death of my grandmother on May 24, 2016, has been very stressful upon both my mother, father and myself. The death of my grandmother is suspicious due to her untimely death and the way this probate has been handled by Dannie Lenox and attorney Roe Simmons.
13. After her untimely death her estate handling continued the suspicion and has left my family to have to fight for justice to protect my grandmother's and mother's interest against her own sons, attorney Simmons along with Judge Kirby and other officers of the court who continue to ignore the irregularities of this estate and fraud upon the court which is noted in vacated order July 31, 2020.
14. No person should have to be confronted with the horrific breach of the law that has occurred throughout my grandmother's Probate. The events that followed in the probate case continued to be questionable and should be investigated. Also the unlawful treatment of my mother and father and myself du to the harassment, intimidation, attempted malicious prosecution by using officer of the court to violate spousal privileges, ex parte laws during pending cases, probate laws and many more.

**The Special Master's Report Does Not Reflect ALL of the Events and Information Needed to Have a TRUE and Accurate History of Events, Irregularities, and Showing of Fraud Upon the Court**

Mr. Rollin Nash's report dated April 5, 2022, does not reflect an accurate report of the events in this estate. He is leaving out several events that have occurred which are material facts that need to be mentioned in his report. This is why Frances Gibson and myself objected to the appointment of Rollin Nash and his law firm. We also objected attorney Sara Bondurant for the same reasons of conflicts of interest and failure to do the job for the reason of their appointments due to those conflicts. These appointments have a strong showing of conflicts of interest with attorney Roe Simmons, Judge Kirby and Judge Henderson. We believe their actions in the estate will also show to any neutral person that these appointments were unlawful and an attempt to coverup the fraud that has been committed in the estate.

Rollin Nash does not mention in any of his reports filed in this court that I notified him of a letter written by Roe Simmons on February 25, 2022, that we received as his response to our grievance with the Oklahoma Bar Association in March of 2022. In this letter on page 4 Roe Simmons states "**We did have a hearing recently before Judge Kirby on Ms. Gibson's request to unseal the court file. I have not seen the Order yet but have been told by Judge Kirby he is denying the request to unseal the records. I will send you a copy when I receive it.**" This letter was written on February 25, 2022 and it is now April 12, 2022, and there is still no Order *denying* or *granting* mine and my mother's Motion to Unseal the case According to the Oklahoma Open Records Act- Heir Frances A. Gibson's Motion to Unseal the Case Due to the Improper Sealing of the Case Requested by Attorney Roe Simmons to Protect

the Reputation of Officers of the Court and to Conceal Evidence in a Court Of Law that Shows Wrong Doings Committed by Officers of the Court Including Himself and to Obstruct Justice by Denying Frances Gibson/Parties in the Case and the Public The Ability to Access Normal Public Documents and Transcripts from Judge Richard Kirby.

Gena Hendryx, General Counsel with the Oklahoma Bar Association gave me information on where to find rules of ex perte' communication in one of my phone conversations. She told me to reference Oklahoma Statue Title 5A 2.9. From my findings and her explanation there are procedural and substantive rules of ex parte communication according to Okla. Stat. tit 5a 2.9:

A) A judge shall not initiate, permit, or consider ex parte communications or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, except as follows:

1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purpose, which does not address substantive matters, is permitted, provided:
   A) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication: and
   B) the judge make provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.
2) A judge may obtain the written advice of a disinterested expert on the law applicable to a proceeding before the judge, if the judge gives advance notice to the parties of the parties of the person to be consulted and the subject matter of the advice to be solicited, and affords the parties a reasonable opportunity to object and respond to the notice and to the advice received.
3) A judge may consult with court staff and court official whose function are to aid the judge in carrying out the judge's adjudicated responsibilities, or with the other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matters.
4) With the consent of all parties, the judge and court personnel may have ex parte communication with those involved in a specialized court team. Any party may expressly waive the right to receive that information.
5) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to settle matters pending before the judge.

B) If a judge inadvertently receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond.

C) A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed. While a judge shall not independently investigate facts in a case, and shall consider only the evidence present, a judge may seek information of a general nature that does not bear on a disputed evidentiary fact or influence the judge's opinion of the substantive merits a specific case.

My mother has *not* waived any rights or consented with anyone to allow ex parte communication with Judge Kirby and Roe Simmons. She has not been told by the court or Judge Kirby of any ruling regarding her disputed motion to unseal the case nor has she been able to respond to any ruling that may have been given to attorney Roe Simmons who is *not* an attorney of record to this court and I will explain in detailed my findings in this regard. As of April 12, 2022, the record does not reflect a ruling on mine or my mother's motion to unseal the case which was objected/disputed by attorney Roe Simmons. By Judge Kirby and Roe Simmons having ex parte communication, it has caused Roe Simmons to have an advantage over mine and my mother's motion to unseal the case. Roe Simmons is also using this knowledge to potentially receive a gain/advantage in the determination of the grievance my father and I have filed against Roe Simmons.

On March 22, 2022, at the ZOOM meeting scheduled by Rollin Nash and his team to talk about per attorney Victor Martin who work with Mr. Nash he stated the meeting was about, "informational meeting so that the Special Master can ask the parties questions related to the real estate transaction." Rollin Nash also told my mother and I that we efforts to file a claim with Chicago Title, I told Rollin Nash about this and he has left this information out of his report which would show that Roe Simmons and Judge Kirby have had ex parte communication while this case is pending which has been our argument throughout this probate due to the allegation, we have made which have been proven to grant a vacated order vacating the orders signed by Judge Kirby.

Rollin Nash is also not notifying the court of my discussion with my uncle Dannie Lenox who attorney Roe Simmons states on the record that he represents. Roe Simmons was the one who requested the estate record be sealed on May 11, 2021, for the purpose of Mark Myles reputation and he has told me for his person reputation and other officers of the court. Roe Simmons also objected to mine and my mother's Motion to Object the Appointment of Rollin Nash and his firm as the Special Master due to his relationship either business or personal while also serving as the campaign treasure of Judge Richard Kirby.

On Sunday February 5 and 6, 2022, I reached out to my uncle by text and recorded phone call. Dannie Lenox did not know that this estate had a VACATED ORDER dated July 31, 2020. He also *did not* know this estate was still ongoing nor did he have any knowledge of the efforts my mothers and I have been doing to recover the losses of the estate due to his and attorney Roe Simmons actions that violated the probate process and committed Fraud upon the court due to filings that were not true and due to information provided in the affidavit of the buyer Terek Wazzan the personal representative Dannie Lenox and attorney Roe Simmons should have known that they were committing fraud upon the court.

At the end of my recorded call on February 6, 2022, with Dannie Lenox he stated that he was going to speak with Roe Simmons. He had no knowledge of any of the events that took place after he testified before Judge Sardias VACATED orders in this estate.

This would mean that at the time of the sealing of the case and at the time of the motion to object the appointment of Rollin Nash and his law firm, that attorney Roe Simmons did not have a standing in the case because he was not representing a party/heir that had any knowledge the case was still pending. Also, per the VACATED order, "**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that the order for Issuance of Letter of Administration, Appointment of Personal Representative, Determination of Heirs, and Termination of Joint Tenancy and the Letters of Administration entered and issued on behalf of Dannie Lenox are hereby revoked pursuant to Okla. Stat. tit. 58 § 231.**

So, with that said, Roe Simmons had no standing in the case since July 31, 2020, because one – Dannie Lenox who is an heir to the estate did not know the estate was still pending nor did he have any knowledge of any of the filings or court dates to appear in court and two – Dannie Lenox and attorney Roe Simmons letters of appointment were revoked on July 31, 2020 and three – Dannie Lenox has not had any attorney make an appearance in the case since the VACATED order. Due to Roe Simmons stating that he was still the attorney of Dannie Lenox, my mother had no knowledge that she needed to be sending any documents to Dannie Lenox or other heirs due to Roe Simmons stating that he was still presenting parties in the estate. None of the other heirs knew this estate was still pending. Rollin Nash has filed to mention this in his Special Master's Report, but yet he wants to talk about tweets as if he is protecting Roe Simmons.

Special Master Rollin Nash also did not mention that per the Application for Order Approve Sale of Real Property had fraudulent information in it to mislead the court and my mother an heir to the estate. In Roe

Simmons and the Personal Representative of the Estate of Ceola Lenox, Dannie Lenox, state: "On September 5, 2017, a public sale was held at the office of the Personal Representative's attorney, Smith Simmons, PLLC. The real property located at 2520 NE 10th was sold to the highest bidder for $10,000.00". This is not true and could be an attempt to commit perjury against the estate.

Due to Roe Simmons filing that he had a public sale at his office, we feel that this is what we believe is fraud upon the court and to deceive an heir. From evidence that has been presented in the estate, affidavit of the buyer Terek Wazzan, my conversation with Devall Hubbard, my conversation with the Chicago Title, email chain obtained during a Federal Lawsuit in Texas that was *only* dismissed *without* prejudice due to jurisdiction reasons -only – not merits, and my conversation with Dannie Lenox who knew there was no public sale at Roe Simmons' office because he had already contracted with Duvell Hubbard on July 20, 2017.

**Events in the Estate:**

6) Ceola Lenox died on May 24, 2016.

7) Probate case was filed on June 23, 2016.

8) In the early part of 2017, after the Probate case was filed in the Oklahoma County District Court by attorney Jerod Elwell. Mr. Elwell quickly withdrew as counsel and then attorney Roe Simmons made an appearance in the case then he drafted a Limited Liability Company (LLC) so that the Heirs could put my grandmother's properties in a LLC to avoid Probate and not have to follow probate laws/statues Oklahoma Title 58.

9) After speaking with an Oklahoma attorney, my mother did not feel an LLC was an ethical procedure according to Probate, so she declined Roe Simmons directive to enter into an LLC with her brothers. This LLC drafted by Mr. Roe Simmons was put together for my mother and her three brothers – Dannie Lenox, Leon Lenox and Johnny Fryer to sign. The letter is dated after the start of the probate case so that they could go around Probate laws and procedures – this was the first red flag. According to this LLC if one of the heirs (which would have been my mother) disagreed with anything then it would be overruled because the LLC agreement only needed 3 votes of consent out of the 4 heirs - basically saying if my mother disagreed with anything her vote would be voided and it also had a clause "no right to partition". As far as we knew, this was the start, but not the end of attorney Roe Simmons' and Dannie Lenox's unethical conduct that proceeded during the entire probate case and until this day.

10) During the Probate, we (my mother, father and myself) uncovered several issues of fraud upon the Court with embezzlement, perjury, real estate fraud, fraud, deception, exploitation, extortion, unlawful harassment, unlawful intimidation, misleading statements to protect officers of the court to distract the readers and abuse of authority/power and discretion of Court officers.

11) The next issue that was brought to our attention was the fact that both the personal representative of the Estate (Dannie Lenox) and attorney Roe Simmons knew my grandmother's property located at 2520 NE 16th St. Oklahoma, OK 73117, pre-sold on July 20, 2017, for $16,000.00 to Real Estate Agent, Tarek Wazzan, while my uncle and his friend/acquittance Devell Hubbard were

pocketing/self-dealing by splitting $6,000.00 as an "assignment fee" that was not mentioned to my mother or ever filed in the Court. We know this as being factual information according to internal documents, sale documents and internal emails my father obtained in his requested and retrieved subpoena information from Chicago Title of Oklahoma during the Federal Lawsuit he filed in Texas in early 2018.

12) Attorney Roe Simmons nor my uncle Dannie Lenox notified my mother of such illusory sale, and he and Roe Simmons actually lied to my mother and the Court. My mother not only filed these documents in the Court to notify Judge Richard Kirby, my mother and I also told Judge Kirby this in two hearing – April 9, 2019, and May 16, 2019, but he ignored our concerns and evidence due to his protection of Roe Simmons. My mother and I showed Judge Richard Kirby actual fraud, presented creditable information with supported evidence filed in court record showings self-dealing and breach of fiduciary duty by personal representative Dannie Lenox and attorney Roe Simmons.

13) Evidence to support my mother's claims against the sale of the property were emails between Oklahoma Real Estate Agent Tarek Wazzan, Chicago Title, and attorney Roe Simmons along with recorded deed easily found in Oklahoma Court Deed searches online.

14) The following is an outline of events with the emails stated above along with a timeline of what was being filed by Roe Simmons in the Court Docket on OSCN along with a brief description of what was going on at the time:

***Event 1:***

***In Court*** -Probate started on 6/23/2016

On 1-11-2017 - Roe Simmons sends my mother Frances Gibson a letter wanting to start an LLC with her brothers to get around Probate for the Sale of the Real Estate Property.

***In Court*** -On 4/25/2017 - My father Bennie Gibson files an Interested person motion for sanction for violation of probate procedural. Due to information, we obtained about Dannie Lenox girlfriend Delouie Pollard and the LLC agreement sent to my mother
***In Court*** -On 5/04/2017 - Due to that filing - Roe Simmons files for hearing to Sell Real Property by ***PUBLIC SALE*** which it was schedule for May 17, 2017. In this petition Roe Simmons make no mention of Ceola Lenox's personal property.

***In Court*** -On 5/10/2017 - I filed a request and paid for a licensed court reporter to be at that hearing so that my mother would get a transcript of that hearing because we could not be present since we leave out of state in Texas and had prior engagements. I did this request by mail and everything was documented according to OSCN.

***In Court*** - On 5/10/2017 - Roe Simmons files an Affidavit of Mailing for the hearing coming up on May 17, 2017. He states it was mailed on May 5th

***In Court*** - On 5/17/2017 - The hearing was held - Roe Simmons knew we wanted a court reporter per his response to my father bar complaint, but ignored the request along with Judge Kirby's office.

***Tonya Parks in Texas*** - On 5/17/2017 - I called to get the court reporters information so that I could purchase the transcript. I found out that there was no report so I call up to the court to see what happened and why my request was denied. I spoke with several people while being transferred around to different departments within the court and clerk's office. Everyone saw that my request

was noted to the account/case and that I had done everything correctly according to the court clerk so they did not understand why the court reporter was not present during the hearing.

*In Court* - On 5/18/2017 - Judge Kirby enters minutes in the court record because he heard that I was upset that there was no court report and I feel they were covering their tracks because I had done everything that the court clerk requested me to do so that a court reporter would be present and per Roe Simmons' response to my father bar compliant, they knew about it so they knowingly and intentionally denied my request.

***Event 2:*** **(Behind the scene) - my mother (heir) had no knowledge of any of this and was lied to about the events:**

On **July 20, 2017** - Dannie Lenox entered into a contract with Devell Hubbard to purchase the property at 2520 NE 16th St. Oklahoma City, OK 73117 for $10,000.00

On **July 27, 2017** – Devell Hubbard entered an assignment of Contract Agreement with Wazzan Properties LLC – Terek Wazzan with an assignment fee of $6,000.00

On **July 27, 2017** - Tarek Wazzan sends Valerie Garcia an email stating he is buying my grandmother's property from Devell at a ***wholesale price*** of $16,000.00 and Mr. Hubbard has it under contract for 10k and he was coming to sign that day and give her the original contract. (Frances Gibson was not made aware of any of this). Being that Mr. Wazzan is a realtor, he did not provide any comps or appraisals. He is also listed per Chicago Title documents that Mr. Wazzan was the listing agent for the property. Mr. Wazzan should have disclosed market value to the heirs knowing he was going to obtain another buyer who would be paying much more, but instead he pocketed $19,000.00.

On **August 2, 2017** - RR Homes – Wazzan Properties LLC entered into and executed purchase contract with Plains State Holdings for $35,000.00 - with an expected closing date of August 20, 2017. This was before any proper notice was given to my mother that the property was ordered/authorized to be sold, had any kind of public sale or had the opportunity to be able list the property with a Real Estate Agent who had all the heirs best interest which was not a party in the contract to obtain higher bids.

On **August 17, 2017** - Plains State ***closed*** on the property with a sale price of $35,000.00 which was before my mother was given proper notice that the real property was authorized and/or proper written/signed ordered to sale and all notices were provided and published in the court for her to see as she is an out of state Heir. This Deed for $35,000.00 was notarized by Kaitlin Howard

On **September 5, 2017, Per the Application of the sale of Real Property, attorney Roe Simmons states that "a public sale was held at the office of the Personal Representative's attorney, Smith Simmons, PLLC. The real property located at 2520 NE 10th was sold to the highest bidder for $10,000.00."** According to the last previous sale to Plain State which closed on August 17, 2017, there would be no need to have this public sale. This would appear to be fraud upon the court to deceive an heir to the estate.

***Event 3*** **(Behind the scene and in court):**

Email chain within Chicago Title (Chicago Title Escrow Agent and/or Assistant Valerie Garcia and attorney Cheryl Saxon for Chicago Title) and the attorney for Personal Representative Roe Simmons

along with events corresponding/happening in Court with the assistance of Attorney Roe Simmons and Judge Richard Kirby for the Estate of Ceola Lenox PB-2016-721 https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=PB-2016-721&cmid=3416891)

On September 15, 2017, at 10:52 am - Roe Simmons sends Valerie Garcia an email, stating: **"Valerie, We are waiting on the Order Approving sale, which I believe is all your Title Attorney requires. Due to the fact the individuals involved in this transaction do not have a realtor, I suggest we do a dry closing and you hold the funds in escrow to be released to the Estate when the Order is presented to you.**
**I have done this in the past with other title companies, because buyers tend to become restless with the process involved in Probate. Please let me know if this is acceptable. Roe"**

On September 15, 2017, at 10:59 am - Ms. Garcia sends an email to Cheryl Saxon, stating: **"Please see below from the attorney and advise if we are able to "dry close."**

On September 15, 2017, at 11:38 am - Ms. Saxon replies to Ms. Garcia, stating: **"The prior attorney started sales proceeding in the case, but never got an order to sell and did not follow through with the remaining steps for the sale of the property. Mr. Simmons just took over the case. How is he planning on proceeding with the sales proceedings? Is he doing a Section 239 sale or is he planning on proceeding with the long form of sales proceedings? I'm not willing to do a dry closing at this stage without some indication of what process is being used. Is Wazzan willing to wait? They are not usually in a big hurry."**

On September 15, 2017, at 11:55 am - Ms. Garcia replies to Ms. Saxon, stating: **"I forwarded your questions on to the attorney and will let you know. The Wazzans are immediately selling to another buyer, this is a double escrow flip. Could we even do a dry closing in this case?"**
(*Note* - at this point, per the deed Plains State had already closed on August 17, 2017)

On September 15, 2017, at 12:10 pm -Ms. Saxon replies to Ms. Garcia, stating: **"If the sales proceeding were further along, maybe. At this point we need to run it by Ken once we find out how he is proceeding."**

*In Court* – On September 15, 2017 – Judge Kirby signs and files the Order Approving Petition to Sell which appears to be backed dated to May 17, 2017, because there was never an order signed by Judge Kirby filed before this date of September 15 and there was never one mailed to my mother prior to this date. It had to have been backdated because Roe Simmons did not have it per his emails above, Frances Gibson had not received a copy of it, nor was it filed in Court for anyone to view and there was no formal minutes provided that discussed the full approval with the all terms of the approval until Sept 15, 2017. The whole Court Docket for review
(*Note* this will prove that the heirs did not have proper notice to appear at any public sale/auction to see how many bidders appeared or to see if it even took place at this said auction because the date of the public sale noted on the document was September 5, 2017, which had already passed by 10 days of the date of this filing on September 15, 2017. This was not done properly according to Title 58 Code, and Chicago Title and Judge Kirby should have taken notice of this and questioned the suspiciousness of the filing because of the timing due to their email chain, and stopped the process immediately. Frances Gibson did not know about any of these were events taking place behind the scenes with the title company – She actually did not know anything about Chicago Title until after the closing took place and documents were filed in the Assessors website.)

On September 19, 2017, at 10:46 am - Ms. Garcia replies to Ms. Saxon, stating:
**"Here is the attorneys response: We have to follow the long form. We have one heir that has been somewhat troublesome in resolving this Estate, so I think it best to follow the long form. We already have a properly notice, and published order authorizing the sale. We just need to seek approval of the sale at this point. I do not anticipate any issues with that, but want to make sure your attorney is satisfied so the issue does not come back at a future date."**

On September 20, 2017, at 10:14 am - Ms. Saxon replies to Ms. Garcia, stating:
**"The order allowing the sale to be made at public sale was filed on September 15. The order states that a notice of sale is to be filed and published 2 times. As to today no notice of sale setting the time and place for the sale appear on the docket. The notice of sale has to be published 2 times prior to the date set for the sale.**
**Once the date for the sale has passed, a return of sale should be filed. The hearing for the confirmation of sale has to be published 1 time ten days prior to the date of the hearing.**
**If we were just waiting on the confirmation and the other steps were completed, I might contemplate letting you close. But the notice of sale has not been filed. The return of sale has not been filed. The steps to complete this are going to take at least 30 days."**

On September 20, 2017, at 10:23 am - Ms. Garcia replies to Ms. Saxon, stating:
**"From Roe: The hearing on the Order was in July. We published Notice of the Sale two times, and I will provide proof of that to your attorney. All that is left at this point is the "Return." Let me know how you want to proceed?**
**VG -Still a no go?"**

On September 20, 2017, at 10:47 am - Ms. Saxon replies to Ms. Garcia, stating:
**"I need to see what they have done. The documents have not been filed in the case or are not showing up on the docket. Very strange."**
(*Note* - even Ms. Saxon is thinking things don't look right so once again – with her being an Attorney for Chicago Title Oklahoma and knowing the process, she should have immediately stopped the entire transaction to save the integrity of the Estate.)

On September 20, 2017, at 10:50 am - Ms. Garcia replies to Ms. Saxon, stating:
**"Do you want me to request the documents from him?**

On September 20, 2017, at 10:51 am - Ms. Saxon replies to Ms. Garcia, stating:
**"In his email he says he is going to provide proof. I'll need to see everything that was filed."**

*In Court* - on September 20, 2017 – Roe Simmons filed an Application for Order Approving Sale of Real Property which also had a certificate of service to the heirs on Sept 20, 2017. This application *did not have the buyer's name*, and *it had an incorrect address*. The address on it states that it's 2520 NE 10th, but it's actually 2520 NE 16th St, Oklahoma City, OK 73117. Application for Oder Approving Sale of Real Property

*In Court* – on September 20, 2017 - Roe Simmons files a Certificate for Proof of Publication stating that he Roe Simmons:
"Certify that notice of sale of property has been given to all one of the defendants in the action, by publication service pursuant to Fed. R. Civ. P. 71.1(d)(3)(B) by publication of the notice once a week for two consecutive weeks beginning on August 19, 2017, in the Edmond Sun, a newspaper published in Oklahoma County, Oklahoma which is located the property of the decedent that is to be sold.
A printed copy of the published notice is attached with the name of the newspaper in which it was published and the dates of its publication marked on it.

Dated: September 20, 2017"

(*Note* Mr. Simmons also provides/files a Certificate of Service for this document stating that he has sent to all the heirs on September 20, 2017, so this shows that they had no prior knowledge of any public sale, auction, etc. Certificate for Proof of Publication

On the last page of this, I have marked a few things that do not appear to make sense according to the procedures of a publication. The Notice as published at the bottom left is August 21, 2017, per Edmond Sun, that date is usually a few days before the 1st Publication date which in this case was August 19, 2017. This is very odd, and I have recently spoken with someone at Edmond Sun which she also said was strange and she also thought it was very odd that the Attorney filed a Certificate for Proof of Publication because she had never seen it done that way because they always file it themselves as they have done for all the other proof of publications they filed in my grandmother's case per the docket. The manager for the Edmond Sun also stated to me that someone had blocked their filing so that it was not timely filed for the public to view. I feel that Roe Simmons did this so that my mother and father would not have someone appear at his office to see if the sale really took place.

All of these filings seem to be filed according to the way Ms. Saxon advises Roe Simmons needed to be filed so that they could move this file toward closing while deceiving my mother, the so called, "troublesome heir". The filing dates match the emails to a tee! I do not believe there was ever an public sale/auction (so all of the filed documents are fraudulent) because there was already a contract which heir Frances Gibson my mother had no knowledge of and the property had already been transferred to 3 different buyers (Hubbard, Wazzan and Plains State) and actually closed to Plains State on August 17, 2017, which was 2 day before the 1st Publication date of August 19, 2017 and over a month before the Sept 5, 2017, public sale/auction date schedule that was going to take place conveniently in the private location of Roe Simmons' office. Very Strange and did not happen!!!!

*In Court* – on September 21, 2017 - Judge Kirby filed a Signed Order for Hearing Return of Sale – Setting a date for October 18, 2017, at 9:00 am. On this order, it states that the notice must briefly indicate the real property sold, the name of the purchaser, the sum for which it was sold and refer to the Return for further particulars - all of which was not published or done according to the order.

Now looking at the Proof of Publication, I see that it also has the wrong address for Judge Kirby's courtroom. It has 321 Park Avenue, Oklahoma City, Oklahoma 73102. Judge Kirby's courtroom address is 320 Robert S. Kerr, #409 Oklahoma City, OK 73102 so anyone who wanted to attend could have gone to the wrong room.

**On September 22, 2017, at 12:57 pm** - Ms. Garcia replies to Ms. Saxon, stating:
**"Please see attached."**
(*Note* I would assume the attachment was the recent filings I discussed previously)

**On September 22, 2017, at 1:53 pm** - Ms. Saxon replies to Ms. Garcia, stating:
**"The publisher affidavit of the notice of sale was filed in the case. The actual notice of the sale has not been filed. The notice of sale should be filed in the case also. The application for order approving sale of real property does not say who the purchaser is. I'm assuming it was Wazzan. The hearing on the application is set for October 18. When are you supposed to close?**
(*Note* The Certificate for Proof of Publication must have appeared on the docket shortly after this email. Ms. Saxon also noticed that it did not have the buyer's name on it, but continued to move forward even though it did not comply with the order)

**On September 22, 2017, at 1:56 pm** - Ms. Garcia replies to Ms. Saxon, stating:
**"They want to close asap."**

On September 22, 2017, at 2:04 pm - Ms. Saxon replies to Ms. Garcia, stating:
**"The afternoon of October 18 would be the best day. Is that a problem?"**

On September 22, 2017, at 2:12 pm - Ms. Garcia replies to Ms. Saxon, stating:
**"I will let them know. That would be the earliest right?"**

On September 22, 2017, at 2:29 pm - Ms. Saxon replies to Ms. Garcia, stating:
**"That is when I'd prefer to close. After the Court has approved the sale."**

On September 22, 2017, at 2:37 pm - Ms. Garcia replies to Ms. Saxon, stating:
**"Ok thanks! I need to get the PR deed from that attorney, correct?**

On September 22, 2017, at 3:15 pm - Ms. Saxon replies to Ms. Garcia, stating:
**"Yes that is correct"**

On September 26, 2017, at 11:53 pm - Ms. Garcia responds to Ms. Saxon, saying:
**"Please see the PR deed and advise if it is approved."**

On September 26, 2017, at 12:43 pm - Ms. Saxon replies to Ms. Garcia, stating:
**"It should show the property as being in Oklahoma County. That can be added after the Oklahoma City in the address under the legal. Everything else is ok."**

*In Court* on October 18, 2017, the Court filed an Order Approving Sale of Real Property. It made no mention of the Buyer's name, Sales Price, there was no closing disclosures – settlement statement, etc.)

On October 18, 2017, at 11:52 am - Ms. Garcia replies to Ms. Saxon, stating:
**"Hi Cheryl, Please see the attached finalized order from the attorney. Please confirm we are good to close today @ 3 pm."**

On October 18, 2017, at 12:22 pm - Ms. Saxon replied to Ms. Garcia, stating:
**"You will need a certified copy of this order to attach to the personal representative's deed to record at closing. An order confirming sale has to be recorded by statue. In this case, since the legal is not given in the order attach it to the deed."**
(*Note* this closing took place after the closing took place from Wazzan Properties LLC to Plains State on August 17, 2017.

On October 18, 2017 - Closing Settlement Statement - this shows the $16,000.00 Wazzan purchased the property minus the fees for closing and the $6,000.00 to Devell Hubbard. Heir Frances Gibson did not know anything about this and my father and I were treated horribly by the attorney Roe Simmons and the title company because we questioned the things that were happening and could not get real honest answers. They were forcing us to have to defend ourselves because they were elevating disputes because of their lies and deceitful ways. My parents had to incur additional cost (court cost and travel expenses, etc) because they felt and knew in their heart and by the evidence, they can provide due to their own research on probate laws and real estate, they knew that things were not done right and there was fraud upon the Estate of Ceola Lenox. An innocent person especially an elderly person should not have to use their fixed income to fight FRAUD. This is abuse of the elderly in the judicial system.

***In Court*** - On **October 20, 2017, at 12:35:56 pm** - the deed was recorded for Wazzan Properties which closed on October 18, 2017, but was dated for September 21, 2017, notarized by Kaitlin Howard.

***In Court*** - On **October 20, 2017, at 2:21:21** pm - the deed was recorded for Plains State which closed on August 17, 2017 (they waited over two months to record this deed and heir Frances Gibson knew nothing about any of these events that were in coordination with Mr. Simmons and Chicago Title)

15) Roe Simmons and Dannie Lenox filed fraudulent documents that the house sold at a "public sale" at attorney Roe Simmons' office on September 5, 2017, when they both knew that was not true and very dishonest because the property had already been sold on August 17, 2017.

16) Roe Simmons and Dannie Lenox then used the mails to send the fraudulent documents to mother and father in Texas on September 21, 2017, notifying them for the first time of the bogus sale that he said took place on September 5, 2019, which also did not happen because the property had already sold in a private sale according to the deed which was also not done according to the Order that appeared on September 15, 2017, which was supposedly signed on May 17, 2017.

17) On March 11, 2019, Due to there being no moving progress and no activity in my grandmothers' Probate, my father Bennie Gibson accompanied my mother to Oklahoma to file her motion Frances A. Gibson Petitioner Motion for Court Order to Compel Final Accounting of the Estate of Ceola M. Lenox and her Appendix to Support her Motion Compel. This motion was set for hearing on April 09, 2019 at 9 am.

18) By doing this, my mother and father placed Judge Kirby on notice of fraud and embezzlement by presenting public county assessor documents showing the house was sold for $35,000,00 on August 17, 2017, and provided the private emails between Chicago Title and Roe Simmons showing they were fully aware and working together to conspire against and deceive my mother.

19) My father is not a person to put himself in harm's way or put my mother in a position to be harmed so he felt that it would not be safe for him to step back into that courthouse a second time because he thought someone would likely assault him or my mother. My parents and I believed it would be in the best interest and or safer for me to accompany my mother because of my own personal knowledge of the probate case.

20) On April 08, 2019, the day before the hearing my mother Frances A. Gibson filed her motion in opposition of Dannie G. Lenox's final account and petition for an order allowing final account. My mother also filed her motion for an order for the removal of Dannie G. Lenox from the administrator of the Estate of Ceola M. Lenox and his attorney Roe Simmons.

21) I accompanied my mother to the hearing on April 9, 2019, during this hearing my mother and I spoke with Judge Kirby to verbally tell him about the defrauding of the Estate and while we attempted to try

to discuss my mother's Motion to Compel. Judge Kirby did nothing after we made him aware the Estate was being defrauded by the Personal Representative Dannie Lenox and his attorney Roe Simmons. So instead of helping my mother and I for the best interest of the estate by conducting an investigating or just asking Roe Simmons if what we were saying was true, he started working with Roe Simmons and his court bailiff Katrina French to use deputies in his courtroom to intimidate my mother and I which I believe was there original plan. He did not allow me or my mother to fully testify about the embezzlement of the probate funds and real estate fraud. We tried to make it clear to him and we requested he review the documents filed in the Appendix to Support my mother's Motion to Compel filed on March 11, 2019, but he was bias and not impartial so he turned a blind eye. Any reasonable person would see that Judge Kirby was not a neutral party in this probate case. His actions of misconduct distort the fair due process of law and the integrity of the judicial system.

22) Roe Simmons did not like my mother and father showing the Court his fraudulent filings and dishonest acts so at some point of the Probate, he went to the Oklahoma City police department and attempted to have the Oklahoma Police Department file charges against my dad for intimidating him and threatening him which was not true considering the fraudulent acts of Roe Simmons in his authority as the attorney representing the Estate of my grandmother. My father was only exposing his unethical activities of misconduct. I was told by the police department that they refused to file charges against my dad for a misdemeanor. My father had already pointed out Roe Simmons committed a felony and that my grandmother death was suspicious.

23) To recap the hearing on April 09, 2019, my mother and I were seated at 9 am in Judge Richard Kirby's courtroom. The scheduled 9 am hearing did not take place until approximately 2 pm or at least once the courtroom was almost empty. There was one party whose attorney had not arrived, so they were left in the courtroom.

24) When it was our time to present our case in front of Judge Kirby, I believe this was when an unprecedented act of conspiracy started to take place in a government courtroom. As I discussed before, I noticed Judge Richard Kirby, Roe Simmons, and Katrina French all working together to conspire the next events. While sitting in the courtroom, I noticed while all the hearings before my mother and I, Roe Simmons was sitting by the door in the courtroom that enters into the office of Judge Kirby and his bailiff Ms. French, I also noticed Mr. Simmons and Katrina French having several private conversations where it looked as if they were planning something because they would both continue to look at my mother and I.

25) Once it was close to being our turn, I noticed Katrina French aggressively advising the one party who remained in the courtroom to cut off and put away his cell phone. This was not done at any other point during any of the other hearing before us. I then noticed a female sheriff walk into the

courtroom and speak with Judge Kirby directly. Once they finished, this same female sheriff went and stood in front of the judge's bench than my mother and I were called up to the bench along with Roe Simmons. Judge Richard Kirby asked my mother and I several times if my father was in or near the courthouse. My mother and I responded by saying, "no" because he was in Fort Worth, Texas.

26) While my mother and I were trying to speak with the Judge about the issues that had arisen out of the Probate, Judge Kirby would not listen, and he did not allow us to speak or go into our beliefs and facts of all the fraudulent acts. Every time I would talk this female sheriff would move her hands on her waist and move towards me which I felt threatened because of their actions they used her to intimidate my mother and I along with plotting out to harm my father if he were present.

27) Judge Kirby would not read/review our documents because he considered my mother's motion and her appendix to be moot because Roe Simmons filed a Final Account and Petition for Order Allowing Final Account, Determination of Heirs, Distribution of Discharge.

28) Due to Title 58 rules of Probate, it is in my opinion that Judge Kirby should have reviewed my mother's motion because it showed that the final account written by Roe Simmons law firm was fraudulent because the sale of the property was fraudulent, and the estate money in bank accounts were mishandled by opening separate accounts with my Uncle Dannie Lenox and Leon Lenox along with check and/or bank accounts being signed and cashed by my Uncle Leon Lenox who has the same name as my deceased grandfather. Instead of Judge Kirby fully listening to our argument he sets a Final Account hearing on May 16, 2019, for my mother and I to appear and I'm sure they were anticipating my father would appear for harm.

29) After this hearing on April 9th, was over my mother and I were in the hallway talking to each other when then Roe Simmons comes out of the courtroom after being left in the courtroom with the Judge, Ms. French and the female sheriff alone, I then asked Mr. Simmons if my mother and I could speak with him about the Probate case because he would not return any of my mother's calls. Roe Simmons began yelling at me in front of my mother, stating that he would not communicate with us. From what I remember, he started pointing his fingers in my face or had very aggressive movements/body gestures. He was aggressively stating that he would not speak with me in a tone that I told him I did not feel comfortable with as I am a woman and my mother was healing from an illness that was caused by the stress from this Probate. My mother and I did not deserve that type of tone. I also told him that my mother had the right to speak with him because my mother is an heir to the Estate he is representing. He then said that he would only talk with my mother in a private room in the law library where I was not present. My mother and I told him that we did not feel comfortable with that due to the way he was speaking to me and all of the dishonest and fraudulent actions that have taken place

during the entire Probate under his representation, but we eventually agreed because we needed to speak with him to get some sort of resolution/answers.

30) While he was yelling at me, the sheriff in the courtroom walked in the hallway and noticed, but instead of coming to my mother and I to see if we were ok, she went to Roe Simmons. While my mother and I were walking away, I noticed Roe Simmons and this sheriff privately speaking near the elevators.

31) When my mother and I arrived at the library, I notice Roe Simmons and this sheriff standing at the door. When we arrived, the sheriff told me that I needed to stay with her while Roe Simmons took my mother to a closed area where I could not see her or get to her if needed.

32) I felt that the Court was conspiring against us to put my mother in a room alone with Roe Simmons. I became afraid for my mother's safety and well-being by being in a place alone with this irate and dishonest man with me knowing all of his fraudulent dealings throughout this Probate. Roe Simmons and my mother went into a room that had a rope blocking the area of the door so she could not get out quickly and because I was being held by a sheriff, I was afraid I could not get to her. Plus, this sheriff was acting in the best interest of Mr. Simmons so her mind was already pre-determined to aid Mr. Simmons not my mother if she needed help or felt threatened.

33) While standing at the door, I spoke with this sheriff and tried to explain to her about the fraudulent acts and that she was protecting the interest of the wrong party. I let her know that my mother and I were no threat; we were exposing his wrongdoings. Since she could see my frustration and my fear for my mother's safety, she allowed me to check on my mother, but then escorted me back to the other side of the rope while Roe Simmons continued to have my mother in this closed room. Once my mother returned to me after this meeting, she informed me that Roe Simmons insisted on her telling him where my father was and asking her if he was outside the courtroom to see if he was sitting in the car. Roe Simmons informed my mother that he could take $40,000.00 of her mothers' Estate because of the legal fees he incurred due to the Federal Lawsuit my father filed in Texas.

34) My mother Frances A. Gibson had just been diagnosed with a severe cash of the shingles disease, this is a very painful and could even be a deadly disease, but she was recovering and on very strong medication to heal. This disease is mostly caused by stress, and I believe this Court put my mother's life at risk. After these events, my mother and I informed my father Bennie R. Gibson who was in Fort Worth, Texas of this threatful acts upon myself and mother Frances A. Gibson. This prompted the phone call from my father to Roe Theron Simmons' office or cell phone. Mr. Simmons did not answer so this is when my father had to leave Mr. Simmons a voicemail expressing his concerns of what Mr. Simmons had done and said to my mother. My father was concerned about how Mr. Simmons was conspiring with the Court to intimate/harass my mother and I which led to Mr.

Simmons putting my mother in a room blockade by a rope while a sheriff who has weapons was holding me away from my mother so that Mr. Simmons could threaten her by charging her $40,000.00 for legal fees along with all the other lies, he told her when he knew all of the things, he had done to defraud the Estate of her mother. Mr. Simmons is an evil man who needs to be permanently disbarred as a lawyer and he needs to put in jail for his felony acts so that he cannot hurt any more innocent families.

35) I have since learned that Roe Simmons met with a Judge Timothy Henderson and had exparte' communication in Judge Henderson's office. From a very reliable source within the court deputy's office, I was told that Judge Henderson "directed" Deputy Abernathy to write up a charge against my father for his messages to Roe Simmons while my father was in Fort Worth, Texas after we told him what Simmons had just done to us. I have a recording with Abernathy's supervisor stating that Judge Henderson "directed" his department to file the report and that was the only reason they got involved. My father's messages and/or emails were only in protection of my grandmother's estate and her daughter who is an heir to the estate which is also my mother and his wife for over 52 years who he met when he was in kindergarten in Oklahoma City. My father is an "interested party/person" according to Title 58 that was concerned that the estate was being defrauded and knew my mother and myself could prove it. He could tell that we were not being protected by court as we are "whistleblowers" willing to expose of the corruption that has a long history in Oklahoma. He did not feel that we were safe and that we were being wrongfully harass and threatened which we expressed to him we were very nervous and frighten by what we had just experienced! Those charges against my father needs to my removed because it was handled improperly and are false charges! Roe Simmons did not feel threatened against my father, he was only upset and used his political influences to coverup his fraudulent acts to silence my family.

36) I have also recently learned that this deputy and other regularly meet with judges about potential and pending cases.

37) Roe Simmons' goal on April 9, 2019, and May 16, 2019, was apparently to try to get my father arrested without him knowing he was under investigation, and Judge Kirby was facilitating Judge Henderson's and Roe Simmons orchestrated plan by allowing things to happen in his courtroom.

38) I also learned from the Sheriff that Judge Henderson, who is/was a criminal judge, masterminded the misdemeanor filing against my father. (I have a recording stating this)

39) After I learned this, I told the sheriff about the embezzlement and all the fraudulent acts done by Roe Simmons against the estate, my mother and I in the courthouse and during the probate and to this day they have done nothing.

40) I called Judge Henderson's office and discussed the embezzlement and asked his assistant what Judge Henderson's relationship to Roe Simmons was, and was denied the ability to speak with Judge Henderson, after explaining that I was concerned he had an exparte' meeting with Roe Simmons and directed the filing of a misdemeanor against my 74-year-old father in Texas while he was defending his wife who was ill. This is malicious prosecution due to us exposing corruption of the court and lawyers!

41) I have since learned that Roe Simmons did a fundraiser for Judge Henderson, and has been and still representing Judge Henderson's son Cameron Henderson (case no. FD-2018-2494 filed August 17, 2018) in his divorce since the time of the fundraiser Simmons held for Judge Henderson in 2018.

42) I have also learned that the deputy who was "directed" by Judge Henderson to put together misdemeanor charges against my dad used Judge Kirby's courtroom to finalize her report Judge Henderson "directed" her to also give to the DA to pursue charges. She did not at any point during her investigation attempt to contact my father to get his side or try to ask my mother and I any questions while we were in the courtroom when she was conducting her investigation.

43) During this hearing on May 16, 2019, my mother was asked in Judge Kirby's courtroom about a tape recording Roe Simmons had on his phone or tablet if it was her husband's voice, and she identified it, not knowing that Deputy Abernathy was in the back of the courtroom to capture her statement about her spouse (my dad) to finalize her report Judge Henderson had "directed" her to do at the request of Roe Simmons who has had large fundraisers for the judges political campaign an representing his adult son in his divorce by giving access of his courtroom and allowing Roe Simmons to ask the questions without objections or my mother knowing the purpose of the question during a probate hearing. My mother did not know and could not have known that she was testifying against spousal privilege in a probate courtroom, and that Judge Kirby was facilitating the sheriff's report. Before the hearing started, I questioned in the courtroom about all of the sheriffs coming in and out of the courtroom, but Judge Kirby and the sheriffs told me that they do this for our safety which would later appear to be a complete lie because they were in there to get testimony about my father and if he were to appear they would have had arrested without him knowing he had been investigated nor would he have known all of the people involved. **GOD IS GOOD! Our Lord and Savior was protecting our actions by having my father stay in Fort Worth, Texas so that he could reveal the courts' corruption so that he could use our testimony/evidence/story to protect the citizens of Oklahoma.**

44) During this hearing on May 16, 2019, Judge Kirby would *not* allow any testimony about how Roe Simmons and Dannie Lenox had defrauded the Estate. He would not let me speak while under oath about my factual knowledge of how the property was sold, the actual values the property was sold for

and about the fraudulent filings in the Court. He also would *not* take notice of my mother's Motion to Compel with the Appendix that provided evidence of what my mother and I were stating to prove the intentional mishandling of the Estate under the hands of Roe Simmons and his client Personal Representative Dannie Lenox. It would appear to any outsider looking into this Probate that Judge Kirby was only protecting the interest of Roe Simmons and his possible self-dealings.

45) During this hearing, Roe Simmons asked Judge Kirby to grant him my mother portion of her Estate due to legal fees he "*only*" said he incurred due to the Texas Federal Lawsuit. Judge Kirby granted Mr. Simmons request to take $16,000.00 from my mother's portion of $16,519.71. Judge Kirby would not look at emails, filing, or recorded deeds showing reasons for my mother's objections, but he granted Roe Simmons request to take my mother's inheritance without Mr. Simmons showing any written proof by showing an affidavit of legal fees he incurred – "nothing to prove-up". I have since spoken with this attorney Bruce Packard that Mr. Simmons states he incurred legal fees from this attorney and he indicated to me that he does not have any knowledge of being on that case. So, this would mean that Roe Simmons was writing documents for this attorney in Texas and then just having him sign them on his behalf since Mr. Simmons is in Oklahoma and my not be licensed in the state of Texas to practice law. If you had incurred or charged someone $40,000.00 in legal fees, I'm pretty sure you would know about being an attorney on the case. I have a recording of that call with this attorney Bruce Packard to support my conversation with this attorney.

46) At the beginning of the hearing, Roe Simmons requested that I not be in the courtroom while the hearing was taking place. This was after I give the court a power of attorney because my mother was ill and I needed to aid her if she needed help along with me knowing she could not hear things clearly because she was having a hard time hearing so I need to stay in the room. Judge Kirby told me that if she could not hear to just let him know so that he could repeat it. If someone cannot hear they don't know if something needs to be repeated. They still put me out and then would not allow me to look in the window to see if my mother ever needed help. I told the sheriff that escorted me out of the courtroom to the hallway that this was not fair and it violated my mother's rights and protections. Roe Simmons had another lawyer along with his assistant and my Uncle to help him to pass him documents and give him advise and my mother had no one. We know now that he also had the protection of the court which violated my mother's right to be in front of a neutral and unbiased Judge. They eventually allowed me back into the courtroom because they had to have figured out that was wrong and not fair along with it would just look bad knowing all the things they are doing to collude and conspire against my mother.

47) At the end of the hearing, Judge Kirby tells Roe Simmons to draft an order, but it was never done because he knew my mother would appeal.

48) After this hearing and when Mr. Simmons knew that when an order is written and signed by the judge, my mother had the right to appeal and was going use her right to appeal Judge Kirby's decision. So, what Mr. Simmons did was had my uncle Dannie Lenox withdraw all the money from the Estate accounts to disburse the funds and have checks drafted – one of which was drafted for him due to him taking my mother's inheritance. It appears this was done on May 21, 2019, due to a cashier check sent to my mother by mail for $519.71. There was no order from the Court authorizing this disbursement and this still isn't *valid* order.

49) Shortly after this mailing of the check, my father receives a call or letter from a third party stating he has a warrant for his arrest. I call the court to get a copy of the probable cause to find out what the warrant was about. I speak with the sheriff multiple times and expressed to her that she did not ever contact my father or ask my mother any questions when she was in the courtroom to get information about my father while she was collecting evidence when my mother testified for her probable cause affidavit. She was also looking for my father so that they could arrest him but the warrant was not ready nor was my father present per what she told me in our conversation. She told me other things that lead me to believe she was colluding with Roe Simmons and Judge Kirby. I later contacted her supervisor to notify him of what she has done. He tells me that the only reason that they got involved was because Roe Simmons went to Judge Henderson (who had nothing to do with the probate) so Judge Henderson "directed" them to file the report that later led to the warrant against my 74-year-old father who was only defending his wife due to corruption, embezzlement, fraud upon the court and intentional misconduct of Roe Simmons while he was in Texas and at no time a threat to Roe Simmons. Roe Simmons was filing charges against my father to silence my mother so that he could get away with his crimes.

50) No one has taken any action to punish the representative of the Estate (Dannie Lenox), or attorney Roe Simmons, for lying to the Court, embezzling funds, filing false documents, sending those documents across state lines, not properly notifying us of the fraudulent sale of the house, and no one has done anything to hold accountable the two elected judges (Kirby and Henderson) who allowed all of these things to occur.

51) Judge Kirby and Judge Henderson used political influences, court resources, their relationship with the sheriff's office at the courthouse, and their relationship with the DA to manufacture a misdemeanor charge against Bennie Gibson (malicious prosecution), my dad, who only communicated with Roe Simmons to let him know that he was being watched by investigators that were in the process of starting investigation due to complaints we were filing and had filed. I pray that someone request a Special Master to investigate those two judges and alert the appropriate law enforcement of the obvious criminal acts committed by Simmons and Dannie Lenox, which are far

worse than any falsely alleged threats from my 74-year-old dad to attorney Simmons after he was concerned for my mother and I. Also, any email my father could have sent expressing his concern that Mr. Simmons had embezzled funds by stealing from the estate (self-dealing) was not a threat to Roe Simmons safety, but was a huge threat to my mother and her inheritance. Mr. Simmons should be put in jail for his own actions because he knew or had to have known what he was doing to defraud the estate of my grandmother and her daughter who is my mother was illegal, but I feel he did not think he would get caught.

52) I am concerned that a criminal judge (Henderson), who is supposed to be a neutral final decision maker in a criminal case, actually was the person who orchestrated the start of a misdemeanor charge against my father from his office, to help an attorney (Simmons) who had done a fundraiser for him and who represents his son. Judge Henderson had nothing to do with this Probate case and should not have gotten involved as I have been told by another Judge who stated he could not do anything because he was not involved in the case.

53) I have also learned that Judge Henderson has a previous history of ex parte activities similar to this and that he is a former law enforcement officer with contacts in the department that initiated the warrant against my father. To this day my father has not been notified of this warrant, but luckily, he was notified by a 3rd party so if this 3rd party had not informed him, he would not have ever known and could have been arrested without notice and then not have had any medication he would need being that he does not live in Oklahoma. This could have been very harmful to his well-being, along with it being very stressful and deadly. I do not believe Judge Henderson and Judge Kirby acted appropriately in their duties as elected Judges, and they should be investigated in the public interest.

54) *In Court* - On June 12, 2019 - My mother files a letter notifying the court of non-compliance with Title 58 Oklahoma Probate Procedure and Local Rules of the Court along with the Appendix full of evidence to support her letter. **At this point my mother feels that she does not have access to the court because of all the bullying, malicious prosecution, being blockaded in rooms alone and the intimidation by the use of the sheriffs in the court. She has been unfairly denied full access of the court which is a violation of my mother and my grandmother's due process! This entire probate has made my mother very, very sick!!! She should not have to use her fixed income to hire an attorney to fight corruption -** ***no*** **elderly person should be abused in this way!!!!! My father who is a Vietnam veteran who fought for this country should not have been maliciously prosecuted because he can provide "credible information" according to Oklahoma Title 58 Statue. My father was only standing up for my mother by defending and protecting his wife well-being and her inheritance by willing to expose the alleged fraud, embezzlement, and**

**perjury acts that are all felony crimes, but Judge Kirby was not listening to my mother or me. My father fought for this country so his right should not have been violated!**

55) ***In Court*** - On September 12, 2019 - 4 month later and after any signed order is appealable, Roe Simmons files an order that was supposedly written signed on May 1, 2019, for a hearing that did not take place. Judge Kirby signs this order with no date showing when it was signed. If there was a hearing on May 1, 2019, then there was no need for the hearing on May 16, 2019, because Judge Kirby had already made a ruling. In this order, Roe Simmons admits to disbursing the funds because there was never any order. If this order was just signed then Judge Kirby signed this order having been notified by my mother in her letter to the court dated June 12, 2019.

56) ***In Court*** – On September 27, 2019 – my mother files Frances A. Gibson Petitioner Motion to Set Aside Order Allowing Final Account, Determining Heirs and Decree of Distribution and Order Denying Francis Gibson's Objection and Motion to Remove Personal Representative. My mother files this because the order filed is 4 months after the hearing that was held on May 16, 2019. This order states an incorrect date of May 1, 2019, because there was no hearing held on that day. The actual date was May 16, 2019 as I stated before. Roe Simmons admits that the funds have been disbursed and he did this by delaying this order knowing that my mother was going to appeal it. At this point all the money is gone and stolen by Roe Simmons and Dannie Lenox with the help of District Judge Richard Kirby. I feel that this order was written in a rush before Judge Kirby was removed from this court and intentionally before Judge Coleman was assigned to this court. This order is also suspiciously written and filed 4 months after the said hearing while I am in the process of speaking with employees and investigators working for Attorney General Mike Hunter and other investigators while I am notifying them by providing them with evidence to prove my allegation of fraud, real estate fraud, embezzlement, perjury, and malicious prosecution by using government offices and political influences.

*** Due to the number of pages - All of the Exhibits to support this Affidavit are in the Appendix One and Two to Support the Affidavit of Tonya Parks:

**Exhibits: Events that Mr. Rollin Nash Did Not Mention in his Special Master Report:**

**Exhibit 1)** Email Chain between Rollin Nash and Tonya Parks on April 5, 2022. Mr. Nash sent me an email with an attached bill/statement to notify my mother that the taxes would need to be paid to avoid the county selling my grandmother's property. This is Mr. Nash attempting to collect real estate taxes from my mother that are not subject to any upcoming sale, but he is attempting to deceive my mother and had not gone the proper steps to confirm with the county if the property was scheduled to be sold. I

responded by letting him know that my father and I had contacted the county and that the county did not have my grandmother's property listed for sale on June 13, 2022. I also informed him that the county advised us not to pay the taxes on behalf of another person because the property is still listed as being owned by Plains State in their records. If we paid the taxes, we would have to sign a form agreeing to pay taxes owed by another party and that if the property did not go back to the estate, we would lose that money. This was Mr. Nash's 2nd attempt to collect money from my elderly mothers when he knew or should have known the property not up for sale because my father already notified Mr. Nash on March 24, 2022, letting him know that he had contacted the county and they could not do anything with this property due to the property being sealed. Since we told him that the property was not subject to any upcoming sale and he continued to try to collect property taxes with going through the proper channels like my father and I had done. I prayed that he did not charge the estate for his efforts in sending my mother the statement he printed from the county website because he had not verified it and wasted his time and used to extort money from my mother. I then told him that will be contacting the proper authorities about his attempts to collect money from an elderly person under false pretenses. After I sent him my response, he replied by congratulating my father and I for making arrangements directly with the county to avoid the sale. At this point he had still not contacted the county.

**Exhibit 1A)** Rollin Nash's reply on April 6, 2022 at 11:43.01 am to my email response as stated above. According to his First Amendment to the Special Master Report, he called the County Treasurer and was informed that the property had been removed from the June 13, 2022, sale due to it being sealed. Mr. Nash decided to verify if the property was truly scheduled for sale only after I sent him an email at 8:49 pm on April 5, 2022, informing him of my and my father's discovery. For the record, Mr. Nash has not reached out to us regarding his recent meeting with the treasure. We are aware of his calls solely as a result of his filing in the case. He should have immediately notified us, but fortunately, we regularly check the OSCN website for updates. He did not mention that we were the ones to notified him which caused him to call.

**Exhibit 1B)** Rollin Nash's First Amendment to Special Master's Report Filed April 6, 2022.

**Exhibit 2)** Bennie Gibson sent an email to Rollin Nash on March 24, 2022, following the ZOOM meeting my mother and I had with Rollin Nash, Victor Martin, and Roe Simmons, during which they attempted to convince my mother that my grandmother's property had been demolished, which was false. Then they attempted to collect property taxes by claiming the county was going to sell the property. We interpreted this as Mr. Nash and Roe Simmons attempting to defraud my mother of money. They wanted my mother to pay property taxes on a property for which the county still listed Plains State as the owner. One thing my mother, father, and I do is verify everything, and so on March 24, 2022, my father contacted the county, who informed him that this property was not for sale and that the county could not do anything

with it due to the case's sealing. After contacting the county and obtaining information regarding the property's status, my father immediately notified Mr. Nash via email. I understand that my father's email can be strong, but you must understand that everything my mother, father, and I have stated regarding this probate has been true, but no one wants to listen to us, which is harassment because they are trying to provoke us so that they can create a false narrative about us because of our continued fight for justice to protect my grandmother's estate from people who have become predators in her estate and have stollen her and my grandfather's property. It's intimidating, and we're being bullied because we're reporting this to the proper authorities and they're harming us and my grandmother's estate. Victor Martin even stated on a recorded line that no one should be treated the way we have been.

**Exhibit 3)** Petition to Sell Real Property by **Public Sale** filed April 24, 2017. This is the petition filed by attorney Roe Simmons stating that the property located 2520 NE 16th St, Oklahoma City, Ok 73117 had been appraised at $56,500 and the 10 lots owned by my grandmother was appraised at $10,382. This petition did not make any mention of the personal property.

**Exhibit 4)** My filing May 10, 2017, to order a transcript of the hearing that was going to be held on May 17, 2017, of the Petition to Sell Real Property by Public Sale. Due to us living in Texas, we wanted a transcript of the hearing. I contacted the county and they told me how to order a transcript for an upcoming hearing when I was not going to per present. I followed their process given to me by the court who did notify Judge Kirby office but Judge Kirby did not have a court reporter present during the hearing.

**Exhibit 5)** Court Minute filed May 18, 2017 – This is Judge Kirby's Minute due to me contacting the court to obtain the transcript. I had previously paid and requested a transcript for the hearing on May 17, 2017, and I provided notice according to the court clerk and they notified the court. Roe Simmons also stated in a letter to the Oklahoma Bar Association on December 1, 2017, that "When I arrived at the hearing, I learned a court reporter had been paid for by someone other than myself, so I proceed into the courtroom. No one else appeared and Judge Kirby signed the order Approving the Petition to Sell." Per Roe Simmons response to the grievance my father filed in 2017, Roe Simmons was fully aware that a court reporter was ordered because he was notified by the court that a transcript had been ordered and he also knew that I was the daughter of one of the heirs to the property and he was the attorney representing the estate so he should have made sure the court reporter was present before he and Judge Kirby started the hearing. Judge Kirby's office knew that a court reporter was ordered so a court reporter should have transcribed the hearing so that my mother could have a record to review due to her living out of state.

**Exhibit 6)** August 9, 2017, Order granting the withdrawal of attorney Jarred J. Elwell. He stopped working at the Smith Simmons PLLC firm.

**Exhibit 7)** September 15, 2017, filing of the Order Approving Petition to Sell. This was the hearing that was held on May 17, 2017, that I ordered the transcript, but they did not have one present. This Order was not filed until September 15, 2017, which is 4 months later. This order also has the order to sale personal property that was not on the Petition to Sale Real Property by Public Sale. Roe Simmons only adds this to the order after my mother and father notified Roe Simmons of the Facebook post of Dannie Lenox's girlfriend Delouie Pollard selling my grandmother's personal property on Facebook so Roe Simmons drafted this order and had Judge Kirby sign it 4 months late.

**Exhibit 8)** September 20, 2017, filing of the Application for Order Approving Sale of Real Property. Per this application attorney Roe Simmons states that he had a public sale at his office and that the property sold to the highest bidder for $10,000.00. This is not true and testimony from Terek Wazzan and in his affidavit to the court, it confirms that Terek Wazzan did not purchase this property at any public sale. Mr. Wazzan also states that he had purchased the property in July 2017 and then sold it to another buyer Plains State in August 2017, which was all done before the date of September 5, 2017. He also stated in his affidavit that the personal representative and his attorney knew or should have known. This application also did not name the buyer and Wazzan purchased the property for $16,000 and sold it to another buyer for $35,000 in August 2017 which was before the supposed sale at Roe Simmons office on Sept. 5, 2017.

**Exhibit 9)** September 20, 2017, filing by Roe Simmons title Certificate for Proof of Publication. This is Roe Simmons filing notifying of the September 5, 2017, public sale at his office. This was not filed or sent to my mother until after September 20, 2017, so my mother had no knowledge of any public sale at Roe Simmons office. This was a delayed filing and the email chain from the title company will show that they were trying to fix the record so that it would appear to have been handle properly when they knew the property had already changed ownership, but they were holding the filing.

**Exhibit 10)** September 21, 2021, filing - Order for Hearing Return of Sale.

**Exhibit 11)** September 26, 2017, filing - Notice of Hearing

**Exhibit 12)** September 26, 2017, filing - Affidavit of Mailing – This is Roe Simmons stating that he mailed document to my mother. These documents that he mailed to my mother have now been proven to have false information in them because Roe Simmons never had a public sale at his office because the property had already contracted and sold to multiple buyers – Duvell Hubbard for $6000, Terek Wazzan for $16,000 and Plains State for $35,000. All of these transactions were handled at Chicago Title with Roe Simmons being involved throughout the entire process. I have spoken with Plains State and they told me that they sold the property for $115,000, which was also noted on their website. Rollin Nash is not mentioning any of this in his Special Master Report.

**Exhibit 13)** October 6, 2017, filing of the Proof of Publication – This filing did not have the name of the purchaser or the sum of what the property was sold for.

**Exhibit 14)** October 17, 2017, filing of the Proof of Publication – This appears to be the same document.

**Exhibit 15)** October 18, 2017, filing of the Order Approving Sale of Real Property – This order states that Special Administrator's Sale of the real property is approved. There was no Special Administrator at the time of the sale. It also states that the Special Administrator is authorized to distribute the proceed from the sale of the property located at 2520 Nw 16th street to the heirs according to the Court's Final Order for Distribution. Note the order for distribution was filed on September 12, 2019. Roe Simmons had already disbursed the estate in May of 2019, before any said order. This order also did not have the name of the buyer nor did it have the sum of which the property sold for. Per the application for approval of sale real property, Roe Simmons stated he sold the property at his office on September 5, 2017, which was not true.

**Exhibit 16)** October 20, 2017, filing of Jarred Elwell wanting his name off of the probate. The docket never replaced his name with Roe Simmons. We believe this may be intentional because Roe Simmons does not want his name associated with the probate. He is one that has created the negativity surrounding this estate due to his misconduct and what we believe fraud upon the court due to his own filing and information my father was able to obtain in the federal lawsuit.

Rollin Nash tries to convince this court that the Federal Lawsuit was won by Roe Simmons, which is not true because the was dismissed without prejudice due to jurisdiction not only merits. This is a false narrative that has nothing to do with a Special Master's Report or his duties.

**Exhibit 17)** May 16, 2019, filing by Judge Richard Kirby's Court Minute. This is not a minute order nor did it give Roe Simmons permission to disburse the estate funds to the heirs or to himself due to Judge Kirby granting him legal fees assessed against the inheritance of Frances Gibson. This was just a minute not an order. The order was not filed until September 12, 2019, after the estate had already been disbursed by Roe Simmons.

**Exhibit 18)** September 12, 2019, filing of Judge Kirby's Order Allowing Final Account, Determining Heirs and Final Decree of Distribution and Order Denying Francis Gibson's Objection and Motion to Remove Personal Representative. This was filed 4 months late and the estate had already been disbursed by attorney Roe Simmons and Personal Representative Dannie Lenox.

Roe Simmons and Dannie Lenox also did not show any receipts according to probate laws throughout the probate process. During the early stages of the probate, my father was told by the court that Dannie Lenox would be called in 60 days to show receipts and get approval of the account balances and money being used throughout the probate process, but this was never done.

**Exhibit 19)** November 3, 2021, filing of the Order Appointing Rollin Nash, Jr. as Special Master – The Special Master's Report does not reflect his duties per the order. He appears to be an advocate for Roe Simmons and Judge Richard Kirby and other officers of the court. This reports also mentions tweets and other agencies did not pertain to the estate or his duties as a special master. This is why my mother and I objected to Rollin Nash's appointment for this very reason.

**Exhibit 20)** June 18, 2020, filing of Terek Wazzan's Affidavit with attachments stating that he did not purchase the property at public sale and also providing attachment of deeds, contracts, survey, Chicago Title documents, email chain between attorney Roe Simmons, Chicago Title, and myself.

**Exhibit 21)** Vacated order signed July 31, 2021.

**Conclusion**

There have been numerous alleged crimes of perjury/fraud/embezzlement in this court committed by attorney Roe Simmons and Dannie Lenox - one of which - was the property did not sell at a public sale to the highest bidder on September 5, 2017, which was conveniently held at the office of the Personal Representative's attorney, Smith Simmons, PLLC as Mr. Simmons stated in his Application for Order Approving Sale of Real Property filed on September 20, 2017, due to the property was already under contract/sold on July 20, 2017, in a self-dealt *Private Sale* to Devell Hubbard (Mr. Hubbard told me over the phone that he split the funds with Dannie Lenox) who then contracted/sold in a *Private Sale* to Wazzan Properties/Real Estate Agent Terek Wazzan on July 27, 2017, who then contracted/sold in a *Private Sale* to Plain State Holding who then closed on the property August 17, 2017, per the recorded deed and information obtained in the subpoena during the Federal Lawsuit that was *only* dismissed based on jurisdiction *not* merits we were able to see the 3rd contract with a sales price of $35,000.00 and sold per the deeds for $35,000.00 which was all done before the said public sale on September 5, 2017, stated by Roe Simmons.

**PRAYER**

I pray this court considers by pro se affidavit to notify this court of what is happening in the case under the care of Rollin Nash as the Special Master of the Estate. I am not representing my mother Frances Gibson who is an heir, but I was mentioned in Rollin Nash's Special Master Report because of my position as my mother's daughter who loves and cares for her well-being and has a power of attorney for my mother when it comes to her interest in the estate and complaints filed with agencies. I also have to translate things for my mother who cannot hear very well and is not computer savy to use ZOOM so I had her on facetime so that she could participate in the ZOOM meeting on March 22, 2022. I am also the person who had been actively involved in this estate because of her health and the stress this has caused her and my father.

As you can see in my affidavit, I am not trying to slander anyone, but to *only* provide facts and support it with evidence unlike Mr. Nash who is discussing things in his report that are hearsay and *not* necessary for the purpose of his duties to the estate. Rollin Nash also under false pretenses attempted to convince my mother that he would look into filing a claim with Chicago Title who has "deep pockets" this conversation was recorded, but at the ZOOM meeting he did not recall our conversation and completely change the course of what we perceived the meeting was going to be about. Mr. Nash is not being fully transparent to this court.

It also appears that Roe Simmons (due to a written statement by him) and Judge Richard Kirby has had ex parte communication regarding mine and my mother's motion to unseal the case which does not seem to be proper according to ex parte laws of Oklahoma. My mother nor I have been notified by Judge Kirby or given the opportunity to responded, but Roe Simmons appears to be told by Judge Richard Kirby that he was not going to be unsealing the case, but there has been no order signed by Judge Kirby filed in this court to this day. Our motion was disputed by Roe Simmons so he should not be speaking with Judge Kirby without mine or my mother's present.

I have also been recently informed by my uncle Dannie Lenox that he had no knowledge that this case was still pending. His last knowledge of this probate was when he testified before the vacated order signed July 31, 2020. He also did not know that the orders of the estate had been vacated. So with this said, attorney Roe Simmons had been appearing in the case stating that he was representing a client who had no knowledge that the case was still pending. This case has been sealed at the request of Roe Simmons on May 11, 2021, Roe Simmons agreed to the legal fees being paid to attorney Sara Bondurant and wanted her to stay as the Special Administrator on May 11, 2021, Roe Simmons objected at a hearing held on December 3, 2021, to mine and my mother's objection to Rollin Nash and his firm's appointment, and Roe Simmons also at a hearing held February 1, 2022, made objections to mine and my mother's motion to unseal the case. We believe

due to a recent recorded conversation with my uncle Dannie Lenox on Sunday February 6, 2022, Mr. Simmons had no standing in the case because my uncle did not know this case was still pending and I had to send him documents showing the vacated order. He also told me that he would be reaching out to Roe Simmons to find out what was going on because he did not know anything that happened in the estate after the hearing that was held before the vacated order. Again, he did not even know about the vacated order.

I made Mr. Nash aware of this, but he did not mention it in his report.

I have also been notified that a judge only has 60 days of the date on which the matter was taken under advisement to make a ruling and according to Okla. Stat. tit. 12 27, Judge Kirby is not following the rule of law if I understand it correctly. The hearing was held on Feb. 1 2022 and he stated that he was going to be taking it under advisement. It is now April 13, 2022, and there has been no ruling on mine and my mother motion. This is now 72 days.

Judge Kirkpatrick also said that she was going to take the selecting of a Special Administrator under advisement on May 11, 2021, but she did not select a Special Administrator and only selected Rollin Nash who was employed as the Special Master on November 3, 2021. This was 176 days. She also withheld the transcript to that hearing from my mother and I. My mother only gained access to the transcript on December 3, 2021, due to a court minute signed by attorney Roe Simmons, attorney Bryan Dixon and Judge Dishman. Before their signing, my mother was not able to obtain the transcript. At the time of the signing of the minute my uncle did not know Roe Simmons was appearing in court stating that he was representing him. My mother and I also requested attorney Mark Myles to obtain a copy of the transcript, but he refused to get the transcript or abide to my mother's request for personal reasons.

I pray this court find my affidavit acceptable to take proper action in this estate. These appointments appear to be unlawful and at a conflict of interest. As a member of the public, it is my duty to notify when I believe someone is taking advantage of an elderly person who just so happens to be my mother. I am supporting all of my findings with evidence and they are to best of my beliefs and understanding.

Excuse any typos in this document, but I wanted to get this out as soon as possible.

Tonya Parks Owner of JUSTICE TOO - 214-980-8816

Tonya Parks

SUBSCRIBED AND SWORN to before me this _12_ day of April of year 2022.

Notary Public

My commission Expires: 09/09/2025

My commission Number: 133322796

JACOB FOOTER
Notary Public, State of Texas
Comm. Expires 09-09-2025
Notary ID 133322796

**Certificate of Mailing**

I hereby certify that on the 13 day of April, 2022, a true and correct copy of the above and foregoing instrument was mailed by first class mail, with postage paid by me to:

Roe T. Simmons
Simmons and Associate PLLC
1900 N. W. Expressway, Suite 1050
Oklahoma City, Ok 73118

Frances Gibson
7200 Old Mill run
Fort Worth, Tx 76133

Johnny Fryer
517 Athena Dr
Columbia, SC 29223

Leon Lenox
3213 N. E. 12th St
Oklahoma City, Ok 73117

Dannie Lenox
3806 N. Shadybrook Dr
Midwest City, Ok 73110

I obtained these addressed from the special master's report

________________________

Tonya Parks



FILED IN DISTRICT COURT
OKLAHOMA COUNTY
APR 1 3 2022
RICK WARREN
COURT CLERK
108

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF THE ESTATE )
OF CEOLA M. LENOX, Deceased ) PB-2016-721

**APPENDIX – EXHIBITS 1-19 - IN SUPPORT to AFFIDAVIT of TONYA PARKS the DAUGHTER of "HEIR/INTEREST PARTY" FRANCES A. GIBSON and has POWER of ATTORNEY to Speak on the behalf of FRANCES A. GIBSON due to her health caused by this Probate Case and has been to most of the events handled in this estate and now WANTS TO ***ALERT*** THE COURT BY HER AFFIDAVIT TO SHOW THAT THE SPECIAL MASTER'S REPORT dated APRIL 5, 2022, does not reflect a TRUE HISTORY OF THE ESTATE which we believe is ATTENED TO MISLEAD THE COURT IN PROTECTION OF OFFICERS OF THE COURT and MAY ALSO BE USED AS AN ATTEMPT TO EXTORT and EXPLOIT AN ELDERLY PERSON who is an HIER to the ESTATE**

**Please find the attached Exhibits**

**Exhibits 1-18 : Events that Mr. Rollin Nash Did Not Mention in his Special Master Report:**

**Exhibit 1)** Email Chain between Rollin Nash and Tonya Parks on April 5, 2022. Mr. Nash sent me an email with an attached bill/statement to notify my mother that the taxes would need to be paid to avoid the county selling my grandmother's property. This is Mr. Nash attempting to collect real estate taxes from my mother that are not subject to any upcoming sale, but he is attempting to deceive my mother and had not gone the proper steps to confirm with the county if the property was scheduled to be sold. I responded by letting him know that my father and I had contacted the county and that the county did not have my grandmother's property listed for sale on June 13, 2022. I also informed him that the county advised us not to pay the taxes on behalf of another person because the property is still listed as being owned by Plains State in their records. If we paid the taxes, we would have to sign a form agreeing to pay taxes owed by another party and that if the property did not go back to the estate, we would lose that money. This was Mr. Nash's 2nd attempt to collect money from my elderly mothers when he knew or should have known the property not up for sale because my father already notified Mr. Nash on March 24, 2022, letting him know that he had contacted the county and they could not do anything with this property due to the property being sealed. Since we told him that the property was not subject to any upcoming sale and he continued to try to collect property taxes with going through the proper channels

like my father and I had done. I prayed that he did not charge the estate for his efforts in sending my mother the statement he printed from the county website because he had not verified it and wasted his time and used to extort money from my mother. I then told him that will be contacting the proper authorities about his attempts to collect money from an elderly person under false pretenses. After I sent him my response, he replied by congratulating my father and I for making arrangements directly with the county to avoid the sale. At this point he had still not contacted the county.

**Exhibit 1A)** Rollin Nash's reply on April 6, 2022 at 11:43.01 am to my email response as stated above. According to his First Amendment to the Special Master Report, he called the County Treasurer and was informed that the property had been removed from the June 13, 2022, sale due to it being sealed. Mr. Nash decided to verify if the property was truly scheduled for sale only after I sent him an email at 8:49 pm on April 5, 2022, informing him of my and my father's discovery. For the record, Mr. Nash has not reached out to us regarding his recent meeting with the treasure. We are aware of his calls solely as a result of his filing in the case. He should have immediately notified us, but fortunately, we regularly check the OSCN website for updates. He did not mention that we were the ones to notified him which caused him to call.

**Exhibit 1B)** Rollin Nash's First Amendment to Special Master's Report Filed April 6, 2022.

**Exhibit 2)** Bennie Gibson sent an email to Rollin Nash on March 24, 2022, following the ZOOM meeting my mother and I had with Rollin Nash, Victor Martin, and Roe Simmons, during which they attempted to convince my mother that my grandmother's property had been demolished, which was false. Then they attempted to collect property taxes by claiming the county was going to sell the property. We interpreted this as Mr. Nash and Roe Simmons attempting to defraud my mother of money. They wanted my mother to pay property taxes on a property for which the county still listed Plains State as the owner. One thing my mother, father, and I do is verify everything, and so on March 24, 2022, my father contacted the county, who informed him that this property was not for sale and that the county could not do anything with it due to the case's sealing. After contacting the county and obtaining information regarding the property's status, my father immediately notified Mr. Nash via email. I understand that my father's email can be strong, but you must understand that everything my mother, father, and I have stated regarding this probate has been true, but no one wants to listen to us, which is harassment because they are trying to provoke us so that they can create a false narrative about us because of our continued fight for justice to protect my grandmother's estate from people who have become predators in her estate and have stollen her and my grandfather's property. It's intimidating, and we're being bullied because we're reporting this

to the proper authorities and they're harming us and my grandmother's estate. Victor Martin even stated on a recorded line that no one should be treated the way we have been.

**Exhibit 3)** Petition to Sell Real Property by Public Sale filed April 24, 2017. This is the petition filed by attorney Roe Simmons stating that the property located 2520 NE 16th St, Oklahoma City, Ok 73117 had been appraised at $56.500 and the 10 lots owned by my grandmother was appraised at $10,382. This petition did not make any mention of the personal property.

**Exhibit 4)** My filing May 10, 2017, to order a transcript of the hearing that was going to be held on May 17, 2017, of the Petition to Sell Real Property by Public Sale. Due to us living in Texas, we wanted a transcript of the hearing. I contacted the county and they told me how to order a transcript for an upcoming hearing when I was not going to per present. I followed their process given to me by the court who did notify Judge Kirby office but Judge Kirby did not have a court reporter present during the hearing.

**Exhibit 5)** Court Minute filed May 18, 2017 – This is Judge Kirby's Minute due to me contacting the court to obtain the transcript. I had previously paid and requested a transcript for the hearing on May 17, 2017, and I provided notice according to the court clerk and they notified the court. Roe Simmons also stated in a letter to the Oklahoma Bar Association on December 1, 2017, that "When I arrived at the hearing, I learned a court reporter had been paid for by someone other than myself, so I proceed into the courtroom. No one else appeared and Judge Kirby signed the order Approving the Petition to Sell." Per Roe Simmons response to the grievance my father filed in 2017, Roe Simmons was fully aware that a court reporter was ordered because he was notified by the court that a transcript had been ordered and he also knew that I was the daughter of one of the heirs to the property and he was the attorney representing the estate so he should have made sure the court reporter was present before he and Judge Kirby started the hearing. Judge Kirby's office knew that a court reporter was ordered so a court reporter should have transcribed the hearing so that my mother could have a record to review due to her living out of state.

**Exhibit 6)** August 9, 2017, Order granting the withdrawal of attorney Jarred J. Elwell. He stopped working at the Smith Simmons PLLC firm.

**Exhibit 7)** September 15, 2017, filing of the Order Approving Petition to Sell. This was the hearing that was held on May 17, 2017, that I ordered the transcript, but they did not have one present. This Order was not filed until September 15, 2017, which is 4 months later. This order also has the order to sale

personal property that was not on the Petition to Sale Real Property by Public Sale. Roe Simmons only adds this to the order after my mother and father notified Roe Simmons of the Facebook post of Dannie Lenox's girlfriend Delouie Pollard selling my grandmother's personal property on Facebook so Roe Simmons drafted this order and had Judge Kirby sign it 4 months late.

**Exhibit 8)** September 20, 2017, filing of the Application for Order Approving Sale of Real Property. Per this application attorney Roe Simmons states that he had a public sale at his office and that the property sold to the highest bidder for $10,000.00. This is not true and testimony from Terek Wazzan and in his affidavit to the court, it confirms that Terek Wazzan did not purchase this property at any public sale. Mr. Wazzan also states that he had purchased the property in July 2017 and then sold it to another buyer Plains State in August 2017, which was all done before the date of September 5, 2017. He also stated in his affidavit that the personal representative and his attorney knew or should have known. This application also did not name the buyer and Wazzan purchased the property for $16,000 and sold it to another buyer for $35,000 in August 2017 which was before the supposed sale at Roe Simmons office on Sept. 5, 2017.

**Exhibit 9)** September 20, 2017, filing by Roe Simmons title Certificate for Proof of Publication. This is Roe Simmons filing notifying of the September 5, 2017, public sale at his office. This was not filed or sent to my mother until after September 20, 2017, so my mother had no knowledge of any public sale at Roe Simmons office. This was a delayed filing and the email chain from the title company will show that they were trying to fix the record so that it would appear to have been handle properly when they knew the property had already changed ownership, but they were holding the filing.

**Exhibit 10)** September 21, 2021, filing - Order for Hearing Return of Sale.

**Exhibit 11)** September 26, 2017, filing - Notice of Hearing

**Exhibit 12)** September 26, 2017, filing - Affidavit of Mailing – This is Roe Simmons stating that he mailed document to my mother. These documents *that he* mailed to my mother have now been proven to have false information in them because Roe Simmons never had a public sale at his office because the property had already contracted and sold to multiple buyers – Duvell Hubbard for $6000, Terek Wazzan for $16,000 and Plains State for $35,000. All of these transactions were handled at Chicago Title with Roe Simmons being involved throughout the entire process. I have spoken with Plains State and they told

me that they sold the property for $115,000, which was also noted on their website. Rollin Nash is not mentioning any of this in his Special Master Report.

**Exhibit 13)** October 6, 2017, filing of the Proof of Publication – This filing did not have the name of the purchaser or the sum of what the property was sold for.

**Exhibit 14)** October 17, 2017, filing of the Proof of Publication – This appears to be the same document.

**Exhibit 15)** October 18, 2017, filing of the Order Approving Sale of Real Property – This order states that Special Administrator's Sale of the real property is approved. There was no Special Administrator at the time of the sale. It also states that the Special Administrator is authorized to distribute the proceed from the sale of the property located at 2520 Nw 16th street to the heirs according to the Court's Final Order for Distribution. Note the order for distribution was filed on September 12, 2019. Roe Simmons had already disbursed the estate in May of 2019, before any said order. This order also did not have the name of the buyer nor did it have the sum of which the property sold for. Per the application for approval of sale real property, Roe Simmons stated he sold the property at his office on September 5, 2017, which was not true.

**Exhibit 16)** October 20, 2017, filing of Jarred Elwell wanting his name off of the probate. The docket never replaced his name with Roe Simmons. We believe this may be intentional because Roe Simmons does not want his name associated with the probate. He is one that has created the negativity surrounding this estate due to his misconduct and what we believe fraud upon the court due to his own filing and information my father was able to obtain in the federal lawsuit.

Rollin Nash tries to convince this court that the Federal Lawsuit was won by Roe Simmons, which is not true because the was dismissed without prejudice due to jurisdiction not only merits. This is a false narrative that has nothing to do with a Special Master's Report or his duties.

**Exhibit 17)** May 16, 2019, filing by Judge Richard Kirby's Court Minute. This is not a minute order nor did it give Roe Simmons permission to disburse the estate funds to the heirs or to himself due to Judge Kirby granting him legal fees assessed against the inheritance of Frances Gibson. This was just a minute not an order. The order was not filed until September 12, 2019, after the estate had already been disbursed by Roe Simmons.

**Exhibit 18)** September 12, 2019, filing of Judge Kirby's Order Allowing Final Account, Determining Heirs and Final Decree of Distribution and Order Denying Francis Gibson's Objection and Motion to Remove Personal Representative. This was filed 4 months late and the estate had already been disbursed by attorney Roe Simmons and Personal Representative Dannie Lenox.

**Exhibit 19)** November 3, 2021, filing of the Order Appointing Rollin Nash, Jr. as Special Master – The Special Master's Report does not reflect his duties per the order. He appears to be an advocate for Roe Simmons and Judge Richard Kirby and other officers of the court. This reports also mentions tweets and other agencies did not pertain to the estate or his duties as a special master. This is why my mother and I objected to Rollin Nash's appointment for this very reason.

Roe Simmons and Dannie Lenox also did not show any receipts according to probate laws throughout the probate process. During the early stages of the probate, my father was told by the court that Dannie Lenox would be called in 60 days to show receipts and get approval of the account balances and money being used throughout the probate process, but this was never done.

Best Regards,

Tonya Parks

**Certificate of Mailing**

I hereby certify that on the 13 day of April, 2022, a true and correct copy of the above and foregoing instrument was mailed by first class mail, with postage paid by me to:

Roe T. Simmons
Simmons and Associate PLLC
1900 N. W. Expressway, Suite 1050
Oklahoma City, Ok 73118

Frances Gibson
7200 Old Mill run
Fort Worth, Tx 76133

Johnny Fryer
517 Athena Dr
Columbia, SC 29223

Leon Lenox
3213 N. E. 12th St
Oklahoma City, Ok 73117

Dannie Lenox
3806 N. Shadybrook Dr
Midwest City, Ok 73110

I obtained these addressed from the special master's report

Tonya Parks

**From:** Justice Too - Tonya Parks <justicetooforall@gmail.com>
**Sent:** Tuesday, April 5, 2022 8:49 PM
**To:** Rollin Nash <rnash@nashfirm.com>
**Cc:** BENNIE GIBSON <agginc@prodigy.net>
**Subject:** Re: tax sale date is June 13, 2022.

Mr. Nash,

I don't understand your reasoning for sending me this bill. My mother does not own this property. Yes, we have a vacated order, but when Sara Boundurant was selected to be the Special Administrator on July 31, 2020, all of this should have been addressed before her departure on May 11, 2021. I requested to be the Special Administrator on May 11, 2021, during the hearing to release Ms. Boundurant, but Judge Nikki Kirkpatrick would not allow me the opportunity to protect my mother and grandmother's interest by being the Special Administrator. She said that she would not allow me to be the special administrator or personal representative because she wanted a neutral person who had no involvement with any party. She said she would be taking it under advisement and would be ruling in the coming week, but it took her over 6 months and then she selected you to be the Special Master on Nov 3, 2021, who can not address these issues, but only investigate.

At the hearing on May 11, 2021, Judge Kirkpatrick also sealed the case for the reputation of the officers of the court per the transcript that was withheld from me for over 7 months. My mother has not been able to obtain legal counsel due to the sealing of the case and no one has been able to review the filing because of the sealing of the case. The sealing of the case was unlawful and not in the best interest of the estate or my mother who is an heir to the estate. This recent notice is something that I mentioned and tried to protect, but no one would allow me or my mother the ability to do anything in the estate or file anything to make the court aware without unlawful intimidation. Roe Simmons continued to appear in court to object to anything and everything my mom or I filed. The court was given notice in our filing, but still chose to ignore evidence.

Roe Simmons took my mother's portion of the estate and disbursed the money in the estate in May 2019, before a written order was signed by a Judge (Judge Kirby) to disburse the funds. The estate was financially depleted by Roe Simmons and Dannie Lenox.

My mother is not the reason that this property had to be recovered and this buyer is missing in action and has not paid the taxes. This is something that should be investigated because I am sure they will find unlawful crimes to obtain real estate by deceit and fraud. This is a crime and I feel

Exhibit 1

you are not acting in your capacity as the Special Master because of your protection of other officers of the court and conflict of interest.

Mr. Nash, I don't know what your motive is, but it looks very unlawful to me and I would advise/suggest to you that before you send me anything to discuss with my mother that you do your work to make sure what you are telling me to tell my mother is truthful. This bill you sent me is once again another document sent under false pretenses to exploit my elderly parents. My father already sent you an email letting you know that these taxes that are owed on the property are not subject to the county selling the property on or before June 13, 2022. This house is currently not up for sale by the tax appraisal office. My father again today contacted the tax office and they informed him that this property is not up for sale. You in your position as the special master should have confirmed this before you sent this to us so that my mother would act and could potentially lose more money.

The tax office escalated this to upper management so that they can confirm what they were telling my father was accurate. I even called with my father on the phone line and confirmed it myself so that we could make sure we both understood it the same way. Unlike you and your multiple attorneys working on the case, we investigate and do our due diligence. They advised us not to pay taxes on behalf of another person which is Plains State Holdings because we could lose money. Due to the sealing of the case, nothing can be done on this property. Roe Simmons, Judge NIkki Kirkpatrick, Judge Kirby and many others are responsible for this. My mother is not going to use her money to pay taxes on a property that does not belong to her. She would just be wasting her money and due to the courts in Oklahoma County and all of the conflicts that are interfering with the process - there is not any guarantee that this property will go back to the estate. This process has been manipulated and no one including you are doing what is in the best interest of the estate.

Please stop extorting my parents. You set up that zoom meeting and used a 3rd party to get into our homes to extort my mother to pay taxes and then you do it again by sending this email and my father already did the investigation that you should have done to know this property is not up for sale June of 2022. I pray you do not charge the estate for any time spent on looking that up because it was a waste of time because you did not go through all of the proper people to confirm if the property was up for sale. You just went on their website and printed out this bill, marked it up and then sent it to us to collect money unlawfully. This is a generic bill that is on the site that they can not remove. You have to call to verify and again this property is not up for sale in 2022.

First Roe Simmons tried to tell my mother that the house was torn down then after that did not work, you all tell us that the home is going to be up for sale due to unpaid taxes. What's next????? We are going through this process and being manipulated every step of the way. This

needs to stop!!!! I will be contacting the proper authorities about this attempt to collect money from an elderly person under false pretenses.

Best Regards,
Tonya Parks
214-980-8816

On Tue, Apr 5, 2022 at 12:48 PM Rollin Nash <rnash@nashfirm.com> wrote:

Ms. Parks,

The tax sale date of the "Home" property is set for **June 13, 2022.** Please see the attached printout from the Oklahoma County Treasurer's office.

Please communicate this information to your mother, as I do not have an email address for her.

Thank you,

*Rollin Nash, Jr.*
*NASH COHENOUR & GIESSMANN, P.C.*
*4101 Perimeter Center Drive, Suite 200*
*Oklahoma City, Oklahoma 73112*
*Telephone: (405) 917-5000*
*Facsimile: (405) 917-5005*
*Email: rnash@nashfirm.com*

From: Rollin Nash rnash@nashfirm.com
Subject: tax sale date is June 13, 2022.
Date: Apr 6, 2022 at 11:43:01 AM
To: Justice Too - Tonya Parks justicetooforall@gmail.com
Cc: BENNIE GIBSON agginc@prodigy.net

---

Dear Ms. Parks,

Please let me clarify two points with you regarding your email below.

I ONLY sent you my email so you would have a copy of the same document I obtained from the county, so you could see for yourself the date that the county has set to sell the property. It is not a bill. I am not trying to exhort money from you or your mother. I simply gave you a copy of a document that is on the county's website, because I didn't have that document before our zoom meeting. What you and your family does is entirely up to you and your mother.

I do not know anything about your comments that the property is not being sold by the county in June. If your father, mother, whomever, has made arrangements directly with the county for the property to NOT be sold this June, then congratulations. If that has occurred, then perhaps the county's website has not been updated. I can only provide you with what is listed on the website. I have no knowledge of any arrangements that you or any member of your family may have made with the county.

Your email also states that you have not been able to hire an attorney because the court file is sealed. If you hire an attorney, that attorney can file an Appearance in the case, and then your attorney will have total, unrestricted access to the court file.

Thank you,

*Rollin Nash, Jr.*
*NASH COHENOUR & GIESSMANN, P.C.*
*4101 Perimeter Center Drive, Suite 200*
*Oklahoma City, Oklahoma 73112*
*Telephone: (405) 917-5000*
*Facsimile: (405) 917-5005*
*Email: rnash@nashfirm.com*

Exhibit 1A



*1052150349*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR - 6 2022

RICK WARREN
COURT CLERK
36

IN THE DISTRICT COURT OF OKLAHOMA COUNTY

STATE OF OKLAHOMA

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF | ) | CASE NO.: PB-2016-721 |
| | ) | |
| CEOLA M. LENOX, Deceased. | ) | Honorable Richard W. Kirby |

**FIRST AMENDMENT**
**TO**
**SPECIAL MASTER'S REPORT**

COMES NOW Rollin Nash, Jr., the duly-appointed Special Master, ("Special Master"), and for his First Supplement to Special Master's Report to this Honorable Court, respectfully submits the following:

1. On April 5, 2022, your Special Master filed his Report to the Court, which, among other things, advised the Court that the "Home" property was scheduled for sale on June 13, 2022, by the County Treasurer for unpaid real property ad valorem taxes.

2. In support of your Special Master's belief, a copy of the notice as published on the County Treasurer's website was attached as Exhibit "11" to the Report. As of April 6, 2022, at 12:00 p.m., the County Treasurer's website has not been updated, and, according to its website, the Home property is still scheduled for sale. A copy of the notice as shown on the County Treasurer's website as of April 6, 2022, at 12:00 p.m. is attached as Exhibit "13".

3. At approximately 11:45 a.m. on April 6, 2022, your Special Master spoke by telephone with the County Treasurer's office and was advised of the following:

A. The Home was scheduled for sale by the County Treasurer on June 13, 2022.

Exhibit 1B

B. The County Treasurer routinely sells real property that is subject to probate proceedings.

C. Because the court file in this proceeding has been "sealed", the County Treasurer removed the Home property from the June 13, 2022, sale.

D. All unpaid real property ad valorem taxes are still owing.

E. If the court file was not sealed, the County Treasurer would not have removed the Home property from the June 13, 2022, sale for unpaid real property ad valorem taxes.

4. Your Special Master submits this First Amendment to his Report to advise the Court and all parties that, while the County Treasurer's website still lists the Home property for sale. See attached Exhibit "13" printed April 6, 2022, at 12:00 p.m. However, assuming that the information provided to your Special Master by telephone by the County Treasurer's Office is accurate, your Special Master has been orally advised that the Home will not be sold for the reasons set forth above.

5. If the sale of the Home does not occur, then the Estate will still own the Home property by reason of Judge Siderias' July 31, 2020, Order vacating the prior sale of the Home.

6. Except as set forth above, the rest and remainder of the Special Master's Report filed April 5, 2022, remains the same.

Respectfully submitted,

Rollin Nash, Jr.,
*Special Master*

APPROVED:

Rollin Nash, Jr. OBA # 6584

CERTIFICATE OF MAILING

I hereby certify that on the 6th day of April, 2022, a true and correct copy of the above and foregoing instrument was mailed by first class mail, with postage fully prepaid thereon to:

| | |
|---|---|
| Roe T. Simmons<br>SMITH SIMMONS, PLLC<br>1900 N.W. Expressway, Suite 1050<br>Oklahoma City, OK 73118 | Leon Lenox<br>3213 N.E. 12th Street<br>Oklahoma City, OK 73117 |
| Frances Gibson<br>7200 Oldmill Run<br>Fort Worth, TX 73133-7038 | Dannie Lenox<br>3806 N. Shadybrook Drive<br>Midwest City, OK 73110 |
| Johnny Fryer<br>517 Athena Drive<br>Columbia, SC 29223 | |

Rollin Nash, Jr.
NASH COHENOUR & GIESSMANN, PC
4101 Perimeter Center Dr, Suite 200
Oklahoma City, Oklahoma 73112
Telephone: (405) 917-5000
Facsimile: (405) 917-5005
Email: rnash@nashfirm.com
*Attorney for Rollin Nash, Jr.*
*Special Master*

PRINTED April 6th At 12:00 P.M

6/22, 12:00 PM https://docs.oklahomacounty.org/treasurer/recordDetails.asp?AccountId=11987810&TaxClass=A

If you are eligible to pay current tax half, button will appear here to pay. All others will have to be paid in full from previous screen.

| Oklahoma County | | | 4/6/2022 12:02:20 PM |
|---|---|---|---|
| Acct No: 020050140 | Tax Year: 2018 | Tax Type: REAL ESTATE | |
| Tax Dist: 200 | Fire Dist: | TIF Dist: | Pay Group: |
| Lot: 000 | Block: 001 | Addn: HASSMAN HEIGHTS ADD | |
| Legal Description: 001 000 LOTS 15 & 16 | | | |
| Click here to review the current physical address recorded in the County Assessor's Office. | | | |
| Click here to review how these taxes are apportioned. | | | |

PLAINS STATES HOLDINGS LLC
6300 WILSHIRE BLVD STE 970
LOS ANGELES, CA 90048

| | |
|---|---|
| Assessed Value: | 6,161 |
| Exempt Amount: | 0 |
| Net Value: | 6,161 |
| Rate/$1000: | 113.44 |
| TAX AMOUNT: | 698.90 |
| Net Payments: | 0.00 |
| Tax Balance: | 698.90 |
| Costs: | 179.00 |
| Interest: | 408.86 |
| TOTAL AMOUNT DUE IF PAID IMMEDIATELY: | $1,286.76 |

**Payments**

**Refunds**

**Sales/Endorsement Information**
Resale 06/13/2022
Cert. #00204-19 County

**Tax Roll Correction Information**

CLICK TO PAY OTHER OR DELINQUENT TAXES

EXHIBIT 13
PAGE 1
OF 1 PAGES

From: BENNIE GIBSON agginc@prodigy.net
Subject: Fw: ZOOM CONFERENCE; FINANCIAL ELDER ABUSE AND FRAUD
Date: Mar 24, 2022 at 1:13:00 PM
To: Justice Too - Tonya Parks justicetooforall@gmail.com

----- Forwarded Message -----
**From:** BENNIE GIBSON <agginc@prodigy.net>
**To:** kimb@nashfirm.com <kimb@nashfirm.com>
**Sent:** Thursday, March 24, 2022, 01:12:04 PM CDT
**Subject:** Fw: ZOOM CONFERENCE; FINANCIAL ELDER ABUSE AND FRAUD

----- Forwarded Message -----
**From:** BENNIE GIBSON <agginc@prodigy.net>
**To:** mash@nashfirm.com <mash@nashfirm.com>
**Sent:** Thursday, March 24, 2022, 01:08:59 PM CDT
**Subject:** ZOOM CONFERENCE; FINANCIAL ELDER ABUSE AND FRAUD

March 24, 2022

Nash Cohenour & Giessmann, PC
Attn: Rollin Nash
4101 Perimeter Center Dr,
Suite 200
Oklahoma City, Ok 73112

In Reference To: Probate Case No. PB-2016-721// Zoom Conference Financial
Elder Abuse and Fraud By False Pretense.

***[Hence] Scripture on false pretense: The Sin of False Pretense. Preverbs 23:7-8 Do not eat the bread of a selfish man, or desire his delicacies; For as he thinks within himself, so he is. He says to you, "Eat and Drink!" But his heart is not with you. You will vomit up the morsel you have eaten, and waste your compliments.***

Mr. Nash

Be sure when you take the result of that disgraceful zoom conference meeting held 10:00am March 22, 2022, you be sure and inform Judge Brent C. Dishman of the crime he *aided and abetted.* Frances A. Gibson objected to the Order appointing you as Special Master of her mother's Ceola M. Lenox Estate but you come into

her home per taped conversation to finalize a claim with Chicago

Exhibit 2

 Title. Yet per zoom conference you had no remembrance of that. During the conference you, your law firm and Roe Simmons attempted to collect back taxes on property 2520 NE 16th Street Oklahoma City OK stolen from her by Roe Simmons per amount due is $3,988.80. The bizarre! Roe Simmons stole Frances Gibson entire inheritance form her mother Ceola M. Lenox and Frances A. Gibson do not own the real estate. This is an act of elderly financial exploitation, fraud, and abuse by means of a third party [ZOOM]. This is a federal crime. Being that Judge Dishman wife is a federal Judge this could damage her career. I have a civic duty to inform the American people of Judge Dishman ***behavior***.

Mr. Nash I was born in Oklahoma but my mother and father was born and resided in the state Louisiana before residing in the state of Oklahoma. My roots are in the state of Louisiana right next to the Mississippi River. I have a strong belief in ***Spirits Paranormal***. When Ceola M. Lenox dies she became a spirit. Due to this ***unneeded*** and ***unwanted corruption*** you are putting upon her estate Mrs. Lenox ***still walks*** this earth. By the looks of Roe Simmons Mrs. Ceola M. Lenox have touch Roe Simmons, ***he looks bad*** and she will touch Rollin Nash and others.

Mr. Nash you can say that it will be %100 ***accurate*** I will contact Judge Dishman and the presiding Judge on his ***behavior***.

Best regards

Bennie R. Gibson

cc Tonya Parks



*1036709609*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR 24 2017

RICK WARREN
COURT CLERK
89

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF ESTATE OF )
CEOLA M. LENOX, Deceased ) Case No. PB-2016-721
Deceased )

**PETITION TO SELL REAL PROPERTY BY PUBLIC SALE** 

Dannie Lenox, of Oklahoma City, Oklahoma County, for his Petition to Sell Real Property by Public Sale alleges and states as follows.

1) The Estate of the decedent, Ceola M. Lenox, consists of a home located at 2520 NE 16th Street, Oklahoma City, OK 73117, a parcel of real estate consisting of undeveloped lots located near the intersection of Bryant Avenue and NE 10th Street in Oklahoma City, OK, 73117, and numerous personal items contained inside the home at 2520 NE 16th Street.

2) There are several heirs of the Estate, and the decedent died intestate.

3) The real property located at 2520 NE 16th ST, Oklahoma City, OK 73117 has been appraised at $56,500.

4) The parcel of undeveloped property, legally described as Lots 17, 18, 19, 20, 22, 23, 24, 25 and 26 and the East 8 feet of lot 21 in Block Thirteen (13) in the East Tenth Street Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof, has been appraised at $10,382 in aggregate.

5) It is in the best interest of the Estate to sell the home so the funds may be distributed to the following heirs according to law:

Exhibit 3

Frances Gibson
7200 Oldmill Run
Fort Worth, TX 73133-7038

Johnny Fryer
517 Athena Dr.
Columbia, SC 29223

Leon Lenox
3213 NE 12th Street
Oklahoma City, OK 73117

Dannie Lenox
3806 N. Shadybrook Dr.
Midwest City, OK 73110

WHEREFORE, Petitioner prays a date be appointed for hearing this Petition, and notice be given, as required by law, and upon the final hearing hereof, an Order authorizing the sale of Real Property described in this Petition as the Court deems appropriate and necessary at public sale.

Respectfully Submitted,

Roe T. Simmons, OBA No. 19573
SMITH SIMMONS, PLLC
252 NW 70TH
Oklahoma City, OK 73116
Telephone: (405) 843-1000
Facsimile: (405) 843-1005
Email: roe@smithsimmons.com
*Attorney for Petitioner*

**CERTIFICATE OF SERVICE**

This is to certify that on the 24th day of April 2017, a true and correct copy of *the Petition to Sell Real Property by Public Sale* was deposited in the U.S. Mail, postage prepaid, and/or sent via facsimile, to:

Frances Gibson
7200 Oldmill Run
Fort Worth, TX 73133-7038

Johnny Fryer
517 Athena Dr.
Columbia, SC 29223

Leon Lenox
3213 NE 12th Street
Oklahoma City, OK 73117

Dannie Lenox
3806 N. Shadybrook Dr.
Midwest City, OK 73110

ROE T. SIMMONS



IN THE DISTRICT COURT IN AND FOR OKLAHOMA COUNTY STATE OF OKLAHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

MAY 10 2017

RICK WARREN
COURT CLERK
89

IN THE MATTER OF THE ESTATE )
OF CEOLA M. LENOX (
*Deceased Person,* )

CASE NO. PB-2016-721

Judge: Kirby, Richard

**REQUEST FOR LICENCED COURT REPORTER AT HEARING FOR PETITION TO SELL REAL PROPERTY ON MAY 17, 2017 at 9:00 a.m.**

COMES NOW, Tonya Parks, daughter of Frances Gibson who is an heir of Ceola M. Lenox Estate have attached a check in the amount of $20.00 to pay the fee needed to request a Licensed Court Reporter to be present during the entire hearing with Judge Richard Kirby for the Petition to Sell Real Property on May 17, 2017. Also attached is the order signed by Judge Richard Kirby on April 24, 2017 for your review.

Once the hearing has ended, I will contact the assigned Court Reporter to obtain the necessary procedures to order the transcripts.

I have also attached a prepaid envelope so that you can mail back to me any and all receipts needed to handle this request.

If you have any additional questions please contact me at:
Direct #: 214-980-8816
Address: 1401 Bristlewood Drive
McKinney, Texas 75070

I pray that you receive this request timely so there will be enough time for the Court Reporter to have notice of this hearing. Thank you in advance for everything you can do to assist me in this request.

Respectfully submitted,

Tonya Parks *Pro-se*
1401 Bristlewood Drive
Mckinney, Texas 75070
(214)980-8816

Exhibit 4



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

MAY - 4 2017

RICK WARREN
COURT CLERK
89__________

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | | |
|---|---|---|
| IN THE MATTER OF ESTATE OF<br>CEOLA M. LENOX, Deceased<br>Deceased | )<br>)<br>) | Case No. PB-2016-721 |

ORDER FOR HEARING PETITION TO
SELL REAL PROPERTY

Petitioner has filed a Petition in this Court to sell Real Property of the Estate by Public Sale. The Court having heard the statements of counsel and being fully advised in the premises hereby Orders and Decrees as follows.

It is therefore ordered that the Petition be heard before this Court in the County Courthouse of Oklahoma County, State of Oklahoma, on May 17, 2017 at 9:00 a.m. before the Honorable Richard Kirby.

It is further ordered that notice of said hearing be given by mail to each of the heirs whose addresses are known, and by publishing same in the Edmond Sun, a newspaper published in said county, all according to law.

Witness my hand and the seal of said Court this 24 day of April, 2017.

The Honorable Richard Kirby,
Judge of the District Court

Approved:

Roe T. Simmons,        OBA# 19573
SMITH SIMMONS, PLLC
252 NW 70th
Oklahoma City, OK 73116
Telephone: (405) 843-1000
Facsimile: (405) 843-1005
Email: roe@smithsimmons.com

*Attorneys For Petitioner*

*1036798519*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

MAY 18 2017

RICK WARREN
COURT CLERK
79____

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF THE ~~ADOPTION~~/ESTATE/~~GUARDIANSHIP~~ OF

Carla M. Lenox

Case No. PB-2016-731

## COURT MINUTE

Date: May 18, 2017 Judge: Richard W. Kirby

Hearing On: Court note regarding contact from Tonya Parks

~~Ruling By Court:~~

On this day, this Court's staff was contacted repeatedly by Tonya Parks regarding the above case, insisting on discussing the case by phone. Staff has advised her that the case can't be discussed by phone and advised her to file any objections she has in writing, set the objection for hearing, and come to Court for the hearing.

Tonya Parks filed, "pro se", a "Request for Licensed Court Reporter" on May 10, 2017 for the hearing set on May 17, but failed to deliver a copy of said pleading to the Court or set it with the Court in violation of Rule 10 of the 7th Judicial Administrative District

Additionally, no parties appeared at the May 17 hearing other than [illegible] on behalf of the original Petitioner. Tonya Parks DID NOT appear, and she was clearly notified of said hearing. Consequently a Court Reporter is not ordered

Richard W. Kirby, Associate District Judge

Exhibit 5



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

AUG - 9 2017

RICK WARREN
COURT CLERK
26________

IN THE DISTRICT COURT OF OKLAHOMA COUNTY

STATE OF OKLAHOMA

| | | |
|---|---|---|
| In the Matter of the Estate of Ceola M. Lenox, Deceased. | ) ) ) | PB-2016-~~271~~ 721 |

**ORDER GRANTING MOTION TO WITHDRAW AND SUBSTITUTE COUNSEL OF RECORD**

For good cause shown, and based upon the representations of counsel, the *Motion to Withdraw and Substitute as Counsel of Record* is granted. Further notice of hearings, service of pleadings and other case related papers shall be made upon Roe T. Simmons of Smith Simmons, PLLC.

The Honorable Richard Kirby,
Judge of the District Court

Approved as to Form:

Jarred J. Elwell, OBA No. 31986
Elwell and Spain, PLLC
2500 Boardwalk, Suite 207
Norman, OK 73069
Phone: (405) 322-5622
Fax: (405) 265-9833
Email: jarred@elwellandspain.com

Roe T. Simmons, OBA No. 19573
SMITH SIMMONS, PLLC
252 NW 70th Street
Oklahoma City, OK 73116
Phone: (405) 843-1000
Fax: (405) 843-1003
Email: roe@smithsimmons.com

Exhibit 6

*1038063788*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

SEP 15 2017

RICK WARREN
COURT CLERK
36______

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | | |
|---|---|---|
| IN THE MATTER OF ESTATE OF | ) | |
| CEOLA M. LENOX, Deceased | ) | Case No. PB-2016-721 |
| Deceased | ) | |

ORDER APPROVING PETITION TO SELL

On the 17th day of May 2017, Personal Representative's Petition to Sell Real Property by Public Sale came on for hearing before the undersigned Judge of the District Court. The Court having reviewed the pleadings, and heard the statements of counsel and being fully advised in the premises hereby Order and Decrees as follows.

1. Notice of this hearing has been given as required by law and by the Order of this Court.

2. That a sale of the real property belonging to said estate mentioned in said Petition, is necessary and for the best interests of all concerned so the funds may be distributed to the heirs of the estate according to the Court's Final Order for Distribution.

3. It is therefore Ordered, Adjudged and Decreed by the Court that the Personal Representative be and hereby is authorized and directed to sell in one parcel or in separate parcels or subdivisions, as said Personal Representative shall judge most beneficial to said estate, at public sale, to the highest bidder, the following described real estate, to wit: the residence located at 2520 NE 16th ST, Oklahoma City, OK 73117.

4. It is further Ordered that notice of the time and place of such sale be given by publication for two weeks successively before the time of sale in a newspaper published in Oklahoma County, Oklahoma.

5. That a sale of the personal property contained inside the residence at 2520 NE 16th ST, Oklahoma City, OK 73117, Oklahoma County is necessary and for the best interests of

Exhibit 7

all concerned because there is not another feasible method of distributing the personal property.

**DATED** this 17th day of May, 2017.

RICHARD KIRBY
JUDGE OF THE DISTRICT COURT

**APPROVED:**

Roe T. Simmons, OBA No. 19573
SMITH SIMMONS, PLLC
252 NW 70th
Oklahoma City, OK 73116
Phone: (405) 843-1000
Facsimile: (405) 843-1005
Email: roe@smithsimmons.com
*ATTORNEY'S FOR PERSONAL REPRESENTATIVE*



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

SEP 20 2017

RICK WARREN
COURT CLERK
37

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF ESTATE OF )
CEOLA M. LENOX, Deceased ) Case No. PB-2016-721
Deceased )

APPLICATION FOR ORDER APPROVING SALE OF REAL PROPERTY

The duly appointed and acting Personal Representative of the Estate of Ceola Lenox, Dannie Lenox, hereby requests this Court to enter an Order approving the sale of certain real property. In support of this Application, Mr. Lenox states as follows.

1. The Applicant is the Personal Representative of the Estate of Ceola Lenox in the above styled and numbered cause.

2. On May 17, 2017, the Court authorized and directed the Personal Representative to sell at public sale, to the highest bidder, the real property located at 2520 NE 10th, Oklahoma City, Oklahoma County, Oklahoma.

3. The Special Administrator published notice of the sale on August 19, and August 26, 2017 in the Edmond Sun.

4. On September 5, 2017, a public sale was held at the office of the Personal Representative's attorney, Smith Simmons, PLLC. The real property located at 2520 NE 10th was sold to the highest bidder for $10,000.00.

Wherefore, Mr. Lenox requests this Court enter an Order approving the sale of the real property located at 2520 NE 10th.

Exhibit 8

Respectfully submitted,

Roe T. Simmons, OBA No. 19573
**SMITH SIMMONS, PLLC**
252 NW 70TH
Oklahoma City, OK 73116
Phone: (405) 843-1000
Facsimile: (405) 843-1005
Email: roe@smithsimmons.com

**CERTIFICATE OF SERVICE**

This is to certify that on the 20th day of September 2017, a true and correct copy of *Application for Order Approving Sale of Real Property* was deposited in the U.S. Mail, postage prepaid, and/or sent via facsimile, to:

Frances Gibson
7200 Oldmill Run
Fort Worth, TX 73133-7038

Johnny Fryer
517 Athena Dr.
Columbia, SC 29223

Leon Lenox
3213 NE 12th Street
Oklahoma City, OK 73117

Dannie Lenox
3806 N. Shadybrook Dr.
Midwest City, OK 73110

Roe T. Simmons



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

SEP 20 2017

RICK WARREN
COURT CLERK
37

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | | |
|---|---|---|
| IN THE MATTER OF ESTATE OF | ) | |
| CEOLA M. LENOX, Deceased | ) | Case No. PB-2016-721 |
| Deceased | ) | |

**CERTIFICATE FOR PROOF OF PUBLICATION**

I, Roe T. Simmons, attorney for Dannie Lenox, Personal Representative, certify that notice of the sale of property has been given to all one of the defendants in the action, by publication service pursuant to Fed. R. Civ. P. 71.1(d)(3)(B) by publication of the notice once a week for two consecutive weeks beginning on August 19, 2017, in The Edmond Sun, a newspaper published in Oklahoma County, Oklahoma in which is located the property of the decedent that is to be sold.

A printed copy of the published notice is attached with the name of the newspaper in which it was published and the dates of its publication marked on it.

Dated: September 20, 2017

Respectfully submitted,

Roe T. Simmons, OBA No. 19573
SMITH SIMMONS, PLLC
252 NW 70TH
Oklahoma City, OK 73116
Phone: (405) 843-1000
Facsimile: (405) 843-1005
Email: roe@smithsimmons.com

Exhibit 9

**CERTIFICATE OF SERVICE**

This is to certify that on the 20th day of September 2017, a true and correct copy of *Application for Order Approving Sale of Real Property* was deposited in the U.S. Mail, postage prepaid, and/or sent via facsimile, to:

Frances Gibson
7200 Oldmill Run
Fort Worth, TX 73133-7038

Johnny Fryer
517 Athena Dr.
Columbia, SC 29223

Leon Lenox
3213 NE 12th Street
Oklahoma City, OK 73117

Dannie Lenox
3806 N. Shadybrook Dr.
Midwest City, OK 73110

Roe T. Simmons

*(Notice as published)*

**(LPXLP)**
Published in The Edmond Sun, Edmond, Oklahoma 73034, August 19 and 26, 2017.

NOTICE OF SALE
OF REAL PROPERTY
CASE NO. PB-2016-721

IN THE DISTRICT COURT OF OKLAHOMA COUNTY, STATE OF OKLAHOMA

IN THE MATTER OF THE ESTATE OF CEOLA M. LENOX, DECEASED

Notice is hereby given that pursuant to the Approval of the District Court of the County of Oklahoma, State of Oklahoma, on May 17, 2017, in the matter of the Estate of Ceola M. Lenox, deceased, Dannie Lenox, an heir to the Estate, will sell at public auction to the highest bidder, subject to confirmation of said District Court, at 10:00 AM on the 5thday of September, 2017, at the offices of Smith Simmons, PLLC, 252 NW 70th, Oklahoma City, OK 73116, all of the Estate's right title and interest in and to the following real property situated in the County of Oklahoma, State of Oklahoma, legally described as follows:

Hassman Heights Addition, Block 001, Lots 15 & 16 (street address 2620 NE 16thStreet, Oklahoma City, OK 73117).

Dated this 21st day of August, 2017.

Respectfully submitted,
Roe T. Simmons, OBA No. 19573
252 NW 70th
Oklahoma City, OK 73116
Phone: (405) 831-1000
Fax: (405) 843-1005
Email: roe@smithsimmons.com
Attorney for Dannie Lenox

# Proof of Publication

**Oklahoma County, State of Oklahoma**

NOTICE OF SALE OF REAL PROPERTY — Case No: CASE PB-2016-721

**Affidavit of Publication**

State of Oklahoma, County of Oklahoma, ss:
I, the undersigned publisher, editor or Authorized Agent of the Legal Notices, do solemnly swear that the attached advertisement was published in said paper as follows:

| | |
|---|---|
| 1st Publication | August 19, 2017 |
| 2nd Publication | August 26, 2017 |

That said newspaper is in the city of Edmond, Oklahoma County, Oklahoma, a Daily newspaper qualified to publish legal notices, advertisements and publications as provided in Section 106 of Title 25, Oklahoma Statutes 1971, as amended, and complies with all other requirements of the laws of Oklahoma with reference to legal publications.

That said Notice, a true copy of which is attached hereto, was published in the regular edition of said newspaper during the period and time of publications and not in a supplement, on the above

[signature]
Signature

Subscribed and sworn before me on this 28th day of August 2017.

NOTARY SEAL PUBLIC
STEPHANIE MOLER
Notary Public
State of Oklahoma
Commission # 15001187 Expires 2/6/19

[signature]
My commission expires February 6, 2019. Notary Public
Commission # 15001187

**Cost of Publication $ 60.09**

**Ad # 00451056 Acct # 23163295**

**Publisher's Address:**
The Edmond Sun
P. O. Box 2470
Edmond, OK 73034-7363



*1036252879*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

SEP 21 2017

RICK WARREN
COURT CLERK
41

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

~~IN THE MATTER OF ESTATE OF~~ )
CEOLA M. LENOX, Deceased ) Case No. PB-2016-721
Deceased )

## ORDER FOR HEARING RETURN OF SALE

Dannie Lenox, Personal Representative of the Estate of Ceola Lenox, deceased, having this day made a Return to this Court of his proceedings under the Order of Sale of real property made by this Court on May 17, 2017 and filed said return in the District Court, and a hearing upon the said Return being requested.

It is Ordered that on the 18th day of October, at 9:00 a.m. in the Court room assigned to the Honorable Richard Kirby, at the Oklahoma County Courthouse in Oklahoma City, Oklahoma be and the same is hereby fixed for the hearing upon said Return, and that notice be published as required by the statute and that notice briefly indicate the real property sold, the name of the purchaser, the sum for which it was sold, and refer to the Return for further particulars.

Dated the 21st day of September 2017.

RICHARD W. KIRBY
RICHARD KIRBY
JUDGE OF THE DISTRICT COURT

RICK WARREN, Court Clerk
By [signature] Deputy

Exhibit 10

**APPROVED:**

Roe T. Simmons, OBA No. 19573
SMITH SIMMONS, PLLC
252 NW 70th
Oklahoma City, OK 73116
Phone: (405) 843-1000
Facsimile: (405) 843-1005
Email: roe@smithsimmons.com
*SPECIAL ADMINISTRATOR*



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

SEP 26 2017

RICK WARREN
COURT CLERK
40

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF ESTATE OF )
CEOLA M. LENOX, Deceased ) Case No. PB-2016-721
Deceased )

NOTICE OF HEARING

Notice is hereby given that pursuant to the Approval of the District Court of the County of Oklahoma, State of Oklahoma, on September 21, 2017, in the matter of the Estate of Ceola M. Lenox, deceased, a hearing upon a Return of Sale of Real Property, at 9:00 AM on the 18th day of October, 2017, at the Oklahoma County Courthouse located at 321 Park Avenue, Oklahoma City, Oklahoma 73102 before the Honorable Judge Richard W. Kirby, all of the Estate's right title and interest in and to the following real property situated in the County of Oklahoma, State of Oklahoma, legally described as follows:

Hassman Heights Addition, Block 001, Lots 15 & 16 (street address 2520 NE 16th Street, Oklahoma City, OK 73117).

Dated this 22nd day of September 2017.

Respectfully submitted,

Roe T. Simmons, OBA No. 19573
252 NW 70th
Oklahoma City, OK 73116
Phone: (405) 831-1000
Fax: (405) 843-1005
Email: roe@smithsimmons.com
Attorney for Dannie Lenox

Exhibit 11

**CERTIFICATE OF SERVICE**

This is to certify that on the 2nd day of September 2017, a true and correct copy of *Notice of Hearing* was deposited in the U.S. Mail, postage prepaid, and/or sent via facsimile, to:

Frances Gibson
7200 Oldmill Run
Fort Worth, TX 73133-7038

Johnny Fryer
517 Athena Dr.
Columbia, SC 29223

Leon Lenox
3213 NE 12th Street
Oklahoma City, OK 73117

Dannie Lenox
3806 N. Shadybrook Dr.
Midwest City, OK 73110

Roe T. Simmons



FILED IN DISTRICT COURT
OKLAHOMA COUNTY
SEP 26 2017
RICK WARREN
COURT CLERK
40

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF ESTATE OF )
CEOLA M. LENOX, Deceased ) Case No. PB-2016-721
Deceased )

## AFFIDAVIT OF MAILING

STATE OF OKLAHOMA )
) ss.
COUNTY OF OKLAHOMA )

I, Roe T. Simmons, of lawful age, being first duly sworn, on oath say:

That I am the attorney for the Estate of Ceola M. Lenox, Deceased. On the 25th day of September 2017, I deposited in the U.S. Post Office Box the *Application for Order Approving Sale of Real Property* and *Notice of Publication* and on the 26th day of September 2017, I deposited the *Order for Hearing Return of Sale* and *Notice of Hearing of Sale of Property* to the following who are alleged to be the only heirs, devisees, and legatees of Decedent:

The State of Oklahoma to the heirs, next of kin and creditors of the said Ceola M. Lenox, deceased:

| Name | Age | Relationship | Address |
|---|---|---|---|
| Francis Gibson | Legal | Daughter | 7200 Oldmill Run<br>Fort Worth, TX 73133-7038 |
| Johnny Fryer | Legal | Son | 517 Athena Dr.<br>Columbia, SC 29223 |
| Leon Lenox | Legal | Son | 3213 NE 12th Street<br>Oklahoma City, OK 73117 |
| Dannie Lenox | Legal | Son | 3806 N. Shadybrook Dr.<br>Midwest City, OK 73110 |

Witness my hand this 26th day of September 2017.

Exhibit 12

Roe T. Simmons, OBA No. 19573
SMITH SIMMONS, PLLC
252 NW 70th Street
Oklahoma City, OK 73116
Phone: (405) 843-1000
Facsimile: (405) 843-1005
Email: roe@smithsimmons.com
*Attorney for Petitioner*

SUBSCRIBED AND SWORN to before me this 26th day of September 2017.

NOTARY PUBLIC

My commission expires:

8/5/2021

NOTARY PUBLIC-STATE OF OKLAHOMA

ALICIA IVORY
COMMISSION # 13007119
OKLAHOMA COUNTY



*1038351427* published)

(LPXLP)
Published in The Edmond Sun, Edmond, Oklahoma 73034, September 27 and October 4, 2017.
IN THE DISTRICT COURT OF OKLAHOMA COUNTY STATE OF OKLAHOMA
IN THE MATTER OF ESTATE OF CEOLA M. LENOX, Deceased Deceased
Case No. PB-2016-721
NOTICE OF HEARING

Notice is hereby given that pursuant to the Approval of the District Court of the County of Oklahoma, State of Oklahoma, on September 21, 2017, in the matter of the Estate of Ceola M. Lenox, deceased, a hearing upon a Return of Sale of Real Property, at 9:00 AM on the 18th day of October, 2017, at the Oklahoma County Courthouse located at 321 Park Avenue, Oklahoma City, Oklahoma 73102 before the Honorable Judge Richard W. Kirby, all of the Estate's right title and interest in and to the following real property situated in the County of Oklahoma, State of Oklahoma, legally described as follows:

Hassman Heights Addition, Block 001, Lots 15 & 16 (street address 2520 NE 16th Street, Oklahoma City, OK 73117).

Dated this 22nd day of September 2017.

Respectfully submitted,
/s/ Ros T. Simmons
Ros T. Simmons, OBA No. 19573
252 NW 70th
Oklahoma City, OK 73116
Phone: (405) 631-1000
Fax: (405) 843-1005
Email: ros@smithsimmons.com
Attorney for Dannie Lenox

# Proof of Publication

**Oklahoma County, State of Oklahoma**

NOTICE OF HEARING    Case No: PB-2016-721

FILED IN DISTRICT COURT
OKLAHOMA COUNTY
OCT - 6 2017
RICK WARREN
COURT CLERK
32

**Affidavit of Publication**

State of Oklahoma, County of Oklahoma, ss:
I, the undersigned publisher, editor or Authorized Agent of the Legal Notices, do solemnly swear that the attached advertisement was published in said paper as follows:

| | |
|---|---|
| 1st Publication | September 27, 2017 |
| 2nd Publication | October 4, 2017 |

That said newspaper is in the city of Edmond, Oklahoma County, Oklahoma, a Daily newspaper qualified to publish legal notices, advertisements and publications as provided in Section 106 of Title 25, Oklahoma Statutes 1971, as amended, and complies with all other requirements of the laws of Oklahoma with reference to legal publications.

That said Notice, a true copy of which is attached hereto, was published in the regular edition of said newspaper during the period and time of publications and not in a supplement, on the above

[signature]
Signature

Subscribed and sworn before me on this 4th day of October 2017.

NOTARY SEAL PUBLIC
STEPHANIE MOLER
Notary Public
State of Oklahoma
Commission # 15001187 Expires 02/06/19

[signature]
My commission expires February 6, 2019.    Notary Public
Commission # 15001187

Cost of Publication $ 60.83
Ad # 00452875    Acct # 23163295

**Publisher's Address:**
The Edmond Sun
P. O. Box 2470
Edmond, OK 73034-7363

**PAID**
DIRECT BY ATTORNEY

Exhibit 13



*1038351944* (published)

(LPXLP)
Published in The Edmond Sun, Edmond, Oklahoma 73034, September 27 and October 4, 2017.
IN THE DISTRICT COURT OF OKLAHOMA COUNTY STATE OF OKLAHOMA
IN THE MATTER OF ESTATE OF CEOLA M. LENOX, Deceased
Case No. PB-2016-721
NOTICE OF HEARING

Notice is hereby given that pursuant to the Approval of the District Court of the County of Oklahoma, State of Oklahoma, on September 21, 2017, in the matter of the Estate of Ceola M. Lenox, deceased, a hearing upon a Return of Sale of Real Property, at 9:00 AM on the 18th day of October, 2017, at the Oklahoma County Courthouse located at 321 Park Avenue, Oklahoma City, Oklahoma 73102 before the Honorable Judge Richard W. Kirby, all of the Estate's right title and interest in and to the following real property situated in the County of Oklahoma, State of Oklahoma, legally described as follows:

Hassman Heights Addition, Block 001, Lots 15 & 16 (street address 2520 NE 16th Street, Oklahoma City, OK 73117).

Dated this 22nd day of September 2017.

Respectfully submitted,
/s/ Roe T. Simmons
Roe T. Simmons, OBA No. 19573
252 NW 70th
Oklahoma City, OK 73116
Phone: (405) 831-1000
Fax: (405) 843-1005
Email: roe@smithsimmons.com
Attorney for Dannie Lenox

# Proof of Publication

**Oklahoma County, State of Oklahoma**

NOTICE OF HEARING

Case No: PB-2016-721

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

OCT 17 2017

RICK WARREN
COURT CLERK

48

**Affidavit of Publication**

State of Oklahoma, County of Oklahoma, ss:

I, the undersigned publisher, editor or Authorized Agent of the Legal Notices, do solemnly swear that the attached advertisement was published in said paper as follows:

| | |
|---|---|
| 1st Publication | September 27, 2017 |
| 2nd Publication | October 4, 2017 |

That said newspaper is in the city of Edmond, Oklahoma County, Oklahoma, a Daily newspaper qualified to publish legal notices, advertisements and publications as provided in Section 106 of Title 25, Oklahoma Statutes 1971, as amended, and complies with all other requirements of the laws of Oklahoma with reference to legal publications.

That said Notice, a true copy of which is attached hereto, was published in the regular edition of said newspaper during the period and time of publications and not in a supplement, on the above

[signature]
Signature

Subscribed and sworn before me on this 4th day of October 2017

STEPHANIE MOLER
Notary Public
State of Oklahoma
Commission # 15001187 Expires 02/06/19

[signature]

My commission expires February 6, 2019.

Notary Public
Commission # 15001187

Cost of Publication $ 60.83

Ad # 00452875 Acct # 23163295

**Publisher's Address:**
The Edmond Sun
P. O. Box 2470
Edmond, OK 73034-7363

Exhibit 14



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

OCT 18 2017

RICK WARREN
COURT CLERK
75

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | | |
|---|---|---|
| ~~IN THE MATTER OF ESTATE OF~~<br>CEOLA M. LENOX, Deceased<br>Deceased | )<br>)<br>) | Case No. PB-2016-721 |

## ORDER APPROVING SALE OF REAL PROPERTY

Now on this 18th day of October 2017, the Application for Approval of Sale of Real Property came on for hearing. The Applicant, Dannie Lenox, by and through his attorney of record, Roe T. Simmons of the law firm of Smith Simmons, P.L.L.C., appears in person. This Court having reviewed the pleadings, and being fully advised in the premises, here by Orders and Decrees as follows.

1. Special Administrator's sale of the real property located at 2520 NE 16th Street, Oklahoma City, Oklahoma County, Oklahoma is hereby approved.

2. Special Administrator is authorized to distribute the proceeds from the sale of the property located at 2520 NW 16th Street to the heirs of the estate according to the Court's Final Order for Distribution.

IT IS SO ORDERED

RICHARD W. KIRBY
JUDGE OF THE DISTRICT COURT

Exhibit 15

Approved:

Roe T. Simmons, OBA No. 19573
SMITH SIMMONS, PLLC
252 NW 70TH
Oklahoma City, OK 73116
Telephone: (405) 843-1000
Facsimile: (405) 843-1005
Email: roe@smithsimmons.com
*Attorney for Special Administrator*

 

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

OCT 30 2017

RICK WARREN
COURT CLERK
48

IN THE DISTRICT COURT OF OKLAHOMA COUNTY

STATE OF OKLAHOMA

| | | |
|---|---|---|
| In the Matter of the Estate of Ceola M. Lenox, Deceased. | ) ) ) | PB-2016-721 |

**ORDER GRANTING MOTION TO WITHDRAW AND SUBSTIUTE COUNSEL OF RECORD**

For good cause shown, and based upon the representations of counsel, the *Motion to Withdraw and Substitute as Counsel of Record* is granted. Further notice of hearings, service of pleadings and other case related papers shall be made upon Roe T. Simmons of Smith Simmons, PLLC.

The Honorable Richard Kirby,
Judge of the District Court

Approved as to Form:

Jarred J. Elwell, OBA No. 31986
Elwell and Spain, PLLC
2500 Boardwalk, Suite 207
Norman, OK 73069
Phone: (405) 322-5622
Fax: (405) 265-9833
Email: jarred@elwellandspain.com

Roe T. Simmons, OBA No. 19573
SMITH SIMMONS, PLLC
252 NW 70th Street
Oklahoma City, OK 73116
Phone: (405) 843-1000
Fax: (405) 843-1003
Email: roe@smithsimmons.com

Exhibit 16



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

MAY 16 2019

RICK WARREN
COURT CLERK
79

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF THE ADOPTION/ESTATE/GUARDIANSHIP OF
Cecil M. Lenox

Case No. PB-2016-721

COURT MINUTE

Date: 5/16/19

Judge: Richard W. Kirby

Hearing On:

Ruling By Court:

Petitioner/P.R. - Rae Simmons
Pro Se objector - Frances Gibson, pro se

Final account - objection to
and Motion to Remove

Testimony taken on the record

Court heard from witnesses Jim Kaufman, Tonya Parks
and Frances Gibson.

The objection to the final account is overruled.

The motion to remove is overruled.

The attorney fees requested are assessed against the inheritance of Frances Gibson in the amount of $10,000.00.

[signature]
Richard W. Kirby, Associate District Judge

Page ___ of ___

Exhibit 17

*1044432307*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

SEP 12 2019

RICK WARREN
COURT CLERK
40________

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF THE ESTATE )
OF CEOLA M. LENOX, Deceased ) PB-2016-721

**ORDER ALLOWING FINAL ACCOUNT, DETERMINING HEIRS AND FINAL DECREE OF DISTRIBUTION AND ORDER DENYING FRANCIS GIBSON'S OBJECTION AND MOTION TO REMOVE PERSONAL REPRESENTATIVE**

**THIS** matter came on for hearing the 1st day of May 2019, on the Petition of Dannie Lenox, as Administrator of the Estate of Ceola M. Lenox, deceased, for final settlement of the said estate and an assignment of the assets thereof to those so entitled, and for hearing Francis Gibson's Motion in Opposition to Dannie G. Lenox Final Account and Petition for Order Allowing Final Determination of Heirs, Distribution and Discharge in Its Entirety and Francis Gibson's Motion for Order for the Removal of Dannie G. Lenox as Administrator for the Estate of Ceola M. Lenox and Sanctionable Violations of Title 58 Oklahoma Probate Procedural Rules of the Court. The Petitioner appeared in person and through his attorney, Roe T. Simmons of Smith Simmons, PLLC. Francis Gibson appeared pro se.

**THEREUPON,** the Court examines the papers and files in said cause, and from an examination thereof finds that notice of the time and place of the said hearing has been duly given by publication and mailing as provided by law and the order of said Court, and that proof of publication and mailing has been duly made and filed in said Court; and the Court does hereby approve the said notice and the said proof of publication and mailing, and finds that the jurisdiction of the Court has attached as to the subject matter of the said petition and all persons interested therein.

**THEREUPON** the said cause proceeds to further hearing before the Court, and the evidence is introduced in behalf of the said Petition. Thereupon the Court finds from the evidence

Exhibit 18

that the allegations of the said Petition are true; that Ceola M. Lenox died intestate, a resident of said county and state, leaving as her only heirs at law:

1. Francis Gibson, her daughter;
2. Johnny Fryer, her son;
3. Leon Lenox, her son;
4. Dannie Lenox, her son.

**THE COURT FURTHER FINDS** that Letters of Administration were issued to Dannie Lenox as Administrator of the said Estate on August 4, 2016; that the said estate has been fully administered in this proceeding; that all estate taxes due the United States from the said estate have been paid; that all estate taxes due the State of Oklahoma have been paid; that the said Administrator has filed his account showing his receipts and disbursements, which account is approved and allowed by the Court;

**THE COURT FURTHER FINDS** that all the costs and expenses of administration have been fully paid including attorney's fees and court costs;

**THE COURT FURTHER FINDS** that Ceola M. Lenox, died seized and possessed of the following described personal property, to-wit:

1. Cash totaling $66,068.84.

that said property has been lawfully distributed, according to the orders of the Court. Further, the Court finds the attorney's fees requested by Mr. Simmons in the amount of $16,000.00 is sustained and shall be assessed against Ms. Gibson's share of the Estate of Ceola M. Lenox.

**IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT** that the findings herein made constitute and are a part of the decree and judgment of this Court and that the said Dannie Lenox is hereby discharged as Administrator.

**IN REGARDS TO MS. GIBSON'S MOTIONS** the Court overrules Ms. Gibson's Motion in Opposition to Dannie G. Lenox Final Account and Petition for Order Allowing Final Determination of Heirs, Distribution and Discharge in Its Entirety and Ms. Gibson's Motion for Order for the Removal of Dannie G. Lenox as Administrator for the Estate of Ceola M. Lenox and Sanctionable Violations of Title 58 Oklahoma Probate Procedural Rules of the Court.

**THE HONORABLE RICHARD KIRBY**
**JUDGE OF THE DISTRICT COURT**

**Approved:**

Roe T. Simmons, OBA No. 19573
**SMITH SIMMONS, PLLC**
1900 NW Expressway, Ste 1050
Oklahoma City, OK 73118
Telephone: (405) 843-1000
Facsimile: (405) 843-1005
Email: roe@smithsimmons.com
**ATTORNEY FOR PERSONAL REPRESENTATIVE**

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

NOV - 3 2021

RICK WARREN
COURT CLERK
109

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| IN THE MATTER OF THE ESTATE OF CEOLA M. LENOX, Deceased. | ) CASE NO.: PB-2016-721<br>) Honorable Nikki K. Kirkpatrick |
|---|---|

**ORDER APPOINTING ROLLIN NASH, JR. AS SPECIAL MASTER**

The Court, on its own Motion, has determined that it is necessary to appoint a Special Master to investigate the facts and circumstances involving the prior sale of real property during this probate proceeding.

IT IS THEREFORE ORDERED BY THE COURT that Rollin Nash, Jr., be and he is hereby appointed as a Special Master in this proceeding pursuant to and in accordance with the Orders set forth herein.

IT IS FURTHER ORDERED BY THE COURT that the Special Master is hereby authorized, in his discretion, to take any and all action as the Special Master deems necessary or prudent to investigate the prior sale of all real property that has been sold at any time during this probate proceeding.

IT IS FURTHER ORDERED BY THE COURT that after the Special Master has completed his investigation, the Special Master shall file a report with the Court detailing the Special Master's findings and conclusions regarding the sale of any real property during this probate proceeding.

IT IS FURTHER ORDERED BY THE COURT that the Special Master is hereby authorized to participate in any hearings, trials, or otherwise, and may file Motions and Applications as the Special Master may deem appropriate or necessary, and may conduct

Exhibit 19

discovery, including, but not limited to, taking depositions, issuing subpoenas, interviewing witnesses, or otherwise, all to enable the Special Master to fully and thoroughly investigate all relevant facts and circumstances involving the sale of any real property during this probate proceeding.

IT IS FURTHER ORDERED BY THE COURT that the Special Master shall be paid for his services rendered at the rate of $250.00 per hour, plus the Special Master shall be entitled to reimbursement for any actual out-of-pocket expenses that may be incurred, all of which shall be considered an administrative expense of the estate.

IT IS FURTHER ORDERED BY THE COURT that this Order shall be effective November 2, 2021, regardless of when it is approved and signed by the Court.

Signed this 3rd day of November, 2021.

K. NIKKI KIRKPATRICK
NIKKI K. KIRKPATRICK
JUDGE OF THE DISTRICT COURT

APPROVED:

Rollin Nash, Jr., OBA #6584
Special Master
4101 Perimeter Center Dr., Suite 200
Oklahoma City, OK 73112
Telephone: (405) 917-5000
Facsimile: (405) 917-5005
Email: rnash@nashfirm.com

BDIXON@nashfirm.com

Bryan C. Dixon, Jr.
OBA #32768

→ Meeting on Dec 9th

I will follow up if this is still happening and/or time & place

-BD



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR 13 2022

RICK WARREN
COURT CLERK
108

IN THE DISTRICT COURT OF OKLAHOMA COUNTY

STATE OF OKLAHOMA

IN THE MATTER OF THE ESTATE )
OF CEOLA M. LENOX, Deceased ) PB-2016-721

**APPENDIX – EXHIBITS 20-21 - IN SUPPORT to AFFIDAVIT of TONYA PARKS the DAUGHTER of "HEIR/INTEREST PARTY" FRANCES A. GIBSON and has POWER of ATTORNEY to Speak on the behalf of FRANCES A. GIBSON due to her health caused by this Probate Case and has been to most of the events handled in this estate and now WANTS TO ***ALERT*** THE COURT BY HER AFFIDAVIT TO SHOW THAT THE SPECIAL MASTER'S REPORT dated APRIL 5, 2022, does not reflect a TRUE HISTORY OF THE ESTATE which we believe is ATTENED TO MISLEAD THE COURT IN PROTECTION OF OFFICERS OF THE COURT and MAY ALSO BE USED AS AN ATTEMPT TO EXTORT and EXPLOIT AN ELDERLY PERSON who is an HIER to the ESTATE**

**Please find the attached Exhibits**

**Exhibits 20-21: Events that Mr. Rollin Nash Did Not Mention in his Special Master Report:**

**Exhibit 20)** June 18, 2020, filing of Terek Wazzan's Affidavit with attachments stating that he did not purchase the property at public sale and also providing attachment of deeds, contracts, survey, Chicago Title documents, email chain between attorney Roe Simmons, Chicago Title, and myself.

**Exhibit 21)** Vacated order signed July 31, 2021.

Best Regards,

[signature]

Tonya Parks

**Certificate of Mailing**

I hereby certify that on the 13 day of April, 2022, a true and correct copy of the above and foregoing instrument was mailed by first class mail, with postage paid by me to:

Roe T. Simmons
Simmons and Associate PLLC
1900 N. W. Expressway, Suite 1050
Oklahoma City, Ok 73118

Frances Gibson
7200 Old Mill run
Fort Worth, Tx 76133

Johnny Fryer
517 Athena Dr
Columbia, SC 29223

Leon Lenox
3213 N. E. 12th St
Oklahoma City, Ok 73117

Dannie Lenox
3806 N. Shadybrook Dr
Midwest City, Ok 73110

I obtained these addressed from the special master's report

Tonya Parks

  

STATE OF OKLAHOMA

COUNTY OF OKLAHOMA )

AFFIDAVIT

I Tarek Wazzan, being duly sworn hereby depose and state the following, that I have personal knowledge of the following matters involving a property purchased and sold by my LLC:

1) At some point in the summer of 2017 I received a communication from a wholesaler named Devell Hubbard, who asked me if I was interested in purchasing the property located at 2520 NE 16th Street in Oklahoma City.
2) Mr. Hubbard indicated that he had purchased the property for ten thousand dollars around July 20, 2017, from Danny Lenox. Attachment "1."
3) My LLC offered 6,000 dollars to Mr. Hubbard, for the rights to own that purchase agreement. My company purchased that existing contract from Dannie Lenox to Devell Hubbard, by executing an "Assignment" that Mr. Hubbard signed. Attachment "2."
4) It was my understanding that at that point, my LLC could do with the property as it wished, given the fact that attachments 1 and 2 were signed, and Mr. Lenox had signed away control and ownership of the property.
5) On July 27, 2017, I notified Chicago Title that I was purchasing the property at 2520 NE 16, for 16,000 dollars, with 6, 000 dollars to be the Assignment fee payable to Devell Hubbard per Exhibit 2, and that Mr. Hubbard would be coming in that day, on July 27, 2017 to get the escrow file open. See Attachment 3 (email to Chicago Title).
6) Mr. Hubbard went to Chicago Title and opened up an escrow account as the initial Buyer from Dannie Lenox, account number 714051701245. Attachment 4 (showing Devell Hubbard as Buyer and Dannie Lenox as Seller).
7) It appears Chicago Title, on July 27, 2017 made a survey order request for that escrow, showing *Devell Hubbard as the Buyer, and wanted it done by August 3, 2017. Attachment 5.*
8) On or around August 2, 2017 I then notified Chicago Title that my company would be reselling the property, as I executed a contract on August 2, 2017 with an out of state buyer, providing Chicago Title all the information. Attachment 6. The amount of that re-sale was about 34,000 dollars.
9) The following day on August 3, 2017, the Mortgage Inspection was finalized by Hale & Associates, showing that Devell Hubbard was the Buyer. Attachment 7.
10) On August 3, 2017, Chicago Title opened a separate escrow for the re-sale transaction, account number 714051701245, showing my LLC selling to Plains State Holdings. Attachment 8.
11) My LLC authorized Chicago Title to execute any documents on our behalf and we trusted that they would act appropriately. Attachment 9.
12) Chicago Title notarized a deed for my LLC's resale of the property on or about August 17, 2017, with the buyer being Plains State, and Chicago Title issued a form when my LLC received the proceeds from the sales transaction to Plains State around August 17, 2017, identifying my LLC as able to execute the sales document, Attachment 10.

Exhibit 21

13) My understanding is that title passed to Plains State at that time [illegible] the deed my company [illegible] August 17, 2017.

14) I was never notified of any auction on September 5, 2017 at Roe Simmons' office, regarding the property, nor did Wazzan Properties LLC participate in any such auction regarding the house at 2520 NE 16th Street, given the fact we had already re-sold the property.

15) I trusted that Chicago Title performed all due diligence regarding this transaction, as they have attorneys in house to review real estate title purchases. In fact, my LLC (our managers) had given Chicago Title the ability to sign documents on our behalf to finalize the re-sale transaction appropriately. Attachment 9.

16) Neither Dannie Lenox nor his attorney ever asked me to provide to any court the fact that Plains State had offered on August 2, 2017 the amount of 34,000 dollars for that property.

17) The email chain that I have seen (Attachment 11) indicates that Mr. Lenox knew about the double escrow situation with the higher pre-existing offer from Great Plains, as his attorney appears to have been communicating directly with Chicago Title.

18) Both Mr. Lenox and his attorney appear to have had full knowledge of the fact my company had found a buyer willing to pay a price higher than 16,000 dollars, and that such sales contract occurred in August of 2017, especially if they were working with Chicago Title.

19) I am personally aware that the representative of Ceola Lenox's estate (Mr. Lenox) knew about my company and about the re-sale amount being 34,000 dollars, because I am in possession of two documents Mr. Lenox signed and notarized, acknowledging his full knowledge and approval of my LLC's prior sale amount of 34,000 dollars.

20) First, I have a Seller's lien affidavit (Attachment 12) that Mr. Lenox signed and acknowledges in paragraph 4 that he was aware Wazzan Properties LLC had a previous contract of sale for the property. This bears a notary stamp from Chicago Title.

21) Secondly, I have a copy of a "Double Escrow Disclosure Acquisition Escrow" form from Chicago Title, that Mr. Dannie Lenox signed (Attachment 13), indicating his knowledge of the concurrent escrow account with the previous sale to Great Plains, and the fact a pre-existing higher offer had been accepted by my company in August of 2017. This document states:

> "*...Buyer [Wazzan Properties LLC] herein is selling the subject property at an increased purchase price... Seller [Dannie Lenox] acknowledges that proceeds from the Resale Escrow transactions are the source of all or part of the purchase price herein*.... With full knowledge of the foregoing..."

22) Mr. Lenox was the Seller, and therefore knew that previously accepted offer of a higher purchase price (from Great Plains) was funding the wholesale transaction of the 10,000 purchase price and 6,000 assignment fee, so that he had to be fully aware that the offer from Great Plains to my company was higher than 16,000 dollars, and before September 5, 2017.

23) I do not know why Mr. Lenox executed a deed on October 18, 2017 (Attachment 14), since he had previously signed on July 20, 2017 a contract of sale to Devell Hubbard, which my company purchased for 6,000 dollars ("Assignment fee") on July 26, 2017, and as he knew that my previous resale of the property on August 2, 2017, was funding both the contract (Attachment 1) and the 6,000 fee. Attachment 13.



This I swear to the best of my recollection
Wazzan Properties LLC
By Tarek Wazzan, manager

NOTARY ATTESTATION

On this date appeared Tarek Wazzan, who presented proper identification and confirmed that the statements above are true and accurate to the best of his knowledge and recollection.

Date: 6/18/20 Notary Brittany McCoy

My commission expires 4-14-2023

Stamp: BRITTANY MCCOY Notary Public State of Oklahoma Commission #09006911 Exp: 04/14/23

# Real Estate Purchase and Sale Agreement

NOTICE: This is a legal and binding Agreement for the purchase and sale of property. It is appropriate for most BUT NOT ALL such transactions. If this form does not appear to either Buyer or Seller to be appropriate for a particular transaction, you are urged to discuss the purchase or sale with an attorney BEFORE YOU SIGN. Most, but not all, provisions of this Agreement are subject to negotiation prior to execution.

1. THIS Agreement to buy and sell real property is made between:

SELLER: [illegible] of Estate of Ceola M Zerop ______
(Names of Sellers) hereinafter referred to as "Seller" SS/Tax ID (Optional)

ADDRESS: 2520 NE 16th oklahoma city ok 73117
(Address of Sellers) Town/City State ZIP

BUYER: Dovell Hubbard
Dovell Hubbard
(Names of Buyers) hereinafter referred to as "Buyer" SS/Tax ID (Optional)

ADDRESS: 6314 W meridian oklahoma city ok. 73112
(Address of Buyers) Town/City State ZIP

Seller agrees to sell and Buyer agrees to buy for the purchase price and upon the terms and conditions stated herein the real property with all buildings and other improvements thereon and all appurtenances thereto, in the same condition as they were on the date of Buyer's signature, reasonable wear and tear excepted.

2. REAL PROPERTY TO BE PURCHASED:

a) Street Address: ________ 2520 Ne 16th St ________

b) City/Town: ________ Oklahoma city

Oklahoma STATE ________ ZIP ___ 73117 ________

c) Described as: ________

3. INCLUDED IN SALE PRICE: The Real Property shall include all items permanently attached to the property on the date Buyer signed this Agreement and: all screens, storm windows, TV antennas, awnings, security, fire and smoke alarms, garage door openers with controls, venetian blinds, curtain/drapery rods, wall to wall carpet, plumbing and heating fixtures (except portable heaters or rented water heaters), light fixtures, shrubbery and plants. Unless mentioned below, all personal property is excluded.

ADDITIONAL PERSONAL PROPERTY, if any, to be included:

________

________

There is no leased personal property except:

________

4. PURCHASE PRICE $ ~~[illegible]~~ 10,000 DH (initialed) payable as follows:

a) By Initial Deposit submitted herewith receipt of which is hereby acknowledged ........ $ 1 ________

b) By additional Deposit due upon Sellers Acceptance ........ $ 1 ________

c) By Proceeds of Financing as specified in paragraph 6 below ........ $ ________

d) By ________ $ ________

e) Balance to be paid by certified check or bank check at Closing ........ $ ~~[illegible]~~ (initialed)

TOTAL PRICE TO BE PAID (Must equal "Purchase Price") ........ $ ~~[illegible]~~ $10,000 DH

5. DEPOSITS: The Deposit(s) specified above shall be made at the stated times. All Deposits shall be made by check, payable to the Listing Broker or the attorney/title company conducting the closing. All checks are subject to collection and failure of collection shall constitute a default. Except at time of closing, when the deposit shall be delivered to Seller or Seller's designee, the Listing Broker shall not pay the Deposit to anyone without the written consent of all parties to this Agreement. In the event any deposit funds payable pursuant to this Agreement are not paid by Buyer, Seller may give written notice of such failure to Buyer. If such notice is given and a period of 3 (three) days pass without Buyer paying the Deposit owed, Seller may declare Buyer in default and shall have the remedies set forth in Paragraph 14.

Attachment 1

Initials ____DH ______________ Page ___ of ___

16. COMMON INTEREST COMMUNITY: If the property is a unit in a condominium or other common interest community, Seller will deliver the resale documents in accordance with the local statutes and customs.

17. LISTING BROKER: ______________________________ PH#: ______________________
_______Dual Agent - If the Listing Agent is acting as a Dual Agent, a CONSENT FOR DUAL AGENCY FORM SHALL BE ATTACHED to this Agreement.

COOPERATING BROKER PH#______________ ___ Buyer Agent ___ Sub Agent

18. PROPERTY CONDITION REPORT: Seller and Buyer acknowledge that if a written residential property condition report is required by statute and Seller has not provided Buyer with the required report, Seller will credit Buyer with the statutory fee at closing.

19. EQUAL HOUSING RIGHTS: This Agreement is Subject to all local statutory laws prohibiting discrimination in commercial and residential real estate transactions.

20. ADDENDUMS: The following attached Addenda and/or Riders are part of this Agreement:
___Seller's Property Condition Disclosure; ___ Agency Disclosure; ___Title; ___Lead hazards
___Dual Agency Consent ___Multi-family or Commercial Property Rider ___Other ______________________

21. ADDITIONAL TERMS AND CONDITIONS: ______________________________________________

22. FAX TRANSMISSION: The parties acknowledge that this Agreement and any addenda or modification and/or any notices due hereunder may be transmitted between them by facsimile machine, e-FAX, or via email and the parties intend that a faxed document containing either the original and/or copies of the parties' signatures shall be binding and of full effect.

23. ASSIGNABILITY: (CHECK ONE) Buyer _x_ may assign and thereby be released from any further liability under this contract; _ May assign but not be released from liability under this contract; _ or _ May not assign this contract.

23. COMPLETE AGREEMENT: This Agreement contains the entire agreement between Buyer and Seller concerning this transaction and supersedes any and all previous written or oral agreements concerning the Property. Any extensions or modifications of this Agreement shall be in writing signed by the parties.

24. NOTICE: Any notice required or permitted under the Terms of this Agreement by Buyer or Seller shall be in writing addressed to the Party concerned using the address stated in Paragraph 1 of this Agreement or to such party's attorney or to the party's Listing Broker or Cooperating Broker designated in paragraph 17.

25. BUYER AND SELLER acknowledge receipt of a copy of this Agreement upon their signing same.

26. TIME TO ACCEPT: Seller shall have until ___________7/22/2017______________________ to accept this Agreement.

27. SIGNATURES:

| Buyer's Signature | Date | Seller's Signature | Date |
|---|---|---|---|
| Darrell Hubbard | 7/18/2017 | | |
| [signature] | 7/20/17 | [signature] | 7-20-2017 |
| | | | |

Page ___ of ___

Initials_____DH_______________ Page___of ___

5. FINANCING CONTINGENCY: DH

a) Amount $________20,000.00 $10,000____________; b) Maximum Initial Interest Rate_______%

c) Term: ___years; d) Commitment Date______________________

e) Type: ___Conventional Fixed ___Variable ___FHA ___VA ___CHFA ___Other__________X____________________

Buyer's obligation is contingent upon Buyer obtaining financing as specified in this paragraph. Buyer agrees to apply for such financing immediately and diligently pursue a written mortgage commitment on or before the Commitment Date.

f. If Buyer is unable to obtain a written commitment and notifies Seller in writing by 5:00 PM on said Commitment Date, this Agreement shall be null and void and any Deposits shall be immediately returned to Buyer. Otherwise, the Financing Contingency shall be deemed satisfied and this Agreement shall continue in full force and effect.

7. CONDITION OF PREMISES: Buyer represents that Buyer has examined the property and is satisfied with the physical condition subject to the Inspection Contingency if applicable. Neither Seller nor any representative of the Seller or Buyer has made any representation or promise other than those expressly stated herein which Buyer has relied upon in making this Agreement.

8. INSPECTION CONTINGENCY:

a) Inspections shall be completed and results reported to Seller on or before :__________________8/15/2017____________________

b) Seller agrees to permit Buyer's designees to inspect the real property during the period from Seller's acceptance until the date set forth in (a) above. If Buyer is not satisfied with the physical condition of the real property, and so notifies Seller in writing prior to the date specified in (a) above, then Buyer may at Buyer's option terminate this Agreement. Buyer may give Seller the option to correct the conditions that are unsatisfactory to the Buyer. Should Buyer elect to terminate this Agreement or Seller is unwilling to correct any unsatisfactory conditions the Buyer shall notify Seller on or before :________8/15/2017_____________ of Buyer's election to terminate this Agreement and if terminated this Agreement shall be null and void and any deposit monies paid hereunder shall be returned immediately to Buyer and neither Buyer nor Seller shall have any claims against each other under the terms of this Agreement. If Buyer fails to notify Seller as provided herein, this contingency shall be deemed satisfied and this Agreement shall continue in full force and effect.

c) If initialed below, Buyer does NOT choose to have any inspections performed and WAIVES any rights to object to any defects in the property that would have been disclosed by a full and complete inspections.

9. STATEMENT RE: LEAD BASED PAINT: The parties acknowledge that dwelling units constructed prior to 1978 are likely to contain lead-based paint which could create a health hazard. In the event that the real property which is the subject of this Agreement consists of or contains a residential unit built prior to 1978, the parties agree that each party has received, reviewed, signed and annexed hereto a completed Disclosure and acknowledgment Form re: Lead-Based Paint as required by federal HUD/EPA disclosure regulations.

10. OCCUPANCY, POSSESSION: CLOSING DATE: __8/25/2017__________________

Unless otherwise stated herein, Buyer shall receive exclusive possession and occupancy with keys on Closing Date. The Real Property shall be maintained by Seller until time of Closing and shall be transferred in broom clean condition, free of debris. Buyer shall have the right to a walk-through inspection of the Property within 48 hours prior to the Closing Date. Closing shall be held at an office to be determined by Buyer's attorney in the county where the property is located or at such place as designated by Buyers mortgage lender.

11. WARRANTY DEED: Seller agrees to convey fee simple title of the Real Property to Buyer by a good and sufficient Warranty Deed subject only to any and all provisions of any ordinance, municipal regulation, public or private law, restrictions and easements as appear of record, if any, provided they do not affect marketability of title, current real estate taxes, water and sewer charges, and current water and sewer assessment balance, if any; except in those cases where a fiduciary's Deed or other form of court ordered deed may be required to pass title. Seller warrants that Seller has no notice of any outstanding violations from any town, city or State agency relating to the property.

12. MARKETABLE TITLE: Title to be conveyed by Seller shall be marketable as determined by the Standards of Title of the Connecticut Bar Association now in force. Seller further agrees to execute such documents as may be reasonably required by Buyer's title insurance company or by Buyer's mortgage lender. Should Seller be unable to convey Marketable Title as defined herein, Buyer may accept such Title as Seller can convey, or may reject the Unmarketable Title, receive back all Deposit money, and declare this Agreement null and void. Upon such rejection and repayment to Buyer of all sums paid on account hereof, together with the reasonable fees for the examination of title, this Agreement shall terminate and the Parties hereto shall be released from all further claims against each other.

13. ADJUSTMENTS: Real Estate Taxes will be adjusted as of the Closing Date. All other adjustments, including Association fees, fuel oil, water and sewer usage, interest on sewer or water assessments, utilities, rent, if any, and leases regarding funds at closing and unavailability of releases at closing and like matters shall be adjusted pro rata as of the Closing Date in accordance with the Residential Real Estate Closing Customs of Connecticut, as adopted by the Connecticut Bar Association, now in force. Rent security deposits, if any, shall be credited to Buyer by Seller on the Closing Date and shall include, any interest accrued to the tenant.

14. BUYER'S DEFAULT: If Buyer fails to comply with any Terms of this Agreement by the time set forth for compliance and Seller is not in default, Seller shall be entitled to all initial and additional deposit funds provided for in section 4, whether or not Buyer has paid the same, as liquidated damages and both parties shall be relieved of further liability under this Agreement. If legal action is brought to enforce any provision of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees.

15. RISK OF LOSS, DAMAGE: All risk of loss or damage to said property by fire, theft or other casualty until delivery of Deed shall be upon the Seller. In the event of loss or damage independently appraised at more than $5,000.00, Buyer shall have the option to receive any insurance payment on account of said damage and take Title, or rescind this Agreement and receive back all Deposit money paid. In such case all rights and obligations of the parties under this Agreement shall terminate.

# Assignment of Contract Agreement

In consideration of the sum of 6,000 (Assignment Fee), Revell Hubbard (Assignor) hereby assigns and otherwise transfers to Warren Properties LLC (Assignee) all rights, title, and interest held by Assignor in and to the contract described as follows:

Contract dated 7, 2017, between 26 and and concerning the property located at 2520 NE 10th st. Oklahoma City, Ok 73117.

Assignor warrants and represents that said contract is in full force and effect and is fully assignable. Assignor further warrants that it has the full right and authority to transfer said contract and that contract rights herein transferred are free of lien, encumbrance or adverse claim. Said contract has not been modified and remains on the terms contained therein.

Assignee hereby assumes and agrees to perform all remaining obligations of Assignor under the contract and agrees to indemnify and hold Assignor harmless from any claim or demand resulting from non-performance by Assignee. Assignee shall be entitled to all monies remaining to be paid under the contract, which rights are also assigned hereunder.

The assignment fee shall be paid at the time of closing to assignor in the form of cash, official check or wire transfer, and recorded on the hud-1 settlement statement.

Closing shall take place no later than August 15th.

Assignee has given a non-refundable deposit of $ 500.00 to be held in escrow at Chicago Title Oklahoma.

It is hereby acknowledged by Assignee that this Assignment of Contract Agreement and the original contract for Sale and Purchase is not assignable by Assignee without the express written authorization of Assignor, authorization of which may be withheld for any reason by assignor.

This Assignment shall become effective as of the date last executed and shall be binding upon and inure to the benefit of the parties, their successors and assigns.

[signature] 7/27/17

Assignor Date

[signature] 7/27/17

Assignee Date

Attachment 2

**Smith, Darel**

From: Garcia, Valerie
Sent: Thursday, July 27, 2017 3:36 PM
To: Smith, Darel
Subject: 7140517012245 Hubbard/Zenox 2520 NE 16th St
Attachments: 2520 NE 16th Assignment.pdf

New order from Tarek.

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com

From: Tarek [mailto:tarekinvestments@gmail.com]
Sent: Thursday, July 27, 2017 2:32 PM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: Here is my signed document ("2520 Ne 16th Assignment")

Hi Val,

I am buying this property from a wholesaler named Devell. I didn't put the assignment amount because I want to make sure the whole cost of purchase will be $16,000. He has it under contract for 10k and he is coming to sign today and give you the original contract. Thank you!

Thank you,
Tarek Wazzan
405-414-5944

NOTICE: The information contained in this message is proprietary and/or confidential and may be privileged. If you are not the intended recipient of this communication, you are hereby notified to: (i) delete the message and all copies; (ii) do not disclose, distribute or use the message in any manner; and (iii) notify the sender immediately.

Attachment 3

Escrow Officer: Kaitlin Howard KaitlinH@ctt.com

*SEE ORDER NOTES*

Processor / Assistant: Valerie Garcia valerie.garcia@ctt.com

Source of Business: Kevo Properties

Marketing Rep(s): Christopher Morris

| Transaction Type | Order Type | Product Type | Policy Type |
|---|---|---|---|
| Purchase | Title & Escrow | Purchase/Resale | Owners Only |

Order Opened Date: July 27, 2017
Order Opened By: Darci Smith

Product Due: August 8, 2017
Closing Date: August 15, 2017
Disbursement Date: August 15, 2017

Sales Price: $ 10,000.00

Loan Amount(s): $ 0.00

Policy Code: OKCTCT-01 Std Owner

Owners Policy(ies):
ALTA Owner's Policy 2006
Liability: $ 10,000.00
Premium: $ 215.00

Loan Policy(ies):

Order Status: In process
Title Status:
Escrow Status: In process

Underwriter: Chicago Title Insurance Company
Related Order(s):

**PROPERTY(IES):**

2520 NE 16th St, Oklahoma City, OK 73117

Tax/Map ID(s): 020050140

County: Oklahoma
Subdivision: Hassman Heights Add
Property Type: Single Family

Brief Legal: Lot(s): 15-16 Block: 1 Subdivision: Hassman Heights Add Tax/Map ID(s): 020050140

**BUYER:**

Name: Devell Hubbard
AKA:
Home: Work: (405)414-4178
Cell: Fax:
Email:

Current Address: 6314 N Meridian, Oklahoma City, OK 73112
Forwarding Address: 2520 NE 16th St, Oklahoma City, OK 73117

**SELLER:**

Estate of Ceola M Zenox

Phone: Fax:
Email:

Danny Lenox
Email:

**LISTING AGENT: (Source of Business)**

Kevo Properties KEVO5225
5225 N. Shartel, #101
Oklahoma City, OK 73118
Phone: (405)494-7222 Fax:
Email:
Reference No.:
Marketing Rep(s):
Christopher Morris

Contact: Tarek Wazzan
5225 N. Shartel, #101
Oklahoma City, OK 73118
Phone: Fax:
Cell: (405)414-5944
Email: tarekinvestments@gmail.com

Attachment 4

| | |
|---|---|
| Phone: (800)721-5558 Fax:<br>Email:<br>Reference No.: | |

**SETTLEMENT AGENT:**

| | |
|---|---|
| Chicago Title Oklahoma Co. CTO-405<br>5517 N Classen Blvd., Suite 200<br>Oklahoma City, OK 73118<br>Phone: 405-848-2140 Fax: 405-848-2305<br>Reference No.: | Contact: Kaitlin Howard, Escrow Officer<br>5517 N Classen Blvd., Suite 200<br>Oklahoma City, OK 73118<br>Phone: 405-607-8352 Fax:<br>Cell:<br>Email: KaitlinH@ctt.com |

**SURVEYOR:**

| | |
|---|---|
| Hale & Associates Survey HALO1601<br>1601 S.W. 89th, Suite C-200<br>Oklahoma City, OK 73159<br>Phone: (405)681-0174 Fax:<br>Email: survey@halesurvey.com<br>Reference No.:<br>Marketing Rep(s):<br>David Patrick | |

**TITLE COMPANY:**

| | |
|---|---|
| Chicago Title Oklahoma Co. CHIO3401<br>3401 NW 63rd, Suite 300<br>Oklahoma City, OK 73116<br>Phone: 405-840-9191 Fax: 405-843-0568<br>Email: LenderExpress@ctt.com<br>Reference No.: | |

**UNDERWRITER:**

| | |
|---|---|
| Chicago Title Insurance Company CT<br>P.O. Box 45023<br>Jacksonville, FL 32232-5023<br>Phone: (800)654-7041 Fax:<br>Reference No.: | |

**ORDER NOTES:**

| | | |
|---|---|---|
| 07/27/2017 | Darci Smith | Abstract out per GET, last ordered First American 6/24/17 |
| 07/27/2017 | Darci Smith | Assignment fee $6,000 |
| 07/27/2017 | Darci Smith | Assignee Wazzan Properties LLC |



5817 N Classen Blvd., Suite 200
Oklahoma City, OK 73118
Phone: 405-848-2140 / Fax: 405-848-2308

## SURVEY ORDER REQUEST

Hale & Associates Survey
1601 S.W. 89th, Suite C-200
Oklahoma City, OK 73159

Phone: (405)681-0174 Fax:

Date: July 27, 2017
File No.: 714051701245-KDH

☑ Mortgage Inspection Order
☐ Pin Survey
☐ Pre-Construction

Ordered by: Valerie Garcia
Office: Chicago Title Oklahoma Co.
Need Date: August 3, 2017
Date Ordered: July 27, 2017
Buyers: Devell Hubbard
Property: 2520 NE 16th St
City: Oklahoma City
County: Oklahoma
Legal: Lot(s): 15-16 Block: 1 Subdivision: Hassman Heights Add Tax/Map ID(s): 020050140
Notes:

Attachment 5

## Standard Purchase and Sale Agreement

This agreement is made this 2nd day of August 20 17

between Seller(s) RR Homes LLC AN Wazzan Properties

and Buyer(s) plain state holdings

and/or assigns.

Seller agrees to sell and buyer agrees to buy the following described real property together with all improvements and fixtures and the personal property described below:

Street Address 2520 ne 16th st.

City, State, Zip: Oklahoma City, Ok

Legal description:

The purchase price to be paid as follows:

| | |
|---|---|
| Earnest Money Deposit | $ 1,000.00 |
| Cash to Seller at Closing | $ 35,000.00 |
| Total Purchase Price | $ 35,000.00 |

1. EARNEST MONEY to be deposited with a licensed title company or attorney within 48 hours of acceptance and ratification of offer.

2. PRORATIONS, IMPOUNDS & SECURITY DEPOSITS: Loan interest, property taxes, insurance, and rents shall be prorated as of the date of closing. All security deposits shall be transferred to buyer at closing. All impound accounts for taxes and insurance are included in the purchase price and shall be transferred to buyer at closing. Any shortage in these accounts shall be charged to seller at closing.

3. CLOSING DATE AND TRANSFER OF TITLE: This transaction shall close on or before August 20th, 20 17. Closing will be held at Chicago Title Oklahoma and Seller(s) agree to transfer marketable title free and clear of all encumbrances except those listed and pay any required state taxes or stamps required to record deed and mortgage

4. DAMAGE TO PROPERTY: Seller shall maintain property in its current condition and keep it insured against all loss until closing. In the event of destruction covered by insurance, buyer may elect to close and collect the insurance proceeds.

5. DEFAULTS: If buyer defaults under this contract, any and all monies deposited by buyer(s) shall be retained by seller as full liquidated damages. If seller defaults, buyer may pursue all remedies allowed by law and seller agrees to be responsible for all costs incurred by buyer as a result of sellers default.

6. SUCCESSORS AND ASSIGNEES: The terms and conditions of this contract shall bind all

Attachment 6

successors, heirs, administrators, trustees, executors and assignees of the respective parties.

7. INSPECTION:(a) Buyer shall have 0 days from Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire and utilities service shall be made available by the Seller during the Inspection Period, (b) Buyer shall be responsible for prompt payment for such inspections and repair of damage to and restoration of the Property resulting from such inspections; and (c) if Buyer determines, in Buyer's sole discretion, that the condition of the Property is not acceptable to Buyer, Buyer may cancel this Contract by delivering written notice of such election to Seller prior to the expiration of the inspection Period. If Buyer timely cancels this Contract, the deposit(s) paid shall be immediately returned to Buyer; thereupon, Buyer and Seller shall be released of all further obligations under this Contract.

8. In the event of any title related issues, Buyer and Owner agree to extend this STANDARD OFFER TO PURCHASE REAL ESTATE as necessary to allow time for title correction to occur and a proper closing to be scheduled for all parties. Taxes are prorated at closing.

9. Closing: Seller Will Pay: Seller will pay 0% Buyer will pay 100%

10. There are no other agreements, promises or understandings between these parties except as specifically set forth herein. This legal and binding Agreement will be construed under Oklahoma Law and if not understood, parties should seek competent legal advice. If any signature is faxed or digitally produced it shall have the same legal force and effect as an original ink signature.

11. Survival of Agreement: This Agreement shall survive the closing, execution and delivery of the Warranty Deed, as agreed herein by the undersigned. Buyer intends to buy, sell, rent or trade for a profit.

12. ADDITIONAL TERMS AND CONDITIONS:

As-Is condition

The undersigned have read the above information, understand it and verify that it is correct.

Date: 8/2/17 Date:

Seller: [signature] Buyer: [signature]

Seller: Buyer:

## Standard Purchase and Sale Agreement

This agreement is made this 2nd day of August, 2017

between Seller(s) RK Homes LLC

and Buyer(s) ______

and/or assigns.

Seller agrees to sell and buyer agrees to buy the following described real property together with all improvements and fixtures and the personal property described below:

Street Address 2520 ne 16th st

City, State, Zip: Oklahoma City, Ok

Legal description: ______

The purchase price to be paid as follows:

| | |
|---|---|
| Earnest Money Deposit | $ 1,000.00 |
| Cash to Seller at Closing | $ 35,000.00 |
| Total Purchase Price | $ 35,000.00 |

**1. EARNEST MONEY** to be deposited with a licensed title company or attorney within 48 hours of acceptance and ratification of offer.

**2. PRORATIONS, IMPOUNDS & SECURITY DEPOSITS:** Loan interest, property taxes, insurance, and rents shall be prorated as of the date of closing. All security deposits shall be transferred to buyer at closing. All impound accounts for taxes and insurance are included in the purchase price and shall be transferred to buyer at closing. Any shortage in these accounts shall be charged to seller at closing.

**3. CLOSING DATE AND TRANSFER OF TITLE:** This transaction shall close on or before August 20th, 20 17. Closing will be held at Chicago Title Oklahoma and Seller(s) agree to transfer marketable title free and clear of all encumbrances except those listed and pay any required state taxes or stamps required to record deed and mortgage

**4. DAMAGE TO PROPERTY:** Seller shall maintain property in its current condition and keep it insured against all loss until closing. In the event of destruction covered by insurance, buyer may elect to close and collect the insurance proceeds.

**5. DEFAULTS:** If buyer defaults under this contract, any and all monies deposited by buyer(s) shall be retained by seller as full liquidated damages. If seller defaults, buyer may pursue all remedies allowed by law and seller agrees to be responsible for all costs incurred by buyer as a result of sellers default.

**6. SUCCESSORS AND ASSIGNEES:** The terms and conditions of this contract shall bind all

successors, heirs, administrators, trustees, executors and assignees of the respective parties.

7. INSPECTION: (a) Buyer shall have 0 days from Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire and utilities service shall be made available by the Seller during the Inspection Period; (b) Buyer shall be responsible for prompt payment for such inspections and repair of damage to and restoration of the Property resulting from such inspections; and (c) if Buyer determines, in Buyer's sole discretion, that the condition of the Property is not acceptable to Buyer, Buyer may cancel this Contract by delivering written notice of such election to Seller prior to the expiration of the Inspection Period. If Buyer timely cancels this Contract, the deposit(s) paid shall be immediately returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract.

8. In the event of any title related issues, Buyer and Owner agree to extend this STANDARD OFFER TO PURCHASE REAL ESTATE as necessary to allow time for title correction to occur and a proper closing to be scheduled for all parties. Taxes are prorated at closing.

9. Closing: Seller Will Pay: Seller will pay 0% Buyer will pay 100%

10. There are no other agreements, promises or understandings between these parties except as specifically set forth herein. This legal and binding Agreement will be construed under Oklahoma Law and if not understood, parties should seek competent legal advice. If any signature is faxed or digitally produced it shall have the same legal force and effect as an original ink signature.

11. Survival of Agreement: This Agreement shall survive the closing, execution and delivery of the Warranty Deed, as agreed herein by the undersigned. Buyer intends to buy, sell, rent or trade for a profit.

12. ADDITIONAL TERMS AND CONDITIONS:

As-is condition

The undersigned have read the above information, understand it and verify that it is correct.

Date: 8/2/17 Date: ____________________

Seller: [signature] Buyer: ____________________

Seller: ____________________ Buyer: ____________________

**Hale & Associates Survey**
Penn Park Center, Building C
1601 SW 89th Street, Suite C-200
Oklahoma City, OK 73159
Tel: (405) 686-0174 Fax: (405) 681-4881

# Invoice

| Date | Survey / Inv. # |
|---|---|
| 8/3/2017 | 20176190 |

Bill To: Deliver To:

Chicago Title Oklahoma
Nichols Hills
5617 N Classen Blvd St 200
Oklahoma City, OK 73118

| Sec. / Qtr. | Twn. / Rng. | Alias No.: | Need By: | Ordered By | File No. | Buyer |
|---|---|---|---|---|---|---|
| | | 117 | RUSH | Valerie Garcia | 714051701245 | Hubbard |

| Service / Description | Amount |
|---|---|
| Mortgage Inspection<br>All of Lots Fifteen (15) and Sixteen (16), in Block One (1), of Hessman Heights, an Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof. Known as 2520 NE 16th St... | 140.00 |

**Total:** $140.00

IN CASE OF QUESTIONS ABOUT YOUR INVOICE:
If this invoice is incorrect or additional information is needed, please contact us within 30 days of the Invoice Date.
Hale & Associates Survey Co., Inc. reserves the right to file Mechanics' Lien for collection of unpaid accounts.

Attachment 7

NOTE: [illegible]

## Mortgage Inspection Report

I, Curtis Lee Hale, a Registered Land Surveyor, do hereby state that a careful inspection has been made under my supervision on the following described property, to wit:

All of Lots Fifteen (15) and Sixteen (16), in Block One (1) of [illegible] Heights, an Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof. Known as 2520 NE 16th St.

[illegible] Dated at Oklahoma City, Oklahoma on this 7th of August, 2017.

Licensed Land Surveyor [illegible] Signature

Inspection Number: [illegible]
Title Company: [illegible]
File Number: 71605170124S
Buyer: [illegible]

Hale & Associates Survey Company

[illegible]



CHICAGO TITLE
OKLAHOMA

OPEN ORDER SHEET
(ORDER SUMMARY) WITH NOTES

Title Officer/Examiner:

714051701271

Escrow Officer: Kaitlin Howard
KaitlinH@ctt.com

*SEE ORDER NOTES*

Processor / Assistant: Valerie Garcia
valerie.garcia@ctt.com

Source of Business: Kevo Properties

Marketing Rep(s): Christopher Morris

Purchase | Title & Escrow | Purchase/Resale | Simultaneous

Order Opened Date: August 3, 2017
Order Opened By: Darci Smith

Product Due: August 17, 2017
Closing Date: August 20, 2017
Disbursement Date: August 20, 2017

Sales Price: $ 35,000.00

Loan Amount(s): $ 0.00

Policy Code: OKCTCT-01 Std Own / Std Loan

Owners Policy(ies):
ALTA Owner's Policy 2006
Liability: $ 35,000.00
Premium: $ 215.00

Loan Policy(ies):
ALTA Loan Policy 2006
Liability: $ 0.00
Premium: $ 0.00

Order Status: In process
Title Status:
Escrow Status: In process

Underwriter: Chicago Title Insurance Company
Related Order(s):

2528 NE 16th St, Oklahoma City, OK 73117

Tax/Map ID(s): 020050140

County: Oklahoma
Subdivision: Hassman Heights Add
Property Type: Single Family

Brief Legal: Lot(s): 15-16 Block: 1 Subdivision: Hassman Heights Add Tax/Map ID(s): 020050140

Plain State Holdings
Phone: Fax:
Email:

Raya 917-797-9944

RR Mentes LLC
Phone: Fax:
Email:

Wazzan prop. Tarek &

Kevo Properties KEVO5225
5225 N. Shartel, #101
Oklahoma City, OK 73118
Phone: (405)464-7222 Fax:
Email:
Reference No.:
Marketing Rep(s):
Christopher Morris

Contact: Tarek Wazzan
5225 N. Shartel, #101
Oklahoma City, OK 73118
Phone: Fax:
Cell: (405)414-6944
Email: tarekinvestments@gmail.com

Open Order Sheet (Order Summary) with Notes
SBCORP0401.rev (Updated 04.05.17)

Printed: 08.08.17 @ 10:18 AM by
OK-CT-FOAB-02371.405485-714051701271

Attachment 8

# OPEN ORDER SHEET
## (ORDER SUMMARY) WITH NOTES
(continued)

| | |
|---|---|
| Bancserv BANY22800<br>22806 Savi Ranch Parkway, Suite 208<br>Yorba Linda, CA 92887<br>Phone: (800)721-6568 Fax:<br>Email:<br>Reference No.: | |
| Chicago Title Oklahoma Co. CTO-406<br>6617 N Classen Blvd., Suite 200<br>Oklahoma City, OK 73116<br>Phone: 405-848-2140 Fax: 405-818-2305<br>Reference No.: | Contact: Kaitlin Howard, Escrow Officer<br>6617 N Classen Blvd., Suite 200<br>Oklahoma City, OK 73116<br>Phone: 405-607-6352 Fax:<br>Cell:<br>Email: KaitlinH@ctt.com |
| Hale & Associates Survey HALO1601<br>1601 S.W. 89th, Suite D-200<br>Oklahoma City, OK 73159<br>Phone: (405)681-0174 Fax:<br>Email: survey@halesurvey.com<br>Reference No.:<br>Marketing Rep(s):<br>David Petrick | |
| Chicago Title Oklahoma Co. CHIO3401<br>3401 NW 63rd, Suite 300<br>Oklahoma City, OK 73116<br>Phone: 405-840-9191 Fax: 405-843-0958<br>Email: LenderExpress@ctt.com<br>Reference No.: | |
| Chicago Title Insurance Company CT<br>P.O. Box 45023<br>Jacksonville, FL 32232-5023<br>Phone: (800)654-7041 Fax:<br>Reference No.: | |

| | | |
|---|---|---|
| 09/03/2017 | Darril Smith | this is a double escrow flip with file # 714051701245 |

CHICAGO TITLE
OKLAHOMA

**AUTHORIZATION LETTER**

Kellin Howard, Escrow Officer
Chicago Title Oklahoma Co.
5617 N Classen Blvd., Suite 200
Oklahoma City, OK 73118
Phone: 405-848-2140 Fax: 405-848-2305

File No.: 214051701271-KDH
Buyer(s): Plains States Holdings, LLC
Seller(s): Wazzan Properties, LLC
Property: 2820 NE 10th St
Oklahoma City, OK 73117

I/We, the undersigned, do hereby authorize Valerie Garcia of Chicago Title Oklahoma to sign any necessary papers on my/our behalf, on the above property.

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

Wazzan Properties, LLC

BY: ______________________ 8-17-17
Tarek Wazzan, Manager Date

BY: ______________________ 8-17-17
Ahmad Wazzan, Manager Date

Attachment 9

CHICAGO TITLE OKLAHOMA

**SUBSTITUTE FORM 1099-S**

Proceeds from Real Estate Transactions as required by the Internal Revenue Service

*You are required by law to provide Chicago Title Oklahoma Co. with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.*

Branch Address
Chicago Title Oklahoma Co.
6617 N Classen Blvd., Suite 200
Oklahoma City, OK 73116
County Oklahoma

This is important tax information and is being furnished to the Internal Revenue Service, as required by section 1521 of the Tax Reform Act of 1986. If you are required to file a return, a negligence penalty or other sanction will be imposed if this income is taxable and the IRS determines that it has not been reported.

Escrow No.: 714051701271

Date of closing: 08/17/17

PROPERTY ADDRESS OR LEGAL DESCRIPTION
2528 NE 16th St, Oklahoma City OK 73117

Assessor's Parcel Number (APN) -

PROCEEDS FOR THIS SALE WENT TO: (MULTIPLE SELLERS - Use one form for each seller. Treat husband and wife as one seller (filing joint tax returns) unless requested otherwise, then separate forms must be used.)

1. Alcazar Properties, LLC
Sellers Name (First, MI, Last or Entity Name)

2. ______
Spouse or Personal Representative

Federal Tax ID# for this seller: [redacted]
(List only the Tax ID# for the seller listed on Line 1, spouse Tax ID# not required. Executor/Trustee should not list their name as the seller unless they are going to report the proceeds on their personal income tax return. Disregarded entities should provide the name and Tax ID# of the responsible person/entity.)

TOTAL CONSIDERATION

$ 5000 : Total Consideration
50% % Percentage of ownership for this seller
$ ______ GROSS Allocated Proceeds
(Total consideration multiplied by percentage of ownership)

☐ Exchange (if checked)

$ ______ Tax Credit to Seller (Real property tax credits to seller contained in the 400 series of the HUD-1 or comparable closing statement form).

MAILING ADDRESS AFTER CLOSE:
3140 W Memorial Rd. Ste. C 205
OKC, OK 73134

☐ Check here if the address is outside of the U.S.A.

☐ Check here if you are a foreign person per IRS regulations (nonresident alien, foreign partnership, foreign estate, or foreign trust). Do not sign below.

Under penalties of perjury, I certify that I am a U.S. person or U.S. resident alien and the number shown on this statement is my correct taxpayer identification number.

[signature]
Transferor's Signature

8-17-17
Date

______
Spouse

______
Date

Retain for 4 years

1099-S (S-Instructions) (1099) (10-03) (Rev. 06-12)
SS09NFOOTIG.doc

Page 1

Printed: 08.17.17 @ 02:53 PM by KDH
OK-CT-FOAB-06271.466446-714051701271

Attachment 10



## CONSENT TO TRANSACTION

The undersigned, being a person authorized to sign documents on behalf of Wazzan Properties LLC, herein referred to as "Entity", hereby certifies and affirms that in accordance with the governing documents of the Entity the transaction generally referred to as the sale of certain real property to Wazzan Properties LLC or the refinancing of certain real property with lender All America Bank has been authorized by such Entity. The real property referred to herein is described on the attached Exhibit "A". Dated this 23rd day of August, 2017.

Entity name: Wazzan Properties LLC

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

AUTHORIZED SIGNOR:

Ahmad Wazzan
Printed Name

[signature]
Signature

Manager
Title

## EXHIBIT "A"

Legal Description

For Tax Map ID(s): 020050140

All of Lots Fifteen (15) and Sixteen (16), in Block One (1), of Hassman Heights, an Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof.

**Garcia, Valerie**

| | |
|---|---|
| From: | Saxon, Cheryl |
| Sent: | Friday, September 22, 2017 3:15 PM |
| To: | Garcia, Valerie |
| Subject: | RE: 714051701245 |

Yes that is correct

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Friday, September 22, 2017 2:37 PM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

Ok thanks!

I need to get the PR deed from that attorney, correct?

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com

CHICAGO TITLE OKLAHOMA

From: Saxon, Cheryl
Sent: Friday, September 22, 2017 2:29 PM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701245

That is when I'd prefer to close. After the court has approved the sale.

Cheryl Saxon
Attorney

Attachment 11

Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Friday, September 22, 2017 2:12 PM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

I will let them know. That would be the earliest right?

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com

From: Saxon, Cheryl
Sent: Friday, September 22, 2017 2:04 PM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701245

The afternoon of October 18 would be the best day. Is that a problem?

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Friday, September 22, 2017 1:56 PM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

They want to close asap.

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118

405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com

CHICAGO TITLE
OKLAHOMA

From: Saxon, Cheryl
Sent: Friday, September 22, 2017 1:53 PM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701245

The publishers affidavit of the notice of sale was filed in the case. The actual notice of sale has not been filed. The notice of sale should be filed in the case also.

The application for order approving sale of real property does not say who the purchaser is. I'm assuming it was Wazzan. The hearing on the application is set for October 18.

When are you supposed to close?

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Friday, September 22, 2017 12:57 PM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

Hi Cheryl,

Please see attached.

Thanks!

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com





From: Saxon, Cheryl
Sent: Wednesday, September 20, 2017 10:51 AM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701245

In his email he says he is going to provide proof. I'll need to see everything that was filed.

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Wednesday, September 20, 2017 10:50 AM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

Do you want me to request the documents from him?

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com

From: Saxon, Cheryl
Sent: Wednesday, September 20, 2017 10:47 AM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701245

I need to see what they have done. The documents have not been filed in the case or are not showing up on the docket. Very strange.

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Wednesday, September 20, 2017 10:23 AM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

From Roe:

The hearing on the Order was in July. We published Notice of the Sale two times, and I will provide proof of that to your attorney. All that is left at this point is the "Return".

Let me know how you want to proceed?

Still a no go?

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com

From: Saxon, Cheryl
Sent: Wednesday, September 20, 2017 10:14 AM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701245

The order allowing the sale to be made at public sale was filed on September 15. The order states that a notice of sale is to be filed and published 2 times. As of today no notice of sale setting the time and place for the sale appear on the docket. The notice of sale has to be published 2 times prior to the date set for the sale.

Once the date for the sale has passed, a return of sale should be filed. The hearing for the confirmation of sale has to be published 1 time ten days prior to the date of the hearing.

If we were just waiting on the confirmation and the other steps were completed, I might contemplate letting you close. But the notice of sale has not been filed. The return of sale has not been filed. The steps to complete this are going to take at least 30 days.

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Tuesday, September 19, 2017 10:46 AM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

Here is the attorneys response:

We have to follow the long form. We have one heir that has been somewhat troublesome in resolving this estate, so I think it best to follow the long form.

We already have a properly notice, and published order authorizing the sale. We just need to seek approval of the sale at this point. I do not anticipate any issues with that, but want to make sure your attorney is satisfied so the issue does not come back at a future date.

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com

CHICAGO TITLE
OKLAHOMA

From: Saxon, Cheryl
Sent: Friday, September 15, 2017 12:10 PM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701243

If the sales proceedings were further along, maybe. At this point we need to run it by Ken once we find out how he is proceeding.

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Friday, September 15, 2017 11:55 AM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: RE: 714051701245

I forwarded your questions on to the attorney and will let you know. The Wazzans are immediately selling to another buyer, this is a double escrow flip. Could we even do a dry closing in this case?

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com

From: Saxon, Cheryl
Sent: Friday, September 15, 2017 11:38 AM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: RE: 714051701245

The prior attorney started sales proceedings in the case, but never got an order to sell and did not follow through with the remaining steps for the sale of the property. Mr. Simmons just took over the case. How is planning on proceeding with the sales proceedings? Is he doing a Section 239 sale or is he planning on proceeding with the long form of sales proceedings? I'm not willing to do a dry closing at this stage without some indication of what process is being used. Is Wazzan willing to wait? They are not usually in a big hurry.

Cheryl Saxon
Attorney
Chicago Title Oklahoma
405-810-2451

From: Garcia, Valerie
Sent: Friday, September 15, 2017 10:59 AM
To: Saxon, Cheryl <CherylS@Ctt.com>
Subject: 714051701245

Hi Cheryl,

Please see below from the attorney and advise if we are able to "dry close".

Thanks!

Valerie Garcia
5617 N. Classen Blvd, Ste. 200
Oklahoma City, OK 73118
405-848-2140 main
405-848-2305 fax
www.chicagotitleoklahoma.com

CHICAGO TITLE
OKLAHOMA

From: Roe Simmons [mailto:roe@smithsimmons.com]
Sent: Friday, September 15, 2017 10:52 AM
To: Garcia, Valerie <valerie.garcia@ctt.com>
Subject: Lennox

Valerie,

We are waiting on the Order Approving sale, which I believe is all your Title Attorney requires. Due to the fact the individuals involved in this transaction do not have a realtor, I suggest we do a dry closing and you hold the funds in escrow to be released to the Estate when the Order is presented to you.

I have done this in the past with other title companies, because buyers tend to become restless with the process involved in Probates.

Please let me know if this is acceptable.

Roe

Roe T. Simmons | Attorney & Counselor
252 N.W. 70th Street
Oklahoma City, Oklahoma 73116
P: (405) 843-1000 | F: (405) 843-1005

3131 McKinney Ave., Suite 600
Dallas, Texas 75204
P: (214) 272-0964 | F: (214) 272-0965

NOTICE: This electronic mail transmission and any attachments contain information that is confidential and/or legally privileged. The information belongs to the sender and is intended only for the use of the person or entity to whom it is addressed. If you are not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this

electronic mail transmission and/or its attachments is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone at 405-843-1000 to arrange for the return of the message and any attachments. Thank you.

NOTICE: The information contained in this message is proprietary and/or confidential and may be privileged. If you are not the intended recipient of this communication, you are hereby notified to: (i) delete the message and all copies; (ii) do not disclose, distribute or use the message in any manner; and (iii) notify the sender immediately.

## SELLER'S LIEN AFFIDAVIT

STATE OF ____________ File No.: 714051701245-KOH

COUNTY OF ____________

KNOW ALL MEN BY THESE PRESENTS:

The undersigned SELLER, being first duly sworn, upon oath makes the following statements:

1. SELLER is now in possession of and has contracted to sell certain real estate being described as follows:

   For Tax Map ID(s): 020060140

   All of Lots Fifteen (15) and Sixteen (16), in Block One (1), of Hassman Heights, an Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof.

2. That all improvements on said premises are complete in every respect and that no further expense will be incurred for the completion of said improvements whereby anyone would be entitled to file a mechanic's or materialman's lien, except as follows:

   NONE

3. That no person or firm has claim to or against said premises for any reason whatsoever; that there is no suit or proceeding pending anywhere affecting said premises; that all bills for labor and services rendered and materials furnished to or for the improvement of said premises or any part thereof have been, or will be paid; that said SELLER is the owner of all personal property, chattels and fixtures attached to and appurtenant to or used in the operation of said premises and that none of said personal property, chattels and fixtures aforesaid has been bought under an agreement that title to them is not to vest until they are paid for, nor under any lease arrangement; that said premises, including all of said personal property, chattels and fixtures used in connection with the operation of said premises, are now free and clear of all taxes, encumbrances, security interests, special assessments, liens, judgments, bankruptcy or charges of every nature, except as follows:

   NONE

4. That no contract has been entered into for the sale or conveyance of said premises by the undersigned or to the knowledge of the undersigned; and that there is outstanding no unrecorded deed, mortgage or other conveyance thereof executed by the undersigned or to the knowledge of the undersigned, except for the contract for sale contemplated in favor of Watzan Properties LLC.

5. That subject premises is unoccupied, or if occupied, is subject to only ordinary current leases to tenants now in possession, none of which provided for a term in excess of one year and none of which contain any option to purchase, right of renewal or other unusual provision.

6. That the undersigned makes the above statements for the purpose of inducing buyer to purchase above described real estate and for Chicago Title Insurance Company to issue, as agent, a title insurance policy or policies.

DELIVERED this 18th day of October, 2017.

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

SELLER:

Estate of Oscia M Lenox

BY: ____________
Dennis Lenox, Personal Representative

### ACKNOWLEDGMENT

The State of OKLAHOMA

County of OKLAHOMA

Subscribed and sworn before me, a Notary Public in and for said County and State the day and year last above written.

Notary Public in and for the State of ____________
Notary's Printed Name: ____________
Notary's Commission Expires: ____________

Attachment 12



**DOUBLE ESCROW DISCLOSURE**
**ACQUISITION ESCROW**

**Date:** October 19, 2017
**Escrow No.:** 714051701245-KDH
**Property:** 2520 NE 16th St, Oklahoma City, OK 73117

The closing of this escrow is subject to and contingent upon the concurrent closing of Escrow No. 714051701271 ("Resale Escrow"), wherein Buyer herein is selling the subject property at an increased purchase price.

Seller acknowledges that proceeds from the Resale Escrow transactions are the source of all or part of the purchase price herein. Escrow Holder is authorized and instructed to record all appropriate documents regarding this escrow, even though funds necessary to consummate this transaction will not be transferred to this escrow until after such documents are recorded.

With full knowledge of the foregoing, the parties hereto authorize and instruct Escrow Holder to proceed with the closing of this escrow pursuant to instructions relative thereto. The Parties further agree that Escrow Holder shall have no liability for and shall be held harmless from any matter resulting from Escrow Holder's compliance with these instructions.

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

**SELLER(S):**

Estate of Caola M Lenox

BY: [signature] 10-19-2017
Dannie Lenox, Personal Representative — Date

**PURCHASER(S):**

Wazzan Properties LLC

BY: [signature] 10-19-17
Tarek Wazzan, Manager — Date

BY: [signature] 10-19-17
Ahmed Wazzan, Manager — Date

Attachment B

20171020011462580 DEED 10/20/2017 12:35:56 PM
Book:13571 Page:1317 PageCount:2 Filing State
Fee:$15.00 Doc. Tax:$15.00 of Oklahoma County of Oklahoma
Oklahoma County Clerk David B. Hooten

## PERSONAL REPRESENTATIVE'S DEED

This Indenture, made the 18th day of October 2017, by and between Dannie Lenox, of the duly appointed, qualified and acting Personal Representative of the Estate of Ceola M. Lenox, Deceased, Party of the First Part, and Wezzen Properties LLC, Party of the Second Part,

WITNESSETH:

That, whereas, on the 21st day of September 2017, the District Court for said County of Oklahoma County, State of Oklahoma, made an Order of Sale, authorizing the Party of the First Part to sell certain real property of the Estate of Ceola M. Lenox, Deceased, situated in Oklahoma County, State of Oklahoma, and specified particularly described in said Order of Sale, either in one parcel or in subdivision, as said Party of the First Part should judge most beneficial to said estate; and which Order of Sale, now on file and of record in said Court, is hereby referred to and made part of this indenture.

Now therefore, the said Dannie Lenox, Personal Representative of the Estate of said Ceola M. Lenox, Deceased, Party of the First Part, pursuant to the Order of said Court, for and in consideration of the said sum of Ten Thousand dollars ($10,000.00), to him in hand paid by said Party of the Second Part, the receipt whereof is hereby acknowledged, has granted, bargained sold, conveyed, and by these presents does grant, sell and convey unto the said Party of the Second Part, his heirs and assigns forever all the right, title, interest and estate of said Ceola M. Lenox, Deceased, at the time of her death, and also all the right, title and interest that the estate, by operation of law or otherwise, may have acquired, in and to all that certain land situate in said County of Oklahoma, State of Oklahoma, described as follows, to-wit:

**HASSMAN HEIGHTS ADDITION, BLOCK 001, LOTS 15 & 16**

or more commonly known as 2520 NE 10th Street, Oklahoma City, Oklahoma, together with all and singular the hereditament and appurtenances thereunto belonging.

To have and to hold, all and singular, the above described premises, together with the appurtenances, unto the said Party of the Second Part, his heirs and assigns forever.

In witness whereof, the said Party of the First Part, Administrator as aforesaid has hereunto set his hand the day and year first above written:

4140517701245
Return to:
CHICAGO TITLE OKLAHOMA
3401 NW 63RD ST., STE.300
OKLAHOMA CITY, OK 73116

Attachment 14

Dannie Lenox, *Personal Representative*

ACKNOWLEDGEMENT

State of Oklahoma )
) ss.
County of Oklahoma )

Be it known, that on this 18th day of October, 2017, personally appeared before me a notary public, within and for the said county and state, Oklahoma, who is known to me to be the person whose name is subscribed to the within and foregoing instrument as the Special Administrator of the Estate of Coela M. Lenox, Deceased, and acknowledged to me that he, as the Personal Representative of said Estate of Coela M. Lenox, deceased, executed the same as his free and voluntary act and deed for the uses and purposes herein set forth.

In Witness whereof, I have hereunto set my hand and affixed my official seal at my office in said Oklahoma County, State of Oklahoma, the day and year in this indenture last above written.

Notary Public

KAITLIN D. HOWARD NOTARY PUBLIC STATE OF OKLAHOMA # 14011262 EXP. 12/11/18

My Commission Expires



*1047143953*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

JUL 31 2020

RICK WARREN
COURT CLERK

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| IN THE MATTER OF THE ESTATE OF CEOLA M. LENOX, deceased. | ) ) ) | CASE NO. PB-2016-~~721~~ 79 |
|---|---|---|

ORDER, RE:

FRANCES A. GIBSON'S PETITIONER (SIC) MOTION TO SET ASIDE ORDER ALLOWING FINAL ACCOUNT, DETERMINING HEIRS, & DECREE OF DISTRIBUTION AND ORDER DENYING FRANCES GIBSON'S OBJECTION AND MOTION TO REMOVE PERSONAL REPRESENTATIVE,

SUPPLEMENTAL REQUEST TO SET ASIDE FINAL ACCOUNTING, SALE OF PROPERTY, AND REPRESENTATIVE AND FOR DISCOVERY MASTER, AND

RESPONSE TO FRANCES GIBSON'S SUPPLEMENTAL REQUEST TO SET ASIDE FINAL ACCOUNTYING, SALE OF PROPERTY, AND REPRESENTATIVE AND FOR DISCOVERY MASTER

NOW on this 18th day of June, 2020, "Frances A. Gibson's Petitioner (sic) Motion to Set Aside Order Allowing Final Account, Determining Heirs and Decree of Distribution and Order Denying Frances Gibson's Objection and Motion to Remove Personal Representative," "Supplemental Request to Set Aside Final Accounting, Sale of Property, and Representative, and for Discovery Master," and "Response to Frances Gibson's Supplemental Request to Set Aside Final Accounting, Sale of Property, and Representative, and for Discovery Master" came on for hearing. M. Mark Myles, attorney for Frances A. Gibson appeared by video conference. Roe T. Simmons, attorney for Dannie Lenox, Personal Representative, appeared by video conference with Dannie Lenox[1].

[1] A partial hearing which had to be continued to June 18, 2020, was first held on May 19, 2020, with the same aforementioned persons present by video conference.

Exhibit 21

The Court, having considered the sworn testimony of the witnesses presented by Mr. Myles, to wit: Dannie Lenox and Tarek Wazzan, the argument of counsel, the exhibits properly admitted, and the pleadings filed herein, **FINDS AND ORDERS** as follows:

1. On April 24, 2017, an unverified Petition to Sell Real Property was filed on behalf of Dannie Lenox, the Personal Representative. Said Petition sought the Court's authorization to sell at public sale real property described therein, to wit: a home appraised at $56,500.00 located at 2520 N.E. 16th Street, which is the subject of this Order, and undeveloped property appraised at $10,382.00 described as Lots 17-20, Lots 22-26, and the East Eight (8) Feet of Lot 21 in Block Thirteen (13) in the East Tenth Street Addition to Oklahoma City, Oklahoma County, Oklahoma.

2. Okla. Stat. tit. 58 § 412 requires that the Petition to Sell Real Property be verified, and in this case, said Petition was not verified.

3. On May 4, 2017, the Court entered an Order for Hearing on Petition to Sell Real Property.

4. Pursuant to Okla. Stat. tit. § 414, notice of the hearing was done by mailing and by Publication.

5. Pursuant to Okla. Stat. tit. § 413, the hearing on the Petition to Sell Real Property was held on May 17, 2017.

6. On May 17, 2017, the Petition to Sell Real Property was approved without objection, and an Order Approving Petition to Sell (at public auction) was filed on September 15, 2017.

7. On July 20, 2017, the Estate of Ceola M. Lenox, by and through the Personal Representative, Dannie Lenox, entered into a Real Estate Purchase and Sale Agreement with Devall Hubbard for the sale of the property located at 2520 N.E. 16th Street to Mr. Hubbard for $10,000.00.

8. On July 27, 2017, Devall Hubbard assigned the Real Estate Purchase and Sale Agreement for 2520 N.E. 16th Street to Wazzan Properties, LLC for a $6,000.00 assignment fee.

9. Also on July 27, 2017, Tarek Wazzan, on behalf of Wazzan Properties, LLC, emailed Chicago Title indicating the entire purchase price for the house at 2520 N.E. 16th Street would be $16,000.00.

10. On August 2, 2017, Tarek Wazzan, on behalf of Wazzan Properties, LLC, sold the house at 2520 N.E. 16th Street to Plain State Holdings for $36,000.00 pursuant to a Standard Purchase and Sale Agreement.

11. On August 17, 2017, a Warranty Deed was signed conveying the property at 2520 N.E. 16th Street from Wazzan Properties, LLC to Plains States Holdings, LLC.

12. On September 15, 2017, the Order Approving Petition to Sell (at public auction), which was entered on May 17, 2017, was filed.

13. Okla. Stat. tit. 58 § 419 requires that the Order of Sale describe the lands to be sold, and the terms of the sale, the latter of which was not set forth in the Order Approving Petition to Sell entered on May 17, 2017, and filed on September 15, 2017.

14. Okla. Stat. tit. 58 § 421 requires publication of notice of the time and place of the sale for two (2) consecutive weeks and by mailing a copy of the notice to all heirs. It also

requires that the day of sale not be earlier than ten (10) days from the date of the first publication, all of which was complied with pursuant to the Certificate for Proof of Publication filed by the Personal Representative's counsel on September 20, 2017.

15. On September 20, 2017, an Application for Order Approving Sale of Real Property was filed by counsel for the Personal Representative. Said Application did not comply with Okla. Stat. tit. 58 § 426, which requires that the Personal Representative file a sworn return of sale to be set for hearing. Further, Okla. Stat. tit. 58 § 495 requires the Personal Representative to file a verified account of sale within thirty (30) days, which was not done.

16. Notice of the hearing on the Application for Order Approving Sale was published and mailed to the heirs pursuant to Okla. Stat. tit. 58 § 426, but the Notice did not describe the amount for which the property was sold, the name of the purchaser, and did not refer to the Return of Sale (in this case, the Application for Order Approving Sale of Real Property) for further particulars as further required by Section 426.

17. On October 18, 2017 an Order Approving Sale of Real Property located at 4520 N.E. 16th Street was entered without objection.

18. On October 20, 2017, the Personal Representative's Deed was filed with the Oklahoma County Clerk indicating that on October 18, 2017, a $10,000.00 Indenture was made between Dannie Lenox, as Personal Representative of the Estate of Ceola M. Lenox and Wazzan Properties, LLC.

19. Also on October 20, 2017, a Warranty Deed was filed with the Oklahoma County Clerk indicating that on August 17, 2017, Wazzan Properties conveyed property to Plains States Holdings, LLC.

20. On March 11, 2019, Ms. Gibson filed Frances A. Gibson Petitioner (sic) Motion for Court Order to Compel Final Accounting of the Estate of Ceola M. Lenox.

21. On March 18, 2019, the Personal Representative filed his Final Account and Petition for Order Allowing Final Account, Determination of Heirs, Distribution and Discharge, and on April 8, 2019, Ms. Gibson filed Frances A. Gibson Petitioner Motion for Order for the Removal of Dannie G. Lenox as Administrator for the Estate of Ceola M. Lenox and for Sanctionable Violation of Title 58 Oklahoma Probate Procedural Rules of the Court.

22. On May 16, 2019, a hearing on the Petition for Order Allowing Final Account, Determination of Heirs, Distribution, and Discharge, as well as Ms. Gibson's written motion for the removal of the Personal Representative and her oral objection to the Final Account was held.

23. The Court sustained the Personal Representative's Petition for Order Allowing Final Account, Determination of Heirs, Distribution, and Discharge, and an Order was filed on September 12, 2019.

24. On September 27, 2019, Ms. Gibson filed Frances A. Gibson's Petitioner (sic) Motion to Set Aside Order Allowing Final Account, Determining Heirs and Decree of Distribution and Order Denying Frances Gibson's Objection and Motion to Remove Personal Representative.

25. On November 12, 2019, M. Mark Myles entered his appearance on behalf of Ms. Gibson, and filed his Supplemental Request to Set Aside Final Accounting, Sale of Real Property, and Representative, and for Discovery Master, and the Personal Representative responded with leave of Court on May 12, 2020.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the Order Allowing Final Account, Determining Heirs, and Final Decree of Distribution and Order Denying Frances Gibson's Objection and Motion to Remove Personal Representative is hereby vacated pursuant to Okla. Stat. tit. 12 § 1031(3), to wit: for mistake, neglect, or omission of the clerk or *irregularity in obtaining a judgment or order.* (*emphasis added*) *See, e.g., Murle v. Harting*, 2014 OK CIV APP 49, ¶8.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Order Approving Sale of Real Property (located at 2420 N.E. 16th Street) entered on October 18, 2017, as well as the Personal Representative's Deed and Warranty Deed associated with said property filed with the Oklahoma County Clerk on October 20, 2017, are hereby vacated pursuant to Okla. Stat. tit. 12 § 1031(3), to wit: for mistake, neglect, or omission of the clerk or *irregularity in obtaining a judgment or order.* (*emphasis added*) *See, e.g., Murle v. Harting*, 2014 OK CIV APP 49, ¶8.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Order for Issuance of Letters of Administration, Appointment of Personal Representative, Determination of Heirs, and Termination of Joint Tenancy and the Letters of Administration entered and issued on behalf of Dannie Lenox are hereby revoked pursuant to Okla. Stat. tit. 58 § 231.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Sara Murphy Bondurant shall be appointed as Special Administrator of the Estate of Ceola M. Lenox pursuant to Okla. Stat. tit. 58 § 211 upon her presentation of the necessary Order Appointing and Letters of Administration.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Sara Murphy Bondurant shall be paid, through the estate, her usual hourly rate for services she performs in conjunction with her duties as Special Administrator, and that she shall cause to be filed an Order Appointing her as Special Administrator and Letters of Special Administration without further notice.

**IT IS SO ORDERED!**

JAMES M. SIDERIAS
JUDGE OF THE DISTRICT COURT

CERTIFICATE OF SERVICE

On this 31 day of July, 2020, a true and correct copy of the above and foregoing was mailed by U.S. mail, postage prepaid, to the following:

M. Mark Myles
4312 N. Classen Blvd.
Oklahoma City, OK 73118

Roe T. Simmons
1900 N.W. Expressway, # 1050
Oklahoma City, OK 73118

Sara Murphy Bondurant
4801 Gaillardia Pkwy, # 150
Oklahoma City, OK 73142

Latricia Steadman
Oklahoma County Deputy Court Clerk

# Exhibit 7

*1051312865*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

DEC 17 2021

RICK WARREN
COURT CLERK
108

IN THE DISTRICT COURT IN AND FOR
OKLAHOMA COUNTY STATE OF OKLAHOMA

IN THE MATTER OF THE ESTATE OF CEOLA LENOX

*Deceased Person*

CASE NUMBER: PB-2016-721

Judge: Brent C. Dishman

**ACCORDING TO THE OKLAHOMA OPEN RECORDS ACT - HEIR FRANCES A. GIBSON'S MOTION TO UNSEAL THE CASE DUE TO THE IMPROPER SEALING OF THE CASE REQUESTED BY ATTORNEY ROE SIMMONS TO PROTECT THE REPUTATION OF OFFICERS OF THE COURT AND TO CONCEAL EVIDENCE IN A COURT OF LAW THAT SHOWS WRONG DOINGS COMMITTED BY OFFICERS OF THE COURT INCLUDING HIMSELF AND TO OBSTRUCT JUSTICE BY DENYING FRANCES GIBSON/PARTIES IN THE CASE AND THE PUBLIC THE ABILITY TO ACCESS NORMAL PUBLIC DOCUMENTS AND TRANSCRIPTS**

TO THE HONORABLE JUDGE OF THE SAID COURT:

NOW COME, Frances Gibson Heir to the Estate of Ceola Lenox and Tonya Parks (Power of Attorney) for Frances A. Gibson and witness who was present at the hearing on May 11, 2021. Frances Gibson who is the daughter and heir of the decease Ceola M. Lenox *moves* this court for the purpose of justice to UNSEAL this case. This case was sealed by Judge Nikki Kirkpatrick on May 11, 2021, at a hearing for attorney Sara Bondurant's resignation as the Special Administrator. Due to a verbal request of attorney Roe Simmons without a motion to the court, Judge Kirkpatrick improperly according the law of Oklahoma Open Records Act sealed this case and it was done to obstruct justice at the request of Roe Simmons who had committed fraud against the estate per the vacated order dated July 31, 2021, and it was done without objection of Mark Myles because of his own personal interest and he stated on the record he was going to withdraw, nor did Sara Bondurant object to the sealing of case which we believe was to protect her own reputation because of her recent application to fill an open judicial position in Oklahoma County (we will discuss in this motion/request). To seal the matter, Roe Simmons, Mark Myles, and Judge Kirkpatrick signed a court minute written by Roe Simmons. Per the Court Minute it states: (Exhibit C)

"Upon request made orally by Mr. Simmons, and without objection of Mr. Myles. The Court finds good cause to seal the record in PB-2016-721. As such, the Oklahoma County Court Clerk is directed to seal the record in this matter immediately."

**Unsealing the Case is Proper for the Purpose of Justice and Oklahoma Open Records Act**

According to: ORDER OF THE SUPREME COURT IN CONFERENCE THIS 9th DAY OF DECEMBER, 2013. CHIEF JUSTICE REIF, V.C.J., KAUGER, WATT, WINCHESTER, TAYLOR (by separate writing), COMBS, GURICH, JJ., CONCUR; COLBERT, C.J., and EDMONDSON (by separate writing), J., CONCUR IN PART and DISSENT IN PART. TAYLOR, J., with whom KAUGER, J., joins, concurring: (Attached Exhibit A and B)

1. I fully concur with the Order of this Court. It provides for a timely hearing with notice to all parties on an important public issue. In the spirit of giving guidance to the District Courts, I write separately to emphasize the clear intent of the Oklahoma Open Records Act. Court records are public records. There are specific statutory exceptions to this general rule (juvenile, adoption, mental health, etc.). Otherwise, documents filed with the Court Clerk's office are public records and available for public access.

2. There are no provisions in the Oklahoma Open Records Act that allow parties to simply agree to seal a public record and submit a summary agreed order to the court. Sealing a public record should be a very rare event that occurs in only the most compelling of circumstances.

3. If after very careful and independent consideration a District Court decides to seal a public record, it "shall" make a specific finding that sealing the public record is "necessary in the interests of justice to remove the material from the public record". 51 O.S. 24 A. 29. That is a very high standard for good reason and is required in every case.

4. All of this current litigation and expense demonstrates the very reason why courts should rarely take the drastic measure of sealing public records. After the records are sealed, those seeking to protect the public interest are required to go to great time and expense to view what were once public records. This issue should be resolved by a hearing forthwith. That was this trial judge's original plan. Local Rule 10.1 C.

5. My future guidance to the District Courts is to not block public access to court records unless it is absolutely "necessary in the interests of justice". Public records should remain public except in the most compelling of circumstances.

**Per the transcript dated May 11, 2021, for the hearing on the Application to Allow Special Administrator Sara Bondurant's Resignation and the hearing where Roe Simmons verbally requested without a proper motion to seal the case.**

*Note to this Court * Mrs. Gibson did not receive a copy of this transcript until December 8, 2021, because this transcript was withheld from her for 7 months. Ms. Parks requested the transcript

from court reporter Debra Helliker and her mother's attorney Mark Myles several times throughout the 7 months. It wasn't until the removal of Mark Myles that Mrs. Gibson was able to obtain an order to get a copy of the transcript. At the hearing on May 11, 2021, Roe Simmons, Mark Myles, Judge Kirkpatrick and Ms. Parks states per the transcript:

**Mr. Myles:** Mr. Lenox, I just want the Court to be aware that it's my understanding that we still need a special administrator to resolve the issues in the case.

**Mr. Simmons:** And that was what I was – Judge, if you would appoint a replacement.

**Ms. Parks:** I don't mind being that because I really want to make sure my grandmother's due process is protected and I don't want the continued slandering of my parents. They are 74 –

**The Court:** Ms. Parks. Stop. I'm going to say right now you will not be appointed as special administrator because you have a vested interest, obviously, in his matter.

**Ms. Parks:** Yeah. I –

**The Court:** I will want a third – Stop talking. I will want a third party –

**Ms. Parks:** Okay.

**The Court:** -- involved, who is not involved with –

**Ms. Parks:** Okay.

**The Court:** -- any of the heirs and who are not representing – we have four heirs in this case. I want to make sure that all parties are given proper representation and that this estate is handled in a neutral fashion.

**Ms. Parks:** Thank you.

**The Court:** So I will appoint a new special administrator. I'm going to take that under advisement so that I can get the appropriate person who does not have any connection with any of the parties here in this matter.

**Ms. Parks:** Thank you.

**The Court:** But I will tell you right now it will not be you, Ms. Parks.

**Ms. Parks:** Okay. That's fine. I'm perfectly okay with that.

**The Court:** Okay. So as far as who the special administrator will be, I'm going to takt that under advisement and I will do a separate order by the end of the week letting you know who that special administrator will be.

Mr. Myles, you have indicated that, based on recent events, you may be filing an application to withdraw. If you will present this Court with a motion and proposed order, I will certainly take that under consideration as well before the end of the week or at your earliest convenience, sir.

**Mr. Simmons:** --

**Mr. Simmons:** The only other thing I would request, Judge, based on what's in the prolific filings by Mr. Gibson and the allegations in this most recent one, which are – I mean, if a lawyer filed them, you – they're sanctionable immediately. I'd ask the record be sealed at this point in time. There's pleading out there accusing Mr. Myles –

**The Court:** Ms. Parks, please put down your hand.

**Mr. Simmons:** -- who I believe – with all due respect, has political aspirations. That doesn't need to be – an absolutely baseless allegation of that nature doesn't need to be in the public record that could harm his – so I'd ask the Court to seal the record at this point in time.

**The Court:** Ms. Parks, do you have something you'd like to say to this Court?

**Ms. Parks:** Yes. He wants that document – when we said that he took a bribe, that was because Mr. Simmons told Mr. Myles that he was going to file a Bar complaint against him. So when my father said that a bribe. It was because Roe Simmons induced Mr. Myles into not wanting to help us. And so we did get the proper communication that we needed from Mr. Myles. He totally wasn't doing anything to protect our interests, just like the response was not filed when he knew –

**The Court:** Ms. Parks –

**Ms. Parks:** -- we want to object to it –

**The Court:** Ms. Parks –

**Ms. Parks:** -- on the 12th –

**The Court:** Ms. Parks, please stop. Okay. I'm trying to be patient. But right not we have a lot of allegations going out, again, about something that we're not here for. And, in addition to that –

**Ms. Parks:** The is an investigation with OSBI –

**The Court:** Please stop.

In addition to that, we continually are making allegations, coming from parties who are not even involved nor have a standing in this case.

So your father's constant interloping into this case is muddying the waters and is causing parties to want to have to take certain precautions to make sure that non-parties and interlopers do not muddy the waters in this matter.

**Ms. Parks:** I respect that.

**The Court:** Do you understand that?

**Ms. Parks:** Yes. But his –

**The Court:** Stop.

**Ms. Parks:** -- is not right.

**The Court:** You have to stop.

**Ms. Parks:** I know.

**The Court:** Because at this point, you're now disrespecting this Court and I'm about to eject you. Okay? So I need you to stop talking and listen to me.

At this time I'm going to grant your request to seal this record.

And I'm also going to stat that if Mr. Gibson continues to interlope and file pleadings or matters in this case, then he will be brought before this Court and answer for why he, as a non-party, is getting involved in this case and he could be subject to discipline by this Court if he does not stop. And I'm putting that on the record.

**Ms. Parks:** Okay.

**The Court:** Okay. So at this point due to the muddying of the waters, I'm going to grant Mr. Simmons' request and seal this record and that anything further will be only for the parties in this matter.

From this point, if there are further actions that need to be taken, I suspect that the attorneys and the relevant parties will file applications for further dates.

---

Due to the missing words that are replaced with "--" it would appear and to the best of Ms. Parks' knowledge this transcript has been altered in a way which does not exhibit a true record of the proceeding. Tonya Parks believes that some of her communication with the judge has been omitted along with other parties' statements being omitted. Ms. Parks was standing right in front of the court reporter so the court reporter should have heard and been able to document her statements that appear to have been omitted with "—". According to court reporter rules: "It is imperative that a court reporter adhere to the strictest of ethical standards and one of many ethical standards is that the reporter must take verbatim the proceedings and type the record exactly as reported. No changes in the record are to be made by the reporter, although some editing will naturally occur." Ms. Parks "objected" to the sealing of the case and she remembers telling Judge Kirkpatrick that she cannot seal the case at the request of the person that caused harm to the estate.

Due to the improper sealing to this case, it has:

1. Obstructed justice and caused severe damage to the estate financially and caused additional damage to Ms. Lenox's property. See the pictures below. It is infested with cats and is deteriorating.

2. Intentionally interfered and obstructed justice owed to heir Frances Gibson for a fair and timely due process. Mrs. Gibson has been denied documents/filings/transcripts even though she is an heir to the estate. Others who have appeared to intentionally harm the estate has had access to

these documents, but have denied giving them to Mrs. Gibson when these documents should be made public according the Oklahoma Open Records Acts and due to her being an heir, she has a right to those documents. Per an unsigned Motion For Leave To Withdraw Representation filed December 2, 2021, Mark Myles stated he "waited to withdraw and also to allow a cooling down period with the family of the heir. No further progress was made in the absence of any appointments." Please note, no further progress was made due to his negligence by allowing others to continue to harm the estate by holding Mrs. Gibson and her family hostage because they could not do anything with him as the attorney of record. He also failed to communicate and send documents and files requested by Mrs. Gibson. He also failed to withdraw after multiple requests from Mrs. Gibson's family. Mr. Myles own actions and lack of care for the estate of Ceola Lenox and his client "heir" Frances Gibson should prove why Mr. Gibson and others believed that attorney Mark Myles took a bribe because he was not doing anything in the interest of his client Mrs. Gibson and the estate. His negligence allowed others to abuse their discretion and take advantage of Mrs. Gibson and her family. He stayed on the case for 7 months after his verbal statement of saying he was going to withdraw. His delay would appear to have been intentional and to help others because he was not doing anything requested by Mrs. Gibson's family. He also was the point of contact so Mrs. Gibson has no idea if there was communication that she would have been able to object to before people were selected or due anything in the best interest of the estate to protect her due process and the due process of her deceased mother Ceola Lenox. Mr. Myles not giving the transcript was also a showing that he was protecting his interest and others. Ms. Parks also has a phone conversation that would prove that he was protecting his own interest and not the interest of the estate. Ms. Parks was told by the Court Reporter Ms. Helliker that Sara Bondurant obtained a copy of the transcript on or around May 19, 2021, and it was not documented according to the docket for public to view. Ms. Parks only found out about this by asking the Court Reporter if anyone else had obtained the transcript *since* the price was less expensive than it was when she requested it in mid-May of 2021.

3.  Caused harm and undue stress to Mrs. Gibson (an elderly women) and her family meaning her husband and her daughter as they all tried to notify the proper authorities/people and find legal counsel to help Mrs. Gibson and the Estate of Ceola Lenox since Roe Simmons had been removed as the attorney for the personal representative because those orders had been vacated on July 31, 2020, but the case is sealed so it will cost additional money to hire someone to unseal the case or just get access to the documents so that they can review the case. Due to the Gibson family leaving out of state, the sealing of the case has obstructed justice and created unlawful delays because Mrs. Gibson has been denied court filings even to this day. There are recent

filings as of December 3, 2021, and December 9, 2021, that Mrs. Gibson is not able to obtain. These documents could have statements or actions that need to be address, but Mrs. Gibson has *no* idea what's in them and Ms. Parks has reached out to Mr. Dixon who has not responded to her request to obtain the documents due to him having a court order to receive the documents. These documents were not filed until December 14, 2021, but they had dated per the docket December 3 and December 9, 2021, even though they were not filed on that date so it would appear that they were backdated per the docket. Ms. Parks even confirmed the actual filing with Judge Dishman's court Bailiff on December 16, 2021, who told her that they were not uploaded on the docket until December 14, 2021. This Bailiff also told Ms. Parks that she could not see the documents nor did she have the ability to send them to Mrs. Gibson and then advised Ms. Parks to contact the County Clerk office. The manager with the county clerk told Ms. Parks that she also could not see the documents and told her that she or her mother would have to get a court order. To get this order, Mrs. Gibson would have to travel back to Oklahoma and incur additional cost and loss of time. This sealing in depriving Mrs. Gibson of justice.

4. Interfered with an ongoing criminal investigation because the documents cannot be easily obtained without getting an order or an approval from the court.
5. Interfered with complaints filed with agencies that govern the courts and officers of the court. Mrs. Parks is having to email large files, mail documents and travel to Oklahoma to show documents for investigators and other attorneys to view.
6. Denied the legal opportunity to appeal orders because they were not timely provided and not given to Mrs. Gibson because she has no idea what's in them. One of which, Mrs. Gibson had no idea that Rollin Nash's legal fee was $250 an hour, Bryan Dixon's fee was $250 an hour, and Cynthia Cohenour legal fee was $250 an hour, along with a paralegal fee of $100 an hour. Totaling $850 an hour if everyone is working on the estate at one time. Ms. Parks was not given this document until, Friday, December 10, 2021. These fee can potentially deplete the estate. Due to the Quiet Title case number CV-2021-246, filed by Sara Bondurant – there still needs to be a Special Administrator to take over as the Plaintiff due to Ms. Bondurant's withdraw. This will cause additional charges against the estate. The officers of the court are causing financial harm to the estate and to an elderly person and her family as it would appear due to these appointments that the officers of the court are trying to protect individuals who have intentionally harmed the estate due to fraud, malfeasance, wrong doing, and what it is starting to look like is a showing of a "hate crime" due to the Gibson family exposing this. The appointments with conflicts of interest and Roe Simmons also appear to be "predators" of the estate. Even Judge Ray Elliot told Ms. Parks that if these things are happening that it needs to be exposed. (Exhibit E)

7. Denied public access to documents. This probate has a fully executed order vacating orders in this court due to fraud upon the court. Roe Simmons was the one who committed the fraud by being dishonest in his court filings (which were public) and to Mrs. Gibson that he sent her as being true and mailed across state lines to her in Texas. The court recognized this in it's July 31, 2020, order that has been sealed by Roe Simmons intentional request. It is very apparent that attorney Roe Simmons wanted this case to be sealed for his reputation and the reputation of others like Sara Bondurant and Judge Richard Kirby who both had filed or were about to file an application to be judge in the vacant seat due to the removal of Judge Timothy Henderson. Exhibit C will show where the Oklahoma Judicial Nominating Commission posted on their website the names of the individuals who had applied for the position of District Judge in Oklahoma County, Seventh Judicial District, Office 8 as of May 19, 2021. The hearing for Sara Bondurant resignation which was also the hearing where Roe Simmons requested to seal the case was held on May 11, 2021. It is very obvious that one would believe the case was sealed to protect the reputation of Sara Bondurant and Judge Richard Kirby who had just applied for that open position and they knew that per the attached document it states:

> "after review of the application and any publicity available background information, the JNC will schedule a meeting to make a first cut of the applicants. That meeting has yet to be scheduled, but it will likely be in the second half of June. The names of the remaining applicants will then be provided to the OSBI to conduct full background investigation, and the JNC will schedule interviews of those applicants as soon as practicable after the OSBI completes its work. The JNC strongly encourages the public to submit comments of these applicants."

It would appear that the case was sealed to conceal the evidence in the case that will show wrong doings in the vacated order and the documents filed by the Mrs. Gibson's family questioning the appointment of Sara Bondurant and her fees to the estate. Mrs. Gibson family supported their beliefs with evidence of their objections and Ms. Parks was willing to testify in open court, and provide addition evidence, but she was not allowed. It is very obvious per the transcript that Judge Kirkpatrick had a bias that would not allow Ms. Parks to speak because she would stop her from talking about the case. In those documents filed by Mrs. Gibson family and Ms. Parks testimony would have also provide documents/evidence showing that Ms. Bondurant took her position at a conflict of interest due to her dealings with others who are involved in the case, conflicts with a friend of Ms. Parks who have spoken to other authorities within Oklahoma to start an investigation in this probate and documents showing that Ms. Bondurant did not do anything in the case to deserve the legal fees of almost $3,000.00 she requested nor did Ms.

Bondurant provide any evidence showing her work. Judge Kirkpatrick also did not request any documents or Ms. Bondurant's file to be kept in a certain place or provided to any party. Mr. Dixon who is Mr. Nash's attorney has not even gotten the file from Ms. Bondurant. Per an email between Mr. Dixon, Mr. Simmons and Ms. Parks, - Mr. Simmons states that he would try to contact Ms. Bondurant and obtain her file. If she handled her position correctly, Mr. Simmons should not be able to obtain her files because of the reason she was appointed to be the special administrator. Mr. Dixon appeared to give Mr. Simmons the time he needed to obtain the file because he was requesting it from Mr. Simmons because Mr. Simmons told everyone that he would get with Ms. Bondurant to get her file. She and Mr. Simmons appear to be very close and Mr. Simmons has information about the estate that Mrs. Gibson does not even have. It would appear that Sara Bondurant was working with Roe Simmons and others to protect the outcome in a favor of officers of the court.

8. It has also allowed Renee Troxell who is the Trail Court Administrator to threatened Ms. Parks by stating that if Mrs. Gibson gave the transcript to her daughter who is her power of attorney that Mrs. Gibson would be in violation of an order. Mrs. Gibson was not at the hearing on May 11, 2021, which caused the case to be sealed so ensure the transcript was accurate Mrs. Gibson would have to show Ms. Parks the transcript due to attorney Mark Myles being unresponsive to her and her daughter's request. Also Ms. Parks was given documents by Rollin Nash's attorney Bryan Dixon so if Mrs. Gibson was in violation, then so would Mr. Dixon.
9. On Tuesday, December 14, 2021, Ms. Parks sent an email to Kim Lewin, the court reporter for the hearing held on December 3, 2021, requesting the transcript for Mrs. Gibson. As of December 17, 2021, Ms. Parks has not received a response on how to obtain a copy for her mother.

With that said, since the sealing of this

Tonya Parks has discovered that Debra Helliker, the court reporter who transcribed the record, gave attorney Sara Bondurant a copy of the transcript for the hearing on May 11, 2021 on May 19, 2021. On May 13, 2021, Tonya Parks requested a copy of the transcript for her mother Frances Gibson who is an heir, but she was told that she could not obtain a copy for her mother without a court order, based on Ms. Helliker's conversation she had with Judge Kirkpatrick. On November 16, 2021, Ms. Hilliker informed Ms. Parks that Ms. Bondurant had presented her with a court ORDER to purchase the transcript. As of December 16, 2021, there is no record reflecting any ORDER allowing Sara Bondurant who was removed from the estate to obtain a copy of the sealed transcript in which an Heir cannot even obtain. At the time of Ms. Bondurant receiving the transcript, Sara Bondurant was no longer a party to the case.

Mrs. Gibson and Ms. Parks had no idea that Ms. Bondurant had received the transcript until Ms. Parks had the recorded phone conversation with Ms. Hilliker on November 16, 2021, nor did Mrs. Gibson and Ms. Parks know that it was completed and filed in this court because according to the docket on November 16, 2021, there was no entry referencing an order for Sara Bondurant to obtain a copy of the transcript nor was there an entry stating that the original transcript of proceeding on this 11th day of May, 2021, before the Hon. Nikki Kirkpatrick/Court Reporter Debra Helliker until after Frances Gibson obtained an order and received the transcript that was withheld from Mrs. Gibson for 7 months. Ms. Parks requested the transcript for Mrs. Gibson multiple time from the court reporter - Ms. Helliker and Mrs. Gibson's attorney Mark Myles in May 2021 and multiple times thereafter and was denied every time which obstructed and interfered with justice and unlawfully delayed justice while also causing harm to the estate and Mrs. Gibson. It was not until Mrs. Gibson obtained a court order and the transcript that Ms. Helliker filed the record the docket on December 6, 2021.

With all of this said, it appears very suspicious that on November 2, 2021, Judge Nikki Kirkpatrick would file an order selecting attorney Rollin Nash, JR and his team to be the Special Master in this estate with so many apparent conflicts of interest with parties (judicial officers of the court) to the estate. Rollin Nash is the campaign treasure for Judge Richard Kirby who is judge who signed the orders that have been vacated in this estate. Rollin Nash who has been selected as a party in this case is able to obtain documents which would appear to give Judge Kirby an advantage of protection because of his relationship with Special Master Rollin Nash who would appear to have an interest to want to protect the reputation of Judge Kirby due to his involvement in Judge Kirby campaign. Judge Kirkpatrick stated that she would select a neutral party, but selected Rollin Nash.

Also at this hearing, Ms. Parks requested to be the Special Administrator due to the resignation of Sara Bondurant. Evidence would show that Sara Bondurant accepted her position in a conflict of interest with parties in the case which would make a reasonable person believe that she was selected to protect the interest of other parties and to obstruct justice which has caused harm to the estate and Mrs. Gibson and her husband Bennie Gibson and her daughter Ms. Parks. Judge Kirkpatrick denied Ms. Parks request.

For the record, Ms. Parks sent Mark Myles' several emails and a letter to request emails and documents that have been filed in court or forwarded to Mark Myles and he still as of December 17, 2021 has not complied to her request. This is why these documents need to be unsealed and they need to be unsealed for public view.

With all of this being said Mrs. Gibson and Tonya Parks who has been a witness in the case and is the one helping her mother with judicial and state bar complaints along with speaking with law

enforcement while also seeking legal counsel if Mrs. Gibson wants to move forward in that way. We ask that this court take IMMEDIATE action and unseal this case. This unsealing will serve to demonstrate the integrity of Oklahoma County's judicial system, will follow the Oklahoma Open Records Acts, demonstrate that this court will not tolerate corruption and open conflicts in order to harm an elderly person's health and wellbeing, which has already been harmed as a result of the stress this has caused her family, as well as her mother's and father's property, which they purchased together. Mrs. Gibson and Ms. Parks simply hope that this court does the right thing and puts an end to the court's ongoing, suspicious, and blatant deception that is hindering justice.

Pictures of the property of Ceola Lenox approximately 2 months before Ceola Lenox passed away and pictures of her property December 2, 2021. The first picture is the picture that was on Duvell Hubbard's facebook page to advertise the property for sale. Ceola Lenox took care of her home and would be very upset if she knew what they system and other have done to her, her son-in-law and her granddaughter. Mrs. Gibson was in tears when she saw her parents' property look like this.







**To crush under His feet All the prisoners of the land, To deprive a man of justice in the presence of the Most High, To defraud a man in his lawsuit—Of these things the Lord does not approve.** Lamentations 3:45-36

Frances A Gibson JR

Frances A. Gibson and Tonya Parks
214-980-8816
Justicetooforall@gmail.com

**Certificate of Service**

On this 17 day of December, 2021 a true and correct copy of the above and foregoing was mailed by U.S mail, postage prepaid, and emailed to the following.

Rollin Nash, JR,
rnash@nashfirm.com
Cynthia Cohenour
info@nashfirm.com
Bryon Dixon
bdixon@dlb.net
4101 Perimeter Center Drive Suite 200
Oklahoma City, OK 73112
405-917-5000
Fax 405-917-5005

Roe Simmons
1900 N.W. Expressway #1050
Oklahoma City, OK. 73118
405-415-6770
roce simmons and associates.net

12/16/21, 10:42 AM SHADID v. HAMMOND :: 2013 :: Oklahoma Supreme Court Decisions :: Oklahoma Case Law :: Oklahoma Law :: US Law :: Ju...

**Receive free daily summaries of new opinions from the Oklahoma Supreme Court.**

# SHADID v. HAMMOND

SHADID v. HAMMOND
2013 OK 103
Case Number: 112327
Decided: 12/09/2013

THE SUPREME COURT OF THE STATE OF OKLAHOMA

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

EDWARD A. SHADID, II, Petitioner,
v.
THE HONORABLE LISA HAMMOND, Special Judge of the District Court of Oklahoma County, Respondent,
and
DINA HAMMAM, Real Party In Interest.

ORDER

¶1 Original jurisdiction is assumed. Okla. Const. Art. 7 § 4. The Oklahoma Publishing Company is directed to file a motion requesting access to the referenced court file pursuant

https://law.justia.com/cases/oklahoma/supreme-court/2013/112327.html

Exhibit A

1/13

to the Open Records Act, 51 O.S. 2011 § 24 A. 1 et seq. The Honorable Lisa Hammond, or any other assigned judge, is directed to conduct a hearing to determine all pending matters before the court in FD-2004-6310.

¶2 DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 9th DAY OF DECEMBER, 2013.

/S/CHIEF JUSTICE

REIF, V.C.J., KAUGER, WATT, WINCHESTER, TAYLOR (by separate writing), COMBS, GURICH, JJ., CONCUR;

COLBERT, C.J., and EDMONDSON (by separate writing), J., CONCUR IN PART and DISSENT IN PART.

TAYLOR, J., with whom KAUGER, J., joins, concurring:

¶1 I fully concur with the Order of this Court. It provides for a timely hearing with notice to all parties on an important public issue. In the spirit of giving guidance to the District Courts, I write separately to emphasize the clear intent of the Oklahoma Open Records Act. Court records are public records. There are specific statutory exceptions to this general rule (juvenile, adoption, mental health, etc.). Otherwise, documents filed with the Court Clerk's office are public records and available for public access.

¶2 There are no provisions in the Oklahoma Open Records Act that allow parties to simply agree to seal a public record and submit a summary agreed order to the court. Sealing a public record should be a very rare event that occurs in only the most compelling of circumstances.

¶3 If after very careful and independent consideration a District Court decides to seal a public record, it "shall" make a specific finding that sealing the public record is "necessary in the interests of justice to remove the material from the public record". 51 O.S. 24 A. 29. That is a very high standard for good reason and is required in every case.

¶4 All of this current litigation and expense demonstrates the very reason why courts should rarely take the drastic measure of sealing public records. After the records are sealed, those seeking to protect the public interest are required to go to great time and expense to view what were once public records. This issue should be resolved by a hearing forthwith. That was this trial judge's original plan. Local Rule 10.1 C.

¶5 My future guidance to the District Courts is to not block public access to court records unless it is absolutely "necessary in the interests of justice". Public records should remain public except in the most compelling of circumstances.

EDMONDSON, J., Concurring In Part and Dissenting In Part, joined by COLBERT, C.J.

¶1 This controversy is about the proper procedure to be used when a news organization invokes the Oklahoma Open Records Act, 51 O.S.2011 §§ 24A.1-24 A. 29, to gain access to a record that has been sealed and made confidential in a court proceeding where the news organization was not a party.

¶2 The petitioner, Edward A. Shadid, II, was a party to a divorce proceeding in the District Court for Oklahoma Court. On June 11, 2007, the assigned judge in the divorce proceeding granted a joint application to seal documents in the court clerk's file and the documents were removed from public access. In September 2013, a staff writer for the Oklahoma Publishing Company (OPUBCO) attempted to obtain the documents from the Court Clerk, and upon being informed that they were sealed the staff writer mailed a letter to the assigned judge in the divorce proceeding and requested that the documents be unsealed and thus available for public inspection.

¶3 The assigned judge issued an order stating that pursuant to the request in the letter the matter was set for a hearing. Petitioner objected to a hearing on the letter's request, filed a motion to strike the hearing, and then sought extraordinary relief in this Court.

¶4 The controversy before the Court presents issues of first impression involving the application of the Oklahoma Open Records Act and a local rule of a District Court, and whether decisions involving opening and sealing court records should be reviewed by an original action as in the present case or by an appeal. The controversy is publici juris, is likely to be repeated, and judicial economy is served by answering the issues now. The Court should thus assume original jurisdiction pursuant to Okla. Const. Art. 7 § 4 and issue an opinion for official publication.

¶5 Petitioner requests a supervisory writ of extraordinary relief. Generally, such writs are not available if a remedy by appeal exists and that remedy is adequate.1 Analyzing this issue requires addressing the nature of a court's order sealing records in a court file in the custody of a District Court Clerk. The order in Petitioner's case that sealed the records was rendered in the context of a statutorily provided procedure for divorce. Although divorce is a statutory proceeding, a District Court is empowered to provide ancillary or provisional remedies for the protection of parties in a matrimonial proceeding.2

¶6 This Court has discussed provisional and ancillary remedies for the protection of parties' rights, and has indicated that a particular provisional remedy may be sought in a manner that is ancillary or auxiliary to the proceeding on the merits.3 The nomenclature of provisional and ancillary comes from the former practice of a remedy granted in an ancillary suit in equity, such as bills for discovery or to perpetuate testimony.4 Later a party was not required to seek a remedy from a chancery court, and the ancillary remedies in equity were available in the principal case as provisional and temporary remedies because the court was simultaneously exercising jurisdiction in equity and law.5 Records of a court are in that court's custody and control,6 and a court pursuant to its general equity powers may issue an order which impounds and seals papers or records.7 Some jurisdictions have stated that in a general sense the formal equitable remedies have been superseded by either rules or statutes.8

¶7 In Oklahoma, a District Court's equity jurisdiction to seal a record has not been supplanted by statute. Rather, the exercise of that equity jurisdiction is governed or controlled by applicable statutes, 51 O.S.2011 § 24 A. 25 and 51 O.S. § 24 A. 29, as amended by Laws 2012, c. 278.9 On June 11, 2007, the version of §24 A. 29 then in effect had been in force for less than two years and stated in part that:

A. Unless confidentiality is specifically required by law, any order directing the withholding or removal of pleadings or other material from a public record shall contain:

1. A statement that the court has determined it is necessary in the interests of justice to remove the material from the public record and in those instances where such withholding is required by law, the order shall so indicate;

51 O.S.Supp.2005 § 24 A. 29, (A) (1) eff. November 1, 2005.

The plain language of the statute recognizes that confidentiality may occur "in those instances" which are "required by law" or in those instances when "it is necessary in the interests of justice." The latter circumstance is an obvious reference to the court's application of equity principles.10 Section 24 A. 25 of the Open Records Act states that:

Any order of the court for removal of materials from the public record shall require compliance with the provisions of paragraphs 2 through 7 of subsection C of Section 3226 of Title 12 of the Oklahoma Statutes.

51 O.S.2011 § 24 A. 25.

Section 3226 is part of the Oklahoma Discovery Code, 12 O.S.2001 § 3224-3237,11 in effect on June 11, 2007, and paragraphs 2 through 7 of "subsection C" of § 3226 provide a procedure for obtaining a protective order and for keeping material confidential.12 A reference in § 3226 (C)(2)(a) to the circumstances to remove material from the public record "in the interests of justice" corresponds to the language of 51 O.S.Supp.2005 § 24 A. 29, (A) (1) and is a reference to a District Court's equity jurisdiction.

¶8 In the 2009 case of Collier v. Reese this Court correctly held that an order was the functional equivalent of an injunction when it sealed records, prohibited dissemination of information, and enjoined filings.13 In Collier we also correctly held that the functional equivalent of an injunction in that case should be treated as an injunction for the purpose of its classification as an appealable interlocutory order. It was not the mere coercive nature of the order or its historical pedigree in equity that made the order the functional equivalent of an injunction to be treated as an interlocutory appealable order.

¶9 Our judicial procedure includes coercive interlocutory discovery orders which have an historical pedigree of ancillary and provisional orders, but they are nevertheless construed as interlocutory orders that are not appealable separate from an appeal from the judgment or final order.14 Although there are various types of injunctions and they may issue for either temporary of permanent relief, they are ultimately based upon an adjudication of a legally cognizable right that would support a cause of action for equitable relief.15 The Open Records Act does not create privacy rights; but its exceptions to disclosure indicate that under some circumstances privacy rights of individuals should be protected,16 and the Act provides such protection for a privacy right in the context of a divorce proceeding when the personal privacy right supersedes the public's right to acquire the information because "the interests of justice" in the particular circumstance presented gives precedence to the individual's right. 51 O.S.2011 § 24 A. 29 (A) (1). It is this judicial adjudication of the personal privacy right and the public's right to the information in the context of the coercive order which makes the order sealing a record the functional equivalent to an injunction and an appealable interlocutory order.

¶10 The remedy of an appeal from an order sealing or unsealing a record may be an adequate remedy17 as when a court either grants or refuses to grant an injunction.18 However, the fact that the order should be treated as an appealable interlocutory order does not necessarily mean that the remedy by an appeal will be adequate in every circumstance, such as when the time usually necessary for an appeal would result in mooting the public's claim of its right to access a judicial record.19 Because we have not

previously explained this procedure I would not make the availability of the appellate remedy a bar to this proceeding.

¶11 In addition to the adequacy of an appellate relief, this Court does not usually grant prohibition in advance of the trial court's adjudication of a petitioner's challenge to the trial court's jurisdiction. However, we have stated that a party need not be compelled to use the remedy of an appeal when a proper showing has been made that a court is proceeding without jurisdiction,20 or when a showing has been made that presenting the claim in the trial court would be futile, or that the question relates to a public interest where the remedy by appeal is inadequate.21

¶12 The letter sent to the judge stated that it was or had been the practice of a District Judge for Oklahoma County, to open a sealed record upon a letter-request from OPUBCO. The District Court hearing in this matter was not scheduled by OPUBCO as the party moving for judicial relief in a filed case, but by the judge on the letter itself which did not request a hearing. Petitioner showed a possibility of futility in pressing his claim before the District Court due to the assertions of OPUBCO that the Special Judge should follow the previous practice of a District Court Judge. Prohibition may issue prior to the Special Judge hearing Petitioner's motion to strike.

¶13 The Open Records Act provides a remedy when a record is not provided.

B. Any person denied access to records of a public body or public official:
1. May bring a civil suit for declarative or injunctive relief, or both, but such civil suit shall be limited to records requested and denied prior to filing of the civil suit; and
2. If successful, shall be entitled to reasonable attorney fees

51 O.S.2011 § 24A.17(B).

OPUBCO asserts that the record is a record subject to the Open Records Act, but did not use the remedy provided by that Act. The Legislature did not state that this section is an exclusive remedy. The right of the People for access to public documents exists independent of the Open Records Act, and since the Open Records Act did not create a right, the remedy provided by § 24 A. 17 should not be deemed the exclusive remedy for OPUBCO.22 However, the remedy for challenging a judicial order that affects the rights of parties appearing in a judicial proceeding is not an informal off-the-record plea to the judge by a non-party individual who is not licensed to practice law but purporting to represent another, but by a pleading filed by the party or entity seeking to intervene in that judicial proceeding. OPUBCO is seeking to alter the rights of parties in a legal proceeding.

and its claim, as any judicial claim, must be made by a pleading filed in the action giving notice of its claim for relief.23 The Due Process Clauses of both the State and Federal Constitutions require this procedure.24

¶14 Because an order sealing a record is the functional equivalent of an injunction adjudicating rights of the parties to the principal proceeding as well as the public's right to the information in a public record, limited intervention should be allowed in the principal case by one seeking to intervene to unseal a record. While it is theoretically possible for one to obtain equitable relief from a final judgment by an independent suit in the same District Court,25 the order sealing the record is continuing in its effect and the principal case has not been closed. Generally, intervention is allowed in a proceeding where an injunction is sought.26 I thus agree that an intervention is a possible proper method for OPUBCO to seek judicial relief.

¶15 Here, OPUBCO is claiming aggrieved status by the continuing nature of an injunction. If OPUBCO declines to select the remedy provided by Open Records Act, then it should file a petition (a pleading) alleging and giving notice of its claim or cause of action to modify or vacate the injunction and that it is seeking to intervene in the divorce proceeding for the limited purpose of adjudicating the public's right of access to a public record. OPUBCO must give proper notice to the parties in the proceeding as required by the Oklahoma Pleading Code. The Court's requirement for filing a "motion" is incorrect. OPUBCO, seeking the party status by intervention must file a pleading setting forth its cause of action. Claims (or to use the older designation, causes of action) are not judicially presented by motion, but by pleadings.

¶ 16 I agree that prohibition should issue, and that OPUBCO should be directed to give proper notice of its claim if it desires judicial relief in unsealing a judicial record. I agree with the Court that the underlying issue whether the record should be unsealed is an adjudication which should be made first by the trial court. However, I would make the Court's disposition here by a published opinion to give guidance to the District Courts on how to handle requests for unsealing court records.

FOOTNOTES

1 For Prohibition, see, e.g., James v. Rogers, 1987 OK 20, 734 P.2d 1298, 1299 (Before a writ of prohibition may issue, a petitioner must show . . . that the exercise of that power will result in injury for which there is no other adequate remedy.); Moses v. Hoebel, 1982 OK 26, 646 P.2d 601 (prohibition will not take the place of an appeal); Short v. Dunn, 1937 OK

180, 67 P.2d 18, 21 (same); Kutch v. Cosner, 1950 OK 48, 215 P.2d 300, 302 (remedy of appeal under 12 O.S.1941 § 951 precluded prohibition).

For Mandamus, see, e.g., Association of Classroom Teachers of Oklahoma City, Inc. v. Independent School Dist. No. 89 of Oklahoma County, 1975 OK 118, 540 P.2d 1171, 1175 (mandamus will not issue when an adequate remedy at law exists and an appeal will lie from an adverse order of a lower court); Dickerson v. Worten, 1926 OK 950, 251 P. 52, 54 (writ of mandamus to compel judge to vacate order of dismissal was denied because the order was appealable).

2 See, e.g., McDonald v. Wrigley, 1994 OK 25, 870 P.2d 777, 779 ("Divorce is a statutory proceeding."); Carpenter v. Carpenter, 1982 OK 38, 645 P.2d 476, 481 (in a child custody controversy the Court treated a portion of father's claim as a separate cause of action for a declaratory judgment "in chancery"); Lee v. Hester, 1982 OK 30, 642 P.2d 243, 245-246 (Once the jurisdictional omni-competence of a District Court is properly invoked in a divorce proceeding those procedures formerly used by a chancery court for protecting a party's rights is "largely unrestricted by statute" in Oklahoma in the sense that the availability of such remedies does not hinge on the presence of some specifically tailored legislative grant.)

3 See, e.g., Oklahoma Dept. of Securities ex rel. Faught v. Blair, 2010 OK 16, ¶ 37, 231 P.3d 645, 665 ("A receivership is ancillary or auxiliary to proper equitable relief; that is, such relief is a provisional remedy granted only in connection with an action for some other purpose."); Pacific Petroleum v. Sunbeam Oil Co., 1936 OK 61, 54 P.2d 1038, 1055 (An ancillary remedy is proper in certain instances as an aid to the court in administering completely the issues, rights, and remedies of the parties.).

4 McClintock, Henry L., McClintock on Equity (West, 2d ed. 1948) pp. 547-552. See, e.g., State ex rel. Westerheide v. Shilling, 1942 OK 106, 123 P.2d 674, 677 ("The right to take depositions in law actions did not exist at common law, but is a creature of statute.").

5 See, e.g., Noonan v. Ortan, 28 Wis. 386 (1871) ("Instead of driving a party to his action in equity to obtain the discovery sought, the . . . [remedy is] given when the exigencies of the case require it, and it is a remedy outside of and beyond those ordinary proceedings in an action which relate merely to matters of practice and procedure, or which rest entirely in the discretion of the court . . . it seems very clear that the same is a provisional remedy.").

6 In re Spilman, 2020 OK 70, ¶ 7, 240 P.3d 702, 708.

7 Baim & Blank, Inc. v. Bruno-New York, Inc., 17 F.R.D. 346, 349 (S.D.N.Y. 1955) (principle applied in the context of a ruling that granted a protective order against an accountant's disclosure of discovered tax documents to parties other than the litigant to which they had been given).

8 McClintock on Equity, at pp. 547-552. See, e.g., Capricorn Power Co., Inc. v. Siemens Westinghouse Power, 220 F.R.D. 429, 432-433 (W.D.Pa.2004) (". . . it's important to recognize that orders to preserve documents and things have their origin within the equity power of the courts to grant injunctions . . . . [and] due consideration must be given to the fact that the granting of an order of preservation concerns matters within the scope of the rules of discovery as set forth in the Federal Rules of Civil Procedure.") (material omitted).

9 51 O.S. § 24 A. 29, as amended by Laws 2012, c. 278, eff. November 1, 2012:

A. Unless confidentiality is specifically required by law, any order directing the withholding or removal of pleadings or other material from a public record shall contain:

1. A statement that the court has determined it is necessary in the interests of justice to remove the material from the public record and in those instances where such withholding is required by law, the order shall so indicate;

2. Specific identification of the material which is to be withheld, removed or withdrawn from the public record, or which is to be filed but not placed in the public record; and

3. A requirement that any party seeking to file protected materials place such materials in a sealed manila envelope clearly marked with the caption and case number, the word "CONFIDENTIAL", and stating the date the order was entered and the name of the judge entering the order. This requirement may also be satisfied by requiring the party to file the documents pursuant to the procedure for electronically filing sealed or confidential documents approved for electronic filing in the courts of this state.

B. No protective order entered after the filing and microfilming of documents of any kind shall be construed to require the microfilm record of such filing to be amended in any fashion, and no other accounting entries may be affected by such order.

C. The party or counsel who has received the protective order shall be responsible for promptly presenting the order to appropriate supervisory court clerk personnel for action.

D. All documents produced or testimony given under a protective order shall be retained in the office of counsel until required by the court to be filed in the case.

E. Counsel for the respective parties shall be responsible for informing witnesses and other persons, as necessary, of the contents of the protective order.

F. When a case if filed in which a party intends to seek an order withholding removing material from the public record, the parties shall be initially designated on the petition under a pseudonym such as "John or Jane Doe", or "Roe", and the petition shall clearly indicate that the party designations are fictitious. The party seeking confidentiality or other order withholding or removing the case, in whole or in part from the public record, shall immediately present application to the court, seeking instructions for the conduct of the case, including confidentiality of the records.

G. It shall be the duty of the party filing confidential materials with the court to remove the materials from the custody of the court clerk within sixty (60) days after dismissal or other disposition of the main case in which the materials were filed. If the party fails to remove confidential documents, the court clerk shall be authorized to destroy without notice such materials after a period of one (1) year has elapsed since the dismissal or other disposition of the main case in which materials were filed.

H. Municipal courts shall keep confidential all personal identifying information of the parties involved in any case in municipal court, except where such information is provided to the Oklahoma Tax Commission for purposes of collection of municipal court fees. The personal identifying information that shall be kept confidential includes the following:

1. Credit card numbers;
2. Social security numbers; and
3. Bank account numbers.

10 Merritt v. Merritt, 2003 OK 68, ¶ 13, 73 P.3d 878, 883 ("The purpose of a court sitting in equity is to promote and achieve justice with some degree of flexibility."); Toliver v. Bd. of Managers of Improved Indus. Order of Wisemen, 1930 OK 140, 286 P. 294, 298-299 (A power of equity will not be exercised "unless the interests of justice so require.").

11 12 O.S.2011 § 3224 states in part that: "Sections 3224 through 3237 of this title shall be known and may be cited as the Oklahoma Discovery Code."

12 12 O.S. 2001 § 3226 (C) (2) - (7):

"C. PROTECTIVE ORDERS.

. . . 2. If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of paragraph 4 of subsection A of Section 3237 of this title apply to the award of expenses incurred in relation to the motion. Any protective order of the court which has the effect of removing any material obtained by discovery from the public record shall contain the following:

a. a statement that the court has determined it is necessary in the interests of justice to remove the material from the public record,
b. specific identification of the material which is to be removed or withdrawn from the public record, or which is to be filed but not placed in the public record, and
c. a requirement that any party obtaining a protective order place the protected material in a sealed manila envelope clearly marked with the caption and case number and is clearly marked with the word "CONFIDENTIAL", and stating the date the order was entered and the name of the judge entering the order;

3. No protective order entered after the filing and microfilming of documents of any kind shall be construed to require the microfilm record of such filing to be amended in any fashion.

4. The party or counsel which has received the protective order shall be responsible for promptly presenting the order to appropriate court clerk personnel for appropriate action.

5. All documents produced or testimony given under a protective order shall be retained in the office of counsel until required by the court to be filed in the case.

6. Counsel for the respective parties shall be responsible for informing witnesses, as necessary, of the contents of the protective order.

7. When a case is filed in which a party intends to seek a protective order removing material from the public record, the plaintiff(s) and defendant(s) shall be initially designated on the petition under pseudonym such as "John or Jane Doe", or "Roe", and the petition shall clearly indicate that the party designations are fictitious. The party seeking confidentiality or other order removing the case, in whole or in part, from the public record, shall immediately present application to the court, seeking instructions for the conduct of the case, including confidentiality of the records.

13 Collier v. Reese, 2009 OK 86, ¶ 11, 223 P.3d 966, 971-972.

14 Missouri-Kansas-Texas R. Co. v. State, 1985 OK 108, 712 P.2d 40, 52; Warren v. Myers, 1976 OK 118, 554 P.2d 1171, 1174.

15 Powell Briscoe, Inc. v. Peters, 1954 OK 107, 269 P.2d 787, 791, quoting Sunray Oil Co. v. Cortez Oil Co., 1941 OK 77, 112 P.2d 792 ("An injunction will not issue to protect a right not in esse and which may never arise, or to restrain an act which does not give rise to a cause of action.") (emphasis added).

16 51 O.S.2011 § 24 A. 2 states in part that: "The Oklahoma Open Records Act shall not create, directly or indirectly, any rights of privacy or any remedies for violation of any rights of privacy; . . .The privacy interests of individuals are adequately protected in the specific exceptions to the Oklahoma Open Records Act or in the statutes which authorize, create or require the records."

17 I would also designate an order sealing a record as the functional equivalent of a "prohibitory injunction" that is not stayed during the pendency of an appeal; i.e., a record ordered sealed would remain sealed until the appellate court determines that the record should be open. See, e.g., Dobbs, Dan B., Remedies (West Publishing, 1973) pp. 105-106 (generally, prohibitory injunctions are not stayed during an appeal while mandatory injunctions are stayed.); City of Del City v. Harris, 1973 OK 27, 508 P.2d 264, 266 (Court discussed one difference between mandatory and prohibitory injunctions for the purpose of a stay pending an appeal, and noted that the granting/withholding a stay should not "create a fait accompli by the time the appeal could be determined-thus presenting issues which might be moot."). Keeping a sealed record sealed on appeal keeps the controversy about sealing from becoming moot by the mere fact of an appeal.

18 MacThwaite Oil & Gas Co. v. Bolen, 1919 OK 383, 187 P. 221 (Syllabus by the Court states that an erroneous application of the law resulting in the issuance of an injunction will not suffice as grounds for granting prohibition as an appeal will lie from the injunction and may be superseded); Pioneer Telephone and Telegraph Co. v. City of Bartlesville, 1910 OK 284, 111 P. 207 (same).

19 See, e.g., Thomas v. Hampton, 1978 OK 114, 583 P.2d 506 (because the time for ordinary appellate review of an injunction would be an inadequate remedy, the Court assumed original jurisdiction and modified the injunction).

20 Vogel v. Gassaway, 1929 OK 423, 281 P. 302, 305, citing Tucker v. District Court, 1925 OK 314, 235 P. 610.

21 Schofield v. Melton, 1933 OK 447, 25 P.2d 279, 282.

22 See, e.g., Apache Corp. v. State ex rel. Oklahoma Tax Commission, 2004 OK 48, ¶ 10, 98 P.3d 1061, 1064 (in the context of a statutory remedy to recover tax payments the Court has explained that when a statute creates both a right and a remedy for its enforcement the statutory remedy is exclusive).

23 12 O.S.2011 § 2008 states in part thaty: "A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain: 1. A short and plain statement of the claim showing that the pleader is entitled to relief . . . ."

24 Booth v. McKnight, 2003 OK 49, ¶¶ 20-21, 70 P.3d 855, 863 ("At the bare minimum, a constitutionally adequate notice must apprise one of the antagonist's pressed demands and of the result consequent upon default. . . . In order to accomplish that task, notice must provide one with more than the naked logistics of the hearing. For intelligently framing one's defense a person must know what issues one will be confronted with.") (emphasis added).

25 The four methods for attacking a final judgment are: (1) statutory relief from the judgment sought by motion in the original suit, (2) statutory relief from the judgment by independent suit, (3) equitable relief by independent suit, and (4) a proceeding which challenges the effect of the judgment as a collateral but crucial issue. Morgan, Delayed Attacks on Final Judgments, 33 Okla. L. Rev. 45, 48 (1980).

26 See, e.g., Mantooth v. Colbert, 1936 OK 818, 62 P.2d 1235 ( Syllabus by the Court) (A party whose property is clouded by an illegal and void levy of a special improvement assessment for drainage is entitled to an injunction to prevent the levy, enforcement, or collection thereof, and a judgment canceling such levy of record; and the holder of the improvement bonds issued on such drainage district in connection therewith is a proper party to intervene in such action.).





FD-2004-6310
FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR - 4 2014

TIM RHODES
COURT CLERK
29

ORIGINAL

2013 OK 103
IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

EDWARD A. SHADID, II,

Petitioner,

v.

THE HONORABLE LISA HAMMOND, Special Judge of the District Court of Oklahoma County,

Respondent,

and

DINA HAMMAM,

Real Party in Interest.

No. 112,327

FOR OFFICIAL PUBLICATION

FILED
SUPREME COURT
STATE OF OKLAHOMA

DEC - 9 2013

MICHAEL S. RICHIE
CLERK OF
THE APPELLATE COURTS

Rec'd (date) 12-9-13
Posted
Mailed
Distrib
Publish yes no

ORDER

¶ 1 Original jurisdiction is assumed. OKLA. CONST. Art. 7 § 4. The Oklahoma Publishing Company is directed to file a motion requesting access to the referenced court file pursuant to the Open Records Act, 51 O.S. 2011 § 24A.1 et seq. The Honorable Lisa Hammond, or any other assigned judge, is directed to conduct a hearing to determine all pending matters before the court in FD-2004-6310.

¶ 2 DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 9th DAY OF DECEMBER, 2013.

CHIEF JUSTICE

REIF, V.C.J., KAUGER, WATT, WINCHESTER, TAYLOR (by separate writing), COMBS, GURICH, JJ., CONCUR;
COLBERT, C.J., and EDMONDSON (by separate writing), J., CONCUR IN PART and DISSENT IN PART.

Exhibit B



2013 OK 103

ORIGINAL FILED SUPREME COURT STATE OF OKLAHOMA

DEC - 9 2013

MICHAEL S. RICHIE CLERK OF THE APPELLATE COURTS

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

EDWARD A. SHADID, II,

Petitioner,

v.

THE HONORABLE LISE HAMMOND, Special Judge of the District Court of Oklahoma County,

Respondent,

DINA HAMMAM,

Real Party in Interest.

No. 112,327

Rec'd (date) 12-9-13
Posted ___
Mailed ___
Distrib ___
Publish ✓ yes ___ no

FOR OFFICIAL PUBLICATION

EDMONDSON, J., Concurring in Part and Dissenting in Part, joined by COLBERT, C.J.

¶ 1 This controversy is about the proper procedure to be used when a news organization invokes the Oklahoma Open Records Act, 51 O.S.2011 §§ 24A.1-24A.29, to gain access to a record that has been sealed and made confidential in a court proceeding where the news organization was not a party.

¶ 2 The petitioner, Edward A. Shadid, II, was a party to a divorce proceeding in the District Court for Oklahoma Court. On June 11, 2007, the assigned judge in the divorce proceeding granted a joint application to seal documents in the court clerk's file and the documents were removed from public access. In September 2013, a staff writer for the Oklahoma Publishing Company (OPUBCO) attempted to obtain the documents from the Court Clerk, and upon being informed that they were sealed the staff writer mailed a letter to the assigned judge in the divorce proceeding and requested that the documents be

unsealed and thus available for public inspection.

¶3 The assigned judge issued an order stating that pursuant to the request in the letter the matter was set for a hearing. Petitioner objected to a hearing on the letter's request, filed a motion to strike the hearing, and then sought extraordinary relief in this Court.

¶4 The controversy before the Court presents issues of first impression involving the application of the Oklahoma Open Records Act and a local rule of a District Court, and whether decisions involving opening and sealing court records should be reviewed by an original action as in the present case or by an appeal. The controversy is *publici juris*, is likely to be repeated, and judicial economy is served by answering the issues now. The Court should thus assume original jurisdiction pursuant to Okla. Const. Art. 7 § 4 and issue an opinion for official publication.

¶5 Petitioner requests a supervisory writ of extraordinary relief. Generally, such writs are not available if a remedy by appeal exists and that remedy is adequate.[1] Analyzing this issue requires addressing the nature of a court's order sealing records in a court file in the custody of a District Court Clerk. The order in Petitioner's case that sealed the records was rendered in the context of a statutorily provided procedure for divorce.

---

[1] For Prohibition, *see, e.g.*, *James v. Rogers*, 1997 OK 20, 734 P.2d 1298, 1299 (Before a writ of prohibition may issue, a petitioner must show . . . that the exercise of that power will result in injury for which there is no other adequate remedy.); *Moses v. Hoebel*, 1982 OK 26, 646 P.2d 601 (prohibition will not take the place of an appeal); *Short v. Dunn*, 1937 OK 180, 67 P.2d 18, 21 (same); *Kutch v. Cosner*, 1950 OK 48, 215 P.2d 300, 302 (remedy of appeal under 12 O.S.1941 § 951 precluded prohibition).

For Mandamus, *see, e.g.*, *Association of Classroom Teachers of Oklahoma City, Inc. v. Independent School Dist. No. 89 of Oklahoma County*, 1975 OK 118, 540 P.2d 1171, 1175 (mandamus will not issue when an adequate remedy at law exists and an appeal will lie from an adverse order of a lower court); *Dickerson v. Worten*, 1926 OK 950, 251 P. 52, 54 (writ of mandamus to compel judge to vacate order of dismissal was denied because the order was appealable).

Although divorce is a statutory proceeding, a District Court is empowered to provide ancillary or provisional remedies for the protection of parties in a matrimonial proceeding.[2]

¶6 This Court has discussed provisional and ancillary remedies for the protection of parties' rights, and has indicated that a particular provisional remedy may be sought in a manner that is ancillary or auxiliary to the proceeding on the merits.[3] The nomenclature of *provisional* and *ancillary* comes from the former practice of a remedy granted in an ancillary suit in equity, such as bills for discovery or to perpetuate testimony.[4] Later a party was not required to seek a remedy from a chancery court, and the ancillary remedies in equity were available in the principal case as provisional and temporary remedies because the court was simultaneously exercising jurisdiction in equity and law.[5] Records of a court are in that court's custody and control,[6] and a court pursuant to its general equity powers

---

[2] *See, e.g.*, *McDonald v. Wrigley*, 1994 OK 25, 870 P.2d 777, 779 ("Divorce is a statutory proceeding."); *Carpenter v. Carpenter*, 1982 OK 38, 645 P.2d 476, 481 (in a child custody controversy the Court treated a portion of father's claim as a separate cause of action for a declaratory judgment "in chancery"); *Lee v. Hester*, 1982 OK 30, 642 P.2d 243, 245-246 (Once the jurisdictional omni-competence of a District Court is properly invoked in a divorce proceeding those procedures formerly used by a chancery court for protecting a party's rights is "largely unrestricted by statute" in Oklahoma in the sense that the availability of such remedies does not hinge on the presence of some specifically tailored legislative grant.)

[3] *See, e.g.*, *Oklahoma Dept. of Securities ex rel. Faught v. Blair*, 2010 OK 16, ¶ 37, 231 P.3d 645, 665 ("A receivership is ancillary or auxiliary to proper equitable relief; that is, such relief is a provisional remedy granted only in connection with an action for some other purpose."); *Pacific Petroleum v. Sunbeam Oil Co.*, 1936 OK 61, 54 P.2d 1038, 1055 (An ancillary remedy is proper in certain instances as an aid to the court in administering completely the issues, rights, and remedies of the parties.).

[4] McClintock, Henry L., *McClintock on Equity* (West, 2d ed. 1948) pp. 547-552. *See, e.g.*, *State ex rel. Westerheide v. Shilling*, 1942 OK 106, 123 P.2d 674, 677 ("The right to take depositions in law actions did not exist at common law, but is a creature of statute.").

[5] *See, e.g.*, *Noonan v. Orton*, 28 Wis. 386 (1871) ("Instead of driving a party to his action in equity to obtain the discovery sought, the . . . [remedy is] given when the exigencies of the case require it, and it is a remedy outside of and beyond those ordinary proceedings in an action which relate merely to matters of practice and procedure, or which rest entirely in the discretion of the court . . . it seems very clear that the same is a provisional remedy.").

[6] *In re Spilman*, 2020 OK 70, ¶ 7, 240 P.3d 702, 708.

may issue an order which impounds and seals papers or records.[7] Some jurisdictions have stated that in a general sense the formal equitable remedies have been superseded by either rules or statutes.[8]

¶ 7 In Oklahoma, a District Court's equity jurisdiction to seal a record has not been supplanted by statute. Rather, the exercise of that equity jurisdiction is governed or controlled by applicable statutes, 51 O.S.2011 § 24A.25 and 51 O.S. § 24A.29, as amended by Laws 2012, c. 278.[9] On June 11, 2007, the version of §24A.29 then in effect

---

[7] *Balm & Blank, Inc. v. Bruno-New York, Inc.*, 17 F.R.D. 346, 349 (S.D.N.Y. 1955) (principle applied in the context of a ruling that granted a protective order against an accountant's disclosure of discovered tax documents to parties other than the litigant to which they had been given).

[8] *McClintock on Equity*, at pp. 547-552. *See, e.g., Capricorn Power Co., Inc. v. Siemens Westinghouse Power*, 220 F.R.D. 429, 432-433 (W.D.Pa.2004) (". . . it's important to recognize that orders to preserve documents and things have their origin within the equity power of the courts to grant injunctions . . . . [and] due consideration must be given to the fact that the granting of an order of preservation concerns matters within the scope of the rules of discovery as set forth in the Federal Rules of Civil Procedure.") (material omitted).

[9] 51 O.S. § 24A.29, as amended by Laws 2012, c. 278, eff. November 1, 2012:

A. Unless confidentiality is specifically required by law, any order directing the withholding or removal of pleadings or other material from a public record shall contain:

1. A statement that the court has determined it is necessary in the interests of justice to remove the material from the public record and in those instances where such withholding is required by law, the order shall so indicate;

2. Specific identification of the material which is to be withheld, removed or withdrawn from the public record, or which is to be filed but not placed in the public record; and

3. A requirement that any party seeking to file protected materials place such materials in a sealed manila envelope clearly marked with the caption and case number, the word "CONFIDENTIAL", and stating the date the order was entered and the name of the judge entering the order. This requirement may also be satisfied by requiring the party to file the documents pursuant to the procedure for electronically filing sealed or confidential documents approved for electronic filing in the courts of this state.

B. No protective order entered after the filing and microfilming of documents of any kind shall be construed to require the microfilm record of such filing to be amended in any fashion, and no other accounting entries may be effected by such order.

C. The party or counsel who has received the protective order shall be responsible for promptly presenting the order to appropriate supervisory court clerk personnel for action.

D. All documents produced or testimony given under a protective order shall be retained in the office of counsel until required by the court to be filed in the case.

E. Counsel for the respective parties shall be responsible for informing witnesses and other persons, as necessary, of the contents of the protective order.

F. When a case if filed in which a party intends to seek an order withholding removing material from the public record, the parties shall be initially designated on the petition under a pseudonym such as "John (continued...)

had been in force for less than two years and stated in part that:

> A. Unless confidentiality is specifically required by law, any order directing the withholding or removal of pleadings or other material from a public record shall contain:
>
> 1. A statement that the court has determined it is necessary in the interests of justice to remove the material from the public record and in those instances where such withholding is required by law, the order shall so indicate;

51 O.S.Supp.2005 § 24A.29, (A) (1) eff. November 1, 2005.

The plain language of the statute recognizes that confidentiality may occur "in those instances" which are "required by law" or in those instances when "it is necessary in the interests of justice." The *latter* circumstance is an obvious reference to the court's application of equity principles.[10] Section 24A.25 of the Open Records Act states that:

> Any order of the court for removal of materials from the public record shall require compliance with the provisions of paragraphs 2 through 7 of subsection C of Section 3226 of Title 12 of the Oklahoma Statutes.

51 O.S.2011 § 24A.25.

---

[9](...continued)
or Jane Doe", or "Roe", and the petition shall clearly indicate that the party designations are fictitious. The party seeking confidentiality or other order withholding or removing the case, in whole or in part from the public record, shall immediately present application to the court, seeking instructions for the conduct of the case, including confidentiality of the records.

G. It shall be the duty of the party filing confidential materials with the court to remove the materials from the custody of the court clerk within sixty (60) days after dismissal or other disposition of the main case in which the materials were filed. If the party fails to remove confidential documents, the court clerk shall be authorized to destroy without notice such materials after a period of one (1) year has elapsed since the dismissal or other disposition of the main case in which materials were filed.

H. Municipal courts shall keep confidential all personal identifying information of the parties involved in any case in municipal court, except where such information is provided to the Oklahoma Tax Commission for purposes of collection of municipal court fees. The personal identifying information that shall be kept confidential includes the following:

1. Credit card numbers;
2. Social security numbers; and
3. Bank account numbers.

[10] *Merritt v. Merritt*, 2003 OK 68, ¶ 13, 73 P.3d 878, 883 ("The purpose of a court sitting in equity is to promote and achieve justice with some degree of flexibility."); *Tolliver v. Bd. of Managers of Improved Indus. Order of Wisemen*, 1930 OK 140, 286 P. 294, 298-299 (A power of equity will not be exercised "unless the interests of justice so require.").

Section 3226 is part of the Oklahoma Discovery Code, 12 O.S.2001 § 3224-3237,[11] in effect on June 11, 2007, and paragraphs 2 through 7 of "subsection C" of § 3226 provide a procedure for obtaining a protective order and for keeping material confidential.[12] A reference in § 3226 (C)(2)(a) to the circumstances to remove material from the public record "in the interests of justice" corresponds to the language of 51 O.S.Supp.2005 § 24A.29, (A) (1) and is a reference to a District Court's equity jurisdiction.

¶ 8 In the 2009 case of *Collier v. Reese* this Court correctly held that an order

---

[11] 12 O.S.2011 § 3224 states in part that: "Sections 3224 through 3237 of this title shall be known and may be cited as the Oklahoma Discovery Code."

[12] 12 O.S. 2001 § 3226 (C) (2) - (7):
"C. PROTECTIVE ORDERS.
. . . 2. If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of paragraph 4 of subsection A of Section 3237 of this title apply to the award of expenses incurred in relation to the motion. Any protective order of the court which has the effect of removing any material obtained by discovery from the public record shall contain the following:

a. a statement that the court has determined it is necessary in the interests of justice to remove the material from the public record,

b. specific identification of the material which is to be removed or withdrawn from the public record, or which is to be filed but not placed in the public record, and

c. a requirement that any party obtaining a protective order place the protected material in a sealed manila envelope clearly marked with the caption and case number and is clearly marked with the word "CONFIDENTIAL", and stating the date the order was entered and the name of the judge entering the order;

3. No protective order entered after the filing and microfilming of documents of any kind shall be construed to require the microfilm record of such filing to be amended in any fashion.

4. The party or counsel which has received the protective order shall be responsible for promptly presenting the order to appropriate court clerk personnel for appropriate action.

5. All documents produced or testimony given under a protective order shall be retained in the office of counsel until required by the court to be filed in the case.

6. Counsel for the respective parties shall be responsible for informing witnesses, as necessary, of the contents of the protective order.

7. When a case is filed in which a party intends to seek a protective order removing material from the public record, the plaintiff(s) and defendant(s) shall be initially designated on the petition under pseudonym such as "John or Jane Doe", or "Roe", and the petition shall clearly indicate that the party designations are fictitious. The party seeking confidentiality or other order removing the case, in whole or in part, from the public record, shall immediately present application to the court, seeking instructions for the conduct of the case, including confidentiality of the records.

was the functional equivalent of an injunction when it sealed records, prohibited dissemination of information, and enjoined filings.[13] In *Collier* we also correctly held that the functional equivalent of an injunction in that case should be treated as an injunction for the purpose of its classification as an appealable interlocutory order. It was not the mere coercive nature of the order or its historical pedigree in equity that made the order the functional equivalent of an injunction to be treated as an interlocutory appealable order.

¶9 Our judicial procedure includes coercive interlocutory discovery orders which have an historical pedigree of ancillary and provisional orders, but they are nevertheless construed as interlocutory orders that are not appealable separate from an appeal from the judgment or final order.[14] Although there are various types of injunctions and they may issue for either temporary of permanent relief, they are ultimately based upon an adjudication of a legally cognizable right that would support a cause of action for equitable relief.[15] The Open Records Act does not create privacy rights; but its exceptions to disclosure indicate that under some circumstances privacy rights of individuals should be protected,[16] and the Act provides such protection for a privacy right in the context of a divorce proceeding when the personal privacy right supersedes the public's right to acquire

---

[13] *Collier v. Reese*, 2009 OK 86, ¶ 11, 223 P.3d 966, 971-972.

[14] *Missouri-Kansas-Texas R. Co. v. State*, 1985 OK 108, 712 P.2d 40, 52; *Warren v. Myers*, 1976 OK 118, 554 P.2d 1171, 1174.

[15] *Powell Briscoe, Inc. v. Peters*, 1954 OK 107, 269 P.2d 787, 791, quoting *Sunray Oil Co. v. Cortez Oil Co.*, 1941 OK 77, 112 P.2d 792 ("An injunction will not issue to protect a right not in esse and which may never arise, *or to restrain an act which does not give rise to a cause of action.*") (emphasis added).

[16] 51 O.S.2011 § 24A.2 states in part that: "The Oklahoma Open Records Act shall not create, directly or indirectly, any rights of privacy or any remedies for violation of any rights of privacy; . . . The privacy interests of individuals are adequately protected in the specific exceptions to the Oklahoma Open Records Act or in the statutes which authorize, create or require the records."

the information because "the interests of justice" *in the particular circumstance presented* gives precedence to the individual's right. 51 O.S.2011 § 24A.29 (A) (1). It is this judicial adjudication of the personal privacy right and the public's right to the information in the context of the coercive order which makes the order sealing a record the functional equivalent to an injunction and an appealable interlocutory order.

¶ 10 The remedy of an appeal from an order sealing or unsealing a record may be an adequate remedy[17] as when a court either grants or refuses to grant an injunction.[18] However, the fact that the order should be treated as an appealable interlocutory order does not necessarily mean that the remedy by an appeal will be adequate in every circumstance, such as when the time usually necessary for an appeal would result in mooting the public's claim of its right to access a judicial record.[19] Because we have not previously explained this procedure I would not make the availability of the appellate remedy a bar to this proceeding.

¶ 11 In addition to the adequacy of an appellate relief, this Court does not usually

---

[17] I would also designate an order sealing a record as the functional equivalent of a "prohibitory injunction" that is not stayed during the pendency of an appeal; *i.e.*, a record ordered sealed would remain sealed until the appellate court determines that the record should be open. *See*, e.g., Dobbs, Dan B., *Remedies* (West Publishing, 1973) pp. 105-106 (generally, prohibitory injunctions are not stayed during an appeal while mandatory injunctions are stayed.); *City of Del City v. Harris*, 1973 OK 27, 508 P.2d 264, 266 (Court discussed one difference between mandatory and prohibitory injunctions for the purpose of a stay pending an appeal, and noted that the granting/withholding a stay should not "create a fait accompli by the time the appeal could be determined-thus presenting issues which might be moot."). Keeping a sealed record sealed on appeal keeps the controversy about sealing from becoming moot by the mere fact of an appeal.

[18] *MacThwaite Oil & Gas Co. v. Bolen*, 1919 OK 383, 187 P. 221 (Syllabus by the Court states that an erroneous application of the law resulting in the issuance of an injunction will not suffice as grounds for granting prohibition as an appeal will lie from the injunction and may be superseded); *Pioneer Telephone and Telegraph Co. v. City of Bartlesville*, 1910 OK 284, 111 P. 207 (same).

[19] *See, e.g., Thomas v. Hampton*, 1976 OK 114, 553 P.2d 506 (because the time for ordinary appellate review of an injunction would be an inadequate remedy, the Court assumed original jurisdiction and modified the injunction).

grant prohibition in advance of the trial court's adjudication of a petitioner's challenge to the trial court's jurisdiction. However, we have stated that a party need not be compelled to use the remedy of an appeal when a proper showing has been made that a court is proceeding without jurisdiction,[20] or when a showing has been made that presenting the claim in the trial court would be futile, or that the question relates to a public interest where the remedy by appeal is inadequate.[21]

¶ 12 The letter sent to the judge stated that it was or had been the practice of a District Judge for Oklahoma County, to open a sealed record upon a letter-request from OPUBCO. The District Court hearing in this matter was not scheduled by OPUBCO as the party moving for judicial relief in a filed case, but by the judge on the letter itself which did not request a hearing. Petitioner showed a possibility of futility in pressing his claim before the District Court due to the assertions of OPUBCO that the Special Judge should follow the previous practice of a District Court Judge. Prohibition may issue prior to the Special Judge hearing Petitioner's motion to strike.

¶ 13 The Open Records Act provides a remedy when a record is not provided.

> B. Any person denied access to records of a *public body or public official*:
> 1. May bring a civil suit for declarative or injunctive relief, or both, but such civil suit shall be limited to records requested and denied prior to filing of the civil suit; and
> 2. If successful, shall be entitled to reasonable attorney fees

51 O.S.2011 § 24A.17(B).

OPUBCO asserts that the record is a record subject to the Open Records Act, but did not

---

[20] *Vogel v. Gassaway*, 1929 OK 423, 281 P. 302, 305, *citing Tucker v. District Court*, 1925 OK 314, 235 P. 610.

[21] *Schofield v. Melton*, 1933 OK 447, 25 P.2d 279, 282.

use the remedy provided by that Act. The Legislature did not state that this section is an exclusive remedy. The right of the People for access to public documents exists independent of the Open Records Act, and since the Open Records Act did not *create* a right, the remedy provided by § 24A.17 should not be deemed the exclusive remedy for OPUBCO.[22] However, the remedy for challenging a judicial order that affects the rights of parties appearing in a judicial proceeding is not an informal off-the-record plea to the judge by a non-party individual who is not licensed to practice law but purporting to represent another, but by a *pleading* filed by the party or entity seeking to intervene in that judicial proceeding. OPUBCO is seeking to alter the rights of parties in a legal proceeding, and its claim, as any judicial claim, must be made by a *pleading* filed in the action giving notice of its claim for relief.[23] The Due Process Clauses of both the State and Federal Constitutions *require* this procedure.[24]

¶14 Because an order sealing a record is the functional equivalent of an injunction *adjudicating rights* of the parties to the principal proceeding as well as the public's right to the information in a public record, limited intervention should be allowed in the principal case by one seeking to intervene to unseal a record. While it is theoretically possible for

---

[22] *See, e.g., Apache Corp. v. State ex rel. Oklahoma Tax Commission*, 2004 OK 48, ¶ 10, 98 P.3d 1061, 1064 (in the context of a statutory remedy to recover tax payments the Court has explained that when a statute creates both a right and a remedy for its enforcement the statutory remedy is exclusive).

[23] 12 O.S.2011 § 2008 states in part thaty: "A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain: 1. A short and plain statement of the claim showing that the pleader is entitled to relief . . . ."

[24] *Booth v. McKnight*, 2003 OK 49, ¶¶ 20–21, 70 P.3d 855, 863 ("At the bare minimum, a constitutionally adequate notice must apprise one of the antagonist's pressed demands and of the result consequent upon default. . . . In order to accomplish that task, notice must provide one with more than the naked logistics of the hearing. For intelligently framing one's defense a *person must know what issues one will be confronted with.*") (emphasis added).

one to obtain equitable relief from a final judgment by an independent suit in the same District Court,[25] the order sealing the record is continuing in its effect and the principal case has not been closed. Generally, intervention is allowed in a proceeding where an injunction is sought.[26] I thus agree that an intervention is a possible proper method for OPUBCO to seek judicial relief.

¶ 15 Here, OPUBCO is claiming aggrieved status by the continuing nature of an injunction. If OPUBCO declines to select the remedy provided by Open Records Act, then it should file a *petition (a pleading) alleging and giving notice of its claim or cause of action to modify or vacate the injunction and that it is seeking to intervene* in the divorce proceeding for the limited purpose of adjudicating the public's right of access to a public record. OPUBCO must give proper notice to the parties in the proceeding as required by the Oklahoma Pleading Code. The Court's requirement for filing a "motion" is incorrect. OPUBCO, seeking the *party* status by intervention *must file a pleading* setting forth its cause of action. Claims (or to use the older designation, causes of action) are not judicially presented by motion, but by pleadings.

¶ 16 I agree that prohibition should issue, and that OPUBCO should be directed to give proper notice of its claim if it desires judicial relief in unsealing a judicial record. I

[25] The four methods for attacking a final judgment are: (1) statutory relief from the judgment sought by motion in the original suit, (2) statutory relief from the judgment by independent suit, (3) equitable relief by independent suit, and (4) a proceeding which challenges the effect of the judgment as a collateral but crucial issue. Morgan, *Delayed Attacks on Final Judgments*, 33 Okla. L. Rev. 45, 48 (1980).

[26] *See, e.g., Mantooth v. Colbert*, 1936 OK 818, 62 P.2d 1235 ( Syllabus by the Court) (A party whose property is clouded by an illegal and void levy of a special improvement assessment for drainage is entitled to an injunction to prevent the levy, enforcement, or collection thereof, and a judgment canceling such levy of record; and the holder of the improvement bonds issued on such drainage district in connection therewith is a proper party to intervene in such action.).

agree with the Court that the underlying issue whether the record should be unsealed is an adjudication which should be made first by the trial court. However, I would make the Court's disposition here by a published opinion to give guidance to the District Courts on how to handle requests for unsealing court records.

2013 OK 103

EDWARD A. SHADID, II, )
Petitioner, )
v. )
THE HONORABLE LISA HAMMOND, Special Judge of the District Court of Oklahoma County, )
Respondent, )
and )
DINA HAMMAM, )
Real Party in Interest. )

ORIGINAL

FILED
SUPREME COURT
STATE OF OKLAHOMA
DEC - 9 2013
MICHAEL S. RICHIE
CLERK OF
THE APPELLATE COURTS

No. 112,327

For Official Publication

Rec'd (date) 12-9-13
Posted RE
Mailed RE
Distrib RE
Publish ✓ yes ___ no

TAYLOR, J., with whom KAUGER, J., joins, concurring:

¶1 I fully concur with the Order of this Court. It provides for a timely hearing with notice to all parties on an important public issue. In the spirit of giving guidance to the District Courts, I write separately to emphasize the clear intent of the Oklahoma Open Records Act. Court records are public records. There are specific statutory exceptions to this general rule (juvenile, adoption, mental health, etc.). Otherwise, documents filed with the Court Clerk's office are public records and available for public access.

¶2 There are no provisions in the Oklahoma Open Records Act that allow parties to simply agree to seal a public record and submit a summary agreed order to the court. Sealing a public record should be a very rare event that occurs in only

the most compelling of circumstances.

¶3 If after very careful and independent consideration a District Court decides to seal a public record, it "shall" make a specific finding that sealing the public record is "necessary in the interests of justice to remove the material from the public record". 51 O.S. 24A.29. That is a very high standard for good reason and is required in every case.

¶4 All of this current litigation and expense demonstrates the very reason why courts should rarely take the drastic measure of sealing public records. After the records are sealed, those seeking to protect the public interest are required to go to great time and expense to view what were once public records. This issue should be resolved by a hearing forthwith. That was this trial judge's original plan. Local Rule 10.1 C.

¶5 My future guidance to the District Courts is to not block public access to court records unless it is absolutely "necessary in the interests of justice". Public records should remain public except in the most compelling of circumstances.



2013 OK 103

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

FILED SUPREME COURT STATE OF OKLAHOMA DEC 11 2013 MICHAEL S. RICHIE CLERK

EDWARD A. SHADID, II,

Petitioner,

v.

THE HONORABLE LISE HAMMOND, Special Judge of the District Court of Oklahoma County,

Respondent,

DINA HAMMAM,

Real Party in Interest.

No. 112,327

FOR OFFICIAL PUBLICATION

Rec'd (date) 12-11-13
Posted
Mailed
Distrib
Publish ✓ yes ____ no

¶ 0 CORRECTION ORDER

¶ 1 The separate opinion by Edmondson, J., concurring in part and dissenting in part, and filed December 9, 2013, shall be corrected in the following:

In paragraph number nine (9) of the opinion the sentence that states:

> "Although there are various types of injunctions and they may issue for either temporary of permanent relief, they are ultimately based upon an adjudication of a legally cognizable right that would support a cause of action for equitable relief.[15]"

Shall be corrected to state:

> "Although there are various types of injunctions and they may issue for either temporary or permanent relief, they are ultimately based upon an adjudication of a legally cognizable right that would support a cause of action for equitable relief.[15]"

¶ 2 The separate opinion authored by Edmondson, J., shall otherwise remain as filed December 9, 2013.

¶3 DONE BY ORDER OF THE SUPREME COURT THIS 11th DAY OF DECEMBER, 2013.

CHIEF JUSTICE



SINCE 1904

(https://www.okbar.org/)

Home (https://www.okbar.org/) | Members (https://www.okbar.org/members/) | Resources (https://www.okbar.org/public/) | About (https://www.okbar.org/about/)

Search

(https://ams.okbar.org/eweb/DynamicPage.aspx?WebCode=LoginRequired&expires=yes&Site=okbar2020)

(https://ams.okbar.org/eweb/DynamicPage.aspx?WebCode=LoginRequired&expires=yes&Site=okb

(https://ams.okbar.org/eweb/DynamicPage.aspx?WebCode=LoginRequired&expires=yes&Site=okb

Login (https://ams.okbar.org/eweb/DynamicPage.aspx?WebCode=LoginRequired&expires=yes&Site=okb

# News

## JNC Announces Applicants for District Judge in Oklahoma County, Seventh Judicial District, Office 6

May 20, 2021

Jim Webb Oklahoma City - Chair

Aaron Abbott Sapulpa
James D. Bland McAlester
David Butler Lawton
Melissa DeLacerda Stillwater
William R. Grimm Tulsa
David Hudelberg Oklahoma City

OKLAHOMA JUDICIAL
NOMINATING COMMISSION

DB Green Marlow - Vice Chair
Major Jemison Oklahoma City
Rick Johnston Chickasha
Linda Lepak Claremore
Joseph Meuberger Enid
Rick Nagel Norman
Charles D Pearson Muskogee
Trebor Worthen Oklahoma City

May 19, 2021 – The Judicial Nominating Commission (JNC) announced today the following individuals have applied for the position of District Judge in Oklahoma County, Seventh Judicial District, Office 6.

- Kaitlyn G. Allen, Edmond
- John E. Barbush, Edmond
- Lewis A. Berkowitz, Edmond
- Bonnie J. Blumert, Oklahoma City
- Sara Murphy Bondurant, Edmond
- Charles "Brent" Dishman, Edmond
- Brock R. Ellis, Oklahoma City
- Emily N. Harrelson, Oklahoma City
- Albert J. Hoch, Jr., Warr Acres
- Richard W. Kirby, Oklahoma City
- Kathryn R. Savage, Arcadia
- Jason S. Seabolt, Oklahoma City
- Thomas C. Riesen, Oklahoma City
- Chelsea C. Smith, Oklahoma City
- Lucas R. Stephens, Oklahoma City
- Brian P. Young, Oklahoma City

Exhibit C

After review of the applications and any publicly available background information, the JNC will schedule a meeting to make a first cut of the applicants. That meeting has yet to be scheduled, but it will likely be in the second half of June. The names of the remaining applicants will then be provided to the OSBI to conduct full background investigations, and the JNC will schedule interviews of those applicants as soon as practicable after the OSBI completes its work.

The JNC strongly encourages the public to submit comments on these applicants. Comments may be mailed to:

Administrative Office of the Courts
ATTN: Tammy Reaves
2100 North Lincoln, Suite 3
Oklahoma City, OK 73105

and/or

Jim Webb
Chair, Judicial Nominating Commission
Chesapeake Energy Corporation
PO Box 18496
Oklahoma City, OK 73154-0496

News Category: All News (https://www.okbar.org/category/allnews/), JNC (https://www.okbar.org/category/jnc/)

## Contact Us

405-416-7000
800-522-8065 (toll free)
800-364-7886 (Lawyers Helping Lawyers)

P.O. Box 53036
Oklahoma City, OK 73152

1901 N. Lincoln Blvd.
Oklahoma City, OK 73105

© 2021 Oklahoma Bar Association. All Rights Reserved.

*1049213111*

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY
MAY 11 2021
RICK WARREN
COURT CLERK
79

In re the matter of the
Petitioner(s)

Mark Myles for Frances Gibson
Attorney(s) for Petitioner

--vs.

Case No. PB-2016-721

Estate of Cecilia Lenox
Respondent(s)

Ron Simmons for
Attorney(s) for Respondent Duranni Lenox

## COURT MINUTE

Date: 5/11/2021 Judge Kirkpatrick

Hearing On: Special Administrator's Motion to Withdraw

Ruling By Court:

Upon request made orally by Mr. Simmons, and without objection of Mr. Myles. The Court finds good cause to seal the record in PB-2016-721. As such, the Oklahoma County Court clerk is directed to seal the record in this matter immediately.

[signature] 22243

[signature] Judge

[signature] 19573

Exhibit D

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

NOV - 3 2021

RICK WARREN
COURT CLERK

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

IN THE MATTER OF THE ESTATE OF CEOLA M. LENOX, Deceased.
) CASE NO.: PB-2016-72109
) Honorable Nikki K. Kirkpatrick

**APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF ATTORNEYS FOR ROLLIN NASH, JR., SPECIAL MASTER.**

COMES NOW Rollin Nash, Jr., the Special Master, ("Special Master"), and for his Application for Order Authorizing Employment of Cynthia Cohenour, Bryan C. Dixon, Jr., and Rollin Nash, Jr., (in his capacity as an attorney, and not in his capacity as Special Master), all of the firm NASH COHENOUR & GIESSMANN, PC, as attorneys for Rollin Nash, Jr., the Special Master, respectfully states:

1. On November 2, 2021, on the Court's own Motion, the Honorable Nikki K. Kirkpatrick appointed Rollin Nash, Jr., as the Special Master in the above-captioned proceeding.

2. Based upon prior experience, your Special Master represents to this Court that there will be occasions when the Special Master will need to be represented by counsel.

3. Your Special Master desires to employ Cynthia Cohenour, Bryan C. Dixon, Jr., and Rollin Nash, Jr., (in his capacity as an attorney), all of the firm NASH COHENOUR & GIESSMANN, PC, as his counsel. Your Special Master discloses to the Court that he is associated with said lawyers and law firm. However, your Special Master does not know of any reason why there would be any type of conflict of interest by utilizing attorneys that your Special Master is associated with.

4. Your Special Master also represents to this Court that utilizing attorneys who are associated with your Special Master will be more economical to the estate than requiring your Special Master to utilize other attorneys in different offices. Logistically, the administration of the estate will be easier and more efficient.

Exhibit E

5.    Cynthia Cohenour, Bryan C. Dixon, Jr. and Rollin Nash, Jr., (in his capacity as an attorney), are duly licensed and qualified attorneys and, in the opinion of the Special Master, are amply qualified to act as counsel for the Special Master.

6.    The professional legal services expected to be provided by said attorneys include, but are not necessarily limited to:

    a.    Advising the Special Master with respect to his rights, duties and obligations as Special Master in this proceeding.

    b.    The preparation and filing of all pleadings and documents which may be required in this proceeding.

    c.    Assisting the Special Master in his investigation of all of the previous sales of real property during this probate proceeding.

    d.    Assisting the Special Master in assembling data and documents and drafting a report to the Court regarding the Special Master's findings and conclusions regarding the sale of any real property during this probate proceeding.

    e.    Providing representation in all contested and uncontested motions, hearings and trials, including participating in all discovery, depositions, or otherwise, that is believed by the Special Master, or his counsel, to be necessary or advisable.

    f.    Advice to and representation of the Special Master for any other matter which may arise in this proceeding which would reasonably cause any Special Master to seek legal assistance and advice.

7.    Subject to the Court's approval, Cynthia Cohenour, Bryan C. Dixon, Jr. and Rollin Nash, Jr., all of the firm NASH COHENOUR & GIESSMANN, PC, have agreed to serve

as counsel for your Special Master for compensation for their services rendered herein on the basis of their normal hourly fees and such additional compensation as this Court may approve. Your applicant desires to employ said attorneys and firm at the following hourly rates:

| | |
|---|---|
| Rollin Nash, Jr. | - $250.00 |
| Cynthia Cohenour | - $250.00 |
| Bryan C. Dixon, Jr. | - $250.00 |

8.    The law firm of NASH COHENOUR & GIESSMANN, PC may also, on occasion, use the services of paralegals to perform work that does not necessarily require an attorney to perform. The standard rate charged by NASH COHENOUR & GIESSMANN, PC for its paralegals is $100.00 per hour. Your applicant submits that $100.00 per hour for paralegals is reasonable, and will assist in reducing the costs of administration of the estate.

9.    Your Special Master represents to this Honorable Court that said Attorneys do not represent any other interested party adverse to the interest represented by your Special Master, and that said Attorneys have no interest or connection with any party in interest herein.

10.    Compensation for services rendered in these proceedings by Cynthia Cohenour, Bryan C. Dixon, Jr., and Rollin Nash, Jr., (in his capacity as an attorney), and the paralegals, all of the firm NASH COHENOUR & GIESSMANN, PC, shall be subject to the allowance by this Court, after Application and hearing same.

11.    Your Special Master requests that the effective date of the Order authorizing employment of counsel for your Special Master be made effective as of November 2, 2021, which was the same date that your Special Master was first appointed to such position.

WHEREFORE, your Special Master respectfully requests this Honorable Court approve the employment of Cynthia Cohenour, Bryan C. Dixon, Jr., and Rollin Nash, Jr., all of the firm NASH COHENOUR & GIESSMANN, PC, as the Special Master's legal counsel, said

appointment to be effective as of November 2, 2021, with compensation and reimbursement of expenses to be paid as an administrative expense in such amounts as may be allowed by the Court.

Respectfully submitted,

Rollin Nash, Jr.,
*Special Master*

APPROVED:

Rollin Nash, Jr. OBA # 6584
NASH COHENOUR & GIESSMANN, PC
4101 Perimeter Center Dr, Suite 200
Oklahoma City, Oklahoma 73112
Telephone: (405) 917-5000
Facsimile: (405) 917-5005
Email: rnash@nashfirm.com
*Attorney for Rollin Nash, Jr.*
*Special Master*

# Exhibit 8

ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2018 MAR 14 PM 1:01

DEPUTY CLERK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BENNIE R. GIBSON SPOUSE OF FRANCES A. GIBSON (BENEFICIARY OF THE ESTATE OF CEOLA LENOX)

Plaintiff,

vs

SMITHSIMMONS PLLC, ROE THERON SIMMONS, CRISTOPHER SMITH

Defendants,

3-18CV-594-S

CIVIL ACTION ______________

BENNIE R. GIBSON FIRST ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THE SAID COURT:

Come now BENNIE R. GIBSON, Plaintiff, complaining of SmithSimmons PLLC, Roe Theron Simmons and Christopher Smith, hereinafter call Defendants, and for cause of action would respectfully show unto the Court the following:

I.

**PARTIES**

1. Plaintiff Bennie R. Gibson is a United State citizen who, resides at 7200 Old Mill Run Rd. Fort Worth, TX. Bennie R. Gibson (Plaintiff) is the Spouse of Frances A. Gibson (*beneficiary*) of the Estate of Ceola M. Lenox.
2. SmithSimmons PLLC ( Defendant) is a Limited Liability Company organized under the laws of the State of Texas with it with principle place of business in Oklahoma City and second to principle is located in Dallas, TX at 3131 Mckinney Ave Suite Dallas TX in which they advertise on the internet as being family law attorneys in Dallas Texas
3. Upon information and belief SmithSimmons PLLC is Limited Liability Company organized under the laws of the State of Oklahoma with its principle place of doing business is in Oklahoma SmithSimmons PLLC can be served at 252 NW 70th Oklahoma City OK 73116.

4. Defendant Christopher Smith and Roe Theron Simmons (collectively SmithSimmons PLLC) own SmithSimmons PLLC. Both Christopher Smith and Roe Theron Simmons can be served at 252 NW 70th Oklahoma City, OK 73116.
5. Upon information and belief Christopher Smith and Roe Theron Simmons (collectively SmithSimmons PLLC advertised 3131 Mckinney Ave Dallas TX. As a place where they conduct business to retain and offer consultation for potential clients. Based on information through Texas Secretary of State SmithSimmons PLLC is not registered as a company doing business in the State of Texas in compliance with Texas Law. Based on information through The Texas Bar Association neither Christopher Smith nor Roe Theron Simmons is license to practice law in the State Texas.

**II**

**<u>JURISDICTION AND VENUE</u>**

6. The jurisdiction of this Court attaches under the provisions of 28 U.S.C. 1332. The amount in controversy exceeds, exclusive of interest and cost, the sum of $75,000.00 and the parties are citizens of different states.
7. Jurisdiction is proper in this court because the litigation arise under federal law. The Federal Court in the United States have jurisdiction on human rights law. Human rights is a federal right as a federal question. Life, Liberty and the pursuit of happiness, well-known phrase in the United States Declaration of Independence the "unalienable right" which the Declaration says have been given to all human being's by the Creator and which government are created to protect. Preamble the Declaration of Independence. Among these rights are Life, Liberty, and the pursuit of Happiness.

8... Venue is proper in Dallas County, Texas pursuant to Section 15.036 of the Civil Practice & Remedies Code

**III**

**<u>FACTUAL BACKGROUND</u>**

9. The liability allegations in this case are based on interference of one human rights. Negligence and willful negligent activity under substantive law.

10. SmithSimmons PLLC is and was at all relevant times the law firm over the estate of Ceola M. Lenox.

11. Both Defendants Christopher Smith and Roe Theron Simmons is and was at all relevant times the attorneys over the estate of Ceola M. Lenox.

12. At all relevant times Christopher Smith and Roe Theron Simmons (collectively SmithSimmons PLLC) had inclusive and complete control over the estate of Ceola M. Lenox, including but limited to the "fiduciary duty" to protect the estate in the best interest of the beneficiary. As the highest duty known under the law, nothing short of complete care and good faith.

13. On June 23, 2016 Dannie Lenox through his attorney of record Jared J. Elwell Oklahoma Bar Number 31986 of SmithSimmons PLLC filed his Petition to Probate the Estate of Ceola M. Lenox who died interstate on May 24, 2016. On August 02, 2016 this cause comes on for hearing on the Petition of Dannie Lenox for the issuance of Letters of Administration, Appointment of Administrator of the Estate, for judicial determination of the heirs of Ceola M. Lenox decease and for termination of Decedent's joint Tenancy in certain property.

14. On this date August 02, 2016 is was Ordered, Adjudge, and Decreed by the Court that Dannie Lenox was appointed Administrator of the Estate of Ceola M. Lenox, and the Letters of Administration was issued to Dannie Lenox, as Administrator of the Estate of Ceola M. Lenox the decease, immediately upon his taking the oath required by law. Based upon Plaintiff personal Knowledge and belief Dannie Lenox upon taking that oath he was in possession and under the influence of a controlled dangerous substance/ marijuana. It is upon Plaintiff knowledge and belief that it was at time Dannie Lenox had no intention to honor that oath and fulfil his "fiduciary" responsibilities as Personal Representative of the Estate of Ceola M. Lenox.

15. Dannie Lenox common law wife Delouie Pollard alias Delouie Vanessa Jones No. CF-2009-49719 (Criminal Felony) by and through Dannie Lenox attorney Jared J Elwell SmithSimmons PLLC work in concert to orchestrate fraud upon the Estate of Ceola M. Lenox *1).* self-dealing, *2)* embezzlement *3)* deposited estate funds in a personal account identifying those funds as Dannie and Leon Lenox personal property,

*4)* formation of a LLC Limited Liability Company without proper licensing *5)* coercing Frances A. Gibson (Beneficiary of the Estate) to sign this LLC agreement using threats and false information *6)* defrauding the Estate of Ceola M. Lenox for their financial gain.

IV

**CAUSE OF ACTION AGAINST DEFENDANTS**

Count 1:

16. **Professional Negligence**; Defendants breach their duty to exercise to act reasonable and diligence to assure beneficiary Frances A. Gibson interest in the estate of Ceola M. Lenox was fully protected. Defendants only acted in behalf of a *predator* (Dannie Lenox" that main intentions was to pocket funds from the estate to finance his and his common law wife Delouie Pollard (*convicted Felon*) drug abuse and the solicitation of a control substance.

Count 2:

17. **Aiding abetting a breach of a fiduciary**; Defendants fail to exercise their legal capacity to advise Dannie Lenox Personal Representative of his duty as a fiduciary, the duty of loyalty, due care and good faith. This duty require at a minimum that they all acted legally necessary and proportionate to protect the estate and refrain from conduct that could expose the beneficiary or unreasonable financial harm to the estate.

Count 3:

18. **Criminal, fraudulent and prohibited transaction**; Defendants knowingly counseling and assisting Dannie Lenox in committing a criminal act of fraud upon the estate of Ceola M. Lenox. Defendants willfully assisted Dannie Lenox advice in the course of action that was criminal. Defendants fail to withdraw from counsel as required by Oklahoma Bar Rules on Professional Conduct.

Count 4:

19. **Criminal Collusion/ Conspiracy**; Defendants uses their position to gain unfair advantage over Plaintiff's grievances by colluding with Oklahoma Bar Association Debbie Maddow, Chief Disciplinary Counsel Gina Hendryx, Administrator Craig Combs, Oklahoma County District Judge Richard Kirby, Chief Deputy Clerk Mike Sullivan. This was done knowingly willfully and intentionally to manipulate the estate of Ceola M. Lenox by incompetence, deceptive practices, embezzlement for financial gain, deceived, mislead the estate and so that the Defendants would escape punishment.

Count 5:

20. **Fraudulent Deed Transfer**; On April 24, 2017 Defendant filed a petition to sell the real property of the estate of Ceola M. Lenox at 2520 NE 16th Street Oklahoma City, OK by Public sale appraised value $56,500.00. The petition did not contain a verification nor did it meet the guidelines of Title 58 Oklahoma Probate Procedures. On September 21, 2017 Dannie Lenox file Application approving that sale of $10,000.00. On October 18, 2017 a hearing was held on that return of sale. On August 07, 2016 the property was bought by a Devall Hubbard and Sold to Wazzan Properties for $16,000.00 and then Wazzan Properties sold that property to Plain State on August 17, 2017. Then Katlin Howard of Chicago Title filed both deeds on October 20, 2017 as if the sale of the real property took place on October 18, 2017.

Count 6:

21. **Conspiracy, Forgery by altering/corrupting/falsifying a legal document**; After a conversation with Craig Combs on or about February 06, 2018 in regards to Defendants continue pate of obstruction of the probate of the estate of Ceola M. Lenox. Plaintiff inform Mr. Combs that he spoke to Justin Wolf attorney for the Oklahoma State Bureau of Investigation. Upon Craig Combs informing Defendants of Plaintiff conversation with him. Defendant Roe Simmons went on an uncontrollable rampage Defendant Roe Simmons back dated and filed an order for hearing return of sale , hearing date on February 27, 2018 on real property that have not been sold. Defendant Roe Simmons forged by altering this document by the cut out, paste and

copy method and put this document in the court for Plaintiff to see. Defendant Roe Simmons would be putting Plaintiff and Plaintiff daughter Tonya Parks in a court room with Defendant Roe Simmons, a corrupt Judge Richard Kirby and no one else, premeditating putting Plaintiff and his daughter at risk to be harm.

V.

**DAMAGES AND OTHER RELIEF SOUGHT**

22. Plaintiff re-allege the matter above as if fully set forth.
23. Plaintiff's wife Frances A. Gibson (*beneficiary of the estate*) as a child was nor raise with her brothers Leon and Dannie Lenox. She was raise by her cousin Berthel William. Mrs. Williams a cousin also raise her father Leon D. Lenox. Frances was never in the position to have a close relationship with her brothers. Plaintiff wife wanted to believe her brothers would do what is morally right for the estate of Ceola M. Lenox, above all the representation of the Defendants. It was the Defendants "fiduciary" duty to keep her brothers in the guideline of Title 58 Oklahoma Probate Procedure. For Plaintiff to have to pull Frances A. Gibson (*his wife*) away from them was what Plaintiff describe as a cult, brainwashing with lies to manipulate her emotion, attitude and beliefs utilizing intensity-persuasive even coercive tactic to enforce Plaintiff wife to be on their side so they could defraud the estate of Ceola M. Lenox and Plaintiff wife.
24. As a result of the incident describe herein, Plaintiff conceive many damages statements as though I was interfering with his wife brothers, who she believed at the time loved her. This will have a lasting impact on Plaintiff marriage.
25. As a result of the incident describe herein Plaintiff relationship with his daughters Benee' and Tonya because it was obvious that Plaintiff was tuff on their mother in his efforts to pull her back from the insulting comments by Leon and Dannie Lenox. This will have a lasting effect on Plaintiff emotional stress.
26. Plaintiff Bennie R. Gibson was and is so involved with policing the corrupt practices of the Defendants conduct and behavior during this probate of the estate of Ceola M. Lenox. Plaintiff miss calling his brother Dr. Donald L. Gibson a Forensic Psychiatrist

on Father's day, Sunday June 18th 2017, this was the first in over 50 years. Dr. Donald L. Gibson who lost his first wife Karla in 2011 was engage to be married on August 19, 2017 died unexpectedly on June 20, 2017. As a result of the incident describe herein Plaintiff will forever feel that if he had call his brother on Father's Day maybe he could have felt something was wrong and advised his brother to go into the hospital emergency room for care, Plaintiff brother would be alive and well today.

VI

**MENTAL ANGUISH**

27. As a further result of Defendants action, Plaintiff have suffered mental pain, suffering, and anguish, and in all reasonable probability, will continue to suffer in this manner for a long time into the future. By reason of all of the above, Plaintiff have suffered losses and damages in and amount in excess of the minimum jurisdictional limits of this Court.

VII

**PUNIITIVE DAMAGES**

28. Plaintiff pray for relief for punitive damages in the amount of $20,500,000.00 against Defendants Roe Theron Simmons and Christopher Smith (collectively SmithSimmons PLLC) because such conduct were so reprehensible as when committed intentionally or with callous disregards for Plaintiff Human Rights.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully pray that upon final trial hereof, Plaintiff recover judgement against the Defendants for the following:

1. Judgement against Defendants for actual damages;
2. Reasonable and necessary attorney's fees;
3. Pre-judgment interest;
4. Post-judgment interest;
5. Court cost; and

6. Such other and further relief, both at law and in equity, to which Plaintiff maybe justly entitled, both in law and in equity.

Respectfully submitted,

Bennie R. Gibson *Pro-se*
7200 Old Mill Run
Fort Worth, TX 76133
Office (817) 989-2006
Cell (817) 688-0652

# Exhibit 9

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

FILED
OCT 30 2024
JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY [signature], DEPUTY

**TONYA PARKS**, individually
**BENNIE GIBSON**, individually
**FRANCES GIBSON**, individually
**NYANZA COOK**, individually
**ALEXANDER BEDNAR**, individually

**PLAINTIFFS**

v.

**CASE NO. 5:23-CV-00041**

**AIG**, an insurance company based in New York
**CHICAGO TITLE**, a California Company
**TIMOTHY HENDERSON**, a removed Oklahoma Judge accused of crimes,
**DAVID PRATER**, Oklahoma County District Attorney In his individual and official capacity
**MIKE HUNTER**, individually
**MELISSA ABERNATHY**, sheriff deputy
**BRETT SLIMP**, sheriff deputy
**OKLAHOMA COUNTY**

**DEFENDANTS**

**NOTICE OF CONVENTIONAL FILINGS FOR**

**PLAINTIFFS' TONYA PARKS, BENNIE GIBSON, FRANCES GIBSON AND NYANZA COOK'S THIRD AMENDED COMPLAINT**

Please take notice that Plaintiffs Tonya Parks, Nyanza Cook, Frances Gibson and Bennie Gibson shall conventionally file the original and one copy of the following document, paper or other material:

**Exhibit 1** - Recording with Plaintiff Parks and Defendant Abernathy dated June 6, 2019.

**Exhibit 2** - Recorded Conversation with Attorney Kindanne ("Kindy") Jones dated November 4, 2022, telling Plaintiff Parks that she needed to file a lawsuit regarding her claims that are detailed in this complaint.

**Exhibit 3** - Tonya Parks' call to Henderson office to speak with him regarding his "directive" to the Oklahoma County Sheriff's department dated June 10, 2019

**Exhibit 4** – Part 1 of the -January 19, 2022 - Recording of former Attorney General Joy Thorp making a racial statement "race card" while Parks was reporting a DA Kunzweiler letter that misrepresented the facts of OSBI investigation into Defendant former Judge Henderson.

**Exhibit 5** - Part 2 of the -January 19, 2022 - Recording of former Attorney General Joy Thorp making a racial statement "race card" while Parks was reporting a DA Kunzweiler letter that misrepresented the facts of OSBI investigation into Defendant former Judge Henderson.

This document, paper, or other material has not been filed electronically because:

__X__ it cannot be converted to electronic format

_____ the electronic file size of this material exceeds 20 megabytes (MB)

_____ the Court by Order has excused electronic filing

_____ it is exempt from electronic filing pursuant to § II.A.1 of the ECF Policy & Procedures Manual

**List of Convention Filings Referenced in Plaintiffs' Complaint**

**Exhibit 1** - Recording with Plaintiff Parks and Defendant Abernathy dated June 6, 2019.

- **Audio Recording of Discussion**: (Please Listen to Full Recording) An audio recording from June 6, 2019, reveals Defendant Melissa Abernathy admitting to being present in a civil courtroom and gathering information during testimony involving Frances Gibson.

Unbeknownst to Frances, her statements—given during a covert investigation led by Abernathy and while being questioned by attorney Roe Simmons—were used to build a case against her husband, Bennie Gibson. Abernathy's actions violated federal spousal privilege protections, demonstrating a misuse of her authority and a breach of ethical standards by exploiting confidential information for investigative purposes. This recording highlights Abernathy's direct role in compromising constitutional legal protections and jeopardizing the Gibsons' rights.

**Exhibit 2** - Recorded Conversation with Attorney Kindanne ("Kindy") Jones dated November 4, 2022, telling Plaintiff Parks that she needed to file a lawsuit regarding her claims that are detailed in this complaint.

- **Audio Recording of Discussion**: (Please Listen to Full Recording) In an audio recording from November 4, 2022, between Tonya Parks and Kindy Jones from the Attorney General's office, the conversation revolves around the Parks and Gibson family claims and the OSBI investigation. During the call, Ms. Jones advises Ms. Parks that filing a lawsuit after the denial of her Tort Claim is necessary to clarify and address/resolve the family's claims. By suggesting this course of action, Ms. Jones, representing state defendants, effectively waived their sovereign immunity. Typically, sovereign immunity protects state officials from lawsuits unless they consent to be sued. In this case, by directing Ms. Parks to resolve the issue through legal action, the state's representatives implicitly consented to this approach, thus waiving their sovereign immunity and opening the door for legal proceedings to proceed.

**Exhibit 3** - Tonya Parks' call to Henderson office to speak with him regarding his "directive" to the Oklahoma County Sheriff's department dated June 10, 2019

- **Audio Recording of Discussion**: (Please Listen to Full Recording) An audio recording of Former Judge Henderson who misused his judicial powers by "directing" law enforcement to initiate a report against Tonya Parks' father, Bennie Gibson, based on discussions that excluded relevant parties—a process known as ex parte communication. This involved attorney Roe Simmons, Defendant Melissa Abernathy, and other court officers, leading to misdemeanor charges against Mr. Gibson. Parks, alarmed by this breach and concerned that Henderson had no jurisdiction in this matter, attempted to address these issues directly with him but was denied access—a privilege that Simmons and Abernathy seemingly enjoyed. This denial of direct communication and the selective ex parte discussions not only question the judiciary's fairness and impartiality but also suggest a violation of Ms. Parks' rights, underlining a disregard for due process. The charges against Mr. Gibson were retaliatory, targeting him for his efforts to expose judicial and public corruption. This case exemplifies a broader pattern of power abuse and lack of accountability within the Oklahoma County Courthouse, emphasizing the need for the court to recognize and rectify the injustices faced by Ms. Parks and her family.

**Exhibit 4** – Part 1 of the -January 19, 2022 - Recording of former Attorney General Joy Thorp making a racial statement "race card" while Parks was reporting a DA Kunzweiler letter that misrepresented the facts of OSBI investigation into Defendant former Judge Henderson.

- **Audio Recording of Discussion**: (Please Listen to Full Recording) An audio recording dated January 19, 2022, with former Attorney General Joy Thorp who made a racially insensitive remark about the "race card" during a conversation with Tonya Parks. Parks was discussing a letter from DA Kunzweiler that misrepresented facts regarding an OSBI

investigation into former Judge Henderson. Thorp initially stated to investigate Kunzweiler's actions and assign the matter to an investigator, but ultimately nothing has happened so that created the need to file this civil lawsuit. Additionally, not referenced on this recording, but after the conversation with Ms. Thorp, Parks discovered a post on Thorp's Facebook that advertised a job opening in the Homicide department of the AG's office, where Thorp was making inappropriate jokes with friends, further calling into question her professionalism and sensitivity to serious matters.

**Exhibit 5** - Part 2 of the -January 19, 2022 - Recording of former Attorney General Joy Thorp making a racial statement "race card" while Parks was reporting a DA Kunzweiler letter that misrepresented the facts of OSBI investigation into Defendant former Judge Henderson.

- **Audio Recording of Discussion**: (Please Listen to Full Recording) Continuation of the call with Joy Thorp.

**Previously filed List of Convention Filings Referenced in Plaintiffs' Complaint**

**[Doc. 125 – 1]** - Audio Recording of Telephone Conversation dated October 28, 2022 – between Julie Corely with the Oklahoma Attorney General's office and Plaintiff Tonya Parks

- **Audio Recording of Discussion**: (Please Listen to Full Recording) An audio recording between Tonya Parks and Julie Corley from the Oklahoma Attorney General's Office, evidencing discussions relevant to Plaintiff's claims. This recording is critical to the Plaintiff's case, as it summarizes her allegations that the authorities have avoided investigating her complaint of misconduct and criminal acts by judges and attorneys, thereby forcing victims to file civil lawsuits instead of prosecuting their own representatives.

The content of this recording supports the Plaintiff's claims of:

- The OSBI's failure to properly investigate her allegations against Judge Henderson and others.
- Evidence of criminal actions, retaliation, and harassment against her family.
- Abuse of power and manipulation of the probate case for financial gain by the judges and attorneys involved.
- The Attorney General's Office's unwillingness to investigate and advice to pursue civil litigation.
- A conflict of interest within the Attorney General's Office.

**[Doc. 125 - 2]** - Audio Recording between Defendant Sheriff Melissa Abernathy's Supervisor and Plaintiff Tonya Parks date of recording June 6, 2019.

- **Audio Recording of Discussion**: **Allegations of Conspiracy and Judicial Misconduct**: The Plaintiffs possesses a recording with Defendant Sheriff Melissa Abernathy's Supervisor, revealing that the involvement of law enforcement and the issuance of a probable cause affidavit against Plaintiff Bennie Gibson were actions taken under the direction of Defendant Judge Henderson. This directive was reportedly influenced by probate attorney Roe Simmons, who sought to retaliate against Mr. Gibson for exposing alleged crimes against the estate. Defendant Henderson, who was not presiding over the probate case and had no official capacity within it, was allegedly compelled to act due to his personal connections with Roe Simmons. This situation raises concerns about a potential conspiracy to commit judicial misconduct and abuse of power, leveraging judicial influence to affect law enforcement actions outside the scope of legal proceedings.

- The actions described involving attorney Roe Simmons, Defendant Judge Henderson, and the sheriff's department (Defendant Melissa Abernathy), as relayed by Plaintiff Parks, could potentially be characterized as **conspiracy to commit judicial misconduct and abuse of power**. This situation outlines a scenario where a judge, who is not directly involved in a probate case, or any case involving Plaintiffs Gibson or Parks allegedly uses his influence to direct law enforcement to take action against an individual, Plaintiff Bennie Gibson, based on personal connections and motivations

rather than legal justifications. This action was believed to be taken to retaliate against Gibson for reporting crimes committed by attorney Roe Simmons against the estate Plaintiff Frances Gibson's mother, indicating a misuse of judicial and law enforcement powers to protect personal interests and silence whistleblowers.

- Furthermore, the lack of effort to reach out to Mr. Gibson or his family for their side of the story before issuing a warrant, as well as the implications of such actions on the integrity of the judicial process, underscore the seriousness of the allegations. If these actions were taken as described, they could undermine public trust in the legal system and violate ethical standards governing judicial conduct, potentially leading to investigations those involved. (Additional evidence can be provided)

**[Doc. 125- 3]** - Audio Recording of Telephone Conversation between Oklahoma County and Sheriff Abernathy's Counsel District Attorney Rod Heggy and Plaintiff Tonya Parks date of recording Oct 20, 2023.

- **Audio Recording of Discussion**: Defendants Counsel Rod Heggy, failed to disclose he was representing Defendant Sheriff Abernathy and Defendant Oklahoma County in their federal lawsuit. During the conversation they discuss the probate estate, the warrant against Mr. Gibson, and other matters without him disclosing his representation of Oklahoma County and Sheriff Abernathy in the civil rights lawsuit against them. This lack of disclosure raises ethical concerns, given Heggy's dual role as an assistant district attorney for Oklahoma County.

  On the recording Mr. Heggy also makes a comparison to the Plaintiff Parks and Plaintiffs Gibson and Gibson by stating they would find familiarities to the Osage Tribe Family who was depicted in the movie called "Killers of the Family Moon".

  **On the recording you will hear attorney Rod Heggy tell Plaintiff Parks about the movie and how her family may find similarities to the Osage family when he states,** "Well, I think you might see some real familiarity in it. It happened to the, uh,

Osage tribe members when they discovered oil and the Federal Bureau of Investigation was created because of all the murders of the Osage Indians who owned oil interests. Um, so that's what that movie is about. It's, and it's coming out the end of October. Uh, and, uh, and, and it's based on a true story. I've read the book I don't know if the movie will have, well, they'll track it but there, it is my point, however, was simply that, uh, th this is a recurring thing, uh, particularly when greedy people get involved."

Rod Heggy's statement to Tonya Parks, drawing a parallel between the Parks and Gibson family's situation and the historical injustices faced by the Osage tribe, serves to highlight a pattern of exploitation and injustice that can occur when significant financial interests are at stake, particularly in the context of legal and probate matters. His reference to the Osage tribe's history, where greed led to severe exploitation and violence, is used to underscore the potential for similar patterns of behavior in contemporary settings, albeit in different forms. By saying, "Well, I think you might see some real familiarity in it," it would be believed that Heggy acknowledges the recurring nature of such exploitation throughout history.

- **Ethical Concerns**: Attorney Rod Heggy's communication with Tonya Parks without disclosing his representation of Sheriff Abernathy in their federal lawsuit raises ethical issues.
- **Conflict of Interest**: Heggy's undisclosed discussions with Parks, a plaintiff against his clients, present a potential conflict between his professional duties and client interests, complicated by his role as an assistant district attorney.
- **Duty of Candor Breach**: By not revealing his representation of the Defendant Oklahoma County and Abernathy, Heggy may have violated his duty of candor, potentially misleading Parks, especially regarding sensitive topics like the estate and the warrant against Mr. Gibson that were discussed in the call.
- **Lawsuit Implications**: Heggy's conduct could affect the federal lawsuit's integrity, necessitating court consideration of remedial actions to mitigate potential prejudice against Parks and the Gibson family.

The Plaintiffs requests that this Court accept the audio recordings as part of the official case record. These audio recordings are being filed conventionally because of its nature as a non-paper item, and it will be submitted in a format suitable for storage and review by the Court.

A copy of this filing notice will be served to all counsel of record electronically.

**Respectfully submitted,**

**Tonya Parks**
**1401 Bristlewood Dr**
**Mckinney, Tx 75072**
**214-980-8816**
justicetooforall@gmail.com
***Plaintiff***
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

**Nyanaza Cook**
**6503 Marble Falls Dr**
**Killeen, Tx 76542**
**714-794-4190**
nyanzacook@gmail.com
***Plaintiff***

**Frances Gibson**
**7200 Old Mill Run**
**Fort Worth, Tx 76133**
**214-980-8816**
justicetooforall@gmail.com
***Plaintiff***
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

**Bennie Gibson**
**7200 Old Mill Run**
**Fort Worth, Tx 76133**
**214-980-8816**
justicetooforall@gmail.com
***Plaintiff***
***Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson***

Case 5:23-cv-00041-R Document 143 Filed 10/30/24 Page 11 of 12

## Certificate of Service

__X__ I hereby certify that on (date) ___October 29, 2024____, I filed the attached document with the Clerk of Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

__X__ I hereby certify that on (date) ___October 29, 2024___, I filed the attached document with the Clerk of Court and served the attached document by (service method) by email and/or by mail on the following:

| | |
|---|---|
| **Stefanie E. Lawson**<br>Attorney General's Ofc-NE 21STREET-OKC<br>313 NE 21st St<br>Oklahoma City, OK 73105<br>405-521-4274<br>Fax: 405-521-4518<br>Email: stefanie.lawson@oag.ok.gov | **Robert Brandon Hakari**<br>Fidelity National Law Group<br>6900 Dallas Parkway, Ste 610<br>Plano, TX 75024<br>972-812-6547<br>Email: brandon.hakari@fnf.com |
| **Carri A. Remillard**<br>District Attorney's Ofc-OKC<br>320 Robert S Kerr Ave<br>Suite 505<br>Oklahoma City, OK 73102<br>405-713-1600<br>Fax: 405-713-1749<br>Email: carri.remillard@oklahomacounty.org | **Rodney J. Heggy**<br>OK County DA - Civil Division<br>Leadership Square<br>211 N. Robinson<br>Suite 700 N<br>Oklahoma City, OK 73102<br>405-713-1600<br>Fax: 405-713-1567<br>Email: rod.heggy@oklahomacounty.org |
| **Alex Bednar**<br>2802 ColdBrook<br>Edmond, OK 73003<br>405-420-9030<br>Email: bednarconsult@gmail.com<br>**Pro se for Alex Bednar** | |

Respectfully submitted,

Tonya Parks
1401 Bristlewood Dr
Mckinney, Tx 75072
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

Nyanaza Cook
6503 Marble Falls Dr
Killeen, Tx 76542
714-794-4190
nyanzacook@gmail.com
*Plaintiff*

Frances Gibson
7200 Old Mill Run
Fort Worth, Tx 76133
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

Bennie Gibson
7200 Old Mill Run
Fort Worth, Tx 76133
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

PRIORITY MAIL EXPRESS Retail

PRIORITY MAIL EXPRESS

U.S. POSTAGE PAID
PME
MCKINNEY, TX 75070
OCT 29, 2024

73102

$37.20

S2324N503552-04

RDC 07

DOMESTIC AND IN...

PLACE MAILING LABEL HERE

...eed delivery date.*

...nteed delivery time.+

This product is for use with Priority Mail Express®. Misuse may be a violation of federal law. This label is not for resale.

UNITED STATES POSTAL SERVICE® | PRIORITY MAIL EXPRESS®

ER 117 864 065 US

CUSTOMER USE ONLY

FROM: (PLEASE PRINT) PHONE 214, 980-8816

Tonya Parks
1401 Bristlewood Dr
McKinney TX 75072

DELIVERY OPTIONS (Customer Use Only)

☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options

☐ No Saturday Delivery (delivered next business day)

☐ Sunday/Holiday Delivery Required (additional fee, where available*)

*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT) PHONE 405, 609-5000

United State Western District
200 NW 4th Street
Oklahoma City OK 73102

ZIP + 4® (U.S. ADDRESSES ONLY)

7 3 1 0 2

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 insurance included.

PEEL FROM THIS CORNER

PAYMENT BY ACCOUNT (if applicable)

Federal Agency Acct. No. or Postal Service™ Acct. No.

ORIGIN (POSTAL SERVICE USE ONLY)

☐ 1-Day ☐ 2-Day ☐ Military ☐ DPO

| | | |
|---|---|---|
| PO ZIP Code: 75070 | Scheduled Delivery Date (MM/DD/YY): 10-31-24 | Postage: $ 37.20 |
| Date Accepted (MM/DD/YY): 10-28-24 | Scheduled Delivery Time: 6:00 PM | Insurance Fee: $ / COD Fee: $ |
| Time Accepted: 5:59 ☐ AM ☐ PM | | Return Receipt Fee: $ / Live Animal Transportation Fee: $ |
| Special Handling/Fragile: $ | Sunday/Holiday Premium Fee: $ | Total Postage & Fees: 37.20 |
| Weight: 1 lbs 14 ozs ☐ Flat Rate | Acceptance Employee Initials: [illegible] | $ |

DELIVERY (POSTAL SERVICE USE ONLY)

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

LABEL 11-B, NOVEMBER 2020 PSN 7690-02-000-9996

RECEIVED
OCT 30 2024
Clerk, U.S. District Court
WESTERN DIST. OKLA.

VISIT US AT USPS.COM®
Label 119, Nov 2018

United States Postal Service®

UNITED STATES POSTAL SERVICE®

...PS.COM®
...ES ONLINE

# Exhibit 10

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

FILED

SEP 23 2024

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA
BY ___naa___, DEPUTY

**TONYA PARKS**, individually
**BENNIE GIBSON**, individually
**FRANCES GIBSON**, individually
**NYANZA COOK**, individually
**ALEXANDER BEDNAR**, individually

**PLAINTIFFS**

**v.**

**CASE NO. 5:23-CV-00041**

**AIG**, an insurance company based in New York
**CHICAGO TITLE**, a California Company
**TIMOTHY HENDERSON**, a removed Oklahoma Judge accused of crimes,
**DAVID PRATER**, Oklahoma County District Attorney In his individual and official capacity
**MIKE HUNTER**, individually
**MELISSA ABERNATHY**, sheriff deputy
**BRETT SLIMP**, sheriff deputy
**OKLAHOMA COUNTY**

**DEFENDANTS**

**NOTICE OF CONVENTIONAL FILINGS FOR THE**

**MOTION FOR PRETRIAL CONFERENCE OR STATUS CONFERENCE**

Please take notice that Plaintiffs Tonya Parks, Nyanza Cook, Frances Gibson and Bennie Gibson shall conventionally file the original and one copy of the following document, paper or other material: Exhibit 2 - October 28, 2022, Audio Recording of Telephone Communication Between Julie Corley (Attorney General Attorney) and Plaintiff Tonya Parks.

This document, paper, or other material has not been filed electronically because:

__X__ it cannot be converted to electronic format

_____ the electronic file size of this material exceeds 20 megabytes (MB)

_____ the Court by Order has excused electronic filing

_____ it is exempt from electronic filing pursuant to § II.A.1 of the ECF Policy & Procedures Manual

**List of Convention Filings**

**Exhibit 1** - Audio Recording of Telephone Conversation dated October 28, 2022 – between Julie Corely with the Oklahoma Attorney General's office and Plaintiff Tonya Parks

- **Audio Recording of Discussion**: (Please Listen to Full Recording) An audio recording between Tonya Parks and Julie Corley from the Oklahoma Attorney General's Office, evidencing discussions relevant to Plaintiff's claims. This recording is critical to the Plaintiff's case, as it summarizes her allegations that the authorities have avoided investigating her complaint of misconduct and criminal acts by judges and attorneys, thereby forcing victims to file civil lawsuits instead of prosecuting their own representatives.

The content of this recording supports the Plaintiff's claims of:

- The OSBI's failure to properly investigate her allegations against Judge Henderson and others.
- Evidence of criminal actions, retaliation, and harassment against her family.
- Abuse of power and manipulation of the probate case for financial gain by the judges and attorneys involved.
- The Attorney General's Office's unwillingness to investigate and advice to pursue civil litigation.
- A conflict of interest within the Attorney General's Office.

**Exhibit 2** - Audio Recording between Defendant Sheriff Melissa Abernathy's Supervisor and Plaintiff Tonya Parks date of recording June 6, 2019.

- **Audio Recording of Discussion: Allegations of Conspiracy and Judicial Misconduct**: The Plaintiffs possesses a recording with Defendant Sheriff Melissa

Abernathy's Supervisor, revealing that the involvement of law enforcement and the issuance of a probable cause affidavit against Plaintiff Bennie Gibson were actions taken under the direction of Defendant Judge Henderson. This directive was reportedly influenced by probate attorney Roe Simmons, who sought to retaliate against Mr. Gibson for exposing alleged crimes against the estate. Defendant Henderson, who was not presiding over the probate case and had no official capacity within it, was allegedly compelled to act due to his personal connections with Roe Simmons. This situation raises concerns about a potential conspiracy to commit judicial misconduct and abuse of power, leveraging judicial influence to affect law enforcement actions outside the scope of legal proceedings.

- The actions described involving attorney Roe Simmons, Defendant Judge Henderson, and the sheriff's department (Defendant Melissa Abernathy), as relayed by Plaintiff Parks, could potentially be characterized as **conspiracy to commit judicial misconduct and abuse of power**. This situation outlines a scenario where a judge, who is not directly involved in a probate case, or any case involving Plaintiffs Gibson or Parks allegedly uses his influence to direct law enforcement to take action against an individual, Plaintiff Bennie Gibson, based on personal connections and motivations rather than legal justifications. This action was believed to be taken to retaliate against Gibson for reporting crimes committed by attorney Roe Simmons against the estate Plaintiff Frances Gibson's mother, indicating a misuse of judicial and law enforcement powers to protect personal interests and silence whistleblowers.

- Furthermore, the lack of effort to reach out to Mr. Gibson or his family for their side of the story before issuing a warrant, as well as the implications of such actions on the integrity of the judicial process, underscore the seriousness of the allegations. If these actions were taken as described, they could undermine public trust in the legal system and violate ethical standards governing judicial conduct, potentially leading to investigations those involved. (Additional evidence can be provided)

**Exhibit 3** - Audio Recording of Telephone Conversation between Defendants Oklahoma County and Sheriff Abernathy's Counsel District Attorney Rod Heggy and Plaintiff Tonya Parks date of recording Oct 20, 2023.

**Audio Recording of Discussion**: Knowing the history of events regarding Plaintiffs Parks and Gibson Family, Defendants Counsel Rod Heggy, failed to disclose he was representing Defendant Sheriff Abernathy and Defendant Oklahoma County in their federal lawsuit. During the conversation they discussed the probate estate case, the warrant against Mr. Gibson, and other matters without him disclosing his representation of Oklahoma County and Sheriff Abernathy in their civil rights lawsuit against them. This lack of disclosure raises ethical concerns, given Heggy's dual role as an assistant district attorney for Oklahoma County.

Also, on the recording Mr. Heggy also makes a comparison to the Plaintiff Parks and Gibson family by stating they would find familiarities to the Osage Tribe Family who was depicted in the movie called "Killers of the Family Moon".

**On the recording you will hear attorney Rod Heggy tell Plaintiff Parks about the movie and how her family may find similarities to the Osage family when he states,** "Well, I think you might see some real familiarity in it. It happened to the, uh, Osage tribe members when they discovered oil and the Federal Bureau of Investigation was created because of all the murders of the Osage Indians who owned oil interests. Um, so that's what that movie is about. It's, and it's coming out the end of October. Uh, and, uh, and, and it's based on a true story. I've read the book I don't know if the movie will have, well, they'll track it but there, it is my point, however, was simply that, uh, th this is a recurring thing, uh, particularly when greedy people get involved."

DA Rod Heggy's statement to Plaintiff Parks, drawing a parallel between the Parks and Gibson family's situation and the historical injustices faced by the Osage tribe, serves to highlight a pattern of exploitation and injustice that can occur when significant financial interests are at stake, particularly in the context of legal and probate matters. His reference to the Osage tribe's history, where greed led to severe exploitation and violence, is used to underscore the potential for similar patterns of behavior in contemporary settings, albeit in different forms. By saying,

Case 5:23-cv-00041-R Document 126 Filed 09/23/24 Page 5 of 9

"Well, I think you might see some real familiarity in it," Heggy acknowledges the recurring nature of such exploitation throughout history.

- **Ethical Concerns**: Attorney Rod Heggy's communication with Tonya Parks without disclosing his representation of Sheriff Abernathy and Oklahoma County in their federal lawsuit raises ethical issues.
- **Conflict of Interest**: Heggy's undisclosed discussions with Parks, a plaintiff against his clients, present a potential conflict between his professional duties and client interests, complicated by his role as an assistant district attorney.
- **Duty of Candor Breach**: By not revealing his representation of the Defendant Oklahoma County and Abernathy, Heggy may have violated his duty of candor, potentially misleading Parks, especially regarding sensitive topics like the probate estate case and the warrant against Mr. Gibson that were discussed in the call.
- **Lawsuit Implications**: Heggy's conduct could affect the federal lawsuit's integrity, necessitating court consideration of remedial actions to mitigate potential prejudice against Parks and the Gibson family.

The Plaintiffs requests that this Court accept the audio recordings as part of the official case record. These audio recordings are being filed conventionally because of its nature as a non-paper item, and it will be submitted in a format suitable for storage and review by the Court.

A copy of this filing notice will be served to all counsel of record electronically.

Respectfully submitted,

Tonya Parks
1401 Bristlewood Dr
Mckinney, Tx 75072
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

Nyanza Cook
6503 Marble Falls Dr
Killeen, Tx 76542
714-794-4190
nyanzacook@gmail.com
*Plaintiff*

Frances Gibson
7200 Old Mill Run
Fort Worth, Tx 76133
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

Bennie Gibson
7200 Old Mill Run
Fort Worth, Tx 76133
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

**Certificate of Service**

__X__ I hereby certify that on (date) ___September 23 or 24, 2024____, I filed the attached document with the Clerk of Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

__X__ I hereby certify that on (date) ___September 23 or 24, 2024___, I filed the attached document with the Clerk of Court and served the attached document by (service method) by email and/or by mail on the following:

| | |
|---|---|
| **Benjamin G. Kemble**<br>Akerman LLP<br>700 N. St. Mary's Street<br>Suite 1400<br>San Antonio, TX 78205<br>210-582-0220<br>Fax: 210-582-0231<br>Email: benjamin.kemble@akerman.com | **David A. Clark**<br>Akerman LLP<br>1300 Post Oak Boulevard<br>Suite 2300<br>Houston, TX 77056<br>713-871-6893<br>Fax: 713-960-1527<br>Email: david.clark@akerman.com |
| **Rick Gene Boepple , Jr**<br>Akerman LLP<br>1300 Post Oak Boulevard<br>Suite 2300<br>Houston, TX 77056<br>713-623-0887<br>Fax: 713-960-1527<br>Email: rick.boepple@akerman.com | **Stefanie E. Lawson**<br>Attorney General's Ofc-NE 21STREET-OKC<br>313 NE 21st St<br>Oklahoma City, OK 73105<br>405-521-4274<br>Fax: 405-521-4518<br>Email: stefanie.lawson@oag.ok.gov |
| **Carri A. Remillard**<br>District Attorney's Ofc-OKC<br>320 Robert S Kerr Ave<br>Suite 505<br>Oklahoma City, OK 73102<br>405-713-1600<br>Fax: 405-713-1749<br>Email: carri.remillard@oklahomacounty.org | **Rodney J. Heggy**<br>OK County DA - Civil Division<br>Leadership Square<br>211 N. Robinson<br>Suite 700 N<br>Oklahoma City, OK 73102<br>405-713-1600<br>Fax: 405-713-1567<br>Email: rod.heggy@oklahomacounty.org |

| Robert Brandon Hakari<br>Fidelity National Law Group<br>6900 Dallas Parkway, Ste 610<br>Plano, TX 75024<br>972-812-6547<br>Email: brandon.hakari@fnf.com | |
|---|---|

Respectfully submitted,

Tonya Parks
1401 Bristlewood Dr
Mckinney, Tx 75072
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

Nyanaza Cook
6503 Marble Falls Dr
Killeen, Tx 76542
714-794-4190
nyanzacook@gmail.com
*Plaintiff*

Frances Gibson
7200 Old Mill Run
Fort Worth, Tx 76133
214-980-8816
justicetooforall@gmail.com
*Plaintiff*
*Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson*

**Bennie Gibson**
**7200 Old Mill Run**
**Fort Worth, Tx 76133**
**214-980-8816**
justicetooforall@gmail.com
***Plaintiff***
***Tonya Parks Power of Attorney for Frances Gibson and Bennie Gibson***